**Misc. Docket No. ____**

In the
# United States Court of Appeals
*for the*
# Federal Circuit

_____

IN RE MILLER MENDEL, INC. AND TYLER MILLER,

Petitioners.

ON PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA, CASE NO. 2:22-CV-01390-WBS-AC

**PETITION FOR WRIT OF MANDAMUS WITH APPENDIX IN SUPPORT**

KURT M. RYLANDER
RYLANDER & ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931
*Of Attorneys for Petitioners*

August 25, 2025

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number**

**Short Case Caption** In re Miller Mendel, Inc. and Tyler Miller

**Filing Party/Entity** Miller Mendel, Inc. and Tyler Miller

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/25/2025                    Signature: /s/ Kurt M. Rylander

                                    Name:      Kurt M. Rylander

FORM 9. Certificate of Interest

Form 9 (p. 2)
March 2023

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Miller Mendel, Inc. | | |
| Tyler Miller | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| Kurt M. Rylander | Rylander & Associates PC | Robert S. McWhorter |
| Jarett S. Osoborne-Revis | Harry W.R. Chamberlain II | Buchalter |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑   Yes (file separate notice; see below)   ☐   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

FORM 9A. Notice of Related Case Information

Form 9A (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## NOTICE OF RELATED CASE INFORMATION

**Case Number**

**Short Case Caption**   In re Miller Mendel, Inc. and Tyler Miller

**Filing Party/Entity**   Miller Mendel, Inc. and Tyler Miller

**Instructions:** Do not duplicate information.  The notice must only be filed at the time of filing the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  *See* Fed. Cir. R. 47.5(b).  Attach additional pages as needed.  This notice must not be included in a motion, petition, related response, or brief; please only include the Certificate of Interest (Form 9) in those documents.

1. **Related or prior cases.** Provide the case title, case number, and originating tribunal for each case.  Fed. Cir. R. 47.5(b)(1).

Miller Mendel, Inc. et al. v. City of Oklahoma City & Guardian Alliance Technologies, Inc., U.S.D.C. W.D. Oklahoma, Case No. CIV-18-990-JD

Miller Mendel, Inc. v. Alaska State Troopers, et al. Case No. 3:21-cv-0129-HRH

Miller Mendel, Inc. v. Washington County, Oregon et al. Case No. 3:21-cv-00168-SB

Miller Mendel, Inc. v. City of Anna, Texas, Case No. 598  F. Supp. 3d 486 (E.D. Tex. 2022)

Miller Mendel, Inc. v. City of Anna, 107 F.4th 1345 (Fed. Circ. 2024), cert. denied 220 L.Ed. 2d 231 (2024)

☐     Additional pages attached

FORM 9A. Notice of Related Case Information

2. **Names of all parties involved in the cases listed above.** Do not duplicate the names of parties. Do not relist the case information. Fed. Cir. R. 47.5(b)(2)(A).

Miller Mendel, Inc.

Tyler Miller

City of Oklahoma City, Oklahoma

Guardian Alliance Technologies, Inc.

City of Anna, Texas

Washington County, Oregon

Washington County Sheriff's Office

Alaska State Troopers

James E. Cockrell, Commissioner of the State of Alaska Department of Public Safety

☐   Additional pages attached

3. **Names of all law firms, partners, and associates in the cases listed above.** Do not duplicate the names of law firms, partners, and associates. Do not relist case information and party names. Fed. Cir. R. 47.5(b)(2)(B).

Kurt M. Rylander, Mark E. Beatty, Rylander & Associates, Hans N. Huggler, Michael B. Bayous, Lane Powell, LLC, Evan. W. Talley, Douglas J. Sorocco, Dunlap Codding PC, Christopher Lundberg, Haglund Kelley LLP, Todd A. Nelson, Paul E. Rossler, GableGotwals, Ryan Whaley, PLLC, Robert D. Swanson, Daniel S. Strouder, Kian Keller McGlone, Boutin Jones, Inc., Robert S. McWhorter, Harry W. Chamberlain II, Jarrett S. Osborne-Revis, Joshua M. Robbins, Buchalter, Elizabeth L. DeRieux, Capshaw DeRieux, LLP, Kevin M. Curely, Messer, Fort & McDonald

☐   Additional pages attached

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/25/2025

Signature:   /s/Kurt M. Rylander

Name:   Kurt M. Rylander

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 5

RELIEF SOUGHT .......................................................................................... 7

ISSUES PRESENTED ...................................................................................... 7

JURISDICTION.............................................................................................. 8

STANDARD FOR MANDAMUS ................................................................. 8

STATEMENT OF FACTS ............................................................................ 9

  A. Background ......................................................................................... 9

  B. The First-Filed Oklahoma Action ................................................. 13

  C. The Later-Filed California Action ................................................. 14

  D. Threshold Motions in California.................................................. 16

  E. Procedural Posture ......................................................................... 16

REASON WHY THE WRIT SHOULD ISSUE ....................................... 17

  A. THE FIRST-TO-FILE RULE REQUIRED TRANSFER........................ 17

    1. The District Court Misapplied Equitable Discretion .............. 20

    2. Judicial Economy Overwhelmingly Favors Transfer............... 22

  B. ARTICLE III IS LACKING FOR GUARDIAN'S
    DECLARATORY JUDGMENT CLAIMS ON THE '098 AND
    '188 PATENTS........................................................................... 24

    1. Guardian Faces No Immediate Threat Of Patent
      Enforcement Litigation From Petitioners That Warrants A
      Declaratory Judgment.............................................................. 26

    2. The '098 Patent...................................................................... 27

    3. The '188 Patent...................................................................... 27

    4. Guardian Seeks To Obviate This Court's Ruling On The
      '188 Patent .............................................................................. 28

  C. MANDAMUS IS THE ONLY ADEQUATE REMEDY ............................ 29

CONCLUSION .............................................................................................. 30

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622 (9th Cir. 1991) ................ 8, 19

*Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871 (Fed. Cir. 2008) ........................ 25

*Cheney v. U.S. Dist. Ct.,* 542 U.S. 367, 124 S.Ct. 2576, 159 L.Ed.2d
 459 (2004) ........................................................................................ 5, 7, 16, 28

*Communications Test Design, Inc. v. Contect, LLC*, 952 F.3d 1356
 (Fed. Cir. 2020) .................................................................................................. 18

*Futurewei Techs., Inc. v. Acacia Research Corp.*, 737 F.3d 704 (Fed.
 Cir. 2013) ...................................................................................................... 13, 18

*In re Apple Inc.,* 979 F.3d 1332 (Fed. Cir. 2020) ................................................. 28

*In re Genentech, Inc.,* 566 F.3d 1338 (Fed. Cir. 2009) ..................................... 8, 16

*In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011)................... 16

*In re Nitro Fluids L.L.C.*, 978 F.3d 1308 (Fed. Cir. 2020) ............................. 17, 18

*Intersearch Worldwide, Ltd. v. Intersearch Group, Inc*., 544 F. Supp.
 2d 949 (N.D. Cal. 2008) .................................................................................... 22

*Kohn Law Grp. v. Auto Parts*, 787 F.3d 1237 (9th Cir. 2015) ............... 8, 17, 18, 21

*Mattel, Inc. v. MGA Entm't, Inc*., 705 F.3d 1108 (9th Cir. 2013)........................... 14

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S.Ct. 764, 166
 L.Ed.2d 604 (2007) ................................................................................. 5, 23, 26

*Miller Mendel Inc. v. Alaska State Troopers*, No. 3:21-cv-0129-HRH,
 2021 WL 3698377 (D. Alaska Aug. 19, 2021) ......................................................11

*Miller Mendel, Inc. v. City of Anna*, No. 2:21-cv-00445-JRG,  2022
 U.S. Dist. LEXIS 125201 (E.D. Texas June 13, 2022)...................................... 20

*Miller Mendel, Inc. v. City of Anna*, 107 F.4th 1345 (Fed. Cir. 2024),
 *affirmed* 220 L.Ed.2d 231 (U.S. 2024) ............................................. 5, 11, 12, 28

*Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93 (9th Cir. 1982) ................... 19

*Prasco, LLC v. Medicis*, 537 F.3d 1329 (Fed. Cir. 2008) ...................... 5, 23, 24, 26

*Realtime Adaptive Streaming LLC v. Netflix, Inc.,* 41 F.4th 1372 (Fed.
 Cir. 2022) ........................................................................................................... 23

*Regeneron Pharms., Inc. v. Merus N.V.*, 864 F.3d 1343 (Fed. Cir.
 2017). .................................................................................................................. 18

*Southland Corp. v. Keating*, 465 U.S. 1, 104 S. Ct. 852, 860, 79 L. Ed.
 2d 1 (1984)......................................................................................................... 23

## Statutes

28 U.S.C. § 1295(a)(1) ............................................................... 7

28 U.S.C. § 1331 ........................................................................ 7

28 U.S.C. § 1338(a) .................................................................. 7

35 U.S.C. § 101 ..................................................................... 9, 11

35 U.S.C. § 103 ......................................................................... 9

All Writs Act, 28 U.S.C. § 1651 ............................................. 7

## Rules

Fed.R.Civ.Pro. Rule 13(a) ..................................................... 13

## **INTRODUCTION**

Petitioners Miller Mendel, Inc. and Tyler Miller ("MMI") respectfully petition for a writ of mandamus directing the Eastern District of California (the "California Action") to vacate its orders (1) denying transfer under the first-to-file rule to the Western District of Oklahoma (the "Oklahoma Action") and (2) denying dismissal of declaratory-judgment claims over which it lacks subject-matter jurisdiction. **APPX0020–51**.

Two federal district courts are now presiding over parallel cases involving the same parties, the same patents, and the same allegations of "patent fraud" and inequitable conduct. *Compare* **APPX00161–174, 351–358** (MMI Oklahoma Complaint, Third Claim) *with* **APPX00330–348, 359–375** (Guardian Oklahoma Answer, Eighth Affirmative Defense) *and* **APPX00233–284** (Guardian First Amended Complaint, E.D. Cal.). This is precisely the scenario the first-to-file rule is designed to prevent. The Oklahoma Action was filed in 2018—four years before Guardian Alliance Technologies, Inc. ("Guardian") filed the California Action. The parties are identical, the issues and allegations substantially overlap, and substantial discovery has occurred and claim construction briefing has already been completed in the Oklahoma Action. By refusing transfer, the district court disregarded precedent, created an intolerable risk of inconsistent rulings, and ensured duplication of discovery, motion practice, and judicial effort across two courts.

The district court also compounded its error by sustaining four declaratory judgment claims for invalidity and inequitable conduct two patents, U.S. Patent Nos. 9,070,098 ("the '098 Patent") and U.S. Patent No. 10,043,188 B2 ("the '188 Patent"), for which no active infringement claims exist. **APPX0020–45.** Those claims present no Article III case or controversy. Petitioners have never sued anyone for infringement of the '098 Patent, and after this Court affirmed invalidation of Claims 1, 5 and 15 of the '188 Patent under § 101 in *Miller Mendel, Inc. v. City of Anna*, 107 F.4th 1345 (Fed. Cir. 2024), *cert. denied* 220 L.Ed.2d 231 (U.S. 2024), Petitioners moved to dismiss the remaining infringement claims in all forums. Guardian manufactures non-existent jurisdiction based on speculative fears of hypothetical suits. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007); *Prasco, LLC v. Medicis*, 537 F.3d 1329, 1338–41 (Fed. Cir. 2008).

Mandamus is the only adequate remedy. *See Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380–81, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1318 (Fed. Cir. 2008). Absent intervention, duplicative litigation will march forward in two forums, risking inconsistent judgments on the same patents and forcing the parties and courts to squander resources. That is the very harm the first-to-file rule and Article III's jurisdictional limits exist to prevent.

## **RELIEF SOUGHT**

Petitioners respectfully request that this Court:

1.     Grant the petition and issue a writ directing the Eastern District of California to vacate its order denying transfer and transfer this case to the Western District of Oklahoma under the first-to-file rule.

2.     Alternatively, direct the district court to dismiss Guardian's four patent declaratory-judgment claims ('098/'188 invalidity and unenforceability) for lack of Article III case or controversy.

3.     At a minimum, direct the district court to stay the California action pending resolution of overlapping issues in the first-filed Oklahoma case.

## **ISSUES PRESENTED**

1.     Whether the district court clearly abused its discretion by refusing to transfer this case to the Western District of Oklahoma under the first-to-file rule, despite: The Oklahoma Action being filed four years earlier; the parties being identical in both actions; and the issues substantially overlapping, including allegations of patent fraud and inequitable conduct.

2.     Whether the district court misapplied equitable principles by denying transfer based on alleged "forum shopping" by Petitioners, even though Petitioners are the first-filers in the Oklahoma Action and Guardian filed the duplicative later action in California.

3.     Whether mandamus relief is warranted to prevent duplicative litigation, inconsistent rulings on overlapping patent and fraud issues, and waste of judicial and party resources.

4.     Whether Guardian's declaratory-judgment claims should be dismissed for lack of Article III case or controversy because Petitioners never sued Guardian on the '098 patent and withdrew/dismissed the remaining '188 infringement claims post-appeal, eliminating any imminent enforcement threat to Guardian.

## JURISDICTION

This Court has jurisdiction under the All Writs Act, 28 U.S.C. § 1651. Venue for this petition is proper because the district court order arose from a patent-related action appealable to this Court under 28 U.S.C. § 1295(a)(1).

The Federal Circuit has jurisdiction over this case because the underlying case is a patent case. *See* 28 U.S.C. §§ 1295, 1331, 1338(a). This Court has jurisdiction over this petition under the All Writs Act, 28 U.S.C. § 1651. Mandamus is available "to correct a clear abuse of discretion or usurpation of judicial power." *See In re TS Tech.*, 551 F.3d at 1318.

## STANDARD FOR MANDAMUS

Mandamus is appropriate where (1) there is no other adequate means to obtain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) issuance is appropriate under the circumstances. *Cheney*, 542 U.S. at 380–81. This Court

reviews transfer denials for clear abuse of discretion under regional circuit law (here, the Ninth Circuit). *See In re Genentech, Inc.,* 566 F.3d 1338, 1348 (Fed. Cir. 2009). The Ninth Circuit's first-to-file rule is a comity tool applied to maximize economy, consistency, and comity—not to reward tactical gamesmanship labels. *See Alltrade, Inc. v. Uniweld,* 946 F.2d 622, 628 (9th Cir. 1991)*; Kohn Law Grp. v. Auto Parts*, 787 F.3d 1237, 1240 (9th Cir. 2015).

## STATEMENT OF FACTS

### A. BACKGROUND

MMI creates and sells access to software to manage employee background checks for law enforcement and government organizations. **APPX0021.** Tyler Miller ("Miller") serves as MMI's Chief Executive Officer. *Id.*

On April 6, 2011, Miller filed a provisional patent application with the PTO, covering a web-based software system designed to process pre-employment background investigations. **APPX0021.** He filed nonprovisional patent applications on April 6, 2012, and May 26, 2015, resulting in the '098 Patent and the '188 Patent. *Id.* Miller licensed both patents to MMI.

In October 2017, Petitioners discovered that Guardian infringed on the various patents by selling background check software to law enforcement agencies. **APPX0062.** They demanded that Guardian stop infringing, but Guardian refused, claiming that the '098 Patent was invalid under *Alice Corp. Pty, Ltd. v. CLS Bank*

*International*, 573 U.S. 208, 134 S. Ct. 2347, 189 L.Ed.2d 296 (2014) ("*Alice*"). **APPX0062.** That is the first and last time Petitioner ever asserted the '098 Patent.[1]

On October 9, 2018, Petitioners filed an action against Guardian's customer, the City of Oklahoma City ("Oklahoma City') alleging that Oklahoma City infringed on the '188 Patent by using Guardian's background check software. *Miller Mendel, Inc. v. City of Oklahoma City,* U.S.D.C. for the Western District of Oklahoma, Case No. CIV-18-990-JD, ("Oklahoma Action"); *see* **APPX00147.** Oklahoma City, defended by Guardian, moved to dismiss the Oklahoma Action, arguing that the '188 Patent was unpatentable under 35 U.S.C. § 101 and *Alice* which the Oklahoma court denied. **APPX00155.**

Guardian filed a petition with the PTAB for *inter partes* review, arguing that the '188 Patent was invalid under 35 U.S.C. § 103 because "prior art" made the invention too "obvious" to be patented. **APPX427-445; APPX0143.** Guardian based this argument on Background Solutions, LLC's alleged publications regarding background check systems – the same view that Guardian reprises in the underlying cases. *Id.* On March 26, 2020, the PTAB ruled that Guardian failed to show the Background Solutions' video and other information constituted prior art. *Id.* Guardian twice tried to convince the PTAB to reconsider its decision; the PTAB

---

[1] The decision not to go forward with the '098 Patent had nothing to do with *Alice*, and more to do with considerations of claim scope.

rejected both requests. *Id.*

In 2020, Petitioners added Gurdian as a defendant in the Oklahoma Action, asserting claims for defamation and declaratory judgment of no patent fraud/inequitable conduct, no invalidity for '188 Patents and the related patent family.[2] **APPX00161; APPX00142.**

Bolstered by the PTAB decision, Petitioners continued their quest to protect their hard earned patent from Guardian's unrelenting infringement. Petitioners warned law enforcement agencies that if they used Guardian's software, Petitioners would sue them for patent infringement. **APPX00474-516** (First Amended Compl., ¶¶ 111, 113-114, 116-117, Exs. 23, 25-28). In October 2021, Petitioners published an "open letter" on their website regarding "serious public issues" raised by Guardian's patent infringement. *Id.* (Compl., ¶¶ 118-119, Exs. 29-30). Petitioners filed three patent infringement lawsuits against Guardian's customers in Oregon, Alaska, and Texas. Guardian conducted the defense of its customers.

On February 1, 2021, Petitioners sued Washington County, Oregon, and Washington County (OR) Sheriff's Office for infringing the '188 Patent by using Guardian's software. *Miller Mendel, Inc. v. Washington County, Oregon, et al.*, U.S. D. Oregon, Case No. 3:21-cv-00168-SB, ("Oregon Action"), **APPX00500** (Compl., ¶ 101.) The district court stayed the Oregon Action pending resolution of the

---

[2] The only other patent in the '188 Patent family is the '098 Patent.

Oklahoma Action. *Id.*.

On May 28, 2021, Petitioners filed another patent infringement action against Guardian's customers, the Alaska State Troopers and its Commissioner for infringing the '188 Patent by using Guardian's software. *Miller Mendel Inc. v. Alaska State Troopers*, U.S. D. Alaska, Case No. 3:21-cv-0129-HRH ("Alaska Action"), **APPX00500** (Compl. ¶ 102). The Alaska district court stayed the Alaska Action pending resolution of the Oklahoma Action under the first-to-file rule. *See Miller Mendel Inc. v. Alaska State Troopers*, No. 3:21-cv-0129-HRH, 2021 WL 3698377, at *6 (D. Alaska Aug. 19, 2021).

On December 2, 2021, Petitioner filed a lawsuit in the Eastern District of Texas against Respondent, the City of Anna, Texas, alleging infringement of claims 1, 5, and 15 of the '188 Patent. *Miller Mendel, Inc. v. City of Anna*, U.S. E.D. Texas, Case No: 2:21-CV-00445-JRG ("Texas Action"); **APPX00501; APPX00142**. On April 14, 2022, the Texas court decided Claims 1, 5, and 15 of the '188 Patent were not patentable under 35 U.S.C. § 101 and *Alice*. APPX00199). On appeal, Guardian argued that invalidity should be as to all claims, not just Claims 1, 5 and 15, and that the case was extraordinary justifying fees and costs. However, on July 18, 2024, the Federal Circuit denied these arguments and denied all appeals and cross-appeals *Miller Mendel, Inc. v. City of Anna*, 107 F.4th 1345 (Fed. Cir. 2024). On November 25, 2024, the Supreme Court denied petition for writ of *certiorari*. *Miller Mendel,*

*Inc. v. City of Anna*, 220 L.Ed.2d 231 (U.S. 2024).

After the Supreme Court denied *certiorari*, MMI diligently moved to dismiss its infringement cases and/or claims in Alaska, Oregon, and Oklahoma. *Miller Mendel, Inc. v. Alaska State Troopers, et al.* D.AK No. 3:21-cv-0129-HRH, Dkt 50; *Miller Mendel, Inc. v. Washington County, Oregon, et al.*, D.OR 3:21-cv-00168-SB, Dkt, 33. **APPX00144**. In Oklahoma, with leave of court, MMI filed a Third Amended Complaint to remove the claim for patent infringement, leaving the other claims, including claims against Guardian, intact. **APPX00351; APPX00144.**

### B. <u>The First-Filed Oklahoma Action</u>

In the 2018 Oklahoma Action, Guardian plead affirmative defenses, particularly the eighth affirmative defense, that include allegations of patent fraud, invalidity and inequitable conduct related to the '188 Patent and its patent family. **APPX00330-348 & APPX359-375.** The Oklahoma court has overseen extensive discovery, issued rulings on motions including an anti-SLAPP-style defamation motion, and the parties have fully briefed claim construction on the patents at issue. **APPX0008-0019** (Oklahoma docket sheet nos. 15, 23, 25, 28, 29, 31, 43-46, 51-53, 55, 66, 83, 84, 93, 99, 103, 104, 112, 119, 122, 125, 126, 137, 138, 139, 148); **APPX158-160; APPX00298.** That action has been actively litigated for years. The Oklahoma Action encompasses defenses of inequitable conduct and allegations of "patent fraud" that are functionally identical to the declaratory judgment claims

Guardian later pleaded in California.

## C. **The Later-Filed California Action**

Guardian filed the below action in the Eastern District of California in August 2022, asserting: (1) four declaratory-judgment claims challenging the validity and enforceability of the '098 and the '188 Patents; (2) antitrust claims under § 2 of the Sherman Act; and (3) California state-law claims. The complaint is premised on the same factual allegations pending in Oklahoma, namely that Petitioners obtained and asserted their patents through inequitable conduct and fraud on the PTO. **APPX00233-284** (First Am. Compl. ¶¶ 48–68, Dkt. 51); **APPX00298**.

Guardian was required by Rule 13 of the Federal Rules of Civil Procedure to file any claims it had against Petitioners as counterclaims in the Oklahoma Action. FED.R.CIV.Pro. Rule 13(a). Instead of doing that, however, in a clear act of forum shopping, in 2022, Guardian filed this later action in the Eastern District of California. Because the factual underpinnings of Guardian's claims mirror its defenses in the Oklahoma Action, **APPX00298**, these are compulsory counterclaims that Guardian should have brought in the Oklahoma Action. *See Futurewei Techs., Inc. v. Acacia Research Corp.*, 737 F.3d 704, 710 (Fed. Cir. 2013)(existence of Rule 13 counterclaim "bolsters" application of the first-to-file rule). A "compulsory" counterclaim is a claim that "arise[es] out of the transaction or occurrence that is the subject matter of the opposing party's claim." Courts apply "the logical relationship

-14-

test for compulsory counterclaims." *Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1110 (9th Cir. 2013). "A logical relationship exists when … the same operative facts serve as the basis of both [the counterclaims and initial claim] or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant." *Id.* (quoting *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1195-95 (9th Cir. 2005)).

Tactically, Guardian waited until ***after*** receiving a significant adverse ruling in the USPTO *Inter Partes Review* action, **APPX00427-445** (see W.D. Okl. Dkt 97 & 97-1, filed July 27, 2020 (denying *inter partes* review for failure to show alleged prior art was publicly available to a person of ordinary skill in the art)), before bringing this action in California in 2022. Similarly, Guardian waited until ***after*** receiving a significant adverse ruling in Oklahoma on December 2, 2024, before bringing a motion in Oklahoma to transfer the Oklahoma Action to California on May 8, 2025. *Compare* **APPX00446-457**, (W.D. Okl. Dkt 137, filed December 2, 2024 (denying Guardian motion to dismiss defamation claim: "The dissemination of information on the Internet to the public at large necessarily involves an audience wholly unconnected to the judicial process. ... Such communications would not fall within Oklahoma's traditional scope of the litigation privilege nor further the policy goals of the privilege.")) *with* **APPX00458-473** (W.D. Okl. Dkt 146, filed May 8, 2025 (Guardian Motion to Transfer Venue)).

### D. **Threshold Motions in California**

In the California Action, Petitioners moved to dismiss, arguing (i) dismissal under the first-to-file rule, and (ii) lack of Article III jurisdiction over Guardian's declaratory-judgment claims because Petitioners have never sued Guardian on the '098 patent and withdrew all infringement claims on the '188 patent following the Federal Circuit's affirmance of a § 101 judgment of invalidity. **APPX0052 & 0091 & 00144.** The district court denied dismissal but acknowledged the overlap with Oklahoma. **APPX0024.** In its order denying dismissal, the district court invited either party to move to transfer the case to Oklahoma under the first-to-file rule. **APPX0025-26.**

Following that ruling, accepting the district court's invitation, Petitioners moved under to transfer this case to Oklahoma under the first-to-file rule. **APPX00285.** Guardian opposed, accusing Petitioners of "gamesmanship" for not combining dismissal and transfer arguments at the outset. The court denied transfer citing an "appearance of forum shopping" in Petitioners' sequencing for not moving to transfer at the same time it moved to dismiss. **APPX0046-51.**

### E. **Procedural Posture**

Thus, two federal district courts are now tasked with adjudicating the same allegations of inequitable conduct/patent fraud. The first-filed Oklahoma court has already invested significant judicial resources and completed *Markman* briefing,

while the later-filed California action proceeds on duplicative grounds, compounded by declaratory-judgment claims that lack Article III standing. Without intervention, Petitioners face years of duplicative litigation and the risk of inconsistent rulings.

## <u>REASON WHY THE WRIT SHOULD ISSUE</u>

A writ of mandamus is appropriate where: (1) the petitioner has no other adequate means to attain relief, (2) the petitioner's right to the writ is "clear and indisputable," and (3) issuance of the writ is appropriate under the circumstances. *Cheney,* 542 U.S. at 380–81.

### A. <u>THE FIRST-TO-FILE RULE REQUIRED TRANSFER</u>

This case is the paradigm for applying the first-to-file rule. Two federal courts are now tasked with adjudicating substantially identical disputes between the same parties, involving the same patents, and turning on the same allegations of inequitable conduct and "patent fraud." The Western District of Oklahoma has been litigating these issues since 2018; Guardian's California action was filed four years later. The law—both Federal Circuit and Ninth Circuit—compels deference to the first-filed forum.

This Court has repeatedly granted mandamus to correct district courts that refused transfer in such circumstances. *See In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008); *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009); *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011); *In re Nitro Fluids*

-17-

*L.L.C.*, 978 F.3d 1308 (Fed. Cir. 2020). These decisions make clear that the first-to-file rule is not a discretionary convenience doctrine—it is a rule of comity designed to prevent duplicative litigation and conflicting rulings. As *Nitro Fluids* emphasized, "unless the balance of transfer factors favors keeping the case in the second-filed court, there are no compelling circumstances to justify such an exception." 978 F.3d at 1311.

The Ninth Circuit applies the same three-part test: (1) chronology, (2) similarity of parties, and (3) similarity of issues. *Kohn Law Grp.,* 787 F.3d at 1240. Every factor unambiguously favors Oklahoma:

1. **Chronology:** Oklahoma was filed in 2018; California in 2022.

2. **Parties:** The parties are identical—Guardian is the plaintiff in California and a defendant in Oklahoma; Petitioners are defendants in California and plaintiffs in Oklahoma.

3. **Issues:** The gravamen of both actions is the same: whether Petitioners engaged in inequitable conduct or fraud in obtaining and enforcing their patents. Guardian's California antitrust and state-law claims merely repackage these same allegations. Indeed, eight of the eleven claims in the California Action (Claims 1, 2, 5, 6, 7, 8, 9, and 10) explicitly or implicitly require the Court to determine whether Petitioners engaged in inequitable conduct.

   The law does not require identity of issues, only "substantial similarity."

-18-

*Kohn*, 787 F.3d at 1240–41. Here the overlap is complete: eight of Guardian's eleven claims (Counts 1, 2, 5–10) explicitly or implicitly require findings of inequitable conduct before the PTO. Inequitable conduct inquiries are governed by Federal Circuit law, and require claim construction. See *Regeneron Pharms., Inc. v. Merus N.V.*, 864 F.3d 1343, 1350 (Fed. Cir. 2017). To that point, claim-construction briefing has already been completed in Oklahoma. **APPX0008–0019** (Oklahoma Dkt. Nos. 116, 117, 119, 122).

Federal Circuit precedent confirms that when two actions materially turn on the same patent issues, transfer to the first-filed court is mandatory to preserve consistency. *TS Tech*, *Genentech*, *Link_A_Media*, and *Nitro Fluids* each granted mandamus where district courts denied transfer despite overlap. Where two cases involve overlapping patent issues and overlapping parties, the first-filed rule should be enforced to preserve judicial consistency and prevent interference with the first-filed court which could lead to conflicting rulings. *See Futurewei Technologies,* 737 F.3d at 708-10; *see also Communications Test Design, Inc. v. Contect, LLC*, 952 F.3d 1356, 1362 (Fed. Cir. 2020). "Unless the balance of transfer factors favors keeping the case in the second-filed court, there are no compelling circumstances to justify such an exception." *In re Nitro Fluids,* 978 F.3d at 1311. The California court's refusal to transfer, despite a fully-briefed claim construction proceeding in Oklahoma, creates the exact risk of inter-court conflict the rule is meant to forestall.

-19-

*See Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183–84 (1952);

*Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 (9th Cir. 1982).

Judicial economy and comity dictate that one court—the first-filed Oklahoma court—should resolve these issues. That court is familiar with the patents, the parties, and the factual record after years of litigation. The California court disregarded these controlling principles, over-emphasized Guardian's forum preference, and misapplied equitable factors. That clear abuse of discretion compels mandamus.

### 1. **<u>The District Court Misapplied Equitable Discretion</u>**

The California court denied transfer on equitable grounds, concluding that Petitioners' motion had the "appearance of forum shopping." **APPX0050.** This was legal error. Equitable exceptions to the first-to-file rule apply only in narrow circumstances such as bad faith or anticipatory suits. *Alltrade*, 946 F.2d at 627. Here, MMI filed first in Oklahoma and only sought transfer after Guardian filed a duplicative action. Penalizing Petitioners for defending themselves with an anti-SLAPP motion is contrary to law.

There are only narrow exceptions to the first-to-file rule — bad faith, anticipatory suits, or egregious forum shopping. *Alltrade,* 946 F.2d at 628. None apply here. Petitioners filed first in Oklahoma, litigated there for years, and only sought transfer once Guardian filed an overlapping action in a distant forum. By

definition, Petitioners could not have engaged in forum shopping: the Oklahoma Action is the first-filed case.  Moreover, the Texas court already ruled, affirmed by this Court, that Petitioners were entitled to sue Guardian's customers anywhere, and that is not bad faith, foreclosing that argument in California. *Miller Mendel, Inc. v. City of Anna* ,U.S.D.C. E.D. Texas, Case No. 2:21-cv-00445-JRG,  2022 U.S. Dist. LEXIS 125201, *18 (June 13, 2022) ("Miller Mendel was thereafter free to sue GAT, or in this case, GAT's customers, for infringement"), *affirmed* 107 F.4th 1345, 1356-57 (Fed. Cir. 2024)

The California court's reasoning inverted the doctrine, punishing the true first-filer (Petitioners) and rewarding Guardian for filing a duplicative suit after years of litigating in Oklahoma. That is a clear abuse of discretion.

The court faulted Petitioners for (a) not requesting transfer contemporaneously with citing first-to-file in their motion to dismiss, and (b) filing a transfer motion after an adverse Rule 12 ruling. Neither supports denying transfer:

- **No waiver from sequencing.** The first-to-file rule is discretionary; parties may raise it as a basis for dismissal or transfer at different stages. Petitioners initially sought dismissal to streamline issues and only later sought transfer once the pleadings and judicial rulings clarified what would remain to be tried, and with the district court's express invitation to file the motion. **APPX0025-26**. That is *efficient litigation*, not gamesmanship.

-**21**-

- **Consistent case posture.** Petitioners never disclaimed transfer; their dismissal briefing invoked first-to-file comity and duplicative-litigation concerns, which equally support transfer.

- **Guardian's own forum tactics.** Guardian's opposition below centered on accusing Petitioners of "forum shopping," even as Guardian (1) filed this second-filed action adding broader remedies than sought in Oklahoma, and (2) later moved in Oklahoma to transfer *that* case to California after suffering setbacks. The district court acknowledged Guardian's filing could itself be seen as forum shopping.

- **"Hallmark of forum shopping" quote misapplied.** The court relied on a line from Petitioners' reply—that switching forums after adverse rulings is the "hallmark of forum shopping" (quoting another case) —to accuse Petitioners of the very thing they argued against. Context matters: Petitioners cited that principle to show *Guardian's* duplicative California filing and later *Oklahoma* transfer bid reflected forum shopping. Turning Petitioners' legal citation into an adverse factual finding was clear error.

## 2.  <u>Judicial Economy Overwhelmingly Favors Transfer</u>

The purpose of the first-to-file rule is to "maximize economy, consistency, and comity." *Kohn Law Grp.*, 787 F.3d at 1240. The California court's denial frustrates all three.

- The Oklahoma Action is far more advanced. Discovery has proceeded, claim construction briefing is complete, and the court has already decided dispositive motions.

- The California Action is in its infancy. Re-litigation of discovery, claim construction, and fraud issues would waste years of judicial resources.

- Inconsistent rulings are inevitable. The Oklahoma court will adjudicate claim construction and inequitable conduct, while the California court purports to adjudicate the same issues under the guise of antitrust and fraud claims.

The Federal Circuit has emphasized that judicial economy is paramount in transfer cases. In *In re Genentech, Inc.*, 566 F.3d at 1343–44, this Court granted mandamus, stressing that duplicative proceedings and scattered witnesses demanded correction. The same applies here with even greater force, as two federal courts will resolve overlapping fraud allegations about the same patents.

Courts routinely find transfer appropriate even when the second-filed case asserts additional causes of action, where those claims rely upon the same nucleus of operative fact. *See Intersearch Worldwide, Ltd. v. Intersearch Group, Inc*., 544 F. Supp. 2d 949 (N.D. Cal. 2008). The antitrust and California claims here do not add complexity; they merely recast the same alleged inequitable conduct in alternative legal terms. Where adjudication of the first-filed case will resolve or moot the claims in the second-filed case, transfer is proper.

Federal courts discourage forum shopping. *Southland Corp. v. Keating*, 465 U.S. 1, 15, 104 S. Ct. 852, 860, 79 L. Ed. 2d 1 (1984); *Realtime Adaptive Streaming LLC v. Netflix, Inc.,* 41 F.4th 1372, 1379 (Fed. Cir. 2022); *see also Kerotest Mfg. Co.,* 342 U.S. 180. Here, Guardian's forum shopping is manifest. Guardian waited until ***after*** claim construction briefing was completed in Oklahoma, in 2021. **APPX0017** (Oklahoma Docket sheet, docket nos. 116-122)), and ***after*** receiving an adverse ruling at the U.S. Patent & Trademark Office in 2020, **APPX00427-445**, before filing suit in California On August 5, 2022. **APPX0001.** Critically, Guardian only filed its motion to transfer in the Oklahoma court (to transfer the W.D. Oklahoma case to E.D. California), on May 8, 2025 ***after*** receiving an adverse ruling on Oklahoma law in connection with the defamation claim on December 2, 2024. **APPX00446-457** (Order denying Guardian motion to dismiss) **& APPX00458-473** (Guardian Motion to Transfer).

## B. ARTICLE III IS LACKING FOR GUARDIAN'S DECLARATORY JUDGMENT CLAIMS ON THE '098 AND '188 PATENTS.

Under *MedImmune* and *Prasco*, a declaratory-judgment plaintiff must show a concrete, immediate dispute—typically a meaningful threat of suit or other conduct creating a real, present injury. Guardian has neither:

- **'098 Patent:** Petitioners have never sued on '098 and only threatened Guardian one time, in 2017 with that patent. Absent affirmative acts

suggesting imminent enforcement, there is no "substantial controversy … of sufficient immediacy and reality." *Prasco*, 537 F.3d at 1339–41.

- **'188 Patent:** After this Court affirmed the Texas §101 judgment (and *certiorari* was denied), Petitioners moved to dismiss remaining '188 infringement claims "in all courts." With infringement claims withdrawn, and no concrete threat to sue Guardian directly, Guardian's declaratory judgment claims rest on speculative fears and historical disputes with *customers*— insufficient under *Prasco*. Guardian's own opposition confirms the "controversy" theory hinges on customers previously accused of infringing and generalized "related litigation," not any present threat to Guardian itself.

- **Arris/"supplier declaratory judgment" does not save jurisdiction.** While a supplier can sometimes establish declaratory judgment standing based on threats to its customers, that doctrine requires conduct that *immediately implicates* the supplier's liability or rights. Here, by removing '188 infringement claims and never asserting '098 against Guardian since 2017, Petitioners eliminated the immediacy necessary for supplier-standing declaratory judgment jurisdiction.

- **District court's own framing underscores the problem.** The court recognized Guardian's four declaratory judgment claims and the first-to-file overlap yet did not identify any concrete Petitioners-to-Guardian enforcement

threat for '098 or any remaining live '188 infringement dispute—because there isn't one.

The Court should direct dismissal of the four declaratory judgment claims for lack of jurisdiction. At a minimum, their justiciability defect heightens the comity and economy reasons to transfer what remains to the first-filed Oklahoma forum.

### 1. <u>Guardian Faces No Immediate Threat Of Patent Enforcement Litigation From Petitioners That Warrants A Declaratory Judgment</u>

Guardian faces no threat of patent enforcement. MMI has never sued anyone on the '098 Patent,[3] and after the Supreme Court's ruling, MMI diligently moved to dismiss and has withdrawn its patent infringement claims based on the '188 Patent. In short, Guardian's four claims for declaratory relief also cannot survive because Guardian has not sufficiently grounded them in any Article III case or controversy.

The Declaratory Judgment Act permits courts to declare rights and legal relations in an actual case or controversy within their jurisdiction. 28 U.S.C. § 2201. However, it "does not confer" jurisdiction; it merely provides a remedy when jurisdiction exists from another source. *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 879 (Fed. Cir. 2008). Article III limits judicial power to "Cases or Controversies." *Id*. Courts assess whether a "substantial controversy" exists between

---

[3] Guardian by omission admits it fears no enforcement of the '098 Patent. When Guardian filed a Petition for *Inter Partes* Review with the PTO PTAB on behalf of itself and its party in privity Oklahoma City, it only challenged the '188 Patent, not the '098 Patent. **APPX00427-445.**

parties with adverse legal interests "of sufficient immediacy and reality" to warrant relief. *MedImmune,* 549 U.S. at 128. A "bedrock rule" requires a "*real and immediate* injury or threat of future injury that is *caused by the Petitioners*—an objective standard that cannot be met by a purely subjective or speculative fear of future harm." *Prasco*, 537 F.3d at 1339 (emphasis in original). The mere existence of a patent does not establish declaratory judgment jurisdiction. *Id.*

### 2. The '098 Patent

The district court improperly asserted declaratory judgment jurisdiction over the '098 Patent despite the absence of an "actual" or "imminent" controversy. The Complaint concedes that MMI's only action—sending a cease-and-desist letter in 2017—occurred nearly eight (8) years ago. **APPX00499** (Compl., ¶¶ 95-97.) Guardian provided no allegation or evidence that MMI has since sued or threatened enforcement against its customers. Without an imminent threat, no case or controversy exists, and jurisdiction is lacking.

### 3. The '188 Patent

Declaratory judgment jurisdiction over the '188 Patent is even less plausible. In the Texas Action, Guardian, through the City of Anna, argued in its flawed motion for attorney's fees that Petitioners "refused" to sue Guardian for infringement. **APPX220-232.** Meanwhile, in the Oklahoma Action, Petitioners sought leave to assert an infringement claim against Guardian, which the court denied on October 7,

2020. **APPX158-160**. In the intervening nearly five (5) years, Petitioners have taken no further action to assert infringement against Guardian.

Critically, after the Supreme Court denied the petition, MMI diligently moved to dismiss its infringement cases in Alaska, Oregon, and Oklahoma. The Alaska and Oregon cases were dismissed on January 12, 2025. *Miller Mendel, Inc. v. Alaska State Troopers, et al.* D.AK No. 3:21-cv-0129-HRH, Dkt 50; *Miller Mendel, Inc. v. Washington County, Oregon, et al.*, D.OR 3:21-cv-00168-SB, Dkt, 33. In Oklahoma, MMI moved to amend its Complaint to remove the claim for patent infringement, leaving the other claims, including claims against Guardian, intact. *Miller Mendel, Inc. et al. v. City of Oklahoma City et al.,* W.D. OK No. CIV-18-990-JD, Dkt 139 (filed 12/18/2024).

Nowhere in Guardian's Complaint does it point to any evidence showing, let alone suggesting, that Petitioners are getting ready to sue Guardian directly for patent infringement over the '188 Patent. With no immediate threat, the Court should decline to exercise jurisdiction.

### 4. <u>Guardian Seeks To Obviate This Court's Ruling On The '188 Patent</u>

Even more compelling, Guardian through the California Action seeks to invalidate Claims from the '188 Patent that have **<u>never</u>** **<u>been</u>** **<u>asserted</u>**, and which both the Eastern District of Texas and the Federal Circuit removed from the scope of the invalidity decision. *Miller Mendel, Inc. v. City of Anna*, 107 F.4th 1345, 1350

& 1354 (Fed. Cir. 2024). Guardian filed on August 21, 2025 a Motion for Judgment on the Pleadings in the California Action specifically seeking to extend the Eastern District of Texas judgment not only to all claims in the 1'88 Patent, but also all claims in the '098 Patent. **APPX00517, 518**.   The Eastern District of Texas specifically limited its ruling to Claims 1, 5 and 15 of the '188 Patent, over Guardian's objection, *Miller Mendel, Inc,* 107 F.4th at 1350 , and this Court affirmed that ruling, denying Guardian's appeal. *Id.* at 1354.

## C. <u>MANDAMUS IS THE ONLY ADEQUATE REMEDY</u>

Transfer orders are not immediately appealable; permitting parallel proceedings to continue defeats first-to-file's purposes and risks inconsistent outcomes. This Court routinely uses mandamus to correct transfer errors that would otherwise evade review. *See, e.g., TS Tech*, 551 F.3d at 1318; *In re Apple Inc.,* 979 F.3d 1332, 1336 (Fed. Cir. 2020). If mandamus is denied, Petitioners will be forced to litigate duplicative suits in two forums, expend significant resources, and risk inconsistent judgments on overlapping issues. That is irreparable harm.

As the Supreme Court has recognized, mandamus is designed to prevent "piecemeal litigation and unnecessary expense." *Cheney*, 542 U.S. at 380–81. This Court has repeatedly used mandamus to enforce proper venue transfers because no alternative remedy exists. *TS Tech*, 551 F.3d at 1318; *Genentech*, 566 F.3d at 1349.

So too, denials of a motion to dismiss for lack of subject matter jurisdiction

are not immediately appealable, and district court's erroneous exercise over declaratory judgment claims for invalidity and inequitable conduct, when there is no active infringement claims, nor any threatened or even on the horizon, forces a party through years of unnecessary litigation absent mandamus relief. Here the risk is compounded by Guardian leveraging the district court's erroneous retention of jurisdiction to seek to invalidate patent claims that have never been asserted or threatened against anyone, and which this Court expressly excluded from an invalidity ruling.

**No other remedy.** The orders are not appealable until final judgment; mandamus is the only avenue to prevent duplicative proceedings.

**Clear and indisputable right.** The first-to-file factors are plainly satisfied. The district court's refusal to transfer conflicts with precedent from both the Ninth Circuit and this Court.

**Appropriate under the circumstances.** Two federal courts are poised to decide overlapping fraud and inequitable conduct issues, risking inconsistent judgments on core patent validity matters. Judicial economy demands transfer.

## CONCLUSION

Petitioners respectfully request that this Court issue a writ of mandamus directing the Eastern District of California to vacate its order denying transfer and transfer this case to the Western District of Oklahoma, and reverse its order denying

the motion to dismiss claims 1 through 4 of the complaint for lack of subject matter

jurisdiction.

   DATED August 25 ,2025 <u>/s/ Kurt M. Rylander</u>
          KURT M. RYLANDER

          RYLANDER & ASSOCIATES PC
          406 West 12th Street
          Vancouver, WA 98660
          Tel: (360) 750-9931
          Attorneys for Petitioners

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** _____

**Short Case Caption:** In re Miller Mendel, Inc. and Tyler Miller

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes _____ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 08/24/2025

Signature: /s/ Kurt M. Rylander

Name: Kurt M. Rylander

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 25, 2025, a true and correct copy of the foregoing Petition for a Writ of Mandamus to the U.S. District Court for the Eastern District of California was timely filed with the Clerk of the Court using the appellate CM/ECF system.

I further certify that on August 25, 2025, a true and correct copy of the foregoing Petition for a Writ of Mandamus to the U.S. District Court for the Eastern District of California was served on the following counsel by email electronic service:

Daniel S. Stouder at dstouder@boutinjones.com
Douglas J. Sorocco , PHV at dsorocco@dunlapcodding.com
Evan W. Talley , PHV at etalley@ryanwhaley.com
Harry W R Chamberlain , II at hchamberlain@buchalter.com
Ian Keller McGlone at imcglone@boutinjones.com
Jarrett S. Osborne-Revis at josbornerevis@buchalter.com
Joshua Robbins at jrobbins@buchalter.com
Robert D. Swanson at rswanson@boutinjones.com
Robert Scott McWhorter at rmcwhorter@buchalter.com


/s/ Kurt M. Rylander
Kurt M. Rylander

# APPENDIX

# APPENDIX

## <u>TABLE OF CONTENTS</u>

Entry ........................................................................................... Appendix

E.D. California Docket Sheet ................................................................. 1

W.D. Oklahoma Docket Sheet ............................................................... 8

CA: Memorandum and Order re: Defendants' Motion to Dismiss et al. .............. 20

CA: Memorandum and Order re: Defendants' Motion to Transfer
Venue ........................................................................................... 46

CA: Memorandum of Points and Authorities in Support of
Defendants' Motion to Dismiss Under Federal Rule of Civil Procedure
12(b)(6) (October 11, 2022) ................................................................. 52

CA: Defendants' Notice Of Motion And Motion To Dismiss Under
Federal Rule Of Civil Procedure 12(B)(6); Memorandum Of Points
And Authorities In Support (March 7, 2025) .............................................. 91

Request For Judicial Notice In Support Of Defendants' Motion To
Dismiss Plaintiff's Complaint ............................................................... 131

Declaration Of Kurt M. Rylander In Support Of Defendants' Motion
To Dismiss Plaintiff's Complaint And Defendants' Special Motion To
Strike Pursuant To Code Of Civil Procedure § 425.16 .................................. 140

    Exh. C – 2018 Complaint in W.D. Oklahoma ......................................... 147

    Exh. D – 2019 Order in W.D. Oklahoma ............................................. 155

    Exh. E – 2020 Order In WD Oklahoma Granting Leave To File
    Second Amended Complaint Against Guardian And Issuing
    Discovery Rulings ....................................................................... 158

    Exh. F – 2020 Second Amended Complaint Adding Guardian ................... 161

    Exh. G – 2020 Oklahoma City Answer And Affirmative
    Defenses Asserting Patent Fraud/Inequitable Conduct And
    Invalidity .................................................................................. 175

    Exh. I – Order In E.D. Texas Granting Motion For Judgment
    On The Pleadings ........................................................................ 199

Exh. L  – Order In E.D. Texas Denying Anna's Request To Deem The Case Exceptional And Award Fees And Costs........................ 220

CA: Guardian First Amended Complaint Against Miller Mendel, Inc. and Tyler Miller..................................................................................... 233

CA: Defendants' Notice Of Motion And Motion To Transfer Venue To The Western District Of Oklahoma Pursuant To The First-To-File Doctrine; And Memorandum Of Points And Authorities In Support Thereof...................................................................................................... 285

CA: Declaration Of Kurt M. Rylander In Support Of Defendants' Motion To Transfer Venue To The Western District Of Oklahoma Pursuant To The First-To-File Doctrine .............................................. 296

Exh. C – OK: Defendant Guardian Alliance Technologies, Inc.'s Answer And Affirmative Defenses To The Second Amended Complaint ........................................................................................ 330

Exh. D – OK: Plaintiffs' Opposed Motion for Leave to File Third Amended Complaint (12/18/2024)(Excerpt) .................................. 349

Exh. E – OK: Third Amended Complaint ................................. 351

Exh. F – OK: Defendant Guardian Alliance Technologies, Inc.'s Answer And Affirmative Defenses To The Third Amended Complaint ........................................................................................ 359

Exh. G – OK: Declaration Of Adam V. Anthony In Support Of Defendant Guardian Alliance Technologies, Inc's Motion To Transfer ....................................................................................... 376

Exh. H – OK: Response To Defendant Guardian Alliance Technologies, Inc.'s Motion To Transfer (5/30/2025) ............................. 380

Exh. I – OK: Declaration of Tyler Miller ................................. 403

CA: Plaintiff Guardian Alliance Technologies, Inc.'s Response In Opposition To Defendants' Motion To Transfer Venue To The Western District Of Oklahoma............................................................. 404

CA: Defendants' Reply In Support Of Motion To Transfer Venue To The Western District Of Oklahoma Pursuant To The First-To-File Doctrine ................................................................................................ 415

CA: Declaration Of Kurt M. Rylander In Support Of Defendants' Reply To Plaintiff's Opposition To Defendants' Motion To Transfer Venue To The Western District Of Oklahoma Pursuant To The First-To-File Doctrine ................................................................................ 424

    Exh. A – OK: Plaintiffs' Notice Of Decision On *Inter Partes* Review ................................................................................................ 427

    Exh. B – OK: Order Denying Guardian Motion to Dismiss Defamation Claim (12/2/2024)................................................ 446

    Exh. C – OK: Defendant Guardian Alliance Technologies, Inc.'s Motion To Transfer Venue And Memorandum In Support (5/8/2025) ........................................................................................ 458

CA: Guardian Alliance Technologies, Inc. Complaint Against Miller Mendel, Inc. and Tyler Miller. (8/5/2022) .......................................... 474

CA: Plaintiff Guardian Alliance Technologies, Inc.'s Notice Of Motion And Motion For Judgment On The Pleadings Under Fed. R. Civ. P. 12(C); Memorandum Of Points And Authorities In Support (8/21/2025) ........................................................................................ 517

**U.S. District Court**
**Eastern District of California - Live System (Sacramento)**
**CIVIL DOCKET FOR CASE #: 2:22-cv-01390-WBS-AC**

Guardian Alliance Technologies, Inc. v. Miller Mendel, Inc. et al
Assigned to: Senior Judge William B. Shubb
Referred to: Magistrate Judge Allison Claire
Cause: 28:1331 Fed. Question: Anti-trust

Date Filed: 08/05/2022
Jury Demand: Plaintiff
Nature of Suit: 410 Anti-Trust
Jurisdiction: Federal Question

**Plaintiff**

**Guardian Alliance Technologies, Inc.**     represented by     **Daniel S. Stouder**
Boutin Jones, Inc.
555 Capitol Mall
Suite1500
Sacramento, CA 95814
916-321-4444
Fax: 916-441-7597
Email: dstouder@boutinjones.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Douglas J. Sorocco , PHV**
Dunlap Codding, P.C.
609 W. Sheridan Avenue
Oklahoma City, OK 73102
405-607-8600
Fax: 406-607-8686
Email: dsorocco@dunlapcodding.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Evan W. Talley , PHV**
Ryan Whaley, PLLC
400 N. Walnut
Oklahoma City, OK 73104
405-607-8600
Email: etalley@ryanwhaley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ian Keller McGlone**
Boutin Jones, Inc
555 Capitol Mall, Suite 1500
Sacramento, CA 95814
916-321-4444
Fax: 916-441-7597
Email: imcglone@boutinjones.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert D. Swanson**
Boutin Jones Inc.
555 Capitol Mall
Suite 1500
Sacramento, CA 95814
916-321-4444

APPX001

Email: rswanson@boutinjones.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Miller Mendel, Inc.**                    represented by **Jarrett S. Osborne-Revis**
Buchalter, A Professional Corporation
500 Capitol Mall
Suite 1900
Sacramento, CA 95814
916-945-5190
Fax: n/a
Email: josbornerevis@buchalter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua Robbins**
Buchalter, A Professional Corporation
.
18400 Von Karman, Suite 800
Irvine, CA 92612-0514
949-760-1121
Fax: 949-720-0182
Email: jrobbins@buchalter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kurt M. Rylander , PHV**
Rylander & Associates PC
P.O. Box 250
Vancouver, WA 98666
360-750-9931
Email: rylander@rylanderlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert Scott McWhorter**
Buchalter, A Professional Corporation
500 Capitol Mall
Suite 1900
Sacramento, CA 95814
916-945-5188
Fax: 213-896-0400
Email: rmcwhorter@buchalter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Harry W R Chamberlain , II**
Buchalter, A Professional Corporation
1000 Wilshire Blvd.
Suite 1500
Los Angeles, CA 90017
213-891-5115
Email: hchamberlain@buchalter.com
*ATTORNEY TO BE NOTICED*

**Defendant**

APPX002

**Tyler Miller** represented by **Jarrett S. Osborne-Revis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua Robbins**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kurt M. Rylander , PHV**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert Scott McWhorter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Harry W R Chamberlain , II**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/05/2022 | 1 | COMPLAINT against All Defendants by Guardian Alliance Technologies, Inc. (Filing fee $ 402, receipt number ACAEDC-10367327) (Attachments: # 1 Exhibits 1 - 32, # 2 Civil Cover Sheet, # 3 Corporate Disclosure Statement)(Swanson, Robert) (Entered: 08/05/2022) |
| 08/05/2022 | 2 | SUMMONS ISSUED as to *Tyler Miller, Miller Mendel, Inc.* with answer to complaint due within *21* days. Attorney *Robert D. Swanson* *Boutin Jones, Inc.* *555 Capitol Mall, Suite 150* *Sacramento, California 95814-4603*. (Reader, L) (Entered: 08/05/2022) |
| 08/05/2022 | 3 | CIVIL NEW CASE DOCUMENTS ISSUED; (Attachments: # 1 Consent Form, # 2 VDRP) (Reader, L) (Entered: 08/05/2022) |
| 08/09/2022 | 4 | MINUTE ORDER (Text Only) issued by courtroom deputy for Senior District Judge, Morrison C. England, Jr.: On the Court's own motion and pursuant to the senior status of District Judge Morrison C. England, Jr., the Clerk's Office is directed to reassign this case to another district judge for all further proceedings. (Deutsch, S) (Entered: 08/09/2022) |
| 08/09/2022 | 5 | CLERK'S NOTICE: Pursuant to the 4 Minute Order Reassigning Case, this action is Randomly REASSIGNED to District Judge William B. Shubb for all further proceedings. District Judge Morrison C. England, Jr. is no longer associated with this case. The case number on all future filed documents shall be: 2:22-cv-1390 WBS AC. (TEXT ONLY ENTRY)(Donati, J) (Entered: 08/09/2022) |
| 08/09/2022 | 6 | AMENDED CIVIL NEW CASE DOCUMENTS ISSUED; Initial Scheduling Conference set for 12/5/2022 at 01:30 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Attachments: # 1 Consent Form, # 2 VDRP) (Donati, J) (Entered: 08/09/2022) |
| 08/09/2022 | 7 | PRO HAC VICE APPLICATION and PROPOSED ORDER submitted by Guardian Alliance Technologies, Inc. for attorney Douglas J. Sorocco to appear Pro Hac Vice. (Filing fee $ 225, receipt number ACAEDC-10372292) (Attachments: # 1 Certificate of Good Standing)(Stouder, Daniel) (Entered: 08/09/2022) |
| 08/09/2022 | 8 | PRO HAC VICE APPLICATION and PROPOSED ORDER submitted by Guardian Alliance Technologies, Inc. for attorney Evan W. Talley to appear Pro Hac Vice. (Filing fee $ 225, receipt number ACAEDC-10372319) (Attachments: # 1 Certificate of Good Standing)(Stouder, Daniel) (Entered: 08/09/2022) |
| 08/11/2022 | 9 | ORDER signed by Senior Judge William B. Shubb on 08/10/22 GRANTING 7 Application for Pro Hac Vice. Added attorney Douglas J. Sorocco, PHV for Guardian Alliance Technologies, Inc. The Pro Hac Vice attorney is directed to request electronic filing access through PACER. (Benson, A.) (Entered: 08/11/2022) |

| 08/11/2022 | 10 | ORDER signed by Senior Judge William B. Shubb on 08/10/22 GRANTING 8 Application for Pro Hac Vice. Added attorney Evan W. Talley, PHV for Guardian Alliance Technologies, Inc.. The Pro Hac Vice attorney is directed to request electronic filing access through PACER. (Benson, A.) (Entered: 08/11/2022) |
|---|---|---|
| 10/11/2022 | 11 | MOTION to STRIKE Pursuant to CCP 425.16. by Tyler Miller, Miller Mendel, Inc. Attorney Osborne-Revis, Jarrett S. added. Motion Hearing set for 1/9/2023 at 01:30 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Osborne-Revis, Jarrett) Modified on 10/14/2022 (Reader, L.) (Entered: 10/11/2022) |
| 10/11/2022 | 12 | MOTION to DISMISS by Tyler Miller, Miller Mendel, Inc.. Attorney McWhorter, Robert Scott added. Motion Hearing set for 1/9/2023 at 01:30 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (McWhorter, Robert) (Entered: 10/11/2022) |
| 10/11/2022 | 13 | MEMORANDUM by Tyler Miller, Miller Mendel, Inc. in SUPPORT of 12 Motion to Dismiss. (McWhorter, Robert) (Entered: 10/11/2022) |
| 10/11/2022 | 14 | REQUEST for JUDICIAL NOTICE by Tyler Miller, Miller Mendel, Inc. in re 12 Motion to Dismiss. (McWhorter, Robert) (Entered: 10/11/2022) |
| 10/11/2022 | 15 | DECLARATION of Kurt M. Rylander in support of 12 Motion to Dismiss, 11 Motion to Strike,. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M) (McWhorter, Robert) Modified on 10/14/2022 (Reader, L.) (Entered: 10/11/2022) |
| 10/11/2022 | 16 | CORPORATE DISCLOSURE STATEMENT by Defendants Tyler Miller, Miller Mendel, Inc.. (McWhorter, Robert) (Entered: 10/11/2022) |
| 10/11/2022 | 17 | MINUTE ORDER (TEXT ONLY): The parties are hereby notified that the Scheduling Conference is continued from 12/5/2022 to 2/27/2023 at 01:30 PM before Senior Judge William B. Shubb. A Joint Status Report shall be filed no later than 2/13/2023, pursuant to the Court's 6 Order Re: Status (Pretrial Scheduling) Conference filed 8/9/2022. (Kirksey Smith, K) (Entered: 10/11/2022) |
| 10/14/2022 | 18 | PRO HAC VICE APPLICATION and PROPOSED ORDER submitted by Tyler Miller, Miller Mendel, Inc. for attorney Kurt M. Rylander to appear Pro Hac Vice. (Filing fee $ 225, receipt number ACAEDC-10495712) (Attachments: # 1 Certificate of Record of Good Standing)(McWhorter, Robert) (Entered: 10/14/2022) |
| 10/17/2022 | 19 | ORDER signed by Senior Judge William B. Shubb on 10/17/22 GRANTING 18 Application for Pro Hac Vice. Added attorney Kurt M. Rylander, PHV for Tyler Miller and Miller Mendel, Inc. The Pro Hac Vice attorney is directed to request electronic filing access through PACER. (Her, S) (Entered: 10/17/2022) |
| 10/18/2022 | 20 | NOTICE of APPEARANCE by Joshua Robbins on behalf of Tyler Miller, Miller Mendel, Inc.. Attorney Robbins, Joshua added. (Robbins, Joshua) (Entered: 10/18/2022) |
| 10/21/2022 | 21 | STIPULATION and PROPOSED ORDER for Adjusting Briefing Schedule for Defendants' Special 11 Motion to Strike and 12 Motion to Dismiss by Guardian Alliance Technologies, Inc. (Swanson, Robert) Modified on 10/24/2022 (Benson, A.). (Entered: 10/21/2022) |
| 10/21/2022 | 22 | EX PARTE APPLICATION by Guardian Alliance Technologies, Inc. for Limited and Specified Discovery Directed to Defendants' Special Anti-SLAPP Motion to Strike. (Attachments: # 1 Declaration of Evan W. Talley, # 2 Exhibit 1, # 3 Proposed Order)(Swanson, Robert) Modified on 10/24/2022 (Benson, A.). (Entered: 10/21/2022) |
| 10/24/2022 | 23 | STIPULATION and ORDER adjusting briefing schedule 21 signed by Senior Judge William B. Shubb on 10/24/2022: 1. Plaintiff's deadline to file and serve an opposition brief to each motion is 11/11/2022; 2. Defendants' deadline to file and serve a reply brief in support of each motion is 12/1/2022; and 3. The hearing date for each motion remains 1/9/2023 at 1:30 p.m., as scheduled. (Kirksey Smith, K) (Entered: 10/24/2022) |
| 10/25/2022 | 24 | OPPOSITION by Tyler Miller, Miller Mendel, Inc. to 22 Ex Parte Application,. (McWhorter, Robert) (Entered: 10/25/2022) |
| 10/26/2022 | 25 | REPLY by Guardian Alliance Technologies, Inc. in support of 22 Ex Parte Application. (Stouder, Daniel) Modified on 10/27/2022 (Benson, A.) (Entered: 10/26/2022) |
| 10/31/2022 | 26 | MINUTE ORDER (TEXT ONLY): The Court HEREBY ORDERS Plaintiff's Ex Parte Application for Limited and Specified Discovery 22 REFERRED to the assigned Magistrate Judge, Allison Claire. (Kirksey Smith, K) (Entered: 10/31/2022) |

| | | |
|---|---|---|
| 11/08/2022 | 27 | ASSOCIATION of ATTORNEY: Added attorney Ian Keller McGlone for Guardian Alliance Technologies, Inc.. (McGlone, Ian) (Entered: 11/08/2022) |
| 11/14/2022 | 28 | OPPOSITION by Guardian Alliance Technologies, Inc. to 11 Motion to Strike,. (Talley, Evan) (Entered: 11/15/2022) |
| 11/15/2022 | 29 | DECLARATION of Adam Anthony in opposition to 11 Motion to Strike. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(Talley, Evan) Modified on 11/16/2022 (Coll, A). (Entered: 11/15/2022) |
| 11/15/2022 | 30 | OPPOSITION by Guardian Alliance Technologies, Inc. to 12 Motion to Dismiss. (Talley, Evan) (Entered: 11/15/2022) |
| 11/16/2022 | 31 | CERTIFICATE / PROOF of SERVICE by Guardian Alliance Technologies, Inc. re 6 Civil New Case Documents for WBS. (Swanson, Robert) (Entered: 11/16/2022) |
| 11/28/2022 | 32 | STIPULATION and PROPOSED ORDER for Adjusting Briefing Schedule for Defendants' Special Motion to Strike and Motion to Dismiss by Tyler Miller, Miller Mendel, Inc.. (Osborne-Revis, Jarrett) (Entered: 11/28/2022) |
| 12/01/2022 | 33 | STIPULATION and ORDER signed by Senior Judge William B. Shubb on 11/30/22 EXTENDING the deadline for MMI's to file and serve reply briefs for its motions to 12/8/22. The hearing date for each motion remains 1/9/23, at 1:30 p.m. (Kastilahn, A) (Entered: 12/01/2022) |
| 12/08/2022 | 34 | ORDER STAYING CASE signed by Senior Judge William B. Shubb on 12/7/22 DENYING without prejudice defendants' 11 Motion to Strike and 12 Motion to Dismiss, and the hearing on those motions set for 1/9/23, and any other deadlines in this case are VACATED. All proceedings in this case are STAYED pending final adjudication of the validity of the '098 and '188 Patents by the Federal Circuit. The parties shall file a joint status report within 14 days after all proceedings in the Federal Circuit regarding the '098 and '188 Patents have concluded. (Kastilahn, A) (Entered: 12/08/2022) |
| 12/09/2024 | 35 | JOINT STATUS REPORT by Guardian Alliance Technologies, Inc.. (Talley, Evan) (Entered: 12/09/2024) |
| 12/11/2024 | 36 | ORDER signed by Senior District Judge William B. Shubb on 12/10/2024 LIFTING STAY and setting a Status Conference for 2/24/2025 at 01:30 PM in Courtroom 5 (WBS) before Senior District Judge William B. Shubb. Parties to file a Joint Status Report 30 days prior to the status conference. (Zignago, K.) (Entered: 12/11/2024) |
| 01/24/2025 | 37 | JOINT STATUS REPORT by Guardian Alliance Technologies, Inc.. (Talley, Evan) (Entered: 01/24/2025) |
| 02/24/2025 | 38 | MINUTES (Text Only) for proceedings held before Senior District Judge William B. Shubb: STATUS CONFERENCE held on 2/24/2025. Court confers with counsel re the parties' joint status report filed 1/24/2025 37 , status of the Oklahoma case and setting of a settlement conference in this instant action. Plaintiff's counsel informs the Court that the parties are awaiting the issuance of a settlement conference date and scheduling order, that plaintiff will be filing a motion to transfer the Oklahoma case to this court, and that plaintiff prefers to hold a settlement conference in this action now. Defense counsel informs the Court that defendants intend to move forward with the motion to dismiss, and prefers to have a settlement conference held in this case after ruling on the motion. Court to issue a separate order. Plaintiff's Counsel Evan Talley, Douglas Sorocco, Robert Swanson present. Defendants' Counsel Jarrett Osborne-Revis present. Court Reporter: Kimberly Bennett. (Deputy Clerk KKS) (Entered: 02/24/2025) |
| 02/24/2025 | 39 | ORDER signed by Senior District Judge William B. Shubb on 2/24/2025: Per the parties' Joint Status Report (Docket No. 37 ) and their discussion at the Status Conference on 2/24/2025, defendant's Motion Dismiss and Motion to Strike are hereby set for hearing on 4/28/2025 at 01:30 PM in Courtroom 5 (WBS) before Senior District Judge William B. Shubb. Defendants shall file their motions on or before 3/7/2025. Plaintiff's opposition is due by 4/7/2025. Defendants' reply is due by 4/21/2025. Counsel for all parties shall personally appear at the hearing, and no appearances via telephone or videoconference will be allowed. (Deputy Clerk KKS) (Entered: 02/24/2025) |
| 03/07/2025 | 40 | MOTION to DISMISS by Tyler Miller, Miller Mendel, Inc.. Motion Hearing set for 4/28/2025 at 01:30 PM in Courtroom 5 (WBS) before Senior District Judge William B. Shubb. (Attachments: # 1 Request for Judicial Notice, # 2 Declaration of Kurt Rylander)(McWhorter, Robert) (Entered: 03/07/2025) |
| 03/07/2025 | 41 | SPECIAL MOTION to STRIKE by Tyler Miller, Miller Mendel, Inc.. Motion Hearing set for 4/28/2025 at 01:30 PM in Courtroom 5 (WBS) before Senior District Judge William B. Shubb. (McWhorter, Robert) Modified on 3/12/2025 (KEZ). (Entered: 03/07/2025) |

| 04/07/2025 | 42 | OPPOSITION by Guardian Alliance Technologies, Inc. to 41 Motion to Strike. (Talley, Evan) (Entered: 04/07/2025) |
| 04/07/2025 | 43 | SUPPLEMENTAL DECLARATION of Adam Anthony in support of 42 Opposition. (Attachments: # 1 Exhibit 1 - Rylander Oct. 2017 Letter, # 2 Exhibit 2 - Opinion Letter, # 3 Exhibit 3 - March 2018 Letter to Rylander, # 4 Exhibit 4 - Rylander March 2018 Letter, # 5 Exhibit 5 - Open Letter)(Talley, Evan) Modified on 4/9/2025 (AJB). (Entered: 04/07/2025) |
| 04/07/2025 | 44 | OPPOSITION by Guardian Alliance Technologies, Inc. to 40 Motion to Dismiss,. (Talley, Evan) (Entered: 04/07/2025) |
| 04/21/2025 | 45 | REPLY by Tyler Miller, Miller Mendel, Inc. re 40 Motion to Dismiss,. (Osborne-Revis, Jarrett) (Entered: 04/21/2025) |
| 04/21/2025 | 46 | REPLY by Tyler Miller, Miller Mendel, Inc. re 41 Motion to Strike. Attorney Chamberlain, Harry W R added. (Chamberlain, Harry) (Entered: 04/21/2025) |
| 04/28/2025 | 47 | MINUTES (Text Only) for proceedings held before Senior District Judge William B. Shubb: MOTIONS HEARING held on 4/28/2025 re Defendants' Motion Dismiss 40 and Defendants' Special Motion to Strike 41 . Counsel argue. MOTIONS SUBMITTED. The Court to issue a separate order. Plaintiff's Counsel Bob Swanson, Evan Talley, Doug Sorocco present. Defendants' Counsel Jarrett Osborne-Revis, Harry Chamberlain, II, Kurt Rylander present. Court Reporter: Abigail Torres. (Deputy Clerk KKS) (Entered: 04/28/2025) |
| 04/30/2025 | 48 | MEMORANDUM and ORDER re DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE signed by Senior District Judge William B. Shubb on 4/30/2025: IT IS ORDERED that defendants' motion to strike (Docket No. 41 ) be, and the same hereby is, DENIED. IT IS FURTHER ORDERED that defendants' motion to dismiss (Docket No. 40 ) be, and the same hereby is, GRANTED only as to the eighth claim for false advertising and eleventh claim for trade libel. The motion is DENIED in all other respects. Plaintiff has 14 days from the date of this Order to file an amended complaint, if it can do so consistent with this Order. Within 21 days of the issuance of this Order, the parties shall file a joint status report addressing (1) whether this court should issue a pretrial scheduling order, and if so what dates the parties desire and any other information required under Federal Rule of Civil Procedure 26(f) (see Docket No. 6 ); (2) whether the parties wish to proceed to settlement discussions, and if so whether they would like the court to refer the matter to the court's Voluntary Dispute Resolution Program ("VDRP") or a settlement conference with a magistrate judge; and (3) any other matter of which the parties think the court should be informed. (Deputy Clerk KKS) (Entered: 04/30/2025) |
| 05/01/2025 | 49 | TRANSCRIPT REQUEST by Guardian Alliance Technologies, Inc. for proceedings held on 04/28/2025 before Judge Shubb. Court Reporter Abigail Torres. (Sorocco, Douglas) (Entered: 05/01/2025) |
| 05/06/2025 | 50 | TRANSCRIPT of Motion to Dismiss/Motion to Strike held on 4/28/25, before Senior District Judge William B. Shubb, filed by Court Reporter Abigail Torres, Phone number 916-930-4116 E-mail a.torres.reporting@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction must be filed within 5 court days. Redaction Request due 5/30/2025. Redacted Transcript Deadline set for 6/6/2025. Release of Transcript Restriction set for 8/4/2025. (Torres, A) (Entered: 05/06/2025) |
| 05/14/2025 | 51 | FIRST AMENDED COMPLAINT against All Defendants by Guardian Alliance Technologies, Inc. (Attachments: # 1 Exhibit 1 - '098 Patent, # 2 Exhibit 2 - '188 Patent, # 3 Exhibit 3 - 12.9.14 Amd and Rsp in 098 Pros, # 4 Exhibit 4 - 8.9.12 Email, # 5 Exhibit 5 - 2.28.14 Email, # 6 Exhibit 6 - 10.23.17 Amd and Rsp to O/A, # 7 Exhibit 7 - 12.26.17 Office Action, # 8 Exhibit 8 - 3.7.18 Interview Summary, # 9 Exhibit 9 - 6.22.18 NOA, # 10 Exhibit 10 - 3.10.14 Final Rejection '098 Pros, # 11 Exhibit 11 - Proposed Agenda from March 2018 Interview Summary, # 12 Exhibit 12 - April 26, 2018 Rsp to Non-Final Office Action, # 13 Exhibit 13 - June 22, 2018 NOA, # 14 Exhibit 14 - Order for Motion for Judgment on the Pleadings, # 15 Exhibit 15 - Order Denying Motion for Reconsideration, # 16 Exhibit 16 - 6.22.2022 Non-Final Rejection, # 17 Exhibit 17 - Decision on Appeal, # 18 Exhibit 18 - 10.10.17 MMI Letter, # 19 Exhibit 19 - '098 Opinion Letter, # 20 Exhibit 20 - 3.23.18 Letter to Rylander, # 21 Exhibit 21 - 3.30.18 MMI Letter, # 22 Exhibit 22 - 2.24.20 Comm from MMI to Gilbert PD, # 23 Exhibit 23 - 2020.3.27 Gilbert County Sheriff's Office, # 24 Exhibit 24 - 8.16.21 Comm with Fresno PD, # 25 Exhibit 25 - Ft. Worth Contract Suspension, # 26 Exhibit 26 - 1.24.22 Cedar Rapids Iowa, # 27 Exhibit 27 - 3.26.20 Comm Alaska, # 28 Exhibit 28 - August 2021 Comm to MMI Counsel, # 29 Exhibit 29 - Post on MMI Website, # 30 Exhibit 30 - Open Letter, # 31 |

| 05/21/2025 | 52 | JOINT STATUS REPORT by Guardian Alliance Technologies, Inc.. (Talley, Evan) (Entered: 05/21/2025) |
| --- | --- | --- |
| 05/28/2025 | 53 | ANSWER with Jury Demand by Tyler Miller, Miller Mendel, Inc..(McWhorter, Robert) (Entered: 05/28/2025) |
| 05/30/2025 | 54 | MOTION to CHANGE VENUE by Tyler Miller, Miller Mendel, Inc. Motion Hearing SET for 7/21/2025 at 01:30 PM in Courtroom 5 (WBS) before Senior District Judge William B. Shubb. (Attachments: # 1 Declaration of Kurt Rylander)(Rylander, Kurt) Modified on 6/4/2025 (LMS). (Entered: 05/30/2025) |
| 06/17/2025 | 55 | STIPULATION to Alter Briefing Schedule on 54 Defendants' Motion to Transfer Venue by Guardian Alliance Technologies, Inc. (Talley, Evan) Modified on 6/18/2025 (AJB). (Entered: 06/17/2025) |
| 06/17/2025 | 56 | PROPOSED ORDER re 55 Stipulation by Guardian Alliance Technologies, Inc. (Talley, Evan) Modified on 6/18/2025 (AJB). (Entered: 06/17/2025) |
| 06/18/2025 | 57 | ORDER signed by Senior District Judge William B. Shubb on 6/18/2025 ORDERING that Plaintiff's opposition to the Motion to Transfer shall be filed on or before 6/20/2025; and Defendants' reply in support of their Motion to Transfer shall be filed on or before 7/7/2025. (Deputy Clerk LMS) (Entered: 06/18/2025) |
| 06/20/2025 | 58 | OPPOSITION by Guardian Alliance Technologies, Inc. to 54 Motion to Change Venue. (Attachments: # 1 Exhibit 1 - OK Action Docket Sheet)(Talley, Evan) (Entered: 06/20/2025) |
| 06/27/2025 | 59 | REPLY by Tyler Miller, Miller Mendel, Inc. to 58 Opposition to Motion to Change Venue,. (Attachments: # 1 Declaration)(McWhorter, Robert) Modified on 6/30/2025 (VLK). (Entered: 06/27/2025) |
| 07/16/2025 | 60 | MINUTE ORDER issued by Courtroom Deputy for Magistrate Judge Erica P. Grosjean on July 16, 2025: Pursuant to agreement by the parties, the Court sets a Settlement Conference set for 8/26/2025 at 01:00 PM in Courtroom 10 (EPG) before Magistrate Judge Erica P. Grosjean. A further order to be issued advising of her Settlement Conference practices at a later date. (Text Only Entry) (Deputy Clerk FMN) (Entered: 07/16/2025) |
| 07/17/2025 | 61 | ORDER Regarding Settlement Conference Procedures signed by Magistrate Judge Erica P. Grosjean on July 17, 2025. (Deputy Clerk FMN) (Entered: 07/17/2025) |
| 07/21/2025 | 62 | MINUTES (Text Only) for proceedings held before Senior District Judge William B. Shubb: MOTION HEARING held on 7/21/2025 re Defendants' Motion to Change Venue 54 . Counsel argue. MOTION SUBMITTED. The Court to issue a separate order. Plaintiff's Counsel Evan Talley present. Defendants' Counsel Kurt Rylander (via telephone), Jarrett Osborne-Revis, Greg Cheney present. Court Reporter: Jennifer Coulthard. (Deputy Clerk KKS) (Entered: 07/21/2025) |
| 07/22/2025 | 63 | ORDER signed by Senior District Judge William B. Shubb on 7/22/2025 DENYING Defendants' Motion to Change Venue 54 . (Deputy Clerk KKS) (Entered: 07/22/2025) |
| 07/23/2025 | 64 | STATUS PRETRIAL SCHEDULING ORDER signed by Senior Judge William B. Shubb on 07/22/25 ORDERING that parties shall serve initial disclosures by 06/03/25; Designation of Expert Witnesses due by 01/30/26 with any rebuttal disclosures due by 03/13/26; all Discovery shall be completed by 05/01/26; Non-Dispositive Motions to Compel Discovery shall be heard no later than 05/01/26; Motions filed by 06/01/26; Final Pretrial Conference set for 08/10/26 at 01:30 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb with separate pretrial statements due pursuant to Local Rules 281 and 282; a Settlement Conference will be set at the time of the Pretrial Conference; Jury Trial set for 10/06/26 at 09:00 AM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Deputy Clerk KML) (Entered: 07/23/2025) |
| 08/21/2025 | 65 | MOTION for JUDGMENT on the Pleadings by Guardian Alliance Technologies, Inc.. Motion Hearing set for 11/24/2025 at 01:30 PM in Courtroom 5 (WBS) before Senior District Judge William B. Shubb. (Attachments: # 1 Exhibit 1 - '188 Patent, # 2 Exhibit 2 - '098 Patent, # 3 Exhibit 3 - ED Tex Invalidity Decision, # 4 Exhibit 4 - ED Tex Reconsideration Decision, # 5 Exhibit 5 - Federal Circuit Decision, # 6 Exhibit 6 - Independent Claim Comparison, # 7 Exhibit 7 - Claim 2, 6, 10 Comparison, # 8 Exhibit 8 - Claim 3, 7, 11 Comparison, # 9 Exhibit 9 - Claim 4, 8, 12 Comparison, # 10 Exhibit 10 - Claim 13 Comparison, # 11 Exhibit 11 - Claim 14 Comparison)(Talley, Evan) (Entered: 08/21/2025) |

**PACER Service Center**

**Transaction Receipt**

**U.S. District Court**
**Western District of Oklahoma[LIVE] (Oklahoma City)**
**CIVIL DOCKET FOR CASE #: 5:18-cv-00990-JD**

Miller Mendel Inc et al v. Oklahoma City City of
Assigned to: Honorable Jodi W. Dishman
Cause: 28:1331 Fed. Question

Date Filed: 10/09/2018
Jury Demand: Both
Nature of Suit: 830 Patent
Jurisdiction: Federal Question

**Plaintiff**

**Miller Mendel Inc**
*a Washington Corporation*

represented by **Paul E Rossler**
Gable & Gotwals-TULSA
110 N Elgin Ave
Suite 200
Tulsa, OK 74120-1495
918-595-4800
Email: prossler@gablelaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Todd A Nelson**
Gable & Gotwals-TULSA
110 N Elgin Ave
Suite 200
Tulsa, OK 74120-1495
918-595-4800
Email: tnelson@gablelaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kurt M Rylander**
Rylander & Associates PC
PO Box 250
Vancouver, WA 98666
360-750-9931
Fax: 360-397-0473
Email: rylander@rylanderlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mark E Beatty**
Rylander & Associates PC
PO Box 250
Vancouver, WA 98666
360-750-9931
Fax: 360-397-0473
Email: beatty@rylanderlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Tyler Miller**
*an Oregon state resident*

represented by **Paul E Rossler**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

APPX008

**Todd A Nelson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kurt M Rylander**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mark E Beatty**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Oklahoma City City of**                    represented by    **Douglas J Sorocco**
*a municipal corporation*                                      Dunlap Codding PC - OKLAHOMA CITY
*TERMINATED: 05/19/2025*                                       609 W Sheridan Ave
                                                              Oklahoma City, OK 73102
                                                              405-607-8600
                                                              Fax: 405-607-8686
                                                              Email: dsorocco@dunlapcodding.com
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Evan W Talley**
                                                              Ryan Whaley, PLLC
                                                              400 N. Walnut
                                                              Oklahoma City, OK 73104
                                                              405-607-8600
                                                              Email: etalley@ryanwhaley.com
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Jordan Sigale**
                                                              Porter Wright Morris & Arthur
                                                              321 N. Clark
                                                              Suite 400
                                                              Chicago, IL 60654
                                                              312-756-8468
                                                              Fax: 312-444-9287
                                                              Email: jsigale@vedderprice.com
                                                              *TERMINATED: 12/14/2021*

**Defendant**

**Guardian Alliance Technologies, Inc.**      represented by    **Douglas J Sorocco**
*TERMINATED: 12/10/2019*                                        (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Evan W Talley**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Jordan Sigale**
                                                              (See above for address)
                                                              *TERMINATED: 12/14/2021*

**Defendant**

**Guardian Alliance Technologies, Inc.**      represented by    **Douglas J Sorocco**
*a Delaware corporation*                                        (See above for address)

*ATTORNEY TO BE NOTICED*

**Evan W Talley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jordan Sigale**
(See above for address)
*TERMINATED: 12/14/2021*

**Movant**

**Guardian Alliance Technologies, Inc.**          represented by          **Sherrie Marie Flynn**
Coleman & Horowitt, LLP
499 W. Shaw Ave.
Suite 116
Fresno, CA 93704
559-248-4820
Fax: 559-248-4830
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Douglas J Sorocco**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Evan W Talley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jordan Sigale**
(See above for address)
*TERMINATED: 12/14/2021*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/09/2018 | 1 | COMPLAINT against Oklahoma City City of filed by Miller Mendel Inc, Tyler Miller. (Attachments: # 1 Exhibit 1 - United States Patent, # 2 Civil Cover Sheet)(kmt) (Entered: 10/09/2018) |
| 10/09/2018 | 2 | Summons Issued Electronically as to Oklahoma City City of. (kmt) (Entered: 10/09/2018) |
| 10/09/2018 |  | PAYMENT FOR A CIVIL CASE Filing fee $ 400, receipt number 1087-2787755. (Nelson, Todd) (Entered: 10/09/2018) |
| 10/09/2018 | 3 | ENTRY of Appearance by Todd A Nelson on behalf of Tyler Miller, Miller Mendel Inc (Nelson, Todd) (Entered: 10/09/2018) |
| 10/09/2018 | 4 | MOTION for Leave to Appear Pro Hac Vice *(Kurt M. Rylander)* Filing fee $ 50, receipt number 1087-2787873 by Tyler Miller, Miller Mendel Inc. (Attachments: # 1 Exhibit 1-Request for Admission PHV) (Nelson, Todd) (Entered: 10/09/2018) |
| 10/09/2018 | 5 | DISCLOSURE STATEMENT - CORPORATE by Miller Mendel Inc . (Nelson, Todd) (Entered: 10/09/2018) |
| 10/09/2018 | 6 | ENTRY of Appearance by Paul E Rossler on behalf of Tyler Miller, Miller Mendel Inc (Rossler, Paul) (Entered: 10/09/2018) |
| 10/11/2018 | 7 | ORDER granting 4 Motion to Appear Pro Hac Vice; Kurt M. Rylander is admitted to practice before this Court for the limited purpose of participating in this case on behalf of plaintiffs, provided counsel submits an ECF registration form and files an entry of appearance, consistent with LCvR 83.4. Signed by Honorable Vicki Miles-LaGrange on 10/11/2018. (ks) (Entered: 10/11/2018) |
| 10/16/2018 | 8 | SUMMONS Returned Executed by Miller Mendel Inc, Tyler Miller. Oklahoma City City of served on 10/10/2018. (Nelson, Todd) (Entered: 10/16/2018) |

| Date | No. | Description |
|---|---|---|
| 10/29/2018 | 9 | ENTRY of Appearance by Kurt M Rylander on behalf of ALL Plaintiffs (Rylander, Kurt) (Entered: 10/29/2018) |
| 10/30/2018 | 10 | ENTRY of Appearance by Douglas J Sorocco on behalf of Oklahoma City City of (Sorocco, Douglas) (Entered: 10/30/2018) |
| 10/30/2018 | 11 | UNOPPOSED MOTION for Extension of Time to File Answer re 1 Complaint *or otherwise respond* by Oklahoma City City of. (Sorocco, Douglas) (Entered: 10/30/2018) |
| 10/30/2018 | 12 | ENTRY of Appearance by Evan W Talley on behalf of Oklahoma City City of (Talley, Evan) (Entered: 10/30/2018) |
| 11/02/2018 | 13 | ORDER granting 11 the defendant City of Oklahoma City's unopposed motion for extension of time to file answer or otherwise respond. Defendant shall answer or otherwise respond to plaintiffs' Complaint on or before November 30, 2018. Signed by Honorable Joe Heaton on 11/2/2018. (ks) (Entered: 11/02/2018) |
| 11/20/2018 | 14 | ENTER ORDER REASSIGNING CASE. Case reassigned to Honorable Joe Heaton for all further proceedings. Honorable Vicki Miles-LaGrange no longer assigned to case. (fully set out in order) By direction of Honorable Joe Heaton on 11/20/2018. (sr) (Entered: 11/20/2018) |
| 11/30/2018 | 15 | MOTION to Dismiss *Complaint* by Oklahoma City City of. (Attachments: # 1 Exhibit 188' Patent, # 2 Exhibit 12/26/17 USPTO Communication, # 3 Exhibit 4/26/18 USPTO Communication, # 4 Exhibit Notice of Allowability)(Sorocco, Douglas) (Entered: 11/30/2018) |
| 12/11/2018 | 16 | MOTION for Extension of Time to File Response/Reply as to 15 MOTION to Dismiss *Complaint* by Tyler Miller, Miller Mendel Inc. (Nelson, Todd) (Entered: 12/11/2018) |
| 12/13/2018 | 17 | ORDER granting 16 plaintiffs' agreed motion for extension of time. Plaintiffs shall file their response to defendant's motion to dismiss complaint on or before January 22, 2019. Signed by Magistrate Judge Bernard M. Jones on 12/13/2018. (ks) (Entered: 12/13/2018) |
| 12/21/2018 | 18 | AMENDED COMPLAINT against Oklahoma City City of filed by All Plaintiffs. (Attachments: # 1 Exhibit 1 - US Patent No. 10/043.188)(Nelson, Todd) (Entered: 12/21/2018) |
| 01/03/2019 | 19 | UNOPPOSED MOTION to Amend/Correct 18 Amended Complaint by Tyler Miller, Miller Mendel Inc. (Attachments: # 1 Exhibit 1-First Amended Complaint Corrected)(Nelson, Todd) (Entered: 01/03/2019) |
| 01/07/2019 | 20 | ORDER REASSIGNING CASE. Case reassigned to Honorable Robin J. Cauthron for all further proceedings. Honorable Joe Heaton no longer assigned to case. Signed by Honorable Joe Heaton on 1/7/2019. (ks) (Entered: 01/07/2019) |
| 01/11/2019 | 21 | ORDER granting 19 Motion to Amend/Correct. Signed by Honorable Robin J. Cauthron on 01/11/19. (wh) (Entered: 01/11/2019) |
| 01/11/2019 | 22 | AMENDED COMPLAINT against Oklahoma City City of filed by All Plaintiffs. (Attachments: # 1 Exhibit 1 - U.S. Patent No 10043188)(Nelson, Todd) (Entered: 01/11/2019) |
| 01/13/2019 | 23 | MOTION to Dismiss - *Renewed* by Oklahoma City City of. (Sorocco, Douglas) (Entered: 01/13/2019) |
| 01/18/2019 | 24 | Report Regarding Patent and Trademark (em) (Entered: 01/18/2019) |
| 02/01/2019 | 25 | RESPONSE in Opposition re 15 MOTION to Dismiss *Complaint*, 23 MOTION to Dismiss - *Renewed* filed by Tyler Miller, Miller Mendel Inc. (Attachments: # 1 Appendix 1: 188 Patent Representative Claim 1, # 2 Appendix 2: Claim Comparison Alice v 188 Patent, # 3 Appendix 3: Chart of Claims Found Patent Eligible-Valid Under Alice, # 4 Appendix 4: USPTO Flow Chart for 2019 Guidance)(Nelson, Todd) (Entered: 02/01/2019) |
| 02/06/2019 | 26 | UNOPPOSED MOTION for Extension of Time to File Response/Reply as to 23 MOTION to Dismiss - *Renewed*, 25 Response in Opposition to Motion, by Oklahoma City City of. (Talley, Evan) (Entered: 02/06/2019) |
| 02/07/2019 | 27 | ORDER granting 26 Unopposed Motion for Extension of Time to File Reply. Defendant shall file its reply by 2/15/2019. Signed by Honorable Robin J. Cauthron on 02/07/19. (wh) (Entered: 02/07/2019) |
| 02/15/2019 | 28 | REPLY to Response to Motion re 23 MOTION to Dismiss - *Renewed* filed by Oklahoma City City of. (Attachments: # 1 Exhibit Proposed Guidance, # 2 Exhibit Memo, # 3 Exhibit MPEP Excerpt)(Sorocco, Douglas) (Entered: 02/15/2019) |

| 02/20/2019 | 29 | MOTION for Leave *to File Surreply* by Tyler Miller, Miller Mendel Inc. (Nelson, Todd) (Entered: 02/20/2019) |
|---|---|---|
| 02/21/2019 | 30 | ORDER granting 29 Plaintiffs' Motion for Leave to File Surreply. Signed by Honorable Robin J. Cauthron on 02/21/19. (wh) (Entered: 02/21/2019) |
| 02/22/2019 | 31 | SURREPLY re 28 Reply to Response to Motion filed by Tyler Miller, Miller Mendel Inc. (Nelson, Todd) (Entered: 02/22/2019) |
| 03/12/2019 | 32 | ORDER denying 15 Motion to Dismiss; denying 23 Motion to Dismiss. Signed by Honorable Robin J. Cauthron on 03/12/2019. (em) (Entered: 03/12/2019) |
| 03/26/2019 | 33 | ANSWER to 22 Amended Complaint by Oklahoma City City of.(Talley, Evan) (Entered: 03/26/2019) |
| 04/19/2019 | 34 | DOCKET: Scheduling Conference set for 5/9/2019 10:10 AM in Chambers, Room 4001, before Honorable Robin J. Cauthron. (wh) (Entered: 04/19/2019) |
| 05/06/2019 | 35 | JOINT STATUS REPORT AND DISCOVERY PLAN by Plaintiffs Tyler Miller, Miller Mendel Inc. (Nelson, Todd) (Entered: 05/06/2019) |
| 05/10/2019 | 36 | SCHEDULING ORDER: Parties to submit joint proposed scheduling order for remaining deadlines in action 30 days after filing by Court of it's claim construction order. Signed by Honorable Robin J. Cauthron on 5/10/19. (wh) (Entered: 05/10/2019) |
| 05/20/2019 | 37 | JOINT MOTION for Extension of Time *to Submit Proposed ESI Discovery Order and Protective Order* by All Plaintiffs. (Nelson, Todd) (Entered: 05/20/2019) |
| 05/21/2019 | 38 | ORDER granting 37 Motion for Extension of Time. The proposed ESI Discovery Order and Protective Order are due by 5/24/19. Signed by Honorable Robin J. Cauthron on 05/21/19. (wh) (Entered: 05/21/2019) |
| 05/23/2019 | 39 | JOINT MOTION for Order *Electronically Stored Information and Discovery Order* by All Plaintiffs. (Nelson, Todd) (Entered: 05/23/2019) |
| 05/24/2019 | 40 | JOINT MOTION for Protective Order by All Plaintiffs. (Nelson, Todd) (Entered: 05/24/2019) |
| 05/28/2019 | 41 | ORDER granting 39 Joint Motion for Electronically Stored Information and Discovery Order. Signed by Honorable Robin J. Cauthron on 05/28/19. (wh) (Entered: 05/28/2019) |
| 05/28/2019 | 42 | ORDER granting 40 Joint Motion for Protective Order. Signed by Honorable Robin J. Cauthron on 05/28/19. (wh) (Entered: 05/28/2019) |
| 06/26/2019 | 43 | NOTICE of Subpoena by Oklahoma City City of *Background Solutions, LLC* (Attachments: # 1 Exhibit 1 - Subpoena)(Talley, Evan) (Entered: 06/26/2019) |
| 07/04/2019 | 44 | NOTICE of Subpoena by Oklahoma City City of *Christensen OConnor Johnson Kindness, PLLC* (Attachments: # 1 Exhibit Subpoena)(Talley, Evan) (Entered: 07/04/2019) |
| 07/04/2019 | 45 | NOTICE of Subpoena by Oklahoma City City of *King County Washington Sheriff* (Attachments: # 1 Exhibit Subpoena)(Talley, Evan) (Entered: 07/04/2019) |
| 07/12/2019 | 46 | NOTICE of Subpoena by Oklahoma City City of *Rylander & Associates, PC* (Attachments: # 1 Exhibit Subpoena to Rylander & Associates, PC)(Talley, Evan) (Entered: 07/12/2019) |
| 07/24/2019 | 47 | ACKNOWLEDGEMENT OF SERVICE Executed as to 44 Notice of Subpoena Acknowledgement filed by Defendant Oklahoma City City of. (Sorocco, Douglas) (Entered: 07/24/2019) |
| 07/24/2019 | 48 | ACKNOWLEDGEMENT OF SERVICE Executed as to 45 Notice of Subpoena Acknowledgement filed by Defendant Oklahoma City City of. (Sorocco, Douglas) (Entered: 07/24/2019) |
| 07/26/2019 | 49 | AFFIDAVIT of Service for Subpoena served on Rylander & Associates on 07/24/19, filed by Defendant Oklahoma City City of. (Sorocco, Douglas) (Entered: 07/26/2019) |
| 08/07/2019 | 50 | RETURN OF SERVICE - NON SUMMONS Rylander & Associates, PC Subpoena with attached exhibits by Oklahoma City City of (Sorocco, Douglas) (Entered: 08/07/2019) |
| 09/04/2019 | 51 | NOTICE of Subpoena by Tyler Miller, Miller Mendel Inc (Attachments: # 1 Exhibit 1-Subpoena)(Nelson, Todd) (Entered: 09/04/2019) |
| 09/11/2019 | 52 | MOTION for Protective Order by Oklahoma City City of. (Talley, Evan) (Entered: 09/11/2019) |

| | | |
|---|---|---|
| 09/17/2019 | 53 | RESPONSE to Motion re 52 MOTION for Protective Order filed by Tyler Miller, Miller Mendel Inc. (Nelson, Todd) (Entered: 09/17/2019) |
| 09/20/2019 | 54 | MOTION to Seal by All Plaintiffs. (Nelson, Todd) (Entered: 09/20/2019) |
| 09/20/2019 | 55 | MOTION to Amend/Correct *Complaint* by All Plaintiffs. (Attachments: # 1 Exhibit 1 Proposed Second Amended Complaint, # 2 Exhibit 1-1 U.S. Patent No. 10,043,188, # 3 Exhibit 1-2 Website, # 4 Exhibit 2 Declaration of Kurt Rylander, # 5 Exhibit 2-A Website, # 6 Exhibit 2-B Notice Letter, # 7 Exhibit 2-C Proposal, # 8 Exhibit 2-D Redacted)(Nelson, Todd) (Entered: 09/20/2019) |
| 09/23/2019 | 56 | ORDER granting 54 Motion to File Under Seal. Signed by Honorable Robin J. Cauthron on 09/23/19. (wh) (Entered: 09/23/2019) |
| 09/23/2019 | 57 | SEALED MOTION by Tyler Miller, Miller Mendel Inc Re: 55 MOTION to Amend/Correct *Complaint* (Nelson, Todd) (Entered: 09/23/2019) |
| 09/24/2019 | 58 | REPLY to Response to Motion re 52 MOTION for Protective Order filed by Oklahoma City City of. (Attachments: # 1 Exhibit 1 - Comms. Between Counsel)(Talley, Evan) (Entered: 09/24/2019) |
| 10/01/2019 | 59 | ORDER denying 52 Motion for Protective Order to Preclude Service of Subpoena. Signed by Honorable Robin J. Cauthron on 10/01/19. (wh) (Entered: 10/01/2019) |
| 10/18/2019 | 60 | STRICKEN - ORDER granting 55 Motion for Leave to File Second Amended Complaint. Plaintiffs to file pleading within 5 days of the date of this order. Signed by Honorable Robin J. Cauthron on 10/18/19. (wh) Modified on 12/10/2019 (wh). (Entered: 10/18/2019) |
| 10/18/2019 | 61 | MOTION to Seal Document by Oklahoma City City of. (Talley, Evan) (Entered: 10/18/2019) |
| 10/18/2019 | 62 | STRICKEN RESPONSE in Opposition re 61 MOTION to Seal Document , 55 MOTION to Amend/Correct *Complaint*, 57 SEALED MOTION by Tyler Miller, Miller Mendel Inc filed by Oklahoma City City of. (Attachments: # 1 Exhibit 1 - Corr. B/t Counsel, # 2 Exhibit 2 - Guardian Corporate Information, # 3 Exhibit 3 - Decl of Adam V. Anthony, # 4 Exhibit 4 - FILED UNDER SEAL -- CONFIDENTIAL)(Talley, Evan) Modified on 10/21/2019 (wh). DOCUMENT DELETED subsequent to counsel refiling correct copy of response brief and attachments as Dkt. No. 63. (Entered: 10/18/2019) |
| 10/18/2019 | 63 | RESPONSE in Opposition re 61 MOTION to Seal Document , 55 MOTION to Amend/Correct *Complaint*, 57 SEALED MOTION by Tyler Miller, Miller Mendel Inc *CORRECTION OF #62* filed by Oklahoma City City of. (Attachments: # 1 Exhibit 1 - Corr. B/T Counsel, # 2 Exhibit 2 - Guardian Corporate Information, # 3 Exhibit 3 - Decl of Adam V. Anthony, # 4 Exhibit 4 - FILED UNDER SEAL -- CONFIDENTIAL)(Talley, Evan) (Entered: 10/18/2019) |
| 10/22/2019 | 64 | ORDER granting 61 Motion to File Unredacted Documents Under Seal. Signed by Honorable Robin J. Cauthron on 10/22/19. (wh) (Entered: 10/22/2019) |
| 10/22/2019 | 65 | SEALED RESPONSE by Oklahoma City City of Re: 63 Response in Opposition to Motion, 57 SEALED MOTION by Tyler Miller, Miller Mendel Inc (Talley, Evan) (Entered: 10/22/2019) |
| 10/22/2019 | 66 | MOTION to Stay Case *Pending IPR* by Oklahoma City City of. (Attachments: # 1 Exhibit IPR Statistics, # 2 Exhibit Petition, # 3 Exhibit OKC's Non-Inf and Inval. Cont., # 4 Exhibit ADP Reference Invalidity Chart, # 5 Exhibit Background Solutions Reference Invalidity Chart, # 6 Exhibit ADP Reference 103 Invalidity, # 7 Exhibit Background Sol. Reference 103 Invalidity)(Talley, Evan) (Entered: 10/22/2019) |
| 10/23/2019 | 67 | STRICKEN - AMENDED COMPLAINT *(Second)* against Oklahoma City City of, Guardian Alliance Technologies, Inc. filed by All Plaintiffs. (Attachments: # 1 Exhibit 1 - USPN 10043188, # 2 Exhibit 2 - The Truth About Miller Mendel)(Nelson, Todd) Modified on 12/10/2019 (wh). (Entered: 10/23/2019) |
| 10/24/2019 | 68 | UNOPPOSED MOTION for Extension of Time to File Response/Reply as to 63 Response in Opposition to Motion, 65 Sealed Response by All Plaintiffs. (Nelson, Todd) (Entered: 10/24/2019) |
| 10/25/2019 | 69 | ORDER granting 68 Motion for Extension of Time. Plaintiffs' reply due by 10/29/2019. Signed by Honorable Robin J. Cauthron on 10/25/19. (wh) (Entered: 10/25/2019) |
| 10/28/2019 | 70 | UNOPPOSED MOTION for Leave *to File Under Seal* by Tyler Miller, Miller Mendel Inc. (Nelson, Todd) (Entered: 10/28/2019) |
| 10/29/2019 | 71 | ORDER granting 70 Motion for Leave to File Under Seal. Signed by Honorable Robin J. Cauthron on 10/29/19. (wh) (Entered: 10/29/2019) |

| 10/29/2019 | 72 | SEALED REPLY by Tyler Miller, Miller Mendel Inc Re: 65 Sealed Response (Nelson, Todd) (Entered: 10/29/2019) |
|---|---|---|
| 11/12/2019 | 73 | RESPONSE in Opposition re 66 MOTION to Stay Case *Pending IPR* filed by All Plaintiffs. (Attachments: # 1 Affidavit Kurt Rylander Declaration, # 2 Exhibit A-Discovery Requests, # 3 Exhibit B-Defendant Subpoenas, # 4 Exhibit C-GAT Business Address Declaration, # 5 Exhibit D-Email, # 6 Affidavit Todd A. Nelson Declaration, # 7 Exhibit 1- Email)(Nelson, Todd) (Entered: 11/12/2019) |
| 11/14/2019 | 74 | JOINT MOTION to Continue *Claim Construction Deadlines Pending Resolution of Motion to Stay* by Oklahoma City City of. (Talley, Evan) (Entered: 11/14/2019) |
| 11/15/2019 | 75 | ORDER granting 74 Motion to Continue Claim Construction Deadlines Pending Resolution of Motion to Stay. Signed by Honorable Robin J. Cauthron on 11/15/19. (wh) (Entered: 11/15/2019) |
| 11/19/2019 | 76 | REPLY by Defendant Oklahoma City City of re 66 MOTION to Stay Case *Pending IPR* filed by Oklahoma City City of. (Attachments: # 1 Exhibit 1 - Talley Decl., # 2 Exhibit 2 - MIME00000068-76)(Talley, Evan) (Entered: 11/19/2019) |
| 11/22/2019 | 77 | MOTION for Leave *to File Surreply* by Tyler Miller, Miller Mendel Inc. (Nelson, Todd) (Entered: 11/22/2019) |
| 11/25/2019 | 78 | RESPONSE in Opposition re 77 MOTION for Leave *to File Surreply* filed by Oklahoma City City of. (Talley, Evan) (Entered: 11/25/2019) |
| 12/10/2019 | 79 | ORDER striking 60 Court's Order granting leave to file an Amended Complaint and 67 Amended Complaint. Signed by Honorable Robin J. Cauthron on 12/10/19. (wh) (Entered: 12/10/2019) |
| 12/27/2019 | 80 | ORDER REASSIGNING CASE. Case reassigned to Honorable Jodi W. Dishman for all further proceedings. Honorable Robin J. Cauthron no longer assigned to case. Entered at the direction of Honorable Robin J. Cauthron on 12/27/19. (wh) (Entered: 12/27/2019) |
| 01/16/2020 | 81 | ORDER granting 77 Motion for Leave to File Surreply. Signed by Honorable Jodi W. Dishman on 01/16/2020. (em) (Entered: 01/16/2020) |
| 01/21/2020 | 82 | SURREPLY re 76 Reply, 66 MOTION to Stay Case *Pending IPR* filed by All Plaintiffs. (Nelson, Todd) (Entered: 01/21/2020) |
| 01/24/2020 | | MOTION to QUASH SUBPOENA by Guardian Alliance Technologies, Inc. (SEE DOC. NO. 1 filed in 20-mc-00004-JD FOR IMAGE) (SEE ALSO DOC. NOS. 12, 13, AND 15 filed in 20-mc-00004-JD FOR IMAGES OF RESPONSE in Opposition, Declaration of Kurt M. Rylander, and REPLY in Support of re: MOTION to Quash. Docket entry made per Order Doc. No. 93 re: consolidating cases. (nv) Modified on 7/29/2020 to include references to the response, declaration, and reply. (nv). (Entered: 07/24/2020) |
| 02/02/2020 | 83 | **NOTICE FROM THE COURT.** Available on the website for the United States District Court for the Western District of Oklahoma, under "Rules & Procedures, Chambers Rules," are the following that are applicable in civil cases in front of Judge Dishman: (1) Chamber Procedures for Civil Cases (issued 1-28-2020) and (2) Civil Cases: Guidelines for Protective Orders on Confidentiality, Sealing Documents, and Redactions (issued 1-29-2020). Parties are expected to comply with these rules for all filings and proceedings going forward. The Court intends to strike filings that fail to comply with these rules. (nv) (Entered: 02/02/2020) |
| 03/26/2020 | 84 | NOTICE (other) by Tyler Miller, Miller Mendel Inc *of Conclusion of the Inter Partes Review* (Attachments: # 1 Attachment 03-26-2020 Decision)(Nelson, Todd) (Entered: 03/26/2020) |
| 03/30/2020 | 85 | RESPONSE re 84 Notice (other) filed by Oklahoma City City of. (Attachments: # 1 Exhibit 1 - Hulu POP Decision)(Talley, Evan) (Entered: 03/30/2020) |
| 04/28/2020 | 86 | NOTICE (other) by Oklahoma City City of re 84 Notice (other), 85 Response *of Third Party Guardian Alliance Technologies, Inc.'s Filing of Request for Rehearing in Inter Partes Review* (Attachments: # 1 Exhibit 1 - Guardian's Request for Rehearing (FILED))(Talley, Evan) (Entered: 04/28/2020) |
| 05/22/2020 | 87 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 1087-3158678 by Oklahoma City City of. (Attachments: # 1 Exhibit Application for Admission)(Talley, Evan) (Entered: 05/22/2020) |

| 05/22/2020 | 88 | **ORDER** granting 87 Motion to Appear Pro Hac Vice, provided Jordan A. Sigale, as instructed by LCvR83.2(g), submits an ECF registration form and, upon activation, electronically files an entry of appearance consistent with LCvR83.4. Signed by Honorable Jodi W. Dishman on 05/22/2020. (nv) (Entered: 05/22/2020) |
|---|---|---|
| 05/27/2020 | 89 | ENTRY of Appearance by Jordan Sigale on behalf of Oklahoma City City of (Sigale, Jordan) (Entered: 05/27/2020) |
| 06/04/2020 | 90 | MOTION for Leave to Appear Pro Hac Vice *(Mark E. Beatty)* Filing fee $ 50, receipt number 1087-3167061 by Tyler Miller, Miller Mendel Inc. (Attachments: # 1 Exhibit 1 Reqiest for Admission Form) (Nelson, Todd) (Entered: 06/04/2020) |
| 06/05/2020 | 91 | **ORDER** granting 90 Motion to Appear Pro Hac Vice, provided Mr. Beatty, as instructed by LCvR83.2(g), submits an ECF registration form and, upon activation, electronically files an entry of appearance consistent with LCvR83.4. Signed by Honorable Jodi W. Dishman on 06/05/2020. (nv) (Entered: 06/05/2020) |
| 06/05/2020 | 92 | ENTRY of Appearance by Mark E Beatty on behalf of All Plaintiffs (Beatty, Mark) (Entered: 06/05/2020) |
| 07/20/2020 | | **IMPORTANT NOTICE:** The United States District Court for the Western District of Oklahoma (OKWD) is upgrading its current CM/ECF system to the Next Generation of CM/ECF (NextGen CM/ECF) on Monday, August 3, 2020. Complete information regarding the OKWD NextGen CM/ECF implementation is available at http://www.okwd.uscourts.gov/nextgen-information.****Currently, you may share a single PACER account with other attorneys in your firm. With the new OKWD NextGen CM/ECF system, sharing of individual PACER accounts is prohibited. You must have an individual upgraded PACER account linked to your e-filing account. Once again, shared PACER accounts cannot be used by OKWD e-filing attorneys. ****Preparing for NextGen CM/ECF is a two-step process. Step one is to upgrade your PACER account and step two is to link your upgraded PACER account to the OKWD e-filing account in the upgraded NextGen CM/ECF system. This notice only addresses the first step because the second step cannot be completed until on or after August 3, 2020. ****Many PACER accounts have already been upgraded. The first step is to determine whether you have an "Upgraded" PACER account. If any of the following is true, you have an upgraded PACER account and no action is required until after the OKWD NextGen CM/ECF upgrade on August 3, 2020: 1) You have an upgraded PACER account for another NextGen court or 2) Your PACER account was created after August 10, 2014. If neither of these is true, you must upgrade your legacy PACER account before you can link your PACER account to your new NextGen CM/ECF account. ****OKWDs current CM/ECF system will NOT be available from 11:00 AM on 07/31/20 until 8:00 AM on 08/03/20 due to the upgrade. ****Additional notices will be sent at a later date regarding the second step of this process. If you have questions, please contact the PACER Service Center at 800-676-6856 or the OKWD Clerk's Office CM/ECF Help Desk at 405-609-5555. (Pigott, William) (ADI) (Entered: 07/20/2020) |
| 07/24/2020 | 93 | **ORDER** granting Plaintiffs' Opposed Motion to Consolidate Cases [Doc. No. 18 in MC-20-4-JD]. This action is CONSOLIDATED with Case No. CIV-2018-990-JD. All future filings related to this action shall be filed in Case No. CIV-18-990-JD. See Order for details. Signed by Honorable Jodi W. Dishman on 07/24/2020. (nv) (Entered: 07/24/2020) |
| 07/27/2020 | 94 | **ORDER** denying 66 Motion to Stay Case, without prejudice to Defendant The City of Oklahoma City filing a new motion to stay should the Patent Trial and Appeal Board grant rehearing. See Order for all details. Signed by Honorable Jodi W. Dishman on 07/27/2020. (nv) (Entered: 07/27/2020) |
| 07/27/2020 | 95 | **ORDER.** The Court therefore CONTINUES the parties' remaining scheduling order deadlines, to be reset after resolution of the Motion to Amend, and ORDERS the parties to appear for a status and scheduling conference on September 29, 2020, at 9:00 a.m. in Courtroom 502. The parties are directed to submit a joint status report and discovery plan, along with a proposed amended scheduling order, by September 22, 2020. Should the parties desire changes to the electronically stored information and discovery order Doc. No. 41 or the protective order Doc. No. 42 , they should submit those as exhibits to their joint status report and discovery plan. If the parties or movant resolve any of the issues in the Pending Motions at any time, they are to immediately advise the Court. Signed by Honorable Jodi W. Dishman on 07/27/2020. (nv) (Entered: 07/27/2020) |
| 07/27/2020 | 96 | ENTRY of Appearance by Evan W Talley on behalf of Guardian Alliance Technologies, Inc. (Talley, Evan) (Entered: 07/27/2020) |
| 07/27/2020 | 97 | NOTICE (other) by Tyler Miller, Miller Mendel Inc *(Decision on Inter Parties Review)* (Attachments: # 1 Attachment 2020-07-27 PTAB Decision)(Nelson, Todd) (Entered: 07/27/2020) |

| 07/28/2020 | 98 | SURREPLY re MOTION to Quash filed by Tyler Miller, Miller Mendel Inc. (Nelson, Todd) (Entered: 07/28/2020) |
|---|---|---|
| 08/28/2020 | 99 | **ORDER.** Setting Hearing on Motions: MOTION to Quash, 57 MOTION FOR LEAVE to File Second Amended Complaint by Tyler Miller, Miller Mendel Inc. Motion Hearing set for 9/29/2020 09:00 AM in Courtroom 502 before Honorable Jodi W. Dishman. The status and scheduling conference previously set for September 29, 2020, and the associated deadline for the parties joint status report and discovery plan are CONTINUED, to be reset by separate order. Signed by Honorable Jodi W. Dishman on 08/28/2020. (em) (Entered: 08/28/2020) |
| 08/28/2020 | | Hearings Terminated: The Status/Scheduling Conference set for 09/29/2020 at 9:00 a.m. is STRICKEN. See 99 Order. (nv) (Entered: 08/29/2020) |
| 09/14/2020 | 100 | **STATUS/SCHEDULING CONFERENCE DOCKET:** Scheduling Conference set for 10/28/2020 09:30 AM in Courtroom 502 before Honorable Jodi W. Dishman. Status Report due by 10/19/2020. (em) (Entered: 09/14/2020) |
| 09/24/2020 | 101 | JOINT STATUS REPORT by Plaintiffs Tyler Miller, Miller Mendel Inc. (Attachments: # 1 Exhibit 1-Proposed Narrowing Requests)(Nelson, Todd) (Entered: 09/24/2020) |
| 09/25/2020 | 102 | **ENTER ORDER.** The hearing currently set for Tuesday, September 29, 2020 at 9:00 a.m., regarding the Plaintiffs' Motion for Leave to File Second Amended Complaint Doc. No. 57 and Movant Guardian Alliance Technologies, Inc.'s Motion to Quash [Doc. No. 1 in Case No. MC-20-0004-JD] is STRICKEN, to be RESET on Wednesday, October 7, 2020, at 2:00 p.m., Central Time. Entered at the direction of the Honorable Jodi W. Dishman on 09/25/2020. (nv) (Entered: 09/25/2020) |
| 09/25/2020 | | Set/Reset Deadlines as to MOTION to Quash, 57 SEALED MOTION by Tyler Miller, Miller Mendel Inc. Motion Hearing set for 10/7/2020 at 02:00 PM in Courtroom 502 before the Honorable Jodi W. Dishman. (nv) (Entered: 09/25/2020) |
| 10/07/2020 | 103 | Minute Entry for proceedings held before Honorable Jodi W. Dishman: Motion Hearing held on 10/7/2020 re: MOTION to Quash filed by Guardian Alliance Technologies, Inc. and 57 Motion for Leave to File Second Amended Complaint filed by Tyler Miller, Miller Mendel Inc. The Motion to Quash filed on 01/24/2020 in MC-20-4-JD is GRANTED IN PART and DENIED IN PART. The Motion for Leave to File Second Amended Complaint Doc. No. 57 is GRANTED IN PART and DENIED IN PART. All rulings made on the record. No further written order to follow. See Minute Sheet for details. (Court Reporter Emily Cripe.) (nv) (Entered: 10/07/2020) |
| 10/14/2020 | 104 | AMENDED COMPLAINT *(Second)* against Guardian Alliance Technologies, Inc., Oklahoma City City of filed by All Plaintiffs. (Attachments: # 1 Exhibit 1: Patent US 10043188-Miller, # 2 Exhibit 2: Thetruthaboutmillermendel.com capture 8-22-2019)(Nelson, Todd) (Entered: 10/14/2020) |
| 10/19/2020 | 105 | Summons Issued Electronically as to Guardian Alliance Technologies, Inc.(a Delaware corporation). (em) (Entered: 10/19/2020) |
| 10/19/2020 | 106 | JOINT STATUS REPORT AND DISCOVERY PLAN by Plaintiffs Tyler Miller, Miller Mendel Inc. (Attachments: # 1 Attachment Proposed Scheduling Order)(Nelson, Todd) (Entered: 10/19/2020) |
| 10/20/2020 | 107 | SUMMONS Returned Executed by Miller Mendel Inc, Tyler Miller. Guardian Alliance Technologies, Inc.(a Delaware corporation) served on 10/20/2020. (Nelson, Todd) (Entered: 10/20/2020) |
| 10/29/2020 | 108 | Minute Entry for proceedings held before Honorable Jodi W. Dishman: Scheduling Conference held on 10/29/2020. See Minute Entry for details. (nv) (Entered: 10/29/2020) |
| 11/09/2020 | 109 | ENTRY of Appearance by Jordan Sigale on behalf of Guardian Alliance Technologies, Inc., Guardian Alliance Technologies, Inc.(a Delaware corporation) (Sigale, Jordan) (Entered: 11/09/2020) |
| 11/09/2020 | 110 | ENTRY of Appearance by Douglas J Sorocco on behalf of Guardian Alliance Technologies, Inc., Guardian Alliance Technologies, Inc.(a Delaware corporation) (Sorocco, Douglas) (Entered: 11/09/2020) |
| 11/09/2020 | 111 | DISCLOSURE STATEMENT - CORPORATE by Guardian Alliance Technologies, Inc., Guardian Alliance Technologies, Inc.(a Delaware corporation) . (Talley, Evan) (Entered: 11/09/2020) |
| 11/09/2020 | 112 | MOTION to Dismiss for Lack of Jurisdiction *and Failure to State a Claim - Partial* by Guardian Alliance Technologies, Inc., Guardian Alliance Technologies, Inc.(a Delaware corporation). (Attachments: # 1 Exhibit 1 - Initial Disclosure of OKCPD)(Talley, Evan) (Entered: 11/09/2020) |

| | | |
|---|---|---|
| 11/10/2020 | 113 | ANSWER to 104 Amended Complaint, by Oklahoma City City of. (Attachments: # 1 Exhibit 1 - October 23, 2017 Amdt and Rsp to OA, # 2 Exhibit 2 - December 9, 2017 Amdt and Rsp to OA in 098 Pros, # 3 Exhibit 3 - December 26, 2017 OA, # 4 Exhibit 4 - March 7, 2018 Interview Summary, # 5 Exhibit 5 - June 22, 2018 NOA, # 6 Exhibit 6 - KCSO-00071, # 7 Exhibit 7 - KCSO-00116)(Talley, Evan) (Entered: 11/10/2020) |
| 11/30/2020 | 114 | RESPONSE in Opposition re 112 MOTION to Dismiss for Lack of Jurisdiction *and Failure to State a Claim - Partial* filed by Tyler Miller, Miller Mendel Inc. (Nelson, Todd) (Entered: 11/30/2020) |
| 12/07/2020 | 115 | REPLY by Defendant Guardian Alliance Technologies, Inc. re 114 Response in Opposition to Motion, 112 MOTION to Dismiss for Lack of Jurisdiction *and Failure to State a Claim - Partial* filed by Guardian Alliance Technologies, Inc.(a Delaware corporation). (Attachments: # 1 Exhibit 1 - GAT-01474-01479) (Talley, Evan) (Entered: 12/07/2020) |
| 01/12/2021 | 116 | NOTICE (other) by Oklahoma City City of *Joint Claim Construction Statement* (Talley, Evan) (Entered: 01/12/2021) |
| 03/25/2021 | 117 | BRIEF IN SUPPORT *Plaintiffs' Opening Claim Construction* by Tyler Miller, Miller Mendel Inc. (Attachments: # 1 Exhibit 1-USPN 10043188, # 2 Exhibit 2-Asserted Claims, # 3 Exhibit 3-Expert Report by David S. Howell dated 12/11/20, # 4 Exhibit 4-Expert Rebuttal Report by David S. Howell dated 12/29/20)(Nelson, Todd) (Entered: 03/25/2021) |
| 03/26/2021 | 118 | NOTICE OF RELATED OR COMPANION CASE by Guardian Alliance Technologies, Inc., Guardian Alliance Technologies, Inc.(a Delaware corporation), Oklahoma City City of (Attachments: # 1 Exhibit 1 - Dist of OR Complaint)(Talley, Evan) (Entered: 03/26/2021) |
| 04/26/2021 | 119 | BRIEF IN SUPPORT re 117 Brief, *Responsive Claim Construction Brief* by Oklahoma City City of. (Attachments: # 1 Exhibit 1 - 188 Patent (Condensed), # 2 Exhibit 2 - Dec. 30, 2020 Talley Corr., # 3 Exhibit 3 - Hunt Corr. w Examiner re Interview Request, # 4 Exhibit 4 - Dec. 26, 2017 Office Action, # 5 Exhibit 5 - March 7, 2018 Interview Summary, # 6 Exhibit 6 - Microsoft Computer Dictionary (2002), # 7 Exhibit 7 - MPEP 2111.03)(Talley, Evan) (Entered: 04/26/2021) |
| 05/07/2021 | 120 | UNOPPOSED MOTION for Leave to File Excess Pages by Tyler Miller, Miller Mendel Inc. (Nelson, Todd) (Entered: 05/07/2021) |
| 05/10/2021 | 121 | **ORDER.** The Court GRANTS 120 Motion for Leave to File Excess Pages but cautions Plaintiffs to comply with LCvR7.1(i) with the contents of the reply brief and to be judicious in the use of the additional pages. Plaintiffs are permitted to file a reply brief up to sixteen pages, if needed. Signed by Honorable Jodi W. Dishman on 05/10/2021. (knt) (Entered: 05/10/2021) |
| 05/10/2021 | 122 | REPLY by Plaintiffs Tyler Miller, Miller Mendel Inc re 117 Brief, 119 Brief, *(Claim Construction)* filed by Tyler Miller, Miller Mendel Inc. (Nelson, Todd) (Entered: 05/10/2021) |
| 06/25/2021 | 123 | NOTICE OF RELATED OR COMPANION CASE by Tyler Miller, Miller Mendel Inc (Nelson, Todd) (Entered: 06/25/2021) |
| 09/15/2021 | 124 | NOTICE (other) by Guardian Alliance Technologies, Inc., Guardian Alliance Technologies, Inc.(a Delaware corporation), Oklahoma City City of re 118 Notice of Related or Companion Case, 123 Notice of Related or Companion Case *of Stay of Related Cases* (Attachments: # 1 Exhibit 1 - Washington Order, # 2 Exhibit 2 - Alaska Order)(Talley, Evan) (Entered: 09/15/2021) |
| 12/01/2021 | 125 | NOTICE of Subpoena by Guardian Alliance Technologies, Inc., Guardian Alliance Technologies, Inc.(a Delaware corporation), Oklahoma City City of (Attachments: # 1 Exhibit 1 - Subpoena for Documents, # 2 Exhibit 2 - Subpoena for Deposition)(Talley, Evan) (Entered: 12/01/2021) |
| 12/01/2021 | 126 | NOTICE of Subpoena by Oklahoma City City of re 125 Notice of Subpoena, *Amended* (Attachments: # 1 Exhibit 1 - Subpoena for Documents, # 2 Exhibit 2 - Subpoena for Deposition)(Talley, Evan) (Entered: 12/01/2021) |
| 12/03/2021 | 127 | MOTION to Withdraw as Attorney by Guardian Alliance Technologies, Inc., Guardian Alliance Technologies, Inc.(a Delaware corporation), Oklahoma City City of. (Talley, Evan) (Entered: 12/03/2021) |
| 12/14/2021 | 128 | **ORDER** granting 127 Motion to Withdraw Counsel of Record for Defendants. Attorney Jordan Sigale terminated. Signed by Judge Jodi W. Dishman on 12/14/2021. (knt) (Entered: 12/14/2021) |
| 01/19/2022 | 129 | NOTICE OF RELATED OR COMPANION CASE by Tyler Miller, Miller Mendel Inc (Nelson, Todd) (Entered: 01/19/2022) |

| 04/15/2022 | [130] | **STRICKEN** NOTICE (other) by Guardian Alliance Technologies, Inc., Guardian Alliance Technologies, Inc.(a Delaware corporation), Oklahoma City City of re [129] Notice of Related or Companion Case *of Patent Invalidity* (Talley, Evan) (Entered: 04/15/2022) |
|---|---|---|
| 04/15/2022 | [131] | NOTICE (other) by Guardian Alliance Technologies, Inc., Guardian Alliance Technologies, Inc.(a Delaware corporation), Oklahoma City City of re [130] Notice (other), [129] Notice of Related or Companion Case *Amended Notice of Patent Invalidity* (Attachments: # [1] Exhibit 1 - Order on Patent Invalidity)(Talley, Evan) (Entered: 04/15/2022) |
| 04/18/2022 | | NOTICE from the Court: [130] Notice of Patent Invalidity is **STRICKEN**, as an amended version is filed at Doc. No. [131] . (km) (Entered: 04/18/2022) |
| 05/03/2022 | [132] | NOTICE OF RELATED OR COMPANION CASE by Tyler Miller, Miller Mendel Inc (Attachments: # [1] Exhibit 1-Notice of Appeal)(Nelson, Todd) (Entered: 05/03/2022) |
| 06/15/2022 | [133] | NOTICE (other) by Guardian Alliance Technologies, Inc., Guardian Alliance Technologies, Inc.(a Delaware corporation), Oklahoma City City of re [131] Notice (other), *Supplemental Notice of Patent Invalidity* (Attachments: # [1] Exhibit 1 - Order on Motion for Judgment on Pleadings, # [2] Exhibit 2 - Order on Motion for Reconsideration)(Talley, Evan) (Entered: 06/15/2022) |
| 02/14/2024 | [134] | NOTICE of Change of Address by Evan W Talley (Talley, Evan) Main Document 134 replaced on 2/15/2024. Document flattened to optimize CM/ECF display; no other changes made (rp). (Entered: 02/14/2024) |
| 08/07/2024 | [135] | NOTICE OF RELATED OR COMPANION CASE by Tyler Miller, Miller Mendel Inc (Nelson, Todd) (Entered: 08/07/2024) |
| 11/01/2024 | [136] | NOTICE OF RELATED OR COMPANION CASE by All Plaintiffs (Nelson, Todd) (Entered: 11/01/2024) |
| 12/02/2024 | [137] | **ORDER** denying [112] Defendant Guardian Alliance Technologies, Inc.'s Partial Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon Which Relief Can Be Granted. Defendant Guardian Alliance Technologies, Inc., shall file an Answer to the Second Amended Complaint within 14 days of the entry of this Order. *See* Order for additional details and deadline for the parties to file a joint status report. Signed by Judge Jodi W. Dishman on 12/2/2024. (nv) (Entered: 12/02/2024) |
| 12/16/2024 | [138] | ANSWER to [104] Amended Complaint, *SECOND* by Guardian Alliance Technologies, Inc.(a Delaware corporation). (Attachments: # [1] Exhibit 1 - Oct. 23, 2017 Amdt and Rsp to OA, # [2] Exhibit 2 - Dec. 9, 2014 Amdt and Rsp to OA in 098 Pros, # [3] Exhibit 3 - Dec. 26, 2017 Office Action, # [4] Exhibit 4 - March 7, 2018 Interview Summary, # [5] Exhibit 5 - June 22, 2018 NOA, # [6] Exhibit 6 - KCSO-00071, # [7] Exhibit 7 - KCSO-00116)(Talley, Evan) (Entered: 12/16/2024) |
| 12/18/2024 | [139] | MOTION for Leave *to file Third Amended Complaint* by All Plaintiffs. (Attachments: # [1] Exhibit Third Amended Complaint)(Nelson, Todd) (Entered: 12/18/2024) |
| 12/27/2024 | [140] | UNOPPOSED MOTION for Extension of Time *to Submit Joint Status Report* by All Plaintiffs. (Nelson, Todd) (Entered: 12/27/2024) |
| 12/30/2024 | [141] | **ORDER** granting [140] UNOPPOSED MOTION for Extension of Time *to Submit Joint Status Report* filed by Tyler Miller, Miller Mendel Inc. The parties shall file their joint status report addressing the items in the Court's December 2, 2024 Order Doc. No. [137] , by January 3, 2025. Signed by Judge Jodi W. Dishman on 12/30/24. (rp) (Entered: 12/30/2024) |
| 01/03/2025 | [142] | JOINT STATUS REPORT by Plaintiffs Miller Mendel Inc, Tyler Miller. (Nelson, Todd) (Entered: 01/03/2025) |
| 01/08/2025 | [143] | RESPONSE to Motion re [139] MOTION for Leave *to file Third Amended Complaint* filed by Guardian Alliance Technologies, Inc.(a Delaware corporation), Oklahoma City City of. (Talley, Evan) (Entered: 01/08/2025) |
| 01/13/2025 | [144] | NOTICE OF RELATED OR COMPANION CASE by All Plaintiffs (Attachments: # [1] Exhibit Exhibit 1 Order, # [2] Exhibit Exhibit 2 Order)(Nelson, Todd) (Entered: 01/13/2025) |
| 01/15/2025 | [145] | REPLY by Plaintiffs Miller Mendel Inc, Tyler Miller re [143] Response to Motion *for Leave to File Third Amended Complaint* filed by All Plaintiffs. (Nelson, Todd) (Entered: 01/15/2025) |
| 05/08/2025 | [146] | MOTION to Transfer Case *to U.S. District Court for the Eastern District of California* by Guardian Alliance Technologies, Inc.(a Delaware corporation). (Attachments: # [1] Exhibit 1 - ED Cal Order on Motions to Strike and Dismiss, # [2] Exhibit 2 - ED Cal Complaint, # [3] Exhibit 3 - ED Cal and WDOK Stats, |

| 05/08/2025 | 147 | AFFIDAVIT re 146 MOTION to Transfer Case *to U.S. District Court for the Eastern District of California of Adam Anthony* by Guardian Alliance Technologies, Inc.(a Delaware corporation). (Talley, Evan) (Entered: 05/08/2025) |
|---|---|---|
| 05/13/2025 | 148 | **ORDER** re 139 Plaintiffs' Opposed Motion for Leave to File Third Amended Complaint. The Court GRANTS the Motion. Plaintiffs may file a Third Amended Complaint, not to vary from the one attached to their Motion [Doc. No. 139-1] within 7 days of today. See Order for all details. Signed by Judge Jodi W. Dishman on 05/13/2025. (cd) (Entered: 05/13/2025) |
| 05/14/2025 | 149 | **STRICKEN** AMENDED COMPLAINT *(Third)* against All Defendants filed by All Plaintiffs. (Attachments: # 1 Exhibit 1)(Nelson, Todd) (Entered: 05/14/2025) |
| 05/14/2025 | | NOTICE from the Court 149 Amended Complaint, **STRICKEN**, due to counsel's failure to comply with this Court's ECF Policies and Procedures Manual, Section II(A)(4)(a). Specifically, a description of the exhibit must be provided in the docket entry. Counsel to refile within 24 hours from this Notice. The filing should not differ in substance apart from addressing the deficiencies raised in this Notice. (rp) (Entered: 05/14/2025) |
| 05/14/2025 | 150 | AMENDED COMPLAINT *(Third)* against All Defendants filed by All Plaintiffs. (Attachments: # 1 Exhibit Website)(Nelson, Todd) (Entered: 05/14/2025) |
| 05/19/2025 | | **Docket Annotation:** Upon the filing of the Third Amended Complaint 150 , Defendant City of Oklahoma City is terminated as a defendant in this action. From this point forward, all captions in this case should be updated to reflect that City of Oklahoma City is no longer a party. Filings in violation of this order may be stricken by the Court. (cd) (Entered: 05/19/2025) |
| 05/27/2025 | 151 | ANSWER to 150 Amended Complaint *(Third)* by Guardian Alliance Technologies, Inc.(a Delaware corporation). (Attachments: # 1 Exhibit 1 - Oct. 23, 2017 Amdt and Rsp to OA, # 2 Exhibit 2 - Dec. 9, 2014 Amdt and Rsp to OA in 098 Pros, # 3 Exhibit 3 - Dec. 26, 2017 Office Action, # 4 Exhibit 4 - March 7, 2018 Interview Summary, # 5 Exhibit 5 - June 22, 2018 NOA, # 6 Exhibit 6 - KCSO-0071, # 7 Exhibit 7 - KCSO-00116)(Talley, Evan) (Entered: 05/27/2025) |
| 05/27/2025 | 152 | UNOPPOSED MOTION for Extension of Time to File Response/Reply *to Defendant Guardian Technologies, Inc.'s Motion to Transfer* by All Plaintiffs. (Nelson, Todd) (Entered: 05/27/2025) |
| 05/29/2025 | 153 | **ORDER** granting 152 Motion for Extension of Time to File Response/Reply. The Court GRANTS the Motion and extends the deadline for Plaintiffs to file their response in opposition to Defendant Guardian AllianceTechnologies, Inc.'s Motion to Transfer Venue to May 30, 2025. Signed by Judge Jodi W. Dishman on 05/29/2025. (cd) (Entered: 05/29/2025) |
| 05/30/2025 | 154 | RESPONSE to Motion re 146 MOTION to Transfer Case *to U.S. District Court for the Eastern District of California* filed by All Plaintiffs. (Attachments: # 1 Exhibit Declaration of Tyler Miller)(Nelson, Todd) (Entered: 05/30/2025) |
| 06/04/2025 | 155 | NOTICE OF RELATED OR COMPANION CASE by All Plaintiffs (Attachments: # 1 Attachment Defendants' Motion to Transfer Venue and Memorandum of Points and Authorities, # 2 Attachment Declaration and Accompanying Exhibits)(Nelson, Todd) (Entered: 06/04/2025) |
| 07/23/2025 | 156 | NOTICE OF RELATED OR COMPANION CASE by Guardian Alliance Technologies, Inc.(a Delaware corporation) *of Decision in Eastern District of California* (Attachments: # 1 Exhibit 1 - ED Cal Order DENYING MMI Mtn to Transfer Venue to WDOK)(Talley, Evan) (Entered: 07/23/2025) |



### PACER Service Center

#### Transaction Receipt

| 08/22/2025 11:58:31 | | | |
|---|---|---|---|
| **PACER Login:** | krylander | **Client Code:** | MIME.012 |
| **Description:** | Docket Report | **Search Criteria:** | 5:18-cv-00990-JD Start date: 1/1/1974 End date: 8/22/2025 |

Appx0019

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| GUARDIAN ALLIANCE TECHNOLOGIES, INC., | No. 2:22-cv-01390 WBS AC |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER RE: DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE |
| MILLER MENDEL, INC. and TYLER MILLER, | |
| Defendants. | |

----oo0oo----

Plaintiff Guardian Alliance Technologies, Inc. ("Guardian") brought this action against defendants Miller Mendel, Inc. and Tyler Miller (collectively, "Miller Mendel"), seeking declarations that two of defendants' patents are invalid, asserting claims under the Sherman Antitrust Act, 15 U.S.C § 2, and alleging various violations of California state law. (Compl. (Docket No. 1).)  Before the court are Miller Mendel's motion to dismiss the complaint in its entirety (Docket No. 40) and motion to strike Guardian's state law claims pursuant to California's

1

1   anti-SLAPP[1] statute, Cal. Civ. Code § 425.16 (Docket No. 41).

2   I.   <u>Background & Procedural History</u>[2]

3           Plaintiff Guardian is a California-based company that

4   creates and sells access to software for managing employee

5   background checks, primarily for government organizations and law

6   enforcement agencies.  (Compl. ¶¶ 4, 28.)  Defendant Miller

7   Mendel, Inc. is a Seattle-based company that creates and sells

8   access to similar software.  (<u>Id.</u> ¶¶ 5, 28.)  Defendant Tyler

9   Miller is the Chief Executive Officer of Miller Mendel, Inc.

10  (<u>See</u> Ex. A to Rylander Decl. (Docket No. 40-2 at 8).)

11          In April 2011, Tyler Miller filed a provisional patent

12  application with the U.S. Patent and Trademark Office, U.S.

13  Patent Application No. 61/472,556, covering public safety

14  background investigation management software.  (Compl. ¶¶ 48-49.)

15  In April 2012, Miller filed a non-provisional patent application

16  claiming priority to the provisional patent application.  (<u>Id.</u> ¶

17  53.)  On June 30, 2015, Miller was issued U.S. Patent No.

18  9,070,098 (the "'098 Patent").  (<u>Id.</u> ¶ 55.)  In May 2015, Miller

19  filed another non-provisional patent application, resulting in

20  the issuance of U.S. Patent No. 10,043,188 (the "'188 Patent") on

21  August 7, 2018.  (<u>Id.</u> ¶¶ 56, 58.)  Tyler Miller licensed both

22  patents to Miller Mendel, Inc.  (<u>Id.</u> ¶ 59.)  The two patents both

23  concern pre-employment background check software and are similar,

24  sharing a substantial amount of identical claim language.  (<u>See</u>

25  _____

26      [1]   "SLAPP" refers to a "strategic lawsuit against public
    participation."

27

28      [2]   All facts recited in this Order are as alleged in the
    Complaint, unless otherwise noted.

1  Compl. ¶ 80; Exs. 1-2 to Compl.)

2          Miller Mendel, Inc. and Tyler Miller have filed several

3  lawsuits in federal district courts alleging that Guardian's

4  customers infringed the '188 Patent through use of Guardian's

5  software.  In October 2018, both Miller Mendel, Inc. and Tyler

6  Miller sued the City of Oklahoma City in the Western District of

7  Oklahoma (the "Oklahoma Action").  See Case No. 5:18-cv-00990

8  (W.D. Okla.).[3]  In February 2021, Miller Mendel, Inc. sued

9  Washington County, Oregon and the Washington County Sheriff's

10  Office in the District of Oregon (the "Oregon Action").  See Case

11  No. 3:21-cv-00168 (D. Ore.).  In May 2021, Miller Mendel, Inc.

12  and Tyler Miller sued Alaska State Troopers and James E.

13  Cockrell, the Commissioner of the State of Alaska Department of

14  Public Safety, in the District of Alaska (the "Alaska Action").

15  See Case No. 3:21-cv-00129 (D. Alaska).  In December 2021, Miller

16  Mendel, Inc. sued the City of Anna, Texas in the Eastern District

17  of Texas (the "Texas Action").  See Case No. 2:21-cv-00445 (E.D.

18  Tex.).  Guardian defended its customers in these actions pursuant

19  to indemnification agreements.  (See Compl. ¶¶ 41, 99, 101-103.)

20  In August 2022, Guardian filed the instant action.

21          The court in the Texas Action found that claims 1, 5,

22  and 15 of Miller Mendel's '188 Patent were invalid because they

23  were directed at patent-ineligible matter.  See Miller Mendel,

24  Inc. v. City of Anna, Tex., No. 2:21-cv-00445 JRG, 2022 WL

25

26          [3]   In October 2019, Guardian (as a non-party in the
   Oklahoma Action) filed a petition with the Patent Trial and
27  Appeal Board ("PTAB") for inter partes review of the validity of
   the '188 Patent, IPR2020-00031.  (Compl. ¶ 119, Ex. 30.)  The
28  PTAB denied review on March 26, 2020.  (Id.)

3

1  1437686, at *10 (E.D. Tex. Apr. 14, 2022).[4]  The court also

2  denied Guardian's motion for attorney's fees.  Id., 2022 WL

3  2704790, at *6 (E.D. Tex. June 13, 2022).  Both decisions were

4  affirmed by the Federal Circuit.  See id., 107 F.4th 1345, 1356–

5  57 (Fed. Cir. 2024), cert. denied, 145 S. Ct. 593 (2024).

6       Following the Federal Circuit's decision, Miller Mendel

7  sought voluntary dismissal of the Oregon Action and the Alaska

8  Action, both of which were closed in January 2025.  (See Oregon

9  Action, Docket Nos. 29, 33; Alaska Action, Docket Nos. 46, 50.)

10 The Oklahoma Action remains pending in the Western District of

11 Oklahoma.

12 II.  Federal Claims

13      Guardian's first and second claims seek declarations

14 that the '098 and '188 patents are unenforceable due to

15 defendants' inequitable conduct.  The third and fourth claims

16 seek declarations that the '098 and '188 patents are invalid

17 under 35 U.S.C. § 101 et seq.  The fifth and sixth claims allege

18 violations of section 2 of the Sherman Act.

19      A.  Declaratory Relief Claims (Claims 1, 2, 3, and 4)

20          1.  First-to-File Doctrine

21      The first-to-file rule is "a judicially created

22 doctrine of federal comity, which applies when two cases

23 involving substantially similar issues and parties have been

24 filed in different districts."  In re Bozic, 888 F.3d 1048, 1051

25 (9th Cir. 2018) (internal quotation marks and citations omitted).

26 "Under that rule, the second district court has the discretion to

27 ─────────────────

28      [4]  The other claims contained in the patent were not at
   issue.

4

1   transfer, stay, or dismiss the second case in the interest of

2   efficiency and judicial economy."  Id. at 1051-52 (internal

3   quotation marks and citation omitted).  To determine whether to

4   apply the rule, a district court considers three factors:

5   "chronology of the lawsuits, similarity of the parties, and

6   similarity of the issues."  Kohn Law Grp., Inc. v. Auto Parts

7   Mfg. Miss., Inc., 787 F.3d 1237, 1240 (9th Cir. 2015).  "When

8   applying the first-to-file rule, courts should be driven to

9   maximize 'economy, consistency, and comity.'"  Id. (quoting Cadle

10  Co. v. Whataburger of Alice, Inc., 174 F.3d 599, 604 (5th Cir.

11  1999)); see also Pacesetter Sys. Inc. v. Medtronic, Inc., 678

12  F.2d 93, 95 (9th Cir. 1982) (explaining that the first-to-file

13  rule "is not a rigid or inflexible rule to be mechanically

14  applied, but rather is to be applied with a view to the dictates

15  of sound judicial administration").

16       The only related action that remains pending is the

17  Oklahoma Action, which was filed prior to this case.  There, both

18  Miller Mendel, Inc. and Tyler Miller are plaintiffs, and Guardian

19  has defended its indemnitee, the City of Oklahoma City.  (See

20  Compl. ¶ 99.)  In the Oklahoma Action, Miller Mendel, Inc. and

21  Tyler Miller seek a declaration that they did not engage in

22  inequitable conduct or patent fraud with respect to their

23  patents, including the '188 Patent.  (See Oklahoma Action, Docket

24  No. 139-1 ¶ 17, No. 104 ¶ 34.)  There is "substantial overlap"

25  between those claims and Guardian's first and second claims in

26  this action, which also concern alleged fraud or inequitable

27  conduct by Miller Mendel.  See Kohn Law Grp., 787 F.3d at 1241.

28  However, in this action, Guardian also asserts that the entirety

5

1    of the '188 and '098 patents are invalid because they cover

2    unpatentable subject matter.  No parallel claims concerning

3    patentability are asserted in the Oklahoma Action.  Dismissal of

4    the claims in this action seeking declarations that the patents

5    cover unpatentable material would therefore be unwarranted.

6         The inequitable conduct claims might be appropriate to

7    stay given their similarity to the parallel claim in the Oklahoma

8    Action.  A transfer of this action to the Western District of

9    Oklahoma is also a possibility.  However, neither party has

10   requested a stay or transfer, and it is not clear to the court

11   whether a stay or transfer would be prudent here.  The judge in

12   the Oklahoma Action previously held that patent infringement

13   claims cannot be asserted against Guardian in the Western

14   District of Oklahoma due to improper venue.  (See Oklahoma

15   Action, Docket No. 103.)  While no such infringement claims are

16   asserted against Guardian here, as Guardian is the plaintiff, it

17   is possible that Miller Mendel could assert a counterclaim to

18   that effect.

19        Further, Guardian represented in a status report to

20   the Oklahoma court that it intended to file a the remaining

21   Oklahoma claims to this court. (See Oklahoma Action, Docket No.

22   142.)  Miller Mendel apparently anticipates the filing of such a

23   motion to transfer, as the instant motion to dismiss before this

24   court states that the remaining Oklahoma claims against Guardian

25   "are pending transfer to [the Eastern District of California]

26   for ultimate resolution."  (Docket No. 40 at 20.)

27        Given these circumstances, the court will not order a

28   stay or transfer at this time.  However, either party may file a

6

1  motion requesting a stay or transfer in favor of the Oklahoma

2  Action.

3          For the foregoing reasons, claims one through four will

4  not be dismissed based on the first-to-file doctrine.

5          2.    Standing under Declaratory Judgment Act

6          The Declaratory Judgment Act provides that "[i]n a case

7  of actual controversy within its jurisdiction . . . any court of

8  the United States, upon the filing of an appropriate pleading,

9  may declare the rights and other legal relations of any

10  interested party seeking such declaration, whether or not further

11  relief is or could be sought."  28 U.S.C. § 2201(a).

12          In the patent or trademark infringement context, "a

13  plaintiff has standing to seek declaratory relief of non-

14  infringement if he demonstrates 'a real and reasonable

15  apprehension that he will be subject to liability' if he

16  continues with his course of conduct."  See San Diego Cnty.

17  Credit Union v. Citizens Equity First Credit Union, 65 F.4th

18  1012, 1023 (9th Cir.), cert. denied, 144 S. Ct. 190 (2023)

19  (quoting Societe de Conditionnement en Aluminium v. Hunter Eng'g

20  Co., 655 F.2d 938, 944-45 (9th Cir. 1981)).  "Such an

21  apprehension can exist even absent an explicit threat to sue."

22  Id.

23          Guardian has established a "real and reasonable

24  apprehension" of patent infringement proceedings sufficient to

25  establish standing under the Declaratory Judgment Act.  Indeed,

26  the threat of patent enforcement litigation by Miller Mendel is

27  about as "real" as it gets.  Miller Mendel has already filed

28  multiple lawsuits against Guardian's indemnified customers

7

1    concerning the validity or infringement of the '188 Patent,

2    leading to protracted litigation including appeal to the Federal

3    Circuit.  Although the prior suits have not included the '098

4    Patent, the two patents are closely related, and Miller Mendel

5    previously sent a letter to Guardian stating that "further

6    investigation will become necessary" if Guardian did not ensure

7    non-infringement of the '098 Patent (Ex. 19 to Compl.).  See

8    Chesebrough-Pond's, Inc. v. Faberge, Inc., 666 F.2d 393, 395-96

9    (9th Cir. 1982) (plaintiff had standing under Declaratory

10   Judgment Act where it filed suit three years following letter

11   threatening to oppose trademark application before the Patent and

12   Trademark Office) (cited with approval in Citizens Equity, 65

13   F.4th at 1026).  Accordingly, the declaratory relief claims will

14   not be dismissed for lack of standing.

15        B.   Sherman Act Claims (Claims 5 and 6)

16             Guardian brings two claims under § 2 of the Sherman

17   Act.  The fifth claim alleges attempted monopolization of the

18   relevant market via sham litigation.  See Handgards, Inc. v.

19   Ethicon, Inc., 601 F.2d 986, 987 (9th Cir. 1979).  The sixth

20   claim alleges attempted monopolization of the relevant market via

21   fraud on the U.S. Patent and Trademark Office.  See Walker

22   Process Equip., Inc. v. Food Mach. & Chem. Corp., 382 U.S. 172,

23   177 (1965).

24             Miller Mendel argues that both Sherman Act claims fail

25   on the ground of issue preclusion, and that the sixth claim

26   alleging fraud fails to satisfy the particularity requirements of

27

28

1    Federal Rule of Civil Procedure 9(b).[5]

2              1.   Issue Preclusion

3              "Issue preclusion, or collateral estoppel, 'bars

4    successive litigation of an issue of fact or law actually

5    litigated and resolved in a valid court determination essential

6    to the prior judgment,' even if the issue recurs in the context

7    of a different claim."  Hansen v. Musk, 122 F.4th 1162, 1173 (9th

8    Cir. 2024) (quoting Taylor v. Sturgell, 553 U.S. 880, 892

9    (2008)).  "For issue preclusion to apply, the party seeking

10   preclusion must show '(1) the issue at stake was identical in

11   both proceedings; (2) the issue was actually litigated and

12   decided in the prior proceedings; (3) there was a full and fair

13   opportunity to litigate the issue; and (4) the issue was

14   necessary to decide the merits.'"  Id. (quoting Howard v. City of

15   Coos Bay, 871 F.3d 1032, 1041 (9th Cir. 2017)).

16             Miller Mendel argues that issue preclusion applies to

17   the Sherman Act claims based on the attorney's fees decision from

18   the Texas Action.  There, the district court found that

19   attorney's fees were not warranted under 35 U.S.C. § 285, which

20   authorizes fees for patent cases only in "exceptional"

21   circumstances.  The court found that the case was not

22

23             [5]   Miller Mendel further argues that both Sherman Act
     claims must be dismissed due to Guardian's failure to plead that
24   Miller Mendel possessed monopoly power over the market.  This
     argument is baseless.  In addition to extensive allegations
25   concerning anti-competitive behavior, Guardian specifically
     alleges that Miller Mendel "was able to capture a dominant
26   position quickly and is currently the dominant Market
     participant, controlling at least 70% of the total dollars
27   expended annually by public safety agencies for public safety
     background investigation management software."  (Compl. ¶ 29.)

28
                              9

1  "exceptional" because "finding the '188 Patent ineligibl[e] at

2  the 12(c) stage" did not mean Miller Mendel's arguments to the

3  contrary were "frivolous or objectively unreasonable," and

4  "Miller Mendel was entitled to believe that the '188 Patent was

5  valid after it was examined and allowed by the [U.S. Patent and

6  Trademark Office]."  2022 WL 2704790, at *6.

7        Issue preclusion is not applicable based on the

8  attorney's fees decision in the Texas Action.  The Texas court

9  merely made the "factual determination" that the case was not

10 exceptional such that fees were warranted.  See id., at *2.  This

11 issue is obviously not "identical" to the questions of whether

12 Miller Mendel acted fraudulently in acquiring the patents or

13 pursued sham patent litigation in violation of the Sherman Act.

14 See Sec. & Exch. Comm'n v. Stein, 906 F.3d 823, 829 (9th Cir.

15 2018) (whether issues involve "application of the same rule of

16 law" is relevant to determining whether issues are "identical").

17 Further, the Texas decision fails the fourth requirement for

18 issue preclusion to apply, as attorney's fees are not a merits

19 issue; to the contrary, by the time the court in the Texas Action

20 considered Guardian's request for attorney's fees, it had already

21 issued a decision on the merits.  See 598 F. Supp. 3d 486.

22 Accordingly, the Sherman Act claims are not subject to issue

23 preclusion.

24        2.   Rule 9(b)

25        Federal Rule of Civil Procedure 9(b) states: "In

26 alleging fraud or mistake, a party must state with particularity

27 the circumstances constituting fraud or mistake.  Malice, intent,

28 knowledge, and other conditions of a person's mind may be alleged

1  generally." Rule 9(b) "demands that the circumstances

2  constituting the alleged fraud be specific enough to give

3  defendants notice of the particular misconduct so that they can

4  defend against the charge and not just deny that they have done

5  anything wrong." Kearns v. Ford Motor Co., 567 F.3d 1120, 1124

6  (9th Cir. 2009) (cleaned up). "Averments of fraud must be

7  accompanied by 'the who, what, when, where, and how' of the

8  misconduct charged." Id.

9        Miller Mendel argues that Guardian fails to plead with

10  particularity that Miller Mendel "intended to defraud" the Patent

11  and Trademark Office. This argument is entirely meritless. Rule

12  9(b) states that "intent . . . may be alleged generally," which

13  Guardian has done. (See, e.g., Compl. ¶ 148 ("Defendants have

14  attempted to monopolize the Market with the specific intent to do

15  so through their fraudulent misrepresentations and omissions to

16  the [Patent and Trademark Office]").)

17        The complaint also adequately sets out the "who, what,

18  when, where, and how" of the alleged fraud. Guardian alleges

19  that in the course of obtaining the '098 and '188 patents, Miller

20  Mendel "deliberately and purposefully withheld material

21  information" from the Patent and Trademark Office, including

22  "information about third-party prior art systems of which

23  Defendants were aware." (Compl. ¶ 34.) The complaint further

24  alleges that Miller Mendel learned of the prior art at issue in

25  2011, prior to filing the patent applications; details the

26  relevant patent application processes; states that Miller Mendel

27  failed to "file an information disclosure statement [concerning

28  the prior art] with the [Patent and Trademark Office] (despite

11

1   their continuing duty of disclosure under 37 C.F.R. § 1.56 to do

2   so)"; points to specific steps during the application process

3   where Miller Mendel allegedly failed to disclose the prior art

4   information, even including quotes from patent application

5   materials that Guardian contends are misleading; and alleges that

6   had the Patent and Trademark Office been made aware of the

7   information at issue, Miller Mendel would not have received the

8   patents.  (See id. ¶¶ 51-78.)  Accordingly, Guardian's claim

9   alleging fraud on the Patent and Trademark Office satisfies the

10  particularity requirements of Rule 9(b).

11  III. State Law Claims

12          Guardian alleges unfair competition in violation of

13  California Business and Professions Code § 17200; false

14  advertising in violation of Business and Professions Code §

15  17500; tortious interference with contract; tortious interference

16  with prospective economic advantage; and trade libel.  Miller

17  Mendel argues that these claims are barred by the California

18  anti-SLAPP law and should therefore be stricken.  Miller Mendel

19  also argues that these claims should be dismissed because they

20  are subject to California's litigation privilege, are barred by

21  Noerr-Pennington immunity,[6] and fail to state a claim.

22          A.   Anti-SLAPP Motion to Strike

23          A strategic lawsuit against public participation

24  ("SLAPP") is a "civil lawsuit that is aimed at preventing

25  _____

26          [6]   This doctrine takes its name from the first two cases
    that the Supreme Court considered in this jurisprudential line.
27  See E. R.R. Presidents' Conf. v. Noerr Motor Freight, Inc., 365
    U.S. 127 (1961), and United Mine Workers of America v.
28  Pennington, 381 U.S. 657 (1965).

                                12

1  citizens from exercising their political rights or punishing

2  those who have done so." Simpson Strong-Tie Co. v. Gore, 49 Cal.

3  4th 12, 21 (2010).  "While SLAPP suits masquerade as ordinary

4  lawsuits such as defamation and interference with prospective

5  economic advantage, they are generally meritless suits brought

6  primarily to chill the exercise of free speech or petition rights

7  by the threat of severe economic sanctions against the defendant,

8  and not to vindicate a legally cognizable right." Id. (internal

9  quotation marks omitted).  California's anti-SLAPP statute, Cal.

10  Code. Civ. Proc. § 425.16, "authorize[s] the filing of a special

11  motion to strike to expedite the early dismissal of these

12  unmeritorious claims." Id.

13        The anti-SLAPP statute is subject to an exemption for

14  commercial speech.  An action arises from commercial speech and

15  is therefore exempt from the anti-SLAPP law when (1) "the cause

16  of action is against a person primarily engaged in the business

17  of selling or leasing goods or services;" (2) "the cause of

18  action arises from a statement or conduct by that person

19  consisting of representations of fact about that person's or a

20  business competitor's business operations, goods, or services;"

21  (3) "the statement or conduct was made either for the purpose of

22  obtaining approval for, promoting, or securing sales or leases

23  of, or commercial transactions in, the person's goods or services

24  or in the course of delivering the person's goods or services;"

25  and (4) "the intended audience for the statement or conduct" is

26  "'an actual or potential buyer or customer, or a person likely to

27  repeat the statement to, or otherwise influence, an actual or

28  potential buyer or customer.'" See id. at 30 (quoting Cal. Code.

13

1   Civ. Proc. § 425.17(c)).

2        The commercial speech exemption applies here.  First,

3   Miller Mendel is primarily engaged in the business of selling

4   goods or services, namely their background check software.

5   Second, Guardian's claims arise in part from representations of

6   fact that Miller Mendel made to Guardian's customers concerning

7   Guardian's product, for example that "[t]hrough the way

8   [Guardian's software] operates and their Terms of Service and

9   Privacy Policy, [customers] have no first-level control over

10   [their] applicants' data," leading customers to "likely lose

11   control over public records law exemptions, ability to object to

12   discovery requests and also, in general, lose security over the

13   applicants' data."  (See Ex. 28 to Compl.)  Third, the statements

14   at issue were made for the purpose of persuading Guardian's

15   customers or potential customers to use Miller Mendel's software

16   rather than Guardian's.  For example, the above statement

17   concerning the purported security failures of Guardian's software

18   was disseminated in emails sent directly to several of Guardian's

19   customers that asked the customers to "cease use" of Guardian's

20   software.  Those emails also represented that Guardian's software

21   infringed on Miller Mendel's patent, thereby presenting Miller

22   Mendel's software as an alternative to Guardian's product.  (See

23   id.)  Finally, the statements at issue were made either directly

24   to Guardian's potential customers (see id.) or disseminated to an

25   intended audience that included Guardian's actual or potential

26   customers (see Ex. 30 to Compl.).  Accordingly, Guardian's state

27   law claims are subject to the commercial speech exemption and

28

14

1   Miller Mendel's anti-SLAPP motion to strike will be denied.[7]

2       B.   *Noerr-Pennington* Immunity

3           The Noerr-Pennington doctrine, which is derived from

4   the Petition Clause of the First Amendment, "provides that those

5   who petition any department of the government for redress,"

6   including the judicial branch, "are generally immune from . . .

7   liability for their petitioning conduct."  See B&G Foods N. Am.,

8   Inc. v. Embry, 29 F.4th 527, 535 (9th Cir. 2022) (internal

9   quotation marks omitted).  Noerr-Pennington applies to state law

10  claims.  Theme Promotions, Inc. v. News Am. Mktg. FSI, 546 F.3d

11  991, 1007 (9th Cir. 2008).

12          The Noerr-Pennington doctrine does not grant immunity,

13  however, where the "sham exception" applies.  See Kaiser Found.

14  Health Plan, Inc. v. Abbott Lab'ys, Inc., 552 F.3d 1033, 1044

15  (9th Cir. 2009).  To fall under the sham exception, the

16  litigation at issue must be "objectively baseless in the sense

17  that no reasonable litigant could realistically expect success on

18  the merits."  Prof. Real Estate Inv'rs, Inc. v. Columbia Pictures

19  Indus., Inc., 508 U.S. 49, 60 (1993).  If the lawsuit is

20  objectively baseless, the court "examine[s] the litigant's

21  subjective motivation" to determine whether the lawsuit "conceals

22  an attempt to interfere directly with the business relationships

23  ――――――――――――――――――

24      [7]   Miller Mendel's reply brief does not engage with the
    elements of the commercial speech exemption, instead appearing to
25  argue in circular fashion that because the claims at issue fall
    within the scope of the anti-SLAPP statute, they do not qualify
26  for the commercial speech exemption therefrom.  If Miller
    Mendel's brief is trying to argue anything more than that, the
27  court is unable to understand that argument.  Further, at oral
    argument, counsel failed to rebut Guardian's showing that the
28  elements of the commercial speech exemption are satisfied.

1   of a competitor through the use of the governmental process -- as

2   opposed to the outcome of that process -- as an anticompetitive

3   weapon."  Id. at 60-61 (cleaned up).

4         The Ninth Circuit has explained that in a case

5   involving a "fraudulently obtained patent, that which immunized

6   the [patent enforcement litigation] from . . . liability (the

7   patent) is, in effect, a nullity because of the underlying

8   fraud."  Hydranautics v. FilmTec Corp., 70 F.3d 533, 538 (9th

9   Cir. 1995) (quoting Liberty Lake Invs., Inc. v. Magnuson, 12 F.3d

10  155 (9th Cir. 1993)).  Accordingly, where intentional fraud in

11  the procurement of the patent is alleged, dismissal at the

12  pleadings stage pursuant to the Noerr-Pennington doctrine is

13  improper.  See id.  Put differently, "[o]bjective baselessness

14  may be shown by demonstrating that the 'infringement action [is]

15  based on a fraudulently obtained patent.'"  Shenzhen Smoore Tech.

16  Co. v. Next Level Ventures, LLC, No. 2:22-cv-07646, 2024 WL

17  5317246, at *7 (C.D. Cal. Dec. 4, 2024) (quoting Hydranautics, 70

18  F.3d at 538).  See also Kaiser Found. Health Plan, 552 F.3d at

19  1045 (the "fraud or misrepresentation" warranting application of

20  the sham exception to Noerr-Pennington can include fraud

21  "directed to the federal Patent and Trademark Office [], not

22  merely to a court").

23        Because Guardian has plausibly alleged that Miller

24  Mendel (1) engaged in intentional fraud in obtaining the patent

25  underlying the enforcement litigation (see Compl. ¶¶ 33-78), and

26  (2) intended the litigation to interfere with Guardian's business

27  relationships (see id. ¶¶ 12-18, 95-127), dismissal of the state

28  law claims (to the extent they are premised on that litigation)

16

1    is not warranted under Noerr-Pennington.  See Shenzhen Smoore,

2    2024 WL 5317246, at *7 (declining to grant immunity under Noerr-

3    Pennington at the pleadings stage where complaint alleged that

4    defendant knew the patent at issue was obtained fraudulently and

5    pursued a patent enforcement action nonetheless).[8]

6         C.   Litigation Privilege

7              Miller Mendel asserts that Guardian's state law claims

8    are barred because they are premised on communications subject to

9    California's litigation privilege, Cal. Civ. Code § 47.  "[T]he

10   privilege applies to any communication (1) made in judicial or

11   quasi-judicial proceedings; (2) by litigants or other

12   participants authorized by law; (3) to achieve the objects of the

13   litigation; and (4) that have some connection or logical relation

14   to the action."  Silberg v. Anderson, 50 Cal. 3d 205, 212 (1990).

15   The privilege "applies to any publication or other communication

16   . . . whether or not the publication is made in the courtroom or

17   in court pleadings, and whether or not any function of the court

18   or its officers is involved."  Rothman v. Jackson, 49 Cal. App.

19   4th 1134, 1140 (2d Dist. 1996).  If a "statement is made with a

20   good faith belief in a legally viable claim and in serious

21   contemplation of litigation, then the statement is sufficiently

22   ─────────────────────

23        [8]   Miller Mendel also argues that "federal patent law
     preempts state-law tort liability for a patentholder's good faith
     conduct in communications asserting infringement of its patent
24   and warning about potential litigation."  See Lite-Netics, LLC v.
     Nu Tsai Cap. LLC, 60 F.4th 1335, 1343 (Fed. Cir. 2023).  However,
25   state claims "can survive federal preemption" when they are
     "based on a showing of 'bad faith' action in asserting
26   infringement."  See id.  The "bad faith" analysis is identical to
     the sham exception's "objectively baseless" prong, see id.
27   (citing Columbia Pictures, 508 U.S. at 60), and therefore does
     not require separate discussion.
28

                                    17

1  connected to litigation and will be protected by the litigation

2  privilege." Blanchard v. DIRECTV, Inc., 123 Cal. App. 4th 903,

3  919 (2d Dist. 2004).

4          Guardian has alleged sufficient conduct not protected

5  by the litigation privilege to survive dismissal.  First,

6  Guardian's claims rely not only on Miller Mendel's infringement

7  litigation, but also the patent application process itself.  The

8  litigation privilege "is intended to assure utmost freedom of

9  communication between citizens and public authorities whose

10 responsibility is to investigate and remedy wrongdoing." Hagberg

11 v. California Fed. Bank, 32 Cal. 4th 350, 360 (2004) (emphasis in

12 original).  As the Ninth Circuit explained in Mindys Cosmetics,

13 Inc. v. Dakar, an application to the Patent and Trademark Office

14 does not serve that purpose, because such an application is "not

15 filed in anticipation of litigation, nor [i]s it intended to

16 instigate official investigation into wrongdoing." See 611 F.3d

17 590, 600 (9th Cir. 2010) (citing Hagberg, 32 Cal. 4th at 369);

18 see also NICOR, Inc. v. SourceBlue, LLC, No. 2:21-cv-05876, 2023

19 WL 6866329, at *25 (C.D. Cal. Aug. 30, 2023) (claim alleging that

20 defendant "[sought] a patent based on stolen proprietary

21 information" may not be barred by the litigation privilege).

22         Second, Guardian's claims are also premised in part on

23 communications arguably disseminated to a broader audience.  The

24 complaint alleges that Miller Mendel published an "open letter

25 regarding serious public concerns" about Guardian's software on

26 Miller Mendel's website.  (Compl. ¶ 118; Ex. 29 to Compl.)  While

27 there is no binding authority on point, several "California

28 courts have made clear that the privilege 'does not encompass

18

1  publication to the general public,'" for example social media

2  posts or press releases.  See Therabody, Inc. v. Hyper Ice, Inc.,

3  No. 8:24-cv-00378, 2024 WL 5316364, at *8 (C.D. Cal. Oct. 31,

4  2024) (quoting GetFugu, Inc. v. Patton Boggs LLP, 220 Cal. App.

5  4th 141, 153 (2d Dist. 2013)).  Such efforts to "'publicize the

6  alleged misdeeds'" of the opposing party by making statements

7  "directed to the public as a whole" might not be covered by the

8  litigation privilege.  See id., at *7-8 (quoting GetFugu, 220

9  Cal. App. 4th at 153); see also Cap Exp., LLC v. Zinus, Inc., No.

10  2:21-cv-07148, 2023 WL 6381821, at *6 (C.D. Cal. Sept. 28, 2023)

11  ("'Public mudslinging' in the form of Defendants' communications

12  accusing [the plaintiff] of unlawful infringement are not

13  afforded 'the same protections which section 47(b) gives to court

14  processes.'") (quoting Rothman, 49 Cal. App. 4th at 1146).  But

15  see UCP Int'l Co. Ltd. v. Balsam Brands Inc., 420 F. Supp. 3d

16  966, 982-83 (N.D. Cal. 2019) (citing Weiland Sliding Doors &

17  Windows, Inc. v. Panda Windows & Doors, LLC, 814 F. Supp. 2d

18  1033, 1041 (S.D. Cal. 2011)) (litigation privilege protected

19  statements concerning infringement litigation made on website

20  whose intended audience was customers).

21      Third, Miller Mendel's statements both directly to

22  customers and on the Miller Mendel website concerned not only the

23  patent infringement litigation, but also other unrelated issues

24  concerning Guardian's software -- for instance, the statement

25  discussed above pertaining to the software's alleged security

26  flaws.  Statements about Guardian's product entirely unrelated to

27  patent infringement do not have a connection or logical relation

28  to the infringement litigation.  See NICOR, 2023 WL 6866329, at

19

1   *25 (litigation privilege did not apply where alleged statements

2   were "not limited to enforcing patent rights"); Tri-Star Elecs.

3   Int'l, Inc. v. Preci-Dip Durtal SA, No. 08-cv-04226, 2011 WL

4   13176071, at *8 (C.D. Cal. May 27, 2011) (litigation privilege

5   did not apply to allegedly false "gratuitous disparaging

6   statements" about the quality of plaintiff's products, as those

7   statements "do not serve the objects of the litigation because

8   [they have] nothing to do with the alleged infringement").

9        While some of the conduct at issue may well be covered

10  by the litigation privilege, Guardian has provided sufficient

11  allegations of unprivileged conduct to survive dismissal.

12      D.   Failure to State a Claim

13           1.   Tortious Interference with Contract (Claim 9)

14           The elements of a claim for intentional interference

15  with contractual relations are "(1) a valid contract between

16  plaintiff and a third party; (2) defendant's knowledge of this

17  contract; (3) defendant's intentional acts designed to induce a

18  breach or disruption of the contractual relationship; (4) actual

19  breach or disruption of the contractual relationship; and (5)

20  resulting damage." hiQ Labs, Inc. v. LinkedIn Corp., 31 F.4th

21  1180, 1191 (9th Cir. 2022) (quoting Pac. Gas & Elec. Co. v. Bear

22  Stearns & Co., 50 Cal. 3d 1118, 1126 (1990)). "'[I]t is not

23  necessary that the defendant's conduct be wrongful apart from the

24  interference with the contract itself.'" Salon Supply Store, LLC

25  v. Creative Nail Design, Inc., No. 14-cv-01083, 2015 WL 11438492,

26  at *8 (S.D. Cal. June 19, 2015) (quoting Quelimane Co. v. Stewart

27  Title Guar. Co., 19 Cal. 4th 26, 55 (1998)).

28           Defendants argue that they cannot be held liable for

20

1  tortious interference with contract because they acted with a

2  legitimate business purpose, namely protecting their patents.

3         "Under California law, a legitimate business purpose

4  can indeed justify interference with contract, but not just any

5  such purpose suffices." hiQ Labs, 31 F.4th at 1192 (citing

6  Quelimane, 19 Cal. 4th at 55-56).  "Rather, interference with

7  contract is justified only when the party alleged to have

8  interfered acted 'to protect an interest that has greater social

9  value than [e]nsuring the stability of the contract' interfered

10  with."  Id. at 1193 (quoting Imperial Ice Co. v. Rossier, 18 Cal.

11  2d 33, 35 (1941)).  Accordingly, California courts determining

12  whether a business purpose justifies interference with contract

13  balance "'the importance, social and private, of the objective

14  advanced by the interference against the importance of the

15  interest interfered with, considering all circumstances including

16  the nature of the actor's conduct and the relationship between

17  the parties.'"  Id. (quoting Herron v. State Farm Mut. Ins. Co.,

18  56 Cal. 2d 202, 206, (1961)).  "Considerations include whether

19  the means of interference involve no more than recognized trade

20  practices, and whether the conduct is within the realm of fair

21  competition," but "[t]he determinative question is whether the

22  business interest is pretextual or asserted in good faith."  Id.

23  (internal quotation marks and citations omitted).

24         Defendants state in conclusory fashion that patent

25  enforcement qualifies as a legitimate business purpose, but cite

26  no California authorities for that proposition, nor do they

27  engage with the applicable balancing test.  More importantly,

28  there are allegations of bad faith in Miller Mendel's enforcement

21

1  of the patents, which indicates that the legitimate business

2  purpose defense may not apply.  See id. at 1193 ("The

3  determinative question is whether the business interest is

4  pretextual or asserted in good faith.").  Miller Mendel therefore

5  has not met its burden for establishing that this "affirmative

6  justification defense" applies.  See id. at 1192.  Accordingly,

7  Guardian's claim for tortious interference with contract will not

8  be dismissed based on the legitimate business purpose defense.

9          2.   Tortious Interference with Prospective Economic
                Advantage (Claim 10)
10

11         Tortious interference with prospective economic

12  advantage consists of "knowing[] interfere[nce]" with an

13  "economic relationship between the plaintiff and some third

14  party, which carries the probability of future economic benefit

15  to the plaintiff."  Ixchel Pharma, LLC v. Biogen, Inc., 9 Cal.

16  5th 1130, 1141 (2020) (cleaned up).  "Unlike intentional

17  interference with existing contractual relations, interference

18  with prospective economic advantage requires a plaintiff to

19  allege an act that is wrongful independent of the interference

20  itself."  CRST Van Expedited, Inc. v. Werner Enters., Inc., 479

21  F.3d 1099, 1108 (9th Cir. 2007) (citing Della Penna v. Toyota

22  Motor Sales, U.S.A., Inc., 11 Cal. 4th 376, 392-93 (1995)).

23         In addition to the "legitimate business purpose"

24  defense already rejected above, Miller Mendel argues that

25  Guardian fails to plead an independently wrongful act.  "[A]n act

26  is independently wrongful if it is unlawful, that is, if it is

27  proscribed by some constitutional, statutory, regulatory, common

28  law, or other determinable legal standard."  Id. (quoting Korea

22

1  Supply, 29 Cal. 4th at 1159).  Here, Guardian has alleged

2  independently wrongful conduct, including the alleged false

3  statements made to its customers.  See Visto Corp. v. Sproqit

4  Techs., Inc., 360 F. Supp. 2d 1064, 1067 (N.D. Cal. 2005)

5  (defendant pled "the element of independently wrongful conduct

6  because it has alleged that [the plaintiff]'s allegations of

7  patent infringement are false and/or defamatory").  Accordingly,

8  Guardian's claim for tortious interference with prospective

9  economic advantage will not be dismissed.

10        3.   Unfair Competition and False Advertising (Claims 7
             and 8)
11

12        The Unfair Competition Law ("UCL") prohibits any

13  unlawful, unfair, or fraudulent business act or practice.  Cal.

14  Bus. & Prof. Code § 17200.  The false advertising law makes it

15  unlawful to disseminate "untrue or misleading" statements with

16  the "intent . . . to dispose of real or personal property or

17  perform services."  Cal. Bus. & Prof. Code § 17500.

18        To have standing under both the UCL and false

19  advertising law, a plaintiff must: "(1) establish a loss or

20  deprivation of money or property sufficient to qualify as injury

21  in face, i.e., economic injury, and (2) show that that economic

22  injury was the result of, i.e., caused by, the unfair business

23  practice or false advertising that is the gravamen of the claim."

24  Kwikset Corp. v. Superior Court, 246 Cal. 4th 310, 332 (2011).

25        Guardian has successfully stated a claim under the UCL.

26  The UCL "borrows violations of other laws and treats them as

27  unlawful practices that the unfair competition law makes

28  independently actionable."  Cel-Tech Commc'ns, Inc. v. Los

                                 23

1   Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999).  Because

2   Guardian has adequately pled the federal and state claims

3   discussed above, it has also adequately pled its UCL claim.  See

4   Dairy, LLC v. Milk Moovement, Inc., No. 2:21-cv-02233 WBS AC,

5   2023 WL 3437426, at *15 (E.D. Cal. May 12, 2023).  Further,

6   Guardian has adequately pled economic injury in connection with

7   its underlying claims, for example, by explaining that Miller

8   Mendel's anticompetitive conduct enabled it to capture some of

9   Guardian's market share and customers, including at least one

10  customer who had already entered into a contract with Guardian.

11  (See Compl. ¶ 32.)  Accordingly, Guardian's UCL claim will not be

12  dismissed.

13          However, Guardian has failed to establish standing for

14  its false advertising claim.  While Guardian points to certain

15  allegedly false or misleading statements Miller Mendel made to

16  the public and to Guardian's customers (see Compl. ¶¶ 115-121),

17  it fails to provide allegations concerning the economic injury

18  caused by those statements specifically.  Accordingly, Guardian's

19  false advertising claim will be dismissed.

20          4.   Trade Libel (Claim 11)

21          Under California law, "[t]rade libel is the publication

22  of matter disparaging the quality of another's property, which

23  the publisher should recognize is likely to cause pecuniary loss

24  to the owner." ComputerXpress, Inc. v. Jackson, 93 Cal. App. 4th

25  993, 1010 (4th Dist. 2001) (citing Leonardini v. Shell Oil Co.,

26  216 Cal. App. 3d 547, 572 (3d Dist. 1989)).  It encompasses "all

27  false statements concerning the quality of services or product of

28  a business which are intended to cause that business financial

24

1    harm and in fact do so." <u>Leonardini</u>, 216 Cal. App. 3d at 572.

2         To state a claim for trade libel, plaintiff must plead

3    special damages.  <u>Therabody</u>, 2024 WL 5316364, at *10 (collecting

4    cases).  Similarly to the false advertising claim, the trade

5    libel claim fails due to Guardian's failure to plead economic

6    damages in connection with the allegedly false statements at

7    issue, as opposed to damages caused by Miller Mendel's alleged

8    anticompetitive conduct as a whole.[9]  Accordingly, Guardian's

9    claim for trade libel will be dismissed.

10        IT IS THEREFORE ORDERED that defendants' motion to

11   strike (Docket No. 41) be, and the same hereby is, DENIED.

12        IT IS FURTHER ORDERED that defendants' motion to

13   dismiss (Docket No. 40) be, and the same hereby is, GRANTED only

14   as to the eighth claim for false advertising and eleventh claim

15   for trade libel.  The motion is DENIED in all other respects.

16   Plaintiff has **14 days** from the date of this Order to file an

17   amended complaint, if it can do so consistent with this Order.

18        Within **21 days** of the issuance of this Order, the

19   parties shall file a joint status report addressing (1) whether

20   this court should issue a pretrial scheduling order, and if so

21   what dates the parties desire and any other information required

22   under Federal Rule of Civil Procedure 26(f) (<u>see</u> Docket No. 6);

23   _____

24       [9]    Guardian appears to recognize that its complaint fails
     to plead economic damages for purposes of the false advertising
25   and trade libel claims, as it has provided a declaration
     addressing this issue (<u>see</u> Anthony Decl. (Docket No. 43)) and all
26   but conceded the issue during oral argument.  However, the
     declaration provided is not judicially noticeable and is
27   therefore inappropriate for consideration at the pleadings stage.
     <u>See</u> <u>Khoja v. Orexigen Therapeutics, Inc.</u>, 899 F.3d 988, 998 (9th
28   Cir. 2018).

1  (2) whether the parties wish to proceed to settlement

2  discussions, and if so whether they would like the court to refer

3  the matter to the court's Voluntary Dispute Resolution Program

4  ("VDRP") or a settlement conference with a magistrate judge; and

5  (3) any other matter of which the parties think the court should

6  be informed.

7  Dated:  April 30, 2025

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

26

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                        ----oo0oo----

11

12  GUARDIAN ALLIANCE TECHNOLOGIES,        No. 2:22-cv-01390 WBS AC
    INC.,

13
                 Plaintiff,

14                                          MEMORANDUM AND ORDER RE:
         v.                                 DEFENDANTS' MOTION TO
15                                          TRANSFER VENUE
    MILLER MENDEL, INC. and TYLER
16  MILLER,

17               Defendants.

18
                          ----oo0oo----
19

20          Plaintiff Guardian Alliance Technologies, Inc.

21  ("Guardian") brought this action against defendants Miller

22  Mendel, Inc. and Tyler Miller (collectively, "Miller Mendel"),

23  seeking declarations that two of defendants' patents are invalid,

24  asserting claims under the Sherman Antitrust Act, 15 U.S.C § 2,

25  and alleging various violations of California state law.  (First

26  Am. Compl. (Docket No. 51).)  Before the court is Miller Mendel's

27  motion to transfer venue.  (Docket No. 54.)

28          This action concerns several patents for pre-employment

                              1

1   background check software filed by Miller Mendel.  The court does

2   not recite the facts and procedural history as it has done so in

3   a prior order.  (See Docket No. 48.)

4          As relevant here, in October 2018, Miller Mendel sued

5   the City of Oklahoma City in the Western District of Oklahoma

6   (the "Oklahoma Action").  See Case No. 5:18-cv-00990 (W.D.

7   Okla.).  Guardian, the indemnitor of the City of Oklahoma City,

8   was later added as a defendant.  (See Oklahoma Action, Docket

9   Nos. 104, 150.)  That action remains pending.

10          Miller Mendel seeks to transfer venue to the Western

11   District of Oklahoma pursuant to the first-to-file rule.  The

12   first-to-file rule is "a judicially created doctrine of federal

13   comity, which applies when two cases involving substantially

14   similar issues and parties have been filed in different

15   districts."  In re Bozic, 888 F.3d 1048, 1051 (9th Cir. 2018)

16   (internal quotation marks and citations omitted).  "Under that

17   rule, the second district court has the discretion to transfer,

18   stay, or dismiss the second case in the interest of efficiency

19   and judicial economy."  Id. at 1051-52 (internal quotation marks

20   and citation omitted).

21          To determine whether to apply the rule, a district

22   court considers three factors: "chronology of the lawsuits,

23   similarity of the parties, and similarity of the issues."  Kohn

24   Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc., 787 F.3d 1237,

25   1240 (9th Cir. 2015).  "When applying the first-to-file rule,

26   courts should be driven to maximize 'economy, consistency, and

27   comity.'"  Id. (quoting Cadle Co. v. Whataburger of Alice, Inc.,

28   174 F.3d 599, 604 (5th Cir. 1999)).

2

1    The first-to-file rule "is not a rigid or inflexible

2  rule to be mechanically applied, but rather is to be applied with

3  a view to the dictates of sound judicial administration."

4  Pacesetter Sys. Inc. v. Medtronic, Inc., 678 F.2d 93, 95 (9th

5  Cir. 1982).  "District court judges can, in the exercise of their

6  discretion, dispense with the first-filed principle for reasons

7  of equity."  Alltrade, Inc. v. Uniweld Prods., Inc., 946 F.2d

8  622, 628 (9th Cir. 1991).  "The circumstances under which an

9  exception to the first-to-file rule typically will be made

10  include bad faith, anticipatory suit, and forum shopping."  Id.

11    The Oklahoma Action was filed in 2018, four years prior

12  to the instant action.  However, little has occurred in that

13  case, and no claims have been disposed of or the merits otherwise

14  ruled upon.  Cf. Lovell v. United Airlines, Inc., 728 F. Supp. 2d

15  1096, 1102 (D. Haw. 2010) (applying first-to-file rule and noting

16  that trial was set to begin in first filed action, while a

17  scheduling conference had not yet occurred in second filed

18  action).  Specifically, only two events of note have occurred in

19  the Oklahoma Action.  First, the court denied Guardian's motion

20  to dismiss Miller Mendel's defamation claim.  (See Oklahoma

21  Action, Docket No. 137.)  Second, the parties submitted briefs

22  concerning claim construction, although no hearing has been set

23  on those briefs.  (See id., Docket Nos. 117, 119, 121.)

24    The same parties are involved in the two actions.  In

25  the Oklahoma Action, both Miller Mendel, Inc. and Tyler Miller

26  are plaintiffs, and Guardian is a defendant.  (See Oklahoma

27  Action, Docket No. 150.)  Here, Miller Mendel, Inc. and Tyler

28

1  Miller are the defendants, while Guardian is the plaintiff.[1]

2  There is "substantial overlap" between Miller Mendel's

3  claim in the Oklahoma Action, seeking a declaration that Miller

4  Mendel did not engage in patent fraud or inequitable conduct, and

5  Guardian's first and second claims in this action, which also

6  concern alleged fraud or inequitable conduct by Miller Mendel

7  with respect to one of the same patents.  See Kohn Law Grp., 787

8  F.3d at 1241.  However, in this action, Guardian also seeks

9  declarations that the patents at issue are invalid; brings claims

10  under the Sherman Antitrust Act; and alleges violations of

11  California law, including tortious interfere, unfair competition,

12  and trade libel.  (See First. Am. Compl. ¶¶ 147-205.)

13  Guardian did not initially raise these issues in its

14  response to the complaint in the Oklahoma Action for good reason.

15  Guardian's first responsive pleading in that action was its

16  motion to dismiss, which remained pending for four years prior to

17  a decision.  (See Oklahoma Action, Docket No. 112, 137.)  Thus,

18  Guardian did not have the opportunity to file an answer or

19  counterclaim in the Oklahoma Action raising the issues that are

20  before this court until that motion to dismiss had been

21  adjudicated.

22  Based on the foregoing, the three factors considered

23  _____

24  [1]  The court notes that none of the parties in this action
are based in Oklahoma.  (See First Am. Compl. ¶¶ 4-6.)  It

25  therefore does not appear that the Western District of Oklahoma
would be more convenient for either side, nor does Miller Mendel

26  argue that Oklahoma is more convenient for any witnesses.  See
Pacesetter, 678 F.2d at 96 ("In appropriate cases it would be

27  relevant for the court in the second-filed action to give
consideration to the convenience of the parties and witnesses" in

28  determining whether to apply the first-to-file rule.)

4

1  under the first-to-file rule do not strongly weigh in favor of

2  transfer.  Although the parties are the same, nothing of

3  consequence has occurred in the Oklahoma Action despite its

4  earlier date of filing, and this case presents several legal and

5  factual issues that are not involved in the Oklahoma Action.

6      More importantly, prior to making the pending motion to

7  transfer out of this court, Miller Mendel chose to file complex

8  motions to strike and dismiss in this court.  The court has

9  already ruled on those motions in a 26-page order.  (See Docket

10 No. 48.)  Only after Miller Mendel's motions were largely denied

11 -- which decision came nearly three years following the filing of

12 Guardian's complaint in this action -- did Miller Mendel seek

13 transfer.  Miller Mendel's decision to move for transfer of venue

14 only after receiving an unfavorable result in this court has, at

15 the very least, the appearance of forum shopping.  As Miller

16 Mendel stated in its own reply brief, "the attempt to avoid

17 adverse rulings by switching forums is the 'hallmark of forum

18 shopping.'"  (Docket No. 59 at 6 (quoting Key Equip. Fin. v. Fed.

19 Express Corp., No. 14-cv-7534, 2014 WL 12966963, at *7 (C.D. Cal.

20 Dec. 18, 2014)).[2]

21      If it was prudent to transfer this action to the

22 Western District of Oklahoma, surely Miller Mendel could have

23 sought that relief prior to the filing of dispositive motions in

24

_____

25      [2]  Miller Mendel argues that Guardian's filing of this
   action in the Eastern District of California amounted to forum
26 shopping.  Even if that were the case, that would not cure the
   appearance of forum shopping underlying Miller Mendel's motion.
27 If Miller Mendel was concerned about Guardian's alleged forum
   shopping, it could have moved to transfer venue during the years
28 preceding its motions to dismiss and strike.

1  this court.  Indeed, Miller Mendel's motion to dismiss relied

2  upon the first-to-file rule as a means of seeking dismissal of

3  plaintiff's claims, but did not request transfer.  (See Docket

4  No. 40 at 19.)  In that motion to dismiss, Miller Mendel also

5  stated that they anticipated transfer of the Oklahoma Action to

6  this court and did not express any opposition to that prospect at

7  the time.  (See id. at 20.)  Miller Mendel filed the instant

8  motion to transfer venue only after Guardian filed its own motion

9  to transfer venue in the Oklahoma court.  (See Oklahoma Action,

10  Docket No. 146.)  Miller Mendel has not pointed to any new

11  developments in the Oklahoma Action that justify its decision to

12  file a motion to transfer venue at this relatively late stage.

13         In short, Miller Mendel's conduct of this litigation

14  and its prior representations to this court give reason to doubt

15  the motivation underlying Miller Mendel's motion to transfer

16  venue, which has all the appearance of an attempt at forum

17  shopping.  Accordingly, for the foregoing reasons of equity, the

18  court declines the apply the first-to-file rule.  See Alltrade,

19  946 F.2d at 628.

20         IT IS THEREFORE ORDERED that defendants' motion to

21  transfer venue (Docket No. 54) be, and the same hereby is,

22  DENIED.

23  Dated:  July 22, 2025

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

24

25

26

27

28

6

**BUCHALTER**
A Professional Corporation
Joshua M. Robbins (SBN: 270553)
18400 Von Karman, Suite 800
Irvine, CA 92612
(949) 224-6284
jrobbins@buchalter.com

Robert S. McWhorter (SBN: 226186)
Jarrett S. Osborne-Revis (SBN 289193)
500 Capitol Mall, Ste. 1900
Sacramento, California 95814
(916) 899-1099
rmcwhorter@buchalter.com
josbornerevis@buchalter.com

**RYLANDER & ASSOCIATES PC**
Kurt M. Rylander (Pro Hac Vice Application Pending)
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931
rylander@rylanderlaw.com

Attorneys for Defendants,
Miller Mendel, Inc. and
Tyler Miller

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| **GUARDIAN ALLIANCE TECHNOLOGIES, INC.,**<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>**MILLER MENDEL, INC.** and **TYLER MILLER**,<br><br>　　　　　Defendants. | CASE NO. 2:22-cv-01390-WBS-AC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>DATE:　　　January 9, 2023<br>TIME:　　　1:30 p.m.<br>JUDGE:　　Hon. William B. Shubb<br>　　　　　　Courtroom 5, 14th Floor<br>　　　　　　501 I Street<br>　　　　　　Sacramento, CA 95814 |

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION .......................................................................................... 1

II.    STATEMENT OF FACTS ............................................................................ 2

    A.    Defendants Patent Their Background Check Technology. ..................... 2

    B.    Defendants Seek to Enforce Their Patents Through Litigation and Related Communications. ......................................................................... 2

    C.    Guardian Sues Defendants Over Their Patent Application, Enforcement Litigation, and Related Communications .............................................. 5

III.   ARGUMENT .............................................................................................. 6

    A.    Standard of Review ............................................................................... 6

    B.    Guardian Does Not Plead Proper Declaratory Judgment Claims. ......... 7

        1.    The First-to-File Rule Bars Guardian's Declaratory Relief Claims .......... 7

        2.    Guardian Faces No Immediate Threat of Patent Enforcement Litigation from Defendants That Warrants a Declaratory Judgment.......... 9

            a.    The '098 Patent ............................................................ 10

            b.    The '188 Patent ............................................................ 10

    C.    Guardian Does Not Plead Proper Sherman Act Antitrust Claims. ....... 11

        1.    Collateral Estoppel Bars the *Handgards* claim Because the *City of Anna* Court Found that Defendants' Conduct Was Reasonable and in Good Faith............................................................................ 11

        2.    Guardian's *Walker Process* Claim Is Barred Under Collateral Estoppel and Does Not Allege the Required Elements with Particularity.............. 12

        3.    Guardian Does Not Properly Allege that Miller Mendel Has Monopoly Power. .............................................................................. 14

    D.    Guardian Does Not Plead Proper State Law Claims............................ 15

        1.    California's Litigation Privilege Bars Guardian's State Law Claims Because They Are Based On Defendants' Statements Made in Litigation. ...................................................................................... 16

2.  The *Noerr-Pennington* Doctrine and the Petition Clause Bars Guardian's State Law Claims Because They Are Based on Defendants' Protected Petitioning Activity. .............................................. 18

3.  Federal Patent Law Preempts Guardian's State Law Claims Because Defendants' Patent-Enforcement Actions Were Privileged and Made in Good Faith. .......................................................................................... 20

4.  Guardian Fails to Plead a Viable Unfair Competition Claim Under Business & Professions Code Section 17200. .......................................... 21

5.  Guardian Fails to Plead a Viable False Advertising Claim...................... 23

6.  Guardian Fails to Plead Viable Tortious Interference Claims. ................ 24

7.  Guardian Fails to Plead a Viable Trade Libel Claim. ............................. 25

E.  GUARDIAN FAILS TO PLEAD WITH REQUIRED PARTICULARITY ........ 26

1.  Guardian Does Not Sufficiently Allege Defendant's Prior Offer to Sell. ......................................................................................................... 27

2.  Guardian Does Not Sufficiently Allege Failure to Disclose Third Party Prior Art. .................................................................................................. 27

IV.  CONCLUSION ............................................................................................................. 30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Action Apartment Ass'n., Inc. v. City of Santa Monica*,
    41 Cal. 4th 1232 (2007) ................................................................................ 16, 18

*Alice Corp. Pty, Ltd. v. CLS Bank International*,
    573 U.S. 208 (2014) ............................................................................ 2, 3, 5, 6

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
    946 F.2d 622 (9th Cir. 1991) ................................................................................. 7

*Alzheimer's Inst. of America v. Eli Lilly & Company*,
    128 F. Supp. 3d 1249 (N.D. Cal. 2015) ............................................................... 11

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*,
    Case No. CV 10-5696, 2013 WL 3460707 (N.D. Cal. July 9, 2013) ................... 25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................... 6

*Baxa Corp. v. McGaw, Inc.*,
    996 F. Supp. 1044 (D. Colo. 1997) ...................................................................... 24

*Briggs v. Eden Council of Hope and Opportunity*,
    19 Cal. 4th 1106 (1999) ........................................................................................ 16

*Brown v. Allstate Ins. Co.*,
    17 F. Supp. 2d 1134 (S.D. Cal. 1998) .................................................................. 23

*Brownsville Golden Age Nursing Home, Inc. v. Wells*,
    839 F.2d 155 (3d Cir. 1988) ................................................................................. 18

*Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*,
    394 F.3d 1348 (Fed. Cir. 2005) ............................................................................ 28

*California Transport v. Trucking Unlimited*,
    404 U.S. 508 (1972) ............................................................................................. 18

*Campion v. Old Republic Home Prot. Co., Inc.*,
    861 F. Supp. 2d 1139 (S.D. Cal. 2012) ............................................................... 23

*Cat Tech LLC v. TubeMaster, Inc.*,
    528 F.3d 871 (Fed. Cir. 2008) ................................................................................ 9

*Cel-Tech Commc'n, Inc. v Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) .......................................................................................... 22

*Chip-Mender, Inc. v. Sherwin-Williams Co.*,
   Case No. C 05-3465, 2006 WL 13058 (N.D. Cal. Jan. 3, 2006) ............................................ 23

*City of Columbia v. Omni Outdoor Advert., Inc.*,
   499 U.S. 365 (1991) ........................................................................................ 19

*Code Rebel, LLC, v. Aqua Connect, Inc.*,
   Case No. CV 13-4539, 2013 WL 5405706 (C.D. Cal. Sept. 24, 2013) ................................. 26

*Comm. on Children's Television v. Gen. Foods Corp.*,
   35 Cal. 3d 197 (1983) ...................................................................................... 22

*ComputerXpress, Inc. v. Jackson*,
   93 Cal. App. 4th 993 (2001) .............................................................................. 25

*Concrete Unlimited, Inc. v. Cementcraft, Inc.*,
   776 F.2d 1537 (Fed. Cir. 1985) .......................................................................... 25

*Continental Can Co. USA v. Monsanto Co.*,
   948 F.2d 1264 (Fed. Cir. 1991) .......................................................................... 28

*Dippin Dots, Inc. v. Mosey*,
   476 F.3d 1337 (Fed. Cir. 2007) ...................................................................... 12, 14

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
   822 F.2d 1242 (2d Cir. 1987) ............................................................................ 28

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009) ................................................................... *passim*

*Federal Trade Commission v. Qualcomm Inc.*,
   969 F.3d 974 (9th Cir. 2020) ............................................................................. 14

*Frazier v. Roessel Cine Photo Tech, Inc.*,
   417 F.3d 1230 (Fed. Cir. 2005) .......................................................................... 28

*Futurewei Techs., Inc. v. Acacia Research Corp.*,
   737 F.3d 704 (Fed. Cir. 2013) ............................................................................. 8

*Gable v. Lewis*,
   201 F.3d 769 (6th Cir. 2000) ............................................................................. 18

*People ex rel. Gallegos v. Pacific Lumber Co.*,
   158 Cal. App. 4th 950 (2008) ............................................................................ 17

*Garity v. APWU National Labor Organization*,
   828 F.3d 848 (9th Cir. 2016) ............................................................................. 11

*Golden Eye Media USA, Inc. v. Trolley Bags UK, Ltd.*,
    525 F. Supp. 3d 1145 (S.D. Cal. 2021) .................................................................. 3

*GP Indus., Inc. v. Eran Indus., Inc.*,
    500 F.3d 1369 (Fed. Cir. 2007 ) ........................................................................ 20

*Greebel v. FTP Software, Inc.*,
    194 F.3d 185 (1st Cir. 1999) ............................................................................ 28

*Handgards, Inc. v. Ethicon, Inc.*,
    601 F.2d 986 (1979) ........................................................................................ 14

*Handgards, Inc. v. Ethicon, Inc.*,
    743 F.2d 1282 (9th Cir. 1984) ................................................................ 6, 11, 14

*Harris v. County of Orange*,
    682 F.3d 1126 (9th Cir. 2012) .......................................................................... 11

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    31 F.4th 1180 (9th Cir. 2022) .......................................................................... 24

*iLife Techs. Inc. v. AliphCom.*,
    No. 14-cv-03345-WHO, 2015 WL 890347 (N.D. Cal. Feb. 19, 2015) .................. 13

*Ingrid & Isabel, LLC v. Baby Be Mine, LLC*,
    70 F. Supp. 3d 1105 (N.D. Cal. 2014) .............................................................. 17

*Ixchel Pharma, LLC v. Biogen, Inc.*,
    9 Cal. 5th 1130 (2020) .................................................................................... 24

*James R. Glidewell Dental Ceramics v. Keating Dental Arts, Inc.*,
    Case No. SACV 11-1309-DOC, 2013 WL 655314 (C.D. Cal. Feb. 21, 2013) ...... 19

*Keniston v. Roberts*,
    717 F.2d 1295 (9th Cir. 1983) ............................................................................ 7

*Khoury v. Maly's of California, Inc.*,
    14 Cal. App. 4th 612 (1993) ............................................................................ 22

*In re Klopfenstein*,
    380 F.3d 1345 (Fed. Cir. 2004) ........................................................................ 29

*KLX Energy Servs., LLC v. Magnesium Mach., LLC*,
    521 F. Supp. 3d 1124 (W.D. Okla. 2021) .......................................................... 18

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
    787 F.3d 1237 (9th Cir. 2015) .................................................................... 1, 7, 8

*Kwikset Corp. v. Sup.. Ct.*,
   51 Cal. 4th 310 (2011) ........................................................................................... 21, 23

*Lerette v. Dean Witter Org., Inc.*,
   60 Cal. App. 3d 573 (1976) .............................................................................................. 17

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006) ............................................................................................. 27

*Location Servs., LLC v. Dig. Recognition Network, Inc.*,
   No. 2:18-CV-00893-KJM-AC, 2018 WL 3869169 (E.D. Cal. Aug. 14, 2018) ...................... 7

*Mattel, Inc. v. MGA Entm't, Inc.*,
   705 F.3d 1108 (9th Cir. 2013) .......................................................................................... 8, 9

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007) ......................................................................................................... 10

*Microtec Rsch., Inc. v. Nationwide Mut. Ins. Co.*,
   40 F.3d 968 (9th Cir. 1994) .............................................................................................. 25

*Miller Mendel Inc. v. Alaska State Troopers*,
   No. 3:21-cv-0129-HRH, 2021 U.S. Dist. LEXIS 156466 (D. Alaska Aug. 19,
   2021) ...................................................................................................... 2, 4, 7, 8

*Nat. Res. Council v. Mohla*,
   944 F.2d 531 (9th Cir. 1991) ............................................................................................ 19

*Nobelpharma AB v. Implant Innovations, Inc.*,
   141 F.3d 1059 (Fed. Cir. 1998) ........................................................................................ 13

*Olsen v. Harbinson*,
   191 Cal. App. 4th 325 (2010) ........................................................................................... 17

*Pacific Gas & Elec. v. Bear Stearns & Co.*,
   50 Cal. 3d 1118 (1990) .................................................................................................... 24

*Pactiv, LLC v. Multisorb Tech., Inc.*,
   63 F. Supp. 3d 832 (N.D. Ill. 2014) .............................................................................. 24, 25

*In re Pegasus Gold Corp.*,
   394 F.3d 1189 (9th Cir. 2005) ............................................................................................ 9

*Prasco, LLC v. Medicis Pharm. Corp.*,
   537 F.3d 1329 (Fed. Cir. 2008) ........................................................................................ 10

*Pro. Real Estate Invs., Inc. v. Columbia Pictures Indus.*,
   508 U.S. 49 (1993) .................................................................................................... 11, 19

*Rebel Oil Co., Inc. v. Atlantic Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995) ............................................................................... 15

*Reyes v. Kenosian & Miele, LLP*,
    619 F. Supp. 2d 796 (N.D. Cal. 2008) ................................................................. 12

*Rick-Mik Enters, Inc. v. Equilon Enters, LLC*,
    532 F.3d 963 (9th Cir. 2008) ............................................................................... 15

*Rubin v. Green*,
    4 Cal. 4th 1187 (1993) ........................................................................................ 17

*Rusheen v. Cohen*,
    37 Cal. 4th 1048 (2006) ................................................................................ 16, 17

*Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*,
    204 F.3d 1368 (Fed. Cir. 2000) ........................................................................... 22

*SIC Metals, Inc. v. Hyundai Steel Co.*,
    442 F. Supp. 3d 1251 (C.D. Cal. 2020) ............................................................... 24

*Sliding Door Co. v. KLS Doors, LLC*,
    Case No. EDCV 13-00196, 2013 WL 2090298 (C.D. Cal. May 1, 2013) ...... 17, 19

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ............................................................................... 18

*SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*,
    511 F.3d 1374 (Fed. Cir. 2006) ............................................................................. 3

*Stavrianoudakis v. U.S. Dep't of Fish & Wildlife*,
    435 F. Supp. 3d 1063 (E.D. Cal. 2020) ................................................................. 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ............................................................................................... 6

*Theme Promotions, Inc. v. News America Mktg., FSI*,
    546 F.3d 991 (9th Cir. 2008) ............................................................................... 18

*Therasene, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) ..................................................................... 13, 27

*UMG Recordings, Inc. v. Shelter Cap. Partners LLC.*,
    718 F.3d 1006 (9th Cir. 2013) ............................................................................... 6

*Virtue v. Creamery Package Mfg. Co.*,
    227 U.S. 8 (1913) ................................................................................................. 21

*Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*,
    382 U.S. 172 (1965) ................................................................ 6, 12, 13, 14

*Wise v. Thrifty Payless, Inc.*,
    83 Cal. App. 4th 1296 (2000) ................................................................ 17

*Zenith Elecs. Corp. v. Exzec, Inc.*,
    182 F.3d 1340 (Fed. Cir. 1999) ................................................................ 21

**Statutes**

15 U.S.C. § 2 ................................................................................................ *passim*

28 U.S.C. § 2201 ................................................................................................ 9

35 U.S.C. § 101 ................................................................................ 3, 5, 6, 8

35 U.S.C. § 102 ................................................................................ 3, 6, 8

35 U.S.C. § 103 ................................................................................ 3, 6, 8

35 U.S.C. § 112 ................................................................................ 6, 8

35 U.S.C. § 282(a) ................................................................................ 20

Cal. Bus. & Prof. Code § 17200 ................................................................ 21

Cal. Bus. & Prof. Code § 17500 ................................................................ 23

Cal. Civ. Code § 47 ................................................................................ 16

Fed. R. Civ. P. 9 ................................................................................ 26

Fed. R. Civ. P. 9(b) ................................................................ 13, 14, 26, 28

Fed. R. Civ. P. 12(b)(6) ................................................................ 6, 30

Fed. R. Civ. P. 13 ................................................................................ 8

Fed. R. Civ. P. 13(a) ................................................................................ 8

## I. INTRODUCTION

This case is not the first-filed lawsuit on this matter.[1] Defendants Miller Mendel, Inc. ("MMI") and Tyler Miller ("Miller") (collectively, "Defendants") filed actions in federal court in Oklahoma, Oregon, Alaska, and Texas against customers of Plaintiff, Guardian Alliance Technologies, Inc. ("Guardian") for various claims alleging that the customer's use of a competing background investigation software platform marketed by Guardian infringed on Patent No. 10,043,188 B2 ("'188 Patent").[2] (Complaint ("Compl."), ¶¶ 99, 100, 101, 102, 103.) Guardian defended and indemnified its customers in these actions and is now a defendant in the Oklahoma action. (*Id.*) The first action alleging infringement of the '188 Patent was Defendants' action in Oklahoma filed on October 9, 2018, which was amended to add Guardian as a defendant. (Compl. ¶¶ 99, 100.) One year later, on October 9, 2019, Guardian filed a petition with the Patent Trial and Appeal Board ("PTAB") for *inter partes* review of the validity of the '188 Patent.

Here, Guardian commenced this action on August 5, 2022. This case represents the fifth proceeding examining the infringement or validity of the '188 Patent. Under the "first-to-file rule," a district court may transfer, stay, or dismiss proceedings if a similar case with substantially similar issues and parties was previously filed in another district court. *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239-1240 (9th Cir. 2015). The Oklahoma lawsuit has priority over this case under the first to file rule because (a) it was filed four years before this lawsuit; (b) the lawsuits involve the same parties (Guardian and Defendants); and (c) the lawsuits involve substantially similar issues – namely, the infringement of the '188 Patent via the same product – Guardian's software platform. Guardian cannot credibly contest this point. In the Alaska federal action, the district court stayed that action under the first-to-file rule pending resolution of the Oklahoma action at the Guardian's customers' request (defended by Guardian).

---

[1] Although Plaintiff Guardian Alliance Technologies, Inc. filed this Complaint on August 5, 2022, Guardian has not served its Complaint on Defendants.

[2] Guardian provided an incomplete copy of the '188 Patent in its exhibits. (Complaint ("Compl.") ¶ 33, Ex. 2 ['188 Patent pp. 72-143].) Defendants provided a true and correct complete copy of the '188 Patent as Exhibit A to the declaration of Kurt Rylander.

*Miller Mendel Inc. v. Alaska State Troopers*, No. 3:21-cv-0129-HRH, 2021 U.S. Dist. LEXIS 156466, at *15 (D. Alaska Aug. 19, 2021). No exception to the first-to-file rule applies. As a result, this Court should dismiss this case because Guardian may file its claims in the Oklahoma action to the extent necessary.

Other grounds exist to dismiss this case because the Complaint fails to allege sufficient facts, which, if accepted as true, would state a claim for relief that is plausible on its face.

## II.  STATEMENT OF FACTS

### A.  Defendants Patent Their Background Check Technology.

MMI is a Seattle-based company that creates and sells access to software to manage employee background checks for law enforcement and government organizations. (Compl. ¶¶ 5, 28). Miller serves as MMI's Chief Executive Officer. (Declaration of Kurt Rylander ("Rylander Decl.") ¶ 4, Ex.  A [Miller Mendel's Statement of Information].)

On April 6, 2011, Miller filed a provisional patent application with the U.S. Patent and Trademark Office ("PTO"), covering a web-based software system designed to process pre-employment background investigations. (Compl. ¶ 49, Ex. 2 [at 72-143]; Rylander Decl. ¶ 5, Ex. B [Tyler Mendel's application for the '188 Patent].) He filed nonprovisional patent applications on April 6, 2012, and May 26, 2015, resulting in U.S. Patent Nos. 9,070,098 ("'098 Patent") and the '188 Patent. (Compl. ¶¶ 53, 56.) Miller licensed both patents to MMI.

### B.  Defendants Seek to Enforce Their Patents Through Litigation and Related Communications.

In October 2017, Defendants discovered that Guardian infringed on the various patents by selling background check software to law enforcement agencies. (Compl. ¶ 95.) They demanded that Guardian stop infringing, but Guardian refused, claiming that the '098 Patent was invalid under *Alice Corp. Pty, Ltd. v. CLS Bank International*, 573 U.S. 208 (2014) ("*Alice*"), which established a two-part test to determine whether patent claims cover eligible subject matter (as opposed to patent-ineligible claims such the laws of nature, natural phenomena, and abstract ideas). (Compl. ¶¶ 95, 97, Exs. 18, 20).

On October 9, 2018, Defendants filed an action against Guardian's customer, the City of Oklahoma City ("Oklahoma City"), in the case entitled *Miller Mendel, Inc. v. City of Oklahoma City*,[3] alleging that Oklahoma City infringed on the '188 Patent by using Guardian's background check software. (Compl. ¶ 99.) Oklahoma City, defended by Guardian, moved to dismiss the Oklahoma Action, arguing that the '188 Patent was unpatentable under 35 U.S.C. § 101 and *Alice.* (Rylander Decl. ¶ 6, Ex. D.) The Oklahoma court denied this motion. (*Id.*)

Guardian then took another shot and filed a petition with the PTAB for *inter partes* review challenging the '188 Patent's validity. (Compl. ¶ 114, Ex. 26). Guardian argued that the patent was invalid under 35 U.S.C. § 103 because "prior art"[4] made the invention too "obvious" to be patented. (*Id.*) Guardian based this argument on Background Solutions, LLC's alleged publications regarding background check systems – the same view that Guardian reprises in this lawsuit. (*Id.*) On March 26, 2020, the PTAB found that Guardian failed to show that the Background Solutions video and other information constituted prior art. (*Id.*) Guardian twice tried to convince the PTAB to reconsider its decision; the PTAB rejected both requests. (*Id.*)

Bolstered by the PTAB decision, Defendants continued their quest to protect their hard-earned patent from Guardian's unrelenting infringement. Defendants warned law enforcement agencies that if they used Guardian's software, Defendants would sue them for patent infringement. (Compl. ¶¶ 111, 113-114, 116-117, Exs. 23, 25-28). In October 2021, Defendants published an "open letter" on their website regarding "serious public issues" raised by Guardian's

---

[3] *Miller Mendel, Inc. v. City of Oklahoma City* is pending as Case No. CIV-18-990-JD, U.S. District Court for the Western District of Oklahoma ("Oklahoma Action").

[4] "Prior art" is defined generally as "[k]nowledge that is publicly known, used by others, or available on the date of invention to a person of ordinary skill in an art, including what would be obvious from that knowledge." *Golden Eye Media USA, Inc. v. Trolley Bags UK, Ltd.*, 525 F. Supp. 3d 1145, 1194 (S.D. Cal. 2021). The Leahy-Smith American Invents Act (AIA) became effective on September 16, 2012 and March 16, 2013. *See* Public Law 112-29. The '188 Patent, with an April 6, 2011 effective filing date, is governed by the pre-AIA version of 35 U.S.C. §§ 102 and 103. Pre-AIA § 102 sets forth categories of "prior art" and case law establishes factors that must be proven for something to be prior art. The existence of "art" is not enough to make it prior art. Among other things, it must be "publicly accessible" such that one having ordinary skill in the art interested in the subject matter could locate the reference upon "exercising reasonable diligence." *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1374, 1378 (Fed. Cir. 2006).

patent infringement. (Compl. ¶¶ 118-119, Exs. 29-30). Among the "important topics of public concern" discussed in the letter were (1) "legal compliance and ethical dilemmas" raised by privacy concerns in Guardian's business practices; (2) the ongoing federal patent litigation and PTAB proceedings; and (3) the agencies' potential liability for patent infringement. (*Id.*)

Defendants filed three patent infringement lawsuits against Guardian's customers in Oregon, Alaska, and Texas federal district courts.[5] On February 1, 2021, Defendants sued Washington County, Oregon, and Washington County (OR) Sheriff's Office ("Oregon Defendants")[6], for infringing the '188 Patent by using Guardian's software. (Compl. ¶ 101.) The district court stayed the Oregon Action pending resolution of the Oklahoma Action. (*Id.*)

On May 28, 2021, Defendants filed another patent infringement action against Guardian's customers, the Alaska State Troopers and its Commissioner (collectively, "Alaska Defendants") who used Guardian's infringing software.[7] (Compl. ¶ 102.) Defendants' complaint alleged that the Alaska Defendants' use of Guardian's software infringed the '188 Patent. (*Id.*) Guardian funded the Alaska Defendants' defense.[8] (*Id.*) The Alaska district court stayed the Alaska Action pending resolution of the Oklahoma Action under the first-to-file rule. *See Miller Mendel Inc. v. Alaska State Troopers*, No. 3:21-cv-0129-HRH, 2021 WL 3698377, at *6 (D. Alaska Aug. 19, 2021).

On December 2, 2021, MMI filed a complaint for infringement of the '188 Patent against Guardian's customers, the City of Anna, Texas, and the Anna (TX) Police Department (collectively, "City of Anna").[9] (Compl. ¶ 103.) Guardian funded the defense of these parties.

---

[5] The '098 Patent is valid, but Defendants did not base any patent infringement lawsuit on the '098 Patent.
[6] *Miller Mendel, Inc. v. Washington County, Oregon, et al*., is pending in the United States District Court for the District of Oregon as Case No. 3:21-cv-00168-SB, ("Oregon Action").
[7] *Miller Mendel Inc. v. Alaska State Troopers*, is pending in the United States District Court for the District of Alaska, Case No. 3:21-cv-0129-HRH ("Alaska Action").
[8] Guardian is the indemnitor and funder of the defense in all of the district court suits—all of which are managed by Guardians' attorney Evan Tally, who also handled the *inter partes* review filing at the USPTO. In Guardian's petition for *inter partes* review, Guardian identified the City of Oklahoma City as a real party-in-interest.
[9] *Miller Mendel, Inc. v. City of Anna*, is pending in the United States District Court for the Eastern District of Texas as Case No: 2:21-CV-00445-JRG ("Texas Action").

(*Id*.) On April 14, 2022, over a year after the PTAB affirmed its decision, the court in the Texas

Action decided that Claims 1, 5, and 15 of the '188 Patent were not patentable under 35 U.S.C. §

101 and *Alice*.[10] (Compl. ¶¶ 91, 103-104, Ex. 14). MMI appealed that decision to the United

States Court of Appeals, Federal Circuit (*Miller Mendel, Inc. v. City of Anna, Texas*, Case No. 22-

1753). (Rylander Decl. ¶ 8, Ex. J.) This appeal remains pending. (*Id*.)

At Guardian's direction, the City of Anna sought its attorney's fees in defending MMI's

lawsuit because, in the City's view, MMI "should have known" that the '188 Patent was invalid.

The City of Anna claimed that MMI's litigation tactics – suing or threatening to sue Guardian's

customers, allegedly misrepresenting the status and events in the litigation, and allegedly using

the litigation as a bad-faith anti-competitive tactic – justified a fees order. (Rylander Decl. ¶ 9, Ex

K [the City of Anna's motion, ECF No. 43, April 28, 2022, pg. 2].) None of the City's "myriad

arguments" persuaded the court that "[MMI] should have known the '188 Patent was directed to

an abstract idea." (Rylander Decl. ¶ 9, Ex L [Order, ECF No. 62, June 13, 2022, pp. 6-7].)

Although the Texas district court found that the '188 Patent was susceptible to a finding of

ineligibility, that vulnerability did not make MMI's "assertion of the same frivolous or

objectively unreasonable." (*Id*.) The court found that MMI "was entitled to believe that those

claims of the '188 Patent were valid after it was examined and allowed by the [PTO]," and was

"free to sue" Guardian or its customers for infringement. (*Id*.)

## C.    Guardian Sues Defendants Over Their Patent Application, Enforcement Litigation, and Related Communications.

Convinced that the Texas court's decision "ended all cases filed by [MMI]," Guardian

filed this action seeking a duplicate finding of invalidity from this Court. Despite the PTAB

decisions, Guardian alleges that the Background Solutions technology was prior art that rendered

the '188 Patent invalid, and that Defendants defrauded the PTO by failing to disclose it when

applying for the patent. (Compl. ¶¶ 33-37, 48-78).[11] Despite the Oklahoma district court's

---

[10] The 188 Patent has 15 claims. The Texas district court's decision on reconsideration made clear that its ruling only addressed Claims 1, 5, and 15.

[11] Guardian also defectively contends that Defendants failed to disclose an offer for sale.

decision, Guardian alleges that the '188 Patent was an abstract, unpatentable idea under 35 U.S.C. § 101 and *Alice*. (*Id.* ¶¶ 79-94). Despite the Texas court decision denying attorney fees, Guardian alleges that Defendants knew or should have known the '188 Patent was invalid for those reasons and that their pursuit of the patent lawsuits, their warning and cease-and-desist letters to law enforcement agencies about the existing and potential litigation, and their public statements about the litigation were all unlawful and tortious. (*Id.* ¶¶ 95-127, 160-190). Guardian's Complaint asserts claims for a declaratory judgment that Defendants' two patents are unenforceable for inequitable conduct (Claims 1-2) and invalid under 35 U.S.C. §§ 101, 102, 103, and 112 (Claims 3-4); for violation of § 2 of the Sherman Act under the *Walker Process* (Claim 5) and *Handgards* (Claims 6) doctrines; and for liability under state laws for unfair competition (Claim 7), false advertising (Claim 8), tortious interference with contractual relations (Claim 9), tortious interference with prospective economic relations (Claim 10), and trade libel (Claim 11) ("state law claims").

### III.   ARGUMENT

#### A.   Standard of Review

Under Federal Rules of Civil Procedure 12(b)(6),[12] a district court may dismiss a complaint lacking "a cognizable legal theory" or sufficient facts "alleged under a cognizable legal theory." *UMG Recordings, Inc. v. Shelter Cap. Partners LLC.*, 718 F.3d 1006, 1014 (9th Cir. 2013). In considering such a motion, the court generally accepts the allegations in the complaint as true, considering the entire complaint, documents incorporated by reference, and matters subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Stavrianoudakis v. U.S. Dep't of Fish & Wildlife*, 435 F. Supp. 3d 1063, 1092 (E.D. Cal. 2020). If the complaint's "factual content" does not allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the district court may dismiss it. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The district court may deny leave to amend if the plaintiff

---

[12] Citations to the Federal Rules of Civil Procedure will be proceeded by the shorthand "Rule."

cannot cure the complaint's deficiencies. *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983).

**B.     Guardian Does Not Plead Proper Declaratory Judgment Claims.**

**1.     The First-to-File Rule Bars Guardian's Declaratory Relief Claims**

Guardian's first, second, third, and fourth Claims for Relief request a declaratory judgment that the '098 Patent and the '188 Patent are invalid and unenforceable. (Compl. ¶¶ 128-145.) In asserting these claims, Guardian ignited another round of active litigation over MMI's patents in another federal forum. The first-to-file rule allows this Court to dismiss Guardian's four declaratory relief claims because another case with substantially similar issues and parties is pending in two other district courts. See *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). Three threshold factors determine if the rule applies: (i) "chronology of the lawsuits; (ii) similarity of the parties; and (iii) similarity of the issues." *Id.*

Here, a double dose of the first-to-file rule applies because Guardian filed this lawsuit after Defendants sued Guardian customers for patent infringement in the Oklahoma and Texas Actions. (Rylander Decl., Exs. F and G.) These actions, which remain pending, share similar parties to this action. (*Id.*) Defendants are the plaintiffs in the Oklahoma and Texas Actions, while Guardian is defending against Guardian's infringement claims directly in the Oklahoma Action and indirectly through its customer in the Texas Action. (Compl. ¶¶ 99, 101, 103.)

The first-to-file rule requires only substantial similarity of parties. *Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015). As the court found in the Alaska Action, Defendants' presence, along with Guardian's customers, in all four actions established the similarity of parties even though Guardian is not a party in the Texas Action and Guardian's customers are not parties in Guardian's action. *Miller Mendel Inc.*, 2021 WL 3698377, at *3; s*ee also Location Servs., LLC v. Dig. Recognition Network, Inc.*, No. 2:18-CV-00893-KJM-AC, 2018 WL 3869169, at *2 (E.D. Cal. Aug. 14, 2018) (first-to-file rule applies even if there are additional, unmatched parties in one or both matters).

The third factor requires the court to consider whether the two cases involve similar issues. The issues in both cases need not be identical, only substantially similar. *Kohn Law Grp.*, 787 F.3d at 1240. The questions underlying Guardian's four declaratory relief claims – the validity of MMI's '098 and '188 Patents – lie at the heart of the Oklahoma, Oregon, and Texas Actions.[13] In the Texas Action, the City of Anna asserted that claims 1, 5, and 15 of MMI's '188 Patent contained unpatentable subject matter under 35 U.S.C. § 101. (Rylander Decl. ¶ 8, Ex. I [Order, ECF No. 41, April 14, 2022, p. 3]). For its part, the City of Oklahoma fought MMI's patents, citing 35 U.S.C. §§ 101, 102, 103, and 112 and Defendants' alleged inequitable conduct in allegedly failing to disclose prior art to the PTO. (Rylander Decl. ¶ 7, Ex. E [Answer, ECF No. 113, November 10, 2020].) Although two courts – the Federal Circuit and the Oklahoma district court – will adjudicate MMI's patents, Guardian insists that this Court should wade into this fight and declare MMI's patents invalid for the same reasons. This Court need not, and should not, waste its resources adjudicating Guardian's duplicative declaratory relief claims over MMI's patents that two other federal courts will resolve. *See Miller Mendel Inc.*, 2021 WL 3698377, at *4 (applying the first-to-file rule in a patent infringement matter "where the actions in question involve the same patent and the same allegedly infringing product.").

Another reason solidifies this Court applying the first-to-file rule to Guardian's four claims: Guardian's Complaint asserts disguised Rule 13 compulsory counterclaims that Guardian could bring in the Oklahoma Action. Fed.R.Civ.P. 13(a); see *Futurewei Techs., Inc. v. Acacia Research Corp.*, 737 F.3d 704, 710 (Fed. Cir. 2013) (existence of Rule 13 counterclaim "bolsters" application of the first-to-file rule). A "compulsory" counterclaim is a claim that "arise[es] out of the transaction or occurrence that is the subject matter of the opposing party's claim.". Courts apply "the logical relationship test for compulsory counterclaims." *Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1110 (9th Cir. 2013). "A logical relationship exists when … the same operative facts serve as the basis of both [the counterclaims and initial claim] or the aggregate

---

[13]  The '098 Patent is included in those suits through, in Oklahoma, the defamation and declaratory claims against Guardian and, in the Texas Action, the motion for attorney's fees which addressed both the '098 Patent and the '188 Patent.

core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant." *Id*. (quoting *In re Pegasus Gold Corp*., 394 F.3d 1189, 1195-95 (9th Cir. 2005)).

In the Oklahoma Action, MMI filed and served a Second Amended Complaint asserting claims against Guardian for defamation and for declaratory relief. MMI claimed that Guardian defamed it by publishing allegations that Defendants committed patent fraud and inequitable conduct and by failing to disclose prior art to the PTO. (Rylander Decl. ¶ 7, Ex. F [Complaint, ECF No. 104, October 14, 2020, ¶¶27-31, 33-39]). MMI also sought a declaratory judgment, requesting a declaration that no inequitable conduct or patent fraud occurred. (Rylander Decl. ¶ 7, Ex. F [¶¶27-31, 33-39]). Those claims intrinsically concerned Guardian's allegations of patent fraud and invalidity relating to the '098 and '188 Patents and the supposed Background Solutions prior art, which pertain to the same aggregate set of operative facts and allegations relied upon by Guardian in the Complaint in this case. As such, the Complaint could be brought in the Oklahoma Action.

In summary, the three pillars of the first-to-file rule "economy, consistency, and comity" will best be served by this Court dismissing Guardian's declaratory relief claims. Alternatively, this Court should stay its decision on Guardian's declaratory relief claims pending the outcome of the Oklahoma and Texas Actions.

## 2.    Guardian Faces No Immediate Threat of Patent Enforcement Litigation from Defendants That Warrants a Declaratory Judgment.

Guardian's four claims for declaratory relief also cannot survive because Guardian has not sufficiently grounded them in any Article III case or controversy. The Declaratory Judgment Act allows a court to declare rights and legal relations for an actual case or controversy within its jurisdiction. 28 U.S.C. § 2201. Importantly though, the Act does not confer district courts with subject matter jurisdiction; it provides a remedy if the court has jurisdiction from some other source. *Cat Tech LLC v. TubeMaster*, *Inc.*, 528 F.3d 871, 879 (Fed. Cir. 2008). "The availability of declaratory relief is limited . . . by Article III of the Constitution, which restricts judicial power to the adjudication of Cases or Controversies." *Id*. District courts analyze whether, under the

totality of the circumstances, the facts show there is a substantial controversy between parties having adverse legal interests "of sufficient immediacy and reality" to warrant declaratory judgment. *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 128 (2007). It is a "bedrock rule that a case or controversy must be based on a *real* and *immediate* injury or threat of future injury that is *caused by the defendants*—an objective standard that cannot be met by a purely subjective or speculative fear of future harm." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008) (emphasis in original). The existence of a patent is not sufficient to establish declaratory judgment jurisdiction. *Id.*

### a.   The '098 Patent

Guardian incorrectly invokes declaratory judgment jurisdiction to declare the '098 Patent unenforceable or invalid. Guardian's Complaint underscores that no "actual" or "imminent" controversy exists over the '098 Patent. Guardian claims that in 2017, MMI sent a cease and desist notice of infringement related to the '098 Patent to Guardian. (Compl. ¶¶ 95-97.) But Guardian does not and cannot allege that in the intervening five years, MMI brought any suits under the '098 Patent or threatened enforcement against Guardian's customers. Thus no imminent threat exists.  Without an actual case or controversy, no jurisdiction exists.

### b.   The '188 Patent

Declaratory judgment jurisdiction regarding the '188 Patent is even less plausible. In the Texas Action, Guardian, through the City of Anna, based its defective motion for attorney's fees in part on the complaint that Defendants deliberately "refused" to sue Guardian for infringement. (Rylander Decl. ¶ 9, Ex. K [Motion, 7-8].) While in the Oklahoma Action, Defendants moved the district court for leave to assert an infringement claim against Guardian, which was denied on October 7, 2020. (Rylander Decl. 7, Ex. E [Order, ECF No. 103, October 7, 2020].) Defendants have taken no further steps in the intervening **two years** to bring a claim against Guardian for infringement of any patent, instead awaiting resolution of the Oklahoma case through appeal. Nowhere in Guardian's Complaint does it point to any evidence showing, let alone suggesting,

that Defendants are getting ready to sue Guardian directly for patent infringement over the '188 Patent. Without any immediate threat, this Court should decline to exercise jurisdiction.

> **C.    Guardian Does Not Plead Proper Sherman Act Antitrust Claims.**
>
> **1.    Collateral Estoppel Bars the *Handgards* claim Because the *City of Anna* Court Found that Defendants' Conduct Was Reasonable and in Good Faith.**

Guardian's sixth claim asserts that Defendants violated Section 2 of the Sherman Act under the "sham litigation" theory approved in *Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282 (9th Cir. 1984). To establish a *Handgards* claim, a plaintiff must show that (1) the defendant pursued a patent infringement claim that was "objectively baseless" in that "no reasonable litigant could have realistically expected success on the merits"; and (2) the defendant's "subjective motive in asserting the claim was an attempt to interfere directly with [plaintiff's] business relations." *Pro. Real Estate Invs., Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60-61 (1993).

Both prongs of the *Handgards* elements fall under the collateral estoppel (issue preclusion) shield, based on the attorney fees decision in the Texas Action. Issue preclusion applies when (1) "the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated"; (2) "the first proceeding ended with a final judgment on the merits"; and (3) "the party against whom [issue preclusion] was a party or in privity with a party at the first proceeding." *Garity v. APWU National Labor Organization*, 828 F.3d 848, 858, n.8 (9th Cir. 2016) (citation omitted). The Texas district court's decision denying the City of Anna's attorney's fees motion meets both elements.

In the Texas Action, the district court considered the issues Guardian raised in this case. The court found that MMI was "entitled to believe" the patent was valid and to sue Guardian or its customers for infringement and that its conduct "did not rise to the level of unreasonable or vexatious." (Rylander Decl. ¶ 9, Ex. L [Order p. 12]). The decision resulted in a final judgment.[14] *See Alzheimer's Inst. of America v. Eli Lilly & Company*, 128 F. Supp. 3d 1249, 1255 (N.D. Cal.

---

[14] The *City of Anna* decision retains its preclusive effect even though it is currently on appeal. *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (citations omitted).

2015) (collateral estoppel applies to issues decided in a district court order on a party's motion for attorney's fees).

While Guardian was not formally a party in the Texas Action, it was in privity with the City of Anna. Under California law, a nonparty is in privity with a party when the nonparty "has a proprietary or financial interest in and controls the conduct of a lawsuit." *Reyes v. Kenosian & Miele, LLP*, 619 F. Supp. 2d 796, 809 (N.D. Cal. 2008). Guardian's strong financial stake in and control over the Texas Action confirms its privity with the City of Anna. As Guardian acknowledges, it must indemnify the City of Anna for litigation arising over the City's use of Guardian's technology, and it has funded the City's defense in the Texas Action. (Compl. ¶ 103). Guardian's counsel defended the City of Anna in the Texas Action (and other defendants in MMI's pending patent infringement cases). Guardian also confirmed that it controlled the City of Anna's defense: it boasted that "*Guardian*, through its indemnitee City of Anna … moved for judgment on the pleadings," which lead to the dismissal. (Compl. ¶ 104) (emphasis added). Guardian was *de facto* a party to the Texas Action, and at least in privity for collateral estoppel purposes. Collateral estoppel bars Guardian's sixth claim.

2. **Guardian's *Walker Process* Claim Is Barred Under Collateral Estoppel and Does Not Allege the Required Elements with Particularity.**

Guardian's fifth claim raises another misguided Section 2 antitrust claim against Defendants under the theory approved in *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172 (1965). For this claim, Guardian must show that the Defendants committed fraud on the PTO in applying for and obtaining a patent and then using the patent to obtain or maintain a monopoly. *Id*. at 177. Along with showing that Defendants committed material and intentional fraud, Guardian must establish all the other elements of a Sherman Act Section 2 claim. *Dippin Dots, Inc. v. Mosey*, 476 F.3d 1337, 1346 (Fed. Cir. 2007).

Collateral estoppel bars Guardian's *Walker Process* claim based on the Texas court's finding that MMI acted reasonably and in good faith in enforcing its patent. (Rylander Decl. ¶ 9, Ex. L, [Order, p.12]). The Texas district court rejected Guardian's claim that Defendants knew or

"should have known" that the patents were invalid and found that Defendants acted reasonably. (*Id*.) Guardian, which admitted that it controlled the City of Anna's defense in the Texas Action, is in privity with the City and bound to the Texas district court's ruling.

Even if not barred, the *Walker Process* claim would fail because Guardian has not alleged enough supporting facts showing that Defendants intended to defraud the PTO. Like any fraud theory, a *Walker Process* plaintiff must satisfy Rule 9(b)'s heightened pleading requirements. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). Thus, the plaintiff must identify "the specific who, what, when, where, and how" of the fraud on the PTO, with "sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Id.* at 1327. Also, a *Walker Process* plaintiff must allege facts plausibly demonstrating a "clear intent to deceive the [patent] examiner." *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998).

Here, Guardian pleads conclusions rather than particularized facts. Guardian asks this Court to infer Defendants' fraudulent intent from their failure to disclose "known prior art" to the PTO, specifically: (1) MMI's alleged "prior sale" of or "offer to sell" its invention; and (2) software allegedly produced by a company called Background Solutions before Defendants' patent application. (Compl. ¶¶ 34, 43, 51-52, 55, 58, 60, 63, 66-68, 73-78.). The Federal Circuit and other courts have uniformly refused to find fraudulent intent in a patent holder's failure to disclose known information to the PTO. *Therasene, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011); *iLife Techs. Inc. v. AliphCom.*, No. 14-cv-03345-WHO, 2015 WL 890347, at *7 (N.D. Cal. Feb. 19, 2015).

This Court should follow those cases because Guardian has not alleged any facts plausibly establishing Defendants' fraudulent intent. Guardian fails to plead facts with particularity regarding the supposed MMI "prior sales"; there are only two nondescript references to such sales in the Complaint. And as to the Background Solutions software, Guardian does not provide facts justifying an inference that Defendants *knew* the software constituted prior art precluding the patents at issue. Indeed, as noted above, the PTAB thrice rejected Guardian's claim that the

Background Solutions information was prior art. If the PTAB did not think that technology was prior art, it is not reasonable to infer that Defendants *knew* it *was* prior art and concealed it with intent to defraud.

Further, Guardian does not sufficiently allege that Defendants made misstatements or misrepresentations to the PTO rather than simply failing to disclose information. "A mere failure to cite a reference to the PTO will not suffice" to establish the intent required for a *Walker Process* claim. *Dippin Dots,* 476 F.3d at 1347. For a court to find an *omission* fraudulent, "there must be evidence of intent separable from the simple fact of the omission." *Id.* Guardian has not plausibly alleged any facts for this Court to infer that Defendants clearly intended to deceive the PTO. Although Guardian contends that Defendants made "false statements" to the PTO, it does not describe any such statements with particularity.[15] (Compl. ¶¶ 12, 34-37). Guardian's conclusory allegations do not satisfy Rule 9(b)'s heightened pleading requirement for *Walker Process* clams.

### 3.    Guardian Does Not Properly Allege that Miller Mendel Has Monopoly Power.

Even if collateral estoppel or Rule 9(b) do not bar Guardian's Sherman Act claims, they still would fail because Guardian's complaint misses other necessary Sherman Act elements. Both *Handgards* and *Walker Process* claims are based on Section Two of the Sherman Act, and both require that all elements of a Section Two claim be pled and proven. *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 993 n.13 (1979) (quoting *Walker Process*, 283 U.S. at 177-178); *Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 1293-1297 (9th Cir. 1984). Among those elements is the defendant's possession of monopoly power within the relevant market. *Federal Trade Commission v. Qualcomm Inc.*, 969 F.3d 974, 990 (9th Cir. 2020). This, in turn, requires an analysis of the defendant's market share, and whether it is large enough that the company can

---

[15] The closest Guardian comes is a discussion of Tyler Miller's statement to the PTO that an earlier patent (by "Parikh") was "silent" as to how certain information was entered into an "e-dossier"; Guardian claims that Mr. Miller knew that the Background Solutions software covered that feature. (Compl. ¶¶ 65-66). But Guardian does not and cannot allege that what Mr. Miller actually said was false.

influence marketwide output and thus increase prices. *Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1438 (9th Cir. 1995). A plaintiff must also show that new rivals or existing competitors cannot enter the market or cannot expand their output to challenge the defendant's high prices. *Id.* at 1439. Allegations of market power must be sufficiently detailed to "raise a right to relief above the speculative level." *Rick-Mik Enters, Inc. v. Equilon Enters, LLC*, 532 F.3d 963, 973 (9th Cir. 2008).

Guardian's complaint does not allege any facts sufficient to demonstrate that Miller Mendel has or had monopoly power in the United States market for "public safety background investigation management software." It does not allege what Miller Mendel's market share was, let alone that it was so large that it could charge supercompetitive prices. Nor does it detail why other competitors cannot expand output or enter the market. Without providing such information, Guardian cannot plead a proper Sherman Act Section Two claim.

**D.    Guardian Does Not Plead Proper State Law Claims.**

Guardian asserts state law claims challenging Defendants' privileged acts in obtaining and enforcing Miller Mender's valid patents against Guardian and its customers. Using an improper shotgun style of pleading, Guardian's 43-page Complaint contains 127 paragraphs of general allegations (allegations as to jurisdiction, venue, parties, and Defendants' alleged misconduct) and incorporates these allegations wholesale into the state law claims. Guardian bases its state law claims on three categories of misconduct explained in the chart below.

| Categories | Incorporation into Guardian's Claims |
|---|---|
| Defendants' communications with the PTO in pursuing the '098 Patent and '188 Patent and allegedly failing to disclose the noncumulative Background Solutions software.[16] (Compl. ¶¶ 12, 33-37, 43, and 51-78.) | Incorporated into Guardian's claims.  (Compl. ¶ 160 ("Guardian incorporates and realleges paragraphs 1-159 herein by reference" to claim 7 for California Unfair Competition), ¶ 167 (similar incorporation paragraph in Claim 8 for California False Advertising), ¶ 173 (similar incorporation paragraph in Claim 9 for Tortious Interference with Contract), ¶ 179 (similar incorporation paragraph in Claim 10 |

---

[16] Guardian's complaint claims Defendants failed to disclose "its offer to sell its invention more than a year before filing for its first patent application" and made "numerous false statements." (Compl. ¶ 34.) But Guardian's Complaint proceeds on Defendants' alleged fraud in failing to disclose the alleged noncumulative Background Solutions software. (Compl. ¶¶ 51-78.)

| Categories | Incorporation into Guardian's Claims |
|---|---|
| | for Tortious Interference with Prospective Business Advantage), ¶ 185 (similar incorporation paragraph in Claim 11 for trade Libel)). |
| Defendants' communications to Guardian and its actual and prospective law enforcement agency customers about Guardian's patent infringement and the status of existing patent infringement litigation or potential similar litigation. (Compl. ¶¶ 15, 16, 32, 38, 44, 95, 97, 98, 105, 107, 109, 111-114, 116, 119, 121, and 123.) | Same incorporation. |
| Defendants' patent infringement litigation against Guardian's law enforcement agency customers. (Compl. ¶¶ 2, 13, 15, 16, 31, 32, 40, 41, 42, 43, 99, 100, 101, 102, and 103.) | Same incorporation. |

But these three core theories underlying Guardian's state law claims, distilled from Guardian's Complaint, encounter multiple barriers to relief.

### 1.    California's Litigation Privilege Bars Guardian's State Law Claims Because They Are Based On Defendants' Statements Made in Litigation.

California Civil Code section 47's litigation privilege bars Guardian's state law claims. The litigation privilege applies to any "publication or broadcast" made in any judicial proceeding, whether inside or outside the courtroom. *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006). It applies to any communication: (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that has some connection or logical relation to the action. *Id.* at 212.

California courts have given the litigation privilege an expansive reach "to achieve [its] purpose in curtailing derivative lawsuits." *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007). The litigation privilege, as California courts have recognized, encompasses "communications in preparatory to or in anticipation of the bringing of an action" to "statements made during a trial or other proceedings." *Briggs v. Eden Council of Hope and Opportunity*, 19 Cal. 4th 1106, 1115 (1999). "If the gravamen of the action is communicative,"

the litigation privilege also covers "noncommunicative acts that are necessarily related to the communicative conduct." *Rusheen*, 37 Cal. 4th at 1065. When the litigation privilege applies, it "is absolute… regardless whether the communication was made with malice or the intent to harm." *Wise v. Thrifty Payless, Inc*., 83 Cal.  App. 4th 1296, 1302 (2000). It "immunizes defendants from virtually any tort liability (including claims for fraud) …." *Olsen v. Harbinson*, 191 Cal. App. 4th 325, 333 (2010). It also extends to statutory claims for unfair competition violations and false advertising claims. *Rubin v. Green*, 4 Cal. 4th 1187, 1204 (1993) (litigation privilege barred a claim for violation of California's unfair competition law); *Sliding Door Co. v. KLS Doors, LLC*, Case No. EDCV 13-00196, 2013 WL 2090298, at *8 (C.D. Cal. May 1, 2013) (same for false advertising claim). And it bars Guardian's state law Claims.

Guardian's state law claims seek to hold Defendants liable for three types of communicative, privileged acts. First, Guardian challenges Defendants' allegedly fraudulent conduct in communicating information to the PTO, while pursuing the '098 and '188 Patents. (Compl. ¶¶ 12, 33-37, 43, 51-78.) Defendants' communications with the PTO, whether fraudulent or not, "fall squarely within the scope of the litigation privilege." *See People ex rel.  Gallegos v. Pacific Lumber Co*., 158 Cal.  App. 4th 950, 958-59 (2008) (finding litigation privilege barred the plaintiff's UCL action "premised on Pacific Lumber's allegedly fraudulent conduct" in submitting a false report to the California Department of Forestry and Fire Protection). Second, Guardian blames Defendants for threatening to sue Guardian's actual and prospective customers for using Guardian's infringing software. (Compl. ¶¶ 15, 16, 32, 38, 44, 95, 97, 98, 105, 107, 109, 111-114, 116, 119, 121, 123.) According to Guardian, Defendants communicated their threats while Defendants actively litigated four patent infringement cases against Guardian's customers. As California courts have long recognized, the litigation privilege applies to prelitigation communications to third parties with an interest in litigation. *See Lerette v. Dean Witter Org., Inc.*, 60 Cal. App. 3d 573, 577 (1976). Guardian's actual and prospective customers had a substantial interest in Defendants' four patent infringement lawsuits against Guardian's customers concerning MMI's '188 Patent. *See Ingrid & Isabel, LLC v. Baby Be Mine, LLC*, 70 F. Supp. 3d

1105, 1141 (N.D. Cal. 2014). Lastly, Guardian criticizes Defendants' communicative acts in filing the four patent infringement lawsuits against Guardian's customers. (Compl. ¶¶ 2, 13, 15, 16, 31, 32, 40, 41, 42, 43, 99, 100, 101, 102, 103.) These lawsuits, though, were "by nature" protected communicative acts. *Action Apartment Ass'n., Inc.*, 41 Cal. 4th at 1249. The litigation privilege bars Guardian's state law claims against Defendants premised on communicative acts.

    **2.**      **The *Noerr-Pennington* Doctrine and the Petition Clause Bars Guardian's State Law Claims Because They Are Based on Defendants' Protected Petitioning Activity.**

    Guardian's state law claims attacking Defendants' protected activity succumb to another bar – the *Noerr Pennington* doctrine and the Petition Clause under the First Amendment, which shield Defendants from liability for "petitioning any department of the government for redress." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006); *see Gable v. Lewis*, 201 F.3d 769, 771 (6th Cir. 2000) (recognizing from *California Transport v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) that "the submission of complaints and criticisms to … a police department constitutes petitioning activity protected by the petition clause."); *Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155 (3d Cir. 1988) (applying Petition Clause immunity to the defendant's notification to government agencies and mobilization of public awareness concerning violations of the law); *KLX Energy Servs., LLC v. Magnesium Mach., LLC*, 521 F. Supp. 3d 1124 (W.D. Okla. 2021) (finding Petition Clause immunity barred counterclaims to the extent that they relied on protected speech).

    Rooted in the First Amendment, the *Noerr-Pennington* doctrine immunizes defendants from state law tort claims for advocacy before all three branches of government. *Theme Promotions, Inc. v. News America Mktg., FSI*, 546 F.3d 991, 1006-08 (9th Cir. 2008). In *Theme Promotions*, the Ninth Circuit acknowledged that the *Noerr-Pennington* doctrine immunizes a range of petitioning conduct – from sending a pre-suit letter threatening litigation to filing a lawsuit. *Id.* at 1007 (citing *Sosa*, 437 F.3d at 936-38). The Ninth Circuit's broad formulation of the *Noerr-Pennington* doctrine sweeps in all Guardian's state law claims.

These claims allege that Defendants misled the PTO, threatened patent enforcement litigation against Guardian's government customers, and pursued such litigation in court in several cases. MMI's patent applications to the PTO and patent enforcement litigation are quintessential actions of petitioning government bodies. *See James R. Glidewell Dental Ceramics v. Keating Dental Arts, Inc.*, Case No.  SACV 11-1309-DOC, 2013 WL 655314, at *13 (C.D. Cal. Feb. 21, 2013) (*Noerr-Pennington* doctrine "precludes liability for the act of filing a lawsuit."). Defendants' alleged communications threatening Guardian's actual or prospective customers with patent infringement litigation are also protected activity. *Sliding Door Co. v. KLS Doors, LLC*, Case No.  EVCV 13-00196, 2013 WL 2090298, at *6 (C.D. Cal. May 1, 2013).

Guardian appears to rely on the "sham litigation" exception to the *Noerr-Pennington* doctrine, to no avail. That exception "encompasses situations in which persons use the governmental process – as opposed to the *outcome* of that process – as an anti-competitive weapon." *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 280 (1991) (emphasis in original). It only applies when (1) the litigation is "objectively baseless" in that "no reasonable litigant could reasonably expect success on the merits"; and (2) the litigation is brought in bad faith to harass and disadvantage the defendant. *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 57, 60-61 (1993). Because the *Noerr-Pennington* doctrine "overprotects baseless petitions," courts require plaintiffs to show "the specific activities which bring the defendant's conduct" into one of these exceptions. *Nat.  Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991).

Collateral estoppel bars Guardian's claims that Defendants' patent enforcement was objectively unreasonable and subjectively in bad faith. For Guardian's state law claims, it must show that Defendants pursued their patent enforcement litigation and related communications while knowing that their patents were invalid and the litigation was baseless. But as also discussed above, the Texas district court found that Defendants acted reasonably and appropriately in their patent enforcement campaign; this decision binds Guardian, the City of Anna's party in privity. Guardian cannot invoke the sham litigation exception.

Even if that exception could apply here, Guardian fails to plausibly allege facts supporting its application. Guardian alleges Defendants' patent enforcement efforts "were wholly predicated upon the … fraudulently-obtained patent[s]" and thus objectively baseless. (Compl. ¶ 13.) To support this contention, Guardian relies heavily on the Texas court's decision – issued four years after Defendants began enforcing MMI's patent – invalidating three claims in MMI's '188 patent. But Guardian cannot take this decision and claim that it exposes Defendants' patent enforcement actions as objectively baseless.

Guardian's timeline of events, and the favorable decisions supporting Defendants' action during this timeline, refute Guardian's contention. According to Guardian, from October 2018 through May 2022, Defendants filed four infringement actions against Guardian's customers and threatened countless other Guardian customers with infringement actions. (Compl. ¶¶ 99-120.) Yet Guardian ignores that during these four years when Defendants pursued these infringement actions, Defendants could presume that the patents were valid. *See* 35 U.S.C. § 282(a). Buttressing this presumption, Guardian and its customers pressed their patent-invalidity theories in two separate forums during these four years – and lost. The Texas district court's decision, which Guardian emphasizes for other purposes, underscores that Defendants' patent-infringement efforts were not objectively baseless. As the Texas district court remarked, "[MMI] was entitled to believe that the '188 Patent was valid" and "sue GAT's customers [] for infringement …." (Rylander Decl. ¶ 9, Ex. L [Order, p. 12].) Thus, when Defendants sought to enforce Miller Mendel's patents against Guardian and its customers, three neutral authorities agreed that Defendants' position was at least objectively reasonable. Guardian has provided nothing – no allegations anywhere in its complaint – to show that Defendants' patent-infringement position was objectively baseless. Thus, the *Noerr-Pennington* doctrine bars Guardian's state law claims.

### 3.    Federal Patent Law Preempts Guardian's State Law Claims Because Defendants' Patent-Enforcement Actions Were Privileged and Made in Good Faith.

The Patent Act's special patent privilege also bars Guardian's state law claims. This Act gives a patentee the right to inform others of its patent rights and to enforce its patents. *GP Indus.,*

*Inc. v. Eran Indus., Inc.*, 500 F.3d 1369, 1374 (Fed. Cir. 2007 ) (citing 35 U.S.C. § 287.) As the
Supreme Court said over a century ago, "[p]atents would be of little value if infringers of them
could not be notified of the consequences of infringement, or proceeded against in the courts.
Such action, considered by itself, cannot be said to be illegal." *Virtue v. Creamery Package Mfg.
Co.,* 227 U.S. 8, 37–38 (1913). Following the Supreme Court's pronouncement, the Federal
Circuit has long acknowledged that "[a] patentee's statements regarding its patent rights are
conditionally privileged under the patent law so that such statements are not actionable unless
made in bad faith." *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1347 (Fed. Cir. 1999).
Guardian's state law claims seek to hold Defendants liable for conduct – notifying Guardian's
customers of the '098 and the '188 Patents and warning of infringement litigation – immunized
federal patent law.

Guardian acknowledges the preemption risk for its state law claims, but pleads little
factual allegations to overcome preemption. Sharing the same factual premise, Guardian's state
law claims contend that MMI's '098 and '188 Patents are invalid and that Defendants knowingly
promoted these allegedly invalid patents to compete with Guardian's business unfairly.  (Compl.
¶¶ 2-3.)  Despite Guardian's repeated broadsides about Defendants' allegedly fraudulent patent
portfolio, Guardian predicates its patent invalidity theory on one claim: that the Background
Solutions software rendered the '098 and '188 Patents invalid. (Compl. ¶¶ 73, 76.) Guardian
speculates that Defendants' "enforcement activities and threatening statements" were objectively
baseless because Defendants could not reasonably believe that MMI had valid patents. (Compl. ¶
13.) Two courts, however, have already rejected this nonsensical speculation.

**4.   Guardian Fails to Plead a Viable Unfair Competition Claim Under
Business & Professions Code Section 17200.**

Guardian's seventh claim alleges that Defendants violated California's Unfair
Competition Law ("UCL"), Business & Professions Code section 17200. The UCL prohibits
unfair competition, which includes any "unlawful, unfair, or fraudulent business practice or act."
*Kwikset Corp. v. Sup.. Ct.*, 51 Cal. 4th 310, 320 (2011). Guardian's UCL fails to "state with

reasonable particularity" the facts supporting the statutory elements of a UCL claim. *Khoury v. Maly's of California, Inc*., 14 Cal. App. 4th 612, 619 (1993).

Relying on all 159 preceding paragraphs in its Complaint, Guardian posits that "Defendants have engaged in unfair competition" and committed "unfair or fraudulent business actions and unfair, deceptive, untrue, or misleading advertising …." (Compl. ¶¶ 161-162.) Nowhere in this laundry list of allegations does Guardian "state with reasonable particularity" Defendants' precise unfair competition establishing a UCL violation. Nor can Guardian make this showing. In direct competition cases, a UCL plaintiff must show "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'n, Inc. v Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). Guardian, one of Defendants' competitors, theorizes that Defendants duped the PTO into issuing the patents and enforced this fraudulent patent portfolio to stifle competition within the market. But again, this theory hinges on Guardian's contention that the Background Solutions software was material prior art, and Defendants knew it. The PTAB and two federal courts have rejected this argument.

Guardian also cannot show that Defendants engaged in "fraudulent" business practices. Guardian predicates this theory on Defendants' supposed failure to disclose the prior art to the PTO. But this theory fails because "claims that are predicated on no more than bad-faith misconduct or fraud before the PTO … are preempted by federal patent law." *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co*., 204 F.3d 1368, 1382 (Fed. Cir. 2000). Even if federal patent law did not preempt Guardian's UCL claim, it still fails because Guardian has not pled a fraudulent business practice with reasonable particularity. Guardian's claimed fraudulent business practice act fails for a third reason too: Defendants' supposed concealment of information from the PTO could not have been likely to deceive "members of the public." *See Comm. on Children's Television v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (1983).

Besides lacking a predicate UCL violation, Guardian's UCL claim seeks three unauthorized forms of relief: damages, civil penalties, and injunctive relief to enjoin a legitimate business practice. (Compl. ¶¶ 163-166.) Private plaintiffs like Guardian cannot seek damages or civil penalties for unfair business practices under the UCL. *Brown v. Allstate Ins. Co*., 17 F. Supp. 2d 1134, 1140 (S.D. Cal. 1998). Although the UCL generally permits injunctive relief, Guardian is ineligible for that relief because it fails to allege "an actual and imminent" threat of continuing unfair business practice. *See Campion v. Old Republic Home Prot. Co., Inc*., 861 F. Supp. 2d 1139, 1150 (S.D. Cal. 2012). Guardian's UCL claim should be dismissed

### 5. Guardian Fails to Plead a Viable False Advertising Claim.

Guardian's eighth claim against Defendants for false advertising fares no better. Business & Professions Code section 17500 prohibits "untrue or misleading" statements made "with the intent directly or indirectly to dispose of" property or services. Guardian's false advertising claim fails for two reasons.

First, Guardian has not identified any specific statement from Defendants that qualified as an advertisement and injured Guardian. Guardian cites one specific statement, a May 3, 2022 press release stating that MMI's '188 Patent remains in "full effect" after the Texas court's decision, which Defendants allegedly sent to one of Guardian's governmental customers. (Compl. ¶¶ 44, 120.) Defendants' statement explains MMI's appeal from the Texas court's decision and Defendants' view on how that statement impacted '188 Patent's continued validity. (Compl. ¶ 120, Ex. 31.) This statement, however, was not an "advertisement" regarding the "disposition or real or personal property or the performance of services." *See Chip-Mender, Inc. v. Sherwin-Williams Co*., Case No. C 05-3465, 2006 WL 13058, at *11 (N.D. Cal. Jan. 3, 2006).

Second, Guardian fails to allege causation of harm. A plaintiff asserting a false advertising claim must allege an injury caused by the false advertising. *Kwikset Corp. v. Super. Ct*., 51 Cal. 4th 310, 322 (2011). Guardian does not allege that Defendants' press release damaged Guardian's relationship with this governmental customer or any other customers or harmed Guardian.

**6.    Guardian Fails to Plead Viable Tortious Interference Claims.**

Guardian's eighth and ninth claims rehash Guardian's complaints over Defendants' patent enforcement actions under the labels tortious interference with contract and tortious interference with prospective business advantage. For its tortious interference with contract claim, Guardian must show that Defendants intentionally induced a breach or disruption of a known contract, which caused the plaintiff damages. *Pacific Gas & Elec. v. Bear Stearns & Co*., 50 Cal. 3d 1118, 1126 (1990). Guardian must plead more for its tortious interference with prospective business advantage claim; it must show that Defendants disrupted an existing Guardian economic relationship and that Defendants' action was independently wrongful. *Ixchel Pharma, LLC v. Biogen, Inc*., 9 Cal. 5th 1130, 1142 (2020). Guardian has not plausibly alleged viable tortious interference claims.

After Defendants succeeded in developing their eSOPH software and obtaining patents for it, Defendants sought to enforce and protect its hard-earned invention from Guardian's infringement. Still, Guardian complains that Defendants' protective measures interfered with its existing customer contracts and disrupted its economic advantage for a future business relationship.  (Compl. ¶¶ 174, 180.) Defendants, however, had a legitimate business reason for its conduct – to protect its patents – and that business purpose defeats Guardian's tortious interference claims.

California law immunizes a defendant from liability for interference with a contract or prospective business advantage if the defendant had a legitimate business purpose for its actions. *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1192-93 (9th Cir. 2022). Courts have routinely dismissed contractual interference claims when a defendant legitimately enforces its own rights, and in so doing, indirectly disrupts a plaintiff's contractual relationship. *SIC Metals, Inc. v. Hyundai Steel Co.*, 442 F. Supp.  3d 1251, 1258 (C.D. Cal. 2020). Some courts, too, have extended this protection to patent infringement actions. *Pactiv, LLC v. Multisorb Tech., Inc*., 63 F. Supp. 3d 832, 842 (N.D. Ill. 2014); *Baxa Corp. v. McGaw, Inc*., 996 F. Supp. 1044, 1054 (D. Colo. 1997).

As in *Baca* and *Pactiv*, Guardian cannot hold Defendants liable for exercising their "right to … enforce [MMI's] patent[s] … includ[ing] threatening alleged infringers with suit." *See Concrete Unlimited, Inc. v. Cementcraft, Inc*., 776 F.2d 1537, 1538 (Fed. Cir. 1985). For the reasons stated above, Defendants had a legitimate business purpose. They did not engage in any independently wrongful acts by seeking to protect MMI's patents through actual and threatened litigation. Guardian's tortious interference claims should be dismissed.

### 7.    Guardian Fails to Plead a Viable Trade Libel Claim.

Guardian's eleventh and final claim for trade libel also fails on the particularity element. For its trade libel claim, Guardian must show Defendants made a disparaging statement of facts about the quality of Guardian's product that caused Guardian to suffer special damages. *See Microtec Rsch., Inc. v. Nationwide Mut. Ins. Co*., 40 F.3d 968, 972-73 (9th Cir. 1994). Guardian's complaint satisfies none of these elements.

First, Guardian cannot hold Defendants liable for making nonactionable statements of opinion. *See ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1010-11 (2001) (statements of opinion do not support a trade libel claim). Guardian identifies three purportedly disparaging statements: (1) Defendants said Guardian's software infringed on MMI's patents; (2) Defendants misled Guardian's customers about the status of Defendants' patent infringement litigation; and (3) Defendants lied to Guardian's customers about "the integrity of applicant data collected and stored in the Guardian platform." (Compl. ¶¶ 187-188.) The first two statements express Defendants' opinion about patent law as applied to Guardian's software and Defendants' interpretation of its patent infringement litigation against Guardian's customers. Neither statement of opinion qualifies as disparaging trade libel. *See Amaretto Ranch Breedables, LLC v. Ozimals, Inc*., Case No.  CV 10-5696, 2013 WL 3460707, at *5-6 (N.D. Cal. July 9, 2013). The third statement, which Guardian twisted from Tyler Miller's open letter (attached as Ex. 31 to Guardian's complaint), also did not derogate Guardian's software. Throughout that letter, he expressed his *opinions* that Guardian's contracts may cause its customers to violate various privacy regulations and that Guardian's software may infringe MMI's patents. (Compl. ¶¶ 118-

119, Ex. 30.) His "opinions based on his observations and understanding of rules and regulations" did not derogate the quality of Guardian's software. Guardian's complaint fails to identify an actionable trade libel statement.

Second, Guardian has not alleged facts demonstrating "special damages." Guardian posits that it suffered "actual damages … in an amount to be proven at trial." (Compl. ¶ 190). Guardian does not allege the amount of business it had before and after Defendants made their statements or the value of its business. Without this context, Guardian's bare allegation that it may prove "the amount of pecuniary loss" at trial "is insufficient for pleading of trade libel." *Code Rebel, LLC, v. Aqua Connect, Inc*., Case No. CV 13-4539, 2013 WL 5405706, at \*5 (C.D. Cal. Sept. 24, 2013).

### E.    GUARDIAN FAILS TO PLEAD WITH REQUIRED PARTICULARITY

Even if this Court does not dismiss the claims contained in the Complaint for the reasons set forth above, this Court should dismiss Guardian's entire Complaint for flunking Rule 9(b)'s heightened pleading requirement. Guardian in a shotgun manner incorporates by reference large swaths of its complaint into reach claim for relief (See, e.g., Comp. 185 ("Guardian incorporates and realleges paragraphs 1-184 herein by reference.")). Central to its claims, Guardian's Complaint pleads two species of inequitable conduct/patent fraud: failure to disclose a prior offer to sell and failure to disclose some art related to the Background Assistant software. (Compl. ¶¶ 34, 43, 51-78). Through its shotgun style of pleading, Guardian bases all of its claims on inequitable conduct/patent fraud.

Federal Circuit precedent applies to pleading with particularity under Rule 9 related to inequitable conduct/patent fraud. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed. Cir. 2009). "[I]nequitable conduct, while a broader concept than fraud, must be pled with particularity" under Rule 9(b). *Id*. at 1326. Such pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exegen Corp.*, 575 F.3d at 1328–29. Further, the pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer

that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO. *Id.* at 1327–29; see *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) ("[p]roving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive."); *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290 (2d Cir. 2006) ("because we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations ... **plaintiffs must allege facts that give rise to a strong inference of fraudulent intent**.") (emphasis added).

### 1.    Guardian Does Not Sufficiently Allege Defendant's Prior Offer to Sell.

Guardian makes vague and contradictory allegations regarding Defendants' alleged "offer to sell" their own product before the effective filing date of the '188 Patent. (Compl. ¶¶ 34, 43). The Complaint provides no details about this "offer." It does not state the date of the offer, to whom it was made, the language used, the means of communication. What little Guardian does say, it contradicts later in the Complaint: paragraph 34 claims the offer was made "more than a year before filing [Miller Mendel's] first patent application," but paragraphs 48 and 49 allege that MMI began marketing its product in 2011, while it filed its first patent application in April 2011.

### 2.    Guardian Does Not Sufficiently Allege Failure to Disclose Third Party Prior Art.

Guardian ambiguously alleges some public use, or printed publication presentation regarding the Background Assistant software is "prior art" which Defendants "[o]n information and belief, … became aware and/or obtained access to" and failed to disclose. (Compl. ¶¶ 34, 43, 51-78.) Again, Guardian fails to plead with particularity (a) what is the prior art; (b) what makes it prior art; and (c) when (and what) Defendants learned of the prior art, (d) what makes the prior art "material," and (e) what is the factual basis supporting the "strong" inference that Defendants deliberately intended not to disclose it. Instead, Guardian pleads "on information and belief," but fails to provide a statement of facts supporting its "belief," and Guardian pleads "and/or" in a

vague manner. Rule 9(b) pleading cannot be based upon such "information and belief" allegations without a statement of the facts upon which belief is based. *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987); *Greebel v. FTP Software, Inc.*, 194 F.3d 185 (1st Cir. 1999).

Guardian also failed to support its speculation that Defendants made a "deliberate decision to withhold a known material reference, which is a "necessary predicate for inferring deceptive intent." *Exergen,* 575 F.3d at 1330–31 (Fed. Cir. 2009). "[O]ne cannot assume that an individual, who generally knew that a reference existed, also knew of the specific material *information* contained in that reference. *Id.* at 1330.

Guardian has not pleaded any facts of which MMI was aware before issuing the '188 Patent that any Background Solutions material *could* be prior art. At best, Guardian asserts MMI became aware of a company name in August 2012, approximately sixteen months after Tyler Mendel filed his priority application in April 2011.[17] (Compl. ¶ 66, Ex. 4 [162-64].) The cited email does not mention any software, product, or publication being publicly accessible to a person having ordinary skill in the art prior to the effective filing date of the '188 Patent. Prior art is evaluated from the perspective of a person having ordinary skill in the art. *Continental Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991).

Moreover, Defendants had no duty to investigate the company or its products. Guardian cannot satisfy Rule 9(b) by speculating that MMI had "knowledge" or "access," because there is no duty to search for prior art, to disclose what "should have been known," or of which a defendant "reasonably should be aware" or "could have been aware." *Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.,* 394 F.3d 1348, 1351 (Fed. Cir. 2005); *Frazier v. Roessel Cine Photo Tech, Inc.*, 417 F.3d 1230, 1238 (Fed. Cir. 2005). Instead, Guardian was required to plead

---

[17] Guardian also alleges an even later e-mail, from 2014. (Compl. ¶ 67, Ex. 5.). But that also does not constitute prior art, nor does it say when the product referred to came into use, who used it, whether it was accessible publicly, or whether it is even accessible to review, nor that MMI ever had it in its possession.

where, what, when, and how MMI allegedly acquired knowledge of the Background Solutions

matter and its materiality and prior art status.

At most, Guardian, in paragraph 63, vaguely pleads a "presentation" that disclosed some

features of an undated product but does not allege defendants attended the presentation, where it

occurred, when it happened, who attended, or any other details that the Federal Circuit requires

claimants provide to show public accessibility to render it prior art. *See In re Klopfenstein*, 380

F.3d 1345, 1348 (Fed. Cir. 2004). Moreover, the "presentation" Guardian pleads is the same

insufficient "presentation" Guardian asserted at the PTAB. Indeed, the snapshots in paragraph 63

of the Complaint are ***the same snapshots in Guardian's fatally defective IPR Petition*** for which

the PTAB found failed to show any particulars that were publicly available, let alone prior to the

priority date. (See Compl. ¶ 63; Rylander Decl. ¶ 10, Ex. M [IPR Petition, pp. 46-47].) The PTAB

has a lower burden of proof (more likely than not standard), than this Court (clear and

convincing). Yet, Guardian failed to plead sufficient particularity even to meet that lower

standard, failing to show that the Background Solutions' software constituted prior art in any

respect. (*Id.*) The PTO ruled that the Background Solutions software was not prior art, let alone

material, prior art. As such, Guardian was required to plead here why Defendants could not rely

on that determination and how Defendants could have deliberately intended to mislead the PTO

given its conclusion.

Regarding scienter, Guardian's allegation in paragraphs 51 and 52 that Defendants

"[b]ecame aware and/or obtained access" to the alleged prior art does even meet the first hurdle.

*Exergen*, 575 F.3d at 1330 (Fed. Cir. 2009) ("[O]ne cannot assume that an individual, who

generally knew that a reference existed, also knew of the specific material *information* contained

in that reference." (emphasis in original)). Guardian pleads generally: "[b]ased on…prior

awareness of the...prior art software…on information and belief [the failure to disclose] was done

with intent to deceive the examiner," and Defendants "made the deliberate decision not to

disclose the …prior art software…because such disclosure would have rendered all of the claims

of the '098 and '188 Patents unpatentable…" (Compl. ¶¶ 75, 77.) Those pleadings are

insufficient. Paragraphs 51 and 75, reviewed together, illuminates Guardian's absurd bootstrapping of "information and belief": on information and belief Defendants became aware of and/or obtained access, and based on that information and belief awareness, on information and belief the failure to disclose was done with intent to deceive. (Compl. ¶¶ 51, 75.) Guardian fails to plead facts supporting its leaping to its conclusion that Defendants intended to deceive the USPTO. And this directly contradicts other portions of Guardian's Complaint, specifically the incorporated PTAB Decision finding the Background Assistant asserted by Guardian was not prior art. (Compl. ¶ 119, Ex. 30 [PTAB decision p. 529 & 534].) Thus, Defendants did not need to disclose it.

## IV.   CONCLUSION

For the reasons set forth above, this Court should dismiss the Complaint under Rule 12(b)(6) or grant other relief as is just and equitable.


DATED:  October 11, 2022                    **BUCHALTER**
                                            A Professional Corporation


                                            By:   */s/ Robert S. McWhorter*  _____
                                                  Robert S. McWhorter
                                                  Joshua M. Robbins
                                                  Jarrett Osborne-Revis

                                                  Attorneys for Defendants,
                                                  Miller Mendel, Inc.
                                                  Tyler Mendel

1  **BUCHALTER**
A Professional Corporation
2  Joshua M. Robbins (SBN: 270553)
18400 Von Karman, Suite 800
3  Irvine, CA 92612
(949) 224-6284
4  jrobbins@buchalter.com

5  Harry W R Chamberlain II (SBN 95780)
Robert S. McWhorter (SBN: 226186)
6  Jarrett S. Osborne-Revis (SBN 289193)
500 Capitol Mall, Ste. 1900
7  Sacramento, California 95814
(916) 899-1099
8  hchamberlain@buchalter.com
rmcwhorter@buchalter.com
9  josbornerevis@buchalter.com

10  **RYLANDER & ASSOCIATES PC**
Kurt M. Rylander (Pro Hac Vice Application Pending)
11  406 West 12th Street
Vancouver, WA 98660
12  (360) 750-9931
rylander@rylanderlaw.com
13
Attorneys for Defendants,
14  Miller Mendel, Inc. and Tyler Miller

15                    **UNITED STATES DISTRICT COURT**

16                    **EASTERN DISTRICT OF CALIFORNIA**

17                        **SACRAMENTO DIVISION**

18

19  **GUARDIAN ALLIANCE TECHNOLOGIES,**          CASE NO. 2:22-cv-01390-WBS-AC
    **INC.,**
20                                                **DEFENDANTS' NOTICE OF MOTION**
                                                  **AND MOTION TO DISMISS UNDER**
21               Plaintiff,                       **FEDERAL RULE OF CIVIL**
                                                  **PROCEDURE 12(b)(6); MEMORNADUM**
22         vs.                                    **OF POINTS AND AUTHORITIES IN**
                                                  **SUPPORT**
23  **MILLER MENDEL, INC.** and **TYLER**
    **MILLER**,                                   DATE:      April 28, 2025
24                                                TIME:      1:30 p.m.
               Defendants.                        JUDGE:     Hon. William B. Shubb
25                                                           Courtroom 5, 14th Floor
                                                             501 I Street
26                                                           Sacramento, CA 95814

27

28

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –          CASE NO. 2:22-CV-01390-WBS-AC
MEMORANDUM OF POINTS AND AUTHORITIES

APPX0091

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on April 28, 2025, at 1:30 p.m., or as soon thereafter as the Court's schedule permits, before the Honorable William B. Shubb, in Courtroom 7 of the United States District Court for the Eastern Division, Sacramento Courthouse, located at 501 I Street, Sacramento, California 95814.

Defendants Miller Mendel, Inc. and Tyler Mendel (collectively, "Defendants") will and hereby do move this Court for an order dismissing Plaintiff's Complaint under Rule 12 of the Federal Rules of Civil Procedure because it fails to state a claim upon which relief can be granted.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the contemporaneously filed Declaration of Kurt Rylander, the Complaint (plus exhibits), any reply memorandum, the pleadings and files in this action, and such other matters as may be presented before the hearing.

DATED: March 7, 2025

BUCHALTER
A Professional Corporation


By:    */s/ Robert S. McWhorter*
        Robert S. McWhorter
        Attorneys for Defendants,
        Miller Mendel, Inc. and Tyler Mendel

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

APPX0092

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.    STATEMENT OF FACTS ................................................................................. 2

    A.    Defendants Patent Their Background Check Technology. ..................... 2

    B.    Defendants Seek to Enforce Their Patents Through Litigation and Related
          Communications. ...................................................................................... 2

    C.    Guardian Sues Defendants Over Their Patent Application, Enforcement
          Litigation, and Related Communications. ............................................... 6

III.    ARGUMENT .................................................................................................... 7

    A.    Standard of Review ................................................................................. 7

    B.    Guardian Does Not Plead Proper Declaratory Judgment Claims .......... 7

          1.    The First-to-File Rule Bars Guardian's Declaratory Relief Claims ........... 7

          2.    Guardian Faces No Immediate Threat of Patent Enforcement
               Litigation from Defendants That Warrants a Declaratory Judgment ........ 10

               a.    The '098 Patent ............................................................... 10

               b.    The '188 Patent ............................................................... 11

    C.    Guardian Does Not Plead Proper Sherman Act Antitrust Claims. ........ 12

          1.    Collateral Estoppel Bars the *Handgards* claim Because the *City of
               Anna* Court Found that Defendants' Conduct Was Reasonable and in
               Good Faith. ...................................................................................... 12

          2.    Guardian's *Walker Process* Claim Is Barred Under Collateral Estoppel
               and Does Not Allege the Required Elements with Particularity. ............. 13

          3.    Guardian Does Not Properly Allege that Miller Mendel Has Monopoly
               Power. ...................................................................................... 15

    D.    Guardian Does Not Plead Proper State Law Claims. .......................... 16

          1.    California's Litigation Privilege Bars Guardian's State Law Claims
               Because They Are Based On Defendants' Statements Made in
               Litigation. ...................................................................................... 17

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES    CASE NO. 2:22-CV-01390-WBS-AC

APPX0093

2.    The *Noerr-Pennington* Doctrine and the Petition Clause Bars Guardian's State Law Claims Because They Are Based on Defendants' Protected Petitioning Activity. ............................................... 19

3.    Federal Patent Law Preempts Guardian's State Law Claims Because Defendants' Patent-Enforcement Actions Were Privileged and Made in Good Faith. ............................................................................... 22

4.    Guardian Fails to Plead a Viable Unfair Competition Claim Under Business & Professions Code Section 17200. ........................................... 22

5.    Guardian Fails to Plead a Viable False Advertising Claim. ..................... 24

6.    Guardian Fails to Plead Viable Tortious Interference Claims. ................. 25

7.    Guardian Fails to Plead a Viable Trade Libel Claim. .............................. 26

E.    GUARDIAN FAILS TO PLEAD WITH REQUIRED PARTICULARITY ........ 27

1.    Guardian Does Not Sufficiently Allege Defendant's Prior Offer to Sell. ................................................................................................................. 28

2.    Guardian Does Not Sufficiently Allege Failure to Disclose Third Party Prior Art. ....................................................................................................... 28

IV.    CONCLUSION ............................................................................................................. 30

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM – MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

APPX0094

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action Apartment Ass'n., Inc. v. City of Santa Monica,*
41 Cal. 4th 1232 (2007) ............................................................................... 17, 19

*Alice Corp. Pty, Ltd. v. CLS Bank International,*
573 U.S. 208 (2014) ...................................................................................2, 3, 4, 6

*Alltrade, Inc. v. Uniweld Prods., Inc.,*
946 F.2d 622 (9th Cir. 1991) ......................................................................... 7, 8

*Alzheimer's Inst. of America v. Eli Lilly & Company,*
128 F. Supp. 3d 1249 (N.D. Cal. 2015) ......................................................... 12

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.,*
Case No. CV 10-5696, 2013 WL 3460707 (N.D. Cal. July 9, 2013) ................. 26

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ......................................................................................... 7

*Baxa Corp. v. McGaw, Inc.,*
996 F. Supp. 1044 (D. Colo. 1997) ................................................................. 25

*Briggs v. Eden Council of Hope and Opportunity,*
19 Cal. 4th 1106 (1999) ................................................................................ 17

*Brown v. Allstate Ins. Co.,*
17 F. Supp. 2d 1134 (S.D. Cal. 1998) ............................................................ 24

*Brownsville Golden Age Nursing Home, Inc. v. Wells,*
839 F.2d 155 (3d Cir. 1988) ........................................................................... 19

*Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.,*
394 F.3d 1348 (Fed. Cir. 2005)C ................................................................... 29

*Campion v. Old Republic Home Prot. Co., Inc.,*
861 F. Supp. 2d 1139 (S.D. Cal. 2012) .......................................................... 24

*Cat Tech LLC v. TubeMaster, Inc.,*
528 F.3d 871 (Fed. Cir. 2008) ....................................................................... 10

*Cel-Tech Commc'n, Inc. v Los Angeles Cellular Tel. Co.,*
20 Cal. 4th 163 (1999) ................................................................................... 23

*Chip-Mender, Inc. v. Sherwin-Williams Co.,*
Case No. C 05-3465, 2006 WL 13058 (N.D. Cal. Jan. 3, 2006) ...................... 24

iii

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

APPX0095

*City of Columbia v. Omni Outdoor Advert., Inc.*,
499 U.S. 365 (1991) ............................................................................................. 20

*Code Rebel, LLC, v. Aqua Connect, Inc.*,
Case No. CV 13-4539, 2013 WL 5405706 (C.D. Cal. Sept. 24, 2013) ................................ 27

*Comm. on Children's Television v. Gen. Foods Corp.*,
35 Cal. 3d 197 (1983) ......................................................................................... 23

*ComputerXpress, Inc. v. Jackson*,
93 Cal. App. 4th 993 (2001) ................................................................................ 26

*Concrete Unlimited, Inc. v. Cementcraft, Inc.*,
776 F.2d 1537 (Fed. Cir. 1985) ........................................................................... 25

*Continental Can Co. USA v. Monsanto Co.*,
948 F.2d 1264 (Fed. Cir. 1991) ........................................................................... 29

*Dippin Dots, Inc. v. Mosey*,
476 F.3d 1337 (Fed. Cir. 2007) ..................................................................... 13, 15

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
822 F.2d 1242 (2d Cir. 1987) .............................................................................. 28

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009) ............................................................. 14, 27, 28, 30

*Federal Trade Commission v. Qualcomm Inc.*,
969 F.3d 974 (9th Cir. 2020) .............................................................................. 15

*Frazier v. Roessel Cine Photo Tech, Inc.*,
417 F.3d 1230 (Fed. Cir. 2005) ........................................................................... 29

*Futurewei Techs., Inc. v. Acacia Research Corp.*,
737 F.3d 704 (Fed. Cir. 2013) .............................................................................. 9

*Gable v. Lewis*,
201 F.3d 769 (6th Cir. 2000) .............................................................................. 19

*Garity v. APWU National Labor Organization*,
828 F.3d 848 (9th Cir. 2016) .............................................................................. 12

*Golden Eye Media USA, Inc. v. Trolley Bags UK, Ltd.*,
525 F. Supp. 3d 1145 (S.D. Cal. 2021) .................................................................... 3

*GP Indus., Inc. v. Eran Indus., Inc.*,
500 F.3d 1369 (Fed. Cir. 2007 ) ........................................................................... 22

iv

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

APPX0096

*Handgards, Inc. v. Ethicon, Inc.*,
   601 F.2d 986 (1979) ........................................................................................ 15

*Handgards, Inc. v. Ethicon, Inc.*,
   743 F.2d 1282 (9th Cir. 1984) ................................................................ 7, 12, 15

*hiQ Labs, Inc. v. LinkedIn Corp.*,
   31 F.4th 1180 (9th Cir. 2022) ........................................................................ 25

*iLife Techs. Inc. v. AliphCom.*,
   No. 14-cv-03345-WHO, 2015 WL 890347 (N.D. Cal. Feb. 19, 2015) ................ 14

*Ingrid & Isabel, LLC v. Baby Be Mine, LLC*,
   70 F. Supp. 3d 1105 (N.D. Cal. 2014) .............................................................. 19

*Ixchel Pharma, LLC v. Biogen, Inc.*,
   9 Cal. 5th 1130 (2020) .................................................................................... 25

*James R. Glidewell Dental Ceramics v. Keating Dental Arts, Inc.*,
   Case No. SACV 11-1309-DOC, 2013 WL 655314 (C.D. Cal. Feb. 21, 2013) .............. 20

*Keniston v. Roberts*,
   717 F.2d 1295 (9th Cir. 1983) .......................................................................... 7

*Khoury v. Maly's of California, Inc.*,
   14 Cal. App. 4th 612 (1993) ............................................................................ 23

*In re Klopfenstein*,
   380 F.3d 1345 (Fed. Cir. 2004) ........................................................................ 29

*KLX Energy Servs., LLC v. Magnesium Mach., LLC*,
   521 F. Supp. 3d 1124 (W.D. Okla. 2021) ........................................................ 19

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
   787 F.3d 1237 (9th Cir. 2015) .......................................................................... 8

*Kwikset Corp. v. Sup. Ct.*,
   51 Cal. 4th 310 (2011) .............................................................................. 23, 24

*Lee v. City of L.A.*,
   250 F.3d 668 (9th Cir. 2001) ............................................................................ 7

*Lerette v. Dean Witter Org., Inc.*,
   60 Cal. App. 3d 573 (1976) ............................................................................ 18

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006) ............................................................................ 27

v

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

APPX0097

*Location Servs., LLC v. Dig. Recognition Network, Inc.*,
No. 2:18-CV-00893-KJM-AC, 2018 WL 3869169 (E.D. Cal. Aug. 14, 2018) ...................... 8

*Mattel, Inc. v. MGA Entm't, Inc.*,
705 F.3d 1108 (9th Cir. 2013) .................................................................................................. 9

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) ................................................................................................................ 10

*Microtec Rsch., Inc. v. Nationwide Mut. Ins. Co.*,
40 F.3d 968 (9th Cir. 1994) ................................................................................................... 26

*Miller Mendel, Inc. et al. v. City of Oklahoma City et al.*,
W.D. OK No. CIV-18-990-JD, Dkt 139 (filed 12/18/2024) ........................................ 2, 6, 11

*Miller Mendel, Inc. v. Alaska State Troopers, et al.*
D.AK No. 3:21-cv-0129-HRH, Dkt 50 .............................................................................. 6, 11

*Miller Mendel Inc. v. Alaska State Troopers*,
No. 3:21-cv-0129-HRH, 2021 U.S. Dist. LEXIS 156466 (D. Alaska Aug. 19,
2021) ................................................................................................................................. 4, 8, 9

*Miller Mendel, Inc. v. City of Anna*,
107 F.4th 1345 (Fed. Cir. 2024) ...................................................................................4, 5, 6, 12

*Miller Mendel, Inc. v. City of Anna*,
220 L.Ed.2d 231 (U.S. 2024) ................................................................................................. 6

*Miller Mendel, Inc. v. Oklahoma City et al.*,
W.D. OK Case No. 5:18-cv-00990-JD, Dkt. 137 (Order) .................................................... 10

*Miller Mendel, Inc. v. Washington County, Oregon, et al.*,
D.OR 3:21-cv-00168-SB, Dkt, 33 .................................................................................. 4, 6, 11

*Nat. Res. Council v. Mohla*,
944 F.2d 531 (9th Cir. 1991) .................................................................................................. 20

*Nobelpharma AB v. Implant Innovations, Inc.*,
141 F.3d 1059 (Fed. Cir. 1998) .............................................................................................. 14

*Olsen v. Harbinson*,
191 Cal. App. 4th 325 (2010) ................................................................................................. 18

*Pacific Gas & Elec. v. Bear Stearns & Co.*,
50 Cal. 3d 1118 (1990) ........................................................................................................... 25

*Pactiv, LLC v. Multisorb Tech., Inc.*,
63 F. Supp. 3d 832 (N.D. Ill. 2014) ...................................................................................... 25

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

*In re Pegasus Gold Corp.*,
  394 F.3d 1189 (9th Cir. 2005) ................................................................. 9

*People v. Pacific Lumber*,
  158 Cal. App. 4th 950 (2008) ................................................................. 18

*Prasco, LLC v. Medicis Pharm. Corp.*,
  537 F.3d 1329 (Fed. Cir. 2008) ............................................................. 10

*Pro. Real Estate Invs., Inc. v. Columbia Pictures Indus.*,
  508 U.S. 49 (1993).................................................................... 10, 12, 20

*Rebel Oil Co., Inc. v. Atlantic Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995) ................................................................. 15

*Reyes v. Kenosian & Miele, LLP*,
  619 F. Supp. 2d 796 (N.D. Cal. 2008) .................................................. 13

*Rick-Mik Enters, Inc. v. Equilon Enters*,
  532 F.3d 963 (9th Cir. 2008) ................................................................. 16

*Rubin v. Green*,
  4 Cal. 4th 1187 (1993) .............................................................. 18, 20, 21

*Rusheen v. Cohen*,
  37 Cal. 4th 1048 (2006) ......................................................................... 17

*Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*,
  204 F.3d 1368 (Fed. Cir. 2000) ............................................................. 23

*SIC Metals, Inc. v. Hyundai Steel Co.*,
  442 F. Supp. 3d 1251 (C.D. Cal. 2020) ................................................ 25

*Sliding Door Co. v. KLS Doors, LLC*,
  Case No. EDCV 13-00196, 2013 WL 2090298 (C.D. Cal. May 1, 2013)...................... 18, 20

*Sosa v. DIRECTV, Inc.*,
  437 F.3d 923 (9th Cir. 2006) ................................................................. 19

*SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*,
  511 F.3d 1374 (Fed. Cir. 2006) ............................................................... 3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).................................................................................. 7

*Theme Promotions, Inc. v. News America Mktg., FSI*,
  546 F.3d 991 (9th Cir. 2008) ................................................................. 19

vii

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

APPX0099

*Therasene, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) ............................................ 14, 27

*UMG Recordings, Inc. v. Shelter Cap. Partners LLC.*,
    718 F.3d 1006 (9th Cir. 2013) ............................................ 7

*Virtue v. Creamery Package Mfg. Co.*,
    227 U.S. 8 (1913) ............................................ 22

*Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*,
    382 U.S. 172 (1965) ............................................ 7, 13, 14, 15

*Wise v. Thrifty Payless, Inc.*,
    83 Cal. App. 4th 1296 (2000) ............................................ 18

*Zenith Elecs. Corp. v. Exzec, Inc.*,
    182 F.3d 1340 (Fed. Cir. 1999) ............................................ 22

**Statutes**

15 U.S.C. § 2 ............................................ 7, 12, 13, 15

28 U.S.C. § 2201 ............................................ 10

35 U.S.C. § 101 ............................................ 3, 4, 6, 8

35 U.S.C. § 102 ............................................ 3, 6, 8

35 U.S.C. § 103 ............................................ 3, 6, 8

35 U.S.C. § 112 ............................................ 6, 8

35 U.S.C. § 282(a) ............................................ 21

Cal. Bus. & Prof. Code § 17200 ............................................ 22

Cal. Bus. & Prof. Code § 17500 ............................................ 24

Cal. Civ. Code § 47 ............................................ 17

Fed. R. Civ. P. 9 ............................................ 27

Fed. R. Civ. P. 9(b) ............................................ *passim*

Fed. R. Civ. P. 12(b)(6) ............................................ 2, 7, 30

Fed. R. Civ. P. 13 ............................................ 9

Fed. R. Civ. P. 13(a) ............................................ 9

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

APPX00100

## I.    INTRODUCTION

This case is not the first-filed lawsuit on this matter.[1] Defendants Miller Mendel, Inc. ("MMI") and Tyler Miller ("Miller") (collectively, "Defendants") previously filed actions in federal courts in Oklahoma, Oregon, Alaska, and Texas against government agency customers of Plaintiff Guardian Alliance Technologies, Inc. ("Guardian"), alleging their use of Guardian's competing background investigation software infringed Patent No. 10,043,188 B2 (the "'188 Patent"). (Compl., ¶¶ 99-103.) Guardian defended and indemnified its customers and is now a defendant in the Oklahoma action. (*Id*.) The first infringement lawsuit was filed in Oklahoma on October 9, 2018, later amended to add Guardian. (Compl., ¶¶ 99-100.) One year later, on October 9, 2019, Guardian petitioned the Patent Trial and Appeal Board ("PTAB") for *inter partes* review of the '188 Patent, which was denied. On August 5, 2022, Guardian filed this action, the fifth proceeding involving the infringement or validity of the '188 Patent.

Guardian's 43-page Complaint is a classic "shotgun" pleading, with 127 paragraphs of general allegations asserting four declaratory relief claims, two federal antitrust claims, and five state law claims. The claims rest on three core theories: (1) MMI defrauded the Patent & Trademark Office ("PTO") into issuing patents, however other than claiming a failure to disclose the alleged Backgrounds Solution prior art (which has been rejected by the PTO), Guardian fails to identify any knowingly false statements or a factual basis for contending MMI allegedly had reason to know Background Solutions was material prior art; (2) MMI harassed Guardian's customers with cease-and-desist letters; and (3) MMI sued four Guardian customers for patent infringement. None of these theories is legally or factually viable.

Collateral estoppel from the Texas case bars these claims. Additionally, under the *Noerr-Pennington* doctrine and state law privileges, the First Amendment protects MMI's communications with government agencies. After the Supreme Court denied certiorari, MMI moved to dismiss and remove all '188 Patent infringement claims in all courts. MMI has never sued on the '098 Patent, eliminating any credible claim of a "threat" of an ongoing controversy

---

[1] Although Plaintiff Guardian Alliance Technologies, Inc. filed this Complaint on August 5, 2022, Guardian has not served its Complaint on Defendants.

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM – MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

1    and precluding Guardian's remaining declaratory judgment claims. The Complaint lacks sufficient

2    facts to state a plausible claim under Rule 12(b)(6) and warrants dismissal on additional grounds

3    set forth below.

4    **II.    STATEMENT OF FACTS**

5        **A.    Defendants Patent Their Background Check Technology.**

6            MMI is a Seattle-based company that creates and sells access to software to manage

7    employee background checks for law enforcement and government organizations. (Compl., ¶¶ 5,

8    28). Miller serves as MMI's Chief Executive Officer. (Declaration of Kurt Rylander ("Rylander

9    Decl.") ¶ 4, Ex. A [Miller Mendel's Statement of Information].)

10           On April 6, 2011, Miller filed a provisional patent application with the PTO, covering a

11   web-based software system designed to process pre-employment background investigations.

12   (Compl., ¶ 49, Ex. 2 [at 72-143]; Rylander Decl., ¶ 5, Ex. B [Tyler Mendel's application for the

13   '188 Patent.) He filed nonprovisional patent applications on April 6, 2012, and May 26, 2015,

14   resulting in U.S. Patent Nos. 9,070,098 ("'098 Patent") and the '188 Patent. (Compl., ¶¶ 53, 56.)

15   Miller licensed both patents to MMI.

16       **B.    Defendants Seek to Enforce Their Patents Through Litigation and Related
                  Communications.**

17           In October 2017, Defendants discovered that Guardian infringed on the various patents by

18   selling background check software to law enforcement agencies. (Compl., ¶ 95.) They demanded

19   that Guardian stop infringing, but Guardian refused, claiming that the '098 Patent was invalid

20   under *Alice Corp. Pty, Ltd. v. CLS Bank International*, 573 U.S. 208 (2014) ("*Alice*"), which

21   established a two-part test to determine whether patent claims cover eligible subject matter (as

22   opposed to patent-ineligible claims such the laws of nature, natural phenomena, and abstract

23   ideas). (Compl., ¶¶ 95, 97, Exs. 18, 20.)

24           On October 9, 2018, Defendants filed an action against Guardian's customer, the City of

25   Oklahoma City ("Oklahoma City"), in the case entitled *Miller Mendel, Inc. v. City of Oklahoma

26   City*,[2] alleging that Oklahoma City infringed on the '188 Patent by using Guardian's background

---

[2] *Miller Mendel, Inc. v. City of Oklahoma City* is pending as Case No. CIV-18-990-JD, U.S.
District Court for the Western District of Oklahoma ("Oklahoma Action").

2

BUCHALTER
A PROFESSIONAL CORPORATION
Sacramento

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

APPX00102

1   check software. (Compl., ¶ 99.) Oklahoma City, defended by Guardian, moved to dismiss the

2   Oklahoma Action, arguing that the '188 Patent was unpatentable under 35 U.S.C. § 101 and *Alice.*

3   (Rylander Decl., ¶ 6, Ex. D.) The Oklahoma court denied this motion. (*Id.*)

4          Guardian took another shot and filed a petition with the PTAB for *inter partes* review,

5   arguing that the '188 Patent was invalid under 35 U.S.C. § 103 because "prior art"[3] made the

6   invention too "obvious" to be patented. (Compl., ¶ 114, Ex. 26.) Guardian based this argument on

7   Background Solutions, LLC's alleged publications regarding background check systems – the

8   same view that Guardian reprises in this lawsuit. (*Id.*) On March 26, 2020, the PTAB found that

9   Guardian failed to show that the Background Solutions video and other information constituted

10  prior art. (*Id.*) Guardian twice tried to convince the PTAB to reconsider its decision; the PTAB

11  rejected both requests. (*Id.*)

12         Bolstered by the PTAB decision, Defendants continued their quest to protect their hard-

13  earned patent from Guardian's unrelenting infringement. Defendants warned law enforcement

14  agencies that if they used Guardian's software, Defendants would sue them for patent

15  infringement. (Compl., ¶¶ 111, 113-114, 116-117, Exs. 23, 25-28.) In October 2021, Defendants

16  published an "open letter" on their website regarding "serious public issues" raised by Guardian's

17  patent infringement. (Compl., ¶¶ 118-119, Exs. 29-30.) Among the "important topics of public

18  concern" discussed in the letter were (1) "legal compliance and ethical dilemmas" raised by

19  privacy concerns in Guardian's business practices; (2) the ongoing federal patent litigation and

20  PTAB proceedings; and (3) the agencies' potential liability for patent infringement. (*Id.*)

21  _____

22  [3] "Prior art" is defined generally as "[k]nowledge that is publicly known, used by others, or
    available on the date of invention to a person of ordinary skill in an art, including what would be

23  obvious from that knowledge." *Golden Eye Media USA, Inc. v. Trolley Bags UK, Ltd.*, 525 F.
    Supp. 3d 1145, 1194 (S.D. Cal. 2021). The Leahy-Smith American Invents Act (AIA) became

24  effective on September 16, 2012 and March 16, 2013. *See* Public Law 112-29. The '188 Patent,
    with an April 6, 2011 effective filing date, is governed by the pre-AIA version of 35 U.S.C. §§ 102

25  and 103. Pre-AIA § 102 sets forth categories of "prior art" and case law establishes factors that
    must be proven for something to be prior art. The existence of "art" is not enough to make it prior

26  art. Among other things, it must be "publicly accessible" such that one having ordinary skill in the

27  art interested in the subject matter could locate the reference upon "exercising reasonable
    diligence." *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1374, 1378 (Fed. Cir. 2006).

28

3

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

Defendants filed three patent infringement lawsuits against Guardian's customers in Oregon, Alaska, and Texas federal district courts.[4] Guardian funded the defense of its customers.[5]

On February 1, 2021, Defendants sued Washington County, Oregon, and Washington County (OR) Sheriff's Office ("Oregon Defendants")[6] for infringing the '188 Patent by using Guardian's software. (Compl., ¶ 101.) The district court stayed the Oregon Action pending resolution of the Oklahoma Action. (*Id.*)

On May 28, 2021, Defendants filed another patent infringement action against Guardian's customers, the Alaska State Troopers and its Commissioner (collectively, "Alaska Defendants"), who used Guardian's infringing software.[7] (Compl., ¶ 102.) Defendants' complaint alleged that the Alaska Defendants' use of Guardian's software infringed the '188 Patent. (*Id.*) The Alaska district court stayed the Alaska Action pending resolution of the Oklahoma Action under the first-to-file rule. *See Miller Mendel Inc. v. Alaska State Troopers*, No. 3:21-cv-0129-HRH, 2021 WL 3698377, at *6 (D. Alaska Aug. 19, 2021).

On December 2, 2021, MMI filed a complaint for infringement of the '188 Patent against Guardian's customers, the City of Anna, Texas, and the Anna (TX) Police Department (collectively, "City of Anna").[8] (Compl., ¶ 103.) On April 14, 2022, over a year after the PTAB affirmed its decision, the court in the Texas Action decided that Claims 1, 5, and 15 of the '188 Patent were not patentable under 35 U.S.C. § 101 and *Alice*.[9] (Compl., ¶¶ 91, 103-104, Ex. 14.) MMI appealed that decision to the United States Court of Appeals, Federal Circuit (*Miller Mendel, Inc. v. City of Anna, Texas*, Case No. 22-1753). (Rylander Decl., ¶ 8, Ex. J.)

---

[4] The '098 Patent is valid, but Defendants did not base any patent infringement lawsuit on the '098 Patent.

[5] Guardian funds and manages the defense in all district court suits, with its attorney, Evan Tally, who also handled the *inter partes* review filing at the PTO. In Guardian's petition for *inter partes* review, Guardian identified the City of Oklahoma City as a real party-in-interest.

[6] *Miller Mendel, Inc. v. Washington County, Oregon, et al*., is pending in the United States District Court for the District of Oregon as Case No. 3:21-cv-00168-SB, ("Oregon Action").

[7] *Miller Mendel Inc. v. Alaska State Troopers*, is pending in the United States District Court for the District of Alaska, Case No. 3:21-cv-0129-HRH ("Alaska Action").

[8] *Miller Mendel, Inc. v. City of Anna*, is pending in the United States District Court for the Eastern District of Texas as Case No: 2:21-CV-00445-JRG ("Texas Action").

[9] The 188 Patent has 15 claims. The Texas district court's decision on reconsideration made clear that its ruling only addressed Claims 1, 5, and 15.

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

APPX00104

1     At Guardian's direction, the City of Anna sought its attorney's fees in defending MMI's

2 lawsuit because, in the City's view, MMI "should have known" that the '188 Patent was invalid.

3 The City of Anna claimed that MMI's litigation tactics – suing or threatening to sue Guardian's

4 customers, allegedly misrepresenting the status and events in the litigation, and allegedly using the

5 litigation as a bad-faith anti-competitive tactic – justified a fees order. (Rylander Decl., ¶ 9, Ex K

6 [the City of Anna's motion, ECF No. 43, April 28, 2022, pg. 2].) None of the City's "myriad

7 arguments" persuaded the court that "[MMI] should have known the '188 Patent was directed to

8 an abstract idea." (Rylander Decl., ¶ 9, Ex L [Order, ECF No. 62, June 13, 2022, pp. 6-7].)

9 Although the Texas district court found that the '188 Patent was susceptible to a finding of

10 ineligibility, that vulnerability did not make MMI's "assertion of the same frivolous or objectively

11 unreasonable." (*Id.*) The court found that MMI "was entitled to believe that those claims of the

12 '188 Patent were valid after it was examined and allowed by the [PTO]" and was "free to sue"

13 Guardian or its customers for infringement. (*Id.*)

14     The City of Anna, represented by Guardians' attorneys and indemnified by Guardian,

15 filed cross-appeals with the Federal Circuit that: (1) all claims of the '188 Patent should be

16 invalidated, as opposed to just Claims 1, 5, and 15; and (2) Anna's motion for attorney fees should

17 have been granted as an exceptional case. *Miller Mendel, Inc. v. City of Anna*, 107 F.4th 1345,

18 1349 (Fed. Cir. 2024). On July 18, 2024, the Federal Circuit denied all appeals and cross-appeals.

19 *Id*. In denying Anna's cross-appeal as to attorneys' fees, the Federal Circuit ruled:

20     Under the specific facts of this case, the district court acted within its
discretion in finding that "Miller Mendel was entitled to believe that

21 the '188 Patent was valid after it was examined and allowed by the
USPTO" and thereafter exercise its patent rights.

22     ***

23     Lastly, City argues that the district court abused its discretion in
finding the case not exceptional in light of Miller Mendel's

24 unreasonable litigation conduct, including filing lawsuits to "unduly
pressure existing and potential customers" of the allegedly infringing

25 software GAT and "misrepresent[ing] the status and events in the
various litigations to the industry." Cross-Appellant's Principal &

26 Resp. Br. 61–62, 66; *see also id.* at 63–65, 67–68. We again disagree.
Regarding undue pressure, the district court did not abuse its discretion

27 by concluding that a case was not exceptional when Miller Mendel
asserted its patent rights against other alleged infringers.

28

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

*Id.* at 1356.

MMI, but not Anna, petitioned the Supreme Court of the United States of America for a writ of *certiorari on* October 16, 2024. The Supreme Court denied that petition on November 25, 2024. *Miller Mendel, Inc. v. City of Anna*, 220 L.Ed.2d 231 (U.S. 2024).

After the Supreme Court denied the petition, MMI diligently moved to dismiss its infringement cases in Alaska, Oregon, and Oklahoma. MMI filed motions to voluntarily dismiss the Alaska and Oregon cases that were granted on January 12, 2025. *Miller Mendel, Inc. v. Alaska State Troopers, et al.* D.AK No. 3:21-cv-0129-HRH, Dkt 50; *Miller Mendel, Inc. v. Washington County, Oregon, et al.*, D.OR 3:21-cv-00168-SB, Dkt, 33. In Oklahoma, MMI moved to amend its Complaint to remove the claim for patent infringement, leaving the other claims, including claims against Guardian, intact. *Miller Mendel, Inc. et al. v. City of Oklahoma City et al.,* W.D. OK No. CIV-18-990-JD, Dkt 139 (filed 12/18/2024).

## C.    Guardian Sues Defendants Over Their Patent Application, Enforcement Litigation, and Related Communications.

Convinced that the Texas court's decision "ended all cases filed by [MMI]," Guardian filed this action seeking a duplicate finding of invalidity from this Court. Despite the PTAB decisions, Guardian alleges that the Background Solutions technology was prior art that rendered the '188 Patent invalid and that Defendants defrauded the PTO by failing to disclose it when applying for the patent. (Compl., ¶¶ 33-37, 48-78).[10] Despite the Oklahoma district court's decision, Guardian alleges that the '188 Patent was an abstract, unpatentable idea under 35 U.S.C. § 101 and *Alice*. (*Id.* ¶¶ 79-94.)

Despite the Texas court's denial of attorney fees, Guardian claims Defendants knew or should have known the '188 Patent was invalid and that their litigation, cease-and-desist letters to law enforcement, and public statements were unlawful and tortious. (Compl., ¶¶ 95-127, 160-190.) Guardian's Complaint asserts claims for a declaratory judgment that Defendants' two patents are unenforceable for inequitable conduct (Claims 1-2) and invalid under 35 U.S.C. §§ 101, 102, 103,

---

[10] Guardian also defectively contends that Defendants failed to disclose an offer for sale.

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

APPX00106

and 112 (Claims 3-4); for violation of § 2 of the Sherman Act under the *Walker Process* (Claim 5) and *Handgards* (Claims 6) doctrines; and for liability under state laws for unfair competition (Claim 7), false advertising (Claim 8), tortious interference with contractual relations (Claim 9), tortious interference with prospective economic relations (Claim 10), and trade libel (Claim 11) ("state law claims"). These follow-on claims fail under Rule 12(b)(6) as they rely on issues already decided or no longer presenting a live controversy.

## III.    ARGUMENT

### A.    Standard of Review

Under Federal Rules of Civil Procedure 12(b)(6),[11] a court may dismiss a complaint that lacks a cognizable legal theory or sufficient facts to support one. *UMG Recordings, Inc. v. Shelter Cap. Partners LLC.*, 718 F.3d 1006, 1014 (9th Cir. 2013). In reviewing a motion to dismiss, the court accepts the complaint's allegations as true and considers incorporated documents and matters subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A court may take judicial notice of "matters of public record" when ruling on a motion. *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001). If the complaint's "factual content" does not allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the district court may dismiss it. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Leave to amend may be denied if deficiencies cannot be cured. *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983).

### B.    Guardian Does Not Plead Proper Declaratory Judgment Claims.

#### 1.    The First-to-File Rule Bars Guardian's Declaratory Relief Claims

Guardian's first, second, third, and fourth Claims for Relief request a declaratory judgment that the '098 Patent and the '188 Patent are invalid and unenforceable. (Compl., ¶¶ 128-145.) In asserting these claims, Guardian ignited another round of active litigation over MMI's patents in another federal forum. The first-to-file rule allows this Court to dismiss Guardian's four declaratory relief claims because another case with substantially similar issues and parties is pending in two other district courts. See *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). Three threshold factors determine if the rule applies: (i) "chronology of the

---

[11] Citations to the Federal Rules of Civil Procedure will be proceeded by the shorthand "Rule."

7

BUCHALTER
A PROFESSIONAL CORPORATION
Sacramento

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

APPX00107

1  lawsuits; (ii) similarity of the parties; and (iii) similarity of the issues." *Id.*

2          Here, a double dose of the first-to-file rule applies because Guardian filed this lawsuit

3  after Defendants sued Guardian customers for patent infringement in the Oklahoma and Texas

4  Actions. (Rylander Decl., Exs. F and G.) These actions, which remain pending, share similar

5  parties to this action. (*Id.*) Defendants are the plaintiffs in the Oklahoma and Texas Actions, while

6  Guardian is defending against Guardian's infringement claims directly in the Oklahoma Action

7  and indirectly through its customer in the Texas Action. (Compl., ¶¶ 99, 101, 103.)

8          The first-to-file rule requires only substantial similarity of parties. *Kohn Law Grp., Inc. v.*

9  *Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015). As the court found in the

10  Alaska Action, Defendants' presence, along with Guardian's customers, in all four actions

11  established the similarity of parties even though Guardian is not a party in the Texas Action and

12  Guardian's customers are not parties in Guardian's action. *Miller Mendel Inc.*, 2021 WL 3698377,

13  at *3; *see also Location Servs., LLC v. Dig. Recognition Network, Inc.*, No. 2:18-CV-00893-KJM-

14  AC, 2018 WL 3869169, at *2 (E.D. Cal. Aug. 14, 2018) (first-to-file rule applies even if there are

15  additional, unmatched parties in one or both matters).

16          The third factor requires the court to consider whether the two cases involve similar

17  issues. The issues in both cases need not be identical, only substantially similar. *Kohn Law Grp.*,

18  787 F.3d at 1240. The questions underlying Guardian's four declaratory relief claims – the validity

19  of MMI's '098 and '188 Patents – lie at the heart of the Oklahoma, Oregon, and Texas Actions.[12]

20  In the Texas Action, the City of Anna asserted that claims 1, 5, and 15 of MMI's '188 Patent

21  contained unpatentable subject matter under 35 U.S.C. § 101. (Rylander Decl., ¶ 8, Ex. I [Order,

22  ECF No. 41, April 14, 2022, p. 3].) For its part, the City of Oklahoma fought MMI's patents,

23  citing 35 U.S.C. §§ 101, 102, 103, and 112 and Defendants' alleged inequitable conduct in

24  allegedly failing to disclose prior art to the PTO. (Rylander Decl., ¶ 7, Ex. E [Answer, ECF No.

25  113, November 10, 2020].) Although Guardian has pleaded and asked the Oklahoma Court to

26  _____

27  [12] The '098 Patent is included in those suits through, in Oklahoma, the defamation and declaratory
    claims against Guardian and, in the Texas Action, the motion for attorney's fees which addressed

28  both the '098 Patent and the '188 Patent.

8

BUCHALTER
A PROFESSIONAL CORPORATION
Sacramento

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

APPX00108

adjudicate the enforceability of MMI's '188 Patent, Guardian insists that this Court should wade

into this fight and declare MMI's patent invalid for the same reasons. This Court need not, and

should not, waste its resources adjudicating Guardian's duplicative declaratory relief claims over

MMI's patents that two other federal courts will resolve. *See Miller Mendel Inc.*, 2021 WL

3698377, at *4 (applying the first-to-file rule in a patent infringement matter "where the actions in

question involve the same patent and the same allegedly infringing product.").

Another reason solidifies this Court applying the first-to-file rule to Guardian's four

claims: Guardian's Complaint asserts disguised Rule 13 compulsory counterclaims that Guardian

could bring in the Oklahoma Action. Fed.R.Civ.P. 13(a); see *Futurewei Techs., Inc. v. Acacia

Research Corp.*, 737 F.3d 704, 710 (Fed. Cir. 2013) (existence of Rule 13 counterclaim "bolsters"

application of the first-to-file rule). A "compulsory" counterclaim is a claim that "arise[s] out of

the transaction or occurrence that is the subject matter of the opposing party's claim.". Courts

apply "the logical relationship test for compulsory counterclaims." *Mattel, Inc. v. MGA Entm't,

Inc.*, 705 F.3d 1108, 1110 (9th Cir. 2013). "A logical relationship exists when … the same

operative facts serve as the basis of both [the counterclaims and initial claim] or the aggregate core

of facts upon which the claim rests activates additional legal rights otherwise dormant in the

defendant." *Id.* (quoting *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1195-95 (9th Cir. 2005)).

In the Oklahoma Action, MMI filed and served a Second Amended Complaint asserting

claims against Guardian for defamation and declaratory relief. MMI claimed that Guardian

defamed it by publishing allegations that Defendants committed patent fraud and inequitable

conduct by failing to disclose prior art to the PTO. (Rylander Decl., ¶ 7, Ex. F [Complaint, ECF

No. 104, October 14, 2020, ¶¶ 27-31, 33-39].) MMI also sought a declaratory judgment,

requesting a declaration that no inequitable conduct or patent fraud occurred. (Rylander Decl., ¶ 7,

Ex. F [¶¶ 27-31, 33-39].) Those claims intrinsically concerned Guardian's allegations of patent

fraud and invalidity relating to the '098 and '188 Patents and the supposed Background Solutions

prior art, which pertain to the same aggregate set of operative facts and allegations relied upon by

Guardian in the Complaint in this case. Indeed, Guardian filed an Answer on December 16, 2024,

9

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

APPX00109

asserting defenses of patent fraud and inequitable conduct. *Miller Mendel, Inc. v. Oklahoma City et al.*, W.D. OK Case No. 5:18-cv-00990-JD, Dkt. 137 (Order); *id.*, Dkt No. 138, pp. 9-16 (Guardian Answer). To the extent that any vestige of the Oklahoma Action remains, those claims are pending transfer to this Court for ultimate resolution. The duplicative claims alleged by Guardian's later-filed Complaint here are unnecessary and redundant.

### 2. Guardian Faces No Immediate Threat of Patent Enforcement Litigation from Defendants That Warrants a Declaratory Judgment.

Guardian faces no threat of patent enforcement. MMI has never sued anyone on the '098 Patent,[13] and after the Supreme Court's ruling, MMI diligently moved to dismiss and has withdrawn its patent infringement claims based on the '188 Patent. In short, Guardian's four claims for declaratory relief also cannot survive because Guardian has not sufficiently grounded them in any Article III case or controversy.

The Declaratory Judgment Act permits courts to declare rights and legal relations in an actual case or controversy within their jurisdiction. 28 U.S.C. § 2201. However, it "does not confer" jurisdiction; it merely provides a remedy when jurisdiction exists from another source. *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 879 (Fed. Cir. 2008). Declaratory relief is limited by Article III, restricting judicial power to "Cases or Controversies." *Id.* Courts assess whether a "substantial controversy" exists between parties with adverse legal interests "of sufficient immediacy and reality" to warrant relief. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 (2007). A "bedrock rule" requires a "*real* and *immediate* injury or threat of future injury that is *caused by the defendants*—an objective standard that cannot be met by a purely subjective or speculative fear of future harm." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008) (emphasis in original). The mere existence of a patent does not establish declaratory judgment jurisdiction. *Id.*

### a. The '098 Patent

Guardian improperly invokes declaratory judgment jurisdiction over the '098 Patent

---

[13] Guardian by omission admits it fears no enforcement of the '098 Patent. When Guardian filed a Petition for *Inter Partes* Review with the PTO PTAB on behalf of itself and its party in privity Oklahoma City, it only challenged the '188 Patent, not the '098 Patent.

10

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

APPX00110

despite the absence of an "actual" or "imminent" controversy. The Complaint concedes that MMI's only action—sending a cease-and-desist letter in 2017—occurred nearly eight (8) years ago. (Compl., ¶¶ 95-97.) Guardian does not and cannot allege that MMI has since sued or threatened enforcement against its customers. Without an imminent threat, no case or controversy exists, and jurisdiction is lacking.

### b.    The '188 Patent

Declaratory judgment jurisdiction over the '188 Patent is even less plausible. In the Texas Action, Guardian, through the City of Anna, argued in its flawed motion for attorney's fees that Defendants "refused" to sue Guardian for infringement. (Rylander Decl., ¶ 9, Ex. K [Motion, 7-8].) Meanwhile, in the Oklahoma Action, Defendants sought leave to assert an infringement claim against Guardian, which the court denied on October 7, 2020. (Rylander Decl., ¶ 7, Ex. E [Order, ECF No. 103, Oct. 7, 2020].) In the intervening nearly five (5) years, Defendants have taken no further action to assert infringement against Guardian.

Moreover, after the Supreme Court denied the petition, MMI diligently moved to dismiss its infringement cases in Alaska, Oregon, and Oklahoma. The Alaska and Oregon cases were dismissed on January 12, 2025. *Miller Mendel, Inc. v. Alaska State Troopers, et al.* D.AK No. 3:21-cv-0129-HRH, Dkt 50; *Miller Mendel, Inc. v. Washington County, Oregon, et al.*, D.OR 3:21-cv-00168-SB, Dkt, 33. In Oklahoma, MMI moved to amend its Complaint to remove the claim for patent infringement, leaving the other claims, including claims against Guardian, intact. *Miller Mendel, Inc. et al. v. City of Oklahoma City et al.,* W.D. OK No. CIV-18-990-JD, Dkt 139 (filed 12/18/2024).

Nowhere in Guardian's Complaint does it point to any evidence showing, let alone suggesting, that Defendants are getting ready to sue Guardian directly for patent infringement over the '188 Patent. With no immediate threat, the Court should decline to exercise jurisdiction.

11

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

APPX00111

**C.** **Guardian Does Not Plead Proper Sherman Act Antitrust Claims.**

    **1.** **Collateral Estoppel Bars the *Handgards* claim Because the *City of Anna* Court Found that Defendants' Conduct Was Reasonable and in Good Faith.**

Guardian's sixth claim asserts that Defendants violated Section 2 of the Sherman Act under the "sham litigation" theory approved in *Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282 (9th Cir. 1984). To establish a *Handgards* claim, a plaintiff must show that (1) the defendant pursued a patent infringement claim that was "objectively baseless" in that "no reasonable litigant could have realistically expected success on the merits"; and (2) the defendant's "subjective motive in asserting the claim was an attempt to interfere directly with [plaintiff's] business relations." *Pro. Real Estate Invs., Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60-61 (1993).

Both prongs of the *Handgards* elements fall under the collateral estoppel (issue preclusion) shield, based on the attorney fees decision in the Texas Action. Issue preclusion applies when (1) "the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated"; (2) "the first proceeding ended with a final judgment on the merits"; and (3) "the party against whom [issue preclusion] was a party or in privity with a party at the first proceeding." *Garity v. APWU National Labor Organization*, 828 F.3d 848, 858, n.8 (9th Cir. 2016) (citation omitted). The Texas district court's decision denying the City of Anna's attorney's fees motion meets both elements.

In the Texas Action, the district court considered the issues Guardian raised in this case. The court found that MMI was "entitled to believe" the patent was valid and to sue Guardian or its customers for infringement and that its conduct "did not rise to the level of unreasonable or vexatious." (Rylander Decl., ¶ 9, Ex. L [Order p. 12].) The decision resulted in a final judgment. *See Alzheimer's Inst. of America v. Eli Lilly & Company*, 128 F. Supp. 3d 1249, 1255 (N.D. Cal. 2015) (collateral estoppel applies to issues decided in a district court order on a party's motion for attorney's fees). Moreover, after the Supreme Court's decision November 2024, that decision is final and conclusive.

While Guardian was not formally a party in the Texas Action, it was in privity with the

12

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

APPX00112

City of Anna.[14] Under California law, a nonparty is in privity with a party when the nonparty "has a proprietary or financial interest in and controls the conduct of a lawsuit." *Reyes v. Kenosian & Miele, LLP*, 619 F. Supp. 2d 796, 809 (N.D. Cal. 2008). Guardian's strong financial stake in and control over the Texas Action confirms its privity with the City of Anna. As Guardian acknowledges, it must indemnify the City of Anna for litigation arising over the City's use of Guardian's technology, and it has funded the City's defense in the Texas Action. (Compl., ¶ 103.) Guardian's counsel defended the City of Anna in the Texas Action (and other defendants in MMI's pending patent infringement cases). Guardian also confirmed that it controlled the City of Anna's defense: it boasted that "*Guardian*, through its indemnitee City of Anna … moved for judgment on the pleadings," which led to the dismissal. (Compl., ¶ 104) (emphasis added). Guardian was *de facto* a party to the Texas Action and at least in privity for collateral estoppel purposes. Collateral estoppel bars Guardian's sixth claim.

**2.     Guardian's *Walker Process* Claim Is Barred Under Collateral Estoppel and Does Not Allege the Required Elements with Particularity.**

Guardian's fifth claim raises another misguided Section 2 antitrust claim against Defendants under the theory approved in *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172 (1965). For this claim, Guardian must show that the Defendants committed fraud on the PTO in applying for and obtaining a patent and then using the patent to obtain or maintain a monopoly. *Id.* at 177. Besides showing that Defendants committed material and intentional fraud, Guardian must establish all the other elements of a Sherman Act Section 2 claim. *Dippin Dots, Inc. v. Mosey*, 476 F.3d 1337, 1346 (Fed. Cir. 2007).

Collateral estoppel bars Guardian's *Walker Process* claim based on the Texas court's finding that MMI acted reasonably and in good faith in enforcing its patent. (Rylander Decl., ¶ 9, Ex. L, [Order, p.12].) The Texas district court rejected Guardian's claim that Defendants knew or "should have known" that the patents were invalid and found that Defendants acted reasonably.

---

[14] City of Anna stands in the same position to Guardian as Oklahoma City—the same attorneys represent both, attorneys paid for by Guardian, and Guardian indemnifies both. Notably, when Guardian filed a Petition for *Inter Partes* Review of the '188 Patent, it listed as "real parties interest" both itself and Oklahoma City—clear admission of its privity.

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

(*Id.*) Guardian, which admitted that it controlled the City of Anna's defense in the Texas Action, is in privity with the City and bound to the Texas district court's ruling.

Even if not barred, the *Walker Process* claim would fail because Guardian has not alleged enough supporting facts showing that Defendants intended to defraud the PTO. Like any fraud theory, a *Walker Process* plaintiff must satisfy Rule 9(b)'s heightened pleading requirements. *Exergen Corp. v. Wal-Mart Stores, Inc*., 575 F.3d 1312, 1326 (Fed. Cir. 2009). Thus, the plaintiff must identify "the specific who, what, when, where, and how" of the fraud on the PTO, with "sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Id.* at 1327. Also, a *Walker Process* plaintiff must allege facts plausibly demonstrating a "clear intent to deceive the [patent] examiner." *Nobelpharma AB v. Implant Innovations, Inc*., 141 F.3d 1059, 1068 (Fed. Cir. 1998).

Here, Guardian pleads conclusions rather than particularized facts. Guardian asks this Court to infer Defendants' fraudulent intent from their failure to disclose "known prior art" to the PTO, specifically: (1) MMI's alleged "prior sale" of or "offer to sell" its invention; and (2) software allegedly produced by a company called Background Solutions before Defendants' patent application. (Compl., ¶¶ 34, 43, 51-52, 55, 58, 60, 63, 66-68, 73-78.) The Federal Circuit and other courts have uniformly refused to find fraudulent intent in a patent holder's failure to disclose known information to the PTO. *Therasene, Inc. v. Becton, Dickinson & Co*., 649 F.3d 1276, 1285 (Fed. Cir. 2011); *iLife Techs. Inc. v. AliphCom*., No. 14-cv-03345-WHO, 2015 WL 890347, at *7 (N.D. Cal. Feb. 19, 2015).

This Court should follow those cases because Guardian fails to plausibly allege Defendants' fraudulent intent. The Complaint lacks particularized facts regarding MMI's alleged "prior sales," citing only two vague references. As for the Background Solutions software, Guardian offers no facts supporting an inference that Defendants knew it constituted prior art. The PTAB has already rejected Guardian's claim that Background Solutions was prior art three times. If the PTAB did not recognize it as such, it is unreasonable to infer Defendants knew and concealed it with intent to defraud.

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

APPX00114

Further, Guardian does not sufficiently allege that Defendants made misstatements or misrepresentations to the PTO rather than simply failing to disclose information. "A mere failure to cite a reference to the PTO will not suffice" to establish the intent required for a *Walker Process* claim. *Dippin Dots,* 476 F.3d at 1347. For a court to find an *omission* fraudulent, "there must be evidence of intent separable from the simple fact of the omission." *Id.* Guardian has not plausibly alleged any facts for this Court to infer that Defendants clearly intended to deceive the PTO. Although Guardian contends that Defendants made "false statements" to the PTO, it does not describe any such statements with particularity.[15] (Compl., ¶¶ 12, 34-37.) What are the false statements? Guardian's conclusory allegations do not satisfy Rule 9(b)'s heightened pleading requirement for *Walker Process* clams.

### 3. Guardian Does Not Properly Allege that Miller Mendel Has Monopoly Power.

Even if collateral estoppel or Rule 9(b) do not bar Guardian's Sherman Act claims, they still would fail because Guardian's complaint misses other necessary Sherman Act elements. Both *Handgards* and *Walker Process* claims are based on Section Two of the Sherman Act, and both require that all elements of a Section Two claim be pled and proven. *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 993 n.13 (1979) (quoting *Walker Process,* 283 U.S. at 177-178); *Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 1293-1297 (9th Cir. 1984). Among those elements is the defendant's possession of monopoly power within the relevant market. *Federal Trade Commission v. Qualcomm Inc.*, 969 F.3d 974, 990 (9th Cir. 2020). This, in turn, requires an analysis of the defendant's market share and whether it is large enough that the company can influence marketwide output and thus increase prices. *Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1438 (9th Cir. 1995). A plaintiff must also show that new or existing competitors cannot enter the market or expand their output to challenge the defendant's high prices. *Id.* at 1439.

---

[15] The closest Guardian comes is a discussion of Tyler Miller's statement to the PTO that an earlier patent (by "Parikh") was "silent" as to how certain information was entered into an "e-dossier"; Guardian claims that Mr. Miller knew that the Background Solutions software covered that feature. (Compl., ¶¶ 65-66.) But Guardian does not and cannot allege that what Mr. Miller actually said was false.

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

APPX00115

Allegations of market power must be sufficiently detailed to "raise a right to relief above the speculative level." *Rick-Mik Enters, Inc. v. Equilon Enters,* 532 F.3d 963, 973 (9th Cir. 2008).

Despite its 127-paragraph barrage, Guardian's Complaint does not allege ***any*** facts showing Miller Mendel has or had monopoly power in the U.S. market for "public safety background investigation management software." "More" is not necessarily "more." The Complaint fails to specify Miller Mendel's market share, let alone suggest it was large enough to sustain super-competitive pricing. It also provides no details on why competitors cannot enter or expand the market. Without these essential elements, Guardian's Sherman Act Section Two claim fails.

### D.    Guardian Does Not Plead Proper State Law Claims.

Guardian's state law claims improperly challenge Defendants' privileged actions in obtaining and enforcing valid patents. Using a flawed shotgun pleading approach, its 43-page Complaint recycles 127 paragraphs of general allegations—including jurisdiction, venue, parties, and alleged misconduct—without specifying how they support each claim. As outlined below, the state law claims rest on three broad categories of alleged misconduct.

| Categories | Incorporation into Guardian's Claims |
|---|---|
| Defendants' communications with the PTO in pursuing the '098 Patent and '188 Patent and allegedly failing to disclose the noncumulative Background Solutions software.[16] (Compl. ¶¶ 12, 33-37, 43, and 51-78.) | Incorporated into Guardian's claims. (Compl., ¶ 160 ("Guardian incorporates and realleges paragraphs 1-159 herein by reference" to claim 7 for California Unfair Competition), ¶ 167 (similar incorporation paragraph in Claim 8 for California False Advertising), ¶ 173 (similar incorporation paragraph in Claim 9 for Tortious Interference with Contract), ¶ 179 (similar incorporation paragraph in Claim 10 for Tortious Interference with Prospective Business Advantage), ¶ 185 (similar incorporation paragraph in Claim 11 for trade Libel)). |

---

[16] Guardian alleges Defendants failed to disclose an offer to sell their invention over a year before filing their patent application and made "numerous false statements." (Compl., ¶ 34.) However, its claims primarily rely on the alleged failure to disclose the purportedly noncumulative Background Solutions software. (Compl., ¶¶ 51-78.)

16

BUCHALTER
A PROFESSIONAL CORPORATION
Sacramento

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

APPX00116

| Categories | Incorporation into Guardian's Claims |
|---|---|
| Defendants' communications to Guardian and its actual and prospective law enforcement agency customers about Guardian's patent infringement and the status of existing patent infringement litigation or potential similar litigation. (Compl., ¶¶ 15, 16, 32, 38, 44, 95, 97, 98, 105, 107, 109, 111-114, 116, 119, 121, and 123.) | Same incorporation. |
| Defendants' patent infringement litigation against Guardian's law enforcement agency customers. (Compl., ¶¶ 2, 13, 15, 16, 31, 32, 40, 41, 42, 43, 99, 100, 101, 102, and 103.) | Same incorporation. |

Each of the three core theories underlying Guardian's state law claims, distilled from Guardian's Complaint, encounter multiple barriers to relief.

**1. California's Litigation Privilege Bars Guardian's State Law Claims Because They Are Based On Defendants' Statements Made in Litigation.**

California Civil Code section 47's "absolute litigation privilege" bars Guardian's state law claims. The litigation privilege applies to any "publication or broadcast" made in any judicial proceeding, whether inside or outside the courtroom. *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006). It covers communication: (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that has some connection or logical relation to the action. *Id*. at 212.

California courts interpret the litigation privilege broadly "to achieve [its] purpose in curtailing derivative lawsuits." *Action Apartment Ass'n., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007). The litigation privilege encompasses "communications in preparatory to or in anticipation of the bringing of an action" to "statements made during a trial or other proceedings." *Briggs v. Eden Council of Hope and Opportunity*, 19 Cal. 4th 1106, 1115 (1999). "If the gravamen of the action is communicative," the litigation privilege also covers "noncommunicative acts that are necessarily related to the communicative conduct." *Rusheen*, 37 Cal. 4th at 1065. When the litigation privilege applies, it "is absolute… regardless whether the communication was made with

17

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

APPX00117

1   malice or the intent to harm." *Wise v. Thrifty Payless, Inc.*, 83 Cal. App. 4th 1296, 1302 (2000). It

2   "immunizes defendants from virtually any tort liability (including claims for fraud) ...." *Olsen v.*

3   *Harbinson*, 191 Cal. App. 4th 325, 333 (2010). It also extends to statutory claims for unfair

4   competition violations and false advertising claims. *Rubin v. Green*, 4 Cal. 4th 1187, 1194-95,

5   1202-04 (1993) (litigation privilege barred a claim for violation of California's unfair competition

6   laws and any related "business interference" claims); *Sliding Door Co. v. KLS Doors, LLC*, Case

7   No. EDCV 13-00196, 2013 WL 2090298, at *8 (C.D. Cal. May 1, 2013) (same for false

8   advertising claim). California's litigation privilege, rooted in federal constitutional law, aligns with

9   the *Noerr-Pennington* doctrine, which protects the right to "petition" courts and government

10  agencies under the First Amendment. *People v. Pacific Lumber,* 158 Cal. App. 4th 950, 957

11  (2008). These statutory and constitutional protections bar Guardian's state law claims, all of which

12  stem from protected speech and petitioning activity.

13         Guardian's state law claims seek to hold Defendants liable for three types of

14  communicative or otherwise privileged petition activity. First, Guardian challenges Defendants'

15  allegedly fraudulent conduct in communicating information to the PTO, while pursuing the '098

16  and '188 Patents. (Compl., ¶¶ 12, 33-37, 43, 51-78.) Defendants' communications with the PTO,

17  whether fraudulent or not, "fall squarely within the scope of the litigation privilege." *See People ex*

18  *rel. Gallegos v. Pacific Lumber Co*., 158 Cal. App.4th at 958-59 (finding litigation privilege barred

19  the plaintiff's UCL action "premised on Pacific Lumber's allegedly fraudulent conduct" in

20  submitting a false report to the California Department of Forestry and Fire Protection). Second,

21  Guardian blames Defendants for threatening to sue Guardian's actual and prospective customers

22  for using Guardian's infringing software. (Compl., ¶¶ 15, 16, 32, 38, 44, 95, 97, 98, 105, 107, 109,

23  111-114, 116, 119, 121, 123.) Guardian alleges that Defendants issued threats while actively

24  litigating four patent infringement cases against its customers. California courts have long held

25  that the litigation privilege extends to *prelitigation* communications made to third parties with an

26  interest in anticipated or pending litigation. *See Lerette v. Dean Witter Org., Inc.*, 60 Cal. App. 3d

27  573,577 (1976); *Rubin*, 4 Cal. 4th at 1194-95. Guardian's actual and prospective customers had a

28

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

substantial interest in Defendants' four patent infringement lawsuits against Guardian's customers concerning MMI's '188 Patent. *See Ingrid & Isabel, LLC v. Baby Be Mine, LLC*, 70 F. Supp. 3d 1105, 1141 (N.D. Cal. 2014). Guardian also challenges Defendants' communicative acts in filing these lawsuits. (Compl., ¶¶ 2, 13, 15, 16, 31, 32, 40-43, 99-103.) However, such lawsuits are "by nature" protected communicative acts. *Action Apartment Ass'n, Inc.,* 41 Cal. 4th at 1249. The litigation privilege bars Guardian's state law claims based on these acts.

### 2.    The *Noerr-Pennington* Doctrine and the Petition Clause Bars Guardian's State Law Claims Because They Are Based on Defendants' Protected Petitioning Activity.

Guardian's state law claims attacking Defendants' protected activity succumb to another bar – the *Noerr Pennington* doctrine and the Petition Clause under the First Amendment, which shield Defendants from liability for "petitioning any department of the government for redress." *Sosa v. DIRECTV, Inc*., 437 F.3d 923, 929 (9th Cir. 2006). Courts have consistently upheld this protection: *Gable v. Lewis*, 201 F.3d 769, 771 (6th Cir. 2000) (holding that complaints to a police department constitute protected petitioning activity); *Brownsville Golden Age Nursing Home, Inc*. *v. Wells,* 839 F.2d 155 (3d Cir. 1988) (applying Petition Clause immunity to notifications to government agencies and public advocacy regarding legal violations*); KLX Energy Servs., LLC v. Magnesium Mach., LLC*, 521 F. Supp. 3d 1124 (W.D. Okla. 2021) (barring counterclaims based on protected speech under Petition Clause immunity).

Rooted in the First Amendment, the *Noerr-Pennington* doctrine immunizes defendants from state law tort claims for advocacy before all three branches of government. *Theme Promotions, Inc. v. News America Mktg., FSI*, 546 F.3d 991, 1006-08 (9th Cir. 2008). The Ninth Circuit recognizes this protection extends from pre-suit demand letters to the filing of lawsuits. *Id.* at 1007 (citing *Sosa*, 437 F.3d at 936-38). This broad application of *Noerr-Pennington* bars all of Guardian's state law claims.

Guardian alleges that Defendants misled the PTO, threatened patent enforcement litigation against Guardian's government customers, and pursued such litigation in court in several cases. MMI's patent applications to the PTO and patent enforcement litigation are quintessential actions

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

APPX00119

of petitioning government bodies. *See James R. Glidewell Dental Ceramics v. Keating Dental Arts, Inc.*, Case No. SACV 11-1309-DOC, 2013 WL 655314, at *13 (C.D. Cal. Feb. 21, 2013) (*Noerr-Pennington* doctrine "precludes liability for the act of filing a lawsuit."). Defendants' alleged communications threatening Guardian's actual or prospective customers with patent infringement litigation are also protected activity. *Sliding Door Co. v. KLS Doors, LLC*, Case No. EVCV 13-00196, 2013 WL 2090298, at *6 (C.D. Cal. May 1, 2013).

Guardian appears to rely on the "sham litigation" exception to the *Noerr-Pennington* doctrine— but without success. This narrow exception applies only when a party uses "the governmental process –as opposed to the *outcome* of that process – as an anti-competitive weapon." *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 280 (1991) (emphasis in original). It only applies when (1) the litigation is "objectively baseless" in that "no reasonable litigant could reasonably expect success on the merits"; and (2) the litigation is brought in bad faith to harass and disadvantage the defendant. *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 57, 60-61 (1993). Because the *Noerr-Pennington* doctrine "overprotects baseless petitions," courts require plaintiffs to show "the specific activities which bring the defendant's conduct" into one of these exceptions. *Nat. Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991); *Rubin*, 4 Cal.4th at 1202-04 (the "absolute" nature of the privilege extends to any lawsuit on any legal theory, with the sole exception of a valid claim for malicious prosecution after the prior lawsuit has been fully and finally adjudicated).

Collateral estoppel bars Guardian's claims that the pursuit of Defendants' patent enforcement was objectively unreasonable and subjectively in bad faith. For the sake of Guardian's state law claims, it must show that Defendants pursued their patent enforcement litigation and related communications *knowing* that their patents were *invalid* and the litigation was baseless. As discussed above, the Texas district court found that Defendants acted *reasonably and appropriately* in their patent enforcement campaign; this decision binds Guardian, the City of Anna's party in privity. Guardian cannot invoke the "sham" litigation exception.

Even if that exception could apply here, Guardian fails to plausibly allege *facts* supporting

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

1   its application. Guardian alleges Defendants' patent enforcement efforts "were wholly predicated

2   upon the … fraudulently-obtained patent[s]" and thus objectively baseless. (Compl., ¶ 13.) To

3   support this contention, Guardian relies heavily on the Texas court's decision – issued four years

4   after Defendants began enforcing MMI's patent – invalidating three claims in MMI's '188 patent.

5   But Guardian cannot take this decision and claim that it exposes Defendants' patent enforcement

6   actions as objectively baseless. As the Texas district court remarked, "[MMI] was entitled to

7   believe that the '188 Patent was valid" and "sue GAT's customers [] for infringement …."

8   (Rylander Decl., ¶ 9, Ex. L [Order, p. 12].) That ends the discussion, any *potentially viable* claim

9   is absolutely privileged from a subsequent "derivative" lawsuit. *Rubin*, 4 Cal.4th at 1199-1202. By

10  definition, seeking enforcement of its patent rights was neither "malicious" nor a "sham."

11          Guardian's timeline of events, and the favorable decisions supporting Defendants' action

12  during this timeline, refute Guardian's contention. According to Guardian, from October 2018

13  through May 2022, Defendants filed four infringement actions against Guardian's customers and

14  threatened countless other Guardian customers with infringement actions. (Compl., ¶¶ 99-120.)

15  Yet Guardian ignores that during these four years when Defendants pursued these infringement

16  actions, Defendants could presume that the patents were valid. *See* 35 U.S.C. § 282(a). Buttressing

17  this presumption, Guardian and its customers pressed their patent-invalidity theories in two

18  separate forums during these four years – and lost. The Texas district court's decision quoted

19  above (which Guardian emphasizes for other purposes) underscores that Defendants' patent-

20  infringement efforts were not objectively baseless. (Rylander Decl., ¶ 9, Ex. L [Order, p. 12].)

21  Thus, when Defendants sought to enforce Miller Mendel's patents against Guardian and its

22  customers, three neutral authorities agreed that Defendants' position was at least objectively

23  reasonable. Guardian has provided nothing – no allegations anywhere in its complaint – to show

24  that Defendants' patent-infringement position was objectively baseless. Thus, the *Noerr-*

25  *Pennington* doctrine bars Guardian's state law claims.

26

27

28

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

**3.    Federal Patent Law Preempts Guardian's State Law Claims Because Defendants' Patent-Enforcement Actions Were Privileged and Made in Good Faith.**

The Patent Act's special patent privilege also bars Guardian's state law claims. This Act gives a patentee the right to inform others of its patent rights and to enforce its patents. *GP Indus., Inc. v. Eran Indus., Inc.*, 500 F.3d 1369, 1374 (Fed. Cir. 2007 ) (citing 35 U.S.C. § 287.) As the Supreme Court said over a century ago, "[p]atents would be of little value if infringers of them could not be notified of the consequences of infringement, or proceeded against in the courts. Such action, considered by itself, cannot be said to be illegal." *Virtue v. Creamery Package Mfg. Co.*, 227 U.S. 8, 37–38 (1913). Following the Supreme Court's pronouncement, the Federal Circuit has long acknowledged that "[a] patentee's statements regarding its patent rights are conditionally privileged under the patent law so that such statements are not actionable unless made in bad faith." *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1347 (Fed. Cir. 1999). Guardian's state law claims seek to hold Defendants liable for conduct – notifying Guardian's customers of the '098 and the '188 Patents and warning of infringement litigation – immunized federal patent law.

Guardian acknowledges the preemption risk for its state law claims, but pleads little factual allegations to overcome preemption. Sharing the same factual premise, Guardian's state law claims contend that MMI's '098 and '188 Patents are invalid and that Defendants knowingly promoted these allegedly invalid patents to compete with Guardian's business unfairly. (Compl., ¶¶ 2-3.) Despite Guardian's repeated broadsides about Defendants' allegedly fraudulent patent portfolio, Guardian predicates its patent invalidity theory on one claim: that the Background Solutions software rendered the '098 and '188 Patents invalid. (Compl., ¶¶ 73, 76.) Guardian speculates that Defendants' "enforcement activities and threatening statements" were objectively baseless because Defendants could not reasonably believe that MMI had valid patents. (Compl., ¶ 13.) Two courts, however, have already rejected this nonsensical speculation.

**4.    Guardian Fails to Plead a Viable Unfair Competition Claim Under Business & Professions Code Section 17200.**

Guardian's seventh claim alleges that Defendants violated California's Unfair Competition Law ("UCL"), Business & Professions Code section 17200. The UCL prohibits

22

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

APPX00122

unfair competition, which includes any "unlawful, unfair, or fraudulent business practice or act." *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 320 (2011). Guardian's UCL fails to "state with reasonable particularity" the facts supporting the statutory elements of a UCL claim. *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (1993).

Relying on all 159 preceding paragraphs in its Complaint, Guardian posits that "Defendants have engaged in unfair competition" and committed "unfair or fraudulent business actions and unfair, deceptive, untrue, or misleading advertising …." (Compl., ¶¶ 161-162.) Nowhere in this laundry list of allegations does Guardian "state with reasonable particularity" Defendants' precise unfair competition establishing a UCL violation. Nor can Guardian make this showing. In direct competition cases, a UCL plaintiff must show "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'n, Inc. v Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). Guardian, one of Defendants' competitors, theorizes that Defendants duped the PTO into issuing the patents and enforced this fraudulent patent portfolio to stifle competition within the market. But again, this theory hinges on Guardian's contention that the Background Solutions software was material prior art, and Defendants knew it. The PTAB and two federal courts have rejected this argument.

Guardian also cannot show that Defendants engaged in "fraudulent" business practices. Guardian predicates this theory on Defendants' supposed failure to disclose the prior art to the PTO. But this theory fails because "claims that are predicated on no more than bad-faith misconduct or fraud before the PTO … are preempted by federal patent law." *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 204 F.3d 1368, 1382 (Fed. Cir. 2000). Even if federal patent law did not preempt Guardian's UCL claim, it still fails because Guardian has not pled a fraudulent business practice with reasonable particularity. Guardian's claimed fraudulent business practice act fails for a third reason too: Defendants' supposed concealment of information from the PTO could not have been likely to deceive "members of the public." *See Comm. on*

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

APPX00123

1   *Children's Television v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (1983).

2       Besides lacking a predicate UCL violation, Guardian's UCL claim seeks three

3   unauthorized forms of relief: damages, civil penalties, and injunctive relief to enjoin a legitimate

4   business practice. (Compl., ¶¶ 163-166.) Private plaintiffs like Guardian cannot seek damages or

5   civil penalties for unfair business practices under the UCL. *Brown v. Allstate Ins. Co*., 17 F. Supp.

6   2d 1134, 1140 (S.D. Cal. 1998). Although the UCL generally permits injunctive relief, Guardian is

7   ineligible for that relief because it fails to allege "an actual and imminent" threat of continuing

8   unfair business practice. *See Campion v. Old Republic Home Prot. Co., Inc*., 861 F. Supp. 2d

9   1139, 1150 (S.D. Cal. 2012). Guardian's UCL claim should be dismissed.

10           **5.       Guardian Fails to Plead a Viable False Advertising Claim.**

11       Guardian's eighth claim against Defendants for false advertising fares no better. Business

12   & Professions Code section 17500 prohibits "untrue or misleading" statements made "with the

13   intent directly or indirectly to dispose of" property or services. Guardian's false advertising claim

14   fails for two reasons.

15       First, Guardian has not identified any specific statement from Defendants that qualified as

16   an advertisement and injured Guardian. Guardian cites one specific statement, a May 3, 2022 press

17   release stating that MMI's '188 Patent remains in "full effect" after the Texas court's decision,

18   which Defendants allegedly sent to one of Guardian's governmental customers. (Compl., ¶¶ 44,

19   120.) Defendants' statement explains MMI's appeal from the Texas court's decision and

20   Defendants' view on how that statement impacted '188 Patent's continued validity. (Compl., ¶

21   120, Ex. 31.) This statement, however, was not an "advertisement" regarding the "disposition or

22   real or personal property or the performance of services." *See Chip-Mender, Inc. v. Sherwin-

23   Williams Co*., Case No. C 05-3465, 2006 WL 13058, at *11 (N.D. Cal. Jan. 3, 2006).

24       Second, Guardian fails to allege causation of harm. A plaintiff asserting a false advertising

25   claim must allege an injury caused by the false advertising. *Kwikset Corp. v. Super. Ct*., 51 Cal.

26   4th 310, 322 (2011). Guardian does not allege that Defendants' press release damaged Guardian's

27   relationship with this governmental customer or any other customers or harmed Guardian.

28

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

### 6.    Guardian Fails to Plead Viable Tortious Interference Claims.

Guardian's eighth and ninth claims merely repackage its grievances over Defendants' patent enforcement as claims for tortious interference with contract **and** tortious interference with prospective business advantage. To establish tortious interference with contract, Guardian must show Defendants intentionally induced a breach or disruption of a known contract, causing damages. *Pacific Gas & Elec. v. Bear Stearns & Co.,* 50 Cal. 3d 1118, 1126 (1990). For tortious interference with prospective business advantage, Guardian must show that Defendants' conduct disrupted an existing economic relationship by independently wrongful conduct.[17] *Ixchel Pharma, LLC v. Biogen, Inc.,* 9 Cal. 5th 1130, 1142 (2020). Guardian fails to plausibly allege either claim.

After developing eSOPH and securing patents, Defendants took lawful steps to protect their invention from Guardian's infringement. Yet, Guardian claims these enforcement efforts interfered with its contracts and disrupted future business opportunities. (Compl., ¶¶ 174, 180.) However, Defendants had a legitimate business purpose—protecting their patents—which defeats Guardian's tortious interference claims. California law immunizes a defendant from liability for interference with a contract or prospective business advantage if the defendant had a legitimate business purpose for its actions. *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1192-93 (9th Cir. 2022). Courts have routinely dismissed contractual interference claims when a defendant's lawful enforcement of its rights indirectly disrupts a plaintiff's contracts. *SIC Metals, Inc. v. Hyundai Steel Co.*, 442 F. Supp. 3d 1251, 1258 (C.D. Cal. 2020). This protection extends to patent enforcement actions. *Pactiv, LLC v. Multisorb Tech., Inc.*, 63 F. Supp. 3d 832, 842 (N.D. Ill. 2014); *Baxa Corp. v. McGaw, Inc.*, 996 F. Supp. 1044, 1054 (D. Colo. 1997).

As in *Baca* and *Pactiv*, Guardian cannot hold Defendants liable for exercising their "right to … enforce [MMI's] patent[s] … includ[ing] threatening alleged infringers with suit." *Concrete Unlimited, Inc. v. Cementcraft, Inc.*, 776 F.2d 1537, 1538 (Fed. Cir. 1985). Defendants had a legitimate business purpose to protect their patents and engaged in no independently wrongful acts

---

[17] Moreover, showing "interference" would be almost legally impossible given that the "customers" allegedly interfered with a government agencies governed by statutory procurement laws.

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

1   by protecting MMI's patents through actual and threatened litigation. Guardian's tortious

2   interference claims should be dismissed.

3                   **7.        Guardian Fails to Plead a Viable Trade Libel Claim.**

4           Guardian's eleventh and final claim for trade libel also fails on the particularity element.

5   For its trade libel claim, Guardian must show Defendants made a disparaging statement of facts

6   about the quality of Guardian's product that caused Guardian to suffer special damages. *See*

7   *Microtec Rsch., Inc. v. Nationwide Mut. Ins. Co.*, 40 F.3d 968, 972-73 (9th Cir. 1994). Guardian's

8   complaint satisfies none of these elements.

9           First, Guardian cannot hold Defendants liable for making nonactionable statements of

10  opinion. *See ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1010-11 (2001) (statements

11  of opinion do not support a trade libel claim). Guardian identifies three purportedly disparaging

12  statements: (1) Defendants said Guardian's software infringed on MMI's patents; (2) Defendants

13  misled Guardian's customers about the status of Defendants' patent infringement litigation; and

14  (3) Defendants lied to Guardian's customers about "the integrity of applicant data collected and

15  stored in the Guardian platform." (Compl., ¶¶ 187-188.) The first two statements reflect

16  Defendants' *opinions* on patent law and their interpretation of ongoing litigation. Neither

17  statement of opinion qualifies as disparaging trade libel. *See Amaretto Ranch Breedables, LLC v.*

18  *Ozimals, Inc.*, Case No. CV 10-5696, 2013 WL 3460707, at *5-6 (N.D. Cal. July 9, 2013). The

19  third statement, which Guardian twisted from Tyler Miller's open letter (attached as Ex. 31 to

20  Guardian's complaint), also did not derogate Guardian's software. The letter simply conveys his

21  *opinion* that Guardian's contracts may violate privacy regulations and its software may infringe

22  MMI's patents. (Compl., ¶¶ 118-119, Ex. 30.) His "opinions based on his observations and

23  understanding of rules and regulations" did not derogate the quality of Guardian's software do not

24  amount to trade libel.

25          Second, Guardian has not alleged facts demonstrating "special damages." Guardian posits

26  that it suffered "actual damages … in an amount to be proven at trial." (Compl., ¶ 190). Guardian

27  does not allege the amount of business it had before and after Defendants made their statements or

28                                                      26

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

APPX00126

the value of its business. Without this context, Guardian's bare allegation that it may prove "the amount of pecuniary loss" at trial "is insufficient for pleading of trade libel." *Code Rebel, LLC, v. Aqua Connect, Inc.*, Case No. CV 13-4539, 2013 WL 5405706, at *5 (C.D. Cal. Sept. 24, 2013).

## E.   GUARDIAN FAILS TO PLEAD WITH REQUIRED PARTICULARITY

Even if this Court does not dismiss the claims contained in the Complaint for the reasons set forth above, this Court should dismiss Guardian's entire Complaint for flunking Rule 9(b)'s heightened pleading requirement. Guardian in a shotgun manner incorporates by reference large swaths of its complaint into reach claim for relief (See, e.g., Comp. 185 ("Guardian incorporates and realleges paragraphs 1-184 herein by reference.")). Central to its claims, Guardian's Complaint pleads two species of inequitable conduct/patent fraud: failure to disclose a prior offer to sell and failure to disclose some art related to the Background Assistant software. (Compl., ¶¶ 34, 43, 51-78). Through its shotgun style of pleading, Guardian bases all of its claims on inequitable conduct/patent fraud.

Federal Circuit precedent applies to pleading with particularity under Rule 9 related to inequitable conduct/patent fraud. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed. Cir. 2009). "[I]nequitable conduct, while a broader concept than fraud, must be pled with particularity" under Rule 9(b). *Id.* at 1326. Such pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exegen Corp.*, 575 F.3d at 1328–29. Further, the pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO. *Id.* at 1327–29; see *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) ("[p]roving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive."); *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290 (2d Cir. 2006) ("because we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

license to base claims of fraud on speculation and conclusory allegations ... **plaintiffs must allege facts that give rise to a strong inference of fraudulent intent**.") (emphasis added).

### 1.    Guardian Does Not Sufficiently Allege Defendant's Prior Offer to Sell.

Guardian makes vague and contradictory allegations regarding Defendants' alleged "offer to sell" their own product before the effective filing date of the '188 Patent. (Compl., ¶¶ 34, 43.) The Complaint provides no details about this "offer." It does not state the date of the offer, to whom it was made, the language used, the means of communication. What little Guardian does say, it contradicts later in the Complaint: paragraph 34 claims the offer was made "more than a year before filing [Miller Mendel's] first patent application," but paragraphs 48 and 49 allege that MMI began marketing its product in 2011, while it filed its first patent application in April 2011.

### 2.    Guardian Does Not Sufficiently Allege Failure to Disclose Third Party Prior Art.

Guardian ambiguously alleges some public use, or printed publication presentation regarding the Background Assistant software is "prior art" which Defendants "[o]n information and belief … became aware and/or obtained access to" and failed to disclose. (Compl., ¶¶ 34, 43, 51-78.) Guardian fails to plead with particularity (a) what is the prior art; (b) what makes it prior art; and (c) when (and what) Defendants learned of the prior art, (d) what makes the prior art "material," and (e) what is the factual basis supporting the "strong" inference that Defendants deliberately intended not to disclose it. Instead, Guardian pleads "on information and belief," but fails to provide a statement of facts supporting its "belief," and Guardian pleads "and/or" in a vague manner. Rule 9(b) pleading cannot be based upon such "information and belief" allegations without a statement of the facts upon which belief is based. *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987).

Guardian also failed to support its speculation that Defendants made a "deliberate decision to withhold a known material reference, which is a "necessary predicate for inferring deceptive intent." *Exergen,* 575 F.3d at 1330–31 (Fed. Cir. 2009). "[O]ne cannot assume that an individual, who generally knew that a reference existed, also knew of the specific material *information* contained in that reference. *Id.* at 1330.

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

1    Guardian fails to allege any facts showing MMI knew, before the issuance of the '188

2    Patent, that any Background Solutions material constituted prior art. At most, Guardian claims

3    MMI became aware of the company's name in August 2012—sixteen months **after** Tyler Mendel

4    filed his priority application in April 2011. [18] (Compl., ¶ 66, Ex. 4 [162-64].) The cited email does

5    not reference any software, product, or publication that was publicly accessible to a person having

6    ordinary skill in the art before the '188 Patent's effective filing date. See *Continental Can Co. USA*

7    *v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991).

8    Moreover, Defendants had no duty to investigate the company or its products. Guardian

9    cannot satisfy Rule 9(b) by speculating that MMI had "knowledge" or "access," because there is

10   no duty to search for prior art, to disclose what "should have been known," or of which a

11   defendant "reasonably should be aware" or "could have been aware." *Bruno Indep. Living Aids,*

12   *Inc. v. Acorn Mobility Servs., Ltd.*, 394 F.3d 1348, 1351 (Fed. Cir. 2005); *Frazier v. Roessel Cine*

13   *Photo Tech, Inc.*, 417 F.3d 1230, 1238 (Fed. Cir. 2005). Guardian was required to plead where,

14   what, when, and how MMI allegedly acquired knowledge of the Background Solutions material,

15   its materiality, and its status as prior art. It has not done so.

16   At most, Guardian, in paragraph 63, vaguely pleads a "presentation" that disclosed some

17   features of an undated product but does not allege defendants attended the presentation, where it

18   occurred, when it happened, who attended, or any other details to show public accessibility to

19   render it prior art. *See In re Klopfenstein*, 380 F.3d 1345, 1348 (Fed. Cir. 2004). Moreover, the

20   "presentation" Guardian pleads is the same insufficient "presentation" Guardian asserted at the

21   PTAB. Indeed, the snapshots in paragraph 63 of the Complaint are ***the same snapshots in***

22   ***Guardian's fatally defective IPR Petition*** for which the PTAB found failed to show any

23   particulars that were publicly available, let alone prior to the priority date. (See Compl., ¶ 63;

24   Rylander Decl., ¶ 10, Ex. M [IPR Petition, pp. 46-47].) The PTAB has a lower burden of proof

25   (more likely than not standard), than this Court (clear and convincing). Yet, Guardian failed to

26   

27   [18] Guardian cites a 2014 email (Compl., ¶ 67, Ex. 5), but it fails to establish prior art. The email
     does not indicate when the referenced product was used, by whom, whether it was publicly
28   accessible, or whether it remains available for review. Nor does it establish MMI ever possessed it.

29

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

plead sufficient particularity even to meet that lower standard, failing to show that the Background Solutions' software constituted prior art in any respect. (*Id.*) The PTO ruled that the Background Solutions software was not prior art, let alone material, prior art. As such, Guardian was required to plead here why Defendants could not rely on that determination and how Defendants could have deliberately intended to mislead the PTO given its conclusion.

Guardian's scienter allegations in paragraphs 51 and 52 fail at the outset. Merely asserting that Defendants "[b]ecame aware and/or obtained access" to alleged prior art is insufficient. *Exergen*, 575 F.3d at 1330 (Fed. Cir. 2009) ("[O]ne cannot assume that an individual, who generally knew that a reference existed, also knew of the specific material information contained in that reference."). Guardian's pleading is flawed. It relies on "information and belief" to assert that Defendants were aware of the prior art and then, based on that same belief, concludes that Defendants intentionally failed to disclose it to deceive the PTO because such disclosure would have rendered all of the claims of the '098 and '188 Patents unpatentable…" (Compl., ¶¶ 51, 75.)This reasoning lacks the necessary factual basis required by Rule 9(b) and does not provide specific details to support the claim of fraudulent intent. Furthermore, this contradicts other parts of Guardian's Complaint, particularly the PTAB's decision, which found that the Background Assistant was not prior art. (Compl., ¶ 119, Ex. 30 [PTAB decision pp. 529, 534].) Therefore, Defendants had no obligation to disclose it.

## IV.   CONCLUSION

For the reasons set forth above, this Court should dismiss the Complaint under Rule 12(b)(6) or grant other relief as is just and equitable.

DATED: March 7, 2025

**BUCHALTER**
A Professional Corporation

By:   */s/ Robert S. McWhorter*
Robert S. McWhorter
 Attorneys for Defendants,
Miller Mendel, Inc. and Tyler Mendel

30

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM –
MEMORANDUM OF POINTS AND AUTHORITIES

CASE NO. 2:22-CV-01390-WBS-AC

APPX00130

**BUCHALTER**
A Professional Corporation
Robert S. McWhorter (SBN: 226186)
Harry W.R. Chamberlain II (SBN: 95780)
Jarrett S. Osborne-Revis (SBN 289193)
500 Capitol Mall, Ste. 1900
Sacramento, California 95814
Telephone: (916) 899-1099
Email: rmcwhorter@buchalter.com
        hchamberlain@buchalter.com
        josbornerevis@buchalter.com

**RYLANDER & ASSOCIATES PC**
Kurt M. Rylander (Pro Hac Vice Application Pending)
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931
rylander@rylanerlaw.com

Attorneys for Defendants,
Miller Mendel, Inc. and
Tyler Miller

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| GUARDIAN ALLIANCE TECHNOLOGIES, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MILLER MENDEL, INC., a Washington corporation; and TYLER MILLER, an individual,<br><br>Defendants. | Case No. 2:22-cv-01390-WBS-AC<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:   April 28, 2025<br>Time:  1:30 PM<br>Judge:  Hon. William B. Shubb<br>Dept:   Courtroom 5, 14th Floor<br>        501 I Street<br>        Sacramento, CA 95814 |

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

REQUEST FOR JUDICIAL NOTICE IN ISO DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT
BN 73058590v1                                          CASE NO. 2:22-CV-01390-WBS-AC

APPX00131

## REQUEST FOR JUDICIAL NOTICE

Defendants Miller Mendel, Inc. and Tyler Mendel ("MMI") request that this Court judicially notice the exhibits attached to and authenticated by the Declaration of Kurt Rylander ("Rylander Declaration"). MMI contemporaneously filed the Rylander Declaration with its motion to dismiss Plaintiff Guardian Alliance Technologies, Inc.'s ("Guardian") complaint.

| Exhibit | Description |
|---|---|
| A | MMI's July 25, 2022 Statement of Information filed with the California Secretary of State. |
| B | A complete copy of MMI's '188 Patent. |
| C | MMI's October 9, 2018 complaint in the action *Miller Mendel, Inc., et al v. the City of Oklahoma City*, United States District Court for the Western District of Oklahoma, Case No. 5:18-cv-00990-JD ("Oklahoma Action"). |
| D | The district court's March 12, 2019 order denying the City of Oklahoma City's motion to dismiss MMI's Complaint in the Oklahoma Action. |
| E | The district court's October 7, 2020 order granting in part MMI's motion for leave to file a second amended complaint in the Oklahoma Action. |
| F | MMI's October 14, 2020 second amended complaint in the Oklahoma Action. |
| G | The City of Oklahoma City's November 10, 2020 answer to MMI's second amended complaint in the Oklahoma Action. |
| H | MMI's December 2, 2021 complaint in the action *Miller Mendel, Inc., et al v. the City of Anna, Texas*, United States District Court for the Eastern District of Texas, Case No. 2:21-cv-00445 –JRG ("Texas Action"). |
| I | The district court's April 14, 2022 order granting the City of Anna, Texas's motion for judgment on the pleadings in the Texas Action. |
| J | The United States Court of Appeals for the Federal Circuit's May 4, 2022 Notice of Docketing MMI's appeal in the Texas Action. |
| K | The City of Anna, Texas's May 3, 2022 motion for attorney's fees in the Texas Action. |
| L | The district court's June 13, 2022 order denying the City of Anna, Texas's motion for attorney's fees in the Texas Action. |

REQUEST FOR JUDICIAL NOTICE IN ISO DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT                    CASE NO. 2:22-cv-01390-WBS-AC

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 73058590v1

APPX00132

| Exhibit | Description |
|---------|-------------|
| M | Excerpted pages from Guardian's petition for inter parties review to the United States Court of Appeals for the Federal Circuit. |

MMI brings this Request under Federal Rule of Evidence 201. This Request supports MMI's motion to dismiss Guardian's complaint under Federal Rule of Civil Procedure 12(b)(6). MMI bases this request upon the accompanying Memorandum of Points and Authorities, the Declaration of Kurt Rylander, the files and records in this action, and such other evidence as may be introduced at the hearing on this matter.

DATED:  March 7, 2025

BUCHALTER
A Professional Corporation


By:    */s/ Robert S. McWhorter*
Robert S. McWhorter
Joshua M. Robbins
Jarrett S. Osborne-Revis
Attorneys for Defendants

MILLER MENDEL, INC. and
TYLER MILLER.

REQUEST FOR JUDICIAL NOTICE IN ISO DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT

CASE NO. 2:22-cv-01390-WBS-AC

BN 73058590v1

APPX00133

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. THIS COURT SHOULD GRANT MMI'S REQUEST FOR JUDICIAL NOTICE OF EXHIBITS "A" THROUGH "H" ATTACHED TO RYLANDER DECLARATION

In ruling on a defendant's Rule 12(b)(6) motion to dismiss, a district court may consider material beyond the complaint in two circumstances. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). First, a district court may consider "evidence on which the complaint necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the defendant's Rule 12(b)(6) motion. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Under this scenario, the district court may treat the document as "part of the complaint" and assume the document's truth. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Second, a district court may consider matters beyond the complaint if those matters are judicially noticeable. *Lee*, 250 F.3d at 688. "A court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment," if the facts noticed are not "subject to reasonable dispute." *Intri-Plex Technologies, Inc. v. Crest Grp. Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (quoting *Lee*, 250 F.3d at 689). MMI requests this Court consider both types of evidence supporting its Rule 12(b)(6) motion to dismiss.

First, MMI requests that this Court take judicial notice of two documents referenced in Guardian's 43-page Complaint – MMI's '188 Patent and Guardian's petition for inter parties review ("IPR") in the United States Court of Appeal for the Federal Circuit. MMI's 188 Patent, which Guardian strenuously protests, is essential to Guardian's case. All 11 of Guardian's claims hinge on its theory that MMI fraudulently obtained the '188 Patent from the United States Patent & Trademark office and tried to enforce it in baseless patent infringement actions against Guardian's customers. Guardian also attached MMI's '188 Patent – albeit an incomplete copy – to its complaint. (Complaint ("Compl.") ¶ 33 ("True and correct copies of the '098 and '188 Patents are attached hereto as Exhibits 1 and 2, respectively.")). Guardian cannot dispute the authenticity of MMI's 188 Patent attached to the Rylander Declaration; as such, this Court should

4

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

REQUEST FOR JUDICIAL NOTICE IN ISO DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT

CASE NO. 2:22-cv-01390-WBS-AC

BN 73058590v1

APPX00134

judicially notice MMI's '188 Patent. Like MMI's '188 Patent, Guardian's Petition for IPR also satisfies the criteria for judicial notice. Guardian's Complaint alleges that the Background Solutions' Background Assistant software rendered the claims in Guardian's '188 Patent unpatentable – the basis for its four declaratory relief claims. To support this claim, Guardian borrowed the picture from its Petition for IPR and inserted it into its complaint. (Compl., ¶ 63); (Rylander Decl., ¶ 10, Ex. M.) The excerpted copy of Guardian's Petition for IPR in the Rylander Declaration, which Guardian cannot dispute, is also judicially noticeable.

Second, MMI requests that this Court take judicial notice of matters of public records – various pleadings and motions filed in MMI's patent infringement actions in other district courts. *See Mack v. South Bay Beer Distrib., Inc.*, 798 F.2d 1279 (9th Cir. 1986) (noting district courts may take judicial notice of "matters of public record" without converting a Rule 12(b)(6) motion to one for summary judgment). Federal Rule of Evidence 201 empowers this Court to judicially notice facts not reasonably subject to dispute if one of two conditions exists. First, the proffered judicially noticeable fact is generally known within the territorial jurisdiction of the trial court. Fed. R. Evid. 201(b)(1). Second, the proposed judicially noticeable fact is capable of accurate and ready determination from a source whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(2). A district court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(1).

For decades, the Ninth Circuit has long recognized that Evidence Rule 201 authorizes district courts to take judicial notice of other district court proceedings directly related to "matters before the court." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992). District courts may take judicial notice of pleadings and matters of public record in other district court files because the files constitute public records and originate from a source whose accuracy cannot be questioned. *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1005 n.9 (N.D. Cal. 2015); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1024 (N.D. Cal. 2014) ("Proper subjects of judicial notice when ruling on a motion to dismiss include …court documents already in the public record and documents filed in other courts ….") (internal

REQUEST FOR JUDICIAL NOTICE IN ISO DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT          CASE NO. 2:22-cv-01390-WBS-AC

APPX00135

citations omitted). From other proceedings, district courts may take judicial notice of the existence of a "particular order, motion, pleading, or judicial proceeding, which is a matter of public record...." *U.S. v. Southern California Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004). Following these guidelines, MMI seeks judicial notice of the existence of certain pleadings and orders (collectively "Records") in MMI's other patent infringement actions as explained in the chart below.

| Exhibit | Judicially Noticeable Information |
|---|---|
| *Miller Mendel, Inc., et al v. the City of Oklahoma City*, United States District Court for the Western District of Oklahoma, Case No. 5:18-cv-00990-JD | |
| MMI's October 9, 2018 complaint against the City of Oklahoma City ("Oklahoma City"). (Declaration of Rylander ("Rylander Decl.") ¶ 6, Ex. C.) | MMI seeks judicial notice of: <br>• The existence of MMI's complaint against the Oklahoma City's complaint. <br>• That MMI filed the complaint on October 9, 2018 in the United States District Court for the Western District of Oklahoma. <br>• That MMI asserted a patent infringement claim against the Oklahoma City, alleging that it used Guardian's software and that Guardian's software infringed MMI's '188 Patent. |
| The district court's March 12, 2019 order denying the Oklahoma City's Rule 12(b)(6) motion to dismiss. (Rylander Decl. ¶ 6, Ex. D). | MMI seeks judicial notice of the existence of the March 12, 2019 district court's order. |
| The district court's October 7, 2020 order permitting MMI to file a second amended complaint to add Guardian as a defendant and to assert claims for defamation and declaratory judgment of no inequitable conduct/patent fraud. (Rylander Decl. ¶ 7, Ex. E.) | MMI seeks judicial notice of the existence district court's October 7, 2020 order. |

REQUEST FOR JUDICIAL NOTICE IN ISO DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT

CASE NO. 2:22-cv-01390-WBS-AC

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 73058590v1

APPX00136

| Exhibit | Judicially Noticeable Information |
|---|---|
| *Miller Mendel, Inc., et al v. the City of Oklahoma City*, United States District Court for the Western District of Oklahoma, Case No. 5:18-cv-00990-JD | |
| MMI's second amended complaint. (Rylander Decl., ¶ 7, Ex. F.) | MMI seeks judicial notice of: 1. The existence of MMI's second amended complaint in the Oklahoma Action. 2. That MMI filed its second amended complaint in the Oklahoma Action on October 14, 2020. 3. That MMI asserted claims against Guardian for defamation and declaratory relief of no inequitable conduct/fraud regarding the '188 Patent. |
| Oklahoma City's answer to MMI's second amended complaint. (Rylander Decl., ¶ 7, Ex G.) | MMI seeks judicial notice of: 1. The existence of Oklahoma City's answer to MMI's second amended complaint. 2. That Oklahoma City's Third, Fourth, Seventh, and Eighth affirmative defenses challenge the validity of MMI's '188 Patent. |
| *Miller Mendel, Inc., et al v. the City of Anna*, Texas, United States District Court for the Eastern District of Texas, Case No. 2:21-cv-00445-JRG | |
| MMI's Complaint. (Rylander Decl. ¶ 8, Ex. H). | MMI seeks judicial notice of the existence of: 1. The existence of MMI's complaint in the Texas Action. 2. That MMI filed its complaint in the Texas Action on December 2, 2021. 3. That MMI asserted a patent infringement claim against the City of Anna, Texas alleging that the City used Guardian's software and that Guardian's software infringed MMI's '188 Patent. |

7

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 73058590v1

APPX00137

| Exhibit | Judicially Noticeable Information |
|---|---|
| *Miller Mendel, Inc., et al v. the City of Oklahoma City*, United States District Court for the Western District of Oklahoma, Case No. 5:18-cv-00990-JD | |
| The district court's April 14, 2022 order granting the City of Anna, Texas's motion for judgment on the pleadings regarding claims 1, 5, and 15 of MMI's '188 Patent. (Rylander Decl. ¶ 8, Ex. I). | MMI seeks judicial notice of the existence of the district court's April 14, 2022 order. |
| The United States Court of Appeals for the Federal Circuit's ("Federal Circuit") May 4, 2022 notice of docketing MMI's appeal of the district court's April 14, 2022 order. (Rylander Decl. ¶ 8, Ex. J). | MMI seeks judicial notice of the existence of the Federal Circuit's May 4, 2022 notice of docketing. |
| The City of Anna Texas's May 3, 2022 amended motion for attorney's fees and costs ("Fee Motion"). (Rylander Decl. ¶ 9, Ex. K). | MMI seeks judicial notice of the existence of the City of Anna, Texas's Fee Motion. |
| The district court's June 13, 2022 order denying the City of Anna, Texas' Fee Motion. | MMI seeks judicial notice of: <br> 1. The existence of the district court's order. <br> 2. The existence of the district court's finding that MMI "was entitled to believe that the '188 Patent was valid after it was examined and allowed by the USPTO. MMI was thereafter free to sue GAT, or in this case, GAT's customers for infringement of the same if Miller Mendel believed them to be infringing." |

The Records relate directly to two of MMI's foundational arguments underlying its motion to dismiss. First, the pleadings and district courts' orders in MMI's earlier-filed patent infringement actions support MMI's defense to Guardian's first, second, third, and fourth declaratory relief claims asserting that the '098 Patent and the '188 Patent are invalid and unenforceable. These pleadings show that the Oklahoma and Texas district courts presiding over MMI's actions against Guardian's customers will answer the sole question in Guardian's case – the validity and enforceability of MMI's '188 Patent. This Court should yield to those district courts under the first-to-file rule and dismiss Guardian's four declaratory relief claims. Second,

REQUEST FOR JUDICIAL NOTICE IN ISO DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT                CASE NO. 2:22-cv-01390-WBS-AC

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 73058590v1

APPX00138

the Records support MMI's collateral estoppel to Guardian's fifth and sixth claims against MMI

for allegedly violating Section 2 of the Sherman Act. For these claims, Guardian invoked the

"sham litigation" theory claiming MMI's patent infringement claims against Guardian's

customers were objectively unreasonable. The district courts' orders in the Texas Actions, which

bind Guardian, undercut Guardian's antitrust claims under the "sham litigation" theory.

## II.    CONCLUSION

For these reasons, MMI requests that this Court grant its request for judicial notice.

Dated:  March 7, 2025                              BUCHALTER, A Professional Corporation


                                        By:        _/s/ Robert S. McWhorter_
                                               ROBERT S. MCWHORTER
                                               JOSHUA M. ROBBINS
                                               JARRETT S. OSBORNE-REVIS


                                               Attorneys for Defendants,
                                               MILLER MENDEL, INC.
                                               TYLER MENDEL

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

REQUEST FOR JUDICIAL NOTICE IN ISO DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT                    CASE NO. 2:22-cv-01390-WBS-AC

BN 73058590v1

APPX00139

**BUCHALTER**
A Professional Corporation
Joshua M. Robbins (SBN: 270553)
18400 Von Karman, Suite 800
Irvine, CA 92612
(949) 224-6284
jrobbins@buchalter.com

Robert S. McWhorter (SBN: 226186)
Jarrett S. Osborne-Revis (SBN 289193)
500 Capitol Mall, Suite 1900
Sacramento, California 95814
(916) 899-1099
rmcwhorter@buchalter.com
josbornerevis@buchalter.com

**RYLANDER & ASSOCIATES PC**
Kurt M. Rylander (Pro Hac Vice Application Pending)
406 West 12th Street
Vancouver, WA 98660
(360) 750-9931
rylander@rylanerlaw.com

Attorneys for Defendants
Miller Mendel, Inc. and
Tyler Miller

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| GUARDIAN ALLIANCE TECHNOLOGIES, INC., a California corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br>MILLER MENDEL, INC., a Washington corporation; and TYLER MILLER, an individual,<br><br>    Defendants. | Case No. 2:22-CV-01290-WBS-AC<br><br>**DECLARATION OF KURT M. RYLANDER IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND DEFENDANTS' SPECIAL MOTION TO STRIKE PURSUANT TO CODE OF CIVIL PROCEDURE § 425.16**<br><br>DATE: April 28, 2025<br>TIME: 1:30 p.m.<br>JUDGE: Hon. William B. Shubb<br>       Courtroom 5, 14th Floor<br>       501 I Street<br>       Sacramento, CA 95814 |

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

# DECLARATION OF KURT RYLANDER

I, KURT M. RYLANDER, declare:

1.    I am one of the counsel of record for Defendants Miller Mendel, Inc. and Tyler Miller (collectively "Miller Mendel") and I make the following statements with personal knowledge.

2.    I am licensed to practice law in the States of Washington and Oregon and the District of Columbia, registered to practice as a patent attorney before the United States Patent & Trademark Office (Reg. No. 43,897), and authorized to practice in numerous Federal courts throughout the country, including before the Supreme Court of the United States of America. I manage the law firm of Rylander & Associates PC (www.RylanderLaw.com) which focuses on intellectual property consulting and litigation. I have practiced law since 1994.

3.    I submit this declaration to support Miller Mendel's motion to dismiss Plaintiff Guardian Alliance Technologies' ("Guardian") complaint and special motion to strike.

## MILLER MENDEL AND ITS '188 PATENT

4.    My co-counsel and I obtained from the California Secretary of State's website a file-endorsed copy of Miller Mendel's July 25, 2022 Statement of Information designating Miller Mendel as a foreign corporation and listing Tyler Miller as its CEO. A true and correct copy of Miller Mendel's July 25, 2022 Statement of Information that I downloaded from the California Secretary of State's website is attached hereto as **Exhibit A**.

5.    I have reviewed a copy of Guardian's Complaint against Miller Mendel. In paragraph 33 of Guardian's Complaint, Guardian alleges that "over the past decade, MMI fraudulently obtained two patents from the United States Patent & Trademark Office ("USPTO"), the federal agency charged with examining and issuing patents where warranted), United States Patent Nos. 9,070,098 ("the '098 Patent") and 10,043,188 ("the '188 Patent")." Guardian purported to attach to its Complaint "true and correct copies of the '098 and '188 Patents … as Exhibits 1 and 2, respectively." (Complaint ("Compl.") ¶ 33, Ex. 2.) Guardian, however, provided an incomplete copy of Miller Mendel's 188 Patent. A true and correct complete copy of Miller Mendel's '188 Patent is attached hereto as **Exhibit B**.

2

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

DECLARATION OF KURT RYLANDER –
ISO MOTION TO DIMISS AND ANTI-SLAPP MOTION    CASE NO. 2:22-CV-01390-WBS-AC

APPX00141

**MILLER'S MENDEL ACTIONS AGAINST GUARDIAN'S CUSTOMERS**

**A. THE OKLAHOMA ACTION**

6.    I am Miller Mendel's counsel of record in its action *Miller Mendel, Inc., et al v. the City of Oklahoma City*, pending in the United States District Court for the Western District of Oklahoma as Case No. 5:18-cv-00990-JD ("Oklahoma Action"). In the Oklahoma Action, Miller Mendel asserted that the City of Oklahoma City's use of the Guardian Platform infringed certain claims of Miller Mendel's '188 Patent. Guardian, on behalf of the City of Oklahoma City, moved to dismiss under Section 101 of the Patent Act based on the United States Supreme Court's decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014). The Oklahoma court, by order dated March 12, 2019, denied that motion. True and correct file-endorsed copies of Miller Mendel's Complaint (excluding the '188 Patent attached as Exhibit A) and the Court's March 12, 2019 order that I received through PACER are attached hereto as **Exhibits C and D**.

7.    Miller Mendel moved to be allowed to file a Second Amended Complaint ("SAC") adding Guardian as a defendant and asserting three claims against Guardian: (1) infringement of the '188 Patent; (2) defamation; and (3) declaratory judgment of no inequitable conduct/patent fraud. The Oklahoma district court allowed Miller Mendel to add Guardian as a defendant and assert claims for defamation and declaratory judgment of no inequitable conduct/patent fraud. After Miller Mendel filed its SAC, the City of Oklahoma City filed an answer to Miller Mendel's SAC. True and correct file-endorsed copies of the district court's October 7, 2020 order, Miller Mendel's SAC (excluding the '188 Patent attached as Exhibit A), and the City of Oklahoma City's Answer that I received through PACER are attached as **Exhibits E, F, and G**.

**B. THE TEXAS ACTION**

8.    I am Miller Mendel's counsel of record in its action *Miller Mendel, Inc. v. the City of Anna, Texas*, pending in the United States District Court for the Eastern District of Texas as Case No. 2:21-cv-0445-JRG ("Texas Action"). In the Texas Action, Miller Mendel asserted that the City of Anna, Texas' use of the Guardian Platform infringed certain claims of Miller Mendel's '188 Patent. On April 14, 2022, the district court entered an order granting the City of Anna Texas' motion for judgment on the pleadings regarding Claims 1, 5, and 15 of Miller Mendel's '188 Patent.

3

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

DECLARATION OF KURT RYLANDER –
ISO MOTION TO DIMISS AND ANTI-SLAPP MOTION    CASE NO. 2:22-CV-01390-WBS-AC

APPX00142

Two weeks later, on May 2, 2022, I filed Miller Mendel's Notice of Appeal appealing the district court's April 14, 2022 order to the United States Court of Appeals for the Federal Circuit ("Federal Circuit"). True and correct file-endorsed copies of Miller's Complaint (excluding the complete copy of the '188 Patent attached as Exhibit A), the district court's April 14, 2022 order, and the Federal Circuit's May 4, 2022 notice of docketing Miller Mendel's appeal that I received through PACER are attached hereto as **Exhibits H, I, and J**.

9.      The City of Anna Texas, by and through Guardian, filed a motion for attorney's fees and costs ("Fees Motion"), which the Texas district court denied on June 13, 2022. True and correct file-endorsed copies of the City of Anna Texas' Fees Motion and the district court's June 13, 2022 order denying the motion that I received through PACER are attached hereto as **Exhibits K and L**.

### C.  GUARDIAN'S PETITION FOR INTER PARTES REVIEW

10.      In 2020, before Guardian filed this action, Guardian filed a  petition for an Inter Parties Review ("IPR") with the United States Patent Appeal and Trial Board   ("PTAB") challenging the validity of the '188 Patent. *Guardian Alliance Technologies, Inc. v. Tyler Miller, IPR2020-00031/Patent 10/043,188 B2*. I was secondary counsel to Miller Mendel during Guardian's IPR petition. Guardian's IPR petition included a snapshot of the Background Assistant software that Guardian asserted rendered the '188 Patent invalid. In paragraph 63 of Guardian's complaint, Guardian included the same snapshot of the purported Background Assistant software that Guardian presented on pages 46 and 47 of its IPR petition. The PTAB found Guardian's "presentation" failed to show any particulars that is was publicly available, let alone prior art before the priority date. (Compl. ¶ 119, Ex. 30 [PTAB Decision, pg. 529, 534]). A true and correct copy of pages 46 and 47 of Guardian's IPR petition is attached hereto as **Exhibit M**.

### D.  UPDATED PROCEEDINGS

11.      On July 18, 2024, the Federal Circuit affirmed the E.D. of Texas, affirming the E.D. of Texas determination: (1) of invalidity of claims 1, 5, and 15 of the '188 Patent and the E.D. Texas's dismissal with prejudice; (2) that its ruling only applies to asserted claims 1, 5 and 15, and does not apply to the other 12 claims of the '188 Patent, none of which were asserted in that E.D. Texas action; and (3) that the E.D. Texas action was not an exceptional case and that Miller Mendel,

DECLARATION OF KURT RYLANDER –
ISO MOTION TO DIMISS AND ANTI-SLAPP MOTION    CASE NO. 2:22-CV-01390-WBS-AC

Inc. was entitled to presume its patent claims were valid and to file suit against multiple litigants. *Miller Mendel, Inc. v. City of Anna*, 107 F.4th 1345 (Fed. Cir. 2024), *cert. denied*, No. 24-439, 2024 WL 4874683 (U.S. Nov. 25, 2024).

12.     Miller Mendel, Inc. filed a Petition for Writ of Certiorari was filed with the Supreme Court of the United States, Case No. 24-439, on October 16, 2024, which the Supreme Court denied on November 25, 2024. *Id.*

**In the Oklahoma Action:**

13.     On December 3, 2024, the Judge in the Oklahoma Action issued her decision denying Guardian's Motion to Dismiss the Second Amended Complaint.

14.     On December 18, 2024, Miller Mendel, Inc. et al. moved for leave to file a Third Amended Complaint, removing the patent infringement claim in that case, leaving in place claims for defamation and declaratory judgment of no patent fraud, no inequitable conduct against Guardian. The Court has yet to rule on that motion. A true and correct copy of the docket for the Oklahoma Action is attached hereto as **Exhibit N**.

**In the Oregon and Alaska Actions**:

15.     On December 1, 2024, Miller Mendel, Inc. moved to voluntarily dismiss pursuant to Rule 41(a)(2) the case against Washington County, Oregon and Washington County Sheriff's Office, which the Court granted on January 2, 2025. *Miller Mendel, Inc. v. Washington County, Oregon, et al.,* D.Oregon, Case No. 3:21-cv-00168-SB dkts 29 & 33. A true and correct copy of the docket for the Oregon Action is attached hereto as **Exhibit O**.

16.     On December 3, 2024, Miller Mendel, Inc. et al. moved to voluntarily dismiss pursuant to Rule 41(a)(2) the case against the Alaska State Trooopers and James E. Cockrell, the Commissionr of the Alaska Department of Public Safety, which the Court granted on January 2, 2025. *Miller Mendel, Inc. et al. v. Alaska State Troopers et al.,* D. Alaska, Case No. 3:21-cv-00129-HRH dkts 46 & 50. A true and correct copy of the docket for the Alaska Action is attached hereto as **Exhibit P**.

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

DECLARATION OF KURT RYLANDER –
ISO MOTION TO DIMISS AND ANTI-SLAPP MOTION        CASE NO. 2:22-CV-01390-WBS-AC

APPX00144

1          I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct.  Executed on March 7, 2025 in Vancouver, Washington

3

4                                              _*/s/ Kurt Rylander*_____
                                               KURT M. RYLANDER, WSBA 27819

5    (original signature retained by attorney Robert S. McWhorter)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

DECLARATION OF KURT RYLANDER –
ISO MOTION TO DIMISS AND ANTI-SLAPP MOTION    **APPX00145**    CASE NO. 2:22-CV-01390-WBS-AC

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

(1) MILLER MENDEL, INC., a
    Washington Corporation, and
(2) TYLER MILLER, an Oregon state
    resident,

              Plaintiffs,

v.

(1) THE CITY OF OKLAHOMA CITY,
a municipal corporation,

              Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

CIV-18-990-M

Case No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiffs, Miller Mendel, Inc. and Tyler Miller (collectively, "Plaintiffs"), for their complaint against Defendant, The City of Oklahoma City, a municipal corporation ("Defendant" or "Oklahoma City"), allege as follows:

## PARTIES

1.    Plaintiff Tyler Miller is a resident of the State of Oregon, and is the owner of all right, title, and interest in and to United States Patent No. 10,043,188 B2 (hereinafter, "the '188 Patent").

2.    Plaintiff Miller Mendel is a Washington corporation, wholly owned by Tyler Miller, with its principal place of business in Seattle, Washington, with an

exclusive license granted by Mr. Miller of all right and interest to the '188 Patent with the right to sublicense to third parties.

3.     Upon information and belief, Defendant Oklahoma City is a municipal corporation with its principal place of business in Oklahoma City, Oklahoma.

## JURISDICTION AND VENUE

4.     This action arises under the patent laws of the United States, 35 U.S.C. §§ 100 *et seq.*, particularly at least Sections 271, 281 through 285, and 295 of Title 35 of the United States Code.  Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338.  Defendant is situated and resides within this state and judicial district and is subject to personal jurisdiction.

5.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1400.

## CLAIM FOR RELIEF
### (Patent Infringement)

6.     Plaintiffs adopt and re-allege each and every numbered paragraph above as if set forth verbatim herein at this point.

7.     The '188 Patent, which is entitled "Background Investigation Management Service," issued on August 7, 2018. A true and correct copy of the '188 Patent is attached hereto as Exhibit "1" and by this reference incorporated herein.

8.     The '188 Patent was duly and legally issued by the United States Patent & Trademark Office after full and fair examination. Plaintiffs hold all right title and interest in and to the '188 Patent and possesses all rights of recovery under the '188 Patent.

9.     Plaintiffs manufacture, market and sell through one or more licensees within the United States products, including eSOPH system, covered by the '188 Patent ("Plaintiffs' Licensed Products").

10.     35 USC § 271(a) provides that whoever uses any patented invention within the United States infringes the patent.  *See also* Section 271(h).

11.     Plaintiffs are informed and believe and based thereon allege that Defendant had notice of the '188 Patent.

12.     Plaintiffs are informed and believe and on that basis allege that Defendant Oklahoma City uses a product, the Guardian Alliance Technologies investigation software platform ("the Guardian Platform"), which infringes one or more claims of the '188 Patent, including at least Claims 1, 5, and 15; that Defendant has infringed, and continues to literally and/or equivalently infringe one or more claims of the '188 Patent by using the Guardian Platform in this district without the consent or permission of Plaintiffs.

13.     Plaintiffs are entitled to recover from Defendant the damages sustained by Plaintiffs as a result of Defendant's wrongful acts in an amount subject to proof at trial, but not less than a reasonable royalty.

14.     Defendant's infringing use will cause ongoing and future harm to Plaintiffs, which may be difficult or impossible to reduce to a sum certain of money damages.

15.     Plaintiffs have been and continue to be irreparably harmed by the acts of Defendant and this harm is not remediable by damages alone. A patent is a property right of limited duration.  Every day of continuing infringement lessens, taints, and depletes the rights and entitlements granted by the '188 Patent.  Every day of continuing infringement interferes with Plaintiffs' ability to realize value on the '188 Patent through licensing or directly marketing to others and/or through price erosion.

16.     The public has an overriding interest in protecting patent rights and in the enforcement of patent laws.

17.     Defendant's infringement of Plaintiffs' exclusive rights under the '188 Patent will continue to damage Plaintiffs' business, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

18.     Defendant has infringed and continues to infringe the '188 Patent directly and/or through acts of inducement in violation of 35 U.S.C. § 271.

19.     As a result of Defendant's infringement, Plaintiffs have suffered and continue to suffer damages in an amount to be determined at trial.

20.     Unless Plaintiffs receive temporary, preliminary, and permanent injunctive relief enjoining Defendant's use of infringing products and systems, including the Guardian Platform, Plaintiffs will be irreparably injured.

21.     Plaintiffs are informed and believe that Defendant's infringement of the '188 Patent has been willful and deliberate, entitling Plaintiffs to increased damages under 35 U.S.C. § 284, and, in addition, Defendant's conduct renders this an exceptional case under 35 U.S.C. § 285, thus entitling Plaintiffs to an award of attorney fees.

22.     To the extent of any claim to sovereign immunity, Plaintiffs are informed and believe and therefore contend such immunity has been and/or should be considered to have been waived.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that judgment be entered in their favor and against Defendant and for relief including:

{1865088;}

1.     Declaring the '188 Patent claims to be valid and infringed by Defendant;

2.     Finding the Defendant liable for the infringement, and the damages flowing therefrom.

3.     Awarding and ordering all damages suffered by Plaintiffs due to Defendant's infringement of the claims of the '188 Patent, including all amounts necessary to make Plaintiffs whole, but not less than a reasonable royalty, pursuant to 35 U.S.C. § 284;

4.     Awarding to Plaintiffs enhanced damages up to and including trebling of Plaintiffs' damages pursuant to 35 U.S.C. § 284;

5.     Enjoining Defendant from using any products which infringe the '188 Patent, to wit, the Guardian Platform;

6.     Awarding Plaintiffs their costs of suit, including reasonable attorneys' fees pursuant to, *inter alia*, 35 U.S.C. § 285 due to the exceptional nature of this case, or as otherwise permitted by law;

7.     Awarding pre- and post- judgment interest; and,

8.     Awarding such other and further relief as may be just and proper.

Date: October 9, 2018

Respectfully submitted,

s/ Todd A. Nelson
Todd A. Nelson, OBA #15317
Paul E. Rossler, OBA #21796
GABLEGOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103
Telephone:  (918) 595-4800
Facsimile:   (918) 595-4990
E-mail: tnelson@gablelaw.com
prossler@gablelaw.com

*Motion for Admission Pro Hac Vice to be filed:*
Kurt M. Rylander, Bar No. 27819
RYLANDER & ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
Telephone:  (360) 750-9931
Facsimile:   (360) 397-0473
E-mail: rylander@rylanderlaw.com

**JURY TRIAL DEMANDED**

Attorneys for Plaintiffs

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MILLER MENDEL, INC., a Washington Corporation; TYLER MILLER, an Oregon State resident,<br><br>        Plaintiffs,<br><br>vs.<br><br>THE CITY OF OKLAHOMA CITY, a municipal corporation,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)      No. CIV-18-990-C<br>)<br>)<br>)<br>)<br>) |

## O R D E R

Plaintiff filed the present action asserting claims of patent infringement of United States Patent No. 10,043,188.  Defendant filed a Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), arguing the Complaint must be dismissed because Plaintiff failed to plead sufficient facts to demonstrate infringement, or in the alternative that that the subject matter of the '188 patent is unpatentable.  Upon review, the Court finds Defendant's Motion should be denied.  While Plaintiff could have pleaded additional facts, the Amended Complaint sets forth sufficient facts to state a claim that is sufficiently plausible on its face.  As for Defendant's argument that the subject matter of the '188 patent is unpatentable, the Court finds that factual disputes exist precluding dismissal at this time.

For the reasons set forth herein, Defendant Oklahoma City's Motion to Dismiss Plaintiffs Miller Mendel, Inc., and Tyler Miller's Complaint (Dkt. No. 15) and the Renewed Motion (Dkt. No. 23) are DENIED.

IT IS SO ORDERED this 12th day of March, 2019.

ROBIN J. CAUTHRON
United States District Judge

2

# EXHIBIT E

## <u>COURTROOM MINUTE SHEET</u>

DATE  <u>October 7, 2020</u>

CIVIL NO. <u>CIV-18-00990–JD</u>

<u>Miller Mendel Inc., *et al.* (Plaintiffs)</u>  -v-  <u>City of Oklahoma City (Defendant) and Guardian Alliance Technologies, Inc. (Movant)</u>

COMMENCED  <u>1:55 p.m.</u>      ENDED  <u>4:55 p.m.</u>      TOTAL TIME <u>3 hours</u>

PROCEEDINGS  <u>Plaintiffs' Motion for Leave to File Second Amended Complaint [Doc. No. 57] and Movant Guardian Alliance Technologies, Inc.'s Motion to Quash [Doc. No. 1 in Case No. MC-20-00004-JD].</u>

JUDGE <u>JODI W. DISHMAN</u>      DEPUTY <u>NYSSA VASQUEZ</u>      REPORTER <u>EMILY CRIPE</u>

PLFS' COUNSEL  <u>Todd A. Nelson, Esq. (in person) and Kurt M. Rylander, Esq. (by telephone)</u>

DFT'S COUNSEL  <u>Evan W. Talley, Esq. (in person) and Jordan Sigale, Esq. (by telephone)</u>

MVT'S COUNSEL  <u>Evan W. Talley, Esq. (in person)</u>

Hearing held. Counsel present as noted above. Arguments by both sides of counsel heard at length. The Court first addresses Plaintiffs' Motion for Leave to File Second Amended Complaint [Doc. No. 57], filed 09/23/2019. After considering the arguments, briefing and exhibits, and for all the reasons stated on the record, the Court FINDS that amendment would be futile as to Plaintiffs' proposed patent infringement claim against Guardian Alliance Technologies, Inc. ("GAT"), because that claim would be subject to dismissal under Fed. R. Civ. P. 12(b)(3). The Motion for Leave to File Second Amended Complaint is GRANTED IN PART AND DENIED IN PART. It is DENIED to the extent it seeks to assert claims against GAT for patent infringement (proposed claim 2) and GRANTED as to the remaining relief requested. Plaintiffs may file their second amended complaint, consistent with this ruling (only proposed claims 3 and 4 against GAT) within 7 days from today or by 10/14/2020. The Second Amended Complaint shall not differ from Doc. No. 57-1 (other than omitting proposed claim 2 and renumbering).

The Court next addresses the Motion to Quash filed by Movant GAT [Doc. No. 1 in Case No. MC-20-00004-JD]. Considering the arguments, briefing and exhibits, and for all other reasons stated on the record, the Court FINDS as follows:

    1. By agreement of the parties, GAT will produce documents responsive to Request No. 12 of the subpoena.

    2. Request Nos. 1, 2, and 3, are **NOT** within the scope of discovery permitted under Rule 26(b)(1).

    3. Request Nos. 4 and 5 **ARE** within the scope of discovery under Rule 26(b)(1), provided such discovery is **LIMITED** to February 2017 forward.

    4. Request No. 6, which seeks each version of the GAT platform, all source code and executable code, **IS** within the scope of discovery under Rule 26(b)(1), **LIMITED** to source code version "in use" or "ever used" by Defendant Oklahoma City. Should any issues arise as to the inspection of the source

code the parties are **DIRECTED** to raise those issues in their Joint Status Report due 10/19/2020.
Counsel for the parties are also **DIRECTED** to file in advance any changes necessary to the current ESI
and Discovery and Protective Order [Doc. Nos. 41 and 42] to the extent amendments are necessary to
allow inspection of the source code.

5. Request Nos. 7, 8, 19, and 20 are **NOT** within the scope of discovery under Rule 26(b)(1).

6. Request Nos. 9, 13, and 21 are **NOT** within the scope of discovery under Rule 26(b)(1).

7. Request No. 10, which seeks all communications with any employee, officer, or agent of Oklahoma
City or its police department, **IS** within the scope of discovery under Rule 26(b)(1), **LIMITED** to the
date the RFP process started (November 2017).

8. Request No. 11, which seeks installation manual(s) for the GAT platform (to the extent they exist), **IS**
within the scope of discovery under Rule 26(b)(1).

9. Request Nos. 14, 15, 16, 17, and 18 are **NOT** within the scope of discovery under Rule 26(b)(1).

10. Request Nos. 22, 23, and 24, which seek documents regarding GAT's contentions relating to the
'188 patent, the Court FINDS the requested discovery as worded are **NOT** within the scope of discovery
under Rule 26(b)(1), considering GAT's status as a non-party and the subpoena's use of the language
"your contention."

11. Request No. 25, which seeks "all financial documents showing [GAT's] revenues, expenses, profit,
and licensing rate related to provide the GAT platform to Oklahoma City[,]" **IS** within the scope of
discovery under Rule 26(b)(1), **LIMITED** to revenues only.

The Motion to Quash is therefore DENIED IN PART and GRANTED IN PART for the reasons summarized in
this minute sheet and for all reasons stated on the record. Guardian Alliance Technologies, Inc. is ORDERED to
produce responsive documents consistent with this Order within 21 days from today or by 10/28/2020, with the
exception of Request Nos. 4, 5, 6, and 12. With respect to those requests, the Court DIRECTS the parties to be
ready to provide the Court with an update at the set Status/Scheduling Conference to be held on 10/28/2020 at
9:30 a.m. [Doc. No. 100].

The Court briefly discusses with counsel for the parties the status of the case, specifically any changes to the
ESI and Discovery Order [Doc. No. 41] and the Protective Order [Doc. No. 42]. Should the parties anticipate
any changes to [Doc. No. 41] or [Doc. No. 42], the Court DIRECTS them to submit a proposed amended
version with redline edits by 10/19/2020. The proposed specialized scheduling order submitted by the parties
with their joint status report and discovery plan should only show deadlines that remain and the Court advises
the parties to consider and account for any necessary briefing and anticipated ruling on any motion to dismiss
the second amended complaint by GAT. The Court discusses mediation and advises the parties to confer on
timing.

All rulings made on the record. No further written order to follow.

APPX00159

# EXHIBIT F

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| (1) MILLER MENDEL, INC., a<br>Washington Corporation, and<br>(2) TYLER MILLER, an Oregon state<br>resident, | ) ) ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) ) | Case No. <u>CIV-18-990-JD</u> |
| (1) THE CITY OF OKLAHOMA CITY, a<br>municipal corporation, | ) ) ) | **JURY TRIAL DEMANDED** |
| Defendant, and | ) ) | |
| (2) GUARDIAN ALLIANCE<br>TECHNOLOGIES, INC., a Delaware<br>corporation, | ) ) ) ) | |
| Defendant. | ) ) | |

## SECOND AMENDED COMPLAINT

Plaintiffs, MILLER MENDEL, INC. and TYLER MILLER ("Plaintiffs" or "Miller Mendel"), by undersigned counsel, and assert this Second Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2), and allege as follows:

## PARTIES

1.      Plaintiff Tyler Miller is a resident of the State of Oregon, and is the owner of all right, title, and interest in and to United States Patent No. 10,043,188 B2 (hereinafter, "the '188 Patent").

2.      Plaintiff Miller Mendel is a Washington corporation, wholly owned by Tyler Miller, with its principal place of business in Seattle, Washington, with an exclusive license granted by Mr. Miller of all right and interest to the '188 Patent with the right to sublicense to third parties.

3.      Upon information and belief, Defendant Oklahoma City is a municipal corporation with its principal place of business in Oklahoma City, Oklahoma.

4.      Upon information and belief, Defendant Guardian Alliance Technologies, Inc. (hereinafter "GAT" or "Guardian Alliance Technologies") is a Delaware corporation conducting substantial business in and having substantial contact with, the Western District of Oklahoma.

## JURISDICTION AND VENUE

5.      This action arises under the patent laws of the United States, 35 U.S.C. §§ 100 *et seq.*, particularly at least Sections 271, 281 through 285, and 295 of Title 35 of the United States Code.   Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338. Defendant is situated and resides within this state and judicial district and is subject to personal jurisdiction.

6.      This action also arises under state and common law, rending jurisdiction proper pursuant to supplemental jurisdiction, 28 U.S.C. sec. 1367(a), and diversity of citizenship, 28 U.S.C. sec. 1332(a).

7.     This action also arises under the Federal Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202).

8.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400.

### FIRST CLAIM FOR RELIEF
### --AGAINST OKLAHOMA CITY
**(Patent Infringement)**

9.     Plaintiffs adopt and re-allege each and every numbered paragraph above as if set forth verbatim herein at this point.

10.     The '188 Patent, which is entitled "Background Investigation Management Service," issued on August 7, 2018. A true and correct copy of the '188 Patent is attached hereto as Exhibit "1" and by this reference incorporated herein.

11.     The '188 Patent was duly and legally issued by the United States Patent & Trademark Office on August 7, 2018 after full and fair examination. Plaintiffs hold all right title and interest in and to the '188 Patent and possesses all rights of recovery under the '188 Patent.

12.     Plaintiffs manufacture, market and sell through one or more licensees within the United States products, including eSOPH system, covered by the '188 Patent ("Plaintiffs' Licensed Products").

13.     35 USC § 271(a) provides that whoever uses any patented invention within the United States infringes the patent. *See also* Section 271(h).

{2021613;}

14.    Plaintiffs are informed and believe and based thereon allege that Defendant had notice of the '188 Patent and/or that the filing of the original Complaint in this case constituted notice.

15.    Plaintiffs are informed and believe and on that basis alleges that Defendant Oklahoma City uses a product, the Guardian Alliance Technologies investigation software platform ("the Guardian Platform") as a  response to its November 2017 Request for Proposal 181003 for a Police Applicant Tracking Software for the Oklahoma City Police Department which infringes one or more claims of the '188 Patent, including at least Claims 1, 5, and 15, and all elements thereof; that Defendant has, within the past six years infringed, and continues to literally and/or equivalently infringe one or more claims of the '188 Patent, including Claims 1, 5 and 15, and all elements thereof, by using the Guardian Platform in this district without the consent or permission of Plaintiffs, including, for example, literally and/or equivalently infringing Claim 1 of  the '188 Patent by using the Guardian Platform  on a computing device with a processor and system memory, assisting an investigator in conducting a background investigation of an application within an organization by:

> receiving a first set of program data comprising information identifying the applicant , the position , the organization , and the investigator;
> storing a new applicant entry in the system memory, the new applicant entry associated with the first set of program data;
> transmitting an applicant hyperlink to an applicant email address associated with the applicant, the applicant hyperlink for viewing an applicant set of electronic documents;
> receiving an applicant electronic response with a reference set of program data, wherein the reference set of program data comprises information regarding a reference source, wherein the reference source is a person, the

program data including a reference email address associated with the reference source;

determining a reference class of the reference source based on the reference set of program data;

selecting a reference set of electronic documents based on the reference class of the reference source;

transmitting a reference hyperlink to the reference email address, the reference hyperlink for viewing the reference set of electronic documents;

receiving a reference electronic response to the reference set of electronic documents from the reference source;

storing the reference electronic response in the system memory, associating the reference electronic response with the new applicant entry; and

generating a suggested reference list of one or more law enforcement agencies based on an applicant residential address.

16.     Plaintiffs are entitled to recover from Defendant the damages sustained by Plaintiffs as a result of Defendant's wrongful acts in an amount subject to proof at trial, but not less than a reasonable royalty.

17.     Defendant's infringing use will cause ongoing and future harm to Plaintiffs, which may be difficult or impossible to reduce to a sum certain of money damages.

18.     Plaintiffs have been and continue to be irreparably harmed by the acts of Defendant and this harm is not remediable by damages alone. A patent is a property right of limited duration. Every day of continuing infringement lessens, taints, and depletes the rights and entitlements granted by the '188 Patent. Every day of continuing infringement interferes with Plaintiffs' ability to realize value on the '188 Patent through licensing or directly marketing to others and/or through price erosion.

19.     The public has an overriding interest in protecting patent rights and in the enforcement of patent laws.

20.     Defendant's infringement of Plaintiffs' exclusive rights under the '188 Patent will continue to damage Plaintiffs' business, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

21.     Defendant has infringed and continues to infringe the '188 Patent directly and/or through acts of inducement in violation of 35 U.S.C. § 271(a) and/or (b).

22.     As a result of Defendant's infringement, Plaintiffs have suffered and continue to suffer damages in an amount to be determined at trial.

23.     Unless Plaintiffs receive temporary, preliminary, and permanent injunctive relief enjoining Defendant's use of infringing products and systems, including the Guardian Platform, Plaintiffs will be irreparably injured.

24.     Plaintiffs are informed and believe that Defendant's infringement of the '188 Patent has been willful and deliberate, entitling Plaintiffs to increased damages under 35 U.S.C. § 284, and, in addition, Defendant's conduct renders this an exceptional case under 35 U.S.C. § 285, thus entitling Plaintiffs to an award of attorney fees.

25.     To the extent of any claim to sovereign immunity, Plaintiffs are informed and believe and therefore contend such immunity has been and/or should be considered to have been waived.

## SECOND CLAIM FOR RELIEF
## --AGAINST GAT
### (Defamation)

26.     Plaintiffs adopt and re-allege each and every numbered paragraph above as if set forth verbatim herein at this point.

27.     Plaintiffs are informed and believe and on that basis allege Defendant GAT defamed Plaintiffs by publishing with the intent to be viewed by customers and/or potential customers of Plaintiffs, and which were viewed by potential customers and/or customer of Plaintiffs, false and defamatory statements, unprivileged, that Plaintiffs committed fraud on the United States Patent & Trademark Office in the prosecution of Plaintiffs patents, including the '188 Patent; that these statements are untrue and without basis in fact; and that GAT knew at the time of utterance that the statements were untrue and without basis in fact; that these statements by Defendant GAT were negligently, recklessly/and/or intentionally uttered in disregard of the truth or falsity, and/or constituted actual malice on the party of GAT; that Plaintiffs are not public figures or public officials; that GAT's false and defamatory statements are defamatory per se and/or foreseeably and directly causing harm and damage to Plaintiffs and their trade, business and/or profession; that GAT's false and defamatory statements exposed Plaintiffs to ridicule; and that GAT's false and defamatory statements impute criminal conduct to Plaintiffs, specifically fraud upon a Federal agency.

28.     GAT's actions described herein constitute libel in violation of Okla. Stat. Ann. tit. 12, § 1441.

29.     Plaintiffs are informed and believe and on that basis allege that Oklahoma City, or its representatives or agents, provided documents and information to GAT to facilitate GAT in making its false and defamatory statements, specifically, that Oklahoma City submitted to Plaintiffs its required Noninfringement and invalidity contentions, and then also, without notice to Plaintiffs, provided those contentions to GAT, which GAT then improperly used to fabricate and declaim the false and defamatory statements for which it is charged.

30.     Plaintiffs are informed and believe and on that basis allege that Oklahoma City, or its agents or representatives, knew of those false and defamatory statements by GAT and may have reviewed those statements prior to GAT publishing the false and defamatory statements.

31.     Plaintiffs are informed and believe and on that basis allege that Exhibit "2" hereto and incorporated herein is a true and correct copy of the defamatory website "thetruthaboutmillermendel.com", published by Defendant GAT on August 22, 2019 with the input and/or assistance of the Defendant Oklahoma City and /or Oklahoma City's attorneys and/or agents.

### THIRD CLAIM FOR RELIEF
### --AGAINST GAT
**(Declaration of No Inequitable Conduct/Patent Fraud)**

32.     Plaintiffs adopt and re-allege each and every numbered paragraph above as if set forth verbatim herein at this point.

33.     This action arises under the patent laws of the United States, Title 35 of the
United States Code (35 U.S.C. § 1, et seq.), and under the Federal Declaratory Judgment
Act (28 U.S.C. §§ 2201 and 2202), and this Court has subject matter jurisdiction over this
action pursuant to 28 U.S.C. §§ 1331 (federal question)

34.     Plaintiffs are informed and believe and on that basis allege Defendant GAT
accuses Plaintiffs of committing fraud on the United States Patent & Trademark Office in
in the prosecution of Plaintiffs patents, including the '188 Patent, constituting therefore
inequitable conduct to render the '188 Patent, at least, unenforceable; that these statements
are untrue and without basis in fact.

35.     Plaintiffs are informed and believe and on that basis allege Defendant GAT
is preparing to file an action against Plaintiffs for such alleged fraud, and has stated has
much in its defamatory website, "*thetruthaboutmillermendel.com*", as published on
August 22, 2019.  Exhibit "2" hereto and incorporated herein is a true and correct copy of
that website copied on that date.

36.     Plaintiffs are informed and believe and on that basis allege that there is an
actual case or controversy.

37.     By Defendant GAT's actions, Plaintiffs are in reasonable apprehension of an
imminent suit against Plaintiffs for such alleged fraud upon the United States Patent &
Trademark Office relating to the '188 Patent.

38.     Plaintiffs deny that they have committed fraud upon the United States Patent

& Trademark Office, and now seeks a declaratory judgment that they have not committed fraud upon the United States Patent & Trademark Office.

39.     The controversy is such that, pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 *et seq.*, Plaintiffs are entitled to a declaration, in the form of a judgment, that by their activities Plaintiffs have not committed fraud upon the United States Patent & Trademark Office. Such a determination and declaration is necessary and appropriate at this time.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs pray that judgment be entered in their favor and against Defendant and for relief including:

1.     Declaring the '188 Patent claims to be valid and infringed by Defendants;

2.     Finding the Defendants liable for the infringement, and the damages flowing therefrom.

3.     Awarding and ordering all damages suffered by Plaintiffs due to Defendants' infringement of the claims of the '188 Patent, including all amounts necessary to make Plaintiffs whole, but not less than a reasonable royalty, pursuant to 35 U.S.C. § 284;

4.     Awarding to Plaintiffs enhanced damages up to and including trebling of Plaintiffs' damages pursuant to 35 U.S.C. § 284, for Defendants willful infringement;

5.      Enjoining Defendants from making, selling, or using any products which infringe the '188 Patent, to wit, the Guardian Platform;

6.      Awarding Plaintiffs their costs of suit, including the costs of experts and reasonable attorneys' fees pursuant to, *inter alia*, 35 U.S.C. § 285 due to the exceptional nature of this case, or as otherwise permitted by law;

7.      Declaring that Plaintiffs have not committed fraud upon the United States Patent & Trademark Office; and that Plaintiffs have not committed inequitable conduct in relation to the '188 Patent family.

8.      Awarding Plaintiffs damages for defamation, including to the extent allowed by law punitive and/or exemplary damages;

9.      Awarding pre- and post- judgment interest; and,

10.     Awarding such other and further relief as may be just and proper.

Date: October 14, 2020

Respectfully submitted,

s/ Todd A. Nelson
Todd A. Nelson, OBA #15317
Paul E. Rossler, OBA #21796
GABLEGOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103
Telephone:   (918) 595-4800
Facsimile:     (918) 595-4990
E-mail: tnelson@gablelaw.com
prossler@gablelaw.com

*Admitted Pro Hac Vice:*
Kurt M. Rylander, Bar No. 27819
Mark E. Beatty, Bar No. 37076
RYLANDER & ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
Telephone:   (360) 750-9931
Facsimile:     (360) 397-0473
E-mail: rylander@rylanderlaw.com

*Attorneys for Plaintiffs*

Background Investigation Software - The Truth About Miller Mendel                    Page 1 of 3
Case 2:25-cv-00990-JDC Document 1-2 Filed 06/08/25 Page 215 of 3
Case 2:22-cv-01390-WBS-AC      Document 40-2      Filed 03/07/25      Page 111 of 352

# THE TRUTH ABOUT MILLER MENDEL

## About Miller Mendel Background Investigation Software

Miller Mendel, Inc., as part of their sales pitch for their eSOPH background investigation software, is frequently presenting itself as a "sole source" provider because of its claimed ownership of two US patents, purportedly covering its software platform. In doing so, Miller Mendel is being misleading.

What follows is being presented to dispel this misinformation being communicated by Miller Mendel and provide additional insight which undercuts their assertion that they are a sole source provider of background investigation software.

Miller Mendel recently sued Oklahoma City, in Oklahoma federal court for patent infringement. OKC implemented the Guardian Alliance Technologies, Inc. background investigation platform after an RFP process which included Miller Mendel as a participant. While Guardian wasn't sued directly, they are providing OKC's defense against Miller Mendel's claims of patent infringement.

As the litigation has progressed, Guardian has learned very troubling information about Miller Mendel's patents—namely, that the patents are very narrow, do not cover Guardian's platform and were likely improperly obtained by Miller Mendel from the US Patent Office.

Guardian and OKC have compiled an overwhelming amount of evidence that indicates that the patents are likely invalid and unenforceable due to encompassing prior software systems that performed identically to Miller Mendel's eSOPH system. Miller Mendel's patents impermissibly cover information and technology in the public domain—their patent covers nothing new or inventive.

While extensive details about the evidence cannot be shared here, there were multiple, publicly available background investigation systems—such as those developed and sold by Background Solutions and ADP—years before Miller Mendel filed for its first patent. Unfortunately, Miller Mendel did not tell the US Patent Office about these earlier

Exhibit "2"


APPX00173

background investigation systems and the Patent Office erroneously granted their patents. These prior background investigation systems render Miller Mendel's patents invalid and unenforceable.

Miller Mendel knew of these prior background investigation systems before filing for their patents but withheld this information from the US Patent Office. Knowing of this information and failing to disclose it to the Patent Office is known as "fraud on the patent office" rendering the patents invalid and rendering Mr. Miller, the purported inventor of the patents, liable for monetary damages.   These allegations are not made lightly - Guardian is in the early stages of preparing an action against Miller Mendel and Mr. Miller, individually, once the evidence is developed to support the belief that fraud was committed on the patent office in obtaining their patents.

The patents are also invalid because they do not cover patent-eligible subject matter under US patent law. So-called inventions that simply automate a process performed for years using traditional methods (e.g., such as paper and pencil) are not eligible for patent protection. By Miller Mendel's own words, the eSOPH program does nothing unique—it simply modernizes the traditional process of performing background investigations by performing the process on a computer.

Guardian believes in open, fair, free market competition and believe that a full merits-based review of the Guardian platform shows it is superior to Miller Mendel's eSOPH program.  Rather than compete on the merits of its program, however, Miller Mendel has misled the market as to its sole source status.

The law enforcement profession is one steeped in honesty, integrity and loyalty. Guardian's stated mission is to protect the integrity of the law enforcement agencies and industry professionals it serves through its products, services and conduct.  As such, we felt it our obligation to share this information.

Copyright © 2019 The Truth About Miller Mendel - All Rights Reserved.

https://thetruthaboutmillermendel.com/                                        8/22/2019

# EXHIBIT G

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MILLER MENDEL, INC., a Washington Corporation; and TYLER MILLER, an Oregon state resident, | ) ) ) ) |
| Plaintiffs, | ) |
| v. | ) Case No. CIV-18-990-JD |
| | ) |
| THE CITY OF OKLAHOMA CITY, a municipal corporation; and GUARDIAN ALLIANCE TECHNOLOGIES, INC., a Delaware corporation, | ) ) ) ) |
| | ) |
| Defendants. | ) |

## DEFENDANT OKLAHOMA CITY'S ANSWER AND
## <u>AFFIRMATIVE DEFENSES TO SECOND AMENDED COMPLAINT</u>

Defendant Oklahoma City, for its Answer and Affirmative Defenses to Plaintiffs

Miller Mendel, Inc. and Tyler Miller's Second Amended Complaint, states as follows:

### <u>ANSWER</u>

1.     Plaintiff Tyler Miller is a resident of the State of Oregon, and is the owner of all right, title, and interest in and to United States Patent No. 10,043,188 B2 (hereinafter, "the '188 Patent").

**<u>ANSWER</u>**:   OKC admits that Tyler Miller is listed on the face of the '188 Patent as the applicant and inventor. OKC further admits that no assignments of the '188 Patent have been filed with the USPTO. OKC is without sufficient information or knowledge to

form a belief as to the truth or falsity of the remaining allegations in Paragraph 1 of

Plaintiffs' Second Amended Complaint and therefore denies the same.

2.      Plaintiff Miller Mendel is a Washington corporation, wholly owned by Tyler
Miller, with its principal place of business in Seattle, Washington, with exclusive license
granted by Mr. Miller of all right and interest to the '188 Patent with the right to sub license
to third parties.

**ANSWER**:   OKC is without sufficient information or knowledge to form a belief

as to the truth or falsity of the allegations in Paragraph 2 of Plaintiffs' Second Amended

Complaint and therefore denies the same.

3.      Upon information and belief, Defendant Oklahoma City is a municipal
corporation with its principal place of business in Oklahoma City, Oklahoma.

**ANSWER**: OKC admits the allegations in Paragraph 3 of the Second Amended

Complaint.

4.      Upon information and belief, Defendant Guardian Alliance Technologies,
Inc. (hereinafter "GAT" or "Guardian Alliance Technologies") is a Delaware corporation
conducting substantial business in and having substantial contact with, the Western District
of Oklahoma.

**ANSWER**: OKC denies the allegations in Paragraph 4 of the Second Amended

Complaint. OKC is informed and believes that GAT is a California corporation.

## JURISDICTION AND VENUE

5.      This action arises under the patent laws of the United States, 35 U.S.C. §§
100 *et seq.,* particularly at least Sections 271, 281 through 285, and 295 of Title 35 of the
United States Code. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338. Defendant
is situated and resides within this state and judicial district and is subject to personal
jurisdiction.

**ANSWER**:   OKC admits that Plaintiffs have brought an action under the patent

laws of the United States and thus jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338

2

as to Plaintiffs claim for patent infringement against OKC. OKC further admits that it is

situated and resides within the State of Oklahoma and the Western District of Oklahoma

and is subject to personal jurisdiction in this District. OKC is without sufficient information

or knowledge to form a belief as to the truth or falsity of the remaining allegations of

Paragraph 5 of Plaintiffs' Second Amended Complaint and therefore denies the same.

6.     This action also arises under state and common law, rending (*sic*) jurisdiction
proper pursuant to supplemental jurisdiction, 28 U.S.C. sec. 1367(a), and diversity of
citizenship, 28 U.S.C. sec. 1332(a).

**ANSWER**:   Plaintiffs' cause of action brought under Oklahoma state law is not

brought against OKC and therefore, this allegation requires no response from OKC. To the

extent this allegation requires an answer from OKC, OKC denies the allegations of

Paragraph 6 of Plaintiffs' Second Amended Complaint.

7.     This action also arises under the Federal Declaratory Judgment Act (28
U.S.C. §§ 2201 and 2202).

**ANSWER**:   Plaintiffs' cause of action brought under the Federal Declaratory

Judgment Act is not brought against OKC and therefore, this allegation requires no

response from OKC. To the extent this allegation requires an answer from OKC, OKC

denies the allegations of Paragraph 7 of Plaintiffs' Second Amended Complaint.

8.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400.

**ANSWER**:   OKC admits that venue is proper in this District with respect to OKC

pursuant to 28 U.S.C. §§ 1391(b) and 1400 only as to Plaintiffs' patent infringement claim

against OKC. Plaintiffs' causes of action brought under Oklahoma state law and the

3

Federal Declaratory Judgment Act are not brought against OKC and therefore, OKC does not respond to the propriety of venue with respect to those causes of action.

**FIRST CLAIM FOR RELIEF**
**--AGAINST OKLAHOMA CITY**
**(Patent Infringement)**

9.     Plaintiffs adopt and re-allege each and every numbered paragraph above as if set forth verbatim herein at this point.

**ANSWER**:   OKC incorporates by reference and re-alleges each and every Answer to Plaintiffs' allegations contained in numerical Paragraphs 1 through 8 as though fully set forth herein.

10.     The '188 Patent, which is entitled "Background Investigation Management Service," issued on August 7, 2018. A true and correct copy of the '188 Patent is attached hereto as Exhibit "1" and by this reference incorporated herein.

**ANSWER**:   OKC admits the allegations in Paragraph 10 of the Second Amended Complaint.

11.     The '188 Patent was duly and legally issued by the United States Patent & Trademark Office on August 7, 2018 after full and fair examination. Plaintiffs hold all right title and interest in and to the '188 Patent and possesses (*sic*) all rights of recovery under the '188 Patent.

**ANSWER**:   OKC admits that the '188 Patent appears on its face to have been issued by the United States Patent & Trademark Office on August 7, 2018. OKC is without sufficient information or knowledge to form a belief as to the truth or falsity of the remaining allegations in Paragraph 11 of Plaintiffs' Second Amended Complaint and therefore denies the same.

12.     Plaintiffs manufacture, market and sell through one or more licensees within the United States products, including eSOPH system, covered by the '188 Patent ("Plaintiffs' Licensed Products").

4

**ANSWER**:   OKC is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegation in Paragraph 12 of Plaintiffs' Second Amended Complaint that "Plaintiffs manufacture, market and sell" products and therefore denies the same. OKC denies the remaining allegations in Paragraph 12 of the Second Amended Complaint.

13.     35 USC § 271(a) provides that whoever uses any patented invention within the United States infringes the patent. *See also* Section 271(h).

**ANSWER**:   OKC admits that 35 USC § 271(a) provides that whoever uses any patented invention within the United States infringes a patent.

14.     Plaintiffs are informed and believe and based thereon alleges that Defendant had notice of the '188 Patent and/or that the filing of the original Complaint in this case constituted notice.

**ANSWER**:   OKC admits that Plaintiffs' filing of the original Complaint provided notice to OKC of the '188 Patent. OKC denies the remaining allegations of Paragraph 14 of the Second Amended Complaint.

15.     Plaintiffs are informed and believe and on that basis allege that Defendant Oklahoma City uses a product, the Guardian Alliance Technologies investigation software platform ("the Guardian Platform") as a response [sic] to its November 2017 Request for Proposal 181003 for a Police Applicant Tracking Software for the Oklahoma City Police Department which infringes one or more claims of the '188 Patent, including at least Claims 1, 5, and 15, and all elements thereof; that Defendant has, within the past six years infringed, and continues to literally and/or equivalently infringe one or more claims of the '188 Patent, including Claims 1, 5 and 15, and all elements thereof, by using the Guardian Platform in this district without the consent or permission of Plaintiffs, including, for example, literally and/or equivalently infringing Claim 1 of the '188 Patent by using the Guardian Platform on a computing device with a processor and system memory, assisting an investigator in conducting a background investigation of an application within an organization by:

receiving a first set of program data comprising information identifying
the applicant, the position, the organization, and the investigator;
storing a new applicant entry in the system memory, the new applicant entry associated with the first set of program data;
transmitting an applicant hyperlink to an applicant email address associated with the applicant, the applicant hyperlink for viewing an applicant set of electronic documents;
receiving an applicant electronic response with a reference set of program data, wherein the reference set of program data comprises information regarding a reference source, wherein the reference source is a person, the program data including a reference email address associated with the reference source;
determining a reference class of the reference source based on the reference set of program data;
selecting a reference set of electronic documents based on the reference class of the reference source;
transmitting a reference hyperlink to the reference email address, the reference hyperlink for viewing the reference set of electronic documents;
receiving a reference electronic response to the reference set of electronic documents from the reference source;
storing the reference electronic response in the system memory, associating the reference electronic response with the new applicant entry; and
generating a suggested reference list of one or more law enforcement agencies based on an applicant residential address.

**ANSWER**: OKC admits that it uses the Guardian Alliance Technologies investigation software platform, which it acquired after conducting its November 2017 Request for Proposal 181003 for a Police Applicant Tracking Software for the Oklahoma City Police Department. OKC denies that it ever has infringed any claim of the '188 Patent, either literally or equivalently. OKC further admits that it never sought the consent or permission of either or both of the Plaintiffs to use the Guardian Alliance Technologies investigation software platform, however OKC had no legal reason to seek such consent or

permission. The remaining allegations in Paragraph 15 of the Second Amended Complaint

call for a legal conclusion, consequently OKC provides no response to those allegations.

16.     Plaintiffs are entitled to recover from Defendant the damages sustained by Plaintiffs as a result of Defendant's wrongful acts in an amount subject to proof at trial, but not less than a reasonable royalty.

**ANSWER**:   OKC denies the allegations in Paragraph 16 of the Second Amended

Complaint.

17.     Defendant's infringing use will cause ongoing and future harm to Plaintiffs, which may be difficult or impossible to reduce to a sum certain of money damages.

**ANSWER**:   OKC denies the allegations in Paragraph 17 of the Second Amended

Complaint.

18.     Plaintiffs have been and continue to be irreparably harmed by the acts of Defendant and this harm is not remediable by damages alone. A patent is a property right of limited duration. Every day of continuing infringement lessens, taints, and depletes the rights and entitlements granted by the '188 Patent. Every day of continuing infringement interferes with Plaintiffs' ability to realize value on the '188 Patent through licensing or directly marketing to others and/or through price erosion.

**ANSWER**:   OKC admits a patent is a property right of limited duration. OKC

denies the remaining allegations in Paragraph 18 of the Second Amended Complaint.

19.     The public has an overriding interest in protecting patent rights and in the enforcement of patent laws.

**ANSWER**:   OKC admits that the public has an interest in protecting patent rights

and enforcing patent laws, but denies the remaining allegations in Paragraph 19 of the

Second Amended Complaint.

20.     Defendant's infringement of Plaintiffs' exclusive rights under the '188 Patent will continue to damage Plaintiffs' business, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

7

**ANSWER**:   OKC denies the allegations in Paragraph 20 of the Second Amended Complaint.

21.    Defendant has infringed and continues to infringe the '188 Patent directly and/or through acts of inducement in violation of 35 U.S.C. § 271(a) and/or (b).

**ANSWER**:   OKC denies the allegations in Paragraph 21 of the Second Amended Complaint. OKC further alleges that it had no knowledge that any product it used or uses allegedly infringes any specific claim of the '188 Patent, and therefore, it could not have induced any alleged infringement of any specific claim of the '188 Patent.

22.    As a result of Defendant's infringement, Plaintiffs have suffered and continues to suffer damages in an amount to be determined at trial.

**ANSWER**:   OKC denies the allegations in Paragraph 22 of the Second Amended Complaint.

23.    Unless Plaintiffs receive temporary, preliminary, and permanent injunctive relief enjoining Defendant's use of infringing products and systems, including the Guardian Platform, Plaintiffs will be irreparably injured.

**ANSWER**:   OKC denies the allegations in Paragraph 20 of the First Amended Complaint.

24.    Plaintiffs are informed and believe that Defendant's infringement of the '188 Patent has been willful and deliberate, entitling Plaintiffs to increased damages under 35 U.S.C. § 284, and, in addition, Defendant's conduct renders this an exceptional case under 35 U.S.C. § 285, thus entitling Plaintiffs to an award of attorney fees.

**ANSWER**:   OKC denies the allegations in Paragraph 24 of the Second Amended Complaint.

25.    To the extent of any claim to sovereign immunity, Plaintiffs are informed and believe and therefore contend such immunity has been and/or should be considered to have been waived.

**ANSWER**:   OKC denies the allegations in Paragraph 25 of the Second Amended Complaint.

## SECOND CLAIM FOR RELIEF
## --AGAINST GAT
### (Defamation)

26.    Plaintiffs adopt and re-allege each and every numbered paragraph above as if set forth verbatim herein at this point.

**ANSWER**:   OKC incorporates by reference and re-alleges each and every Answer to Plaintiffs' allegations contained in numerical Paragraphs 1 through 25 as though fully set forth herein.

27.    Plaintiffs are informed and believe and on that basis allege Defendant GAT defamed Plaintiffs by publishing with the intent to be viewed by customers and/or potential customers of Plaintiffs, and which were viewed by potential customers and/or customer of Plaintiffs, false and defamatory statements, unprivileged, that Plaintiffs committed fraud on the United States Patent & Trademark Office in the prosecution of Plaintiffs patents, including the '188 Patent; that these statements are untrue and without basis in fact; and that GAT knew at the time of utterance that the statements were untrue and without basis in fact; that these statements by Defendant GAT were negligently, recklessly/and/or intentionally uttered in disregard of the truth or falsity, and/or constituted actual malice on the party of GAT; that Plaintiffs are not public figures or public officials; that GAT's false and defamatory statements are defamatory per se and/or foreseeably and directly causing harm and damage to Plaintiffs and their trade, business and/or profession; that GAT's false and defamatory statements exposed Plaintiffs to ridicule; and that GAT's false and defamatory statements impute criminal conduct to Plaintiffs, specifically fraud upon a Federal agency.

**ANSWER**: Plaintiffs' cause of action for defamation is not brought against OKC and therefore, this allegation requires no response from OKC. To the extent this allegation requires an answer from OKC, OKC denies the allegations of Paragraph 27 of Plaintiffs' Second Amended Complaint.

28.    GAT's actions described herein constitute libel in violation of Okla. Stat. Ann. tit. 12, § 1441.

9

**ANSWER**:   Plaintiffs' cause of action for defamation is not brought against OKC
and therefore, this allegation requires no response from OKC. To the extent this allegation
requires an answer from OKC, OKC denies the allegations of Paragraph 28 of Plaintiffs'
Second Amended Complaint.

29.    Plaintiffs are informed and believe and on that basis allege that Oklahoma
City, or its representatives or agents, provided documents and information to GAT to
facilitate GAT in making its false and defamatory statements, specifically, that Oklahoma
City submitted to Plaintiffs its required Noninfringement and invalidity contentions, and
then also, without notice to Plaintiffs, provided those contentions to GAT, which GAT then
improperly used to fabricate and declaim the false and defamatory statements for which it
is charged.

**ANSWER**:   OKC denies the allegations in Paragraph 29 of the Second Amended
Complaint.

30.    Plaintiffs are informed and believe and on that basis allege that Oklahoma
City, or its agents or representatives, knew of those false and defamatory statements by
GAT and may have reviewed those statements prior to GAT publishing the false and
defamatory statements.

**ANSWER**:   OKC denies the allegations in Paragraph 30 of the Second Amended
Complaint.

31.    Plaintiffs are informed and believe and on that basis allege that Exhibit "2"
hereto and incorporated herein is a true and correct copy of the defamatory website
"thetruthaboutmillermendel.com", published by Defendant GAT on August 22, 2019 with
the input and/or assistance of the Defendant Oklahoma City and /or Oklahoma City's
attorneys and/or agents.

**ANSWER**:   Plaintiffs' cause of action for defamation is not brought against OKC
and therefore, this allegation requires no response from OKC. To the extent this allegation
requires an answer from OKC, OKC denies the allegations of Paragraph 31 of Plaintiffs'
Second Amended Complaint.

10

## THIRD CLAIM FOR RELIEF
## --AGAINST GAT
### (Declaration of No Inequitable Conduct/Patent Fraud)

32.    Plaintiffs adopt and re-allege each and every numbered paragraph above as if set forth verbatim herein at this point.

**ANSWER**:    OKC incorporates by reference and re-alleges each and every Answer to Plaintiffs' allegations contained in numerical Paragraphs 1 through 31 as though fully set forth herein.

33.    This action arises under the patent laws of the United States, Title 35 of the United States Code (35 U.S.C. § 1, et seq.), and under the Federal Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202), and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question).

**ANSWER**:    Plaintiffs' cause of action for a declaratory judgment of no inequitable conduct/patent fraud is not brought against OKC and therefore, this allegation requires no response from OKC. To the extent this allegation requires an answer from OKC, OKC denies the allegations of Paragraph 33 of Plaintiffs' Second Amended Complaint.

34.    Plaintiffs are informed and believe and on that basis allege Defendant GAT accuses Plaintiffs of committing fraud on the United States Patent & Trademark Office in in the prosecution of Plaintiffs patents, including the '188 Patent, constituting therefore inequitable conduct to render the '188 Patent, at least, unenforceable; that these statements are untrue and without basis in fact.

**ANSWER**:    Plaintiffs' cause of action for a declaratory judgment of no inequitable conduct/patent fraud is not brought against OKC and therefore, this allegation requires no response from OKC. To the extent this allegation requires an answer from OKC, OKC denies the allegations of Paragraph 34 of Plaintiffs' Second Amended Complaint.

35.    Plaintiffs are informed and believe and on that basis allege Defendant GAT is preparing to file an action against Plaintiffs for such alleged fraud, and has stated has much in its defamatory website, "*thetruthaboutmillermendel.com*", as published on August

22, 2019. Exhibit "2" hereto and incorporated herein is a true and correct copy of that website copied on that date.

**ANSWER**:   Plaintiffs' cause of action for a declaratory judgment of no inequitable conduct/patent fraud is not brought against OKC and therefore, this allegation requires no response from OKC. To the extent this allegation requires an answer from OKC, OKC admits Exhibit 2 to Plaintiffs' Second Amended Complaint contains the statement: "These allegations are not made lightly – Guardian is in the early stages of preparing an action against Miller Mendel and Mr. Miller, individually, once the evidence is developed to support the belief that fraud was committed on the patent office in obtaining their patents."

36.     Plaintiffs are informed and believe and on that basis allege that there is an actual case or controversy.

**ANSWER**:   Plaintiffs' cause of action for a declaratory judgment of no inequitable conduct/patent fraud is not brought against OKC and therefore, this allegation requires no response from OKC. To the extent this allegation requires an answer from OKC, OKC admits GAT's statement regarding Plaintiffs' inequitable conduct raises an actual case or controversy.

37.     By Defendant GAT's actions, Plaintiffs are in reasonable apprehension of an imminent suit against Plaintiffs for such alleged fraud upon the United States Patent & Trademark Office relating to the '188 Patent.

**ANSWER**:   Plaintiffs' cause of action for a declaratory judgment of no inequitable conduct/patent fraud is not brought against OKC and therefore, this allegation requires no response from OKC. To the extent this allegation requires an answer from OKC, OKC is without sufficient information to form a belief as to the truth or falsity of whether Plaintiffs

are "in reasonable apprehension of an imminent suit against" them and, therefore, denies the allegations in Paragraph 37 of Plaintiffs' Second Amended Complaint.

38.     Plaintiffs deny that they have committed fraud upon the United States Patent & Trademark Office, and now seeks a declaratory judgment that they have not committed fraud upon the United States Patent & Trademark Office.

**ANSWER**: Plaintiffs' cause of action for a declaratory judgment of no inequitable conduct/patent fraud is not brought against OKC and therefore, this allegation requires no response from OKC. To the extent this allegation requires an answer from OKC, OKC admits that Plaintiffs are seeking a declaratory judgment that they have not committed fraud upon the United States Patent & Trademark Office.

39.     The controversy is such that, pursuant to Federal Ru1e of Civil Procedure 57 and 28 U.S.C. § 2201 *et seq.*, Plaintiffs are entitled to a declaration, in the form of a judgment, that by their activities Plaintiffs have not committed fraud upon the United States Patent & Trademark Office. Such a determination and declaration is necessary and appropriate at this time.

**ANSWER**:   Plaintiffs' cause of action for a declaratory judgment of no inequitable conduct/patent fraud is not brought against OKC and therefore, this allegation requires no response from OKC. To the extent this allegation requires an answer from OKC, OKC denies the allegations in Paragraph 39 of Plaintiffs' Second Amended Complaint.

**PRAYER FOR RELIEF**

In response to Plaintiffs' prayer for relief, OKC denies each and every allegation contained therein and, further, OKC specifically denies that Plaintiffs are entitled to any of the relief requested in the Second Amended Complaint; specifically denies that Plaintiffs are entitled to an adjudication that the '188 Patent is valid and enforceable; specifically denies that Plaintiffs are entitled to an adjudication that OKC has infringed or is infringing,

directly or indirectly, any claim of the '188 Patent; specifically denies that Plaintiffs have been damaged by any acts of OKC in any way or that Plaintiffs are entitled to any award of damages, costs, expenses, interest or of enhanced damages; specifically denies that Plaintiffs are entitled to any injunctive relief; specifically denies that Plaintiffs are entitled to attorney's fees or costs of suit; specifically denies that Plaintiffs are entitled to a declaratory judgment that they have not committed fraud upon the USPTO or that they have not committed inequitable conduct in relation to the '188 Patent family; specifically denies that Plaintiffs are entitled to any damages for defamation; and specifically denies that Plaintiffs are entitled to an award of pre- and post-judgment interest.

## DEMAND FOR A JURY TRIAL

Plaintiffs' demand for a jury trial is not a factual allegation, and OKC accordingly is not required to provide a response.

## OKC'S AFFIRMATIVE DEFENSES

OKC alleges the following as separate and affirmative defenses to the Second Amended Complaint. By virtue of having listed the following defenses, OKC does not assume any legal or factual burden not otherwise assigned to it under the law:

## FIRST AFFIRMATIVE DEFENSE

1.    OKC has not engaged in any acts that would constitute direct, indirect, or joint infringement of any valid claim of the '188 Patent, either literally or under the doctrine of equivalents, willfully or otherwise.

APPX00189

**SECOND AFFIRMATIVE DEFENSE**

2.      OKC does not make, use, sell, or offer to sell each claimed element of any asserted claim of the '188 Patent, nor does OKC direct or control another entity to make, use, sell, or offer to sell any element which is not made, used, sold, or offered to be sold by OKC.

**THIRD AFFIRMATIVE DEFENSE**

3.      OKC had no knowledge that any product it used or uses allegedly infringes any specific claim of the '188 Patent, and therefore, it could not have induced any alleged infringement of any specific claim of the '188 Patent.

**FOURTH AFFIRMATIVE DEFENSE**

4.      The claims of the '188 Patent are invalid and/or unenforceable for failure to satisfy the conditions of patentability set forth in 35 U.S.C. §§ 101 *et seq.*, including at least sections 101, 102, 103, and 112.

**FIFTH AFFIRMATIVE DEFENSE**

5.      Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver, laches, and/or estoppel.

**SIXTH AFFIRMATIVE DEFENSE**

6.      The First Amended Complaint fails to state a claim upon which relief may be granted.

**SEVENTH AFFIRMATIVE DEFENSE**

7.      Plaintiffs are barred, under the doctrine of prosecution history estoppel, from construing the claims the '188 Patent in such a way as may cover any of the products or

APPX00190

processes used by OKC by reasons of statements made to the United States Patent and Trademark Office during the prosecution of the application that led to the issuance of the '188 Patent.

## <u>EIGHTH AFFIRMATIVE DEFENSE</u>

8.      The '188 Patent is unenforceable because inventor Tyler Miller and his patent attorney, Philip Hunt of Rylander & Associates, PC, failed to disclose all noncumulative, material prior art of which they were aware to the U.S. Patent and Trademark Office during prosecution of the '188 Patent.

9.      Pursuant to 37 C.F.R. § 1.56, Miller and Mr. Hunt each had a continuing duty during the prosecution of the '188 Patent, i.e. May 26, 2015 to August 7, 2018, to disclose all information they were aware of that was material and not merely cumulative over the prior art already before the USPTO.

10.     Miller and Mr. Hunt violated that continuing duty when they failed to disclose the existence of a background investigation system and software owned by Background Solutions, LLC during prosecution of the '188 Patent.

11.     The application date for the '188 Patent (application no. 14/721,707) is May 26, 2015, and it issued on issued on August 7, 2018.

12.     On information and belief, certainly prior to August 7, 2018 (when the '188 Patent issued) and perhaps even before application no. 14/721,707 was filed, Miller was aware of the Background Solutions background investigation system and software and all of its pertinent features.

16

13.     During prosecution of the '188 Patent, Miller and his patent attorney Philip
Hunt amended claims 1, 5, and 9 to add the limitation, "generating a suggested reference
list of one or more law enforcement agencies based on the applicant residential address."
October 23, 2017 Amendment and Response to Office Action, a true and correct copy of
which is attached hereto as Exhibit 1.

14.     Miller and Mr. Hunt argued that the added limitation—

[I]s a slightly broader version of a limitation in claims 1, 5 and 9 of the parent
application, now issued as US9070098. Claims 1, 5 and 9 of the instant
application after this amendment are now very similar to claims 1, 5 and 9 of
the '098 patent. The same reasoning the Applicant advanced in the
prosecution of the '098 patent applies here as well. Parikh teaches e-dossiers
that may have candidate referral information, but Parikh is silent on how
information is obtained and entered into the e-dossier. The other art of record
does not supply this deficiency of Parikh. For at least these reasons, the
Applicant believes these claims are patentable.

*Id.*

15.     On December 9, 2014, during prosecution of the '098 Patent, Messrs. Miller
and Hunt further amended claims 1, 5, and 9 of the '098 Patent to include the limitation
"generating a suggested reference list of one or more law enforcement agencies and/or
courts within a pre-defined radius around the applicant residential address; and presenting
the suggested reference list to the investigator." December 9, 2014 Amendment and
Response to Office Action in '098 Prosecution, a true and correct copy of which is attached
hereto as Exhibit 2.

16.     On December 26, 2017, the USPTO issued an office action rejecting Claims
1-3, 5-7, 9, 13-14, and 16 of the '188 Patent under pre-AIA 35 U.S.C. § 103(a), in part
because:

APPX00192

Duffy teaches generating a suggested reference list of one of more law enforcement agencies based on an applicant residential address (¶0105; note that Duffy is not directed to law agencies. However, this is would be obvious to use generating a list to one of ordinary skill in the art with the above references that deals with law enforcement).

December 26, 2017 Office Action, a true and correct copy of which is attached hereto as

Exhibit 3.

17.     In response, Miller and Mr. Hunt argued:

Regarding rejection of c1aim 1 as obvious, OA pages 16-17 states "Duffy teaches generating a suggested reference list of one of more law enforcement agencies based on an applicant residential address." Examiner acknowledges that Duffy is "not directed at law enforcement agencies. Applicant points out that Duffy is not only not directed at employment background checks for law enforcement agencies. It is also not directed at any type of background investigations for any type of employer. It is directed at product recalls, a completely unrelated field and one that is not reasonably pertinent to the field of background investigations.

March 7, 2018 Applicant Initiated Interview Summary, a true and correct copy of which is

attached hereto as Ex. 4.

18.     On June 22, 2018, the USPTO issued a Notice of Allowance for the '188

Patent, stating as the reason for allowance that—

Prior art does not teach " ... investigator ... associating the reference electronic response with the new application entry and ... generating a suggested reference list of one more law enforcement agencies based on an applicant residential address" of Claim 1. Note that Claims 5, 9 and 16 are substantially similar to Claim 1, thus the same rationale applies with respect to prior art and allowance.

The closest prior art are Parikh et al. US 2012/0089528A1, LaPasta et al. US 2005/0033633A1, Ritzel US 6904407 B2 and Duffy et al. US 2009/0319331 A 1.

However, prior art still fail (*sic*) to teach " ... investigator ... associating the reference electronic response with the new application entry and ...

generating a suggested reference list of one more law enforcement agencies based on an applicant residential address" of Claim 1. Note that Claims 5, 9 and 16 are substantially similar to Claim 1, thus the same rationale applies with respect to prior art and allowance.

In addition, Applicant's arguments filed 4/26/2018 have been considered and found persuasive.

June 22, 2018 Notice of Allowance, a true and correct copy of which is attached hereto as Exhibit 5.

19.     The Background Solutions background investigation system and software, which was publicly-available prior to the earliest possible priority date of the '188 Patent and of which Miller and Hunt were aware during prosecution of the '188 Patent discloses automatically generating a list of law enforcement agencies within a certain radius based on residential address information in the electronic application as was disclosed in public presentations regarding the Background Solutions, as follows:





18.     Miller was aware no later than August 9, 2012, that the Background Solutions background investigation system and software had been used by the King County (WA) Sheriff's Department for several years. *See*, August 9, 2012 email thread between Miller and Detective Robert Burrows of the King County (WA) Sheriff's Office Background Investigation Unit (KSCO-00071–00072), a true and correct copy of which is attached hereto as Exhibit 6.

19.     No later than February 28, 2014, i.e. more than a year before the application date of the '188 Patent, Miller was aware that the Background Solutions system auto-generates correspondence letters in the background investigation process based on the residential address of the applicant. *See*, February 28, 2014 email thread between Miller;

APPX00195

Alexandra Ehlert, Human Resources Associate for the King County (WA) Sheriff's Office; and Mark Sawa of the Travis County (TX) Sheriff's Department (KCSO-00116–00119), a true and correct copy of which is attached hereto as Exhibit 7.

20.     The Background Solutions background investigation system is therefore material to the patentability of the '188 Patent, particularly as to the limitation "generating a suggested reference list of one or more law enforcement agencies based on the applicant residential address." The patent examiner would not have allowed the claims of the '188 Patent to issue in their present form had Miller and/or Hunt disclosed the Background Solutions background investigation system to the Patent Office because that the withheld information provides a teaching that was absent from the prior art relied upon by the examiner, which Messrs. Miller and Hunt actively argued was not present in the prior art.

21.     Specifically, the examiner allowed the claims of the '188 Patent after accepting Messrs. Miller and Hunt's arguments that the "[p]rior art does not teach " ... investigator ... associating the reference electronic response with the new application entry and ... generating a suggested reference list of one more law enforcement agencies based on an applicant residential address."

22.     Thus, "but for" Messrs. Miller and Hunt violating their duty of candor and good faith in dealing with the United States Patent and Trademark Office the '188 Patent would not have been issued by the USPTO.

23.     Based on Mr. Miller's prior awareness of the Background Solutions background investigation system and software, and particularly his familiarity with its features, on information and belief, the failure of inventor Miller and his patent attorney

APPX00196

Philip Hunt, to disclose the Background Solutions background investigation system to the United States Patent and Trademark Office was done with intent to deceive the USPTO.

OKC reserves the right to assert additional defenses that it learns of through discovery in this action.

## OKC'S PRAYER FOR RELIEF

OKC seeks the following relief:

    a.  A judgment that OKC has not infringed any claim of the '188 Patent;

    b.  A judgment that the '188 Patent is invalid and/or unenforceable against OKC;

    c.  A judgment that the '188 Patent is unenforceable because of Tyler Miller and Philip Hunt's inequitable conduct;

    d.  A judgment declaring this case exceptional under 35 U.S.C. § 285 and awarding OKC its attorneys' fees and prejudgment interest, and an award to OKC of all its costs of this action; and

    e.  Such other relief as the Court deem just and proper.

## OKC'S DEMAND FOR A JURY TRIAL

OKC demands a trial by jury on all issues so triable.

Dated: November 10, 2020        Respectfully submitted,

                    */s/ Evan W. Talley*
                    Evan W. Talley, OBA # 22923
                    Douglas J. Sorocco, OBA # 17347
                    **DUNLAP CODDING PC**
                    609 W. Sheridan Avenue

APPX00197

# EXHIBIT I

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| MILLER MENDEL, INC., | § |
| | § |
| *Plaintiff,* | § |
| | § |
| | § |
| v. | §    CIVIL ACTION NO.  2:21-CV-00445-JRG |
| | § |
| CITY OF ANNA, TEXAS, | § |
| | § |
| | § |
| *Defendant.* | § |

## **ORDER**

Before the Court is the Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c) and 35 U.S.C. § 101 (the "Motion") filed by Defendant City of Anna, Texas (the "City") on February 15, 2022. (Dkt. No. 16.) In the Motion, the City seeks judgment on the pleadings that the subject matter of U.S. Patent No. 10,043,188 (the "'188 Patent") is ineligible for patent protection under 35 U.S.C. § 101. (*Id.* at 1–2.)

## I.   BACKGROUND

### a.  Procedural History

Plaintiff Miller Mendel, Inc. ("Miller Mendel") filed a Complaint on December 2, 2021 alleging infringement of "at least Claims 1, 5, and 15" of the '188 Patent by the City and the Anna Police Department. (Dkt. No. 1.)[1] Miller Mendel alleges that the City, "by and through its authorized agency the Anna Police Department," uses the "Guardian Alliance Technologies investigation software platform" (the "Guardian Platform") and infringes the '188 Patent through use of the Guardian Platform "on a computing device with a processor and system memory[ to

---

[1] An Amended Complaint was filed on February 22, 2022 removing the Anna Police Department as a named defendant. (Dkt. No. 21; *see also* Dkt. Nos. 13, 22, 32.)

assist] an investigator in conducting a background investigation of an application within an organization." (Dkt. No. 21, ¶ 12.)

Miller Mendel has filed several lawsuits throughout the country alleging that customers of Guardian Alliance Technologies ("GAT") infringe the same claims of the '188 Patent. (Dkt. No. 16 at 1–2.) In October 2018, Miller Mendel sued the City of Oklahoma City in the Western District of Oklahoma (the "Oklahoma Action"). (*Id.*; *see also* Case. No. CIV-18-990-JD (W.D. Okla.).) In the Oklahoma Action, the defendant filed a § 101 motion that was denied based on factual disputes pending claim construction. (Dkt. No. 16 at 1; *see also* Case. No. CIV-18-990-JD, Dkt. No. 32 (W.D. Okla.).) Claim construction in the Oklahoma Action was fully briefed as of May 10, 2021, a *Markman* hearing has not been scheduled, and a claim construction order has not yet issued. (*See, e.g.*, Dkt. No. 16 at 1; *see also* Dkt. No. 24 at 3; Case. No. CIV-18-990-JD, Dkt. No. 122 (W.D. Okla.).) In February 2021, Miller Mendel filed an infringement suit against Washington County, Oregon (the "Oregon Action") (Case No. 3:21-cv-00168-SB (D. Ore.)) and in May 2021, Miller Mendel sued the State of Alaska (the "Alaska Action") (Case No. 3:21-cv-00129-HRN (D. Alaska)). (Dkt. No. 16 at 1.) Both the Oregon Action and the Alaska Action have been stayed pending the outcome of the Oklahoma Action. (*Id.* at 1–2.) In all pending actions filed by Miller Mendel against GAT customers, "GAT is contractually obligated to defend and indemnify Miller Mendel's claims for patent infringement." (*Id.* at 7.)

### b. The '188 Patent

The '188 Patent is entitled "Background Investigation Management Service" and was issued on August 7, 2018. The '188 Patent is directed to a "software system for managing the process of performing pre-employment background investigations." ('188 Patent at 3:66–4:2.) The '188 Patent describes a "software system 100 [that] allows an organization 102 the ability to create

and customize electronic documents 104 to be sent to applicants to complete via the software system 100, and returned to the software system 100 in similar fashion." (*Id*. at 4:5–9.)

The specification notes that the "system 100 automates the majority of the tasks of a common pre-employment background investigation so that fewer hardcopy documents are necessary, thus creating more efficient management of individual background investigations." (*Id*. at 4:12–16.) The system also "automatically processes information entered in the documents to save organizations time and allow quicker turnaround of the background investigation." (*Id*. at 4:33–36.) The "technical functions and features" of the system are "initiated when a remote terminal communicates with a central computer (server) via the Internet or other network." (*Id*. at 4:41–44.) Claim 1 of the '188 Patent reads as follows: [2]

> A method for a computing device with a processor and a system memory to assist an investigator in conducting a background investigation of an applicant for a position within a first organization, comprising the steps of:
>
>> receiving a first set of program data comprising information identifying the applicant, the position, the first organization, and the investigator;
>>
>> storing a new applicant entry in the system memory, the new applicant entry associated with the first set of program data;
>>
>> transmitting an applicant hyperlink to an applicant email address associated with the applicant, the applicant hyperlink for viewing an applicant set of electronic documents;
>>
>> receiving an applicant electronic response with a reference set of program data, wherein the reference set of program data comprises information regarding a reference source, wherein the reference source is a person, the program data including a reference email address associated with the reference source;

---

[2] The parties agree that Claim 1 of the '188 Patent is representative of the asserted claims. (Dkt. No. 16 at 9, n.1; Dkt. No. 24 at 4.) The Court finds that Claim 1 is representative of Claim 5, which merely claims a "non-transitory computer-readable medium" with instructions for performing the method of Claim 1. Claim 1 is also representative of Claim 15, which merely broadens the "applicant residential address" recited in the final limitation of Claim 1 to include an "applicant current residential address, an applicant past address, and a reference source address." Such a distinction is immaterial to the patent eligibility analysis of the claims of the '188 Patent. *Content Extraction and Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

> determining a reference class of the reference source based on the reference set of program data;
>
> selecting a reference set of electronic documents based on the reference class of the reference source;
>
> transmitting a reference hyperlink to the reference email address, the reference hyperlink for viewing the reference set of electronic documents;
>
> receiving a reference electronic response to the reference set of electronic documents from the reference source;
>
> storing the reference electronic response in the system memory, associating the reference electronic response with the new applicant entry; and
>
> generating a suggested reference list of one or more law enforcement agencies based on an applicant residential address.

('188 Patent at Claim 1.)

The parties agree that during prosecution of the '188 Patent, "the examiner rejected all pending claims under Section 101 as patent ineligible[.]" (Dkt. No. 24 at 3; *see also* Dkt. No. 16 at 10–11 (noting that the "patent examiner found that the proposed claims fall under the abstract concept of 'Fundamental Economic Practices.'").) Miller Mendel contends that to counter that rejection, the applicant pointed to the step of Claim 1 that recites "generating a suggested reference list of one or more law enforcement agencies based on an applicant residential address." (*Id.* at 3–4.) The specification of the '188 Patent refers to this feature as the "Address Locator," which "will retrieve law enforcement and court names, addresses and phone numbers for a pre-defined radius around the applicant's past and current addresses, and those addresses of the applicant's employer's [*sic*] and relatives." ('188 Patent at 9:48–53.) Specifically:

> The system does this by taking the address information the applicant provided on questionnaires he or she submitted to the organization via the software system. The system then conducts a search using an Internet search engine for agencies and courts around the selected address. A list of agencies and courts is presented to the user at which time the organization user selects which agencies and courts the organization will send reference letters and requests for records checks to. The user can also edit the address in case of any system mistake.

(*Id.* at 9:54–62.)

The City also points out that, in response to the § 101 rejection, the applicant argued that the examiner's rejection was incorrect because the examiner "failed to expressly support the necessary underlying fact determinations to reach such a conclusion, as required by Patent Office guidelines then in effect for a § 101 rejection, namely: (1) a citation to an express statement by applicant; (2) a court decision finding similar claim language ineligible; (3) a publication that demonstrates the well-understood, routine, conventional nature of the additional element(s); or (4) a statement that the examiner is taking official notice of the well-understood, routine, conventional nature of the additional element(s)." (*Id.* at 11) (quotations omitted). The claims were subsequently allowed. (*Id.*)[3]

## II.     LEGAL STANDARD

### a.     Rule 12(c)

After the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). "The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss…[t]he plaintiff must plead 'enough facts to state a claim for relief that is plausible on its face.'" *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). In a patent case, the Federal Circuit reviews procedural aspects of motions for judgment on the pleadings using regional circuit law. *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1325–26 (Fed. Cir. 2017).

---

[3]   In reviewing the prosecution history of the '188 Patent, the Court notes that both the applicant and the examiner conflated the analysis under 35 U.S.C. § 101 with the analysis under 35 U.S.C. §§ 102 and 103, and the Court further notes that the examiner did not provide any specific analysis in the Notice of Allowance regarding § 101. (*See, e.g.*, April 26, 2018 Amendment/Reply to Non-Final Office Action at 9 ("The Examiner tentatively agreed that if claims are allowable over the prior art – that is, there are no novelty and obviousness rejections on those claims, then the claims represent 'something more' than a mere abstract idea and are patentable."); *id.* at 12 ("Since the claims are patentable over the prior art, they are inventive and therefor 'something more' than an abstract concept."); *see also* Notice of Allowability at 2 ("[T]he Examiner finds the claimed invention to be patentably distinct from the prior art of records [*sic*]."); *id.* at 3 ("Applicant's arguments filed 4/26/2018 have been considered and found persuasive.").)

### b. Patent Eligibility

Anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. 35 U.S.C. § 101. Since patent protection does not extend to claims that monopolize the "building blocks of human ingenuity," claims directed to laws of nature, natural phenomena, and abstract ideas are not patent eligible. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The Supreme Court instructs courts to distinguish between claims that set forth patent-ineligible subject matter and those that "integrate the building blocks into something more." (*Id.*)

First, the court "determine[s] whether the claims at issue are directed to a patent-ineligible concept." (*Id.* at 2355.) In doing so, the court must be wary not to overgeneralize the invention, as "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." (*Id.* at 2354) (omission in original). In other words, the court must distinguish between "ineligible 'abstract-idea-based solution[s] implemented with generic technical components in a conventional way' from the eligible 'technology-based solution' and [a] 'software-based invention[] that improve[s] the performance of the computer system itself.'" *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1299 (Fed. Cir. 2016) (quoting *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1351 (Fed. Cir. 2016)) (alteration in original).

If the challenged claims recite a patent-ineligible concept, the court then "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Alice*, 134 S. Ct. at 2355 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78–79 (2012)). This step is satisfied when the claim limitations "involve more than performance

of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction*, 776 F.3d at 1347–48 (quoting *Alice*, 134 S. Ct. at 2359). The Federal Circuit has explained that "[w]hile the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix Software, Inc. v. Green Shades Software, Inc*., 882 F.3d 1121, 1128 (Fed. Cir. 2018). As such, "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact" that must be "proven by clear and convincing evidence." *Berkheimer v. HP Inc*., 881 F.3d 1360, 1368 (Fed. Cir. 2018).

Something is not necessarily well-understood, routine, and conventional simply because it is disclosed in a prior art reference. *Exergen Corp. v. KAZ USA, Inc*., 725 F. App'x 959, 965 (Fed. Cir. 2018). There are many obscure references that may qualify as prior art but are insufficient to establish something is a "well-understood, routine, and conventional activity previously engaged in by [those] who work in the field." *Mayo*, 566 U.S. at 79. Additionally, specific improvements described in a patent specification, "to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities." *Berkheimer*, 881 F.3d at 1369. However, "[w]hen there is no genuine issue of material fact regarding whether the claim element or claimed combination is well understood, routine, conventional to a skilled artisan in the relevant field, [patent eligibility] can be decided … as a matter of law." (*Id*. at 1368.)

## III.    DISCUSSION

### a.   The Claims of the '188 Patent are Directed to an Abstract Idea

In the first step of the patent eligibility analysis, the court "determine[s] whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 134 S. Ct. at 2355. "If not, the claims pass muster under § 101." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014). In making this determination, the court looks at what the claims cover. *See id*. ("We first examine the claims because claims are the definition of what a patent is intended to cover."). "[T]he 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification," and asks "whether 'their character as a whole is directed to excluded subject matter.'" *Enfish, LLC v. Microsoft Corp*., 822 F.3d 1327, 1335 (Fed. Cir. 2016) (quoting *Internet Patents Corp. v. Active Network, Inc*., 790 F.3d 1343, 1346 (Fed. Cir. 2015)).

The City contends that "[p]erforming background checks and collecting information from references is an abstract idea because the process is one that has historically been performed by hand using paper." (Dkt. No. 16 at 18.) The City also argues that the '188 Patent's "supposed improvement over the manual method is performing these tasks with an automated system, thereby helping a background investigator more efficiently and effectively conduct a background investigation." (*Id*. at 18–19) (quotations omitted). Another purported technical advance of the '188 Patent is to "generat[e] a suggested reference list of one or more law enforcement agencies based on an applicant residential address." (*Id*. at 20 (quoting '188 Patent at Claim 1).) According to the City, this "requires no specific improvement in computer capabilities, nor does it add any technological improvements to" the "time-honored" method of using "an applicant's residential address to determine which local law enforcement agencies to search." (Dkt. No. 16 at 20 (quoting '188 Patent at 9:53–57 ("The system does this by taking the address information the applicant

provided on questionnaires he or she submitted to the organization via the software system. The system then conducts a search using an Internet search engine for agencies and courts around the selected address.")).) The City further contends that the "claim requires no particular way of conducting the background investigation" aside from the general steps of (1) "transmitting a job application and related documents to a job applicant," (2) "collecting information from the applicant (including a list of character references)" (3) "transmitting a request for information to the character references, and" (4) "collecting and storing information from the character references." (Dkt. No. 16 at 2, 20.)

The City compares Claim 1 of the '188 Patent to the claim found patent ineligible in *SkillSurvey, Inc v. Checkster LLC*, 178 F. Supp. 3d 247, 256 (E.D. Pa. 2016), *aff'd*, 683 F. App'x 930 (Fed. Cir. 2017). There, the court "held that claims directed to a system and method of collecting and analyzing information from references identified by job candidates were invalid under § 101 for claiming an abstract idea implemented with generic computer equipment." (Dkt. No. 16 at 21 (citing *SkillSurvey*, 178 F. Supp. 3d at 255–60).) The claims at issue in *SkillSurvey* recited a "computer-implemented method that sets up initial job specific survey questions for an applicant's references, connects with the references, collects the survey data provided by the references, anonymizes the survey data, analyzes the survey data, and generates reports for the hiring manager," including "statistical scores for the applicant in competency skill groups." (Dkt. No. 16 at 21 (citing *SkillSurvey*, 178 F. Supp. 3d at 253).) The *SkillSurvey* court found that the claims, "alone and in combination, could all be completed by the human mind," albeit less efficiently than on a computer. (Dkt. No. 16 at 21 (citing *SkillSurvey*, 178 F. Supp. 3d at 256).)

In response, Miller Mendel argues that the '188 Patent was allowed "*after* the decision in *Alice*, so the USPTO is presumed to have taken *Alice* into consideration when allowing the claims"

and, in fact, "expressly considered" § 101 during prosecution. (Dkt. No. 24 at 6–7) (emphasis in original). Miller Mendel argues that since the "focus of the claimed advance over the prior art" is used to determine whether the claim is directed to an abstract idea (*id*. at 11 (quoting *Affinity Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016)), the focus of a method claim should be on the "gerund phrases" of the claim (Dkt. No. 24 at 12). Miller Mendel does not cite to any case law that endorses this "gerund phrases" approach. (*See generally* Dkt. No. 24; *see also* Dkt. No. 27 at 5.) Using this methodology, Miller Mendel concludes that the claim is directed to a method that "receives [an] applicant's information and based on that information, the method determines a reference type and transmit [*sic*] a link to that reference with a questionnaire. The method then store[s] the response and generates [a] reference list of law agencies." (*Id*. at 14.) Miller Mendel concedes that during prosecution, the examiner found that the limitation directed to "selecting a reference set of electronic documents based on the reference class of the reference source" was "an abstract concept, specifically of the mental steps type." (*Id*.)

Miller Mendel contends that "Prong Two of the first step of the *Alice* analysis as called for in MPEP 2106.04.II.2" requires an evaluation as to "whether the claim recites additional elements that integrate the exception into a practical application of that exception." (*Id*. at 15.) According to Miller Mendel, the examiner never evaluated said second "prong" of *Alice* Step One. (*Id*.) To satisfy this "additional element," Miller Mendel points to the limitation "generating a suggested reference list of one or more law enforcement agencies based on an applicant residential address," which, according to Miller Mendel, is "not inherent in the concept of background searches on job applications, nor is it inherent in collecting information on an applicant from a reference." (*Id*. at 15–16.) Miller Mendel emphasizes that the reference list is generated "based on an applicant residential address," because there are "other ways of generating a reference list other than

residential address, such as asking the applicant to list the law enforcement agencies the applicant may have previously worked." (*Id*. at 16.)

The City responds that Miller Mendel's "gerund phrase" methodology "ignores conventional methods of analyzing patent claims under *Alice*" and is not supported by any court or decision. (Dkt. No. 27 at 5.) The City notes that Miller Mendel relies on *Electric Power* to support the "gerund phrase" approach, but argues that *Electric Power* found that the "focus" of the patent claims was "not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." (*Id*. at 5 (quoting *Electric Power Group, LLC v. Alstom, S.A.*, 830 F.3d 1350, 1351–54 (Fed. Cir. 2016)).)

The City further argues that even under Miller Mendel's "novel gerund phrase" analysis, the claims of the '188 Patent do not "recite[] additional elements that integrate the exception into a practical application of that exception." (Dkt. No. 27 at 7 (citing Dkt. No. 24 at 15).) Specifically, the City contends that the limitation requiring generation of a list of law enforcement agencies based on an applicant's residential address "is nothing more than an extra-solution activity (*i.e.*, the identification of a particular source of information to be queried) and does not, therefore, bestow subject matter eligibility on the claims of the '188 Patent." (Dkt. No. 27 at 7–8; *see also id*. at 8 ("The term 'extra solution activity' can be understood as activities incidental to the primary process or product that are merely a nominal or tangential addition to the claim.").) The City quotes *British Telecommunications* for the proposition that "there is nothing inventive about the generation and transmission of a list of information sources based on user location." (Dkt. No. 27 at 8 (quoting *Brit. Telecomm. PLC v. IAC/InterActive Corp.*, 381 F. Supp. 3d 293, 313 (D. Del. 2019), *aff'd*, 813 F. App'x 584 (Fed. Cir. 2020)).) According to the City, "generating a reference list based on applicant's residential addresses does not provide any meaningful limitation to the

abstract idea of conducting background investigations." (Dkt. No. 27 at 8–9 (citing *OIP Techs., Inc. v. Amazon.com, Inc*., 788 F.3d 1359 (Fed. Cir. 2015)).)

After considering the above, the Court finds that the '188 Patent and its claims do not purport to solve any technical problem associated with prior art products or methods. Instead, the '188 Patent provides a "system for managing the process of performing pre-employment background investigations" to "save organizations time and other costly resources." ('188 Patent at 3:67–4:40.) Put another way, the "subject matter turns much of a common pre-employment background investigation electronic, so that fewer hardcopy documents are necessary, thus creating more efficient management of individual background investigations." (*Id*. at Abstract.) The Court finds such to be an abstract idea directed toward automation of basic information gathering and organization.

The claims of the '188 Patent are structurally similar to those declared patent-ineligible in *SkillSurvey*. There, the patent (the "*SkillSurvey* patent") was directed to "a human resource management system, and more particularly to a system for collecting and analyzing information from references identified by job candidates." *SkillSurvey*, 178 F. Supp. 3d at 252. Like the '188 Patent, the *SkillSurvey* patent included a "candidate database that stores survey data," a "collection module" that "sends an electronic communication to the reference providers requesting them to complete the survey questions," preferably through an internet link, and an "analysis module" that "combines the received survey data from the reference providers and generates a candidate report." (*Id*.) Also like the '188 Patent, the stated purpose of the *SkillSurvey* patent was to make reference checks "less costly" and "substantially automated." (*Id*.) One claim of the *SkillSurvey* patent expressly required a "specialize[d] computer machine with a non-transient memory having at least

one region for storing particular computer executable program code" and "at least one processor" for executing such code. (*Id*. at 253.)

The court in *SkillSurvey* found that the patent was "trying to achieve" the "abstract idea of reference checking job applicants" and that the "heart" of the patent was the "abstract idea of anonymously surveying prior employers within the context of job applications." (*Id*. at 255) (citations omitted). The court determined that the claims of the *SkillSurvey* patent, "alone and in combination, could all be completed by the human mind. A pen and paper version of the claimed method would not be particularly efficient, but it could be completed." (*Id*. at 256.) For the same reason as the claims at issue in *SkillSurvey*, the Court finds that the claims of the '188 Patent are directed to an abstract idea.

The Court is not persuaded by Miller Mendel's argument that the concept of "generating a suggested reference list of one or more law enforcement agencies based on an applicant residential address" is an "additional element" that renders the claims of the '188 Patent non-abstract. (Dkt. No. 24 at 15–16.) Although the '188 Patent mentions, *inter alia*, computers, servers, mobile phones, and personal headset devices, the claims and specification lack any disclosure or limitation that indicates a technical improvement of any such components. Figure 62, below, depicts the "example computing device 700" that may be used to implement the claimed system. ('188 Patent at 12:43–50 ("In a very basic configuration 701, computing device 700 typically includes one or more processors 710 and system memory 720.").) The '188 Patent places no limits on the type or structure of components that are used in the system. (*See, e.g.*, '188 Patent at 12:51–52 ("[P]rocessor 710 can be of any type…"); 12:63–64 ("[M]emory 720 can be of any type…"); 13:40–41 ("Any such computer storage media can be part of device 700.").)



*Fig. 62*

(*Id.* at FIG. 62.) Nor does the '188 Patent describe *how* it accomplishes any of the claimed functionalities beyond the recitation that "[e]ach of the following components and features may be implemented using software methods and processes executing on one or more computing systems[.]" (*Id.* at 5:7–10; *see also id.* at 14:21–24 ("[I]t should be appreciated that these steps may be performed in any random order and the process 800 is not defined by this particular illustrative order.").) The claim language is "entirely result-oriented, describing various operations…without explaining how to accomplish any of the tasks." *IBM v. Zillow Grp., Inc.*, 549 F. Supp. 3d 1247, 1263 (W.D. Wa. 2021) (finding claims directed to "selecting, identifying, matching, re-matching, applying, determining, displaying, receiving, and rearranging" patent-ineligible).

In sum, the Court finds that the '188 Patent is directed to an abstract idea under *Alice* Step One—the abstract idea of performing a background check.

### b. The Claims of the '188 Patent Do Not Recite Any Inventive Concept

Having found that the claims of the '188 Patent are directed to an abstract idea, the Court now turns to Step Two of *Alice*, which involves a determination of whether the elements of the invention involve "well-understood, routine, [and] conventional activities previously known to the

industry." *See, e.g., Content Extraction*, 776 F.3d at 1347–48 (quoting *Alice*, 134 S. Ct. at 2359).

*Alice* Step Two involves questions of fact. *Aatrix Software, Inc. v. Green Shades Software, Inc*., 882 F.3d 1121, 1128 (Fed. Cir. 2018).

The City argues that the claims of the '188 Patent are "invalid under § 101 for failing to contain an inventive step pursuant to the second step of the *Alice* test for statutory subject matter." (Dkt. No. 16 at 22.) The relevant question at this juncture is "whether the claims here do more than simply instruct the practitioner to implement the abstract idea on a generic computer." *Alice*, 134 S. Ct. at 2359. The City argues that the claims of the '188 Patent "invoke only generic computer components, such as a computing device with a processor and a system memory." (Dkt. No. 16 at 23 (citing '188 Patent at 15:52–53).) The City further contends that the steps of the '188 Patent are traditionally performed when conducting a "conventional and well-known background investigation" and are merely "manual tasks" that "cannot be rendered patent-eligible merely by performing them with a computer." (Dkt. No. 16 at 23–24 (citing *Apple, Inc. v. Ameranth, Inc*., 842 F.3d 1229, 1244 (Fed. Cir. 2016)).) According to the City, the "claims of the '188 Patent make plain[ that] the use of a computer is a straightforward substitute for human effort and merely automates the performance of collecting and storing the information necessary for a background investigation." (Dkt. No. 16 at 24.)

As to the claimed step of "generating a suggested reference list of one or more law enforcement agencies based on an applicant residential address," the City contends that such is not an "inventive concept capable of saving the claims" from ineligibility. (*Id*. at 24–25.) The City argues that "background investigators have previously developed lists of law enforcement agencies to contact during background investigations based on a residential address of the applicant" because a "residential address is a logical place for such an investigation to begin." (*Id*. at 25.) The

use of a general-purpose computer to generate a list of law enforcement agencies near a residential address is no different, according to the City, than "an investigator manually completing the same step" by "looking at a map of law enforcement agencies and comparing it to a residential address." (*Id.* at 25–26.) The City alleges that reference materials have long existed to serve such a purpose, such as the website https://www.usacops.com or the *National Directory of Law Enforcement*. (*Id.* at 27.)

Miller Mendel responds that the Court should "scrutinize not *what* a patent claim's subject matter is but *how* the patent's claims achieve their professed goal[.]" (Dkt. No. 24 at 17 (citing *Electric Power Group*, 830 F.3d at 1355).) Along with the "generating a suggested reference list…" step discussed *supra*, Miller Mendel points to the step reciting "storing the reference electronic response in the system memory, [and] associating the reference electronic response with the new applicant entry" as providing the requisite "inventive concept" to transform the claims of the '188 Patent into patent-eligible subject matter. (Dkt. No. 24 at 17.) Miller Mendel argues that the patent examiner found the claims to be allowable because "the prior art failed to teach" such limitations. (*Id.* at 18.) According to Miller Mendel, the examiner's finding shows that the limitations of "associating the reference electronic response with the new applicant entry" and "generating a suggested reference list of one [or] more law enforcement agencies based on an applicant residential address" were "not well-understood, routine or conventional at the time of the invention." (*Id.*) Miller Mendel argues that the City's evidence that such limitations were known—in the form of a declaration from the GAT founder—is irrelevant because it referenced background investigation techniques from 2015, which is later than the application for the '188 Patent in 2012 or the 2011 provisional application on which it depends. (*Id.* at 18–19.)[4]

---

[4] Miller Mendel also argues that the City's Motion goes "well beyond" the pleadings allowed under Rule 12(c). (*Id.* at 5–6.) The City contends that the Court can determine that the '188 Patent is directed to ineligible subject matter

In response, the City first argues that this Court owes no deference to the findings of the patent examiner. (Dkt. No. 27 at 10 (citing *Quad Environmental Technologies Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 876 (Fed. Cir. 1991)).) The City also argues that "an *Alice* inquiry is not constrained by what is known in the prior art; rather, it looks at what has been done or is capable of being done by the mind, and as the specification of the '188 Patent teaches, background investigations were routine processes within law enforcement agencies." (Dkt. No. 27 at 10.) The City contends that "[s]electing an information source based on the proximity to an applicant's residential address(es) is a mental step capable of being carried out by a mental process in combination with a telephone book, law enforcement directory, or reverse lookup" without the use of "specialized computer software, technology, or tools[.]" (*Id.*) In response, Miller Mendel again argues that the examiner "found the claimed invention to be patentably distinct from the prior art of record." (Dkt. No. 30 at 4.)

Miller Mendel's focus on novelty and non-obviousness is misplaced. As noted earlier, Miller Mendel once again conflates the analysis of whether the '188 Patent is directed to eligible subject matter under § 101 with whether it meets §§ 102 and 103's novelty requirements. *See generally In re TLI Commc'ns LLC Patent Litigation*, 87 F.Supp.3d 773, 786 (E.D. Va. 2015). The Supreme Court has unequivocally stated that such inquiries are separate and distinct. *Diamond v. Diehr*, 101 S. Ct. 1048, 1058 (1981) ("The question therefore of whether a particular invention is novel is wholly apart from whether the invention falls into a category of statutory subject matter."). In reaching this conclusion, the Supreme Court emphasized that the § 101 inquiry is distinct from other "[s]pecific conditions of patentability" including "§ 102 [which] covers in detail the

without reference to any of the declarations or exhibits attached to its Motion. (Dkt. No. 27 at 4.) Notwithstanding such disagreement, the Court finds that it reaches the same conclusions and result, both when it does and when it does not consider the declarations or exhibits attached to the City's Motion.

conditions relating to novelty." (*Id.*) Thus, any argument regarding the alleged novelty or non-obviousness of the '188 Patent has little, if any, relevance in determining whether the '188 Patent is directed to patent-ineligible subject matter.

Moreover, Miller Mendel's purported improvement over the prior art is "the alleged efficiency of the method through computerization," which is not enough to confer patent eligibility. *SkillSurvey*, 178 F. Supp. at 258. The computer and internet technologies described in the '188 Patent are generic, and requiring the use of generic computer technology does not create an inventive concept. *Alice*, 134 S. Ct. at 2358. As in *SkillSurvey*, "the addition of computerization to the abstract concept of reference checking does not add an inventive concept." *SkillSurvey*, 178 F. Supp. at 258 ("It is inarguable that using computer technology would necessarily make the claimed method more efficient. However, adding efficiency to a long-standing process through computerization also does not render an abstract idea patentable.") Additionally, "the problem being solved by the use of computer technology does not solve a specific computing problem." (*Id.*) Instead, issues associated with background checks "remain from an increasingly distant 'pre-Internet world.'" (*Id.* at 258–259.)

The Court concludes that none of the limitations add inventiveness to the abstract idea. The limitation reciting "associating the reference electronic response with the new applicant entry" is simply directed to matching a survey response with the correct applicant. However, "[s]electing files based on identifiers and matching different files/identifiers is just what computers do. There is nothing inventive about it." *Intellectual Ventures I LLC v. Erie Indem. Co.*, 200 F. Supp. 3d 565, 577 (W.D. Pa. 2016); *see also Jedi Technologies, Inc. v. Spark Networks, Inc.*, 2017 WL 3315279, at *9 (D. Del. Aug. 3, 2017) (The patent is "directed toward the abstract idea of matching people based on certain criteria."); *Voip-Pal.Com, Inc. v. Apple Inc.*, 375 F. Supp. 3d 1110, 1136 (N.D.

Cal. 2019) ("The Court finds that none of the claim's elements, assessed individually, provides an inventive concept. Claim 1 discloses: (1) receiving a caller identifier and a callee identifier after a call is initiated; (2) locating a caller dialing profile; (3) matching the information in the caller dialing profile with information in the callee identifier; and (4) classifying the call either as a public network call or a private network call based on classification criteria and producing the appropriate public network or private network routing message to be received by a call controller.").

The same is true for the limitation requiring "generating a suggested reference list of one or more law enforcement agencies based on an applicant residential address." Based on the applicant's address, the claimed system of the '188 Patent generates an internet search to find law enforcement agencies near that address, which the investigator can then call or otherwise contact using the system's email feature. This is no different than finding an applicant's address on a map and locating the closest law enforcement agencies on that map—the claimed method simply performs this step on a computer using the internet. Stating an abstract idea "while adding the words 'apply it' is not enough for patent eligibility." *Alice*, 134 S. Ct. at 2359 (quoting *Mayo*, 132 S. Ct. at 1289); *see also Jedi Technologies*, 2017 WL 3315279, at *9 (The patent is "directed toward the abstract idea of matching people based on certain criteria."). "There is nothing inventive about the generation and transmission of a list of information sources based on user location. The generation of such lists has long been well-understood, routine, and conventional, as explained above. Nor do the claims recite any novel type of information or a new way of gathering, cataloguing, or transmitting that information." *British Telecomm.*, 381 F. Supp. 3d at 313 ("The apparatus and method contemplated by the patent could be replaced by a travel agent who receives a phone call from a traveler and then provides the traveler with a list of restaurants near the traveler's location.")

## IV.    CONCLUSION

The '188 Patent claims the well-known process of performing a background check. While the patent inarguably "turns much of a common pre-employment background investigation electronic," such is not enough to make the abstract idea patent eligible. At the end of the day, it remains a "common pre-employment background investigation," which is not eligible for patent protection. Accordingly, the Motion is **GRANTED** and the above-captioned case is **DISMISSED WITH PREJUDICE**. All pending motions in the above-captioned case not explicitly granted herein are **DENIED AS MOOT**. Defendant shall further recover its costs as the prevailing party. The Clerk of Court is directed to **CLOSE** the above-captioned case.

**So ORDERED and SIGNED this 14th day of April, 2022.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

# EXHIBIT L

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| MILLER MENDEL, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:21-CV-00445-JRG |
| | § | |
| CITY OF ANNA, TEXAS, | § | |
| | § | |
| *Defendant.* | § | |

## ORDER

Before the Court is Defendant City of Anna's (the "City") Corrected Motion for Attorneys' Fees Pursuant to 35 U.S.C. § 285 (the "Motion"). (Dkt. No. 48.) In the Motion, the City requests that the Court deem this case "exceptional" and award attorneys' fees against Plaintiff Miller Mendel, Inc. ("Miller Mendel") pursuant to 35 U.S.C. § 285. (*Id*. at 1.) For the reasons below, the Motion is **DENIED**.

## I.    PROCEDURAL HISTORY

Miller Mendel filed a Complaint on December 2, 2021 alleging infringement of "at least Claims 1, 5, and 15" of the '188 Patent by the City and the Anna Police Department. (Dkt. No. 1.) An Amended Complaint was filed on February 22, 2022 removing the Anna Police Department as a named defendant. (Dkt. No. 21; *see also* Dkt. Nos. 13, 22, 32.)[1] Miller Mendel alleged that the City, "by and through its authorized agency the Anna Police Department," uses the "Guardian

---

[1] Despite the Court's explicit instruction to the contrary, Miller Mendel continues to include the Anna Police Department ("Anna PD") as a party at interest in the case caption. (*See* Dkt. No. 32 at 1, n.1 ("Notwithstanding the Motion, Miller Mendel erroneously includes Anna PD in the case caption. Going forward, the parties are instructed to include only the live parties in the case caption.").) This continuing practice by Plaintiff vexes the Court—which is rarely considered to be a wise move.

Alliance Technologies investigation software platform" (the "GAT Platform") and infringes the '188 Patent through use of the GAT Platform "on a computing device with a processor and system memory[] [to assist] an investigator in conducting a background investigation of an application within an organization." (Dkt. No. 21, ¶12.)

Miller Mendel filed several lawsuits throughout the country alleging that customers of Guardian Alliance Technologies ("GAT") infringe the same claims of the '188 Patent. (Dkt. No. 16 at 1–2.) In October 2018, Miller Mendel sued the City of Oklahoma City in the Western District of Oklahoma (the "Oklahoma Action"). (*Id.*; *see also* Case No. CIV-18-990-JD (W.D. Okla.).) In the Oklahoma Action, the defendant filed a § 101 motion before claim construction that the court denied based on factual disputes as to patent eligibility. (Dkt. No. 16 at 1; *see also* Case No. CIV-18-990-JD, Dkt. No. 32 (W.D. Okla.).) Claim construction in the Oklahoma Action was fully briefed as of May 10, 2021, a *Markman* hearing has not been scheduled, and a claim construction order has not yet issued. (*See, e.g.*, Dkt. No. 16 at 1; *see also* Dkt. No. 24 at 3; Case No. CIV-18-990-JD, Dkt. No. 122 (W.D. Okla.).) In February 2021, Miller Mendel filed an infringement suit against Washington County, Oregon (the "Oregon Action") (Case No. 3:21-cv-00168-SB (D. Ore.)) and in May 2021, Miller Mendel sued the State of Alaska (the "Alaska Action") (Case No. 3:21-cv-00129-HRN (D. Alaska)). (Dkt. No. 16 at 1.) Both the Oregon Action and the Alaska Action are stayed pending the outcome of the Oklahoma Action. (*Id.* at 1–2.)[2] In all pending actions filed by Miller Mendel against GAT customers, "GAT is contractually obligated to defend and indemnify Miller Mendel's claims for patent infringement." (*Id.* at 7.)

---

[2] After this Court issued the 12(c) Order (Dkt. No. 41), a status conference was held in the Oregon Action. (*See* Case No. 3:21-cv-00168-SB at Dkt. No. 20 (D. Ore.).) Judge Beckerman opted to continue the stay of the case in light of the then-pending Motion for Reconsideration and the appeal at the Federal Circuit. (*Id.*) The stay was also continued in the Alaska Action. (*See* Case No. 3:21-cv-00129-HRN at Dkt. No. 30 (D. Alaska).) The court in the Oklahoma Action has not issued any orders in response to the parties' notices regarding the instant action and appeal. (*See generally* Case No. CIV-18-990-JD, Dkt. No. 32 (W.D. Okla.).)

On April 14, this Court granted the City's Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c) and 35 U.S.C. § 101 (the "12(c) Motion"). (Dkt. No. 41) ("12(c) Order"). In the 12(c) Order, the Court conducted a detailed analysis of the '188 Patent under both steps of the *Alice* framework with a breakdown of the claim language, specification, and comparisons to case law. (*See generally id.*) Miller Mendel appealed to the Federal Circuit on May 2, 2022 (Dkt. No. 46) and filed a Motion for Reconsideration on the same day (Dkt. No. 47). This Court denied Miller Mendel's Motion for Reconsideration on June 9, 2022, finding that Miller Mendel did not present any new evidence or intervening change in case law that casts doubt on the Court's decision to grant the 12(c) Motion, nor did Miller Mendel identify any material error or injustice in the 12(c) Order. (Dkt. No. 61 at 9.) The City filed the instant Motion on May 3, 2022. (Dkt. No. 48.)

## II.    LEGAL STANDARD

In "exceptional cases," a district court "may award reasonable attorney fees to the prevailing party" pursuant to 35 U.S.C. § 285. An "exceptional case" is "one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014); *see also Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 (2014) (noting that "the word 'exceptional' in § 285 should be interpreted in accordance with its ordinary meaning" (citing *Octane Fitness*, 134 S. Ct. at 1755).) Notably, it is not necessary that the litigation conduct at issue be independently sanctionable, *e.g.*, because it involves bad faith or some other misconduct. *See id.* at 1756–57 (holding that "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees").

The Supreme Court has been clear that district courts must determine whether any particular case is "exceptional" in a "case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness*, 134 S. Ct. at 1756. Whether a case is "exceptional" or not "is a factual determination," *Forcillo v. Lemond Fitness, Inc.*, 168 Fed. App'x 429, 430 (Fed. Cir. 2006), and the court must make its discretionary determination by a "preponderance of the evidence." *Octane Fitness*, 134 S. Ct. at 1758 (rejecting the prior requirement that a patent litigant establish its entitlement to fees under § 285 by "clear and convincing" evidence). A district court's determination of whether a case is "exceptional" under § 285 is reviewed for an abuse of discretion. *See Highmark Inc.*, 134 S. Ct. at 1748; *see also Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1374 (Fed. Cir. 2017) ("On appeal, all aspects of a district court's § 285 determination are reviewed for an abuse of discretion.") (citation omitted).

In assessing the "totality of the circumstances," courts may consider factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 134 S. Ct. at 1756 n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.9 (1994) (addressing a similar fee-shifting provision in the Copyright Act)). Although a party's conduct need not be independently sanctionable to warrant an award of fees under § 285, (*id.* at 1756–57), fee awards should not be used "as a penalty for failure to win a patent infringement suit." *See id.* at 1753 (quotation omitted); *see also Checkpoint Sys., Inc.*, 858 F.3d at 1376.

Although an exceptional case finding is no longer constrained to "inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement," *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d

1022, 1034 (Fed. Cir. 2002), "the absence of such conduct also weighs against an award" of fees

under § 285. *AstraZeneca AB v. Aurobindo Pharma Ltd.*, 232 F. Supp. 3d 636, 649 (D. Del. 2017).

## III.   DISCUSSION

### a.   Scope of Fee Award

The City requests approximately $700,000 in attorneys' fees and expenses incurred in

litigating "this and associated cases." (Dkt. No. 48 at 1.) The City contends that because GAT is

contractually obligated to defend the defendants in all pending actions filed by Miller Mendel,

including the Oklahoma, Oregon, and Alaska Actions, "[i]t is appropriate for the Court to award

[the City] (and GAT's other customers) the fees and costs that GAT has paid in defending ***all*** of

the litigations brought by [Miller Mendel] on the '188 Patent." (*Id*. at n.1) (emphasis added). As a

result, the City calculated the requested fees "expended by GAT since the latest date [Miller

Mendel] could claim that it was unaware of the § 101 infirmity of the '188 Patent—*i.e.*, November

30, 2018," the date on which the § 101 motion to dismiss was filed in the Oklahoma Action. (*Id*.

at n.3.) Thus, the City contends that the "requested amount is less than the total amount of fees and

costs incurred by GAT" in defending all the customer suits brought by Miller Mendel since their

inception. (*Id*.)

Miller Mendel contends that the City lacks standing to "seek[] attorneys' fees it never

expended on cases it was never a part of." (Dkt. No. 54 at 1, 11.) Specifically, Miller Mendel

argues that the City "seeks to recover attorneys' fees in this case on behalf of their indemnitor, and

also seeks to recover attorneys' fees in this Court on behalf of unrelated defendants in other cases

still pending before the other federal courts on behalf of that indemnitor." (*Id*. at 5.)

The City responds that it is proper for a defendant to be awarded attorneys' fees "even

though [a] non-party…paid for the defense of the case." (Dkt. No. 56 at 1 (citing *Tidewater Patent*

*Development Co. v. Kitchen*, 421 F.2d 680 (4th Cir. 1970)).) The City additionally argues that "all of the legal fees and expenses incurred by GAT following its original § 101 briefing in the Oklahoma Action are appropriate for this Court to award," because "[b]ut for [Miller Mendel's] persistence in continuing to litigate against GAT's customers after the filing of the § 101 motion in [Oklahoma], GAT would not have incurred the additional litigation expenses." (*Id.*)

### b.  Whether Miller Mendel "Should Have Known" the '188 Patent Is Invalid

The City contends that Miller Mendel should have known that the '188 Patent is invalid under § 101 because "post-*Alice* case law explicitly determined background checking software to be unpatentable." (Dkt. No. 48 at 8) (citations and quotations omitted). The post-*Alice* case law cited by the City in support includes *SkillSurvey*, which this Court referenced in its analysis when finding the '188 Patent ineligible. (*Id.*; *see also generally* Dkt. No. 41.) The City contends that Miller Mendel should have been aware of the same with "any reasonable diligence" before filing the Oklahoma Action and subsequent cases. (*Id.* at 9.) The City also notes that during prosecution of the '188 Patent, the Examiner identified a publication by LaPasta (U.S. Pub. No. 2005/0033633) as the "closest prior art." (*Id.*) The City argues that because "the patent invalidated in *SkillSurvey* claims priority to LaPasta," it was "unreasonable for [Miller Mendel] not to question the validity of the '188 Patent after a court invalidated, and the Federal Circuit affirmed, a closely related patent cited against the '188 Patent during prosecution." (*Id.*) The City also contends that even if Miller Mendel was unaware of the *SkillSurvey* decision through the prosecution of the '188 Patent, LaPasta was cited in the invalidity contentions in the Oklahoma Action as well as in GAT's petition for *inter partes* review. (*Id.*)

Miller Mendel contends that the Examiner "reviewed the '188 Patent in light of section 101" and after the *Alice* decision, and the "USPTO is presumed to have applied the correct legal

standard." (Dkt. No. 54 at 7.) Miller Mendel also contends that the City's argument that Miller Mendel "should have known" that the '188 Patent was invalid "because a different court found a different patent owned by a different patent owner invalid in a lawsuit against a different defendant regarding different software products" is untenable. (*Id.* at 10 ("*SkillSurvey* did not invalidate all U.S. patents involving software systems and/or methods applicable to employee hiring methods. Nor did *SkillSurvey* create any presumption that such patents are invalid, nor that assertion of any issued U.S. patent by its owner would be inherently unreasonable.").)

The City also contends that Miller Mendel should have known the '188 Patent was invalid under § 101 because it was "demonstrably weak on its face." (Dkt. No. 48 at 10.) The City contends that in a letter to GAT in 2018, Miller Mendel represented that it is "very familiar with the current case law and rigorous test required" under *Alice* and therefore that a "pre-filing investigation" by Miller Mendel's counsel, who was "very familiar" with § 101 law, "should have recognized that the '188 Patent was manifestly directed to an abstract idea and invalid under 35 U.S.C. § 101." (*Id.* at 11.) The City also contends that Miller Mendel should have concluded that the '188 Patent is invalid under § 101 "despite any statutory presumption of validity." (*Id.*)

Miller Mendel contends that it "sought to enforce a patent that was examined and duly issued, [and] that the USPTO examined in light of Section 101 *after* the *Alice* decision." (Dkt. No. 54 at 1) (emphasis in original). Miller Mendel argues that the law "mandates" the presumption of validity and cites the denial of a § 101 motion in the Oklahoma Action in support of its continued belief of validity of the '188 Patent. (*Id.*)

### c.   Whether Miller Mendel's Litigation Conduct Makes This Case Exceptional

The City first faults Miller Mendel for not suing GAT directly, but rather suing GAT's customers in multiple districts as part of a pattern of "threatening the industry with lawsuits, filing

suits to show that it would carry out its threats, and utilizing misleading false statements about the lawsuits for the sole purpose of threatening GAT's customers and the industry at large." (Dkt. No. 48 at 2 ("[Miller Mendel's] practice of suing GAT's customers is a blatant fear tactic intended to foreclose GAT from having customers adopt its competing product.").) The City contends that this tactic unfairly targets GAT's customers, who are "law enforcement agencies and municipalities" that are "not routinely involved in patent infringement activities nor likely to have the resources or political will to launch a spirited defense[.]" (*Id*.) Moreover, the City contends that Miller Mendel undertook its litigation campaign "while [it knew] (or should have known) that the patent at the heart of its infringement allegations was invalid, or susceptible to being invalid, for claiming non-statutory subject matter under 35 U.S.C. § 101." (*Id*. at 2–3.)

Miller Mendel argues that the City "bemoans that it got sued, rather than the manufacturer of the infringing platform it uses," but contends that the "law does not require Plaintiff sue only certain infringers and not others." (Dkt. No. 54 at 2.) Miller Mendel also argues that it only sued four separate defendants for infringement of the '188 Patent, in contrast to cases cited by the City finding cases exceptional where plaintiffs sued dozens, or even hundreds, of entities for infringement. (*Id*. at 3.)

The City also contends that as part of the instant case, Miller Mendel "took untenable positions with respect to its invalidity arguments," including by "abandon[ing] any conventional methods of analyzing patents under *Alice*[] and instead opt[ing] to adopt a wholly unsupported, novel, 'gerund phrase' methodology." (Dkt. No. 48 at 12.) This, the City contends, is evidence that Miller Mendel "repeatedly offered insupportable arguments on behalf of an obviously weak patent." (*Id*.)

Miller Mendel contends that the "mere fact that a court rules against a patent owner does

not render a case 'exceptional.'" (Dkt. No. 54 at 6–7; *see also id.* at 9 ("Even where a party's claims or defenses were subject to summary disposition or ruling on the pleadings, this creates no presumption the claims were meritless or frivolous.").) Miller Mendel contends that the "reasonableness" of its litigation arguments "is easily affirmed by the fact that the Oklahoma Court denied the defendant's motion to dismiss on Section 101 grounds," and further argues that "[a]pplying Section 101 to software patents is never clear cut, and the *Alice* decision did not make such decisions obvious or straight forward [*sic*]." (*Id.* at 7.)

### d. Whether Miller Mendel's Out-of-Court Conduct Renders This Case Exceptional

The City claims that GAT is aware of over eighty agencies which Miller Mendel has "threatened to sue for patent infringement for their use or potential use of the GAT platform" since the commencement of the Oklahoma Action in 2018. (Dkt. No. 48 at 4.) The City also claims that at least seventeen of those agencies have "ceased using the GAT Platform, decided not to use the GAT Platform, and/or elected to use the Miller Mendel background investigation product" due to such "threats." (*Id.*) GAT estimates that it has lost "approximately $500,000 in annual revenues because of [Miller Mendel's] repetitive lawsuits and multitude of threats of litigation." (*Id.*)

The City also contends that Miller Mendel, "on multiple occasions, [has] misrepresented the status and events in the litigation" for which the City has "had to request a retraction or correction" of Miller Mendel's public statements. (*Id.* at 5.) For example, the City argues that Miller Mendel represented to the marketplace that the non-institution decision on *inter partes* review ("IPR") of the '188 Patent by the Patent Trial and Appeal Board ("PTAB") "illustrates [GAT's] infringement and failed attempt to cover their patent infringement/theft." (*Id.*)

In addition to alleged misrepresentations, the City contends that because Miller Mendel "never sought a preliminary injunction in any of its suits against GAT's customers, [it is]

reasonable to conclude that [Miller Mendel] used the threat of protracted and costly litigation as an anticompetitive tactic: not to vindicate its patent rights." (*Id*. at 15.) By doing so in multiple districts, the City contends that Miller Mendel "knew it could multiply exponentially" the cost of defending such litigations and "deplet[e] GAT's resources[.]" (*Id*.)

Miller Mendel contends that "[o]ut-of-court statements…which referred and directed others to review publicly filed and accessible lawsuits and pleadings is neither evidence of misconduct nor 'exceptional.'" (Dkt. No. 54 at 5.) Miller Mendel contends that its "statements asserting that the '188 Patent is not invalid pending appeal are technically true and not bad faith" due to issues of "defensive non-mutual collateral estoppel." (*Id*.; *see also id*. at n.5.) Further, Miller Mendel argues that a litigant is "free to publicize the fact of litigation[] and express their own opinions regarding the strength of their case." (*Id*. at 10.) Such statements, Miller Mendel contends, are not made in bad faith where the patent owner has no actual knowledge that the patent is invalid. (*Id*.) Miller Mendel also argues that because "none of the lawsuits" filed by Miller Mendel "rendered any ruling on the merits of [the] infringement contentions," its allegations of infringement by the GAT software are "presumed correct," and thus its communications about the '188 Patent were not abusive. (*Id*. at 15.)

The City disagrees, arguing that Miller Mendel's communications regarding GAT's alleged infringement "were sent to non-attorneys with little familiarity of the complexities of patent law who are highly unlikely to know that the PTAB cannot determine infringement of a patent during IPR. The outright falsity of its chosen phrase 'illustrates Guardian Alliance Technologies' Infringement' is not unintentional: [Miller Mendel] wanted to create the impression that GAT had been found to infringe." (Dkt. No. 56 at 3.) The City contends that Miller Mendel's "post-invalidation conduct…confirm[s] its litigation misconduct" because Miller Mendel issued a

communication to GAT customers stating that "Guardian Alliance Technologies is misinforming agencies; telling them Miller Mendel's patent has been invalidated. That is not correct. Miller Mendel's patent remains in full effect." (*Id.*; *see also id.* at 4 ("The patent remains in full effect until the appeal has been decided, likely sometime in or after 2025.").) The City contends that Miller Mendel's "lies, misstatements of law and fact, and misleading communications are part and parcel of a coordinated plan to improperly use litigation in multiple jurisdictions, to unfairly compete with GAT through the assertion of a facially invalid patent under 35 U.S.C. § 101." (*Id.* at 5.)

Miller Mendel contends that the '188 Patent is "certainly…valid and effective as to the unasserted claims, even absent the issue of collateral estoppel." (Dkt. No. 60 at 1, n.1.) Miller Mendel also contends that the other district courts may come to different conclusions on the issues present, including whether Rule 12(d) required this Court to use Rule 56 procedures, whether this Court used an incorrect standard for § 101, and whether there were facts in dispute that precluded the 12(c) motion entirely. (*See, e.g., id.* at 2–3.)

Miller Mendel's sur-reply brief devolves into argument about protected speech under the First Amendment. (*See generally* Dkt. No. 60 at 4–5.) Miller Mendel contends that all its communications about the litigations are based on public information and are "protected speech," arguing that the City, "[as] a government entity, violates Plaintiff's First Amendment Rights by arguing for sanctions based on communications to government agencies over concerns about [GAT]." (*Id.* at 4–5.)

## IV.    ANALYSIS

The Court finds that this case is not exceptional. Miller Mendel is correct that the "mere fact that a court rules against a patent owner does not render a case 'exceptional.'" (Dkt. No. 54 at

6–7, 9.) That the '188 Patent was susceptible to a finding of ineligibility at the 12(c) stage does not make Miller Mendel's assertion of the same frivolous or objectively unreasonable. In response to the City's 12(c) Motion, Miller Mendel set forth its best opposition and, though that opposition was not compelling in the Court's view, it did not rise to the level of unreasonable or vexatious.

The Court is not persuaded by the City's myriad arguments that Miller Mendel "should have known" the '188 Patent was directed to an abstract idea. While the Court did point out perceived errors in the prosecution of the '188 Patent by both Miller Mendel and the Examiner (*see* Dkt. No. 41 at 5, n.3), Miller Mendel was entitled to believe that the '188 Patent was valid after it was examined and allowed by the USPTO. Miller Mendel was thereafter free to sue GAT, or in this case, GAT's customers, for infringement of the same if Miller Mendel believed them to be infringing. The City's arguments to the contrary are speculative, at best, and do not warrant a finding of exceptionality. The City's claim that Miller Mendel should have sued GAT rather than its customers flies in the face of any plaintiff's right to select and sue any alleged infringer, where a reasonably clear claim of infringement can be put forward. Also, this Court knows of no authority allowing it to award fees under § 285 which were incurred elsewhere. The Court's decision to grant the City's § 101 challenge does not open the door to an award of fees outside the case at hand before this Court. The City seems content in its briefing to make rather hyperbolic statements about the alleged misconduct of Miller Mendel, but that does not justify its own corresponding overreach in seeking fees paid in other cases, before other courts, on behalf of other defendants.

In light of the Court's finding that this case is not exceptional, the Court declines to address issues of standing, collateral estoppel, and First Amendment rights as presented by the parties in their briefing.

## V.    CONCLUSION

For the reasons set forth above, the Court finds that this is not an exceptional case, and the

City's Motion (Dkt. No. 48) is **DENIED**.

**So ORDERED and SIGNED this 13th day of June, 2022.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

**BOUTIN JONES INC.**
Robert D. Swanson (CA Bar No. 162816)
Daniel S. Stouder (CA Bar No. 226753)
555 Capitol Mall, Suite 1500
Sacramento, CA 95814-4603
T: (916) 321-4444/F: (916) 441-7597
Email: rswanson@boutinjones.com
         dstouder@boutinjones.com

**RYAN WHALEY PLLC**
Evan W. Talley (*Pro Hac Vice*)
400 North Walnut Avenue
Oklahoma City, OK 73104
T: (405) 239-6040
Email: etalley@ryanwhaley.com

**DUNLAP CODDING PC**
Douglas J. Sorocco (*Pro Hac Vice*)
609 West Sheridan Avenue
Oklahoma City, OK 73102
T: (405) 607-8600/F: (405) 607-8686
Email: dsorocco@dunlapcodding.com

*Attorneys for Plaintiff*
*Guardian Alliance Technologies, Inc.*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| GUARDIAN ALLIANCE TECHNOLOGIES, INC., a California corporation;<br><br>                    Plaintiff,<br><br>vs.<br><br>MILLER MENDEL, INC., a Washington corporation; and TYLER MILLER, an individual;<br><br>                    Defendants. | Case No.:  2:22-CV-01390-WBS-AC<br><br>**FIRST AMENDED COMPLAINT**<br><br><br><br><br><br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, GUARDIAN ALLIANCE TECHNOLOGIES, INC. ("Guardian"), for its claims

and relief against Defendants MILLER MENDEL, INC. ("MMI") and Tyler Miller ("Miller")

(collectively "Defendants") alleges:

/ / /

/ / /

1260427.3

## NATURE AND OVERVIEW OF THE ACTION

1.    Since entering the market for public safety background management software in 2011, Defendants have used their ill-gotten patent portfolio in an attempt to obtain a monopoly in the market and exclude others from meaningfully competing. By procuring contracts and stifling competition based on their fraudulently-obtained patent portfolio, Defendants have experienced millions of dollars in ill-gotten gains, and public safety agencies interested in the goods and services sold by Defendants have been subjected to increased costs and expenses, all to the detriment of competition in the marketplace.

2.    In 2018, when Guardian entered the market, and when the second of Defendants' fraudulently-obtained patents was issued, Defendants set a course of repeatedly suing Guardian's public safety agency customers for patent infringement and threatening suits against any agency who chose to use or continues using the Guardian software. Defendants have sued four Guardian public safety agency customers in venues across the United States and threatened scores of Guardian's other current and prospective customers. Even after the United States District Court for the Eastern District of Texas invalidated Defendants' asserted patent claims, a ruling that the United States Court of Appeals for the Federal Circuit affirmed, and the U.S. Supreme Court denied Defendants' petition for writ of *certiorari*, Defendants continue to threaten the marketplace to intimidate Guardian's current and prospective customers into terminating or not entering into contracts with Guardian to use its software.

3.    This action, therefore, seeks to hold Defendants liable under federal antitrust and patent laws, as well as under the laws of the State of California, for unlawfully attempting to monopolize the national market for public safety background management software through the assertion and threatened assertion of their fraudulently-obtained patent portfolio, and other sham litigation tactics. Further, Defendants have committed acts of unfair competition, including trade libel, that have harmed Guardian's commercial reputation and ability to compete in the public safety background management software market.

## THE PARTIES

4.    Plaintiff Guardian is a California corporation with its principal place of business at

FIRST AMENDED COMPLAINT APPX00234                                                    1260427.3

1  11 S. San Joaquin St., Ste. 804, Stockton, California 95202.

2      5.      On information and belief, Defendant MMI is a Washington corporation with its

3  principal place of business at 1425 Broadway, Ste. 430, Seattle, Washington 98122.

4      6.      On information and belief, Defendant Miller is a resident of the State of

5  Washington.

6                          **JURISDICTION AND VENUE**

7      7.      This is an action for monetary damages and injunctive relief under: (a) Section 2 of

8  the Sherman Act, (b) Section 4 of the Clayton Act, (c) the Patent Act, and (d) the laws of the State

9  of California. These counts arise from the Defendants' unlawful and anti-competitive campaign to

10  illegally monopolize the market for public safety background investigation software.

11      8.      This Court has subject matter jurisdiction over this action under at least 28 U.S.C.

12  §§ 1331, 1338, 2201, and 2202, pursuant to Section 2 of the Sherman Act, 15 U.S.C. § 2; Section

13  4 of the Clayton Act, 15 U.S.C. § 15; and the Patent Act, Title 35 of the United States Code. Given

14  this subject matter jurisdiction over these Federal Question claims, this Court further has

15  supplemental jurisdiction over the California statutory and common law claims pursuant to 28

16  U.S.C. § 1367.

17      9.      Defendants are subject to this Court's personal jurisdiction because they have and

18  continue to conduct substantial business within the State of California, including actions

19  intertwined with Guardian's causes of action against Defendants. In particular, Defendants have

20  used their fraudulently-obtained patents and threats of patent infringement to contract with and/or

21  tortiously interfere with Guardian's contractual relationships with, *inter alia*, the California

22  Department of Corrections, the San Joaquin (CA) County Sheriff's Office, the Kern County (CA)

23  Sheriff's Office, the Placer County (CA) Sheriff's Office, and the Fresno (CA) Police Department.

24      10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a

25  substantial part of the events or omissions giving rise to these claims occurred in this District.

26                              **INTRODUCTION**

27      11.     Public safety background investigation management software consists of

28  specialized software, often cloud-based and delivered as Software-as-a-Service (SAAS) to clients,

3
1260427.3

designed to enable public safety organizations, such as local, state, and federal law enforcement agencies, to complete pre-employment background investigations of job applicants much more efficiently and accurately, thereby facilitating more efficient, high-quality hiring decisions.

12.    To monopolize or attempt to monopolize the market for background investigation management software, Defendants unlawfully obtained, based on fraud on the United States Patent and Trademark Office (USPTO), several patents on background investigation management software (the "MMI Patent Portfolio"). Specifically, and as set forth below, Defendants obtained the MMI Patent Portfolio by concealing material facts from the USPTO and, at the same time, making affirmative false statements to the USPTO to persuade it to grant the patents in the MMI Patent Portfolio.

13.    With the competitive benefits conferred by the MMI Patent Portfolio, Defendants actively suppressed competition by (a) extensively advertising the existence of and aggressively threatening enforcement of the MMI Patent Portfolio against competitors and their own existing and potential customers and (b) actively enforcing the MMI Patent Portfolio against their own prospective customers—i.e., bringing suit against law enforcement agencies that are or were existing Guardian customers at the time of the lawsuits. Defendants' actions were made with full knowledge that their enforcement activities and threatening statements were wholly predicated upon the enforcement of the fraudulently-obtained MMI Patent Portfolio. Defendants knew, therefore, that their actions were objectively baseless.

14.    Using the fraudulently-obtained MMI Patent Portfolio and by engaging in the preceding anti-competitive activities, Defendants suppressed competition and attempted to obtain a monopoly in the market for public safety background investigation software ("Public Safety Background Investigation Software Market" or "the Market"). At a minimum, Defendants' misuse, through enforcement, of the fraudulently-obtained MMI Patent Portfolio presented and continues to present a dangerous probability that Defendants will succeed in obtaining an improper monopoly in the Market.

15.    As the central plank of their anti-competitive activities, Defendants' enforcement campaign currently includes the institution of four lawsuits against Guardian customers, dating

4

FIRST AMENDED COMPLAINT APPX00236

1260427.3

back to 2018. Additionally, since at least 2018, MMI has directly threatened enforcement of the fraudulently-obtained MMI Patent Portfolio to many of Guardian's existing customers and the Market as a whole—i.e., prospective Guardian customers.

16.    Through their campaign of enforcing the fraudulently-obtained MMI Patent Portfolio, tortiously interfering in Guardian's contractual relationships, and knowingly spreading false and defamatory statements about Guardian, Defendants have stifled competition within the Market, thereby obtaining control of a significant portion of the Market through unfair, anti-competitive, and monopolistic conduct.

17.    This lawsuit seeks to restore competition to the affected market and to compensate Guardian for the injuries Defendants' unfair, anti-competitive, and monopolistic conduct has caused.

18.    In particular, Guardian seeks compensation for its injuries resulting from Defendants' pursuit of baseless enforcement of the fraudulently-obtained MMI Patent Portfolio and for other economic and non-economic damages Guardian has suffered due to Defendants' anti-competitive behavior.

**A.    The Public Safety Background Investigation Management Software Industry and the Relevant Market**

19.    Nearly 19,000 law enforcement agencies in the U.S. (at the local, state, and federal levels) perform over 1.7 million pre-employment background investigations annually.

20.    Public safety organizations perform pre-employment background investigations by trained, professional background investigators. They are not the same as, nor should they be confused with, basic background checks that can be readily ordered online for employment or rental purposes, for example.

21.    A complete public safety pre-employment background investigation consists of an extensive array of applicant information as required by the Police Officer Standards and Training (POST) or POST-equivalent authority in every jurisdiction in the United States.

22.    Over 98% of law enforcement agencies still collect, manage and store background investigation information in hard copy.

FIRST AMENDED COMPLAINT APPX00237                                           1260427.3

23.     Completed hard copy public-safety background investigations generally consist of 200–300 pages of paper documents. They include up to 17 different "tabs" or sections, each with a different focus or purpose within the comprehensive background investigation.

24.     Collecting, collating, evaluating, and storing background information in hard copy results in numerous wasted resources, including the costs of maintaining storage space for paper records (typically held in 3–4" three-ring binders) that must be physically stored for years in most instances. Unlike electronic records, paper documents don't provide any ability to gain insight into who is seeking employment (either within the agency itself or cross-agency), and the paper documents cannot be readily shared within or outside the agency performing the background investigation.

25.     As an example, the tabs in a public safety background investigation in California include: (a) a Background Narrative Report; (b) a Personal History Statement (20-plus pages, over 200 data points); (c) DOJ/FBI Fingerprint Returns and Firearms Clearance; (d) Driving Record Check; (e) Local Law Enforcement Agency Record Checks; (f) Credit Record Checks; (g) Education Verification; (h) Citizenship/Age Verification; (i) Military History Check; (j) Dissolution of Marriage Check; (k) Employment History Checks; (l) Relatives/Personal Reference Checks; (m) Neighborhood Checks; (n) Medical/Psychological Clearances; and (o) Other Documentation.

26.     By using specialized public safety background investigation management software, agencies can complete pre-employment background investigations faster and more accurately—thereby facilitating more efficient, high-quality hiring decisions.

27.     While the public safety background management software assists agencies in expediting the completion of public safety background investigations, the anatomy of such investigations must remain intact as prescribed by the POST or POST-equivalent authority. The public safety background management software streamlines the performance of a prescribed, well-understood process.

28.     MMI, and its competitors like Guardian, offer public safety background investigation management software to customers nationwide in the United States. As a result, the

FIRST AMENDED COMPLAINT APPX00238                                    1260427.3

1  scope of the relevant geographic market for this Complaint is the entirety of the United States.

2      29.    Despite systems that existed before MMI entered the Market, MMI was able to

3  capture a dominant position quickly and is currently the dominant Market participant, controlling

4  at least 70% of the total dollars expended annually by public safety agencies for public safety

5  background investigation management software.

6      30.    Until Guardian was formed and entered the Market in 2018, MMI's two main

7  competitors in the Market were: (a) Essential Software Development, LLC, which has offered its

8  Police Officer Background Investigation Tracking System ("POBITS") software since no later than

9  2010; and (b) Background Solutions, LLC, which has offered its Background Assistant software

10  since no later than 2009.

11      31.    MMI obtained its dominant position in the Market through monopolistic activities,

12  including: (a) extensively advertising the existence of and aggressively threatening enforcement of

13  the MMI Patent Portfolio and (b) actively enforcing the MMI Patent Portfolio against MMI's own

14  prospective customers–i.e., bringing suit against law enforcement agencies that are or were existing

15  Guardian customers at the time of the lawsuits.

16      32.    Since Guardian entered the Market in 2018, MMI has increased its share of the

17  Market as a result of its litigation activities as well as its increasing threats of litigation against

18  public safety agencies who might use or consider using Guardian's software, including capturing

19  business from prospective law enforcement agencies who were already committed to purchasing

20  the Guardian system and, during the process of completing contracts or, in at least one instance,

21  had entered into a contract with Guardian, walked away from or terminated their agreement with

22  Guardian after being threatened by MMI.

23      **B.    Defendants' Fraudulently Obtained Patent Portfolio and

24      Their Anti-Competitive Conduct in Enforcing Such Patents**

25      33.    Over the past decade, MMI fraudulently obtained two patents from the United

26  States Patent & Trademark Office ("USPTO," the federal agency charged with examining and

27  issuing patents where warranted), United States Patent Nos. 9,070,098 ("the '098 Patent") and

28  10,043,188 ("the '188 Patent"). MMI is continuing its fraud while applying for two additional

7

1    patents, i.e., United States Patent Application Nos. 16/024,622 ("the '622 Application") and

2    17/316,686 ("the '686 Application") (collectively, with the '098 and '188 Patents, "the MMI Patent

3    Portfolio"). True and correct copies of the '098 and '188 Patents are attached hereto as Exhibits 1

4    and 2, respectively.

5            34.     As detailed below, Defendants deliberately and purposefully withheld material

6    information (i.e., the fraud committed on the USPTO)—with such withheld material comprising:

7    (a) its own offer to sell its invention more than a year before filing for its first patent application;

8    and (b) information about third-party prior art systems of which Defendants were aware. Despite a

9    duty to disclose this prior art information, Defendants purposefully and deliberately withheld this

10   prior art information from the USPTO to keep this prior art information from the USPTO, as it was

11   material to patentability, and the USPTO would have rejected Defendants' patent applications as

12   unpatentable had the agency been aware of the existence of the prior art information. Moreover,

13   Defendants made numerous false statements to the USPTO, the falsity of which was material to the

14   patentability of their various patent applications. In light of these false statements, the USPTO

15   found the Defendants' applications patentable and allowed them to issue. Pointedly, not only were

16   Defendants' statements false, Defendants knew that the statements were false when they were made.

17           35.     Finally, Defendants' fraud on the USPTO is ongoing. To date, the Defendants have

18   not disclosed the prior art information to the USPTO in its pending patent application, and the

19   Defendants continue to make knowingly false statements in their attempts to persuade the USPTO

20   to allow its pending applications to issue as patents.

21           36.     Defendants' false representations and omissions of material facts and prior art were

22   intended by Defendants to induce and did induce reliance by the patent examiners (i.e., the

23   individuals charged within the USPTO in determining whether to grant Defendants' patent claims)

24   into allowing the patent applications to issue. But for Defendants' false representations and knowing

25   omissions of material facts and prior art, the patents within the MMI Patent Portfolio would not

26   have been issued.

27           37.     Defendants' false representations and knowing omissions of material facts and prior

28   art constitute inequitable conduct, otherwise known as "fraud on the USPTO," thereby rendering

1    each of the claims of the issued patents within the MMI Patent Portfolio invalid and unenforceable.

2    38.    After fraudulently obtaining the patents within the MMI Patent Portfolio from the

3    USPTO, Defendants advertised the existence of the MMI Patent Portfolio, threatened to enforce,

4    and, after that, actually enforced one of the fraudulently-obtained patents within the MMI Patent

5    Portfolio against users of Guardian's public agency background investigation management

6    software—i.e., Defendants are currently enforcing the fraudulently-obtained patents against

7    potential MMI customers that chose Guardian's software instead of MMI's. Notably, MMI did not

8    directly litigate its fraudulently-obtained patents within the MMI Patent Portfolio against

9    Guardian—choosing instead to sue its potential customers, i.e., public law enforcement agencies

10   generally unfamiliar with patent litigation and risk-averse due to public oversight. By doing so,

11   Defendants could obtain, maintain, or, at a minimum, pose a dangerous probability of obtaining a

12   monopoly in the Market through the enforcement (and threatened enforcement) of fraudulently-

13   obtained patent claims in the MMI Patent Portfolio.

14   39.    The MMI Patent Portfolio provides a critical competitive strength to Defendants,

15   albeit a strength obtained through fraud on the USPTO. The MMI Patent Portfolio allows

16   Defendants to erect artificial barriers to entry and pursue their expansion in the Market without

17   competition. For example, "sole-source" justification exists when a vendor offers services or goods

18   to a public safety agency purportedly covered by one or more patents. The vendor is considered the

19   "sole-source" of the goods or services. The fraudulently-obtained MMI Patent Portfolio allows

20   Defendants' services to be classified as sole-source, thereby allowing Defendants to circumvent a

21   public safety agency's request for proposal ("RFP") process. This circumvention is contrary to the

22   public policy favoring competitive bidding for goods and services. The barrier created by

23   Defendants' use of the fraudulently-obtained MMI Patent Portfolio to achieve sole-source status

24   prevents (and has prevented) Guardian, as well as other competitors, from competitively offering

25   its goods and services to the public safety agency through participation in an agency's RFP process.

26   Defendants' monopolistic actions have prevented Guardian, and other competitors from being

27   awarded the contract by winning a public safety agency RFP. Defendants used their fraudulently-

28   obtained MMI Patent Portfolio to deceive the agencies into granting it sole-source status to the

1   detriment of the agency, the tax-payers supporting the agency, other competitive public agency

2   background investigation management software vendors, and Guardian.

3          40.     In furtherance of this scheme, Defendants initiated the Oklahoma, Oregon, Alaska,

4   and Texas Actions. Defendants have threatened at least 100 of Guardian's existing and prospective

5   customers with claims that they infringed claims of at least the '188 Patent.

6          41.     Defendants' objectively baseless lawsuits (i.e., those actions filed against

7   Guardian's customers seeking enforcement of the MMI Patent Portfolio) have required Guardian to

8   expend significant time and financial resources honoring its contractual patent infringement

9   indemnification obligations to its customers that MMI has sued.

10         42.     Even after Guardian's customer—the City of Oklahoma City—articulated in

11  December 2020 the precise reasons for Defendants' fraud on the USPTO (i.e., Miller, MMI, and

12  their counsel's failure to disclose the prior art information), Defendants have continued in their anti-

13  competitive scheme of attempted monopolization by suing additional Guardian customers in

14  Oregon, Alaska, and Texas.

15         43.     Further, despite Guardian's customer—the City of Oklahoma City—making MMI,

16  Miller, and their counsel explicitly aware of (a) MMI's own prior sale, and (b) prior art software

17  systems, Defendants have continued their practice of committing fraud on the USPTO by failing to

18  disclose this prior art information in the ongoing prosecution of the pending patent applications in

19  the MMI Patent Portfolio. Such fraud is ongoing as of this filing despite the Defendants' ongoing

20  duty to disclose this prior art information under 37 C.F.R. § 1.56. It should not be overlooked,

21  Defendants' counsel, which has been made aware of this prior art information, has its own separate

22  ethical obligation and duty under 37 C.F.R. § 1.56 to disclose this prior art information to the

23  USPTO.

24         44.     MMI and Miller's threats of enforcement of the fraudulently-obtained MMI Patent

25  Portfolio against Guardian's customers continued even after the Court in the Texas Action

26  invalidated the asserted claims of the '188 Patent under 35 U.S.C. § 101—insisting to Guardian's

27  actual and prospective customers that *all claims* of the '188 Patent remained in full force and effect.

28  MMI and Miller's actions went so far as issuing a press release with the headline: "Miller Mendel's

eSOPH Patent Remains in Full Effect After Judge's Decision." This statement is misleading, and a false, anti-competitive, and monopolistic misstatement meant to deceive the market into avoiding contracting with Guardian.

45.    Defendants' persistent and costly assertion of the fraudulently-obtained patents within the MMI Patent Portfolio against Guardian and its customers, in light of the circumstances by which those patents were obtained and how they were enforced, is a crucial part of the pattern of unfair, anti-competitive, and monopolistic conduct perpetrated by Defendants.

46.    Defendants should be held responsible for their misconduct in obtaining patents fraudulently, for subjecting Guardian to the unnecessary expense of multiple, protracted patent litigations, and for MMI's use of its patent portfolio to reap anti-competitive benefits in the marketplace.

47.    Defendants' anti-competitive conduct has harmed competition in the public safety background investigation software market by, among other things, affecting prices and reducing competition, quality, innovation, and consumer choice.

**C.    Defendants' Actions Constituting Inequitable Conduct and Fraud on the United States Patent and Trademark Office**

48.    In early 2011, MMI purportedly developed and began marketing a public safety background investigation management software under the trademark "eSOPH."

49.    On April 6, 2011, MMI filed a provisional patent application entitled "Background Investigation Web Services," U.S. Patent Application No. 61/472,556.

50.    Throughout 2011, MMI marketed the eSOPH software to public agencies, procuring its first contract with the King County (WA) Sheriff's Department in December 2011.

51.    On information and belief, based on publicly-available materials obtained through the Oklahoma Action and open records requests, while Defendants were engaged in marketing their product to the King County (WA) Sheriff's Department in 2011, Miller became aware of and/or obtained access to the public safety background investigation management software used by King County before its use of eSOPH—i.e., King County used Background Solutions, LLC's software marketed under the trademark "Background Assistant™."

FIRST AMENDED COMPLAINT APPX00243                                    1260427.3

52. Through awareness of and/or access to the software, Miller became aware of the various features and functionalities of the Background Assistant™ software, namely, Background Assistant's™ ability to auto-generate a list of and correspondence to law enforcement agencies based on the residential address of an applicant.

53. On April 6, 2012, Miller filed a non-provisional U.S. Patent Application No. 13/441,648, which was intended to convert the '556 Provisional Application into a Non-Provisional Utility Application for review by the USPTO. Following the filing of the '648 Application and before issuance, Defendants and their counsel had a continuing duty under 37 C.F.R. § 1.56 to disclose material, noncumulative prior art information of which they were aware to the USPTO for consideration in allowing the patent application.

54. The '648 Application was allowed by the USPTO on April 7, 2015. At all times after the allowance of the '648 Application and before issuance, Defendants and their counsel had a continuing duty under 37 C.F.R. § 1.56 to disclose material, noncumulative prior art information of which they were aware to the USPTO for consideration in issuing the patent application.

55. On June 30, 2015, the '648 Application was issued as the '098 Patent. Despite their duty under 37 C.F.R. § 1.56, at no time following the filing of the '648 Application did Defendants or their counsel disclose the existence and/or functionalities of the Background Assistant™ prior art software to the USPTO for consideration as to the appropriateness of issuing the '098 Patent.

56. On May 26, 2015, Miller filed a continuation, non-provisional U.S. Patent Application. No. 14/721,707, claiming priority to the '098 Patent. Following the filing of the '707 Application and prior to issuance, Defendants and their counsel had a continuing duty under 37 C.F.R. § 1.56 to disclose material, noncumulative prior art information they were aware of to the USPTO for consideration in allowing the patent application.

57. The '707 Application was allowed by the USPTO on June 22, 2018. At all times after the allowance of the '707 Application and before issuance, Defendants and their counsel had a continuing duty under 37 C.F.R. § 1.56 to disclose material, noncumulative prior art information of which they were aware to the USPTO for consideration in issuing the patent application.

58. On August 7, 2018, the '707 Application was issued as the '188 Patent. Despite

their duty under 37 C.F.R. § 1.56, at no time following the filing of the '707 Application did Defendants or their counsel disclose the existence and/or functionalities of the Background Assistant™ prior art software to the USPTO for consideration as to the appropriateness of issuing the '188 Patent.

59.    The '098 and '188 Patents are unenforceable because inventor Miller, assignee MMI, and their patent attorneys, Philip Hunt of Rylander & Associates, PC, failed to disclose all noncumulative material prior art of which they were aware to the U.S. Patent and Trademark Office during prosecution of the '098 and '188 Patents.

60.    Specifically, **at no time** during the prosecution of the '098 and '188 Patents did Miller or his counsel file an information disclosure statement with the USPTO (despite their continuing duty of disclosure under 37 C.F.R. § 1.56 to do so), let alone particularly disclose the existence and capabilities of the Background Assistant™ prior art software.

61.    Miller, MMI, and Mr. Hunt violated their continuing duty of disclosure under 37 C.F.R. § 1.56 when they failed to disclose the existence and capabilities of the Background Assistant™ prior art software during the prosecution of the '098 and '188 Patents.

62.    On information and belief, and indeed, before August 7, 2018 (when the '188 Patent was issued) and perhaps even before the '648 Application was filed on April 6, 2012), Miller was aware of the Background Assistant™ prior art software and its functions and capabilities.

63.    The Background Assistant™ prior art software, which was publicly available before the earliest possible priority date of the '188 Patent and of which Miller and Hunt were aware during prosecution of the '188 Patent, discloses automatically generating a list of law enforcement agencies within a certain radius based on residential address information in the application. This capability or functionality of the Background Assistant™ prior art software was publicly disclosed in presentations as follows:

FIRST AMENDED COMPLAINT APPX00245                                    1260427.3



64.     On December 9, 2014, during the prosecution of the '098 Patent, Messrs. Miller and Hunt further amended claims 1, 5, and 9 of the pending '649 Application (which was issued as the '098 Patent) to include the limitation "generating a suggested reference list of one or more law enforcement agencies and/or courts within a pre-defined radius around the applicant residential address; and presenting the suggested reference list to the investigator." December 9, 2014 Amendment and Response to Office Action in '098 Prosecution, a true and correct copy of which is attached hereto as Exhibit 3.

65.     Messrs. Miller and Hunt argued in favor of allowing the claims in the '648 Application, stating that "Parikh teaches e-dossiers that may have candidate referral information, but Parikh is silent on how information is obtained and entered into the e-dossier." *Id.*

66.     Messrs. Miller and Hunt made these representations to the USPTO despite Miller's knowledge of the existence and capabilities of the Background Assistant™ prior art software at least as early as August 9, 2012. Further, Messrs. Miller and Hunt made these representations to the

FIRST AMENDED COMPLAINT APPX00246                                    1260427.3

1   USPTO despite Miller's knowledge that the Background Assistant™ prior art software had been

2   used by the King County (WA) Sheriff's Department for several years. *See* August 9, 2012, email

3   thread between Miller and Detective Robert Burrows of the King County (WA) Sheriff's Office

4   Background Investigation Unit, a true and correct copy of which is attached hereto as Exhibit 4.

5        67.     Additionally, Miller was aware no later than February 28, 2014, of the existence of

6   and features of the Background Assistant™ prior art software, specifically that the Background

7   Assistant™ prior art software compiled a list of law enforcement agencies and auto-generated

8   correspondence letters in the background investigation process based on the residential address of

9   the applicant. Miller's awareness of these features of the Background Assistant™ came no later than

10  approximately nine months before Miller amended the independent claims of the '098 Patent to

11  include the element of "generating a suggested reference list of one or more law enforcement

12  agencies and/or courts within a pre-defined radius around the applicant residential address; and

13  presenting the suggested reference list to the investigator." *See* February 28, 2014, email thread

14  between Miller; Alexandra Ehlert, Human Resources Associate for the King County (WA) Sheriff's

15  Office; and Mark Sawa of the Travis County (TX) Sheriff's Department, a true and correct copy of

16  which is attached hereto as Exhibit 5.

17       68.     Similarly, during the prosecution of the '707 Application (that was issued as the

18  '188 Patent), Miller and his patent attorney Philip Hunt amended claims 1, 5, and 9 to add the

19  limitation, "generating a suggested reference list of one or more law enforcement agencies based

20  on the applicant's residential address," despite being aware for more than 3.5 years that the

21  Background Assistant™ prior art software compiled a list of law enforcement agencies and auto-

22  generated correspondence letters in the background investigation process based on the residential

23  address of the applicant. *See* October 23, 2017 Amendment and Response to Office Action, a true

24  and correct copy of which is attached hereto as Exhibit 6.

25       69.     Miller and Mr. Hunt argued in the October 23, 2017, Amendment and Response to

26  Office Action that the limitation they added—

27  > [I]s a slightly broader version of a limitation in claims 1, 5 and 9 of
> the parent application, now issued as US9070098. Claims 1, 5 and

28  > 9 of the instant application after this amendment are now very

1
2
3
4

> similar to claims 1, 5 and 9 of the '098 patent. The same reasoning the Applicant advanced in the prosecution of the '098 patent applies here as well. Parikh teaches e-dossiers that may have candidate referral information, but Parikh is silent on how information is obtained and entered into the e-dossier. The other art of record does not supply this deficiency of Parikh. For at least these reasons, the Applicant believes these claims are patentable.

5   *Id.*

6   70.   On December 26, 2017, the USPTO issued an office action, during the prosecution

7   of the '707 Application, rejecting Claims 1–3, 5–7, 9, 13–14, and 16 of the '188 Patent under pre-

8   AIA 35 U.S.C. § 103(a), in part because:

9
10
11
12

> Duffy teaches generating a suggested reference list of one of more law enforcement agencies based on an applicant residential address (¶0105; note that Duffy is not directed to law agencies. However, this is (*sic*) would be obvious to use generating a list to one of ordinary skill in the art with the above references that deals with law enforcement).

13   *See* December 26, 2017 Office Action, a true and correct copy of which is attached hereto as Exhibit

14   7.

15   71.   In response to the USPTO's December 26, 2017, rejection of the claims of the '707

16   Application under pre-AIA 35 U.S.C. § 103(a), Miller and Mr. Hunt argued:

17
18
19
20
21
22

> Regarding rejection of claim 1 as obvious, OA pages 16-17 states "Duffy teaches generating a suggested reference list of one of more law enforcement agencies based on an applicant residential address." Examiner acknowledges that Duffy is "not directed at law enforcement agencies. Applicant points out that Duffy is not only not directed at employment background checks for law enforcement agencies. It is also not directed at any type of background investigations for any type of employer. It is directed at product recalls, a completely unrelated field and one that is not reasonably pertinent to the field of background investigations.

23   *See* March 7, 2018 Applicant Initiated Interview Summary, a true and correct copy of which is

24   attached hereto as Exhibit 8.

25   72.   On June 22, 2018, in response to the remarks made by Miller and Mr. Hunt, the

26   USPTO issued a Notice of Allowance for the '707 Application, stating as the reason for allowance

27   that the—

28

FIRST AMENDED COMPLAINT APPX00248

1260427.3

Prior art does not teach " ... investigator ... associating the reference electronic response with the new application entry and ... generating a suggested reference list of one more law enforcement agencies based on an applicant residential address" of Claim 1. Note that Claims 5, 9 and 16 are substantially similar to Claim 1, thus the same rationale applies with respect to prior art and allowance.

The closest prior art are Parikh et al. US 2012/0089528A1, LaPasta et al. US 2005/0033633A1, Ritzel US 6904407 B2 and Duffy et al. US 2009/0319331 A 1.

However, prior art still fail (*sic*) to teach " ... investigator ... associating the reference electronic response with the new application entry and ... generating a suggested reference list of one more law enforcement agencies based on an applicant residential address" of Claim 1. Note that Claims 5, 9 and 16 are substantially similar to Claim 1, thus the same rationale applies with respect to prior art and allowance.

In addition, Applicant's arguments filed 4/26/2018 have been considered and found persuasive.

*See* June 22, 2018 Notice of Allowance, a true and correct copy of which is attached hereto as Exhibit 9.

73.    The Background Assistant™ prior art software is therefore material to the patentability of the '098 and '188 Patents, particularly as to the limitation of "generating a suggested reference list of one or more law enforcement agencies based on the applicant residential address." The patent examiner would not have allowed the claims of the '098 and '188 Patents to issue in their present form had Miller and/or Mr. Hunt disclosed the Background Assistant™ prior art software to the USPTO, as they were required to do under 37 C.F.R. § 1.56. In particular, the USPTO would not have issued the claims of the '098 and '188 Patent in their present form if the Background Assistant™ prior art software had been disclosed, as it provides the teaching that the examiner believed was absent from the prior art known to and relied upon by the examiner. Despite knowing differently, Messrs. Miller and Hunt affirmatively stated that the prior art did not contain any reference to a step of "generating a suggested reference list of one or more law enforcement agencies based on the applicant residential address." The Background Assistant™ prior art software clearly and unambiguously disclosed the step of "generating a suggested reference list of one or more law enforcement agencies based on the applicant residential address."

17

FIRST AMENDED COMPLAINT APPX00249

1260427.3

74.    Thus, "but for" Messrs. Miller and Hunt violating their duty of candor and good faith in dealing with the USPTO by failing to disclose the existence and capabilities of the Background Assistant™ prior art software, the '098 and '188 Patents would not have been allowed by the examiner and issued by the USPTO.

75.    Based on Miller's prior awareness of the Background Assistant™ prior art software, and particularly his familiarity with its capabilities and features, on information and belief, the failure of inventor Miller and his patent attorney Philip Hunt, to disclose the Background Assistant™ prior art software to the USPTO was done with intent to deceive the examiner into allowing the '098 and '188 Patents eventually issued by the USPTO.

76.    The Background Assistant™ prior art software that Miller and his patent attorneys withheld from the USPTO during the prosecution of the '098 and '188 Patents was material because every claim required the step of "generating a suggested reference list of one or more law enforcement agencies based on the applicant residential address." None of these claims would have been allowed or eventually issued had the examiner and/or the USPTO been aware of the Background Assistant™ prior art software.

77.    Through his agents and patent attorneys, Miller made the deliberate decision not to disclose the Background Assistant™ prior art software to the examiner and the USPTO because such disclosure would have rendered all of the claims of the '098 and '188 Patents unpatentable. I.e., the examiner would not have allowed any of the claims of the '098 and '188 Patents if they had been aware of the Background Assistant™ prior art software.

78.    In light of the preceding, the decision of Miller and his prosecution counsel to withhold evidence of Background Assistant™ prior art software during Miller's prosecution of the '098 and '188 Patents constitutes a failure of Miller and his counsel's duty of candor under 37 C.F.R. § 1.56. As such, Miller, MMI as assignee, and their patent counsel committed fraud on the USPTO, rendering the claims of the '098 and '188 Patents unenforceable.

**D.    The Patent-Ineligible Subject Matter of the MMI Patent Portfolio Under 35 U.S.C. § 101**

79.    The '098 and '188 Patents, entitled "Background Investigation Management

18

Service," were issued on June 30, 2015, and August 7, 2018, respectively.

80.    The specifications of the '098 and '188 Patents are identical, explaining that their "subject matter relates to a system to facilitate the process of performing background applications on a plurality of applicants."

81.    In the "Background Information" section of the '098 and '188 Patents, the specification notes that:

> In many areas, but particularly in the area of law-enforcement pre-employment background investigations, investigators report they spend, on average, 40 hours per applicant investigation. During this process, the applicant typically completes *a paper packet* comprised of questions pertaining to the applicant's life history, including information on criminal activity, financial history, drug history, listing relatives and personal references, employment history, and many other in-depth personal questions … The investigator typically uses resources available to him or her to confirm the information the applicant provided in the various documents, to include, contacting past employers, supervisors, neighbors, relatives, references, landlords, etc., which makes up the bulk of the investigator's 40 hours per applicant of spent time.

> What has eluded the industry is an ***automated*** system to help a background investigator ***more efficiently and effectively*** conduct a background investigation.

(Emphasis added).

82.    Describing the embodiment represented in FIG. 1 of the '098 and '188 Patents, the specification states that:

> … software system **100** allows an organization **102** the ability to create and customize electronic documents **104** to be sent to applicants to complete via the software system **100**, and returned to the software system **100** in similar fashion. The software system 100 includes a document creation component **114** and a document management component **116**. The system **100** ***automates the majority of the tasks of a common pre-employment background investigation*** so that fewer hardcopy documents are necessary, thus creating more efficient management of individual background investigations.

(Emphasis added)

FIRST AMENDED COMPLAINT    APPX00251                                      1260427.3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17    83.    Representative claim 1 of the '098 Patent and representative claim 1 of the '188

18  Patent state:

19      Claim 1 of the '098 Patent:

20          1.    A method for a computing device with a processor and a
       system memory to assist an investigator in conducting a background
21       investigation of an applicant for a position within a first
       organization, comprising the steps of:
22
       receiving program data identifying the applicant, the position, the
23       first organization, and the investigator;

24       storing a new applicant entry in the system memory, the new
       applicant entry associated with the program data identifying the
25       applicant, the position, the first organization, and the investigator;

26       transmitting an applicant hyperlink to an applicant email address
       associated with the applicant, the applicant hyperlink for viewing an
27       applicant set of electronic documents;

28       receiving an applicant electronic response with program data
       regarding a first reference, wherein the first reference is a first

20

person likely to have information regarding the applicant, the program data including a first reference email address associated with the first reference;

determining a reference class of the first reference based on the program data regarding the first reference;

selecting a first reference set of electronic documents based on the reference class of the first reference; transmitting a first reference hyperlink to the first reference email address, the first reference hyperlink for viewing the first reference set of electronic documents associated with the position;

receiving a first reference electronic response to the first reference set of electronic documents from the first reference;

storing the first reference electronic response in the system memory, associating the first reference electronic response with the new applicant entry; and

obtaining an applicant residential address from the applicant electronic response;

generating a suggested reference list of one or more law enforcement agencies and/or courts within a pre-defined radius around the applicant residential address; and

presenting the suggested reference list to the investigator.

Claim 1 of the '188 Patent:

1.      A method for a computing device with a processor and a system memory to assist an investigator in conducting a background investigation of an applicant for a position within a first organization, comprising the steps of:

receiving a first set of program data comprising information identifying the applicant, the position, the first organization, and the investigator;

storing a new applicant entry in the system memory, the new applicant entry associated with the first set of program data;

transmitting an applicant hyperlink to an applicant email address associated with the applicant, the applicant hyperlink for viewing an applicant set of electronic documents;

receiving an applicant electronic response with a reference set of program data, wherein the reference set of program data comprises information regarding a reference source, wherein the reference source is a person, the program data including a reference email address associated with the reference source;

FIRST AMENDED COMPLAINT APPX00253

1260427.3

determining a reference class of the reference source based on the reference set of program data;

selecting a reference set of electronic documents based on the reference class of the reference source;

transmitting a reference hyperlink to the reference email address, the reference hyperlink for viewing the reference set of electronic documents;

receiving a reference electronic response to the reference set of electronic documents from the reference source;

storing the reference electronic response in the system memory, associating the reference electronic response with the new applicant entry; and

generating a suggested reference list of one or more law enforcement agencies based on an applicant residential address.

84. During the prosecution of the '098 and '188 Patents, the examiner rejected the proposed claims of both patents as comprising unpatentable subject matter under 35 U.S.C. § 101. [*See,* e.g., 3/10/2014 USPTO communication to Miller during prosecution of the '098 Patent and Proposed Agenda from 3/7/2018 Interview Summary during prosecution of the '188 Patent, true and correct copies of which are attached hereto as Exhibits 10 and 11, respectively].

85. In the prosecution of the '098 Patent, after Miller amended the claims rejected under § 101 to include the phrase "non-transitory computer readable medium," the examiner withdrew the § 101 rejection.

86. In the prosecution of the '188 Patent, after noting that the patent examiner found that the proposed claims fall under the abstract concept of "Fundamental Economic Practices," Miller's patent lawyer responded to the § 101 rejection by stating that the proposed claims were "significantly more" than an abstract concept. [4/26/2018 Communication, Prosecution History of the '188 Patent, pp. 10–12 attached hereto as Exhibit 12]

87. Miller's patent attorney further argued that the patent examiner had wrongly found the claims to be an abstract concept because the examiner had failed to expressly support the necessary underlying factual determinations to reach such a conclusion, as required by Patent Office guidelines then in effect for a § 101 rejection, which required: "(1) a citation to an express statement by applicant; (2) a court decision finding similar claim language ineligible; (3) a publication that

FIRST AMENDED COMPLAINT APPX00254                                    1260427.3

1  demonstrates the well-understood, routine, conventional nature of the additional element(s); or (4)

2  a "statement that the examiner is taking official notice of the well-understood, routine, conventional

3  nature of the additional element(s)." [*Id.* at p. 11].

4      88.    In particular, Miller's patent lawyer asserted that to the best of Miller's knowledge,

5  the examiner had not and "will not be able to supply one of the four items above for specifically

6  one element of claim 1: 'generating a suggested reference list of one or more law enforcement

7  agencies based on an applicant residential address.'" [*Id.*]

8      89.    In response to Miller's argument, the patent examiner tacitly withdrew the § 101

9  statutory subject matter rejection and allowed the claims. [6/22/2018 Notice of Allowability,

10  Prosecution History of the '188 Patent, pp. 1-4, a true and correct copy of which is attached hereto

11  as Exhibit 13].

12      90.    Contrary to Miller's arguments throughout the prosecution of the MMI Patent

13  Portfolio, the claims of the '098 and '188 Patents, as well as the pending claims in the '622

14  Application and the '686 Application, are all directed to non-statutory subject matter under 35

15  U.S.C. § 101.

16      91.    Concerning the '188 Patent, Judge Gilstrap in the U.S. District Court for the Eastern

17  District of Texas recently held the asserted claims invalid under 35 U.S.C. § 101, stating:

18      [T]he Court finds that the '188 Patent and its claims do not purport
19      to solve any technical problem associated with prior art products or
        methods. Instead, the '188 Patent provides a "system for managing
20      the process of performing pre-employment background
        investigations" to "save organizations time and other costly
21      resources." ('188 Patent at 3:67–4:40.) Put another way, the "subject
        matter turns much of a common pre-employment background
22      investigation electronic, so that fewer hardcopy documents are
        necessary, thus creating more efficient management of individual
23      background investigations." *(Id.* at Abstract.) The Court finds such
        to be an abstract idea directed toward automation of basic
24      information gathering and organization.

25      ***

26      The Court is not persuaded by Miller Mendel's argument that the
        concept of "generating a suggested reference list of one or more law
27      enforcement agencies based on an applicant residential address" is
        an "additional element" that renders the claims of the '188 Patent
28      non-abstract … Although the '188 Patent mentions, inter alia,
        computers, servers, mobile phones, and personal headset devices,

the claims and specification lack any disclosure or limitation that indicates a technical improvement of any such components.

\*\*\*

Miller Mendel's focus on novelty and non-obviousness is misplaced. As noted earlier, Miller Mendel once again conflates the analysis of whether the '188 Patent is directed to eligible subject matter under § 101 with whether it meets §§ 102 and 103's novelty requirements.

\*\*\*

Miller Mendel's purported improvement over the prior art is "the alleged efficiency of the method through computerization," which is not enough to confer patent eligibility … The computer and internet technologies described in the '188 Patent are generic, and requiring the use of generic computer technology does not create an inventive concept.

\*\*\*

The '188 Patent claims the well-known process of performing a background check. While the patent inarguably "turns much of a common pre-employment background investigation electronic," such is not enough to make the abstract idea patent eligible. At the end of the day, it remains a "common pre-employment background investigation," which is not eligible for patent protection.

*See* Judge Gilstrap's April 14, 2014 Order in the Texas Action, at pp. 12–13 and 17–20, a true and correct copy of which is attached hereto as Exhibit 14.

92. After MMI requested Judge Gilstrap to reconsider his Order, on June 9, 2022, Judge Gilstrap confirmed his prior Order finding the asserted claims of the '188 Patent invalid under 35 U.S.C. § 101, stating:

Importantly, Miller Mendel failed to cite or discuss in this Motion the standard for reconsideration or perform any analysis of the 12(c) Order under the factors relevant to a Rule 59(e) motion … Instead, Miller Mendel repackages its previously presented arguments in an effort to show that the 12(c) Order was not based in fact. Miller Mendel certainly has not presented any new evidence or intervening change in case law that casts doubt on the Court's decision to grant the 12(c) Motion, nor has Miller Mendel identified any error or injustice in the 12(c) Order.

\*\*\*

As the Court stated in the 12(c) Order, the '188 Patent itself describes a "system for managing the process of performing pre-employment background investigations" to "save organizations time and other costly resources." (Dkt. No. 41 at 12 (citing '188 Patent at 3:67–4:40).) The '188 Patent explicitly states that the "subject matter turns much of a common pre-employment background

24

1
2

> investigation electronic, so that fewer hardcopy documents are necessary, thus creating more efficient management of individual background investigations." ('188 Patent at Abstract.)

3

> ***

4
5
6

> The Court did not rely on evidence outside of the '188 Patent to find that it was directed to an abstract idea because the language intrinsic to the '188 Patent itself demands such a conclusion. As the Federal Circuit has recently held, "the automation of [a] conventional human process to make it more efficient is itself an abstract idea."

7

> ***

8
9
10
11
12

> Miller Mendel's Motion further compels the conclusion that the claimed process can be done with pen, paper, and the human mind, and even explicitly outlines how a background investigator would have performed such a process based on the language in the '188 Patent. (*See, e.g.*, Dkt. No. 47 at 11 (stating that the process can be performed by "purchasing maps for every city and state in the country and forcing a human background investigator to spend tens if not hundreds of hours poring over such maps with a magnifying glass in the forlorn hope of accurately

13
14
15
16

> locating all the relevant law enforcement agencies.").) Indeed, the details presented by Miller Mendel regarding how a background investigator would practice the claims without the aid of even a generic computer prove the Court's conclusion from the 12(c) Order and demonstrate that, while a "pen and paper version of the claimed method would not be particularly efficient, [] it could be completed."

17    *See* Judge Gilstrap's June 9, 2022 Order on MMI's Motion for Reconsideration, at. pp. 9–11, a true

18    and correct copy of which is attached hereto as Exhibit 15.

19        93.    The United States Court of Appeals for the Federal Circuit affirmed the Eastern

20    District of Texas's orders, and the U.S. Supreme Court denied Defendants' petition for writ of

21    *certiorari*.

22        94.    Concerning the '686 Application, on June 22, 2022, the USPTO rejected all

23    pending claims of that application under, *inter alia*, 35 U.S.C. § 101, citing Judge Gilstrap's Order

24    invalidating claims 1, 5, and 15 of the '188 Patent. It must be noted that there is no record of

25    Defendants bringing Judge Gilstrap's Order to the examiner's attention (despite the ethical

26    obligation to do so under 37 C.F.R. § 1.56). Instead, the examiner became aware of Judge Gilstrap's

27    Order on their own. A true and correct copy of the USPTO's June 22, 2022 Office Action is attached

28    hereto as Exhibit 16.

FIRST AMENDED COMPLAINT APPX00257

1260427.3

95.     Concerning the '622 Application, on July 14, 2022, the Patent Trial and Appeal Board finally rejected all claims of that application under, *inter alia*, 35 U.S.C. § 101. A true and correct copy of the Patent Trial and Appeal Board's July 14, 2022 Decision on Appeal is attached hereto as Exhibit 17.

E.     **Defendants' Patent Infringement Suits and Other Unlawful Attempts to Enforce the MMI Patent Portfolio Against Guardian Customers**

96.     Defendants first accused Guardian of patent infringement in October 2017, asserting that Guardian's public safety background investigation management software (the "Guardian Platform") infringed the '098 Patent. A true and correct copy of the Defendants' October 10, 2017, letter to Guardian is attached hereto as Exhibit 18.

97.     As a result of the Defendants' threats, Guardian retained intellectual property counsel to render an opinion as to the validity of the '098 Patent. A true and correct copy of that opinion and its appendices are attached collectively hereto as Exhibit 19.

98.     On March 23, 2018, Guardian's counsel sent Defendants' counsel a response communication, stating, amongst other things, that:

> With respect to the 098 patent, patent law subject matter decisions after the U. S. Supreme Court ruling in Alice Corp. Pty. Ltd. v. CLS Bank International, 134 S. Ct. 2347, at 2354 (2014) as to the patentability of business methods and certain software based products invoke a more rigorous standard than was applied to the 098 patent by the U. S. Patent Office during its examination. In fact, those standards are currently part of the Patent Office's Manual of Patent Examining Procedures ("MPEP") 2106. Under the Alice ruling, a full slate of U. S. District Court and Federal Circuit cases following Alice, and/or MPEP 2106, the validity of all claims of the 098 patent are suspect under 35 U.S.C.§101. Please consider this as Guardian's response to the Rylander letter.

A true and correct copy of the March 23, 2018, letter to the Defendants' counsel is attached hereto as Exhibit 20. As such, as early as March 23, 2018, Defendants and their counsel were expressly aware of and were on notice that the claims of the '098 Patent were susceptible to challenge as being directed to non-statutory subject matter under 35 U.S.C. § 101.

99.     Defendant's counsel responded in writing on March 30, 2018, a true and correct copy of which is attached hereto as Exhibit 21    .

FIRST AMENDED COMPLAINT APPX00258                                    1260427.3

100. Approximately six months later, on October 9, 2018, Defendants sued the City of Oklahoma City, Case No. 5:18-cv-00990-JD, in the United States District Court for the Western District of Oklahoma (the "Oklahoma Action"), for patent infringement based on the City of Oklahoma City's use of the Guardian Platform. Guardian was contractually obligated to defend and indemnify the City of Oklahoma City against MMI's patent infringement claims and has funded the entirety of the defense in the Oklahoma Action, which remains pending.

101. Approximately one year into the Oklahoma Action, Defendants attempted to sue Guardian for patent infringement in the Western District of Oklahoma. Still, the Oklahoma Court disallowed the claim as Guardian is neither incorporated in Oklahoma nor does it maintain a regular and established place of business there, as required by 28 U.S.C. § 1400(b) following the Supreme Court's decision in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 581 U.S. ____, 137 S.Ct. 1514, 197 L.Ed.2d 816 (2017). As such, the Oklahoma Court was not the proper venue to bring suit against Guardian for patent infringement.

102. On February 1, 2021, MMI sued Washington County, Oregon, and Washington County (OR) Sheriff's Office, Case No. 3:21-cv-00168-SB, in the United States District Court for the District of Oregon (the "Oregon Action"), for patent infringement based on the Sheriff's Office's use of the Guardian Platform. As in the Oklahoma Action, Guardian was contractually obligated to defend and indemnify Washington County, Oregon, against MMI's claims of patent infringement and has funded the entirety of the defense in the Oregon Action, which remains pending. On April 2, 2021, the Oregon Court, upon a contested motion by Guardian, through its indemnitees Washington County and the Sheriff's Office, stayed the proceedings in the Oregon Action pending the outcome in the Oklahoma Action.

103. On May 28, 2021, Defendants sued the Alaska State Troopers and James E. Cockrell, Commissioner of the State of Alaska Department of Public Safety, Case No. 3:21-cv-00129-HRH, in the United States District Court for the District of Alaska (the "Alaska Action"), for patent infringement based on the Alaska State Troopers' use of the Guardian Platform. As in the Oklahoma and Oregon Action, Guardian was contractually obligated to defend and indemnify the Alaska State Troopers against MMI's patent infringement claims and has funded the entirety of the

defense in the Alaska Action, which remains pending. On August 19, 2021, the Alaska Court, upon a contested motion by Guardian, through its indemnitee, the Alaska State Troopers, stayed the proceedings in the Alaska Action pending the outcome in the Oklahoma Action.

104.    On December 2, 2021, MMI sued the City of Anna, Texas, and the Anna (TX) Police Department, Case No. 2:21-cv-00445-JRG, in the United States District Court for the Eastern District of Texas (the "Texas Action"), for patent infringement based on the Anna Police Department's use of the Guardian Platform. As in the Oklahoma, Oregon, and Alaska Actions, Guardian was contractually obligated to defend and indemnify the City of Anna, Texas, against MMI's patent infringement claims and has funded the entirety of the defense in the Texas Action.

105.    In place of seeking to stay the Texas Action, Guardian, through its indemnitee City of Anna, Texas, shortly after answering the complaint, moved for judgment on the pleadings that the '188 Patent was invalid under 35 U.S.C. § 101. The district court granted the motion, denied MMI's motion for reconsideration, and clarified that its order invalidating the claims under 35 U.S.C. § 101 "pertained only to claims 1, 5, and 15" of the '188 Patent because "[t]he Court did not analyze any other claim because the Court did not understand any other claim was asserted."

106.    In addition to the four lawsuits, MMI and/or Miller have filed against Guardian customers, Defendants have threatened scores of Guardian's actual and prospective customers with litigation, warning them that they will be sued for their actual or potential use of the Guardian Platform. Miller and/or MMI's threats have resulted in millions of dollars of lost revenue to Guardian.

107.    Since Defendants sued The City of Oklahoma City, Oklahoma, in October 2018 for alleged patent infringement based on its use of the Guardian Platform, Guardian is aware of over ninety (90) agencies that Defendants have sued or threatened to sue for patent infringement for their use or potential use of the Guardian platform.

108.    Guardian is also aware of seventeen (17) agencies that ceased using the Guardian Platform, decided not to use the Guardian Platform, and/or elected to use the Miller Mendel eSOPH public safety background investigation management software because of Defendants' threats of protracted and expensive patent infringement litigation. The known agencies fitting this description

FIRST AMENDED COMPLAINT APPX00260                                                    1260427.3

include:

- Anoka, Minnesota;

- Bothell, Washington Police Department;

- Bozeman, Montana Police Department;

- Broken Arrow, Oklahoma Police Department;

- Buckeye, Arizona;

- CA Dept of Corrections;

- Fort Worth, Texas Police Department;

- Fresno, California Police Department;

- Gilbert, Arizona Police Department;

- Hennepin County, Minnesota Sheriff's Office;

- Kern County, California Sheriff's Office;

- Maricopa County, Arizona Sheriff's Office;

- Minnesota State Highway Patrol;

- New Orleans, Louisiana Police Department;

- Orange County, California District Attorney's Office;

- Salem, Oregon Police Department; and

- University of Missouri Police Department.

109.    As a direct result of Defendants' threats, Guardian conservatively estimates it has lost more than seven figures in recurring annual revenues due to MMI's threats to sue users or potential users of the Guardian Platform.

110.    Despite the significant growth of Guardian's customer base from its first contact with Defendants' counsel, Guardian has been unable to publicize its growth publicly or adequately acknowledge the existence of its customers because of Guardian's fear of Defendants' potential interference with Guardian's contractual relationships. Defendants' threats and interfering actions continue to stifle Guardian's ability to grow its base of customers using the Guardian Platform. The Defendants' actual and prospective threats to and interference with Guardian's customers have artificially stifled Guardian's growth, thereby chilling competition in the Market.

FIRST AMENDED COMPLAINT APPX00261                                             1260427.3

1

2          111.    In a February 24, 2020 communication to Guardian, a true and correct copy of

3    which is attached hereto as Exhibit 22, the City of Gilbert, Arizona advised it was "notified in

4    writing by Mr. Tyler Miller with Miller Mendel, Inc. about a pending patent infringement case in

5    Federal Court in Federal Court against Guardian Alliance Technologies," and that "Gilbert does not

6    want to be involved in this litigation." The City of Gilbert subsequently suspended its use of the

7    Guardian Platform.

8          112.    In a March 27, 2020 communication to Guardian, a true and correct of which is

9    attached hereto as Exhibit 23, the Story County, Iowa Sheriff's Office forwarded a message from

10   Defendants, in which Miller threatens, "[s]hould the County fail to cease using [Guardian's]

11   infringing service/product, further legal correspondence will have to be forthcoming."

12         113.    In an August 16, 2021 communication, a true and correct copy of which is attached

13   hereto as Exhibit 24, the City of Fresno, California Police Department notified Guardian that it was

14   "terminating its contract with [Guardian] due to the pending litigation involving [Guardian], Miller

15   Mendel, Inc., and law enforcement agencies utilizing [Guardian] software."

16         114.    In an October 13, 2021 communication, a true and correct copy of which is attached

17   hereto as Exhibit 25, the City of Fort Worth, Texas advised Guardian that, because of Defendant

18   MMI's threat that "it intended to sue the City [of Fort Worth] if [it] did not immediately halt all use

19   of the [Guardian] software," the City of Fort Worth "is officially suspending its right to purchase

20   goods or services through the Contract [with Guardian] immediately, pending resolution of the

21   patent litigation in Oklahoma Federal Court."

22         115.    In a January 24, 2022 communication to the Cedar Rapids, Iowa Police Department,

23   which was subsequently forwarded to Guardian, a true and correct copy of which is attached hereto

24   as Exhibit 26, Defendants warned they "will continue to file claims against those who use the

25   [Guardian] software."

26         116.    It's not just that Defendants continue to threaten users of the Guardian Platform

27   aggressively; instead, Defendants have repeatedly made false and misleading statements about the

28   MMI Patent Portfolio as well as the course and outcome of Defendants' lawsuits against users of

30

FIRST AMENDED COMPLAINT                                    APPX00262

                                                                                          1260427.3

the Guardian Platform. Defendants' false and misleading statements have significantly affected actual and potential users of the Guardian Platform—an inherently risk-averse type of Market participant.

117.    In a March 26, 2020 communication to Guardian customer the State of Alaska, a true and correct copy of which is attached hereto as Exhibit 27, Defendants intentionally misstated the result, scope, and effect of a decision by the Patent Trial and Appeal Board ("PTAB") in a collateral *inter partes* review ("IPR") proceeding. Defendants misstated that the PTAB's decision "illustrates Guardian Alliance Technologies' Infringement and failed attempt to cover his [sic]patent infringement/theft." As Guardian's counsel promptly pointed out to counsel-of-record for Defendants, this statement is false as the Patent Trial and Appeal Board ***does not have*** jurisdiction to determine liability for infringement of a patent.

118.    Despite Guardian's requests to Defendants' counsel to cure these false statements in the marketplace, Defendants ramped up their unfair and anti-competitive actions in the Market. For example, Defendants began publishing and circulating a so-called "memo" in the Market about Guardian and the Guardian Platform. This "memo" contained a "large number of literal falsehoods, egregious misrepresentations and inaccuracies, and selective withholding of material information," as Guardian's counsel once again pointed out to Defendants' counsel. A true and correct copy of the "memo," as contained in a July 25, 2021 email from Miller to the City of Buckeye, Arizona and subsequently provided to Guardian's counsel, is attached hereto as Exhibit 28.

119.    Again, Defendants did not heed Guardian's demands to cease their unfair and anti-competitive behavior; instead, amplifying their efforts by subsequently making the "memo" available to the general public through an October 1, 2021 "open letter" on Defendants' website at https://www.millermendel.com/news/serious-public-concerns-miller-mendels-president-ceos-public-letter-regarding-guardian-background-software/, a true and correct copy of which is attached hereto as Exhibit 29. As of the date of the commencement of this suit, the "memo" and "open letter" are still available at that location.

120.    In the "open letter," a true and correct copy of which is attached hereto as Exhibit 30, Defendants explain their deliberate decision to target Guardian's vulnerable public safety

FIRST AMENDED COMPLAINT APPX00263                                        1260427.3

customers instead of filing suit directly against Guardian:

> MMI has been asked why it has filed lawsuits against agencies using the Guardian software. The answer is this: the actual use of the Guardian software by the agency is the damaging aspect to MMI. If Guardian made the software but no agency "bought" the software to use, monetary damage would be little. The agency paying Guardian to use the infringing software is where the damage begins and continues.
>
> ***
>
> Regardless of whether Guardian indemnifies your agency and employees for your use of the Guardian software, **your agency and employees will have to navigate** the complicated process of defending yourselves in a patent infringement lawsuit, which includes producing labor-intensive discovery and (potentially) appearing for depositions.

(Emphasis added.) In addition to its misleading, at best, statements of law and fact in this "open letter," Defendants took the liberty of outlining exactly how demanding and taxing the use of the Guardian Platform would be for any public safety agency. The contours of Defendants' unfair, anti-competitive, and monopolistic scheme are quite apparent from this "open letter."

121.    On page 1 of the "open letter," Mr. Miller claims that "Guardian's contract between Guardian and the agency gives Guardian control and data sharing permission over highly sensitive and confidential data that your agency, applicants, and applicants' references enter into the Guardian system." This statement is literally false because neither the Guardian contract, Terms of Service, nor Privacy Policy gives any such control to Guardian.

122.    While the Terms of Service and Privacy Policy that Mr. Miller was referencing (updated January 5, 2021) was many months old by the time he distributed his open letter on October 1, 2021, and had undergone more than one update in that time, Guardian's treatment of applicant information or agency/employer information has been consistent throughout and has never entailed any of the activities described by Mr. Miller's false statements. The January 5, 2021, version of Guardian's Privacy Policy defines explicitly how information is used and/or shared. In no instance does this document, or Guardian's standard 'Platform Activation Agreement,' grant Guardian "control" of agency or applicant information, nor do either of those documents grant Guardian a broad right to share information with any parties other than integrated service providers

and/or as may be required by law.  In order to make his false statement, Mr. Miller had to ignore the specific information outlined in Guardian's Privacy Policy which sets forth exactly how information is used and/or shared.  Guardian's Privacy Policy, as of January 5, 2021, read as follows:

**Use of User Information**

We may use the information we obtain about Users to:

- Register, manage and maintain User accounts on the Platform.

- Provide products or services Users request.

- Maintain Applicant profiles, information, and documentation, and make it available to Employers through the Platform as described below in "Information We Share."

- Supplement an Applicant profile with publicly available information.

- Maintain a record of the documents or information Applicants provide to our Platform.

- Provide administrative notices or communications applicable to Users use of the Platform.

- Respond to User questions and comments and provide support.

- Contact Applicants and deliver information to them that, in some cases, is targeted to their interests (such as relevant services, educational or other career development opportunities); enable Applicants to communicate with us through our blogs, social networks and other interactive media; and solicit Applicant feedback and input. These communications will contain links for preference management and, where appropriate, unsubscribe links should Applicants decide they do not want to receive further communications.

- Manage User participation in our events and other promotions, where Users have signed up for such events and promotions.

- Operate, evaluate and improve our business and the products and services we offer.

- Analyze and enhance our marketing communications and strategies (including by identifying when emails we have sent to Users have been received and read).

- Analyze trends and statistics regarding use of our Platform, mobile applications and social media assets.

- Analyze trends and statistics about the job market and career mobility, locally and nationally, and provide these analytics to certain Users.

- Optimize our Platform search engine results and permit search engine access to public profile information.

- Protect against and prevent fraud, unauthorized transactions, claims and other liabilities, and manage risk exposure, including by identifying potential hackers and other unauthorized users.

- Enforce our Platform' Terms and Conditions.

- Comply with applicable legal requirements, court orders, legal proceedings, document requests, and industry standards and our policies.

- We also use non-personally identifiable information and certain technical information about computer hardware used by all Users accessing the Platform (including internet protocol addresses) in order to operate, maintain and manage the Platform. We collect this information by automated means, such as cookies and web beacons, as described in more detail below.

FIRST AMENDED COMPLAINT APPX00266

- If we seek to use information we obtain about Users in other ways, we will provide specific notice and request User consent at the time of collection.

**Information We Share**

- We share the information that we collect from Applicants or from third party sources with Employers and Integrated Service Providers.

- Employers may use Applicant information to contact Applicant's directly.

- When Applicant's provide documents or information through the Platform, the information and documents supplied by Applicants or shared through the Platform may become part of the Employer's database. Similarly, if an Applicant's profile on the Platform or documents that have been uploaded to the Platform by Applicant are downloaded by an Employer, Applicant information may become a part of the Employer's database. In these instances, the use of such information by the Employer will be subject to the privacy policy of that Employer, and Guardian is not responsible for the Employer's use of Applicant information.

- Guardian may share Applicant Information with our service providers who help us in the delivery of our own products and services to Employers. These service providers may only use or disclose the information as necessary to perform services on our behalf or as otherwise required by law.

- Guardian may disclose specific user information if/when Guardian determines, in good faith, that such disclosure is necessary to comply with the law, to cooperate with or seek assistance from law enforcement, to prevent a crime or protect national security, or to protect the interests or safety of Guardian or other Users of the Platform.

FIRST AMENDED COMPLAINT APPX00267                                      1260427.3

123.    Applicant Information that has been input or uploaded to the Platform may be passed on to a third party in the event of a transfer of ownership or assets, or a bankruptcy or other corporate reorganization of Guardian.

124.    Also, on page 1 of the "open letter," Mr. Miller goes on to state, "As such, it appears that using Guardian prevents your agency from complying with confidentiality, privacy and data security regulations and your agency's legal and ethical obligations to applicants and applicants' references who are compelled to provide information during the background investigation process." This statement is literally false because nothing about the use of the Guardian system prevents any agency from complying with confidentiality, privacy, and data security regulations, nor is there any statement of any kind contained in Guardian's Terms of Service or Privacy Policy that would lead someone to draw such a conclusion. Further, as can be plainly seen from the provisions cited above from Guardian's January 5, 2021 Privacy Policy, use and sharing of information is specifically defined and pertains specifically to making Guardian's software useful to its customers. Furthermore, to make his false statement, Mr. Miller would have had to willfully ignore the "How We Protect Personal Information" section of Guardian's Privacy Policy, updated January 5, 2021, which explicitly states:

> Guardian observes and maintains a security program consistent with federal and state laws, regulations, and standards, including the CJIS Security Policy, as well as any other applicable policies and standards established by the Criminal Justice Information Services (CJIS) Advisory Policy Board (APB), combined with administrative, technical and physical safeguards designed to assist us in protecting the Personal Information we collect against accidental, unlawful or unauthorized destruction, loss, alteration, access, disclosure or use.

125.    On page 3 of the "open letter," Mr. Miller states, "We believe you will come to the opinion that under the Guardian contract terms, you grant Guardian permission to share a wide range of data the system collects about your applicants with other agencies, contractors, and commercial affiliates (see Attachment 4, Pages 20 and 21)." This statement is literally false because the Guardian contract terms do not grant Guardian permission to share a wide range of data with

FIRST AMENDED COMPLAINT APPX00268

1260427.3

other agencies. With this false statement, Mr. Miller attempts to get a Guardian customer or prospective customer to follow his false statements and agree with them to interrupt their confidence in the Guardian software solution. Contrary to Mr. Miller's statement, Guardian's Privacy Policy, updated January 5, 2021, as quoted above, defines explicitly how information is used and/or shared, and nowhere does that policy grant Guardian the right to share any data with other agencies. Guardian does not, and has never, in fact shared any user information with any agencies at any time. All information sharing occurs between the applicant and the agency/employer or agencies/employers with whom they are applying for employment. Further, Mr. Miller cites pages 20 and 21 of his letter as evidence of his false claims. Upon review, the provisions cited have absolutely nothing to do with Guardian's treatment of user information, but instead speak to the user's responsibilities as it relates to information they enter into the system.

126. On page 5 of the "open letter," Mr. Miller states, "There may be additional laws in your state the Guardian Terms of Use and Guardian Privacy Policy are not compatible with due to the way Guardian shares personal data related to a background investigation of an applicant to a public entity." This statement is literally false because Guardian's terms of use and privacy policy are compatible with the laws of all 50 states. Further, Mr. Miller's suggestion that Guardian shares personal data related to a background investigation of an applicant to a public entity is completely, demonstrably false, thereby rendering Mr. Miller's "warning" misleading and baseless. Nowhere in Guardian's Terms of Service or Privacy Policy is it stated that Guardian shares information of any kind with other agencies. It is demonstrably provable that information is always and only shared by the applicant with the agency/employer, and/or by the employer with third-party integrated service providers, such as when an agency/employer may share certain applicant information to a service provider in order to procure a social media screening report. The Guardian software resides on servers contained in the AWS GovCloud environment, which is deliberately secure and for use with sensitive government information. Further, Mr. Miller's statement can only be regarded as intentionally false, considering that the "How We Protect Personal Information" section of Guardian's Privacy Policy, updated January 5, 2021, explicitly states:

**How We Protect Personal Information**

FIRST AMENDED COMPLAINT APPX00269                                    1260427.3

Guardian observes and maintains a security program consistent with federal and state laws, regulations, and standards, including the CJIS Security Policy, as well as any other applicable policies and standards established by the Criminal Justice Information Services (CJIS) Advisory Policy Board (APB), combined with administrative, technical and physical safeguards designed to assist us in protecting the Personal Information we collect against accidental, unlawful or unauthorized destruction, loss, alteration, access, disclosure or use.

127.    Also on page 5 of the "open letter," Mr. Miller states, "Guardian Contract Terms Do Not Limit How Third Parties Access or Use The Data You Or Your Applicants Enter. Per the Guardian contract terms, Guardian can permit their other clients and commercial affiliates to download your applicants' personal information for their own purposes and maintain that sensitive, confidential data on their own IT systems. Those other clients and commercial affiliates are permitted to contact your applicants directly, and to use, process, and store your applicants' sensitive, confidential data as they wish without any monitoring or limitations from Guardian (see Attachment 4, Page 21)." This statement is literally false because the Guardian contract terms do not permit any clients or commercial affiliates to download an applicant's personal information for their own purposes.  In fact, the only applicant information ever shared with a third party, is shared by the agency/employer and is limited only to that information necessary for the third party service provider to provide service to the agency/employer, such as in the case of a ordering a social media screening report, in which case, the agency/employer would submit the applicant's name and email address along with any known social media accounts the applicant has, as disclosed to the agency/employer by the applicant.  Despite Mr. Miller's attempt to point to some provisions of Guardian's Terms of Service or Privacy Policy that support this false statement, his references are to the User's obligation to treat their own information responsibly.  Guardian's Privacy Policy describes use of applicant information, updated January 5, 2021, as cited above, and if applicant data were ever going to be used in any way other than described therein, Guardian's policy specifically states that:

"If we seek to use information we obtain about Users in other ways, we will provide specific notice and request User consent at the time of collection."

FIRST AMENDED COMPLAINT APPX00270                                      1260427.3

128.    On page 6 of the "open letter," Mr. Miller states, "However, Guardian appears to engage in data sharing activities that conflict with those laws by not providing a system that offers adequate notice or opt-outs of that sharing." This statement is literally false because Guardian does not engage in the sharing of applicant data between agencies. Further, nowhere in Guardian's Terms of Service or Privacy Policy is it stated that Guardian shares applicant information with other agencies. Further, contrary to Mr. Miller's statement, when submitting information to an agency/employer, applicants are made fully aware of how that information will be used and consent to its use for such purpose.  Further, as stated previously, Guardian's Privacy Policy updated January 5, 2021, narrowly defines how information is used.

129.    On page 7 of the "open letter," Mr. Miller states, "However, Guardian does not contractually agree to comply with privacy laws or regulations and reserves the right to disclose applicant personal information in violation of Guardian's own privacy policy 'to comply, at [Guardian's] sole discretion, with legal requirements ….'" This statement is literally false because not only does Guardian comply with privacy laws, in the "How We Protect Personal Information" section of our Privacy Policy, updated as of January 5, 2021, Guardian states, explicitly, that:

**How We Protect Personal Information**

Guardian observes and maintains a security program consistent with federal and state laws, regulations, and standards, including the CJIS Security Policy, as well as any other applicable policies and standards established by the Criminal Justice Information Services (CJIS) Advisory Policy Board (APB), combined with administrative, technical and physical safeguards designed to assist us in protecting the Personal Information we collect against accidental, unlawful or unauthorized destruction, loss, alteration, access, disclosure or use.

130.    Also on page 7 of the "open letter," Mr. Miller states: "As you can see from the outline above, you are granting Guardian permission to collect data and put data to use per Guardian's discretion, outside of your agency's control." This statement is literally false because the agencies are solely in control of their own data and the "outline above" that Mr. Miller cites refers to the collection of his own false statements.  It is plainly clear from Guardian's Terms of

1   Service and Privacy Policy that use of information is limited to providing the software as a service

2   to agencies/employers for use in performing background investigations and related activities.

3          131.    Even after Judge Gilstrap, Chief Judge of the Eastern District of Texas invalidated

4   Claims 1, 5, and 15 of the '188 Patent (i.e., the claims that Defendants have accused Guardian's

5   customers of infringing in the Oklahoma, Oregon, Alaska, and Texas Actions), Defendants'

6   attempts to intimidate actual and potential users of the Guardian Platform remain brazen. Guardian

7   continues to threaten the Market, issuing threats of patent infringement and claiming that

8   Defendants' patent remains in "full force and effect." This facially false and misleading, at best,

9   statement was included in a press release dated May 3, 2022, a true and correct copy of which is

10  attached hereto as Exhibit 31 and still available on Defendants' website as of the commencement of

11  this    suit    (https://www.millermendel.com/news/miller-mendels-esoph-patent-remains-in-full-

12  effect-after-judges-decision/). The statements made in this press release have also been

13  communicated directly to at least some number of users of the Guardian Platform. For example, a

14  true and correct copy of Defendants' May 17, 2022 communication to Guardian customer Siskiyou

15  County (CA) Sheriff's Department attaching the "memo" and "open letter," subsequently provided

16  to Guardian's counsel is attached hereto as Exhibit 32.

17         132.    Even on the eve of the commencement of this suit, Defendants continued to directly

18  contact users of the Guardian Platform, once again alerting them that Defendants have sued users

19  of the Guardian Platform for patent infringement, asserting that **all claims** of the MMI Patent

20  Portfolio are in full force and effect despite the Eastern District of Texas's invalidation, and

21  repeating the egregious allegations contained in the "memo."

22         133.    These are a few examples of Defendants' unfair, anti-competitive conduct as part

23  of its overt attempts to stifle competition and monopolize the Market.

24         134.    Defendants' attempted enforcement of the fraudulently-obtained MMI Patent

25  Portfolio against current and prospective users of the Guardian Platform, Defendants' spreading of

26  false and misleading statements in the marketplace about certain aspects of the Guardian Platform,

27  and Guardian's business practices (i.e., the allegations found in the "memo"), alone or in

28  combination with Defendants' other unfair, anti-competitive, and monopolistic conduct, has

FIRST AMENDED COMPLAINT APPX00272

1260427.3

1    significantly harmed Guardian and injured the Market.

2        135.    Defendants' unfair, anti-competitive, and monopolistic conduct has forced

3    Guardian to expend significant amounts of time, money, and human resources to defend and

4    indemnify its customers that Defendants have sued—including the time and expense incurred by

5    Guardian to explain the falsity of Defendants' statements and actions, and to mitigate the risk of

6    Defendants' potential to bring suit against current and prospective users of the Guardian Platform.

7        136.    Defendants' unfair, anti-competitive, and monopolistic conduct has stifled

8    Guardian's commercial growth and, therefore, competition in the Market due to Guardian's and

9    current and prospective users of the Guardian Platform's fears of having to defend against baseless

10    patent infringement lawsuits. As exemplified above, public safety agencies have ceased use of or

11    refrained from using the Guardian Platform altogether amid Defendants' threats.

12        137.    Guardian and the Market have been harmed by Defendants' procurement of "sole-

13    source" qualification (erroneously awarded based on the fraudulently-obtained MMI Patent

14    Portfolio), which Defendants' continue to use in bad faith even after the Eastern District of Texas's

15    invalidation of the Claims 1, 5, and 15 of the '188 Patent and the Federal Circuit's affirmance

16    thereof, thereby allowing Defendants to avoid open and competitive RFP processes for the sale of

17    its public safety background investigation management software, eSOPH. Defendants' sole-source

18    qualification has prevented Guardian, and other competitors of public safety background

19    investigation management software, from bidding in RFP processes, thereby decreasing

20    competition in the Market and maintaining monopoly-level pricing, harming the Market

21    participants as a whole.

22        138.    With this suit, Guardian seeks redress and compensation for itself, and on behalf of

23    the Market, for Defendants' unfair, anti-competitive, and monopolistic conduct. Grant of the relief

24    sought herein by Guardian will return competition to the Market by reversing the chilling effect

25    that Defendants' unfair, anti-competitive, monopolistic conduct has had on the Market.

26                            **FIRST CLAIM FOR RELIEF**

27            **Declaration of Unenforceability of the '098 Patent for**

28                **Defendants' Inequitable Conduct**

FIRST AMENDED COMPLAINT APPX00273                                    1260427.3

1    139.    Guardian incorporates and realleges paragraphs 1–138 herein by reference.

2    140.    Specifically, Guardian incorporates by reference the allegations set forth in

3    paragraphs 33–78 above.

4    141.    An immediate, real, and justiciable controversy exists between Guardian and

5    Defendants regarding the enforceability of the '098 Patent.

6    142.    Guardian seeks a judgment declaring that the claims of the '098 Patent are

7    unenforceable under the doctrine of inequitable conduct.

8    **<u>SECOND CLAIM FOR RELIEF</u>**

9    **Declaration of Unenforceability of the '188 Patent for**

10   **Defendants' Inequitable Conduct**

11   143.    Guardian incorporates and realleges paragraphs 1–142 herein by reference.

12   144.    Specifically, Guardian incorporates by reference the allegations set forth in

13   paragraphs 33–78 above.

14   145.    An immediate, real, and justiciable controversy exists between Guardian and

15   Defendants regarding the enforceability of the '188 Patent.

16   146.    Guardian seeks a judgment declaring that the claims of the '188 Patent are

17   unenforceable under the doctrine of inequitable conduct.

18   **<u>THIRD CLAIM FOR RELIEF</u>**

19   **Declaratory Judgment of Invalidity of the '098 Patent**

20   **Under 35 U.S.C.  §§ 101, 102, 103, and 112**

21   147.    Guardian incorporates and realleges paragraphs 1–146 herein by reference.

22   148.    Specifically, Guardian incorporates by reference the allegations set forth in

23   paragraphs 33–94 above.

24   149.    All claims of the '098 Patent are invalid under *at least* 35 U.S.C. §§ 101, 102, 103,

25   and 112.

26   150.    An immediate, real, and justiciable controversy exists between Guardian and

27   Defendants regarding the validity of the '098 Patent.

28   151.    Guardian seeks a judgment declaring that the claims of the '098 Patent are invalid.

FIRST AMENDED COMPLAINT                                        APPX00274                                        1260427.3

**FOURTH CLAIM FOR RELIEF**

**Declaratory Judgment of Invalidity of the '188 Patent**

**Under 35 U.S.C. §§ 101, 102, 103, and 112**

152. Guardian incorporates and realleges paragraphs 1–151 herein by reference.

153. Specifically, Guardian incorporates by reference the allegations set forth in paragraphs 33–94 above.

154. All claims of the '098 Patent are invalid under *at least* 35 U.S.C. §§ 101, 102, 103, and 112.

155. An immediate, real, and justiciable controversy exists between Guardian and Defendants regarding the validity of the '188 Patent.

156. Guardian seeks a judgment declaring that the claims of the '098 Patent are invalid.

**FIFTH CLAIM FOR RELIEF**

***Walker Process:* Attempted Monopolization in**

**Violation of § 2 of the Sherman Act, 15 U.S.C. § 2**

157. Guardian incorporates and realleges paragraphs 1–156 herein by reference.

158. Defendants have attempted to monopolize the Background Investigation Management Software Management Market, a nationwide market in which Defendants are actively engaged in interstate commerce.

159. Defendants have attempted to monopolize the Market with the specific intent to do so through their fraudulent misrepresentations and omissions to the USPTO in connection with the prosecution of the MMI Patent Portfolio, creating a dangerous probability that Defendants will obtain a monopoly in the Market in violation of Section 2 of the Sherman Act (15 U.S.C. § 2).

160. The MMI Patent Portfolio that Defendants asserted and threatened to assert against Guardian and its customers was invalid and unenforceable due to inequitable conduct, as a result of egregious affirmative misconduct before the USPTO and/or intentional withholding of information that was but-for material to patentability, and/or unclean hands based on egregious misconduct before the USPTO in the prosecution of the MMI Patent Portfolio.

161. Defendants knew that the '098 and '188 Patents asserted against Guardian and its

customers were invalid and unenforceable at the time of those assertions and attempted assertions, as described in paragraphs 33 to 94, above.

162.    As a direct and proximate result of Defendants' unlawful conduct, competition in the Market has been severely harmed through price control, less innovation, lower quality, and fewer options for customers.

163.    As a direct and proximate result of Defendants' unlawful conduct, Guardian has been harmed in an amount to be established at trial. Guardian's damages include the attorneys' fees and costs it has been forced to incur in defending against Defendants' baseless claims for infringement against Guardian and its customers, as well as the anti-competitive harm it has suffered as a result of Defendants' unlawful attempt to acquire and maintain a monopoly in the Market, including loss of past and future profits and loss of past and future customers and customer goodwill.

164.    Defendants' unlawful conduct will continue unless enjoined, resulting in irreparable injury to Guardian for which it has no adequate remedy at law.

**SIXTH CLAIM FOR RELIEF**

*Handgards:* **Attempted Monopolization in Violation of § 2**

**of the Sherman Act, 15 U.S.C. § 2**

165.    Guardian incorporates and realleges paragraphs 1–164 herein by reference.

166.    Defendants have attempted to monopolize the Public Safety Background Investigation Software Management Market, a nationwide market in which Defendants are actively engaged in interstate commerce.

167.    Defendants have attempted to monopolize the Market with the specific intent to do so through sham legal actions asserting infringement of MMI Patent Portfolio against Guardian and its customers, creating a dangerous probability that Defendants will obtain a monopoly in the Market, in violation of Section 2 of the Sherman Act (15 U.S.C. § 2).

168.    As a direct and proximate result of Defendants' unlawful conduct, competition in the Market has been severely harmed through price control, less innovation, lower quality, and fewer options for customers.

FIRST AMENDED COMPLAINT    APPX00276    1260427.3

169.    As a direct and proximate result of Defendants' unlawful conduct, Guardian has been harmed in an amount to be established at trial. Guardian's damages include the attorneys' fees and costs it has been forced to incur in defending against Defendants' baseless claims for infringement against Guardian and its customers, as well as the anti-competitive harm it has suffered as a result of Defendants' unlawful attempt to acquire and maintain a monopoly in the Market, including loss of past and future profits and loss of past and future customers and customer goodwill.

170.    Defendants' unlawful conduct will continue unless enjoined, resulting in irreparable injury to Guardian for which it has no adequate remedy at law.

## SEVENTH CLAIM FOR RELIEF

### California Unfair Competition

### CAL BUS. & PROF. CODE § 17200

171.    Guardian incorporates and realleges paragraphs 1–159 herein by reference, particularly paragraphs 118–132.

172.    Defendants' unfair or fraudulent business actions and unfair, deceptive, untrue, or misleading advertising is prohibited by Chapter 1 of Part 3 of Division 7 of the California Business and Professions Code.

173.    Defendants have engaged in unfair competition and should, therefore, be enjoined by this court, preventing Defendants from the use or employment by any person of any practice which constitutes unfair competition, as is necessary to restore Guardian's interests.

174.    Defendants have realized revenue and profits by virtue of their wrongful acts that they otherwise would not have obtained and to which they are not entitled. Guardian is entitled to Civil Penalties as indicated in Cal. Bus. & Prof. Code § 17206.

175.    Defendants' conduct injured Guardian's commercial interest in its sales and profits and its business in an amount of damages to be determined at trial.

176.    Defendants' conduct has caused and, unless and until such acts are restrained and enjoined by this court, will continue to cause irreparable injury to Guardian.

177.    As a result of Defendants' actions, Guardian has suffered and will continue to suffer

damages in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF

### California False Advertising

### CAL BUS. & PROF. CODE § 17500

178.    Guardian incorporates and realleges paragraphs 1–166 herein by reference, particularly paragraphs 118–132.

179.    Defendants disseminated false, misleading, and/or disparaging statements knowing that the statements were false or in reckless disregard for the truth of the matter, with the intention of selling their own services.

180.    Defendants have made false, misleading, and/or disparaging statements nationwide, including in California, and those statements were further disseminated to the relevant purchasing public in the Market, including in California.

181.    Defendants' false, misleading, and/or disparaging statements have misled, or will likely mislead, actual or potential purchasers of Guardian's services, damaged Guardian's reputation in the Market, lessened the goodwill in the Market associated with Guardian's services, and wrongfully diverted sales of services to Defendants. As a result, Guardian has suffered pecuniary losses as a result of Defendants' false, misleading, and disparaging statements.

182.    Defendants' conduct has caused and, unless and until such acts are restrained and enjoined by this court, will continue to cause irreparable injury to Guardian.

183.    As a direct result of Defendants' actions, Guardian has lost *at least* the following customers:

- Anoka, Minnesota;

- Bothell, Washington Police Department;

- Bozeman, Montana Police Department;

- Broken Arrow, Oklahoma Police Department;

- Buckeye, Arizona;

- CA Dept of Corrections;

FIRST AMENDED COMPLAINT APPX00278

1260427.3

- Fort Worth, Texas Police Department;

- Fresno, California Police Department;

- Gilbert, Arizona Police Department;

- Hennepin County, Minnesota Sheriff's Office;

- Kern County, California Sheriff's Office;

- Maricopa County, Arizona Sheriff's Office;

- Minnesota State Highway Patrol;

- New Orleans, Louisiana Police Department;

- Orange County, California District Attorney's Office;

- Salem, Oregon Police Department;

- University of Missouri Police Department.

184.    To date, Guardian's economic loss from these seventeen customers exceeds at least $1,000,00.

185.    Guardian seeks damages, in amount to be determined at trial, for this economic loss.

### NINTH CLAIM FOR RELIEF

### Tortious Interference with Contract

186.    Guardian incorporates and realleges paragraphs 1–172 herein by reference, particularly paragraphs 118–132.

187.    Defendants knew when soliciting, attempting to enforce, and/or threatening to enforce its fraudulently-obtained patent portfolio against Guardian's actual customers that Defendants had procured those patents through fraud committed on the USPTO.

188.    Such solicitation, attempted and/or threatened enforcement resulted in current Guardian customers electing to no longer use the Guardian Platform.

189.    Those actions and those described above constitute intentional interference with Guardian's contractual and business relationships.

FIRST AMENDED COMPLAINT    APPX00279

1260427.3

190. Guardian has been damaged by such interference and is entitled to an award of compensatory and punitive damages in an amount to be determined at trial but in excess of $75,000.

191. Guardian is entitled to judgment in its favor and against Defendants in an amount in excess of $75,000, plus its costs, including reasonable attorneys' fees, plus prejudgment and post-judgment interest as provided by law.

## TENTH CLAIM FOR RELIEF

### Tortious Interference with Prospective Business Advantage

192. Guardian incorporates and realleges paragraphs 1–178 herein by reference, particularly paragraphs 118–132.

193. Defendants knew when soliciting, attempting to enforce, and/or threatening to enforce its fraudulently-obtained patent portfolio against Guardian's prospective customers that Defendants had procured those patents through fraud committed on the USPTO.

194. Such solicitation, attempted and/or threatened enforcement resulted in prospective Guardian customers electing to not use the Guardian Platform and, instead, use Defendants' eSOPH software.

195. Those actions and those described above constitute intentional interference with Guardian's prospective business relationships.

196. Guardian has been damaged by such interference and is entitled to an award of compensatory and punitive damages in an amount to be determined at trial but in excess of $75,000.

197. Guardian is entitled to judgment in its favor and against Defendants in an amount in excess of $75,000, plus its costs, including reasonable attorneys' fees, plus prejudgment and post-judgment interest as provided by law.

## ELEVENTH CLAIM FOR RELIEF

### Trade Libel

198. Guardian incorporates and realleges paragraphs 1–184 herein by reference, particularly paragraphs 118–132.

199. Defendants' communications to Guardian's current and prospective customers regarding the status of the various litigations and proceedings between Guardian, its customers, and

FIRST AMENDED COMPLAINT APPX00280

1260427.3

1  Defendants, and Defendants' "memo" and "open letter" published by Defendants on their website

2  and disseminated to multiple Guardian current and prospective customers, contain false statements

3  that are injurious to Guardian and its business of providing public safety background investigation

4  management software to public safety agencies.

5       200.    Specifically, Defendants have falsely represented to numerous Guardian customers

6  that the USPTO issued a decision that "illustrates Guardian Alliance Technologies' Infringement

7  and failed attempt to cover his (*sic*) patent infringement/theft." That statement is literally false, as

8  the USPTO never issued any decision finding that Guardian infringed any of the Defendants' patents

9  and, in fact, does not even have the authority or jurisdiction to do so.

10       201.    Moreover, the "memo" and "open" letter contain literal falsehoods regarding the

11  status of Defendants' various litigations and proceedings against Guardian and its customers, as

12  well as literal falsehoods regarding the integrity of applicant data collected and stored in the

13  Guardian Platform.

14       202.    Defendants have always been aware of its accused statements' false, malicious, and

15  injurious nature. Even after Guardian and its counsel made Defendants aware of the literal falsity

16  of its statements, Defendants refused to retract the statements and, in fact, ramped up their

17       of the same. Defendants are, therefore, without excuse or justification for their acts and

18  statements. They have made such statements and engaged in such acts with disinterested

19  malevolence and hatred, all for inflicting harm upon Guardian.

20       203.    As a direct result of Defendants' actions, Guardian has lost *at least* the following

21  customers:

22      •   Anoka, Minnesota;

23      •   Bothell, Washington Police Department;

24      •   Bozeman, Montana Police Department;

25      •   Broken Arrow, Oklahoma Police Department;

26

27      •   Buckeye, Arizona;

28      •   CA Dept of Corrections;

FIRST AMENDED COMPLAINT APPX00281

1260427.3

- Fort Worth, Texas Police Department;

- Fresno, California Police Department;

- Gilbert, Arizona Police Department;

- Hennepin County, Minnesota Sheriff's Office;

- Kern County, California Sheriff's Office;

- Maricopa County, Arizona Sheriff's Office;

- Minnesota State Highway Patrol;

- New Orleans, Louisiana Police Department;

- Orange County, California District Attorney's Office;

- Salem, Oregon Police Department;

- University of Missouri Police Department.

204.    To date, Guardian's economic loss from these seventeen customers exceeds at least $1,000,00.

205.    Guardian seeks damages, in amount to be determined at trial, for this economic loss.

## **PRAYER FOR RELIEF**

WHEREFORE, Guardian prays for judgment and relief as follows:

A.      A declaratory judgment that the '098 Patent is unenforceable for Defendants' inequitable conduct;

B.      A declaratory judgment that the '188 Patent is unenforceable for Defendants' inequitable conduct;

C.      A declaratory judgment that the '098 Patent is invalid;

D.      A declaratory judgment that the '188 Patent is invalid;

FIRST AMENDED COMPLAINT APPX00282                                                      1260427.3

1    E.    A judgment in favor of Guardian declaring that Defendants have attempted to

2  monopolize the Public Safety Background Investigation Management Software Market in

3  violation of Section 2 of the Sherman Act, 15 U.S.C. § 2;

4    F.    A permanent injunction against Defendants, their respective officers, agents,

5  servants, directors, and employees, and all persons in active concert or participation with each,

6  from monopolizing and attempting to monopolize the relevant markets under Section 16 of the

7  Clayton Act, 15 U.S.C. § 26;

8    G.    A permanent injunction against Defendants from enforcing or attempting to

9  enforce any claims of any patent or patent application in the MMI Patent Portfolio or any claims

10  of any patent or patent application that claims priority to any patent or patent application in the

11  MMI Patent Portfolio;

12    H.    A permanent injunction against Defendants from using any false or misleading

13  statements which can or are likely to influence customers' purchasing decisions of any of

14  Defendants' services or products;

15    I.    A judgment and order requiring Defendants to account to Guardian for all sales

16  and profits from the sale of any of Defendants' services or products as a result of any false or

17  misleading statements, or for any sum in addition to that amount the Court and/or jury awards;

18    J.    An award to Guardian of actual and compensatory damages, including but not

19  limited to lost profits and attorneys' fees and costs, trebled by law, plus interest;

20    K.    A judgment and order requiring Defendants to disgorge its profits and other ill-

21  gotten gains resulting from their wrongful conduct;

22    L.    A judgment and order for Guardian to be awarded punitive and/or enhanced

23  damages because of Defendants' wanton and deliberate illegal acts committed with oppression,

24  fraud, and malice;

25    M.    A judgment finding that this is an exceptional case and awarding attorneys' fees

26  pursuant to 35 U.S.C. § 285;

27    N.    A judgment and order allowing Guardian to recover all taxable costs of this

28  actions, including reasonable attorneys' fees and both pre-and post-judgment interest; and

51

FIRST AMENDED COMPLAINT APPX00283

1260427.3

1          O.        Any and all other relief, at law or equity, to which Guardian may show itself to be

2    entitled.

3                              **DEMAND FOR JURY TRIAL**

4          Under Rule 38 of the Federal Rules of Civil Procedure, Guardian requests a trial by jury of

5    any issues so triable by right.

6

7    Dated:  May 14, 2025                    BOUTIN JONES INC.
                                             Attorneys at Law

8                                            Robert D. Swanson
                                             Daniel S. Stouder
9

10                                           and

11                                           DUNLAP CODDING PC
                                             Attorneys at Law

12                                           Douglas J. Sorocco

13                                           And

14                                           RYAN WHALEY, PLLC

15

16                                           by: */s/ Evan W. Talley*

17                                           Evan W. Talley

18                                           Attorneys for Plaintiff
                                             Guardian Alliance Technologies, Inc.

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT                                              APPX00284                        1260427.3

1 | **BUCHALTER**
A Professional Corporation
2 | Robert S. McWhorter (SBN: 226186)
Harry W.R. Chamberlain II (SBN: 95780)
3 | Jarrett S. Osborne-Revis (SBN 289193)
500 Capitol Mall, Ste. 1900
4 | Sacramento, California 95814
Telephone: (916) 899-1099
5 | Email: rmcwhorter@buchalter.com
        hchamberlain@buchalter.com
6 |     josbornerevis@buchalter.com

7 | **RYLANDER & ASSOCIATES PC**
Kurt M. Rylander (Pro Hac Vice application pending)
8 | 406 West 12th Street
Vancouver, WA 98660
9 | Telephone: (360) 750-9931
Email: rylander@rylanderlaw.com

10 |
Attorneys for Defendants
11 | **Miller Mendel, Inc.** and
**Tyler Miller**

12 |

13 |                  **UNITED STATES DISTRICT COURT**

14 |                  **EASTERN DISTRICT OF CALIFORNIA**

15 |                         **SACRAMENTO DIVISION**

16 | **Guardian Alliance Technologies, Inc.**,       Case No. 2:22-cv-01390-WBS-AC

17 |                  Plaintiff,                    **DEFENDANTS' NOTICE OF MOTION AND MOTION TO TRANSFER VENUE**
18 |           vs.                                 **TO THE WESTERN DISTRICT OF OKLAHOMA PURSUANT TO THE**
19 | **Miller Mendel, Inc.** and **Tyler Miller**,   **FIRST-TO-FILE DOCTRINE; AND MEMORANDUM OF POINTS AND**
20 |                  Defendants.                   **AUTHORITIES IN SUPPORT THEREOF**

21 |                                               Date:      July 21, 2025
                                                 Time:      1:30 p.m.
22 |                                               Judge:     Hon. William B. Shubb
                                                 Dept.:     Courtroom 5, 14th Floor
23 |                                                          501 I Street
                                                          Sacramento, CA 95814
24 |

25 |

26 |

27 |

28 |

**DEFENDANTS' NOTICE OF MOTION AND MOTION**          **CASE NO. 2:22-CV-01390-WBS-AC**
**TO TRANSFER VENUE; MPAS**

**TO THE COURT, CLERK OF COURT, AND PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that **July 21, 2025, at 1:30 p.m.**, or as soon thereafter as the matter may be heard before the Honorable William B. Shubb, United States District Court for the Eastern District of California, located in Courtroom 5, 14th Floor at 501 I Street, Suite 4-200, Sacramento California 95814, Defendants Miller Mendel, Inc. and Tyler Mendel (collectively, "MMI") will and hereby do move the Court to transfer venue of this case to the earlier-filed action *in Miller Mendel, Inc. et al., v. City of Oklahoma City, et a*l., U.S. District Court for the Western District of Oklahoma, Case No. 5:18-cv-00990-JD, which is assigned to the Honorable Jodi W. Dishman. MMI brings this Motion pursuant to and the "first to file rule" because, among other things, transfer of this case to the Western District of Oklahoma would promote judicial efficiency, prevent the risk of inconsistent judgments, and honor the principles of federal comity.

MMI bases upon its Motion upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Kurt Rylander, the Request for Judicial Notice, the records and files herein, and such other and further documentary, demonstrative, and oral evidence as may be requested or permitted by the Court.

Dated: May 30, 2025                RYLANDER & ASSOCIATES PC


By: /s/ Kurt M. Rylander
    Kurt M. Rylander


BUCHALTER, A PROFESSIONAL CORPORATIO
Robert S. McWhorter
Harry W.R. Chamberlain II
Jarrett S. Osborne-Revis

Attorneys for Defendants,
Miller Mendel, Inc. and Tyler Miller

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................................. 4

II.   FACTUAL BACKGROUND ......................................................................................... 4

      A.   The Oklahoma Action ........................................................................................ 4

      B.   The Eastern District of California Action ......................................................... 4

III.  LEGAL STANDARD ...................................................................................................... 5

IV.   ARGUMENT .................................................................................................................... 5

      A.   Chronology of the Actions ................................................................................. 5

      B.   Similarity of the Parties...................................................................................... 7

      C.   Similarity of the Issues ....................................................................................... 8

      D.   Judicial Economy and Consistency.................................................................... 9

V.    CONCLUSION ............................................................................................................... 10

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO TRANSFER VENUE; MPAS

APPX00287

CASE NO. 2:22-CV-01390-WBS-AC

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Alltrade, Inc. v. Uniweld Prods., Inc.,*
5
    946 F.2d 622 (9th Cir. 1991).................................................................. 8

6
*Cadle Co. v. Whataburger of Alice* (5th Cir. 1999)
    174 F.3d 599 .................................................................................... 5
7

8
*Int'l Fid. Ins. Co. v. Sweet Little Mex. Corp.,*
    665 F.3d 671 (5th Cir.2011).................................................................. 8

9
*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,*
10
    342 U.S. 180, 72 S. Ct. 219, 96 L. Ed. 200 (1952) ................................ 7

11
*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.,*
    787 F.3d 1237 (9th Cir. 2015)........................................................... 5, 8
12

13
*Pacesetter Sys., Inc. v. Medtronic, Inc.,*
    678 F.2d 93 (9th Cir. 1982)........................................................... 5, 6, 7

14
*Regeneron Pharms., Inc. v. Merus N.V.,*
15
    864 F.3d 1343 (Fed. Cir. 2017)............................................................. 9

16
*Save Power Ltd. v. Syntek Fin. Corp.,*
    121 F.3d 947 (5th Cir. 1997)................................................................ 8
17

**Statutes**
18

19
35 U.S.C. § 101 ...................................................................................... 9

20
Sherman Act.............................................................................. 5, 7, 9, 10

21
**Other Authorities**

22
U.S. Patent No. 10,043,188.............................................................*passim*

23

24

25

26

27

28

**DEFENDANTS' NOTICE OF MOTION AND MOTION**
**TO TRANSFER VENUE; MPAS**

APPX00288

**CASE NO. 2:22-CV-01390-WBS-AC**

1    Defendants Miller Mendel, Inc. and Tyler Miller ("Defendants") respectfully move this

2    Court to transfer venue of this action to the United States District Court for the Western District of

3    Oklahoma ("Oklahoma Action"), under the first-to-file doctrine.

4    **I.    INTRODUCTION**

5    The factual and legal issues in this lawsuit filed by Guardian Alliance Technologies, Inc.

6    ("Guardian") substantially overlap with an earlier-filed action pending in the Western District of

7    Oklahoma, Case No. 5:18-cv-00990-JD currently pending before Judge Jodi W. Dishman.

8    Transfer to the Western District of Oklahoma would promote judicial efficiency, prevent the risk

9    of inconsistent judgments, and honor the principles of federal comity.

10   **II.    FACTUAL BACKGROUND**

11   **A.    The Oklahoma Action**

12   On October 9, 2018, MMI commenced litigation in the Western District of Oklahoma

13   against the City of Oklahoma City for infringement of U.S. Patent No. 10,043,188 ("'188 Patent").

14   On September 20, 2019, MMI moved to filed a Second Amended Complaint to, among other

15   things, add claims against Guardian for defamation and declaratory judgment of no patent fraud/no

16   inequitable conduct. That motion was granted on October 7, 2020. [WD. Okl. Dkt 103]. The

17   Second Amended Complaint adding those claims against Guardian was filed on October 27, 2020.

18   [WD. Okl. Dkt. 104]. Although initially named, the City of Oklahoma City has since been

19   dismissed from the Oklahoma Action, leaving Guardian as the sole remaining defendant.

20   Substantial discovery has already occurred in the Oklahoma Action, and claim construction

21   briefing has been fully completed, awaiting only a hearing. Guardian has actively participated and

22   asserted defenses of patent fraud and inequitable conduct, which mirror the declaratory relief

23   claims by Guardian in this case, and upon which Guardian's antitrust and unfair competition

24   claims are based. Importantly, the factual bases underlying these claims and defenses in both the

25   Oklahoma and California actions are the same.

26   **B.    The Eastern District of California Action**

27   Guardian filed this lawsuit on August 5, 2022, approximately four years after the

28   Oklahoma lawsuit, raising substantially overlapping issues, including declaratory relief claims

4

concerning patent invalidity, inequitable conduct, and patent fraud, as well as Sherman Act and state law claims. This Court previously recognized the substantial overlap and expressed openness to a motion to transfer under the first-to-file doctrine.

## III.    LEGAL STANDARD

The first-to-file rule permits a district court to transfer, stay, or dismiss an action when a similar complaint with substantially overlapping factual and legal issues has already been filed in another federal court. *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015). Courts consider three primary factors: (1) the chronology of the two actions, (2) the similarity of the parties, and (3) the similarity of the issues. *Id*. "The first-to-file rule is intended to serve the purpose of promoting efficiency well and should not be disregarded lightly." *Kohn L. Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc*., 787 F.3d 1237, 1239 (9th Cir. 2015)(internal quotations and citations omitted). The rule rests on principles of comity and sound judicial administration. *Cadle Co. v. Whataburger of Alice* (5th Cir. 1999) 174 F.3d 599, 603. The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Id.* Whether the first-to-file rule applies lies within the court's discretion. *Id*.

## IV.    ARGUMENT

### A.    Chronology of the Actions

The Oklahoma Action is the first-filed lawsuit by a long shot. The Oklahoma Action was filed approximately four years before Guardian initiated the present suit in the Eastern District of California. The Oklahoma Action has progressed through substantial discovery and several rounds of substantive motions and briefings, including dispositive motions. The first-to-file rule plainly favors transferring this later-filed action to the Western District of Oklahoma.

MMI has a right to retain their chosen forum in Oklahoma, without having to defend duplicative claims (effectively counterclaims to the Oklahoma Action), and a plaintiff's right to choice of forum should not be disregarded. *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 97 (9th Cir. 1982)(affirming district court's dismissal of later-filed declaratory judgment action in favor of first-filed suit). "The district court properly recognized Medtronic's interest in choosing a

5

forum." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 97 (9th Cir. 1982). Nor should the court in the later-filed action (i.e. this Court) engage waste judicial resources in detailed investigation and balancing of the convenience of the respective parties and witnesses absent a clear, substantial and unfair burden. The *Pacesetter* court noted:

> Appellant further contends that the district court was required to give consideration to the same factors as it would under motions to transfer brought pursuant to 28 U.S.C. s 1404(a). In appropriate cases it would be relevant for the court in the second-filed action to give consideration to the convenience of the parties and witnesses. This would be particularly true in the type of cases just mentioned where the patentee and the customer are involved in one action and the patentee and the manufacturer are involved in a second action…However, normally the *forum non conveniens* argument should be addressed to the court in the first-filed action. Apprehension that the first court would fail to appropriately consider the convenience of the parties and the witnesses should not be a matter for our consideration.

*Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 (9th Cir. 1982)(internal citation omitted).

In *Pacesetter*, the Ninth Circuit affirmed the Central District of California's dismissal of the plaintiff's complaint seeking declaratory judgment of noninfringement and invalidity of a patent in favor of an earlier-filed action in Florida[1]. *Pacesetter*, 678 F.2d at 94. The *Pacesetter* court found that the issues regarding the validity and enforceability of the asserted patents were essentially identical, so allowing the later-filed action to go forward would waste judicial resources, create a risk of conflicting findings and judgments, and deprive the initial plaintiff – the patent owner – of their right to their choice of forum. *Pacesetter*, 678 F.2d at 95-6. The Pacesetter court ordered dismissal of the second-filed action which was filed only three days after the first action was filed in Florida, so the first-filed case had not progressed at all at that point. *Pacesetter*, 678 F.2d at 94.

By stark contrast, in the present case, the earlier-filed Oklahoma case has progressed through multiple substantive motions, a stay pending Guardian's request for reexamination of the '188 Patent (which was denied by the USPTO), full claim construction briefing, and recently-

---

[1] The Court may note that California vs. Florida (in the *Pacesetter* case) were a balance of inconveniences at least as great as California vs. Oklahoma in this case.

approved filing of the Third Amended Complaint (conforming the claims to the Federal Circuit's recent decision on appeal regarding the previously asserted claims of the '188 Patent). The Supreme Court has cautioned against allowing an accused infringer to drag an earlier-filed patent case away from the patent owner's chosen forum to the accused infringer's chosen forum, thereby creating a reward for delay and trampling the patent owner's right to choose their own forum in their first-filed action.

> "The manufacturer who is charged with infringing a patent cannot stretch the Federal Declaratory Judgments Act to give him a paramount right to choose the forum for trying out questions of infringement and validity. He is given an equal start in the race to the courthouse, not a headstart."

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 185, 72 S. Ct. 219, 222, 96 L. Ed. 200 (1952). Although the first-to-file rule is not to be applied rigidly or without exception, it is the presumptive rule in cases where the parties and issues are substantially identical, absent substantial equitable bases to ignore principles of comity and rights of the first-filed plaintiff.

In *Pacesetter*, the later-filed California claims and counterclaims were identical to the first-filed Florida claims, so the court dismissed the California suit rather than transfer it. In this case, some of the claims are identical and the other claims depend on the same set of facts, such that resolution of the Oklahoma claims will also resolve the California state law and Sherman Act claims. Therefore, transfer to Oklahoma is appropriate rather than outright dismissal.

### B.    Similarity of the Parties

The parties here are identical: Guardian and Defendants are the sole parties to both actions. The dismissal of the City of Oklahoma City further underscores the direct similarity of the parties remaining in both actions. Even when Oklahoma City was a named defendant in the Oklahoma Action, Guardian was effectively the real party in interest because Guardian was defending the case and was liable for any damages as the indemnitor of Oklahoma City. This complete identity of the parties clearly satisfies the substantial similarity requirement.

### C.    Similarity of the Issues

When considering transfer under the "first-to-file rule" to the court exercising jurisdiction over the earlier-filed action, the issues do not need to be identical, but merely "substantially similar" – i.e. that the lawsuits have "substantial overlap". *Kohn L. Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240–41 (9th Cir. 2015); *Int'l Fid. Ins. Co. v. Sweet Little Mex. Corp.,* 665 F.3d 671, 677–78 (5th Cir.2011). Where determination of the material issues in the first-filed case would materially affect the outcome in the later-filed case, transfer to the first court, or staying proceedings in the later court, are appropriate. *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 627-8 (9th Cir. 1991). In *Alltrade*, the Ninth Circuit, applying the "first-to-file rule", held that resolution of the issues in the first-filed case would be determinative of material issues in the later-filed case so the later-filed case should await the outcome of the first-filed case, but directing a stay rather than dismissal. *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 629-30 (9th Cir. 1991). "Regardless of whether or not the suits here are identical, if they overlap on the substantive issues, the cases would be required to be consolidated in ... the jurisdiction first seized of the issues." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997)(cited in *Kohn L. Grp. Inc*., supra)(internal quotations and citations omitted). In Save Power Ltd., the Fifth Circuit held that in evaluating transfer under the "first-to-file rule", the claims are "substantially similar", warranting transfer to the first-filed court, where determinations necessary to determining the outcome of the first-filed claims would also be material to determining the outcome of the later-filed claims, the later case should be transferred to the first-filed court to avoid conflicting outcomes. This was considered especially important where the first-filed court had already rendered some substantive decisions. *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 951-2 (5th Cir. 1997).

In this case, both actions substantially overlap in the legal issues and factual issues presented, and the issues in the Oklahoma Action will be determinative in the later-filed California Action. In the Oklahoma Action, Guardian has asserted defenses based on precisely the same allegations of patent fraud and inequitable conduct as it seeks to affirmatively assert here. Compare First Amended Complaint, E.D. Cal. Dkt 51, pp. 11-18, with GAT Answer to Third

Amended Complaint, W.D. Okl. Dkt 151, Fourth Affirmative defenses, pp. 9-15. The factual basis underlying Guardian's causes of action in this later-filed lawsuit and their pleaded defenses in the first-filed Oklahoma Action is exactly the same in both courts, necessitating transfer to avoid duplicative litigation.

Guardian's Sherman Act and state law claims rely upon the same (baseless) allegations of inequitable conduct and patent fraud, alleging that MMI knew the '188 Patent was invalid under 35 U.S.C. § 101 and/or unpublished references somehow known to MMI.

Moreover, the Federal Circuit has emphasized that patent claims must be construed to determine "materiality" for purposes of inequitable conduct and patent fraud. *Regeneron Pharms., Inc. v. Merus N.V.*, 864 F.3d 1343, 1350 (Fed. Cir. 2017). Given that claim construction has been fully briefed in the Oklahoma Action and only awaits a hearing, whereas claim construction briefing and hearing is not even on the horizon yet in this Court, transferring this matter to the Western District of Oklahoma will promote judicial efficiency and ensure consistent rulings on material and dispositive issues.

Guardian nowhere alleges that MMI's allegations of actual infringement constituted abuse or fraud except to the extent that Guardian alleges the '188 Patent was unenforceable, so the question of infringement by Guardian or its customers is no longer before either court and the claim construction is material only to the issue of the materiality of Guardian's alleged prior art and MMI's knowledge, understanding and obligation to disclose (or lack of obligation, in this case). Therefore, the location of Guardian's own software developers and/or documents related to Guardian's software likely are not relevant to Guardian's claims. Even if they are, however, these would be electronic documents so location would not create any additional burden of production, review or presentation at trial if necessary.

### D.    Judicial Economy and Consistency

Transferring this case to the Western District of Oklahoma conserves judicial resources, eliminates the risk of inconsistent rulings, and capitalizes on substantial discovery and briefing already completed. The Oklahoma court is already well-versed in the complex patent issues and factual background underlying this dispute, making it the most appropriate venue to resolve these

1   substantially overlapping issues. Further, California has no special tie to these claims. Guardian

2   recently filed a declaration in the Oklahoma Action (Declaration of Adam Anthony [W.D. Okl. Dk

3   147]) stating that GAT's offices and employees are located **in Nevada**, not California, divesting

4   California of any overriding interest in the case even if Guardian remains registered in California.

5          The patent-related issues are federal law issues. The Sherman Act claim, although factually

6   baseless, is a federal law issue. The California state law claims depend on resolution of the patent

7   issues under federal law and do not stand on their own. The Eastern District of Texas and the

8   Federal Circuit Court of Appeals have already found that MMI and Miller did not pursue baseless

9   claims of infringement nor commit any misconduct in asserting the validity of the '188 Patent, nor

10  commit litigation misconduct in pursuing infringement lawsuits against multiple Guardian clients.

11  When the Oklahoma court dispenses with Guardian's allegations of fraud and inequitable conduct,

12  Guardian's causes of action in the California Action will also fall under principles of res judicata

13  and/or collateral estoppel. Therefore, the California Action should be transferred to the Western

14  District of Oklahoma or, in the alternative, stayed until the Oklahoma Action is resolved, in order

15  to avoid conflicting outcomes and in the interests of judicial economy.

16  **V.   CONCLUSION**

17         For the foregoing reasons, Defendants respectfully request that the Court grant this motion

18  and transfer this action to the United States District Court for the Western District of Oklahoma

19  pursuant to the first-to-file doctrine.

20  Dated: May 30, 2025                    RYLANDER & ASSOCIATES PC

21

22                                         By: /s/ Kurt M. Rylander
                                              Kurt M. Rylander

23

24                                         BUCHALTER, A PROFESSIONAL CORPORATIO
                                           Robert S. McWhorter

25                                         Harry W.R. Chamberlain II
                                           Jarrett S. Osborne-Revis

26                                         Attorneys for Defendants,
                                           Miller Mendel, Inc. and Tyler Miller

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION          CASE NO. 2:22-CV-01390-WBS-AC
TO TRANSFER VENUE; MPAS          APPX00295

1 | **BUCHALTER**
A Professional Corporation
2 | Robert S. McWhorter (SBN: 226186)
Harry W.R. Chamberlain II (SBN: 95780)
3 | Jarrett S. Osborne-Revis (SBN 289193)
500 Capitol Mall, Ste. 1900
4 | Sacramento, California 95814
Telephone: (916) 899-1099
5 | Email: rmcwhorter@buchalter.com
    hchamberlain@buchalter.com
6 |     josbornerevis@buchalter.com

7 | **RYLANDER & ASSOCIATES PC**
Kurt M. Rylander (Pro Hac Vice application pending)
8 | 406 West 12th Street
Vancouver, WA 98660
9 | Telephone: (360) 750-9931
Email: rylander@rylanderlaw.com

10 |

Attorneys for Defendants
11 | **Miller Mendel, Inc.** and
**Tyler Miller**

12 |

13 | UNITED STATES DISTRICT COURT

14 | EASTERN DISTRICT OF CALIFORNIA

15 | SACRAMENTO DIVISION

16 | **Guardian Alliance Technologies, Inc.**, | Case No. 2:22-cv-01390-WBS-AC

17 | Plaintiff,

18 | vs. | **DECLARATION OF**
**KURT M. RYLANDER**
**IN SUPPORT OF DEFENDANTS'**
19 | **Miller Mendel, Inc.** and **Tyler Miller**, | **MOTION TO TRANSFER VENUE TO**
**THE WESTERN DISTRICT OF**
20 | Defendants. | **OKLAHOMA PURSUANT TO THE**
**FIRST-TO-FILE DOCTRINE**
21 | Date:     July 21, 2025
Time:     1:30 p.m.
22 | Judge:    Hon. William B. Shubb
Dept.:    Courtroom 5, 14th Floor
23 |         501 I Street
        Sacramento, CA 95814

24 |

25 |

26 |

27 |

28 |

## DECLARATION OF KURT RYLANDER

I, KURT M. RYLANDER, declare:

1.     I am counsel for Defendants Miller Mendel, Inc. and Tyler Miller (collectively "Miller Mendel") and I make the following statements with personal knowledge.

2.     I am licensed to practice law in the States of Washington and Oregon and the District of Columbia, registered to practice as a patent attorney before the United States Patent & Trademark Office (Reg. No. 43,897), and authorized to practice in numerous Federal courts throughout the country, including before the Supreme Court of the United States of America. I manage the law firm of Rylander & Associates PC (www.RylanderLaw.com) which focuses on intellectual property consulting and litigation. I have practiced law since 1994.

3.     I am the lead attorney for Defendants, as Plaintiffs, in the Western District Oklahoma in the case entitled Miller Mendel, Inc. et al. v. Guardian Alliance Technologies, Inc., Case No. 5:18-cv-00990-JD (the "Oklahoma Action"). Hereinafter Guardian Alliance Technologies, Inc. shall be referenced as "Guardian."

4.     The following are true and correct copies of pleadings filed in the Oklahoma Action and attached hereto:.

a. **Exhibit A**-Miller Mendel's Motion for Leave to File to Second Amended Complaint (without exhibits), (OK Dkt 55).

b. **Exhibit B**-Miller Mendel's Second Amended Complaint (without exhibits), (OK Dkt 104).

c. **Exhibit C**-Guardian's Answer and Affirmative Defenses to the Second Amended Complaint, (OK Dkt 138).

d. **Exhibit D**-Miller Mendel's Motion for Leave to file Third Amended Complaint (without exhibits), (OK Dkt 139).

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

DECLARATION OF KURT RYLANDER--
ISO DEFENDANTS' MOTION TO TRANSFER

APPX00297

CASE NO. 2:22-CV-01390-WBS-AC

e.   **Exhibit E-**Miller Mendel's Third Amended Complaint (without exhibits), (OK Dkt 150).

f.   **Exhibit F-**Guardian's Answer and Affirmative Defenses to the Third Amended Complaint (OK Dkt 151).

g.   **Exhibit G-**Declaration of Adam Anthony, filed by Guardian, (OK Dkt 147),

h.   **Exhibit H-**Miller Mendel's Opposition to Guardian's Motion to Transfer to the E.D. of California, (OK Dkt 154).

i.   **Exhibit I-**Declaration of Tyler Miller, (OK Dkt 154-1).

5.   Substantial discovery has already occurred in the Oklahoma Action, and claim construction briefing has been fully completed, awaiting only a hearing. The pleadings for claim construction are lengthy, and I cite them here for the Court's convenience and can provide copies if deemed necessary.

a.   Joint Claim Construction Statement, (OK Dkt 116)

b.   Plaintiff's Opening Claim Construction Brief (without exhibits), (OK Dkt 117)

c.   Defendant's Responsive Claim Construction Brief (without exhibits), (OK Dkt. 119)

d.   Plaintiffs' Reply Brief Re: Claim Construction  (OK Dkt. 122).

6.   Guardian's affirmative defenses in Oklahoma are a virtual mirror image of its allegations of patent fraud and inequitable conduct in this action. Compare First Amended Complaint, E.D. Cal. Dkt 51, pp. 11-18, with GAT Answer to Third Amended Complaint, W.D. Okl. Dkt 151, Fourth Affirmative defenses, pp. 9-15.

7.   I have reviewed Plaintiff's First Amended Complaint and its exhibits. Guardian's claims of inequitable conduct/patent fraud by nondisclosure are integral to at least eight (8) of its eleven (11) claims for relief, including 1, 2, 5, 6, 7, 8, 9, and 10.  The First and Second Claims for

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

Relief are declaratory relief claims alleging inequitable conduct based on patent fraud. The Fifth and Sixth Claims for Relief are antitrust claims with patent fraud being a predicate. The Seventh through Tenth Claims for Relief are state claims for "unfair competition", "false advertising" and "tortious" action all predicated and based on patent fraud. *See, e.g., Ninth Claim for Relief, First Amended Complaint, Dkt 51, ¶187* ("Defendants knew when soliciting, attempting to enforce, and/or threatening to enforce its fraudulently-obtained patent portfolio against Guardian's actual customers that Defendants had procured those patents through fraud committed on the USPTO.").

      8.     Additionally, the Third and Fourth Claims for Relief appear based on the same factual predicate as its inequitable conduct/patent fraud claims. *Compare First Claim for Relief ¶ 140* ("Specifically, Guardian incorporates by reference the allegations set forth in paragraphs 33–78 above") *with Third Claim for Relief ¶ 148* ("Specifically, Guardian incorporates by reference the allegations set forth in paragraphs 33–94 above.").

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 30, 2025 in Vancouver, Washington

                    /s/ Kurt M. Rylander_____

                    KURT M. RYLANDER, WSBA 27819

(original signature retained by attorney Kurt M. Rylander)

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

3

**DECLARATION OF KURT RYLANDER--
ISO DEFENDANTS' MOTION TO TRANSFER**

APPX00299

**CASE NO. 2:22-CV-01390-WBS-AC**

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MILLER MENDEL, INC., a Washington Corporation; and TYLER MILLER, an Oregon state resident, )<br><br>Plaintiffs, )<br>v. )<br><br>THE CITY OF OKLAHOMA CITY, a municipal corporation; and GUARDIAN ALLIANCE TECHNOLOGIES, INC., a Delaware corporation, )<br><br>Defendants. ) | Case No. CIV-18-990-JD |

## DEFENDANT GUARDIAN ALLIANCE TECHNOLOGIES, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO THE SECOND AMENDED COMPLAINT

Defendant Guardian Alliance Technologies, Inc. ("GAT"), for its Answer and Affirmative Defenses to Plaintiffs Miller Mendel, Inc. and Tyler Miller's Second Amended Complaint, states as follows:

## ANSWER

1.     Plaintiff Tyler Miller is a resident of the State of Oregon, and is the owner of all right, title, and interest in and to United States Patent No. 10,043,188 B2 (hereinafter, "the '188 Patent").

**ANSWER**:  GAT admits that Tyler Miller is listed on the face of the now-invalidated '188 Patent as the applicant and inventor. GAT further admits that no assignments of the '188 Patent have been filed with the USPTO. GAT further alleges that

1

at least Claims 1, 5, and 15 of the '188 Patent have been determined to be invalid and that Plaintiffs have exhausted all appellate review of that determination. GAT is without sufficient information or knowledge to form a belief as to the truth or falsity of the remaining allegations in Paragraph 1 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

2.     Plaintiff Miller Mendel is a Washington corporation, wholly owned by Tyler Miller, with its principal place of business in Seattle, Washington, with exclusive license granted by Mr. Miller of all right and interest to the '188 Patent with the right to sub license to third parties.

**ANSWER**:   GAT is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations in Paragraph 2 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

3.     Upon information and belief, Defendant Oklahoma City is a municipal corporation with its principal place of business in Oklahoma City, Oklahoma.

**ANSWER**: GAT is informed and believes that Defendant Oklahoma City is a municipal corporation with its principal place of business in Oklahoma City, Oklahoma.

4.     Upon information and belief, Defendant Guardian Alliance Technologies, Inc. (hereinafter "GAT" or "Guardian Alliance Technologies") is a Delaware corporation conducting substantial business in and having substantial contact with, the Western District of Oklahoma.

**ANSWER**: GAT admits it is a Delaware corporation. GAT denies the remaining allegations in Paragraph 4 of the Second Amended Complaint.

## JURISDICTION AND VENUE

5.     This action arises under the patent laws of the United States, 35 U.S.C. §§ 100 *et seq.,* particularly at least Sections 271, 281 through 285, and 295 of Title 35 of the United States Code. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338. Defendant

2

is situated and resides within this state and judicial district and is subject to personal jurisdiction.

**ANSWER**:  GAT admits that Plaintiffs previously brought an action under the patent laws of the United States.  However, GAT further alleges that at least Claims 1, 5, and 15 of the '188 Patent have been determined to be invalid and that Plaintiffs have exhausted all appellate review of that determination. Accordingly, neither jurisdiction nor venue are proper in this District as to GAT. GAT is without sufficient information or knowledge to form a belief as to the truth or falsity of the remaining allegations of Paragraph 5 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

6.    This action also arises under state and common law, rending (*sic*) jurisdiction proper pursuant to supplemental jurisdiction, 28 U.S.C. sec. 1367(a), and diversity of citizenship, 28 U.S.C. sec. 1332(a).

**ANSWER**:  GAT denies the allegations of Paragraph 6 of Plaintiffs' Second Amended Complaint.

7.    This action also arises under the Federal Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202).

**ANSWER**:  GAT admits that Plaintiffs purport to bring a cause of action under the Federal Declaratory Judgment Act. To the extent this allegation requires an answer from GAT, GAT denies the allegations of Paragraph 7 of Plaintiffs' Second Amended Complaint.

8.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400.

**ANSWER**:  GAT denies the allegations of Paragraph 8 of Plaintiffs' Second Amended Complaint. Plaintiffs' Declaratory Judgment Act counts are not brought against

APPX00332

GAT, and therefore, GAT does not respond to the propriety of venue with respect to those
causes of action.

### FIRST CLAIM FOR RELIEF
### --AGAINST OKLAHOMA CITY
**(Patent Infringement)**

**ANSWER TO PARAGRAPHS 9–25 OF THE SECOND AMENDED**

**COMPLAINT**:    Paragraphs 9–25 relate to Plaintiffs' claim for patent infringement
against only Defendant Oklahoma City. Accordingly, GAT provides no answer to those
allegations. However, GAT further alleges that at least Claims 1, 5, and 15 of the '188
Patent have been determined to be invalid and that Plaintiffs have exhausted all appellate
review of that determination.

### SECOND CLAIM FOR RELIEF
### --AGAINST GAT
**(Defamation)**

26.    Plaintiffs adopt and re-allege each and every numbered paragraph above as
if set forth verbatim herein at this point.

**ANSWER**:   GAT incorporates by reference and re-alleges each and every Answer
to Plaintiffs' allegations contained in numerical Paragraphs 1 through 25 as though fully
set forth herein.

27.    Plaintiffs are informed and believe and on that basis allege Defendant GAT
defamed Plaintiffs by publishing with the intent to be viewed by customers and/or potential
customers of Plaintiffs, and which were viewed by potential customers and/or customer of
Plaintiffs, false and defamatory statements, unprivileged, that Plaintiffs committed fraud
on the United States Patent & Trademark Office in the prosecution of Plaintiffs patents,
including the '188 Patent; that these statements are untrue and without basis in fact; and
that GAT knew at the time of utterance that the statements were untrue and without basis
in fact; that these statements by Defendant GAT were negligently, recklessly/and/or
intentionally uttered in disregard of the truth or falsity, and/or constituted actual malice on

4

the party of GAT; that Plaintiffs are not public figures or public officials; that GAT's false and defamatory statements are defamatory per se and/or foreseeably and directly causing harm and damage to Plaintiffs and their trade, business and/or profession; that GAT's false and defamatory statements exposed Plaintiffs to ridicule; and that GAT's false and defamatory statements impute criminal conduct to Plaintiffs, specifically fraud upon a Federal agency.

**ANSWER**: GAT denies the allegations of Paragraph 27 of Plaintiffs' Second Amended Complaint.

28.     GAT's actions described herein constitute libel in violation of Okla. Stat. Ann. tit. 12, § 1441.

**ANSWER**:  GAT denies the allegations of Paragraph 28 of Plaintiffs' Second Amended Complaint.

29.     Plaintiffs are informed and believe and on that basis allege that Oklahoma City, or its representatives or agents, provided documents and information to GAT to facilitate GAT in making its false and defamatory statements, specifically, that Oklahoma City submitted to Plaintiffs its required Noninfringement and invalidity contentions, and then also, without notice to Plaintiffs, provided those contentions to GAT, which GAT then improperly used to fabricate and declaim the false and defamatory statements for which it is charged.

**ANSWER**:  GAT denies the allegations of Paragraph 29 of Plaintiffs' Second Amended Complaint.

30.     Plaintiffs are informed and believe and on that basis allege that Oklahoma City, or its agents or representatives, knew of those false and defamatory statements by GAT and may have reviewed those statements prior to GAT publishing the false and defamatory statements.

**ANSWER**:  GAT denies the allegations in Paragraph 30 of the Second Amended Complaint.

31.     Plaintiffs are informed and believe and on that basis allege that Exhibit "2" hereto and incorporated herein is a true and correct copy of the defamatory website "thetruthaboutmillermendel.com", published by Defendant GAT on August 22, 2019 with

the input and/or assistance of the Defendant Oklahoma City and /or Oklahoma City's attorneys and/or agents.

**ANSWER**: GAT denies the allegations of Paragraph 31 of Plaintiffs' Second Amended Complaint.

### THIRD CLAIM FOR RELIEF
### --AGAINST GAT
### (Declaration of No Inequitable Conduct/Patent Fraud)

32. Plaintiffs adopt and re-allege each and every numbered paragraph above as if set forth verbatim herein at this point.

**ANSWER**: GAT incorporates by reference and re-alleges each and every Answer to Plaintiffs' allegations contained in numerical Paragraphs 1 through 31 as though fully set forth herein.

33. This action arises under the patent laws of the United States, Title 35 of the United States Code (35 U.S.C. § 1, et seq.), and under the Federal Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202), and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question).

**ANSWER**: GAT admits that Plaintiffs' third claim for relief asks this Court for declaratory relief relating to the patent laws of the United States, i.e. that Plaintiffs did not commit inequitable conduct/patent fraud. However, whether such an action invokes the subject matter jurisdiction of this Court is not a factual allegation that GAT can admit or deny.

34. Plaintiffs are informed and believe and on that basis allege Defendant GAT accuses Plaintiffs of committing fraud on the United States Patent & Trademark Office in the prosecution of Plaintiffs patents, including the '188 Patent, constituting therefore inequitable conduct to render the '188 Patent, at least, unenforceable; that these statements are untrue and without basis in fact.

APPX00335

**ANSWER**:   GAT admits that it accuses Plaintiffs of committing fraud on the United States Patent & Trademark Office in the prosecution of Plaintiffs' patents, including the '188 Patent, constituting inequitable conduct to render those patents unenforceable. GAT denies the remaining allegations of Paragraph 34 of the Second Amended Complaint.

35.    Plaintiffs are informed and believe and on that basis allege Defendant GAT is preparing to file an action against Plaintiffs for such alleged fraud, and has stated has much in its defamatory website, "*thetruthaboutmillermendel.com*", as published on August 22, 2019. Exhibit "2" hereto and incorporated herein is a true and correct copy of that website copied on that date.

**ANSWER**:   GAT admits that it filed an action against Plaintiffs in the United States District Court for the Eastern District of California, *Guardian Alliance Technologies, Inc. v. Miller Mendel, Inc. et al.*, Case No. 2:22-cv-01390-WBS-AC (E.D. Cal.), based at least in part on Plaintiffs' obtaining their patents through inequitable conduct. GAT denies the remaining allegations of Paragraph 35 of the Second Amended Complaint.

36.    Plaintiffs are informed and believe and on that basis allege that there is an actual case or controversy.

**ANSWER**:   GAT admits the allegations of Paragraph 36 of the Second Amended Complaint.

37.    By Defendant GAT's actions, Plaintiffs are in reasonable apprehension of an imminent suit against Plaintiffs for such alleged fraud upon the United States Patent & Trademark Office relating to the '188 Patent.

**ANSWER**:   GAT admits the allegations of Paragraph 37 of the Second Amended Complaint.

7

38.     Plaintiffs deny that they have committed fraud upon the United States Patent & Trademark Office, and now seeks a declaratory judgment that they have not committed fraud upon the United States Patent & Trademark Office.

**ANSWER**: GAT denies the allegations of Paragraph 38 of the Second Amended Complaint.

39.     The controversy is such that, pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 *et seq.*, Plaintiffs are entitled to a declaration, in the form of a judgment, that by their activities Plaintiffs have not committed fraud upon the United States Patent & Trademark Office. Such a determination and declaration is necessary and appropriate at this time.

**ANSWER**:   GAT denies the allegations of Paragraph 39 of the Second Amended Complaint.

## PRAYER FOR RELIEF

In response to Plaintiffs' prayer for relief, GAT denies each and every allegation contained therein and, further, GAT specifically denies that Plaintiffs are entitled to any of the relief requested in the Second Amended Complaint; specifically denies that Plaintiffs are entitled to an adjudication that the '188 Patent is valid and enforceable; specifically denies that Plaintiffs have been damaged by any acts of GAT in any way or that Plaintiffs are entitled to any award of damages, costs, expenses, interest or of enhanced damages; specifically denies that Plaintiffs are entitled to any injunctive relief; specifically denies that Plaintiffs are entitled to attorney's fees or costs of suit; specifically denies that Plaintiffs are entitled to a declaratory judgment that they have not committed fraud upon the USPTO or that they have not committed inequitable conduct in relation to the '188 Patent family; specifically denies that Plaintiffs are entitled to any damages for defamation;

8

and specifically denies that Plaintiffs are entitled to an award of pre- and post-judgment interest.

## DEMAND FOR A JURY TRIAL

Plaintiffs' demand for a jury trial is not a factual allegation, and GAT accordingly is not required to provide a response.

## GAT'S AFFIRMATIVE DEFENSES

GAT alleges the following as separate and affirmative defenses to the Second Amended Complaint. By virtue of having listed the following defenses, GAT does not assume any legal or factual burden not otherwise assigned to it under the law:

## FIRST AFFIRMATIVE DEFENSE

1.     The claims of the '188 Patent are invalid and/or unenforceable for failure to satisfy the conditions of patentability set forth in 35 U.S.C. §§ 101 *et seq.*, including at least sections 101, 102, 103, and 112.

## SECOND AFFIRMATIVE DEFENSE

2.     Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver, laches, and/or estoppel.

## THIRD AFFIRMATIVE DEFENSE

3.     The First Amended Complaint fails to state a claim upon which relief may be granted.

## FOURTH AFFIRMATIVE DEFENSE

4.     The '188 Patent is unenforceable because inventor Tyler Miller and his patent attorney, Philip Hunt of Rylander & Associates, PC, failed to disclose all

9

noncumulative, material prior art of which they were aware to the U.S. Patent and Trademark Office during the prosecution of the '188 Patent.

5.      Pursuant to 37 C.F.R. § 1.56, Miller and Mr. Hunt each had a continuing duty during the prosecution of the '188 Patent, i.e. May 26, 2015, to August 7, 2018, to disclose all information they were aware of that was material and not merely cumulative over the prior art already before the USPTO.

6.      Miller and Mr. Hunt violated that continuing duty when they failed to disclose the existence of a background investigation system and software owned by Background Solutions, LLC, during the prosecution of the '188 Patent.

7.      The application date for the '188 Patent (application no. 14/721,707) is May 26, 2015, and it was issued on August 7, 2018.

8.      On information and belief, certainly before August 7, 2018 (when the '188 Patent was issued) and perhaps even before application no. 14/721,707 was filed, Miller was aware of the Background Solutions background investigation system and software and all of its pertinent features.

9.      During the prosecution of the '188 Patent, Miller and his patent attorney Philip Hunt amended claims 1, 5, and 9 to add the limitation, "generating a suggested reference list of one or more law enforcement agencies based on the applicant residential address." October 23, 2017, Amendment and Response to Office Action, a true and correct copy of which is attached hereto as Exhibit 1.

10.     Miller and Mr. Hunt argued that the added limitation—

[I]s a slightly broader version of a limitation in claims 1, 5 and 9 of the parent application, now issued as US9070098. Claims 1, 5 and 9 of the instant application after this amendment are now very similar to claims 1, 5 and 9 of the '098 patent. The same reasoning the Applicant advanced in the prosecution of the '098 patent applies here as well. Parikh teaches e-dossiers that may have candidate referral information, but Parikh is silent on how information is obtained and entered into the e-dossier. The other art of record does not supply this deficiency of Parikh. For at least these reasons, the Applicant believes these claims are patentable.

*Id.*

11.     On December 9, 2014, during the prosecution of the '098 Patent, Messrs. Miller and Hunt further amended claims 1, 5, and 9 of the '098 Patent to include the limitation "generating a suggested reference list of one or more law enforcement agencies and/or courts within a pre-defined radius around the applicant residential address; and presenting the suggested reference list to the investigator." December 9, 2014, Amendment and Response to Office Action in '098 Prosecution, a true and correct copy of which is attached hereto as Exhibit 2.

12.     On December 26, 2017, the USPTO issued an office action rejecting Claims 1-3, 5-7, 9, 13-14, and 16 of the '188 Patent under pre-AIA 35 U.S.C. § 103(a), in part because:

Duffy teaches generating a suggested reference list of one of more law enforcement agencies based on an applicant residential address (¶0105; note that Duffy is not directed to law agencies. However, this is would be obvious to use generating a list to one of ordinary skill in the art with the above references that deals with law enforcement).

December 26, 2017, Office Action, a true and correct copy of which is attached hereto as Exhibit 3.

13.     In response, Miller and Mr. Hunt argued:

11

Regarding rejection of c1aim 1 as obvious, OA pages 16-17 states "Duffy teaches generating a suggested reference list of one of more law enforcement agencies based on an applicant residential address." Examiner acknowledges that Duffy is "not directed at law enforcement agencies. Applicant points out that Duffy is not only not directed at employment background checks for law enforcement agencies. It is also not directed at any type of background investigations for any type of employer. It is directed at product recalls, a completely unrelated field and one that is not reasonably pertinent to the field of background investigations.

March 7, 2018, Applicant Initiated Interview Summary, a true and correct copy of which is attached hereto as Ex. 4.

14.     On June 22, 2018, the USPTO issued a Notice of Allowance for the '188 Patent, stating as the reason for allowance that—

Prior art does not teach " ... investigator ... associating the reference electronic response with the new application entry and ... generating a suggested reference list of one more law enforcement agencies based on an applicant residential address" of Claim 1. Note that Claims 5, 9 and 16 are substantially similar to Claim 1, thus the same rationale applies with respect to prior art and allowance.

The closest prior art are Parikh et al. US 2012/0089528A1, LaPasta et al. US 2005/0033633A1, Ritzel US 6904407 B2 and Duffy et al. US 2009/0319331 A 1.

However, prior art still fail (*sic*) to teach " ... investigator ... associating the reference electronic response with the new application entry and ... generating a suggested reference list of one more law enforcement agencies based on an applicant residential address" of Claim 1. Note that Claims 5, 9 and 16 are substantially similar to Claim 1, thus the same rationale applies with respect to prior art and allowance.

In addition, Applicant's arguments filed 4/26/2018 have been considered and found persuasive.

June 22, 2018, Notice of Allowance, a true and correct copy of which is attached hereto as Exhibit 5.

15.     The Background Solutions background investigation system and software, which was available publicly prior to the earliest possible priority date of the '188 Patent and of which Miller and Hunt were aware during the prosecution of the '188 Patent discloses automatically generating a list of law enforcement agencies within a certain radius based on residential address information in the electronic application as was disclosed in public presentations regarding the Background Solutions, as follows:



APPX00342



18.    Miller was aware no later than August 9, 2012, that the Background Solutions background investigation system and software had been used by the King County (WA) Sheriff's Department for several years. *See* the August 9, 2012, email thread between Miller and Detective Robert Burrows of the King County (WA) Sheriff's Office Background Investigation Unit (KSCO-00071–00072), a true and correct copy of which is attached hereto as Exhibit 6.

19.    No later than February 28, 2014, i.e. more than a year before the application date of the '188 Patent, Miller was aware that the Background Solutions system auto-generates correspondence letters in the background investigation process based on the applicant's residential address. *See*, February 28, 2014, email thread between Miller;

14

Alexandra Ehlert, Human Resources Associate for the King County (WA) Sheriff's Office; and Mark Sawa of the Travis County (TX) Sheriff's Department (KCSO-00116–00119), a true and correct copy of which is attached hereto as Exhibit 7.

20.     The Background Solutions background investigation system is, therefore, material to the patentability of the '188 Patent, particularly as to the limitation "generating a suggested reference list of one or more law enforcement agencies based on the applicant residential address." The patent examiner would not have allowed the claims of the '188 Patent to issue in their present form had Miller and/or Hunt disclosed the Background Solutions background investigation system to the Patent Office because that the withheld information provides a teaching that was absent from the prior art relied upon by the examiner, which Messrs. Miller and Hunt actively argued was not present in the prior art.

21.     Specifically, the examiner allowed the claims of the '188 Patent after accepting Messrs. Miller and Hunt's arguments that the "[p]rior art does not teach " ... investigator ... associating the reference electronic response with the new application entry and ... generating a suggested reference list of one more law enforcement agencies based on an applicant residential address."

22.     Thus, "but for" Messrs. Miller and Hunt violating their duty of candor and good faith in dealing with the United States Patent and Trademark Office, the '188 Patent would not have been issued by the USPTO.

23.     Based on Mr. Miller's prior awareness of the Background Solutions background investigation system and software, and particularly his familiarity with its features, on information, and belief, the failure of inventor Miller and his patent attorney

15

Philip Hunt, to disclose the Background Solutions background investigation system to the United States Patent and Trademark Office was done with intent to deceive the USPTO.

GAT reserves the right to assert additional defenses that it learns of through discovery in this action.

### GAT'S PRAYER FOR RELIEF

GAT seeks the following relief:

    a.  A judgment that all of the claims of the '188 Patent are invalid and/or unenforceable against GAT;

    b.  A judgment that the '188 Patent is unenforceable because of Tyler Miller and Philip Hunt's inequitable conduct;

    c.  A judgment declaring this case exceptional under 35 U.S.C. § 285 and awarding GAT its attorneys' fees and prejudgment interest, and an award to GAT of all its costs of this action; and

    d.  Such other relief as the Court deems just and proper.

### GAT'S DEMAND FOR A JURY TRIAL

GAT demands a trial by jury on all issues that are so triable.

Dated: December 16, 2024      Respectfully submitted,

                        */s/ Evan W. Talley*
                        Evan W. Talley (OBA No. 22923)
                        **RYAN WHALEY, PLLC**
                        400 North Walnut Ave.
                        Oklahoma City, OK  73104
                        Telephone: (405) 239-6040

16

Email: etalley@ryanwhaley.com


-and-

Douglas J. Sorocco, OBA # 17347
**DUNLAP CODDING PC**
609 W. Sheridan Avenue
Oklahoma City, OK  73102
Telephone:   (405) 607-8600
E-mail: dsorocco@dunlapcodding.com

***ATTORNEYS FOR DEFENDANTS***
***THE CITY OF OKLAHOMA CITY***
***and GUARDIAN ALLIANCE***
***TECHNOLOGIES, INC.***

17

## CERTIFICATE OF SERVICE

I certify that on December 16, 2024, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Todd A. Nelson
Paul E. Rossler
Kurt Rylander
Mark Beatty


/s/ Evan W. Talley
Evan W. Talley

APPX00347

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) MILLER MENDEL, INC., a<br>Washington Corporation, and<br>(2) TYLER MILLER, an Oregon state<br>resident,<br><br>Plaintiffs,<br>v.<br><br>(1) THE CITY OF OKLAHOMA CITY, a<br>municipal corporation,<br><br>Defendant, and<br><br>(2) GUARDIAN ALLIANCE<br>TECHNOLOGIES, INC., a Delaware<br>corporation,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. <u>CIV-18-990-JD</u><br><br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFFS' OPPOSED MOTION FOR LEAVE
## TO FILE THIRD AMENDED COMPLAINT

Plaintiffs, MILLER MENDEL, INC. and TYLER MILLER (collectively "Plaintiffs" or "Miller Mendel"), hereby move pursuant to Fed. R. Civ. P. 15(a)(2) for leave to file their Third Amended Complaint. A copy of the proposed Third Amended Complaint is attached hereto as Exhibit "1." Plaintiffs propose by this amendment to withdraw their claim for patent infringement of the '188 Patent against the City of Oklahoma City ("OKC"). The proposed amendment also includes limited clarifying language relating to Plaintiffs' defamation claim.

# EXHIBIT E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) MILLER MENDEL, INC., a Washington Corporation, and (2) TYLER MILLER, an Oregon state resident, <br><br> Plaintiffs, <br><br> v. <br><br> (1) THE CITY OF OKLAHOMA CITY, a municipal corporation, <br><br> Defendant, and <br><br> (2) GUARDIAN ALLIANCE TECHNOLOGIES, INC., a Delaware corporation, <br><br> Defendant. | Case No. <u>CIV-18-990-JD</u> <br><br> **JURY TRIAL DEMANDED** |

## THIRD AMENDED COMPLAINT

Plaintiffs, MILLER MENDEL, INC. and TYLER MILLER ("Plaintiffs" or "Miller Mendel"), by undersigned counsel, assert this Third Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2), and allege as follows:

## PARTIES

1.     Plaintiff Tyler Miller is a resident of the State of Oregon, and is the owner of all right, title, and interest in and to United States Patent No. 10,043,188 B2 (hereinafter, "the '188 Patent").

2.      Plaintiff Miller Mendel is a Washington corporation, wholly owned by Tyler Miller, with its principal place of business in Seattle, Washington, with an exclusive license granted by Mr. Miller of all right and interest to the '188 Patent with the right to sublicense to third parties.

3.      Upon information and belief, Defendant Guardian Alliance Technologies, Inc. (hereinafter "GAT" or "Guardian Alliance Technologies") is a Delaware corporation conducting substantial business in and having substantial contact with, the Western District of Oklahoma.

## JURISDICTION AND VENUE

4.      Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338.  Defendant is situated and resides within this state and judicial district and is subject to personal jurisdiction.

5.      This action also arises under state and common law, rending jurisdiction proper pursuant to supplemental jurisdiction, 28 U.S.C. sec. 1367(a), and diversity of citizenship, 28 U.S.C. sec. 1332(a).

6.      This action also arises under the Federal Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202).

7.    There is complete diversity of citizenship between the Plaintiffs and Defendant GAT, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b).

### FIRST CLAIM FOR RELIEF
### --AGAINST GAT
### (Defamation)

9.    Plaintiffs adopt and re-allege each and every numbered paragraph above as if set forth verbatim herein at this point.

10.    Plaintiffs are informed and believe and on that basis allege Defendant GAT defamed Plaintiffs by publishing with the intent to be viewed by customers and/or potential customers of Plaintiffs and to damage Plaintiffs business and competitiveness by inducing customers and potential customers not to utilize Plaintiff's product, and which were viewed by potential customers and/or customer of Plaintiffs, false and defamatory statements, unprivileged, that Plaintiffs committed fraud on the United States Patent & Trademark Office in the prosecution of Plaintiffs patents, including the '188 Patent; that these statements are untrue and without basis in fact; and that GAT knew at the time of utterance that the statements were untrue and without basis in fact; that these statements by Defendant GAT were negligently, recklessly/and/or intentionally uttered in disregard of the truth or falsity, and/or constituted actual malice on the party of GAT; that Plaintiffs are not public figures or public officials; that GAT's false and defamatory statements are

defamatory per se and/or foreseeably and directly causing harm and actual damage to Plaintiffs and their trade, business and/or profession; that GAT's false and defamatory statements exposed Plaintiffs to ridicule; and that GAT's false and defamatory statements impute criminal conduct to Plaintiffs, specifically fraud upon a Federal agency.

11.    GAT's actions described herein constitute libel in violation of Okla. Stat. Ann. tit. 12, § 1441.

12.    Plaintiffs are informed and believe and on that basis allege that Oklahoma City, or its representatives or agents, provided documents and information to GAT to facilitate GAT in making its false and defamatory statements, specifically, that Oklahoma City submitted to Plaintiffs noninfringement and invalidity contentions, and then also, without notice to Plaintiffs, provided those contentions to GAT, which GAT then improperly used to fabricate and declaim the false and defamatory statements for which it is charged.

13.    Plaintiffs are informed and believe and on that basis allege that Oklahoma City, or its agents or representatives, knew of those false and defamatory statements by GAT and may have reviewed those statements prior to GAT publishing the false and defamatory statements.

14.    Plaintiffs are informed and believe and on that basis allege that Exhibit "1" hereto and incorporated herein is a true and correct copy of the defamatory website "thetruthaboutmillermendel.com", published by Defendant GAT on August 22, 2019 with

the input and/or assistance of Oklahoma City and /or Oklahoma City's attorneys and/or agents.

## SECOND CLAIM FOR RELIEF
### --AGAINST GAT
### (Declaration of No Inequitable Conduct/Patent Fraud)

15.     Plaintiffs adopt and re-allege each and every numbered paragraph above as if set forth verbatim herein at this point.

16.     This claim arises under the patent laws of the United States, Title 35 of the United States Code (35 U.S.C. § 1, et seq.), and under the Federal Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202), and this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question).

17.     Plaintiffs are informed and believe and on that basis allege Defendant GAT accuses Plaintiffs of committing fraud on the United States Patent & Trademark Office in in the prosecution of Plaintiffs patents, including the '188 Patent, constituting therefore inequitable conduct to render the '188 Patent, at least, unenforceable; that these statements are untrue and without basis in fact.

18.     Plaintiffs are informed and believe and on that basis allege Defendant GAT is preparing to file an action against Plaintiffs for such alleged fraud, and has stated has much in its defamatory website, "*thetruthaboutmillermendel.com*", as published on August 22, 2019.  Exhibit "1" hereto and incorporated herein is a true and correct copy of that website copied on that date.

19. Plaintiffs are informed and believe and on that basis allege that there is an actual case or controversy.

20. By Defendant GAT's actions, Plaintiffs are in reasonable apprehension of an imminent suit against Plaintiffs for such alleged fraud upon the United States Patent & Trademark Office relating to the '188 Patent.

21. Plaintiffs deny that they have committed fraud upon the United States Patent & Trademark Office, and now seeks a declaratory judgment that they have not committed fraud upon the United States Patent & Trademark Office.

22. The controversy is such that, pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 *et seq.*, Plaintiffs are entitled to a declaration, in the form of a judgment, that by their activities Plaintiffs have not committed fraud upon the United States Patent & Trademark Office. Such a determination and declaration is necessary and appropriate at this time.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that judgment be entered in their favor and against Defendant and for relief including:

1. Declaring that Plaintiffs have not committed fraud upon the United States Patent & Trademark Office; and that Plaintiffs have not committed inequitable conduct in relation to the '188 Patent family.

2.      Awarding Plaintiffs damages for defamation, including to the extent allowed
by law punitive and/or exemplary damages;

3.      Awarding Plaintiffs their costs of suit, including the costs of experts and
reasonable attorneys' fees as may be permitted by law;

4.      Awarding pre- and post- judgment interest; and,

5.      Awarding such other and further relief as may be just and proper.


Date: May 14, 2025                                    Respectfully submitted,

                                                      s/ Todd A. Nelson
                                                      Todd A. Nelson, OBA #15317
                                                      Paul E. Rossler, OBA #21796
                                                      GABLEGOTWALS
                                                      1100 ONEOK Plaza
                                                      100 West Fifth Street
                                                      Tulsa, OK 74103
                                                      Telephone:   (918) 595-4800
                                                      Facsimile:   (918) 595-4990
                                                      E-mail: tnelson@gablelaw.com
                                                      prossler@gablelaw.com

                                                      *Admitted Pro Hac Vice:*
                                                      Kurt M. Rylander, Bar No. 27819
                                                      Mark E. Beatty, Bar No. 37076
                                                      RYLANDER & ASSOCIATES PC
                                                      406 West 12th Street
                                                      Vancouver, WA 98660
                                                      Telephone:   (360) 750-9931
                                                      Facsimile:   (360) 397-0473
                                                      E-mail: rylander@rylanderlaw.com

                                                      *Attorneys for Plaintiffs*

# EXHIBIT F

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

MILLER MENDEL, INC., a Washington ) 
Corporation; and TYLER MILLER, an )
Oregon state resident, )
 )
       Plaintiffs, )
v. )  Case No. CIV-18-990-JD
 )
GUARDIAN ALLIANCE )
TECHNOLOGIES, INC., a Delaware )
corporation, )
 )
       Defendants. )
 )

## DEFENDANT GUARDIAN ALLIANCE TECHNOLOGIES, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO THE THIRD AMENDED COMPLAINT

Defendant Guardian Alliance Technologies, Inc. ("GAT"), for its Answer and Affirmative Defenses to Plaintiffs Miller Mendel, Inc. and Tyler Miller's Third Amended Complaint, states as follows:

## ANSWER

1.    Plaintiff Tyler Miller is a resident of the State of Oregon, and is the owner of all right, title, and interest in and to United States Patent No. 10,043,188 B2 (hereinafter, "the '188 Patent").

**ANSWER**:  GAT admits that Tyler Miller is listed on the face of the now-invalidated '188 Patent as the applicant and inventor. GAT further admits that no assignments of the '188 Patent have been filed with the USPTO. GAT further alleges that

1

at least Claims 1, 5, and 15 of the '188 Patent have been determined to be invalid and that

Plaintiffs have exhausted all appellate review of that determination. GAT is without

sufficient information or knowledge to form a belief as to the truth or falsity of the

remaining allegations in Paragraph 1 of Plaintiffs' Third Amended Complaint and,

therefore, denies the same.

2.      Plaintiff Miller Mendel is a Washington corporation, wholly owned by Tyler
Miller, with its principal place of business in Seattle, Washington, with exclusive license
granted by Mr. Miller of all right and interest to the '188 Patent with the right to sub license
to third parties.

**ANSWER**:   GAT is without sufficient information or knowledge to form a belief

as to the truth or falsity of the allegations in Paragraph 2 of Plaintiffs' Third Amended

Complaint and, therefore, denies the same.

3.      Upon information and belief, Defendant Guardian Alliance Technologies,
Inc. (hereinafter "GAT" or "Guardian Alliance Technologies") is a Delaware corporation
conducting substantial business in and having substantial contact with, the Western District
of Oklahoma.

**ANSWER**: GAT admits it is a Delaware corporation. GAT denies the remaining

allegations in Paragraph 3 of the Third Amended Complaint.

## JURISDICTION AND VENUE

4.      Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338. Defendant is
situated and resides within this state and judicial district and is subject to personal
jurisdiction.

**ANSWER**:   GAT denies the allegations of Paragraph 4 of Plaintiffs' Third

Amended Complaint.

5.      This action also arises under state and common law, rending (*sic*) jurisdiction
proper pursuant to supplemental jurisdiction, 28 U.S.C. sec. 1367(a), and diversity of
citizenship, 28 U.S.C. sec. 1332(a).

2

**ANSWER**:  GAT denies the allegations of Paragraph 5 of Plaintiffs' Third Amended Complaint.

6.    This action also arises under the Federal Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202).

**ANSWER**:  GAT admits that Plaintiffs purport to bring a cause of action under the Federal Declaratory Judgment Act. To the extent this allegation requires an answer from GAT, GAT denies the allegations of Paragraph 6 of Plaintiffs' Third Amended Complaint.

7.    There is complete diversity of citizenship between the Plaintiffs and Defendant GAT, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

**ANSWER**:  GAT admits the allegations of Paragraph 7 of Plaintiffs' Third Amended Complaint.

8.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b).

**ANSWER**:  GAT denies the allegations of Paragraph 8 of Plaintiffs' Third Amended Complaint.

**FIRST CLAIM FOR RELIEF
--AGAINST GAT**
**(Defamation)**

9.    Plaintiffs adopt and re-allege each and every numbered paragraph above as if set forth verbatim herein at this point.

**ANSWER**:  GAT incorporates by reference and re-alleges each and every Answer to Plaintiffs' allegations contained in numerical Paragraphs 1 through 8 as though fully set forth herein.

10.   Plaintiffs are informed and believe and on that basis allege Defendant GAT defamed Plaintiffs by publishing with the intent to be viewed by customers and/or potential

3

customers of Plaintiffs and to damage Plaintiffs business and competitiveness by inducing customers and potential customers not to utilize Plaintiff's product, and which were viewed by potential customers and/or customer of Plaintiffs, false and defamatory statements, unprivileged, that Plaintiffs committed fraud on the United States Patent & Trademark Office in the prosecution of Plaintiffs patents, including the '188 Patent; that these statements are untrue and without basis in fact; and that GAT knew at the time of utterance that the statements were untrue and without basis in fact; that these statements by Defendant GAT were negligently, recklessly/and/or intentionally uttered in disregard of the truth or falsity, and/or constituted actual malice on the party of GAT; that Plaintiffs are not public figures or public officials; that GAT's false and defamatory statements are defamatory per se and/or foreseeably and directly causing harm and actual damage to Plaintiffs and their trade, business and/or profession; that GAT's false and defamatory statements exposed Plaintiffs to ridicule; and that GAT's false and defamatory statements impute criminal conduct to Plaintiffs, specifically fraud upon a Federal agency.

**ANSWER**: GAT denies the allegations of Paragraph 10 of Plaintiffs' Third Amended Complaint.

11.    GAT's actions described herein constitute libel in violation of Okla. Stat. Ann. tit. 12, § 1441.

**ANSWER**:  GAT denies the allegations of Paragraph 11 of Plaintiffs' Third Amended Complaint.

12.    Plaintiffs are informed and believe and on that basis allege that Oklahoma City, or its representatives or agents, provided documents and information to GAT to facilitate GAT in making its false and defamatory statements, specifically, that Oklahoma City submitted to Plaintiffs noninfringement and invalidity contentions, and then also, without notice to Plaintiffs, provided those contentions to GAT, which GAT then improperly used to fabricate and declaim the false and defamatory statements for which it is charged.

**ANSWER**:  GAT denies the allegations of Paragraph 12 of Plaintiffs' Third Amended Complaint.

13.    Plaintiffs are informed and believe and on that basis allege that Oklahoma City, or its agents or representatives, knew of those false and defamatory statements by GAT and may have reviewed those statements prior to GAT publishing the false and defamatory statements.

4

**ANSWER**:  GAT denies the allegations in Paragraph 13 of Plaintiffs' Third Amended Complaint.

14.    Plaintiffs are informed and believe and on that basis allege that Exhibit "1" hereto and incorporated herein is a true and correct copy of the defamatory website "thetruthaboutmillermendel.com", published by Defendant GAT on August 22, 2019 with the input and/or assistance of Oklahoma City and /or Oklahoma City's attorneys and/or agents.

**ANSWER**:  GAT denies the allegations of Paragraph 14 of Plaintiffs' Third Amended Complaint.

## SECOND CLAIM FOR RELIEF
## --AGAINST GAT
### (Declaration of No Inequitable Conduct/Patent Fraud)

15.    Plaintiffs adopt and re-allege each and every numbered paragraph above as if set forth verbatim herein at this point.

**ANSWER**:  GAT incorporates by reference and re-alleges each and every Answer to Plaintiffs' allegations contained in numerical Paragraphs 1 through 14 as though fully set forth herein.

16.    This action arises under the patent laws of the United States, Title 35 of the United States Code (35 U.S.C. § 1, et seq.), and under the Federal Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202), and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question).

**ANSWER**:  GAT admits that Plaintiffs' third claim for relief asks this Court for declaratory relief relating to the patent laws of the United States, i.e. that Plaintiffs did not commit inequitable conduct/patent fraud. However, whether such an action invokes the subject matter jurisdiction of this Court is not a factual allegation that GAT can admit or deny.

17.     Plaintiffs are informed and believe and on that basis allege Defendant GAT accuses Plaintiffs of committing fraud on the United States Patent & Trademark Office in the prosecution of Plaintiffs patents, including the '188 Patent, constituting therefore inequitable conduct to render the '188 Patent, at least, unenforceable; that these statements are untrue and without basis in fact.

**ANSWER**:   GAT admits that it accuses Plaintiffs of committing fraud on the United States Patent & Trademark Office in the prosecution of Plaintiffs' patents, including the '188 Patent, constituting inequitable conduct to render those patents unenforceable. GAT denies the remaining allegations of Paragraph 17 of Plaintiffs' Third Amended Complaint.

18.     Plaintiffs are informed and believe and on that basis allege Defendant GAT is preparing to file an action against Plaintiffs for such alleged fraud, and has stated has much in its defamatory website, "thetruthaboutmillermendel.com", as published on August 22, 2019. Exhibit "1" hereto and incorporated herein is a true and correct copy of that website copied on that date.

**ANSWER**:   GAT admits that it filed an action against Plaintiffs in the United States District Court for the Eastern District of California, *Guardian Alliance Technologies, Inc. v. Miller Mendel, Inc. et al.*, Case No. 2:22-cv-01390-WBS-AC (E.D. Cal.), based at least in part on Plaintiffs' obtaining their patents through inequitable conduct. GAT denies the remaining allegations of Paragraph 18 of Plaintiffs' Third Amended Complaint.

19.     Plaintiffs are informed and believe and on that basis allege that there is an actual case or controversy.

**ANSWER**:   GAT admits the allegations of Paragraph 19 of Plaintiffs' Third Amended Complaint.

6

20.    By Defendant GAT's actions, Plaintiffs are in reasonable apprehension of an imminent suit against Plaintiffs for such alleged fraud upon the United States Patent & Trademark Office relating to the '188 Patent.

**ANSWER**:  GAT admits the allegations of Paragraph 20 of Plaintiffs' Third Amended Complaint.

21.    Plaintiffs deny that they have committed fraud upon the United States Patent & Trademark Office, and now seeks a declaratory judgment that they have not committed fraud upon the United States Patent & Trademark Office.

**ANSWER**: GAT denies the allegations of Paragraph 21 of Plaintiffs' Third Amended Complaint.

22.    The controversy is such that, pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 et seq., Plaintiffs are entitled to a declaration, in the form of a judgment, that by their activities Plaintiffs have not committed fraud upon the United States Patent & Trademark Office. Such a determination and declaration is necessary and appropriate at this time.

**ANSWER**:  GAT denies the allegations of Paragraph 22 of Plaintiffs' Third Amended Complaint.

## **PRAYER FOR RELIEF**

In response to Plaintiffs' prayer for relief, GAT denies each and every allegation contained therein, and further, GAT specifically denies that Plaintiffs are entitled to any of the relief requested in Plaintiffs' Third Amended Complaint; specifically denies that Plaintiffs are entitled to an adjudication that the '188 Patent is valid and enforceable; specifically denies that Plaintiffs have been damaged by any acts of GAT in any way or that Plaintiffs are entitled to any award of damages, costs, expenses, interest or of enhanced damages; specifically denies that Plaintiffs are entitled to any injunctive relief; specifically denies that Plaintiffs are entitled to attorney's fees or costs of suit; specifically denies that

7

Plaintiffs are entitled to a declaratory judgment that they have not committed fraud upon the USPTO or that they have not committed inequitable conduct in relation to the '188 Patent family; specifically denies that Plaintiffs are entitled to any damages for defamation; and specifically denies that Plaintiffs are entitled to an award of pre- and post-judgment interest.

## DEMAND FOR A JURY TRIAL

Plaintiffs' demand for a jury trial is not a factual allegation, and GAT accordingly is not required to provide a response.

## GAT'S AFFIRMATIVE DEFENSES

GAT alleges the following as separate and affirmative defenses to Plaintiffs' Third Amended Complaint. By virtue of having listed the following defenses, GAT does not assume any legal or factual burden not otherwise assigned to it under the law:

## FIRST AFFIRMATIVE DEFENSE

1.     The claims of the '188 Patent are invalid and/or unenforceable for failure to satisfy the conditions of patentability set forth in 35 U.S.C. §§ 101 *et seq.*, including at least sections 101, 102, 103, and 112.

## SECOND AFFIRMATIVE DEFENSE

2.     Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver, laches, and/or estoppel.

## THIRD AFFIRMATIVE DEFENSE

3.     The Third Amended Complaint fails to state a claim upon which relief may be granted.

8

## FOURTH AFFIRMATIVE DEFENSE

4.    The '188 Patent is unenforceable because inventor Tyler Miller and his patent attorney, Philip Hunt of Rylander & Associates, PC, failed to disclose all noncumulative, material prior art of which they were aware to the U.S. Patent and Trademark Office during the prosecution of the '188 Patent.

5.    Pursuant to 37 C.F.R. § 1.56, Miller and Mr. Hunt each had a continuing duty during the prosecution of the '188 Patent, i.e. May 26, 2015, to August 7, 2018, to disclose all information they were aware of that was material and not merely cumulative over the prior art already before the USPTO.

6.    Miller and Mr. Hunt violated that continuing duty when they failed to disclose the existence of a background investigation system and software owned by Background Solutions, LLC, during the prosecution of the '188 Patent.

7.    The application date for the '188 Patent (application no. 14/721,707) is May 26, 2015, and it was issued on August 7, 2018.

8.    On information and belief, certainly before August 7, 2018 (when the '188 Patent was issued) and perhaps even before application no. 14/721,707 was filed, Miller was aware of the Background Solutions background investigation system and software and all of its pertinent features.

9.    During the prosecution of the '188 Patent, Miller and his patent attorney Philip Hunt amended claims 1, 5, and 9 to add the limitation, "generating a suggested reference list of one or more law enforcement agencies based on the applicant residential

APPX00367

address." October 23, 2017, Amendment and Response to Office Action, a true and correct copy of which is attached hereto as Exhibit 1.

10.    Miller and Mr. Hunt argued that the added limitation—

[I]s a slightly broader version of a limitation in claims 1, 5 and 9 of the parent application, now issued as US9070098. Claims 1, 5 and 9 of the instant application after this amendment are now very similar to claims 1, 5 and 9 of the '098 patent. The same reasoning the Applicant advanced in the prosecution of the '098 patent applies here as well. Parikh teaches e-dossiers that may have candidate referral information, but Parikh is silent on how information is obtained and entered into the e-dossier. The other art of record does not supply this deficiency of Parikh. For at least these reasons, the Applicant believes these claims are patentable.

*Id.*

11.    On December 9, 2014, during the prosecution of the '098 Patent, Messrs. Miller and Hunt further amended claims 1, 5, and 9 of the '098 Patent to include the limitation "generating a suggested reference list of one or more law enforcement agencies and/or courts within a pre-defined radius around the applicant residential address; and presenting the suggested reference list to the investigator." December 9, 2014, Amendment and Response to Office Action in '098 Prosecution, a true and correct copy of which is attached hereto as Exhibit 2.

12.    On December 26, 2017, the USPTO issued an office action rejecting Claims 1-3, 5-7, 9, 13-14, and 16 of the '188 Patent under pre-AIA 35 U.S.C. § 103(a), in part because:

Duffy teaches generating a suggested reference list of one of more law enforcement agencies based on an applicant residential address (¶0105; note that Duffy is not directed to law agencies. However, this is would be obvious to use generating a list to one of ordinary skill in the art with the above references that deals with law enforcement).

10

December 26, 2017, Office Action, a true and correct copy of which is attached hereto as

Exhibit 3.

      13.     In response, Miller and Mr. Hunt argued:

> Regarding rejection of c1aim 1 as obvious, OA pages 16-17 states "Duffy teaches generating a suggested reference list of one of more law enforcement agencies based on an applicant residential address." Examiner acknowledges that Duffy is "not directed at law enforcement agencies. Applicant points out that Duffy is not only not directed at employment background checks for law enforcement agencies. It is also not directed at any type of background investigations for any type of employer. It is directed at product recalls, a completely unrelated field and one that is not reasonably pertinent to the field of background investigations.

March 7, 2018, Applicant Initiated Interview Summary, a true and correct copy of which

is attached hereto as Ex. 4.

      14.     On June 22, 2018, the USPTO issued a Notice of Allowance for the '188

Patent, stating as the reason for allowance that—

> Prior art does not teach " ... investigator ... associating the reference electronic response with the new application entry and ... generating a suggested reference list of one more law enforcement agencies based on an applicant residential address" of Claim 1. Note that Claims 5, 9 and 16 are substantially similar to Claim 1, thus the same rationale applies with respect to prior art and allowance.

> The closest prior art are Parikh et al. US 2012/0089528A1, LaPasta et al. US 2005/0033633A1, Ritzel US 6904407 B2 and Duffy et al. US 2009/0319331 A 1.

> However, prior art still fail (*sic*) to teach " ... investigator ... associating the reference electronic response with the new application entry and ... generating a suggested reference list of one more law enforcement agencies based on an applicant residential address" of Claim 1. Note that Claims 5, 9 and 16 are substantially similar to Claim 1, thus the same rationale applies with respect to prior art and allowance.

11

In addition, Applicant's arguments filed 4/26/2018 have been considered and found persuasive.

June 22, 2018, Notice of Allowance, a true and correct copy of which is attached hereto as Exhibit 5.

15.    The Background Solutions background investigation system and software, which was available publicly prior to the earliest possible priority date of the '188 Patent and of which Miller and Hunt were aware during the prosecution of the '188 Patent discloses automatically generating a list of law enforcement agencies within a certain radius based on residential address information in the electronic application as was disclosed in public presentations regarding the Background Solutions, as follows:



APPX00370



18.     Miller was aware no later than August 9, 2012, that the Background
Solutions background investigation system and software had been used by the King County
(WA) Sheriff's Department for several years. *See* the August 9, 2012, email thread between
Miller and Detective Robert Burrows of the King County (WA) Sheriff's Office
Background Investigation Unit (KSCO-00071–00072), a true and correct copy of which is
attached hereto as Exhibit 6.

19.     No later than February 28, 2014, i.e. more than a year before the application
date of the '188 Patent, Miller was aware that the Background Solutions system auto-
generates correspondence letters in the background investigation process based on the
applicant's residential address. *See*, February 28, 2014, email thread between Miller;

Alexandra Ehlert, Human Resources Associate for the King County (WA) Sheriff's Office; and Mark Sawa of the Travis County (TX) Sheriff's Department (KCSO-00116–00119), a true and correct copy of which is attached hereto as Exhibit 7.

20.     The Background Solutions background investigation system is, therefore, material to the patentability of the '188 Patent, particularly as to the limitation "generating a suggested reference list of one or more law enforcement agencies based on the applicant residential address." The patent examiner would not have allowed the claims of the '188 Patent to issue in their present form had Miller and/or Hunt disclosed the Background Solutions background investigation system to the Patent Office because that the withheld information provides a teaching that was absent from the prior art relied upon by the examiner, which Messrs. Miller and Hunt actively argued was not present in the prior art.

21.     Specifically, the examiner allowed the claims of the '188 Patent after accepting Messrs. Miller and Hunt's arguments that the "[p]rior art does not teach " ... investigator ... associating the reference electronic response with the new application entry and ... generating a suggested reference list of one more law enforcement agencies based on an applicant residential address."

22.     Thus, "but for" Messrs. Miller and Hunt violating their duty of candor and good faith in dealing with the United States Patent and Trademark Office, the '188 Patent would not have been issued by the USPTO.

23.     Based on Mr. Miller's prior awareness of the Background Solutions background investigation system and software, and particularly his familiarity with its features, on information, and belief, the failure of inventor Miller and his patent attorney

14

Philip Hunt, to disclose the Background Solutions background investigation system to the United States Patent and Trademark Office was done with intent to deceive the USPTO.

GAT reserves the right to assert additional defenses that it learns of through discovery in this action.

## **GAT'S PRAYER FOR RELIEF**

GAT seeks the following relief:

a.  A judgment that all of the claims of the '188 Patent are invalid and/or unenforceable against GAT;

b.  A judgment that the '188 Patent is unenforceable because of Tyler Miller and Philip Hunt's inequitable conduct;

c.  A judgment declaring this case exceptional under 35 U.S.C. § 285 and awarding GAT its attorneys' fees and prejudgment interest, and an award to GAT of all its costs of this action; and

d.  Such other relief as the Court deems just and proper.

## **GAT'S DEMAND FOR A JURY TRIAL**

GAT demands a trial by jury on all issues that are so triable.


Dated: May 27, 2025              Respectfully submitted,


                                 */s/ Evan W. Talley*
                                 Evan W. Talley (OBA No. 22923)
                                 **RYAN WHALEY, PLLC**
                                 400 North Walnut Ave.
                                 Oklahoma City, OK  73104
                                 Telephone: (405) 239-6040

15

Email: etalley@ryanwhaley.com


-and-

Douglas J. Sorocco, OBA # 17347
**DUNLAP CODDING PC**
609 W. Sheridan Avenue
Oklahoma City, OK 73102
Telephone: (405) 607-8600
E-mail: dsorocco@dunlapcodding.com

*ATTORNEYS FOR DEFENDANTS*
*GUARDIAN ALLIANCE*
*TECHNOLOGIES, INC.*

16

# EXHIBIT G

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MILLER MENDEL, INC., a Washington Corporation; and TYLER MILLER, an Oregon state resident, )))) | |
| Plaintiffs, )) | |
| v. ) | Case No. CIV-18-990-JD |
| THE CITY OF OKLAHOMA CITY, a municipal corporation; and GUARDIAN ALLIANCE TECHNOLOGIES, INC., a Delaware corporation, ))))) | |
| Defendants. )) | |

## DECLARATION OF ADAM V. ANTHONY IN SUPPORT OF DEFENDANT GUARDIAN ALLIANCE TECHNOLOGIES, INC'S MOTION TO TRANSFER

I, Adam V. Anthony, declare under penalty of perjury under the laws of the United States, that the following is true and correct:

1.    I am over eighteen (18) years of age and have personal knowledge of all matters asserted herein.

2.    Guardian Alliance Technologies, Inc. ("GAT") is a software technology company with its principal place of business in Reno, Nevada. I am currently the Chief Operating Officer of GAT. I have held that position since January 2019. Since February 2018, I have been the President and Chief Executive Officer of GAT's parent company, Guardian Alliance Holdings, Inc.

1

3.      I understand that this declaration is filed in support of GAT's Motion to Transfer Venue to the United States District Court for the Eastern District of California.

4.      Since 2018, GAT has been a corporation organized under the laws of California.

5.      GAT was founded as a Delaware corporation in 2016, but was formally dissolved as a Delaware entity in 2018.

6.      From June 2017 through the end of December 2024, GAT and its parent company, Guardian Alliance Holdings, Inc., maintained their headquarters at 11 S. San Joaquin St., Suite 804, Stockton, CA 95292.

7.      As of January 2025, GAT and its parent company, Guardian Alliance Holdings, Inc., moved their headquarters and offices to 9805 Double R Blvd, Ste 300, Reno, NV 89521.

8.      Despite moving its headquarters to Reno, Nevada, GAT remains a California corporation.

9.      Six of GAT's twelve regular personnel members remain based in California, including GAT's founder and president, who resides within the Eastern District of California.

10.      GAT owns no assets in Oklahoma.

11.      GAT own no property in and maintains no bank accounts in Oklahoma.

12.      California, specifically the Eastern District of California is the location of GAT's primary banking branch and also where GAT's customers submit payment for GAT's services.

2

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing facts are true and correct.

Executed this __8th__ day of May 2025, at Marana, Arizona.

Adam V. Anthony

# EXHIBIT H

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

(1) MILLER MENDEL, INC., a
    Washington Corporation, and
(2) TYLER MILLER, an Oregon state
    resident,

                Plaintiffs,

v.

(2) GUARDIAN ALLIANCE
TECHNOLOGIES, INC., a Delaware
corporation,

                Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. <u>CIV-18-990-JD</u>

**JURY TRIAL DEMANDED**

## RESPONSE TO DEFENDANT GUARDIAN ALLIANCE TECHNOLOGIES, INC.'S MOTION TO TRANSFER

Todd A. Nelson, OBA #15317
Paul E. Rossler, OBA #21796
GABLEGOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103
Telephone:   (918) 595-4800
Facsimile:    (918) 595-4990
E-mail: <u>tnelson@gablelaw.com</u>
<u>prossler@gablelaw.com</u>

*Admitted Pro Hac Vice:*
Kurt M. Rylander, Bar No. 27819
Mark E. Beatty, Bar No. 37076
RYLANDER & ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
Telephone:   (360) 750-9931
Facsimile:    (360) 397-0473
E-mail: <u>rylander@rylanderlaw.com</u>
*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

RESPONSE....................................................................................................................... 1

I.  LEGAL STANDARD.................................................................................................. 1

II. THE COURT MUST DEFER TO PLAINTIFFS' CHOSEN FORUM,
    ESPECIALLY AS THE FIRST-FILED ACTION, IN THE ABSENCE OF
    SUBSTANTIAL EVIDENCE TO THE CONTRARY. ...................................................... 3

III. JUDICIAL ECONOMY AND FAMILIARITY WITH THE CASE
     STRONGLY FAVOR RETENTION IN THIS DISTRICT. ............................................. 8

IV. GAT'S SIGNIFICANT DELAY IN SEEKING TRANSFER
    UNDERMINES ITS CLAIMS OF CONVENIENCE AND INTEREST
    OF JUSTICE. ........................................................................................................ 10

V.  THE WESTERN DISTRICT OF OKLAHOMA IS THE PROPER AND
    MORE APPROPRIATE FORUM TO ADJUDICATE CLAIMS
    INVOLVING OKLAHOMA LAW.................................................................................... 14

VI. GAT'S ARGUMENT THAT "ENFORCEABILITY OF A JUDGMENT
    FAVORS TRANSFER" IS ABSURD............................................................................ 14

VII. OTHER *CHRYSLER* FACTORS DO NOT COMPEL TRANSFER AND
     SOME WEIGH AGAINST IT...................................................................................... 15

VIII. CONCLUSION....................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Am. Dredging Co. v. Miller*,
  510 U.S. 443, 449, 114 S. Ct. 981, 986, 127 L. Ed. 2d 285 (1994) ........................................ 2

*Apache Prods. Co. v. Emps. Ins. of Wausau*,
  154 F.R.D. 650 (S.D. Miss. 1994) ........................................................................................... 12

*Buckley v. McGraw-Hill, Inc.*,
  762 F. Supp. 430 (D.N.H. 1991) ............................................................................................... 6

*Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*,
  618 F.3d 1153 (10th Cir. 2010) ................................................................................................. 2

*Excelsior Designs, Inc. v. Sheres*,
  291 F. Supp. 2d 181 (E.D.N.Y. 2003) ..................................................................................... 6,7

*Frazier v. Com. Credit Equip. Corp.*,
  755 F. Supp. 163 (S.D. Miss. 1991) ......................................................................................... 13

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) ................................................................. 2, 5

*Pillsbury Co. v. Kemp's Foods, Inc.*,
  No. CIV. A. 97-CV-4823, 1998 WL 372298 (E.D. Pa. June 16, 1998) .............................. 6, 12

*Regeneron Pharms., Inc. v. Merus N.V.*,
  864 F.3d 1343 (Fed. Cir. 2017) ............................................................................................... 10

*ROC, Inc. v. Progress Drillers, Inc.*,
  481 F. Supp. 147  (W.D. Okla. 1979) ............................................................................... 2, 3, 5, 7

*Scheidt v. Klein*,
  956 F.2d 963 (10th Cir.1992) .................................................................................................... 2

*Starr Indem. & Liab. Co. v. Brightstar Corp.*,
  324 F. Supp. 3d 421 (S.D.N.Y. 2018) ................................................................................. 12, 13

**Statutes**

15 Fed. Prac. & Proc. Juris. § 3844 ........................................................................................... 13

28 U.S.C. § 1404(a) ........................................................................................................... 1, 2, 3, 12

28 U.S.C.A. § 1963 (West) ........................................................................................... 15

## RESPONSE

Plaintiffs Miller Mendel, Inc. and Tyler Miller (collectively, "Plaintiffs" or "Miller Mendel") respectfully submit this Response in opposition to Defendant Guardian Alliance Technologies, Inc.'s ("GAT") Motion to Transfer Venue to the United States District Court for the Eastern District of California ("Motion") [Doc. No. 146]. As set forth below, and in accordance with the factors considered under 28 U.S.C. § 1404(a) by courts within the Tenth Circuit, transfer of this action to the Eastern District of California is unwarranted and would not serve the interests of justice or judicial economy.

Contemporaneously with this Opposition, Plaintiffs are filing in the Eastern District of California a Motion to Transfer to this Court under the first-to-file doctrine.

## I.    LEGAL STANDARD

A district court is vested with considerable discretion in determining whether transfer is appropriate under 28 U.S.C. § 1404(a), which permits transfer "[f]or the convenience of parties and witnesses, [and] in the interest of justice…to any other district or division where it might have been brought". The purpose of this statute is "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense". Courts in the Tenth Circuit evaluate various factors when considering a motion to transfer, including: (1) the plaintiff's choice of forum; (2) the accessibility of witnesses and other sources of proof; (3) the cost of making the necessary proof; (4) the enforceability of a judgment; (5) the relative advantages and obstacles to a fair trial; (6) difficulties arising from congested dockets; (7) the conflict of laws; (8) the advantage of having a local court determine questions of local

law; and (9) all other considerations of a practical nature that make a trial easy, expeditious, and economical. While GAT contends this case "may have been brought" in the Eastern District of California, satisfying the initial inquiry under § 1404(a), the remaining factors, particularly those concerning the interests of justice and judicial economy in the context of this specific case's history, weigh heavily against transfer.

GAT bears the burden to establish that the inconvenience of litigating a claim under Oklahoma state law in Oklahoma is so great that it justifies overriding all other factors to be considered--which it fails to do. As the Tenth Circuit has explained,

> The 'party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient...Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue.'

*Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting *Scheidt v. Klein*, 956 F.2d 963, 965-966 (10th Cir.1992)).

Regardless of whether the action "could have been brought" in GAT's preferred district, the mere fact that GAT's preferred venue – asserted seven (7) years after this case initiated in the Western District of Oklahoma – is more convenient to GAT is not particularly relevant. "The burden of establishing that a case should be transferred is on the movant and *unless the evidence and circumstances of the case are strongly in favor of the transfer, the plaintiff's choice of forum should rarely be disturbed.*" *ROC, Inc. v. Progress Drillers, Inc.*, 481 F. Supp. 147, 151 (W.D. Okla. 1979)(emphasis added)(citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) and other cases (*Gilbert* superseded on other grounds by statute, *Am. Dredging Co. v. Miller*, 510 U.S. 443,

449, 114 S. Ct. 981, 986, 127 L. Ed. 2d 285 (1994), noting that passage of 28 U.S.C.

§1404(a) provides for transfer of cases rather than outright dismissal under *forum non*

*conveniens* doctrine, which now has very limited scope in federal practice: "[T]he federal

doctrine of *forum non conveniens* has continuing application only in cases where the

alternative forum is abroad.").

## II.   THE COURT MUST DEFER TO PLAINTIFFS' CHOSEN FORUM, ESPECIALLY AS THE FIRST-FILED ACTION, IN THE ABSENCE OF SUBSTANTIAL EVIDENCE TO THE CONTRARY.

Plaintiff's choice of forum carries great weight in evaluating a motion to transfer.

> A large measure of deference is due the plaintiff's freedom to select his forum and significant weight should be given such choice in considering the transfer of the case to another district... . Where the transfer would merely shift the inconvenience from one party to the other, the motion for change of venue should be denied.

*ROC, Inc. v. Progress Drillers, Inc.*, 481 F. Supp. 147, 151-2 (W.D. Okla. 1979).

Although this factor may carry less weight where the causative facts lack

"significant contact" with the forum state, *Id.*, in this case GAT's defamatory conduct arose

in retaliation against MMI and Mr. Miller for filing this case in Oklahoma and have been

an ongoing issue in this case, such that the "transactions or conduct underlying the cause

of action", *Id.*, have direct and significant contacts with this district and therefore carries

the greatest weight, heavily favoring retaining this seven-year-old case with this Court.

This factor weighs even more heavily because the asserted state law claims are brought

under Oklahoma substantive law.

In *ROC*, (cited by GAT), defendant Progress Drillers sought transfer from the

Western District of Oklahoma to the Southern District of Texas, where Progress Drillers'

principal place of business was located. *Id* at 151. Progress Drillers submitted, among other evidence, affidavits identifying five potential defense witnesses who resided in the Southern District of Texas. *Id at* 152. However, the court noted that the affidavits did not describe the substance of the witnesses' likely testimony and therefore failed to establish the materiality of the testimony to the parties' claims or defenses or that they could not testify by deposition. Nor did Progress Drillers provide evidence that the five witnesses would require compulsory process to ensure appearance at trial. *Id*. The court pointed out that defendant Progress Drillers bore the burden of establishing, with evidence, plaintiff's forum would "greatly inconvenience" material witnesses and also failed to establish, with evidence, that their preferred forum would be substantially more convenient for all material witnesses. *Id*. The court rejected defendant's request, finding that Progress Drillers failed to present sufficient evidence "...strongly in favor of the transfer..." *Id. at* 151.

GAT, by contrast, does not present any relevant evidence to support their Motion. The Declaration of Anthony [Dk 147] does not identify any material witness who may be required at trial much less demonstrate that attending trial in Oklahoma would incur such great inconvenience as to justify denying Plaintiff their chosen forum and moving a case brought under Oklahoma law to a foreign jurisdiction unfamiliar with Oklahoma law. Nor does the Anthony Declaration [Dk 147] identify any witness that would require compulsory process to testify at a trial in Oklahoma, but who would not also require compulsory process to testify at a trial in Sacramento. In fact, the Anthony Declaration [Dk 147] states that GAT's offices and employees are located *in Nevada, not California*, negating their own argument regarding their being located within the Eastern District of California. Rather,

only their bank accounts reside in California. (Dec. Anthony [Dk 147], ⁋ 4, 12).

> Though a certainty of exact specificity of witnesses is not an absolute to the sustenance of Defendants' burden, it is necessary that some factual information relative to the materiality of witness testimony and the considerations mentioned above be supplied to the Court... In view of the absence of a clear showing by Defendant that a trial in the present forum would greatly inconvenience the witnesses in this case, the weight of the equities would appear to preponderate in favor of retaining venue in this judicial district.

*ROC, Inc.,* 481 F. Supp. at 152.  GAT produces only theoretical arguments but no actual evidence regarding "...relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, the cost of obtaining attendance of willing witnesses, and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.*[1] Other than GAT's own subjective preference, GAT fails to produce any evidence establishing that transferring this case to the Eastern District of California would be substantially more convenient for "the parties", nor that the Western District of Oklahoma imposes such great inconvenience to "the parties" or any identified material witness relative to Sacramento that it would justify forcing Plaintiffs to start this case over in a new court after seven (7) years of substantive litigation in this court.

"[A]morphous allegations of need as to unnamed witnesses and unspecified documents are inadequate to satisfy the mandate of *Gulf Oil Corp.*[2] that there be a clear

---

[1] To the extent any trial in any federal court could be considered "inexpensive".

[2] *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) and other cases (*Gilbert* superseded on other grounds by statute). *See FN 1, above*.

showing that a balancing of conveniences *strongly* favors the granting of a motion."
*Buckley v. McGraw-Hill, Inc.*, 762 F. Supp. 430, 439 (D.N.H. 1991)(citations omitted). In
Buckley, a case involving libel claims, the court rejected defendant's motion to transfer
from the District of New Hampshire to the Western District of Pennsylvania (which relied
largely on arguments about convenience to witnesses) because no concrete evidence was
presented demonstrating that either forum was substantially more convenient to any
identified witness, but rather the parties had merely presented "general allegations about
the identity and location of witnesses who would be inconvenienced." *Buckley v. McGraw-
Hill, Inc.*, 762 F. Supp. 430, 440 (D.N.H. 1991)(citations omitted). The absence of evidence
weighed in favor of retaining the case in New Hampshire in light of defendant's burden to
make a clear showing that the balance "strongly favors" transfer. *Id at* 439.

MMI's employees are located throughout the United States and travel frequently,
and both MMI's and GAT's clients consist of law enforcement agencies located throughout
the United States, so the E.D. California is not more convenient for witnesses than the
Western District of Oklahoma. Exhibit 1, Declaration of Tyler Miller, dated May 28, 2025.
Plaintiffs' voluntary inconvenience to themselves is not considered at all in weighing the
various factors. "If in fact it is inconvenient for Plaintiff to come to Philadelphia, he is
entitled to inconvenience himself." *Pillsbury Co. v. Kemp's Foods, Inc.*, No. CIV. A. 97-
CV-4823, 1998 WL 372298, at *2 (E.D. Pa. June 16, 1998)(not reported in F. Supp.)
Accord *Excelsior Designs, Inc. v. Sheres*, 291 F. Supp. 2d 181, 186 (E.D.N.Y.
2003)(denying transfer). "[T]he Court finds that the witnesses identified by the parties are
located all across the country. Because these witnesses are located on both the West and

East Coast, the Court finds that this factor does not clearly favor either venue." *Excelsior Designs*, 291 F.Supp. at 186.

If actual evidence submitted in the *ROC* case was not sufficient because it lacked specificity regarding the alleged "great inconvenience", then GAT's complete absence of evidence certainly does not meet GAT's burden of proof. GAT's Motion and accompanying declaration establish nothing more than GAT's preference, which is inconsequential in a case that is now seven (7) years old and has been actively litigated through substantive motions[3] and substantial evidentiary discovery. The Court can note that the numbered pleadings are now beyond 150 in this case.

Plaintiffs initiated this action in the Western District of Oklahoma in October 2018. This makes the Oklahoma Action the first-filed case concerning the underlying patent and related disputes between Plaintiffs and GAT, predating GAT's initiation of the Eastern District of California Action in August 2022 by nearly four years. Although GAT argues that Plaintiffs' choice of forum should receive minimal weight because the remaining claims allegedly lack a material relation to Oklahoma, this argument overlooks the significance of the Oklahoma Action being the senior proceeding.

While the E.D. Cal. court, in its Order on Miller Mendel's motion to dismiss and strike in the E.D. Cal. Action, discussed the first-to-file rule, it specifically noted that the

---

[3] Including the currently pending order on claim construction, which will be directly relevant to adjudicating the defamation and declaratory judgment claims (and GAT's likely defenses and/or counterclaims).

Oklahoma Action was "filed prior to this case". The E.D. Cal. court acknowledged "substantial overlap" between Guardian's inequitable conduct claims in California and Miller Mendel's claim seeking a declaration of no inequitable conduct in the Oklahoma Action. Although the E.D. Cal. court did not order a stay or transfer *at that time* because the Oklahoma Action still included patent infringement claims against OKC, the fact remains that this Court was the first to acquire jurisdiction over the core controversy, which initially involved patent infringement against OKC based on GAT's software and was later amended to include claims directly against GAT for defamation and declaratory judgment regarding the '188 Patent.

Plaintiffs' initial choice of forum was based on the patent infringement claim against OKC, a GAT customer utilizing GAT's software. While the direct infringement claim against OKC has very recently been withdrawn, the claims against GAT for defamation and declaratory judgment of no inequitable conduct arise from the same underlying dispute involving GAT's alleged statements related to Plaintiffs' patent and its prosecution. Plaintiffs selected this forum first, and their choice should not be easily disturbed, particularly when the case has been pending here for over six years.

## III. JUDICIAL ECONOMY AND FAMILIARITY WITH THE CASE STRONGLY FAVOR RETENTION IN THIS DISTRICT.

This factor weighs heavily against transfer. The Western District of Oklahoma has presided over this litigation since October 2018, including fully briefing claim construction and making substantive rulings under Oklahoma law related to defamation. The Court is intimately familiar with the history, parties, claims, and procedural posture of this complex

case. Significantly, this Court has already made substantive rulings on the claims GAT now seeks to transfer. The Court denied GAT's Partial Motion to Dismiss the defamation and declaratory judgment claims, specifically ruling on issues of subject matter jurisdiction under Rules 12(b)(1) and 12(b)(6) and the applicability of Oklahoma's litigation privilege to the defamation claim. The Court found it had supplemental jurisdiction over the defamation claim and determined that Oklahoma's litigation privilege, as recognized in Oklahoma and the Tenth Circuit, did not apply to GAT's challenged statement. Transferring this case would require the Eastern District of California court to familiarize itself with the extensive procedural history and potentially revisit legal issues already decided by this Court.

Furthermore, the Court recently issued an Order directing the parties to file a joint status report addressing the impact of the *Miller Mendel v. City of Anna* Federal Circuit and Supreme Court decisions on the claim construction briefing in this action. This explicitly indicates that claim construction proceedings have been undertaken or are currently contemplated by this Court in relation to the '188 Patent. The claim for a declaration of no inequitable conduct directly involves the prosecution of the '188 Patent and, as GAT's California complaint illustrates, depends on allegations of misrepresentations or omissions made during patent prosecution. A determination of materiality, a key element of inequitable conduct, is often dependent on the scope of the patent claims, which is established through claim construction. The Oklahoma Court, having overseen this case since 2018 and having already engaged with issues related to the '188 Patent and claim construction, is uniquely positioned to efficiently handle the

remaining claim for a declaration of no inequitable conduct. Requiring the E.D. Cal. court to restart the process of understanding the patent, its prosecution history, and undertaking claim construction would be a significant waste of judicial resources and create unnecessary delays and costs for the parties. The E.D. Cal. court's Order, while addressing § 101 invalidity of the '188 patent, does not indicate the same level of engagement with detailed claim construction issues as this Court's recent order suggests is occurring here.

The fact that this Court has fully briefed claim construction, and awaits only a hearing, strongly militates against transfer. The Federal Circuit has made clear that the patent claims must be construed to determine "materiality" for purposes of inequitable conduct and patent fraud. *Regeneron Pharms., Inc. v. Merus N.V.,* 864 F.3d 1343, 1350 (Fed. Cir. 2017) ("In determining the materiality of a reference, the court applies the preponderance of the evidence standard and gives claims their broadest reasonable construction."). Conversely, the E.D. of California is just restarting its case after a prolonged stay, and is nowhere nearing scheduling claim construction procedures, let alone briefing and a hearing.

Allowing the case to remain in the Western District of Oklahoma serves the interests of judicial economy by building upon the Court's existing familiarity with the case and its prior rulings, including those specifically addressing the claims GAT seeks to transfer.

## IV.    GAT'S SIGNIFICANT DELAY IN SEEKING TRANSFER UNDERMINES ITS CLAIMS OF CONVENIENCE AND INTEREST OF JUSTICE.

GAT initiated its action against Miller Mendel in the Eastern District of California in August 2022. The Motion to Transfer in this case, filed in May 2025, comes nearly three

years after GAT filed its own case in California and more than six years after Plaintiffs filed this action in Oklahoma. While GAT's E.D. Cal. action was stayed for a period, that stay was lifted, and the case is now proceeding.

MMI moved for leave to file Second Amended Complaint against GAT on September 20, **2019** (Dkt 55). Six (6) years later GAT suddenly realized transfer is necessary? While the withdrawal of the claim against OKC serves as the stated catalyst for GAT's motion, GAT was aware of the potential for this configuration of the case (with only claims against GAT remaining) long before May 2025. The E.D. Cal. Order from April 30, 2025, which is attached as an exhibit to GAT's motion, explicitly references MMI's intention to file a Third Amended Complaint in the Oklahoma Action that would withdraw the claim against OKC, and notes that GAT apparently anticipated this. GAT filed its Answer to the Second Amended Complaint in this case in December 2024. At that time, GAT was well aware that the Texas Action regarding the '188 patent had concluded, and that Miller Mendel was seeking leave to amend its complaint in the Oklahoma Action. Yet, GAT waited several more months before filing this Motion to Transfer.

This significant delay, occurring after GAT filed its own related action in California and after substantial litigation has occurred in Oklahoma, suggests that the purported inconvenience is not as compelling as now argued or that the motion is a tactical maneuver. The delay weighs against granting the motion, as it undermines the argument that transfer is necessary for the convenience of the parties or the interests of justice at this late stage of the Oklahoma proceedings.

Delay in seeking transfer, regardless of the cause, is an important factor to be

weighed in a motion to transfer.

> While § 1404(a) imposes no time limits on the filing of a motion to transfer, a party's delay in seeking transfer may appropriately be considered in evaluating the motion since a delay in requesting transfer may impact other pertinent considerations, such as whether a transfer after substantial progression of the case in one forum would delay the ultimate resolution of the action or greatly diminish the value of judicial resources that have been expended in the matter.

*Apache Prods. Co. v. Emps. Ins. of Wausau*, 154 F.R.D. 650, 657 (S.D. Miss. 1994) (citations omitted). In *Apache Products*, the court granted a motion to transfer despite the fact that the case had been pending seven (7) ***months*** – which the court acknowledged pushed the envelope for timeliness. The court relied on the fact that no substantive motions or rulings had occurred to that point, and no discovery on the merits had commenced. The court viewed seven (7) months as pushing the outer limits – but this case has been actively litigated for seven (7) years. Forcing Plaintiffs to start anew in a foreign court would substantially prejudice Plaintiffs' rights to timely adjudication of their rights. Additionally, starting anew after seven (7) years would be a great waste of judicial resources. *Pillsbury Co.*, 1998 WL 372298 at *2, (citing *Apache Prods.*, supra, 154 F.R.D. at 657)(delay warranted denial of transfer where request filed after court-appointed mediator worked with parties toward settlement for several months). "[C]ourts generally find that the farther along a case is in the litigation process, the less efficient a transfer would be." *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp. 3d 421, 442 (S.D.N.Y. 2018)(citing *Apache Prods.*, supra, 154 F.R.D. at 657)(denying transfer four (4) years after case commenced as wasteful of judicial resources). "The advanced stage of this litigation, coupled with this

Court's familiarity with this litigation, suggests that transferring this case would be inefficient." *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp. 3d 421, 442 (S.D.N.Y. 2018). *Accord Frazier v. Com. Credit Equip. Corp.*, 755 F. Supp. 163, 168 (S.D. Miss. 1991)(denying transfer where motion filed six months following removal to district court and motion for summary judgment).

> Secondly, the Court is persuaded that transfers should not be granted where the circumstances indicate that transfer of the action is likely to result in delaying the final resolution of the lawsuit. Where one court has spent substantial amounts of time on a lawsuit, and has implicitly developed an understanding of the facts and law relative to the case, transfer of that case to another court which would then be required to expend additional time familiarizing itself with the controversy would only logically result in a deferral of a final decision in the matter.

*Frazier v. Com. Credit Equip. Corp.*, 755 F. Supp. 163, 168 (S.D. Miss. 1991).

> "Although significant delays in seeking a change of venue have been permitted, it is common sense that the party seeking a change of venue should act with reasonable promptness and that delay may cause the district court to refuse a transfer that otherwise would have been granted had it been sought earlier."

Section 3844 <u>Procedure for Transfer</u>, 15 FED. PRAC. & PROC. JURIS. § 3844 (4th ed.)(footnotes omitted)(citing cases).

GAT's delay in seeking transfer, regardless of why the delay occurred, would substantially prejudice Plaintiffs and therefore should be dispositive in this case. Even if not dispositive, the seven (7) years of litigation, including numerous substantive rulings by this Court and full briefings on claim construction issues, would be wasted by transferring to another forum and impose additional delay against Plaintiffs' right to relief.

## V.    THE WESTERN DISTRICT OF OKLAHOMA IS THE PROPER AND MORE APPROPRIATE FORUM TO ADJUDICATE CLAIMS INVOLVING OKLAHOMA LAW.

The remaining claims against GAT in this action include a defamation claim brought under Oklahoma law. While GAT argues that the substantive law of defamation is "substantially similar" between Oklahoma and California and that the conflicts-of-laws factor is neutral, this Court has already engaged with and applied Oklahoma defamation law, including the specific defense of litigation privilege under Oklahoma law.

As the Tenth Circuit has acknowledged, courts often prefer to have an action adjudicated by a court sitting in the state of the governing substantive law. The Western District of Oklahoma is the proper forum to interpret and apply Oklahoma state law, including the nuances of its litigation privilege, as it has already begun to do. While the E.D. Cal. court is capable of applying Oklahoma law, this Court is inherently more familiar with the state law of the forum in which it sits. Oklahoma also has a significant interest in having its own courts adjudicate claims brought under its state laws, particularly a defamation claim related to statements allegedly published to customers within the state or potentially affecting business reputation within the state.

## VI.    GAT'S ARGUMENT THAT "ENFORCEABILITY OF A JUDGMENT FAVORS TRANSFER" IS ABSURD

GAT argues that enforceability of a judgment favors California because GAT's assets are located there. However, judgments from a federal district court are routinely registered and enforced in other districts, making this a standard procedure and not a compelling reason to transfer an established case. GAT's argument implies that in the event

they are subject to an adverse judgment in this Court they will (unlawfully) refuse to satisfy the judgment, which does not support their plea for equitable relief in transferring this case. Second, a judgment of a federal court may be registered and enforced in any district court in the United States, "...in addition to other procedures provided by law for the enforcement of judgments." 28 U.S.C.A. § 1963 (West). The fact that GAT tries to argue contrary demonstrates the complete lack of evidentiary support for transfer.

## VII. OTHER *CHRYSLER* FACTORS DO NOT COMPEL TRANSFER AND SOME WEIGH AGAINST IT.

While GAT argues that the accessibility of witnesses and sources of proof favors transfer to California or locations closer to California (Washington, Oregon), this factor is not dispositive. Modern litigation tools, such as remote depositions and electronic document exchange, mitigate the inconvenience of geographic separation. The alleged inconvenience to witnesses and parties traveling to Oklahoma was presumably present when GAT filed its Answer and participated in discovery and motion practice in this forum over the past few years, without seeking transfer until now. Furthermore, GAT's argument about the cost of making proof is also diminished by the delay in filing this motion.

GAT acknowledges that the relative advantages and obstacles to a fair trial are neutral. Conversely, the Relative Docket Congestion weighs against transfer and in favor of retaining this case in WD Oklahoma. GAT's proffered evidence regarding docket congestion favors retaining this case in this district, with lower judicial docket loads and lower average times to trial for civil cases. According to GAT's own evidence, docket loads and time to trial for civil cases strongly favor the Western District of Oklahoma. GAT

attempts to flip their burden of proof on its head by arguing that "...relative congestion of the transferee district does not and should not preclude transfer..." *GAT Motion, p.11*. GAT bears the burden to establish, by evidence, that the WD Oklahoma is *substantially less convenient* to the parties for ultimate resolution than GAT's preferred forum. The fact that ED Cal. has substantially higher case loads and longer pendencies to trial weighs strongly against transfer – it is certainly not a neutral factor.

Regarding docket congestion, GAT concedes that the Eastern District of California may have a higher level of docket congestion than the Western District of Oklahoma. While GAT minimizes the significance of this, arguing it is "rarely dispositive" and speculative, the statistics GAT provides show a significantly higher total filings per judgeship in the Eastern District of California compared to the Western District of Oklahoma (1002 vs. 368 as of December 31, 2024). This disparity suggests that transferring the case could lead to greater delays, which is contrary to the interests of justice and making a trial "easy, expeditious and economical". This factor, therefore, weighs against transfer.

Considering all the *Chrysler* factors, the balance does not favor transfer. While GAT attempts to frame the remaining claims as disconnected from Oklahoma, they arose in the context of litigation initiated in Oklahoma and have been litigated before this Court for over six years. The interests of justice and judicial economy, particularly given this Court's familiarity with the case, its prior rulings, the pending claim construction issues, and GAT's significant delay in seeking transfer, weigh strongly in favor of retaining the case in the Western District of Oklahoma.

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant Guardian Alliance Technologies, Inc.'s Motion to Transfer Venue [Doc. No. 146]. Transferring this action to the Eastern District of California would disrupt established proceedings, ignore this Court's significant investment of judicial resources in this case, particularly concerning claim construction and prior substantive rulings on the very claims GAT seeks to transfer, prejudice Plaintiffs, and fail to promote judicial economy or the interests of justice. This action belongs in the Western District of Oklahoma, where it was properly filed as the first-filed action and where it has been actively litigated for over six years.

Date: May 30, 2025                              Respectfully submitted,

                                               s/ Todd A. Nelson
                                               Todd A. Nelson, OBA #15317
                                               Paul E. Rossler, OBA #21796
                                               GABLEGOTWALS
                                               110 N. Elgin, Ste. 200
                                               Tulsa, OK 74120
                                               Telephone:    (918) 595-4800
                                               Facsimile:    (918) 595-4990
                                               E-mail: tnelson@gablelaw.com
                                               prossler@gablelaw.com

                                               *Admitted Pro Hac Vice:*
                                               Kurt M. Rylander, Bar No. 27819
                                               Mark E. Beatty, Bar No. 37076
                                               RYLANDER & ASSOCIATES PC
                                               406 West 12th Street
                                               Vancouver, WA 98660
                                               Telephone:    (360) 750-9931
                                               Facsimile:    (360) 397-0473
                                               E-mail: rylander@rylanderlaw.com

                                               *Attorneys for Plaintiffs*

# EXHIBIT I

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MILLER MENDEL, INC., a Washington Corporation; TYLER MILLER, a Washington State resident,<br><br>                  Plaintiff,<br><br>   vs.<br><br>THE CITY OF OKLAHOMA CITY, a municipal corporation,<br><br>                  Defendant. | Case No. <u>CIV-18-990-HE</u><br><br>**<u>DECLARATION OF</u>**<br>**<u>TYLER MILLER</u>** |

I, TYLER MILLER, having personal knowledge of the following, declare:

1.  I am a named party in the above entitled case and I am also the CEO of Miller Mendel, Inc. ("MMI")

2.  MMI does not have any employees in the Eastern District of California. MMI does not have any offices in the Eastern District of California.

3.  MMI's employees travel frequently, and both MMI's and GAT's clients consist of law enforcement agencies located throughout the United States.

I SWEAR under penalty of perjury of the laws of the United States the foregoing to be true and correct to the best of my recollection and belief.

DATED: <u>May 28, 2025</u>           *Tyler J. Miller*
                                       TYLER MILLER

# EXHIBIT 1

**BOUTIN JONES INC.**
Robert D. Swanson (CA Bar No. 162816)
Daniel S. Stouder (CA Bar No. 226753)
555 Capitol Mall, Suite 1500
Sacramento, CA 95814-4603
T: (916) 321-4444/F: (916) 441-7597
Email: rswanson@boutinjones.com
        dstouder@boutinjones.com

**RYAN WHALEY PLLC**
Evan W. Talley (*Pro Hac Vice*)
400 North Walnut Avenue
Oklahoma City, OK 73104
T: (405) 239-6040
Email: etalley@ryanwhaley.com

**DUNLAP CODDING PC**
Douglas J. Sorocco (*Pro Hac Vice*)
609 West Sheridan Avenue
Oklahoma City, OK 73102
T: (405) 607-8600/F: (405) 607-8686
Email: dsorocco@dunlapcodding.com

*Attorneys for Plaintiff*
*Guardian Alliance Technologies, Inc.*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| GUARDIAN ALLIANCE TECHNOLOGIES, INC., a California corporation;<br><br>Plaintiff,<br><br>vs.<br><br>MILLER MENDEL, INC., a Washington corporation; and TYLER MILLER, an individual;<br><br>Defendants. | **Case No. 2:22-CV-01390-WBS-AC**<br><br>**PLAINTIFF GUARDIAN ALLIANCE TECHNOLOGIES, INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE TO THE WESTERN DISTRICT OF OKLAHOMA [DKT. 54]**<br><br>Date:    July 31, 2025<br>Time:    1:30 p.m.<br>Judge: Hon. William B. Shubb<br>        Courtroom 5, 14th Floor<br>        501 I Street<br>        Sacramento, CA 95814<br><br>Complaint filed: August 5, 2022 |

1      TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE THAT Plaintiff, GUARDIAN ALLIANCE TECHNOLOGIES, INC.

3  ("Guardian"), hereby opposes Defendants Miller Mendel, Inc. and Tyler Miller's (collectively "MMI")

4  Motion to Transfer Venue to the Western District of Oklahoma [Dkt. 54] ("Motion to Transfer").

5      This opposition is based upon the complete records and files in this action, the following

6  Memorandum of Points and Authorities, and any documentary and/or oral evidence as may be

7  presented at the time of the hearing of the motion.

8

9      Dated:  June 20, 2025                           BOUTIN JONES INC.
                                                        Attorneys at Law
10
                                                        Robert D. Swanson
11                                                      Daniel S. Stouder

12                                                      *and*

13                                                      DUNLAP CODDING PC
                                                        Attorneys at Law
14                                                      Douglas J. Sorocco

15
                                                        *and*
16
                                                        RYAN WHALEY PLLC
17                                                      Attorneys at Law

18
                                                        by: */s/ Evan Talley.*
19                                                      Evan W. Talley

20                                                      Attorneys for Plaintiff
                                                        Guardian Alliance Technologies, Inc.
21

22

23

24

25

26

27

28

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO TRANSFER VENUE**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendants Miller Mendel, Inc. and Tyler Miller (collectively "MMI") now seek transfer of this Action (alternatively "the California Action") under the first-to-file rule, only after invoking this Court's jurisdiction to adjudicate a special anti-SLAPP motion to strike and after Plaintiff Guardian Alliance Technologies, Inc. ("GAT") sought to transfer a related action in the Western District of Oklahoma to this Court. MMI's attempts to have this Action stricken pursuant to California's anti-SLAPP procedures were unsuccessful, and this Court should exercise its discretion to retain this case because MMI's gamesmanship and forum shopping should not be rewarded. Above that, MMI cannot even satisfy each of the three threshold factors required to justify a transfer under the first-to-file rule. First, the chronology of events in the various actions weighs against transfer because, even though MMI's claims against GAT in a related action in the United States District Court for the Western District of Oklahoma, *Miller Mendel, Inc. v. The City of Oklahoma City*, Case No. CIV-18-990-JD (W.D. Okla.) ("the Oklahoma Action"), were technically raised before GAT filed this Action, the Oklahoma court did not allow those claims to move forward against GAT until more than **two years after this Action was commenced**. Further, the claims remaining in the Oklahoma Action are a shell of the original profile of the case. Originally, MMI brought patent infringement claims against GAT's customer, the City of Oklahoma City, and later sought to bring GAT into the case for claims of patent infringement, defamation, and for a declaratory judgment of no inequitable conduct. Following the United States District Court's invalidation of the asserted claims of MMI's U.S. Patent No. 10,043,188 ("the '188 Patent") in yet another related action and the Federal Circuit's affirmance of that invalidation, the only claims remaining in Oklahoma Action are for a claim of defamation based on GAT's statement that MMI committed fraud on the patent office during its procurement of the '188 Patent and a request for a declaratory judgment of no inequitable conduct. Conversely, claims and relief sought by GAT in this Action that are not at issue in the Oklahoma Action include: (1) an adjudication that the '188 Patent and its parent patent, U.S. Pat. No. 9,070,098 ("the '098 Patent") are invalid and/or unenforceable; (2) a finding and attendant damages that MMI committed *Sherman* Act antitrust violations; and (3) relief under six separate causes of action arising under California law. Because the scope of this Action is vastly broader than what MMI

PLAINTIFF'S RESPONSE IN OPPOSITION    APPX00406
TO DEFENDANTS' MOTION TO TRANSFER VENUE

1    seeks in the Oklahoma Action, MMI cannot demonstrate a substantial overlap of claims and issues

2    between the two actions. For any of the foregoing reasons, the Court should deny MMI's motion to

3    transfer venue to the Western District of Oklahoma under the first-to-file rule.

4

5    **II.    ARGUMENT AND AUTHORITY**

6        **a.  Legal Standard for Motions to Transfer Venue Brought Pursuant to the First-to-
          File Rule.**

7

8        The "first-to-file rule" is a doctrine of federal comity that permits a district court to decline

9    jurisdiction over an action "when a complaint involving the same parties and issues has already been

10   filed in another district." *Pacesetter Systems, Inc. v. Medtronic, Inc.,* 678 F.2d 93, 94–95 (9th Cir.

11   1982). "The most basic aspect of the first-to-file rule is that it is discretionary; 'an ample degree of

12   discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.'"

13   *Alltrade, Inc. v. Uniweld Products, Inc.,* 946 F.2d 622, 628 (9th Cir. 1991) (quoting *Kerotest Mfg.*

14   *Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 183–84 (1952)). Although discretionary, the rule

15   "serves the purpose of promoting efficiency well and should not be disregarded lightly." *Church of*

16   *Scientology of Ca. v. U.S. Dept. of Army,* 611 F.2d 738, 750 (9th Cir. 1979). In applying the first-to-

17   file rule, a court looks to three threshold factors: "(1) the chronology of the two actions; (2) the

18   similarity of the parties, and (3) the similarity of the issues." *Alltrade,* 946 F.2d at 625–26. If this

19   action meets the requirements of the first-to-file rule, the court has the discretion to transfer, stay, or

20   dismiss the action. *Id.* at 622. The district court retains the discretion, however, to disregard the first-

21   to-file rule in the interests of equity. *Id.* at 622.

22

23       **b.  MMI Has Not Satisfied Each of the Threshold First-to-File Factors**

24           **i.  The chronology of events in the Oklahoma and California Actions,
             namely, MMI's election to file an anti-SLAPP motion to strike in this
25           Court before seeking transfer, weighs against transfer.**

26       While it is technically correct that the Oklahoma Action was commenced before this Action

27   and that MMI sought to bring claims against GAT in the Oklahoma Action before GAT filed this

28   action, there have been many intervening events that occurred after MMI filed the Oklahoma Action,

which weigh against this Court transferring under the first-to-file rule. MMI first filed suit in the Oklahoma Action on October 9, 2018. Ex. 1, Oklahoma Action Docket Sheet, Dkt. 1.[1] MMI sought leave to add GAT as a defendant on September 20, 2019, for claims of patent infringement, defamation, and a declaratory judgment of no inequitable conduct. *Id.* Dkt. 55. Following a hearing, the court issued an order allowing MMI to file an amended complaint adding GAT as a defendant, but only for claims of defamation and a declaratory judgment of no inequitable conduct. *Id.* Dkt. 103. Following MMI's filing of its amended complaint, on November 9, 2020, GAT moved to dismiss the amended complaint on grounds that MMI did not allege the requisite jurisdictional amount and because the litigation privilege immunized GAT for liability for making the allegedly defamatory statements. *Id.* Dkt. 112. The Oklahoma Court did not rule on GAT's motion to dismiss until December 2, 2024, over four years later. *Id.* Dkt. 137. MMI subsequently moved to dismiss its claims against the City of Oklahoma City, which the Court granted on May 13, 2025, and MMI filed the currently operative complaint in the Oklahoma Action on May 14, 2025. Dkt. 139, 150.

In the four years between GAT's filing of the motion to dismiss and the Oklahoma Court ruling on the same, GAT elected to expand the scope of the proceedings well beyond the Oklahoma Action. In 2021, MMI filed patent infringement suits against GAT customers in the United States District Courts for the District of Oregon, District of Alaska, and the Eastern District of Texas. California Action, Dkt. 51, ¶¶ 102–104. On April 14, 2022, the Eastern District of Texas invalidated the asserted claims of the '188 Patent. *Id.* ¶ 105. On August 5, 2022, GAT brought this action in this Court. *Id.* Dkt. 1. On October 11, 2022, **before it was even served with the summons and complaint** in this action, MMI elected to file a motion to dismiss [Dkt. 12] and an anti-SLAPP motion to strike [Dkt. 11]. Notably, MMI did not seek transfer at that time; it so after the Court denied MMI's anti-SLAPP motion and motion to dismiss. [Dkt. 48, 54]. GAT can only speculate as to MMI's reasons for electing to avail itself of this Court for resolution of the anti-SLAPP issue. Still, perhaps it is because it is wholly unclear whether the district courts in the Tenth Circuit, including the Western

---

[1] A true and correct copy of the current docket sheet in the Oklahoma Action is attached hereto as Exhibit 1.

**PLAINTIFF'S RESPONSE IN OPPOSITION** APPX00408
**TO DEFENDANTS' MOTION TO TRANSFER VENUE**

District of Oklahoma, possess the authority to apply state anti-SLAPP procedural statutes in Federal court. *See, e.g., KLX Energy Services, LLC v. Magnesium Machine, LLC*, 521 F. Supp. 3d 1124, 1131 (W.D. Okla. 2021) ("This court concluded that considering the OCPA's [the Oklahoma anti-SLAPP statute] fee-shifting and immunity from suit defense, Rules 12 and 56 [of the] Fed. R. Civ. P., cannot be applied in a manner consistent with the Rules Enabling Act … As no dispositive decisions have been issued since that time, the undersigned will stick with its conclusion in [*Craig PC Sales & Service v. CDW Government, LLC*, 2018 WL 4861522, *15 (W.D. Okla. April 30, 2018)] (again, reluctantly) and find that the OCPA applies to state claims litigated in federal court.")

Regardless of the reason(s) that MMI elected to avail itself of the California anti-SLAPP statute in this Court, it did so before it was even served with the summons and complaint and before it asked this Court to invoke the first-to-file rule and transfer to the Western District of Oklahoma, which it did only after the Court denied MMI's anti-SLAPP motion to strike. Given the Oklahoma Court's delay in ruling on GAT's motion to dismiss and MMI's filing of the operative complaint against GAT in the Oklahoma Action, it is arguable whether the "chronology of actions" factor even weighs in MMI's favor. Even if this factor is satisfied, as addressed *infra*, this Court possesses the discretion to decline to apply the first-to-file rule if certain factors, like forum shopping, are present. Since it appears that MMI is engaging in forum shopping by seeking transfer only after an adverse ruling in this Court on an issue that it may not have been able to raise in the Western District of Oklahoma, this Court should exercise that discretion and rule against transfer.

### ii. Because of the additional claims brought and relief sought by GAT in this Action, there is no substantial overlap of issues between the two actions.

As a part of the first-to-file analysis, the Court must consider the similarity of the issues. "The issues in both cases also need not be identical, only substantially similar." *Kohn Law Group, Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (D. Mont. 2020). To determine whether the issues are substantially similar, courts "look at whether there is 'substantial overlap' between the two suits." *Id.* at 1241. Courts have recognized that the first-to-file rule may not apply where the second-filed action is broader than the first action. *See e.g. Montana Merchandising, Inc. v. Dave's Killer Bread, Inc.*, 2017 WL 2536530, *5 (D. Mont. June 9, 2017) (declining to apply the first-to-file rule where

PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO TRANSFER VENUE                    APPX00409

1   second-filed action included "additional plaintiffs, defendants, and claims" and the claims extended

2   "beyond the scope of the claims of the [first-filed] case"); *Roller Bearing Co. of Am., Inc. v. American*

3   *Software, Inc.*, 570 F.Supp.2d 376, 388 (D. Conn. 2008) (finding judicial economy was best served

4   by allowing the much broader second-filed action to proceed).

5         In *Montana Environmental Information Center v. Bernhardt*, No. CV 19-130-BLG-SPW-

6   TJC, 2020 WL 4346604 (D. Mont. July 29, 2020), the district court found no substantial overlap of

7   issues and accordingly, that the "similarity of issues" factor did not support transfer, even though both

8   actions involved the same federal decision because the issues in the second-filed action were much

9   broader than those presented in the first-filed action and the scope of relief sought in the two actions

10  differed. *Id.* *3–4. That is precisely the case here. All that is left in the Oklahoma Action is a

11  defamation claim against GAT and MMI's request for a declaratory judgment that MMI did not

12  commit inequitable conduct. In this action, even though the issues presented with those two causes of

13  action are somewhat related to the proofs required for the causes of action presented here, this action

14  includes a number of claims and issues that the Oklahoma Action will not touch. Here, GAT brings

15  four causes of action (Claims 1–4) to invalidate and/or render unenforceable the remaining claims of

16  the '098 and '188 Patents. Conversely, in the Oklahoma Action, there are no remaining affirmative

17  claims for patent infringement or invalidation; only MMI's request for declaratory relief and GAT's

18  affirmative defense regarding whether MMI committed inequitable conduct.

19        This action also presents antitrust claims under the *Sherman* Act, involving MMI's fraudulent

20  enforcement of its patents and attempts to enforce them, despite being aware that some claims of the

21  '188 Patents had been invalidated. No antitrust claims have been brought in the Oklahoma Action.

22  The antitrust claims brought here allege and will require a determination of additional issues, *e.g.,*

23  determining the appropriate market, whether MMI possessed market power, and whether MMI

24  attempted to monopolistically wield that market power, issues that have never been raised or

25  otherwise addressed in the Oklahoma Action.

26        This action also involves six causes of action (Claims 7–12) arising under California law that

27  have never been brought or raised in the Oklahoma Action. Notably, as the Parties briefed and argued

28  in relation to MMI's unsuccessful anti-SLAPP motion to strike—and the Court acknowledged [Dkt.

5

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANTS' MOTION TO TRANSFER VENUE**

APPX00410

48, p. 14]—the  underpinning of these California state claims implicates conduct beyond patent-related issues, namely statements that MMI made about the security and integrity of GAT's background security software and database that **have never been at issue in the Oklahoma Action**. Simply put, the determination of the discrete issue remaining in the Oklahoma Action, i.e., whether GAT committed inequitable conduct in its procurement of the '188 Patent, will have no effect on the majority of the claims that GAT brings here. As was the case in *Montana Environmental*, the causes of action and issues to be determined here are vastly broader than in the Oklahoma Action.

GAT seeks remedies in this action that are not on the table in the Oklahoma Action, where all the court has before it is issuing a determination about the truth or falsity of GAT's statements that MMI committed inequitable conduct in its procurement of the '188 Patent and any damages related to that determination. Here, GAT has asked for the following relief:

- A declaratory judgment that the '098 Patent is unenforceable for Defendants' inequitable conduct;

- A declaratory judgment that the '188 Patent is unenforceable for Defendants' inequitable conduct;

- A declaratory judgment that the '098 Patent is invalid;

- A declaratory judgment that the '188 Patent is invalid;

- A judgment in favor of Guardian declaring that Defendants have attempted to monopolize the Public Safety Background Investigation Management Software Market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2;

- A permanent injunction against Defendants, their respective officers, agents, servants, directors, and employees, and all persons in active concert or participation with each, from monopolizing and attempting to monopolize the relevant markets under Section 16 of the Clayton Act, 15 U.S.C. § 26;

- A permanent injunction against Defendants from enforcing or attempting to enforce any claims of any patent or patent application in the MMI Patent Portfolio or any claims of any patent or patent application that claims priority to any patent or patent application in the MMI Patent Portfolio;

**PLAINTIFF'S RESPONSE IN OPPOSITION** JDX00411
**TO DEFENDANTS' MOTION TO TRANSFER VENUE**

- A permanent injunction against Defendants from using any false or misleading statements which can or are likely to influence customers' purchasing decisions regarding any of Defendants' services or products;

- A judgment and order requiring Defendants to account to Guardian for all sales and profits from the sale of any of Defendants' services or products as a result of any false or misleading statements, or for any sum in addition to that amount the Court and/or jury awards;

- An award to Guardian of actual and compensatory damages, including but not limited to lost profits and attorneys' fees and costs, trebled by law, plus interest;

- A judgment and order requiring Defendants to disgorge their profits and other ill-gotten gains resulting from their wrongful conduct;

- A judgment and order for Guardian to be awarded punitive and/or enhanced damages because of Defendants' wanton and deliberate illegal acts committed with oppression, fraud, and malice;

- A judgment finding that this is an exceptional case and awarding attorneys' fees pursuant to 35 U.S.C. § 285; and

- A judgment and order allowing Guardian to recover all taxable costs of these actions, including reasonable attorneys' fees and both pre- and post-judgment interest.

[Dkt. 51, pp. 50–51]. It's demonstrably clear that the relief sought here far exceeds what's currently being asked for in the Oklahoma Action. Accordingly, this Court should find that there is no substantial overlap of issues and that the third requirement of the first-to-file analysis is not met.

### c. Even if the Court finds that MMI has satisfied its burden that all three first-to-file factors are met, the Court should exercise its discretion and retain jurisdiction over this action.

Even if all three requirements of the first-to-file rule are satisfied, it does not necessarily follow that applying the rule is appropriate, as the first-to-file rule is discretionary; accordingly, the court may disregard it in the interests of equity. *Adoma v. University of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1149 (E.D. Cal. 2010) (citing *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 622

PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO TRANSFER VENUE

(9th Cir. 1991)). "The circumstances under which an exception to the first-to-file rule typically will be made include bad faith, ... anticipatory suit, and forum shopping." *Alltrade*, 946 F.2d at 627–28. In applying the first to file rule, "courts are not bound by technicalities." *Church of Scientology of California v. U.S. Dept. of Army,* 611 F.2d 738, 750 (9th Cir.1979). The court's discretion is broad. In *Alltrade,* 946 F.2d at 628, the Ninth Circuit found that fairness considerations and equitable concerns could bar the application of the rule. In *Jumapao,* 2007 WL 4258636 at *3, the court noted that demonstrations of prejudice could also bar its application.

In *Adoma*, this Court found that an exception to the first-to-file rule was merited because the second-filed suit brought "additional theories of recovery" and sought "relief under California state law." 711 F. Supp. 2d at 1150. Similarly, in *Gardner v. GC Services, LP,* No. 10-cv-997-IEG (CAB), 2010 WL 2721271 (S.D. Cal. July 6, 2010), the district court followed the guidance of *Adoma* and declined to mechanically apply the first-to-file rule because "[e]ven if all of the 'first to file' factors weighed in favor of its application (which they do not), in light of the distinct California claims raised and relief requested in the [second-filed] action, the application of the 'first to file' rule would not result in any significant conservation of judicial resources." *Id.* *6

For all the reasons stated above, including that MMI chose to forum shop by invoking the jurisdiction of this Court before seeking transfer, such an exception is justified in this case.

### III.   CONCLUSION

Accordingly, this Court should elect to retain its jurisdiction over this matter and deny MMI's motion to transfer venue.

1    Dated:  June 20, 2025

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BOUTIN JONES INC.
Attorneys at Law

Robert D. Swanson
Daniel S. Stouder

and

DUNLAP CODDING PC
Attorneys at Law
Douglas J. Sorocco

and

RYAN WHALEY PLLC
Attorneys at Law

by: /s/ Evan Talley.
Evan W. Talley

Attorneys for Plaintiff

Guardian Alliance Technologies, Inc.

9

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO TRANSFER VENUE**

**BUCHALTER**
A Professional Corporation
Robert S. McWhorter (SBN: 226186)
Harry W.R. Chamberlain II (SBN: 95780)
Jarrett S. Osborne-Revis (SBN 289193)
500 Capitol Mall, Ste. 1900
Sacramento, California 95814
Telephone: (916) 899-1099
Email: rmcwhorter@buchalter.com
    hchamberlain@buchalter.com
    josbornerevis@buchalter.com

**RYLANDER & ASSOCIATES PC**
Kurt M. Rylander (Pro Hac Vice application pending)
406 West 12th Street
Vancouver, WA 98660
Telephone: (360) 750-9931
Email: rylander@rylanderlaw.com

Attorneys for Defendants
**Miller Mendel, Inc.** and
**Tyler Miller**

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| **Guardian Alliance Technologies, Inc.**, | Case No. 2:22-cv-01390-WBS-AC |
| Plaintiff, | |
| vs. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE TO THE WESTERN DISTRICT OF OKLAHOMA PURSUANT TO THE FIRST-TO-FILE DOCTRINE** |
| **Miller Mendel, Inc.** and **Tyler Miller**, | |
| Defendants. | |

Date:      July 21, 2025
Time:      1:30 p.m.
Judge:     Hon. William B. Shubb
Dept.:     Courtroom 5, 14th Floor
           501 I Street
           Sacramento, CA 95814

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 4

II.   PROCEDURAL HISTORY ............................................................................. 4

III.  ARGUMENT .................................................................................................... 5

    A.    The Inequitable Conduct Allegations Are Common and Fundamental to Both Actions ................................................................................................... 5

    B.    Guardian's "Broader Claims" Are Derivative, Not Distinct ................... 5

    C.    Guardian's Forum Shopping Cuts Against Its Position......................... 6

    D.    Judicial Economy and Consistency Strongly Favor Transfer ............... 6

    E.    Federal Circuit Law Strongly Favors Consolidation of Overlapping Patent Issues...................................................................................................... 8

IV.   CONCLUSION ................................................................................................. 9

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER          CASE NO. 2:22-CV-01390-WBS-AC

APPX00416

# TABLE OF AUTHORITIES

**Cases**

*Alltrade, Inc. v. Uniweld Prods., Inc.,*
   946 F.2d 622, 628 (9th Cir. 1991) ....................................................................... 6, 7

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas,*
   571 U.S. 49, 67, 134 S. Ct. 568, 584, 187 L. Ed. 2d 487 (2013) ............................. 7

*Communications Test Design, Inc. v. Contect, LLC,*
   952 F.3d 1356, 1362 (Fed. Cir. 2020) ....................................................................... 8

*Futurewei Technologies, Inc. v. Acacia Research Corp,*
   737 F.3d 704, 708-10 (Fed. Cir. 2013) ...................................................................... 8

*In re Nitro Fluids L.L.C.,*
   978 F.3d 1308, 1311 (Fed. Cir. 2020) ..................................................................... 8, 9

*Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.,*
   544 F. Supp. 2d 949 (N.D. Cal. 2008) ....................................................................... 5

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,*
   342 U.S. 180, 72 S. Ct. 219, 96 L. Ed. 200 (1952) ............................................. 5, 6, 7

*Key Equip. Fin. v. Fed. Express Corp.,* No. CV 14-7534-GW(AGRX), 2014 WL 12966963, at *7
   (C.D. Cal. Dec. 18, 2014) .......................................................................................... 6

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.,*
   787 F.3d 1237, 1240–41 (9th Cir. 2015) ................................................................... 5

*Markman v. Westview Instruments, Inc.,*
   517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996) ......................................... 8

*Pacesetter Sys., Inc. v. Medtronic, Inc.,*
   678 F.2d 93, 96 (9th Cir. 1982) ..................................................................... 5, 6, 7, 8

*Realtime Adaptive Streaming LLC v. Netflix, Inc.,*
   41 F.4th 1372, 1379 (Fed. Cir. 2022) ........................................................................ 6

*Regeneron Pharms., Inc. v. Merus N.V.,*
   864 F.3d 1343, 1350 (Fed. Cir. 2017) ....................................................................... 5

*Save Power Ltd. v. Syntek Fin. Corp.,*
   121 F.3d 947, 950 (5th Cir. 1997) .............................................................................. 5

*Southland Corp. v. Keating,*
   465 U.S. 1, 15, 104 S. Ct. 852, 860, 79 L. Ed. 2d 1 (1984) ...................................... 6

**Statutes**
28 U.S.C. §
1404 .............................................................................................................................. 9

FED. R. EVID.
201 ................................................................................................................................ 7

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER**    **CASE NO. 2:22-CV-01390-WBS-AC**

APPX00417

## I.   INTRODUCTION

The first-to-file rule exists to prevent precisely the kind of duplicative, inconsistent, and wasteful litigation that Guardian now seeks to pursue in two federal forums. Guardian's opposition offers no persuasive basis to override the strong presumption in favor of transfer. This case and the Western District of Oklahoma case ("Oklahoma Action") involve the same parties and same nucleus of facts: whether Defendants obtained and enforced patents through inequitable conduct. Consolidation is warranted to prevent duplicative litigation and inconsistent rulings. Judicial economy, comity, and established Federal Circuit precedent all support transfer.

## II.   PROCEDURAL HISTORY

The Oklahoma Action was filed by Miller Mendel, Inc. ("MMI") in 2018. Guardian was added on October 14, 2020. (Dkt. 58-1 (Oklahoma docket sheet nos. 103 & 104).) The Oklahoma court has presided over extensive pleadings, claim construction briefing, and dispositive motion practice. (*Id.*, (Oklahoma docket sheet nos. 15, 23, 25, 28, 29, 31, 43-46, 51-53, 55, 66, 83, 84, 93, 99, 103, 104, 112, 119, 122, 125, 126, 137, 138, 139, 148).) Meanwhile, this California action was filed in 2022 but has not advanced past the pleading stage. Guardian waited until **after** receiving a significant adverse ruling in the USPTO *Inter Partes Review* action, (see W.D. Okl. Dkt Nos. 97 & 97-1, filed July 27, 2020 (denying *inter partes* review for failure to show alleged prior art was publicly available to a person of ordinary skill in the art)), before bringing this action in California in 2022. Similarly, Guardian waited until **after** receiving a significant adverse ruling in Oklahoma on December 2, 2024, before bringing a motion in Oklahoma to transfer to this Court on May 8, 2025. Compare W.D. Okl. Dkt No. 137, filed December 2, 2024 (denying Guardian's motion to dismiss defamation claim: "The dissemination of information on the Internet to the public at large necessarily involves an audience wholly unconnected to the judicial process. . . . Such communications would not fall within Oklahoma's traditional scope of the litigation privilege nor further the policy goals of the privilege.") with W.D. Okl. Dkt No. 146, filed May 8, 2025 (Guardian Motion to Transfer Venue)).[1]

---

[1] Oklahoma Docket Nos. 97, 97-1, 137, and 146 are attached to the concurrently file Declaration of Kurt M. Rylander in Support of Reply.

## III.   ARGUMENT

### A.   The Inequitable Conduct Allegations Are Common and Fundamental to Both Actions

Guardian concedes that the Oklahoma Action includes claims related to inequitable conduct but argues that this action adds antitrust and California statutory claims. That argument is superficial. Guardian's claims here all arise from the same factual core: the alleged fraudulent procurement and enforcement of MMI's patents. Indeed, eight of the eleven claims in this action (Claims 1, 2, 5, 6, 7, 8, 9, and 10) explicitly or implicitly require the Court to determine whether Defendants engaged in inequitable conduct before the USPTO. Federal Circuit law governs the inequitable conduct inquiry and requires claim construction. *Regeneron Pharms., Inc. v. Merus N.V.*, 864 F.3d 1343, 1350 (Fed. Cir. 2017). To avoid conflicting rulings and ensure uniform application of patent law, those claims should be resolved in one forum. *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,* 342 U.S. 180, 72 S. Ct. 219, 96 L. Ed. 200 (1952); *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 (9th Cir. 1982).

### B.   Guardian's "Broader Claims" Are Derivative, Not Distinct

The antitrust and unfair competition claims here are not analytically distinct from the claims and defenses already pending in Oklahoma. Instead, they are derivative: they rely on the same (untrue) allegations that Defendants obtained their patent rights by fraud and enforced them in bad faith.

Guardian seeks to paint these claims as separate, but as courts have repeatedly held, the first-to-file rule applies where a later case merely restates the core controversy in different doctrinal terms. *See Save Power Ltd. v. Syntek Fin. Corp.,* 121 F.3d 947, 950 (5th Cir. 1997)*; Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240–41 (9th Cir. 2015) ("The issues need not be identical, only substantially similar."). Even if the relief sought is broader, where adjudication of the first-filed case will resolve the second, transfer is proper.

Courts routinely find transfer appropriate even when the second-filed case asserts additional causes of action, where those claims rely upon the same nucleus of operative fact. *See Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F. Supp. 2d 949 (N.D. Cal. 2008). The antitrust and

California claims here do not add complexity; they merely recast the same alleged inequitable conduct in alternative legal terms. Where adjudication of the first-filed case will resolve or moot the claims in the second-filed case, transfer is proper.

### C.    Guardian's Forum Shopping Cuts Against Its Position

Federal courts discourage forum shopping. *Southland Corp. v. Keating*, 465 U.S. 1, 15, 104 S. Ct. 852, 860, 79 L. Ed. 2d 1 (1984); *Realtime Adaptive Streaming LLC v. Netflix, Inc.,* 41 F.4th 1372, 1379 (Fed. Cir. 2022); *see also Kerotest Mfg. Co.,* 342 U.S. 180. Here, Guardian's forum shopping is manifest. Guardian waited until **after** the claim construction briefing was completed in Oklahoma in 2021 (Dkt 58-1 (Oklahoma Docket Nos. 116-122)), and **after** receiving an adverse ruling at the U.S. Patent & Trademark Office in 2020, before filing suit in California in 2022. Critically, Guardian only filed its motion to transfer in the Oklahoma court on May 8, 2025, **after** receiving an adverse ruling on Oklahoma law in connection with the defamation claim on December 2, 2024. (*Id.*, (Oklahoma Docket Nos. 137 and 146).) Now, Guardian opposes the transfer to Oklahoma and argues that this case should proceed in this forum.[2]

While application of the first-to-file rule is discretionary, the Ninth Circuit made clear that discretion should only be exercised in rare or compelling circumstances. *See Alltrade, Inc. v. Uniweld Prods., Inc.,* 946 F.2d 622, 628 (9th Cir. 1991); *Pacesetter Sys.,* 678 F.2d at 96. None of those circumstances apply here. Guardian's position is especially weak given that it previously sought transfer of the Oklahoma case to this Court. Its opposition to transfer now—after adverse outcomes in Oklahoma—reflects strategic forum selection motivated by unfavorable rulings, which is precisely what the first-to-file rule is designed to discourage. Here, Guardian's litigation conduct fits the pattern courts condemn: the attempt to avoid adverse rulings by switching forums is the "hallmark of forum shopping." *Key Equip. Fin. v. Fed. Express Corp.,* No. CV 14-7534-GW(AGRX), 2014 WL 12966963, at *7 (C.D. Cal. Dec. 18, 2014).

### D.    Judicial Economy and Consistency Strongly Favor Transfer

The Western District of Oklahoma has overseen extensive litigation on these issues for over

---

[2] Guardian's claim that it is Defendants who forum shop is belied by the fact that Defendants in their motion to dismiss specifically raised the first-to-file rule. (*See* Dkt 40, ECF pp. 17-20.)

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER**          **CASE NO. 2:22-CV-01390-WBS-AC**

APPX00420

five years. Claim construction briefing is complete (*see* Dkt 54-1, ECF p. 3; Dkt 58-1 (Oklahoma Docket Nos. 116, 117, 119, 122), of which the Court may take judicial notice. *See* FED. R. EVID. 201. The factual record is well developed. That court is familiar with the parties, patents, and procedural history. Moreover, the respective convenience between California and Oklahoma should be addressed to the court in the first-filed action, in this case, Oklahoma. *Alltrade*, 946 F.2d at 628; *Pacesetter Sys.,* 678 F.2d at 96.

Even if Guardian claims this action involves new or supplemental allegations, the controlling factual and legal issues have already been thoroughly vetted in Oklahoma. Transferring now avoids starting from scratch in a duplicative forum.

Whether the Oklahoma judge must apply California law to some claims, or this Court would have to apply Oklahoma law to others—such as defamation, on which the Oklahoma judge has already ruled—this is well within the routine competence of federal judges. Federal courts are regularly called upon to apply the laws of sister states when exercising diversity or supplemental jurisdiction. The possibility that an Oklahoma court may need to apply California law is not a reason to deny transfer, especially where that court is already deeply familiar with the facts, patents, and parties. See *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 67, 134 S. Ct. 568, 584, 187 L. Ed. 2d 487 (2013) ("[F]ederal judges routinely apply the law of a State other than the State in which they sit."); *see generally Kerotest Mfg. Co.,* 342 U.S. at 185 (Addressing the fear of lower courts' inability to correctly rule: "Such apprehension implies a lack of discipline and disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure.").

MMI's Anti-SLAPP motion does not alter the balance of the first-to-file rule. The Anti-SLAPP motion was a motion on the pleadings, before discovery or other substantive litigation progressed, intended to throw out a case that should not even be before this Court (or any other court). Although this Court denied MMI's motion, this does not mean that MMI has irrevocably committed to the jurisdiction of this Court as the most efficient forum. (*See* Order, Dkt 48, p. 6 ("However, either party may file a motion requesting a stay or transfer in favor of the Oklahoma Action.").)

Allowing this action to proceed separately risks inconsistent rulings on the validity and enforceability of the same patents. The Ninth Circuit has made clear that the possibility of conflicting judgments must be avoided:

> We agree with the district court that the goal of judicial efficiency would not have been served by accepting jurisdiction. Pacesetter correctly asserts that at the time Medtronic moved to dismiss the California action, neither action had proceeded past the pleading stage. However, permitting multiple litigation of these identical claims could serve no purpose of judicial administration, and the risk of conflicting determinations as to the patents' validity and enforceability was clear. No apparent bar existed to a presentation of Pacesetter's claims and defenses before the Florida court. That forum was capable of efficiently resolving all issues, and economic use of both courts' resources resulted from the California court's refusal to consider Pacesetter's claims.

*Pacesetter Sys., Inc.,* 678 F.2d at 96. Even if this Court were to retain jurisdiction, any ruling on patent validity here would create serious comity issues. If the Oklahoma court rules on inequitable conduct or claim scope under *Markman*,[3] and this Court reaches a conflicting conclusion, the result would be precisely the kind of inter-court conflict the first-to-file rule is designed to prevent. The Federal Circuit's preference for uniformity in patent rulings further heightens that risk.

**E.    Federal Circuit Law Strongly Favors Consolidation of Overlapping Patent Issues**

This case is governed by Federal Circuit precedent because it involves substantive patent law questions, specifically patent validity, inequitable conduct, and patent fraud. The Federal Circuit has made clear that where two cases involve overlapping patent issues and overlapping parties, the first-filed rule should be enforced to preserve judicial consistency and prevent interference with the first-filed court which could lead to conflicting rulings. *See Futurewei Technologies, Inc. v. Acacia Research Corp*, 737 F.3d 704, 708-10 (Fed. Cir. 2013); *see also Communications Test Design, Inc. v. Contect, LLC*, 952 F.3d 1356, 1362 (Fed. Cir. 2020). The first-to-file rule is favored absent compelling circumstances. *See In re Nitro Fluids L.L.C.*, 978 F.3d 1308, 1311 (Fed. Cir. 2020). "Unless the balance of transfer factors favors keeping the case in the second-filed court, there are no compelling circumstances to justify such an exception." (*Id.*) In *Nitro Fluids*, the Federal Circuit

---

[3]*Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996).

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER**    **CASE NO. 2:22-CV-01390-WBS-AC**

APPX00422

granted a mandamus petition, vacating a district court decision denying transfer of the second-filed action to the first-filed court. The Federal Circuit explained that the second-filed court improperly assessed the relative burdens to require the moving party to establish bases for transferring the case akin to 28 U.S.C. §1404 balancing analysis, rather than placing the burden on the nonmoving party to demonstrate compelling reasons to disregard the first-to-file rule. Guardian continues to argue that the first-to-file rule should be discarded because the second-filed forum is good enough and disregards the danger of conflicting rulings. This flips the analysis on its head, such that "the aim of the first-to-file rule would be impermissibly thwarted…"(*Id.*, at 1313.) In *Nitro Fluids*, even the fact that the plaintiff had filed both actions in the different court also did not matter. Where both the outcome of both cases will be materially affected by the same underlying facts and issues, the first-to-file rule should apply absent compelling circumstances establishing a need to continue the later-filed case in parallel. That principle compels transfer to Oklahoma, the first-filed court.

## IV.    CONCLUSION

For the foregoing reasons, and those set forth in its opening memorandum and supporting declaration, Defendants respectfully request that this Court transfer this action to the Western District of Oklahoma under the first-to-file doctrine. In the alternative, if the Court declines to transfer venue at this time, Defendants respectfully request that the action be stayed pending resolution of the overlapping issues in the Western District of Oklahoma.

Dated: June 27, 2025

**BUCHALTER**
A Professional Corporation

By:    /s/ Robert S. McWhorter
       Robert S. McWhorter
       Jarrett S. Osborne-Revis

**RYLANDER & ASSOCIATES PC**

Kurt M. Rylander

Attorneys for Defendants,
Miller Mendel, Inc. and Tyler Miller

**BUCHALTER**
A Professional Corporation
Robert S. McWhorter (SBN: 226186)
Harry W.R. Chamberlain II (SBN: 95780)
Jarrett S. Osborne-Revis (SBN 289193)
500 Capitol Mall, Ste. 1900
Sacramento, California 95814
Telephone: (916) 899-1099
Email: rmcwhorter@buchalter.com
        hchamberlain@buchalter.com
        josbornerevis@buchalter.com

**RYLANDER & ASSOCIATES PC**
Kurt M. Rylander (Pro Hac Vice application pending)
406 West 12th Street
Vancouver, WA 98660
Telephone: (360) 750-9931
Email: rylander@rylanderlaw.com

Attorneys for Defendants
**Miller Mendel, Inc.** and
**Tyler Miller**

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| **Guardian Alliance Technologies, Inc.**, <br><br> Plaintiff, <br><br> vs. <br><br> **Miller Mendel, Inc.** and **Tyler Miller**, <br><br> Defendants. | Case No. 2:22-cv-01390-WBS-AC <br><br> **DECLARATION OF KURT M. RYLANDER IN SUPPORT OF DEFENDANTS' RESPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE TO THE WESTERN DISTRICT OF OKLAHOMA PURSUANT TO THE FIRST-TO-FILE DOCTRINE** <br><br> Date:    July 21, 2025 <br> Time:    1:30 p.m. <br> Judge:   Hon. William B. Shubb <br> Dept.:   Courtroom 5, 14th Floor <br>          501 I Street <br>          Sacramento, CA 95814 |

**BUCHALTER**
A PROFESSIONAL CORPORATION
SACRAMENTO

**DECLARATION OF KURT RYLANDER--
ISO DEFENDANTS' REPLY ISO MOTION TO
TRANSFER**

**CASE NO. 2:22-CV-01390-WBS-AC**

APPX00424

### DECLARATION OF KURT RYLANDER

I, KURT M. RYLANDER, declare:

1.      I am counsel for Defendants Miller Mendel, Inc. and Tyler Miller (collectively "Miller Mendel") and I make the following statements with personal knowledge.

2.      The following are true and correct copies of pleadings filed in the Oklahoma Action and attached hereto:

a.   **Exhibit A**-Miller Mendel's July 20, 2020 Notice of Decision by the United States Patent & Trademark Office Patent Trial & Appeal Board Denying Institution of Inter Partes Review, along with the copy of that decision (W.D. Okl. Dkt Nos. 97, 97-1);

b.   **Exhibit B**-Order dated December 2, 2024 by the Western District of Washington Denying the Motion to Dismiss filed by the Defendants (W.D. Okl. Dkt No. 137);

c.   **Exhibit C**-Guardian Alliance Technologies, Inc.'s May 8, 2025 Motion to Transfer int eh Western District of Oklahoma to the E.D of California (W.D. Okl. Dkt No. 146).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on 26 of July 2025 in Vancouver, Washington.

/s/ Kurt M. Rylander_____

KURT M. RYLANDER, WSBA 27819

(original signature retained by attorney Kurt M. Rylander)

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

DECLARATION OF KURT RYLANDER--
ISO DEFENDANTS' REPLY ISO MOTION TO
TRANSFER                                    CASE NO. 2:22-CV-01390-WBS-AC

APPX00425

# EXHIBIT A

Case 25-147   Document: 3   Page: 440   Filed: 08/26/2025
Case 5:18-cv-00990-JD   Document 370   Filed 07/27/20   Page 1 of 3
Case 2:22-cv-01390-WBS-AC   Document 59-1   Filed 06/27/25   Page 4 of 52

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MILLER MENDEL, INC., a Washington Corporation; TYLER MILLER, an Oregon State resident, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. CIV-18-990-JD |
| | ) | LEAD CASE |
| THE CITY OF OKLAHOMA CITY, a municipal corporation, | ) ) | (Consolidated with |
| | ) | Case No. MC-20-0004-JD) |
| Defendant. | ) | |
| | ) | |
| GUARDIAN ALLIANCE TECHNOLOGIES, INC., | ) ) | |
| | ) | |
| Movant. | ) | |

## PLAINTIFFS' NOTICE OF DECISION ON *INTER PARTES* REVIEW

On October 10, 2019, Guardian Alliance Technologies, Inc. ("GAT" or "Guardian") filed a petition for *Inter Partes* Review (IPR) of the '188 Patent with the Patent Trial and Appeal Board (PTAB) of the United States Patent and Trademark Office.

On March 26, 2019, the PTAB issued its decision Denying institution of IPR. On April 27, 2020, GAT filed a request for rehearing and submitted a request for Precedential Opinion Panel Review.

On June 16, 2020, the PTAB issued an order Denying the request for Precedential Opinion Panel Review.

On July 27, 2020, the PTAB issued an order Denying the request for rehearing. A copy of the PTAB order is attached.

Case 25-147    Document 3    Page 441    Filed 08/26/2025
Case 5:18-cv-00990-JD    Document 94    Filed 07/27/20    Page 2 of 3
Case 2:22-cv-01390-WBS-AC    Document 59-1    Filed 06/27/25    Page 5 of 52

Date: July 27, 2020

Respectfully submitted,

s/ Todd A. Nelson
Todd A. Nelson, OBA #15317
Paul E. Rossler, OBA #21796
GABLEGOTWALS
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, OK 74103
Telephone:    (918) 595-4800
Facsimile:    (918) 595-4990
E-mail: tnelson@gablelaw.com
prossler@gablelaw.com

*Admitted Pro Hac Vice:*
Kurt M. Rylander, Bar No. 27819
Mark E. Beatty
RYLANDER & ASSOCIATES PC
406 West 12th Street
Vancouver, WA 98660
Telephone:    (360) 750-9931
Facsimile:    (360) 397-0473
E-mail: rylander@rylanderlaw.com
beatty@rylanderlaw.com

Attorneys for Plaintiffs

{2164625;}

APPX00428

Case 25-1673, Document 23, Page: 442, Filed: 08/26/2025
Case 5:18-cv-00590-JD Document 97-1 Filed 07/27/20 Page 2 of 16
Case 2:22-cv-01390-WBS-AC Document 59-1 Filed 06/27/25 Page 7 of 52

Trials@uspto.gov Paper 27
571-272-7822 Date: July 27, 2020

# UNITED STATES PATENT AND TRADEMARK OFFICE

_____

# BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

## GUARDIAN ALLIANCE TECHNOLOGIES, INC.,
Petitioner,

v.

## TYLER MILLER,
Patent Owner.

_____

IPR2020-00031
Patent 10,043,188 B2

_____

Before SALLY C. MEDLEY, DAVID C. McKONE,
and JOHN R. KENNY, *Administrative Patent Judges*.

McKONE, *Administrative Patent Judge*.

DECISION
Denying Petitioner's Request on Rehearing of Decision on Institution
*37 C.F.R. § 42.71(d)*

# I.   INTRODUCTION

Guardian Alliance Technologies, Inc. ("Petitioner") filed a Petition (Paper 1, "Pet.") requesting *inter partes* review of claims 1, 5, 9, and 15 of U.S. Patent No. 10,043,188 B2 (Ex. 1001, "the '188 patent"). Pet. 1. Tyler Miller ("Patent Owner") filed a Preliminary Response (Paper 7, "Prelim. Resp."). The Petition raised two grounds, the first based in part on the Background Solutions[1] video and the second based in part on the POBITS[2] reference (Ex. 1004). Pet. 4. Upon consideration of the Petition and the Preliminary Response, as to the first ground, we determined that Petitioner had not shown sufficiently that Background Solutions was publicly accessible, and, thus, prior art to the '188 patent. Paper 23 ("Dec."), 9–17. As to the second ground, we determined that Petitioner had not shown sufficiently that POBITS was publicly accessible, and, thus, prior art to the '188 patent. Dec. 17–20.

Petitioner asks us to reconsider our determinations that Background Solutions and POBITS were not publicly accessible and, thus, were not prior art to the '188 patent. Paper 24 ("Req."). For the reasons given below, we decline to modify our Decision.

---

[1] Petitioner submitted Exhibit 1002 as the Background Solutions video and subsequently moved to correct it through submission of a substitute video (Exhibit 1027), a motion that Patent Owner opposed. Papers 11 (Motion to Correct), 16 (Opposition). Concurrently, Patent Owner moved to terminate based on the incorrectly submitted Exhibit 1002. Papers 10 (Motion to Terminate), 12 (Opposition). We granted Petitioner's Motion to Correct for the limited purpose of determining that Petitioner had not shown sufficiently that Exhibit 1027 was a printed publication and dismissed the Motion to Terminate as moot. Paper 23, 20.

[2] Peace Officer Background Investigation Tracking System ("POBITS").

Petitioner requested review by the Precedential Opinion Panel ("POP"). Req. 1; Ex. 3001. POP review was denied on June 16, 2020. Paper 26.

## II. ANALYSIS

### A. *Legal Background*

When rehearing a decision on institution, we review the decision for an abuse of discretion. *See* 37 C.F.R. § 42.71(c) (2019). An abuse of discretion may be indicated if a decision is based on an erroneous interpretation of law, if a factual finding is not supported by substantial evidence, or if the decision represents an unreasonable judgment in weighing relevant factors. *See Star Fruits S.N.C. v. U.S.*, 393 F.3d 1277, 1281 (Fed. Cir. 2005); *Arnold P'ship v. Dudas*, 362 F.3d 1338, 1340 (Fed. Cir. 2004); *In re Gartside*, 203 F.3d 1305, 1315–16 (Fed. Cir. 2000). The burden of showing that the Institution Decision should be modified is on Petitioner, the party challenging the Decision. *See* 37 C.F.R. § 42.71(d) (2019). In addition, "[t]he request must specifically identify all matters the party believes [we] misapprehended or overlooked, and the place where each matter was previously addressed in a motion, an opposition, or a reply." *Id.*

Whether a reference qualifies as a "printed publication" is a legal conclusion based on underlying factual findings. *See Nobel Biocare Servs. AG v. Instradent USA, Inc.*, 903 F.3d 1365, 1375 (Fed. Cir. 2018) (citing *Jazz Pharm., Inc. v. Amneal Pharm., LLC*, 895 F.3d 1347, 1356 (Fed. Cir. 2018)). The underlying factual findings include whether the reference was publicly accessible. *See id.* (citing *In re NTP, Inc.*, 654 F.3d 1279, 1296 (Fed. Cir. 2011)).

APPX00431

Case 5:18-cv-00990-JD Document 973-1 Filed 08/26/2025 Page 445 of 551
Case 2:20-cv-01390-WBS-AC Document 59-1 Filed 06/27/25 Page 10 of 52
IPR2020-00031
Patent 10,043,188 B2

"The determination of whether a reference is a 'printed publication'
under 35 U.S.C. § 102(b) involves a case-by-case inquiry into the facts and
circumstances surrounding the reference's disclosure to members of the
public." *In re Klopfenstein*, 380 F.3d 1345, 1350 (Fed. Cir. 2004).
"Because there are many ways in which a reference may be disseminated to
the interested public, 'public accessibility' has been called the touchstone in
determining whether a reference constitutes a 'printed publication' bar under
35 U.S.C. § 102(b)." *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331,
1348 (Fed. Cir. 2016) (quoting *In re Hall*, 781 F.2d 897, 898–99 (Fed. Cir.
1986)). "A given reference is 'publicly accessible' upon a satisfactory
showing that such document has been disseminated or otherwise made
available to the extent that persons interested and ordinarily skilled in the
subject matter or art exercising reasonable diligence, can locate it." *SRI
Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186, 1194 (Fed. Cir. 2008)
(quoting *Bruckelmyer v. Ground Heaters, Inc.*, 445 F.3d 1374, 1378
(Fed. Cir. 2006)).

What constitutes a "printed publication" must be determined in light
of the technology employed. *See* S*amsung Elecs. Co. v. Infobridge Pte.
Ltd.*, 929 F.3d 1363, 1369 (Fed. Cir. 2019) (citing *In re Wyer*, 655 F.2d 221,
226 (CCPA 1981)). Public accessibility requires more than technical
accessibility. *See id.* (citing *Acceleration Bay, LLC v. Activision Blizzard
Inc.*, 908 F.3d 765, 773 (Fed. Cir. 2018)). "[A] work is not publicly
accessible if the only people who know how to find it are the ones who
created it." *Id.* at 1372. On the other hand, "a petitioner need not establish
that specific persons actually accessed or received a work to show that the
work was publicly accessible." *Id.* at 1374. "In fact, a limited distribution
can make a work publicly accessible under certain circumstances."

Case 25-1437, Document 3, Page: 446, Filed 08/26/2025

Case 2:23-cv-00990-JLS Document 97-91 Filed 07/27/20 Page 3 of 16
Case 2:20-cv-01390-WBS-AC    Document 59-1    Filed 06/27/25    Page 11 of 52
IPR2020-00031

Patent 10,043,188 B2

*Id.* (quoting *GoPro, Inc. v. Contour IP Holding LLC*, 908 F.3d 690, 694 (Fed. Cir. 2018)).

"To prevail in a final written decision in an *inter partes* review, the petitioner bears the burden of establishing by a preponderance of the evidence that a particular document is a printed publication." *Hulu, LLC v. Sound View Innovations, LLC*, IPR2018-01039, Paper 29 at 11 (PTAB Dec. 20, 2019) (precedential). "[A]t the institution stage, the petition must identify, with particularity, evidence sufficient to establish a reasonable likelihood that the reference was publicly accessible before the critical date of the challenged patent and therefore that there is a reasonable likelihood that it qualifies as a printed publication." *Id.* at 13.

### B.  *Printed Publication Status of Background Solutions and POBITS*

For Background Solutions, Petitioner relied primarily on the third-party testimony of Tom Ward, the founder and co-owner of Background Solutions, LLC, to argue that Mr. Ward presented the Background Solutions video at national background investigation seminars and made the video available on a website, all prior to the critical date of the '188 patent. Pet. 18–24; Ex. 1009 (Ward Declaration).  We found that Mr. Ward provided "vague and conclusory" testimony that lacked basic details such as "how many such seminars he presented at, when or where those seminars were, who attended the seminars, or who watched the 2009 Video at the seminars." Dec. 11–13.  As to availability of Background Solutions on a website, we found that Petitioner's evidence, including Mr. Ward's testimony, did not show when Background Solutions was posted to the website, did not explain whether and how the website was indexed, and did

Case: 25-1570   Document: 3   Page: 447   Filed: 08/26/2025
Case 2:25-cv-00990-JLS   Document 9-1   Filed 07/29/25   Page 6 of 16
Case 2:20-cv-01390-WBS-AC   Document 59-1   Filed 06/27/25   Page 12 of 52
IPR2020-00031
Patent 10,043,188 B2

not provide any other information on how a skilled artisan would have located the reference. *Id.* at 13–17.

As to POBITS, Petitioner relied primarily on the third party testimony of Kingsley Klosson (Ex. 1014) and an Internet Archive capture (Ex. 1004) to argue that POBITS was available on an Internet website prior to the critical date of the '188 patent. Pet. 24. We found that, even if we credited Mr. Klosson's testimony, it did not allege enough facts to conclude that POBITS was publicly accessible. Dec. 17–19.

Petitioner's Request for Rehearing is based on four alleged mistakes: (1) we overlooked or misapprehended the standard for instituting an *inter partes* review when a petitioner relies on "non-traditional, electronic publications"; (2) we overlooked or misapprehended the difficulties involved in obtaining evidence from third parties at the institution stage; (3) because we did not resolve the parties' dispute as to the level of skill in the art, we misapprehended the significance of the third party witness testimony; and (4) we misapplied or misapprehended the level of proof necessary, at the institution stage, to show the public accessibility of a document on a public website. Req. 1–2.

### 1. Non-Traditional Electronic Publications and the Difficulties of Obtaining Third-Party Evidence

Petitioner's first two allegations, that we misapprehended the institution standard for non-traditional, electronic publications and the difficulties of obtaining third-party evidence pre-institution, are related. In short, Petitioner argues that we held its primary evidence of the public accessibility of Background Solutions and POBITS, third-party declarations, to an incorrectly high standard.

Case 3:18-cv-00990-JD Document 97-1 Filed 07/27/20 Page 2 of 16
Case 2:25-cv-01390-WBS-AC Document 59-1 Filed 06/27/25 Page 13 of 52
IPR2020-00031
Patent 10,043,188 B2

Petitioner contends that we did not recognize the "inherent difficulties" petitioners face in establishing the printed publication status of "non-traditional, electronic publications." Req. 3–4. Petitioner argues that *Hulu* addressed the "relative simplicity" of establishing a book housed in a library as publicly accessible but did not address the "added difficulties involved with non-traditional, electronic publications." *Id.* at 4–5 (citing *Hulu*, at 2–4). According to Petitioner, parties in its position face disadvantages such as the absence of hard copies on library shelves, lack of librarians ready to testify, and difficulties of obtaining the voluntary cooperation of third-party witnesses. *Id.* at 5–6. Petitioner argues that we abused our discretion by effectively holding Petitioner to a preponderance of the evidence standard at the institution stage. *Id.* at 6–7. Petitioner contends that its third-party witness testimony is "strong indicia" of public accessibility that meets the "totality of the evidence" standard set forth in *Hulu. Id.* at 7.

We are not persuaded. Although we are sympathetic to the difficulties a party might encounter in obtaining the cooperation of third parties while drafting a petition, the Statute and our Rules require a petitioner to set forth its case with particularity in the petition and to support that case with evidence. *See* 35 U.S.C. § 312(a)(3) ("A petition filed under section 311 may be considered only if— . . . (3) the petition identifies, in writing and *with particularity*, each claim challenged, the grounds on which the challenge to each claim is based, and *the evidence that supports the grounds for the challenge to each claim*, including— . . . (B) affidavits or declarations of supporting evidence . . . ." (emphasis added)); 37 C.F.R. § 42.104 (b). *Hulu* does not distinguish between "traditional" publications, such as books in a library, and "non-traditional" publications. In the case of

Patent 10,043,188 B2

videos and websites, as well as books in a library, "at the institution stage, the petition must identify, with particularity, evidence sufficient to establish a reasonable likelihood that the reference was publicly accessible before the critical date of the challenged patent." *Hulu*, at 13. According to the *Hulu* panel, this "is a higher standard than mere notice pleading, but . . . it is lower than the 'preponderance' standard to prevail in a final written decision." *Id.* This is the standard to which we held Petitioner's evidence. Dec. 12–20.

It is the "particularity" required by *Hulu* that the Petition lacks. As we explained in the Decision, neither Petitioner nor Mr. Ward provided enough specificity to determine when Background Solutions was presented at seminars, when those seminars occurred, or who attended the seminars. Dec. 17. Thus, there is no persuasive evidence presented now from which we might later conclude that Background Solutions was publicly accessible by virtue of its display at seminars. Similarly, neither third-party witness provides any particularity as to how a skilled artisan would have located Background Solutions or POBITS on public websites. *Id.* at 17–19.

Petitioner contends that we "fail[ed] to recognize the serious differences" between developing a record at trial and making a showing in a Petition prior to institution. Req. 8. Petitioner argues that we should consider not only the evidence presented in the Petition but also evidence that may come out at trial. *Id.* at 8–9. Petitioner notes that the Board regularly grants motions to submit supplemental information under 37 C.F.R. § 42.123. *Id.* at 9. Indeed, *Hulu* recognizes that a petitioner may submit rebuttal evidence in a reply and move to submit supplemental information under Rule 42.123. *Hulu*, at 7–8. Petitioner argues that we erred by failing to consider what evidence Petitioner likely would have developed at trial. Req. 10.

Case 5:18-cv-00090-JD Document 9-41 Filed 07/27/20 Page 3 of 16
Case 2:25-cv-00090-WBS-AC Document 59-1 Filed 06/27/25 Page 15 of 52
IPR2020-00031
Patent 10,043,188 B2

As to the third-party declarations in particular, Petitioner's argument
essentially is that it obtained the evidence that it could from Mr. Ward and
Mr. Klosson and believes that they would provide more specific testimony if
compelled during trial. Req. 10–12. As to Mr. Ward's testimony, Petitioner
argues that, although "informed" by Petitioner's counsel, this testimony was
produced voluntarily and uncompelled. *Id.* at 10. According to Petitioner,
"Mr. Ward did not feel compelled to find, provide, or otherwise refresh his
recollection about specific information requested by Guardian's counsel."
*Id.* Petitioner argues that the same is true for Mr. Klosson's testimony.
*Id.* at 11 ("The same argument applies to the Board's criticisms of
Mr. Klosson's Declaration. He is a third party with no duty or obligation to
incur the time or expense of voluntarily cooperating with Guardian.").

Petitioner misapprehends the role of rebuttal evidence and
supplemental information. As *Hulu* notes, rebuttal evidence must respond to
arguments raised by Patent Owner, rather than be evidence necessary to
make Petitioner's prima facie case. *Hulu*, at 7 (citing 37 C.F.R. § 42.23).
The evidence Petitioner presents in the Petition does not make a prima facie
case of public accessibility. For example, Mr. Ward does not testify that he
presented Background Solutions to anyone in any context prior to the critical
date of the '188 patent. Even if we fully credit all of Mr. Ward's testimony,
it is not sufficient to make Petitioner's prima facie case. Petitioner does not
cite any authority for the proposition that it can simply allege public
accessibility and later support those allegations with supplemental
information adduced in a trial. That is akin to the "mere notice pleading"
that *Hulu* confirms is insufficient for institution of a trial. *Hulu*, at 13.

Petitioner did not, in the Petition, present persuasive evidence that
would lead us to believe that additional favorable evidence likely would be

uncovered through the discovery process. In fact, the Request confirms that the Petition presents no more than bare allegations of the public accessibility of Background Solutions and POBITS along with the hope that discovery in a trial would reveal evidence sufficient to prove those allegations. Pet. 19–24. For example, Petitioner "believes that once Mr. Ward and his company, Background Solutions, are compelled to gather and produce evidence, Mr. Ward will be able to specifically testify as to 'when or where the seminars occurred or who attended them' and the specific date by which the 2009 Video was posted on Background Solutions' website." Req. 11; *see also id.* ("The same argument applies to the Board's criticisms of Mr. Klosson's Declaration. He is a third party with no duty or obligation to incur the time or expense of voluntarily cooperating with [Petitioner].")). Yet, the Petition presents no persuasive evidence indicating what it expects to uncover and why. Petitioner's mere belief that Mr. Ward and Mr. Klosson will testify favorably in the future is more akin to notice pleading, rather than the "particularity" required by *Hulu*.

Thus, we did not apply an incorrect evidentiary standard at institution or misapprehend *Hulu*'s application to so-called "non-traditional" references.

### 2. *Level of Skill in the Art*

Petitioner argues that if we had resolved the level of skill correctly in our Decision, we would have concluded that the seminars at which Mr. Ward presented were attended by skilled artisans and, thus, that there is a reasonable likelihood that Background Solutions was publicly accessible. Req. 12–14.

Case 3:18-cv-00590-JD Document 97-9 Filed 07/17/20 Page 152 of 16
Case 2:20-cv-01390-WBS-AC    Document 59-1    Filed 06/27/25    Page 17 of 52
IPR2020-00031
Patent 10,043,188 B2

In the Petition, citing to the Declarations of Mr. Ward and Mr. Klosson, Petitioner argued that a skilled artisan "would have had at least a high school degree, or equivalent thereof, and at least one to three years of experience in the relevant field, which includes background investigation methods, systems, and technologies." Pet. 5–6 (citing Exs. 1009, 1014). Petitioner argued that "Mr. Ward's presentation and demonstration of the Background Solutions video to a national conference of background investigators, i.e. those interested and skilled in the subject matter, qualifies it as a printed publication." *Id.* at 20–21. Patent Owner argued that "a police officer isn't the typical [person of ordinary skill in the art] that produces 'web based software applications,'" and that we should "adopt[] a level of skill appropriate for the software industry." Prelim. Resp. 7.[3] In the context of Background Solutions, we declined to resolve this dispute because Mr. Ward does not testify as to who attended the unidentified "law enforcement and background investigation seminars" at which he presented Background Solutions to "seminar attendees." Dec. 13 n.4; Ex. 1009 ¶¶ 7–9.

Petitioner argues that if we had resolved the level of skill in its favor, we would have understood the Declarations of Mr. Ward and Mr. Klosson differently (and more favorably to Petitioner). Req. 12–14. Specifically,

---

[3] Petitioner now states that "skilled artisans for the '188 patent include law enforcement officers (like Messrs. Ward, Klosson, and Miller)." Req. 14. It is unclear whether Petitioner is now advocating for a lower level of skill (law enforcement officers), or arguing that some law enforcement officers might have higher levels of skill (e.g., a law enforcement officer who also is a background investigator with at least one to three years of experience in background investigation methods, systems, and technologies). Pet. 5–6, 20–21; Req. 14.

Case 3:18-cv-00390-JD Document 97-9 Filed 07/29/20 Page 12 of 16
Case 2:20-cv-01390-WBS-AC   Document 59-1   Filed 06/27/25   Page 18 of 52
IPR2020-00031
Patent 10,043,188 B2

Petitioner argues that "Mr. Ward's Declaration refers to 'law enforcement
and background investigation seminars,' not general law enforcement
seminars," and that Petitioner "understood Mr. Ward to be testifying that
those attending the seminars where he presented the 2009 Video had
backgrounds in law enforcement and/or background investigation." *Id.* at
12–13. According to Petitioner, we were misled by Patent Owner's
arguments and, as a result, misunderstood that these seminars were no more
than trade shows attended by police officers. *Id.* at 13 (citing Prelim. Resp.
7). Nevertheless, Petitioner argues, "[e]ven if the conferences were 'nothing
more than trade shows,' [Petitioner] still believes that the evidence shows
that police officers are skilled artisans in the context of the '188 patent." *Id.*
Petitioner argues that if we "had at least considered [Petitioner's] position
that skilled artisans for the '188 patent include law enforcement officers
(like Messrs. Ward, Klosson, and Miller), then suddenly Mr. Ward's
testimony about presenting the 2009 Video at seminars for law enforcement
(as well as background investigators) becomes all the more complete." *Id.* at
14.

Petitioner misunderstands our determination. We did not implicitly
adopt a level of skill requiring software industry experience and determine
that only police officers attended the law enforcement and background
investigation seminars at which Mr. Ward presented. We determined that
the evidence did not support a finding that skilled artisans attended the
seminars under any statement of the level of skill because Mr. Ward
provided no information about who attended. Dec. 13 & n.4. Petitioner did
not argue, in the Petition, that we should infer a level of skill of the attendees
based on Mr. Ward's statement that he had presented at "law enforcement
and background investigation seminars." Ex. 1009 ¶ 9. Thus, we could not

Case 3:18-cv-00390-JD Document 97-9 Filed 07/29/20 Page 454 of 551
Case 2:22-cv-01390-WBS-AC    Document 59-1    Filed 06/27/25    Page 19 of 52
IPR2020-00031
Patent 10,043,188 B2

have overlooked such an argument.  In any case, it would not have been
persuasive, because Mr. Ward's vague statement does not imply any specific
backgrounds for seminar attendees.

Moreover, even if Mr. Ward had been specific about the backgrounds
of the attendees, he still did not testify that he presented at any seminar prior
to the critical date of the '188 patent.  Dec. 13.  Thus, even if we were to
accept Petitioner's new argument, Petitioner still has not presented sufficient
evidence of public accessibility of Background Solutions.

### 3. *Public Accessibility of a Document Posted to a Website*

Petitioner contends that the 2010 copyright date on the face of
POBITS, along with Mr. Klosson's testimony that he authored and uploaded
POBITS onto his company's website by the end of 2010, is enough to show
a reasonable likelihood that POBITS was publicly accessible prior to the
critical date of the '188 patent.  Req. 15.  In the Decision, we determined
that, even if we credit Mr. Klosson's testimony fully, simply showing that a
reference was posted to an Internet website is not enough to show public
accessibility by skilled artisans.  Dec. 18–20 (citing *Blue Calypso*, 815 F.3d
at 1349–50); *see also Samsung*, 929 F.3d at 1369 ("[W]hile indexing is not
required to show that a work is publicly accessible, some evidence that a
person of ordinary skill could have reasonably found the website and then
found the reference on that website is critical.").

Petitioner now argues that MPEP[4] § 2128(II)(B) sets forth the
standard for determining public accessibility of a document posted to a

---

[4] Manual of Patent Examining Procedure ("MPEP").

Case 3:18-cv-00390-JD Document 97-3 Filed 08/26/2025 Page 455 of 16
Case 2:20-cv-01390-WBS-AC Document 59-1 Filed 06/27/25 Page 20 of 52
IPR2020-00031
Patent 10,043,188 B2

website. Req. 14–15. Petitioner did not make this argument in the Petition. Thus, we could not have overlooked it. Nevertheless, it is not persuasive.

MPEP § 2128(II)(B) provides: "Prior art disclosures on the Internet or on an online database are considered to be publicly available as of the date the item was publicly posted."[5] We discussed in the Decision, both for Background Solutions and POBITS, why, under Federal Circuit law, simply showing that a document was posted on the Internet is not sufficient to show that the document was publicly accessible. Dec. 13–20. We do not read the MPEP as inconsistent with Federal Circuit law. Indeed, MPEP § 2128(II)(B) expressly references § 2128(I), which makes clear that a reference is not shown to be publicly accessible in the absence of a showing that it was made available to the extent that skilled artisans, exercising reasonable diligence, could have located it. *See* MPEP § 2128(I) (citing *In re Wyer*, 655 F.2d 221 (CCPA 1981)); *see also* MPEP § 2128(II)(A) ("An electronic publication, including an online database or Internet publication (e.g., discussion group, forum, digital video, and social media post), is considered to be a 'printed publication' within the meaning of 35 U.S.C. 102(a)(1) and pre-AIA 35 U.S.C. 102(a) and (b) provided the publication was accessible to persons concerned with the art to which the document relates." (citing *Wyer*, 655 F.2d at 227)). Thus, MPEP § 2128(II)(B) provides guidance on the date a reference will be given during examination, provided that it is shown to be publicly accessible. It does not purport to provide the underlying standard for showing whether a reference was accessible to the relevant public.

---

[5] Petitioner appears to cite to the current version of the MPEP. However, the 8th edition, Revision 8, of MPEP § 2128, in force on April 6, 2012, provides similar discussion of public accessibility.

Patent 10,043,188 B2

Petitioner also cites to several Board decisions that it contends contradict our institution decision.  Req. 3–4, 14.  Petitioner did not cite these cases in the Petition or argue their relevance.  Pet. 18–24.  Thus, we could not have misapprehended or overlooked them.  In any case, these cases are non-precedential and were decided before *Hulu*.  Our Decision considered Petitioner's evidence in light of the standards set forth in *Hulu* and Federal Circuit precedent.  Petitioner does not persuade us that we misunderstood or misapplied the law.

## III. CONCLUSION

For the foregoing reasons, Petitioner has not demonstrated that we misapprehended or overlooked its arguments or abused our discretion in denying the Petition.

## IV. ORDER

In consideration of the foregoing, it is hereby:

ORDERED Petitioner's Request for Rehearing is *denied*.

IPR2020-00031
Patent 10,043,188 B2

FOR PETITIONER:

Jordan Sigale
Douglas Sorocco
DUNLAP CODDING, P.C.
jsigale@dunlapcodding.com
dsorocco@dunlapcodding.com

FOR PATENT OWNER:

Richard McLeod
MCLEOD LAW LLC
law@rickmcleod.com

Kurt Rylander
RYLANDER & ASSOCIATES PC
Rylander@rylanderlaw.com

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

MILLER MENDEL, INC. a Washington )
corporation, and TYLER MILLER, an )
Oregon state resident, )
         )
        Plaintiffs, )
         )
v. )       Case No. CIV-18-00990-JD
         )
THE CITY OF OKLAHOMA CITY, a )
municipal corporation, and )
GUARDIAN ALLIANCE )
TECHNOLOGIES, INC., a Delaware )
corporation, )
         )
        Defendants. )

## ORDER

Before the Court is Defendant Guardian Alliance Technologies, Inc.'s Partial

Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim

Upon Which Relief Can Be Granted ("Motion") [Doc. No. 112]. Defendant Guardian

Alliance Technologies, Inc. ("GAT") moves under Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6) to dismiss Plaintiffs' defamation claim in Count 2 of the Second

Amended Complaint ("SAC") [Doc. No. 104]. Plaintiffs have responded in opposition

("Response") [Doc. No. 114], and GAT filed a reply [Doc. No. 115]. For the reasons

stated below, the Court denies the Motion.

## I.    BACKGROUND

Plaintiffs sought leave to amend their complaint sounding in patent infringement

against the City of Oklahoma City ("OKC") to add claims for patent infringement,

defamation, and a declaration of no inequitable conduct/patent fraud against GAT, which is the company that provides OKC with the allegedly infringing background investigation software platform. *See* [Doc. Nos. 57, 57-1]; *see also* SAC ¶ 15. OKC opposed the motion for leave to amend as to the patent infringement claim against GAT based largely on the United States Supreme Court's decision in *TC Heartland LLC v. Kraft Foods Group Brands, LLC*, 581 U.S. 258 (2017), asserting that amendment as to this claim would be futile because Oklahoma would be an improper patent venue. *See* [Doc. No. 65]. The Court agreed that GAT could not be sued for patent infringement in this venue, but permitted Plaintiffs to file a SAC asserting claims against GAT for defamation and declaration of no inequitable conduct/patent fraud. [Doc. No. 103 at 1].

Subsequently, Plaintiffs filed their SAC alleging a patent infringement claim against OKC under 35 U.S.C. § 271 in Count 1. Plaintiffs allege a defamation claim under Oklahoma law against GAT in Count 2, and they seek a declaration against GAT in Count 3 under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and under the patent laws of the United States, 35 U.S.C. § 1 et seq., that Plaintiffs have not committed patent fraud or engaged in inequitable conduct with respect to United States Patent No. 10,043,188 B2 ("'188 Patent"). Plaintiffs' claims in Counts 2 and 3 against GAT arise from a statement GAT posted on a website[1] on August 22, 2019, titled "The Truth About Miller Mendel." *See* [Doc. No. 104-2].

---

[1] *See* https://thetruthaboutmillermendel.com/ [Doc. No. 104-2].

APPX00447

GAT asserts that Plaintiffs' defamation claim should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction because the SAC does not allege an amount in controversy as to any claim and Plaintiffs cannot rely on supplemental jurisdiction under 28 U.S.C. § 1367(a). Motion at 2. Additionally, GAT contends that Plaintiffs fail to state a claim for defamation under Rule 12(b)(6) because GAT, as a witness to the action, has an absolute litigation privilege under Oklahoma law with respect to statements that relate to or were made during or in anticipation of litigation. *See id.*

In response, Plaintiffs argue that they have sufficiently pled subject matter jurisdiction, and that jurisdiction is proper under either supplemental or diversity jurisdiction. Response at 16. Plaintiffs also contend that Oklahoma's litigation privilege does not apply here. *See id.* at 9.

## II.    <u>LEGAL STANDARDS</u>

### A.    **Rule 12(b)(1)**

The Court must decide whether it has federal subject matter jurisdiction over Plaintiffs' defamation claim before it can decide the Rule 12(b)(6) issue. Rule 12(b)(1) authorizes a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P 12(b)(1). Rule 12(b)(1) motions take one of two forms: a facial or factual attack. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015). A facial attack questions the sufficiency of the complaint's allegations. *Id.* In reviewing a facial challenge, a district court must accept the allegations in the complaint as true. *Id.* However, in a factual attack, the moving party may go beyond the allegations contained

3

in the complaint and challenge the facts upon which subject matter jurisdiction depends. *Id.* A district court may not presume the truthfulness of the complaint's factual allegations when reviewing a factual attack on subject matter jurisdiction. *Id.* Rather, a court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. *Id.*

Once challenged, the burden of proving subject matter jurisdiction is on the party alleging subject matter jurisdiction, here, the Plaintiffs. *United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 797–98 (10th Cir. 2002); *see Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008) ("The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction."). In this case, the Court construes the motion under Rule 12(b)(1) as a facial attack. *Cf. Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (explaining that "the district court has broad discretion in determining whether to accept materials beyond the pleadings"); *see also Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010) (construing the motion as a facial challenge and applying the same standards under Rule 12(b)(1) that are applicable to a 12(b)(6) motion to dismiss). Thus, the Court accepts the factual allegations in the SAC as true for its Rule 12(b)(1) analysis.

## B.      Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff

APPX00449

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a complaint does not need detailed factual assertions, a pleading that offers only "labels and conclusions" or "pleads facts that are merely consistent with a defendant's liability" will not suffice. *Id.* (internal quotation marks and citations omitted). The burden is on the plaintiff to plead factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Under this standard, the Court accepts all well-pled factual allegations as true and views the allegations in the light most favorable to the nonmoving party. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). Conclusory statements, however, are not entitled to the assumption of truth and courts are free to disregard them. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

## III.   <u>ANALYSIS</u>

### A.   **The Court has supplemental jurisdiction over Plaintiffs' defamation claim against GAT.**

Federal courts are "'courts of limited jurisdiction [and] possess only that power authorized by Constitution and statute.'" *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Congress has bestowed upon the courts the power to hear controversies arising under federal law—federal question jurisdiction—and controversies arising between citizens of different states with the requisite amount in controversy—diversity jurisdiction. *See* 28 U.S.C. §§ 1331, 1332.

APPX00450

Additionally, once a federal court has original jurisdiction over some claims in the action, "it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy" under 28 U.S.C. § 1367(a). *Exxon Mobil Corp.*, 545 U.S. at 552. Supplemental jurisdiction, as codified at § 1367, collectively refers to the common-law doctrines of ancillary, pendent, and pendent-party jurisdiction. Federal courts may exercise pendent jurisdiction over state law claims when "state and federal claims . . . derive from a common nucleus of operative fact." *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Supplemental jurisdiction also gives federal courts latitude to hear a cause of action after the introduction of third parties, whose insertion lack independent grounds for federal jurisdiction, "when those parties share a common interest in the outcome of the litigation and are logical participants in it." *See Harjo v. City of Albuquerque*, 307 F. Supp. 3d 1163, 1186 (D.N.M. 2018) (citing *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 375 n.18 (1978)).

A court's exercise of supplemental jurisdiction is discretionary. *See Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011); *see also City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997) (explaining that pendent jurisdiction is discretionary and not a litigant's right). Section 1367(c) identifies four instances in which a court "may decline to exercise supplemental jurisdiction over a claim":

    (1) the claim raises a novel or complex issue of State law,

    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

    (3) the district court has dismissed all claims over which it has original jurisdiction, or

APPX00451

(4) in exceptional circumstances, there are other compelling reasons for
   declining jurisdiction.

*See* 28 U.S.C. § 1367(c). In considering whether to exercise supplemental jurisdiction,

courts traditionally consider "judicial economy, convenience and fairness to litigants."

*United Mine Workers*, 383 U.S. at 726.

Here, Plaintiffs' patent infringement claim against OKC and declaration of no

patent fraud and defamation claims against GAT "derive from a common nucleus of

operative fact." *See id.* at 725. In Oklahoma, the elements of defamation are (1) a

statement exposing the plaintiff to public hatred, contempt, ridicule, or disgrace; (2) the

defendant communicated the statement to someone other than the plaintiff; (3) that

person reasonably understood the statement to be about the plaintiff; (4) the statement

was false; (5) the defendant did not exercise the care which a reasonably careful person

would use under the circumstances to determine whether the statement was true or false;

and (6) the statement caused the plaintiff to suffer financial loss or damage to the

plaintiff's reputation. *See* OUJI Instruction No. 28.3. Plaintiffs allege that GAT made

false statements on a public website—viewed by Plaintiffs' potential and existing

customers—that Plaintiffs committed fraud on the United States Patent and Trademark

Office in the prosecution of Plaintiffs' patents, including the '188 Patent. SAC ¶ 27; *see*

*also* [Doc. No. 104-2]. The determination of whether these are false or defamatory

statements turns on whether Plaintiffs lawfully obtained the '188 Patent. If Plaintiffs

lawfully obtained the '188 Patent, then the allegedly defamatory statements would be

false. Thus, from an evidentiary standpoint, resolution of the defamation claim would

7

involve at least some of the same evidence as the patent infringement and declaration of no patent fraud claims.

Further, Plaintiffs' defamation claim does not raise a novel or complex issue of state law; it does not substantially predominate over the claim over which the Court has original jurisdiction; the other claim over which the Court has original jurisdiction currently remains; and there are no exceptional circumstances or compelling reasons to decline jurisdiction. *See* 28 U.S.C. § 1367(c). In other words, allowing Plaintiffs' defamation claim to proceed serves the interests of judicial economy, at least at this juncture in the proceeding.

Accordingly, the Court will exercise supplemental jurisdiction over Plaintiffs' defamation claim.

### B.   Plaintiffs have plausibly alleged a defamation claim against GAT under Rule 12(b)(6), and Oklahoma's litigation privilege is not applicable here.

"Oklahoma has long recognized the litigation privilege under which attorneys, parties, jurors, and witnesses are immune from defamation liability for statements made in the course of judicial or quasi-judicial proceedings, so long as the statements are relevant to the proceeding." *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 335 F.3d 1161, 1166 (10th Cir. 2003) (citing *Samson Inv. Co. v. Chevaillier*, 988 P.2d 327, 329–30 (Okla. 1999)). Oklahoma extends "this privilege to statements made in anticipation of litigation." *Id.* (citing *Kirschstein v. Haynes*, 788 P.2d 941 (Okla. 1990)). "As long as the speaker or writer of the defamatory communication has an actual subjective good faith belief that litigation is seriously contemplated[,] the privilege

8

attaches whether or not he has a good faith belief in the truth of the communication."
*Kirschstein*, 788 P.2d at 952.

The question of whether a communication is privileged is a question of law for the
Court to decide. *See Samson, Inv. Co.*, 988 P.2d at 329. "[T]he litigation privilege is not a
license to defame," but rather, it "applies only when [1] the communication is . . .
relevant or has some relation to a proposed proceeding and [2] circumstances surrounding
the communication have some relation to the proposed proceeding." *Id.* at 330–31. The
second inquiry concentrates "to a large extent on determining to whom the publication
was made." *Kirschstein*, 788 P.2d at 951 & n.26 (noting that a degree of protection is
offered "to an alleged victim of defamation for publication to the public at large or to
third parties unconnected with the proposed proceeding").

"The privilege may be lost by unnecessary or unreasonable publication to one for
whom the occasion is not privileged. Thus, unnecessary publication to the news media
may result in loss of the privilege, as well as publication to those wholly unconnected
with the judicial process." *Id.* at n.27 (citations omitted); *see also Kleier Advert., Inc. v.
Premier Pontiac, Inc.*, 921 F.2d 1036, 1044 (10th Cir. 1990) (applying *Kirschstein* and
not extending Oklahoma's litigation privilege to statements "directed via news media to
the public, an audience wholly unconnected to the judicial process").

Plaintiffs allege that GAT published false and defamatory statements on a public
website, https://thetruthaboutmillermendel.com/, which was viewed by Plaintiffs'
existing and potential customers. SAC ¶¶ 27, 31, 35. The dissemination of information on
the Internet to the public at large necessarily involves an audience wholly unconnected to

9

the judicial process. *See Kleier*, 921 F.2d at 1044; *Kirschstein*, 788 P.2d at 951 n.27. Such

communications would not fall within Oklahoma's traditional scope of the litigation

privilege nor further the policy goals of the privilege.

Thus, the Court rejects GAT's argument that Plaintiffs' defamation claim should

be dismissed under Rule 12(b)(6).

## IV.    **CONCLUSION**

For these reasons, the Court DENIES Defendant Guardian Alliance Technologies,

Inc.'s Partial Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to

State a Claim Upon Which Relief Can Be Granted [Doc. No. 112]. Defendant Guardian

Alliance Technologies, Inc., shall file an Answer to the Second Amended Complaint

within 14 days of the entry of this Order.

The Court also ORDERS the parties to file a joint status report within 28 days of

this Order, addressing the impact of a related proceeding, which the United States

Supreme Court recently denied the petition for writ of certiorari, *see Miller Mendel, Inc.*

*v. City of Anna*, 107 F.4th 1345 (Fed. Cir. 2024), *cert. denied*, No. 24-439, 2024 WL

4874683 (Nov. 25, 2024), and the impact on the claim construction briefing. *See* [Doc.

Nos. 117, 119, 122].[2] The joint status report shall include any proposed scheduling order

---

[2] The Court's understanding is the Federal Circuit's recent decision in *Miller Mendel, Inc. v. City of Anna*—which affirmed the decision of the United States District Court for the Eastern District of Texas concluding that claims 1, 5, and 15 of the '188 Patent do not claim patent-eligible subject matter under 35 U.S.C. § 101—addressed the same asserted patent claims at issue in this action. *See also* [Doc. No. 117-2]. Should this resolve the claim construction issues before this Court, the parties shall so state in their joint status report. Should this not resolve the claim construction issues before this Court, the parties must explain in their joint status report what remains as to the claim

deadlines to bring this action to a prompt conclusion. Based on the recent update in a related proceeding, the parties are also ordered to discuss settlement or formal ADR and to notify the Court in their joint status report if formal ADR is sought. Finally, should the parties request a status conference with the Court, they shall notify the Court in the joint status report.

IT IS SO ORDERED this 2nd day of December 2024.

_____

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

---

construction briefing and whether that briefing requires supplementation based on developments in related proceedings. Regarding other claims, the parties shall confer and propose a schedule that will promptly resolve any remaining claims.

APPX00456

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

MILLER MENDEL, INC., a Washington )
Corporation; and TYLER MILLER, an )
Oregon state resident, )
     )
         Plaintiffs, )
v. )    Case No. CIV-18-990-JD
     )
THE CITY OF OKLAHOMA CITY, a )
municipal corporation; and GUARDIAN )
ALLIANCE TECHNOLOGIES, INC., a )
Delaware corporation, )
     )
         Defendants. )

## DEFENDANT GUARDIAN ALLIANCE TECHNOLOGIES, INC.'S MOTION TO TRANSFER VENUE AND MEMORANDUM IN SUPPORT

Evan W. Talley (OBA No. 22923)
**RYAN WHALEY, PLLC**
400 North Walnut Ave.
Oklahoma City, OK  73104
Telephone: (405) 239-6040
Email: etalley@ryanwhaley.com

-and-

Douglas J. Sorocco (OBA No. 17347
**DUNLAP CODDING PC**
609 W. Sheridan Avenue
Oklahoma City, OK  73102
Telephone:   (405) 607-8600
E-mail: dsorocco@dunlapcodding.com

***ATTORNEYS FOR DEFENDANTS***
***THE CITY OF OKLAHOMA CITY***
***and GUARDIAN ALLIANCE***
***TECHNOLOGIES, INC.***

Defendant Guardian Alliance Technologies, Inc. ("GAT")[1] brings this Motion to Transfer Venue and Memorandum in Support and states as follows:

## **INTRODUCTION**

The above-captioned matter ("Oklahoma Action") began as a patent infringement case brought by Miller Mendel, Inc. and its owner, Tyler Miller (collectively "MMI") against the City of Oklahoma City, a customer of GAT, for the City's use of GAT's background investigation management software, which MMI alleged infringed U.S. Patent No. 10,043,188 ("the '188 Patent"). MMI subsequently asserted claims against GAT for defamation and sought a declaratory judgment of no inequitable conduct in the prosecution of the '188 Patent. Now, MMI seeks to dismiss its patent infringement claims against the City of Oklahoma City, which would leave only the claims against GAT remaining in this action. For the reasons set forth below, including judicial economy, convenience of the parties and witnesses, and the interests of justice, GAT respectfully requests this Court transfer this case to the United States District Court for the Eastern District of California pursuant to 28 U.S.C. § 1404(a), where a related case between the parties, *Guardian All. Techs. v. Miller Mendel, Inc., et al.,* 2:22-cv-01390 WBS AC ("the E.D. Cal. Action"), is currently pending.

---

[1] Defendant The City of Oklahoma City does not join the present motion to transfer, as MMI has moved for leave to file a third amended complaint which would dismiss all claims against The City of Oklahoma City. [Dkt. 139].

1

## BACKGROUND

In October 2018, MMI initiated this present action, alleging infringement of United States Patent No. 10,043,188, entitled "Background Investigation Management Services") ("the '188 Patent"). MMI's infringement claims against OKC arose from OKC's use of GAT's background investigation platform (the "Guardian Platform"). In October 2020, MMI filed its Second Amended Complaint, which included additional claims for defamation against GAT and sought a declaration of no inequitable conduct/ patent fraud. *See* Dkt. 104, ¶¶ 26–39. This case is just one of several actions MMI filed concerning the '188 Patent and the Guardian Platform. In February 2021, MMI filed a substantively identical patent infringement action in the United States District Court for the District of Oregon, No. 3:21-cv-00168-SB (the "Oregon Action"), against Washington County, Oregon (a GAT customer). Dkt. 118. Three months later, in May 2021, MMI initiated another action in the United States District Court for the District of Alaska against the State of Alaska, No. 3:21-cv-00129-HRN (the "Alaska Action"), another GAT customer, asserting the same patent claims against the same accused product. Dkt. 123.

In December 2021, MMI then brought patent infringement claims in the United States District Court for the Eastern District of Texas against the City of Anna, Texas, No. 2:21-cv-00445-JRG (the "Texas Action")—also a GAT customer—involving the identical patent, claims, and accused product. Dkt. 129. In that case, the district court found the asserted claims to be invalid, a decision subsequently affirmed by the Federal Circuit [Dkt. 135], and the United States Supreme Court denied MMI's petition for certiorari. [Dkt. 142].

After the conclusion of the Texas Action, MMI sought leave to file a Third Amended Complaint in the present case [Dkt. No. 143], which would withdraw its patent infringement claim against the City of Oklahoma City, while retaining its claims against GAT for defamation and seeking a declaratory judgment of no inequitable conduct. Dkt. 139. MMI's motion for leave to amend is currently pending before the Court. The remaining claims are independent of the patent infringement claim that MMI intends to withdraw. *Id.* p. 2 ("Upon amendment, OKC will no longer be a party to this action. The remaining claims against GAT are independent from the patent infringement claim to be withdrawn.").

In August 2022, after invalidation of the asserted claims in the Texas Action, GAT initiated an action against MMI and Miller in the United States District Court for the Eastern District of California, seeking a declaratory judgment of unenforceability and invalidity of U.S. Patent Nos. 9,070,098 and 10,043,188, violation of § 2 of the Sherman Act, violations of California's unfair competition and false advertising laws, and claims for tortious interference with contracts, tortious interference with business advantage, and trade libel. On December 8, 2022, the E.D. Cal. Action was stayed pending resolution of Defendants' appeal of the invalidation of the asserted claims of the '188 Patent in the Texas Action. [E.D. Cal. Action, Dkt. 34]. The district court lifted the stay following the Federal Circuit's affirmance of that invalidation and the Supreme Court of the United States' denial of Defendants' petition for writ of *certiorari*. *Id.* Dkt. 36. On March 7, 2025, MMI renewed a special motion to strike under California's anti-SLAPP laws [*id.* Dkt. 41] and a 12(b)(6) motion to dismiss. [*Id.* Dkt. 40]. On April 30, 2025, following complete briefing and a

hearing on those motions, the E.D. Cal. district court denied MMI's special motion to strike, granted-in-part MMI's motion to dismiss,[2] and ordered the parties to submit a status report by May 21, 2025, regarding whether the parties request a pretrial scheduling order. Ex. 1, E.D. Cal. Order on MMI's Motions to Strike and Dismiss, a true and correct copy of which is attached hereto. The E.D. Cal. Action is moving forward without delay.

The present action should be transferred to the Eastern District of California in the interests of justice and for the convenience of the parties involved.

## ARGUMENTS AND AUTHORITIES

### I. LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a district court may transfer an action "[f]or the convenience of parties and witnesses, [and] in the interest of justice…to any other district or division where it might have been brought." *See Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010). The purpose of § 1404(a) is "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. Barge F.B.L.—585*, 364 U.S. 19, 26-27 (1960)). "The district court is vested with considerable discretion in determining whether transfer is appropriate." *DP Precise, LLC v. Phoenix Ins. Co.*, 2013 WL 2378561, *1 (D. Colo. 2013).

---

[2] The E.D. Cal. court granted MMI's motion to dismiss on only two (trade libel and false advertising under California state law) of the eleven claims brought in the E.D. Cal. Action. [Ex. 1, pp. 24–25]. With respect to those two claims, the E.D. Cal. court specifically granted GAT leave to amend to allege special damages. [*Id.*]. The E.D. Cal. court denied MMI's motion to dismiss as to all other claims.

In evaluating a motion under § 1404(a), the Tenth Circuit has established several factors for district courts to evaluate:

(1) the plaintiff's choice of forum; (2) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure the attendance of witnesses; (3) the cost of making the necessary proof; (4) the enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (6) difficulties that may arise from congested dockets; (7) the possibility of the existence of questions arising in the area of conflict of laws; (8) the advantage of having a local court determine questions of local law; and (9) all other considerations of a practical nature that make a trial easy, expeditious and economical. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir.1991).

## II. THIS MATTER SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT OF CALIFORNIA.

This case is transferable to the Eastern District of California. The case may have been brought in that district in the first instance, as the only remaining claims in the present action are directed at GAT, whose principal place of business is located in Stockton, California—within the Eastern District of California. With the upcoming dismissal of all claims against OKC, Oklahoma no longer has any particularized nexus to this case. Both convenience and fairness favor transferring this case to the Eastern District of California.

"The initial concern of the Court in a §1404(a) proceeding is whether the action might have been brought in the first instance in the transferee district." *ROC, Inc. v. Progress Drillers, Inc.*, 481 F.Supp. 147, 151 (W.D. Okla. 1979). As stated previously,

GAT has its principal place of business in the Eastern District of California. Thus, venue is proper in that district under 28 U.S.C. § 1391(b). The Eastern District of California also has subject matter jurisdiction over the claims at issue because the parties are citizens of different states and the matter in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. The Eastern District of California also has federal question subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338 over MMI's request for a declaratory judgment of no inequitable conduct because it involves a disputed "substantial questions of patent law." *Laboratory Corp. of America Holdings v. Metabolite Laboratories, Inc.*, 599 F.3d 1277, 1284 (Fed. Cir. 2010) (citing *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 808–09 (1988); and *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700–01 (2006)). That claim is reflective of claims for declaratory judgments of unenforceabilty of the '098 and '188 Patents that GAT has already alleged in the E.D. Cal. Action. Ex. 2, E.D. Cal. Complaint, ¶¶ 128–135 (*e.g.* "[GAT] seeks a judgment declaring the claims of the '188 Patent are unenforceable under the doctrine of inequitable conduct") (exhibits omitted).

### (A) Plaintiff's Choice of Forum is Not Dispositive

Notwithstanding MMI's status as plaintiffs, this Court should accord its choice of forum minimal weight. As the Tenth Circuit has observed, "[c]ourts accord little weight to a plaintiff's choice of forum where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum." *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010) (internal quotations omitted).

Following the City of Oklahoma City's dismissal, this action's remaining claims and issues will lack any substantial nexus to the State of Oklahoma that would justify maintaining venue in this jurisdiction. MMI's remaining claims will consist of (1) a claim for a declaratory judgment of no inequitable conduct in the prosecution of the '188 Patent; and (2) a defamation claim arising from statements published by GAT that MMI engaged in inequitable conduct during the prosecution of the '188 Patent. [Dkt. 139]. Resolution of the declaratory judgment claim would effectively dispose of the defamation claim, as both hinge on the same underlying factual determination. *See* Dkt. 137, p. 7 ("The determination of whether these are false or defamatory statements turns on whether Plaintiffs lawfully obtained the '188 Patent. If Plaintiffs lawfully obtained the '188 Patent, then the allegedly defamatory statements would be false"). The central issue—whether inequitable conduct occurred during the prosecution of the '188 Patent—bears no material connection to Oklahoma. The patent prosecution occurred before the United States Patent and Trademark Office, while the allegedly defamatory statements were published online with no particular geographic targeting toward Oklahoma.

MMI's decision to file in this district was predicated solely on its original claims against the City of Oklahoma City, which MMI seeks to dismiss from this action. As such, that decision no longer carries any legitimate justification for maintaining venue in this district. Without the City as a defendant, the remaining dispute between MMI and GAT lacks any meaningful connection to Oklahoma. Therefore, transfer to the Eastern District of California, where GAT, until the end of 2024, maintained its principal place of business

and where it has initiated a separate action against MMI, would serve the interests of justice and judicial efficiency.

**(B) Accessibility of Witnesses and Sources of Proof Favors Transfer**

The accessibility of witnesses and sources of proof strongly weighs in favor of transfer. MMI's remaining claims are limited to a claim for a declaratory judgment of no inequitable conduct and its defamation claim. These claims directly mirror GAT's claims in the E.D. Cal. Action, which include, *inter alia*, a claim for a declaration of unenforceability of the '188 Patent for inequitable conduct. [Ex. 2, E.D. Cal. Action Complaint, ¶¶ 132–135. Both of MMI's remaining claims turn on the same legal question: whether MMI misrepresented or omitted material information during the prosecution of the '188 Patent with the intent to deceive the USPTO. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). The evidence necessary to resolve these competing claims will necessarily focus on the activities, employees, and documents of MMI—all of which are located in the State of Washington, which is significantly closer to the Eastern District of California than the Western District of Oklahoma. For instance, any claim alleging inequitable conduct (or the absence thereof) will require evidence regarding representations made to the USPTO by MMI's corporate officers and patent counsel, none of whom reside or otherwise conduct business in Oklahoma. Similarly, regarding the defamation claim, all witnesses with relevant information, specifically GAT employees and officers, are not residents of Oklahoma. *See* the concurrently-filed Declaration of Adam Anthony ("Anthony Decl."), ¶ 9. It would be more convenient for all witnesses involved if this action were transferred to California. *See Nw. Animal Hosp., Inc.*

*v. Earnhardt*, 452 F. Supp. 191, 194 (W.D. Okla. 1977) (finding transfer of venue proper where the majority of defendants' witnesses did not reside in Oklahoma and their testimony was "essential to the determination of the issues involved in this case."); *Nat'l Sur. eCorp. v. Robert M. Barton Corp.*, 484 F. Supp. 222, 225 (W.D. Okla. 1979) ("[I]t would seem that Defendants would be extremely inconvenienced if they were required to defend this action in this forum. The issues presented are primarily factual in nature, requiring documentation and witnesses which are located in Texas.").

Although GAT is not yet in a position to identify each and every witness who may have information pertaining to the remaining issues in this case, GAT is currently unaware of a single potential witness residing in Oklahoma who could be called to provide competent testimony regarding MMI's intent to deceive the USPTO, the materiality of the misrepresented or omitted information, or the veracity of GAT's statements about MMI's prosecution of the '188 Patent. Rather, the most knowledgeable witnesses in this lawsuit are likely to be the Washington-based officers of MMI, **who** may testify about the prosecution of the '188 Patent and the materiality of the documents and information submitted to or withheld from the USPTO. Additionally, six of GAT's twelve regular personnel members remain based in California, including GAT's founder and president, who resides within the Eastern District of California. Thus, the witnesses with relevant and material evidence necessary to establish MMI's claims reside outside Oklahoma, making transfer appropriate and more convenient for all parties involved.

**(C) Cost of Making Necessary Proof Favors Transfer**

If litigated in Oklahoma, presenting the required evidence in this case will be costly. As discussed above, the majority of witnesses with relevant testimony to the issues in this case are located in Oregon, Washington, and/or California. Both parties' business would be disrupted if employees and officers are required to travel to this district for litigation activities. Further, all documents concerning the prosecution of the '188 Patent are likely located in Washington. Thus, this factor weighs in favor of transfer to the Eastern District of California.

**(D) Enforceability of a Judgment Favors Transfer**

If a judgment is obtained in this case, it must be enforced outside of Oklahoma. GAT owns no assets in Oklahoma. *See* Anthony Decl., ¶ 10. GAT has no property in and has no bank accounts in Oklahoma. *Id.* ¶ 11. The place where any judgment would be enforced is in California because California is the location of any GAT assets. *Id.* ¶ 12. Because it would be necessary to enforce a judgment against GAT in California, it would be more convenient to litigate this case in California.

**(E) Relative Advantages and Obstacles to a Fair Trial**

GAT anticipates receiving a fair trial in either the Eastern District of California or the Western District of Oklahoma. Accordingly, this factor is neutral and does not weigh against transfer.

**(F) Difficulties Arising from Congested Dockets Favor Transfer**

Although the proposed transferee district may have a higher level of docket congestion than the present district, this factor should not weigh against transfer in this case.[3] Docket congestion is but one of several factors to be considered and is rarely dispositive in determining whether transfer is appropriate. See *P & S Bus. Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 808 (11th Cir. 2003) ("Although docket congestion, if proven, may be an appropriate consideration in a § 1404 motion to transfer, case law does not suggest that docket congestion is, by itself, a dispositive factor.); *see also SQIP, LLC v. Cambria Co., LLC*, 728 F. Supp. 3d 447, 456 (E.D. Tex. 2024) (describing court congestion as "most speculative factor."). Additionally, there is nothing to suggest that the Eastern District of California is not well-equipped to manage its caseloads effectively, ensuring that any potential delay would be minimal and not prejudicial to either party. Indeed, in California the Defendants filed a motion to strike under California's anti-SLAPP statute and a motion to dismiss—both of which were briefed over a span of six weeks from March 7, 2025, to April 21, 2025. The district court conducted a hearing on those motions on April 28, 2025, and issued its Order dealing with all the issues raised in the two motions on April 30, 2025. Therefore, the relative congestion of the transferee district does not and should not preclude transfer in this instance.

---

[3] *See* Ex. 3, *U.S. District Courts- Combined Civil and Criminal*, United States Courts, *Federal Court Management Statistics* (December 31, 2024), available at https://www.uscourts.gov/data-news/data-tables/2024/12/31/federal-court-management-statistics/n-a-1.

## (G) Conflicts of Laws

The conflicts-of-laws factor is neutral in this case. While MMI has asserted at least one state law claim, namely libel in violation of Okla. Stat. tit. 12, § 1441, the relatively straightforward nature of that claim diminishes the significance of this factor. As the substantive law applicable to this claim is substantially similar under Oklahoma and California law,[4] and both jurisdictions have competent courts capable of adjudicating such matters, the choice of forum does not present a material conflicts-of-laws issue. *See Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010).

## (H) Advantage of Having Local Court Determine Questions of Local Law

Although courts prefer an action to be adjudicated by a court sitting in the state of the governing substantive law (*Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1170 (10th Cir. 2010)), the Eastern District of California is fully competent to adjudicate this matter, including MMI's state law claim. Here, the Eastern District of California has a special interest in resolving this case because GAT is organized in California and, until the end of 2024, maintained its offices and headquarters within the Eastern District of California. Anthony Decl., ¶ 6. Despite moving its headquarters to Reno, Nevada, GAT

---

[4] Under California law, the elements of a libel claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or cause special damage. *Bryant v. Tulare County*, No. 1:16-CV-1542-LJO-SKO, 2016 WL 6996476, at *3 (E.D. Cal. Nov. 29, 2016). Under Oklahoma law, the elements for a libel claim are (1) a false and defamatory statement, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the published, and (4) either the actionability of the statement irrespective of special damage (*per se*), or the existence of special damage (*per quod*). *Mitchell v. Griffin Television, LLC*, 2002 OK CIV APP 115, ¶ 5, 60 P.3d 1058, 1061.

remains a California corporation. *Id.* ¶ 8. As discussed, MMI's defamation claim will be effectively resolved by a determination on its claim for declaratory judgment of no inequitable conduct—which is a claim that arises under the patent laws of the United States, 35 U.S.C. § 101 *et seq.*, and the Federal Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202). This factor favors, therefore, the transfer to the Eastern District of California.

### (I) All Other Considerations Favor Transfer

Courts possess broad discretion to consider other factors "of a practical nature that make a trial easy, expeditions, and economical." *Chrysler Credit Corp. v. Country Chex , Inc.*, 928 F.2d 1509, 1516 (10th Cir.1991). Considerations of practical factors that promote efficient and economical litigation overwhelmingly support transfer to the Eastern District of California. Until very recently, GAT was headquartered in California, is still incorporated there, and key witnesses supporting its defenses also reside there. Anthony Decl., ¶¶ 4–9. Moreover, MMI is headquartered in Seattle, Washington [Ex. 4, which is a true and correct copy of the "Contact" page from MMI's website, available at https://www.millermendel.com/contact-us/ and last accessed on May 8, 2025], which is significantly closer to the Eastern District of California than the Western District of Oklahoma. The law firm that prosecuted MMI's patents before the USPTO, which is necessarily involved in essentially all claims of GAT's claims of inequitable conduct, is also located in Washington. [Ex. 5, which is a true and correct copy of the "Contact" page for the Rylander Firm available at https://rylanderlaw.com/contact/ and last accessed on May 8, 2025].

California is the logical and convenient forum for all claims and defenses alleged by the parties. Regarding judicial efficiency, it would be inefficient for the same parties to litigate nearly the same issues in two different places. Transferring venue to the Eastern District of California will preserve the parties' resources by preventing concurrent or subsequent litigation of substantially the same issues. Similarly, it will avoid this Court and the California court from wasting resources, duplicating work, or creating inconsistencies. For instance, in the California Action, MMI's 12(b)(6) motion to dismiss and special anti-SLAPP motion to strike the claims required the California court to already familiarize itself with the facts and issues relevant to this case, specifically with regard to the inequitable conduct issue. *See* Ex. 1 hereto. The E.D. Cal. court heard and issued a ruling on those motions within eight weeks from MMI's refiling of those motions on March 7, 2025. MMI will not be unduly prejudiced by transferring this action to California.

Given the substantial factual overlap between this action and the California Action arising from similar conduct occurring in the context of the same underlying patent prosecution, there is a compelling need to consolidate these matters in a single forum. Transferring venue to the Eastern District of California is the most efficient means of achieving this goal.

## **CONCLUSION**

For the foregoing reasons, according to 28 U.S.C. § 1404(a), this action should be transferred to the United States District Court for the Eastern District of California.

Dated: May 8, 2025                    Respectfully submitted,

                                     */s/ Evan W. Talley*
                                     Evan W. Talley (OBA No. 22923)
                                     **RYAN WHALEY, PLLC**
                                     400 North Walnut Ave.
                                     Oklahoma City, OK  73104
                                     Telephone: (405) 239-6040
                                     Email: etalley@ryanwhaley.com

                                     **-and-**

                                     Douglas J. Sorocco, OBA # 17347
                                     **DUNLAP CODDING PC**
                                     609 W. Sheridan Avenue
                                     Oklahoma City, OK  73102
                                     Telephone:   (405) 607-8600
                                     E-mail: dsorocco@dunlapcodding.com

                                     ***ATTORNEYS FOR DEFENDANTS***
                                     ***THE CITY OF OKLAHOMA CITY***
                                     ***and GUARDIAN ALLIANCE***
                                     ***TECHNOLOGIES, INC.***

**BOUTIN JONES INC.**
Robert D. Swanson (CA Bar No. 162816)
Daniel S. Stouder (CA Bar No. 226753)
555 Capitol Mall, Suite 150
Sacramento, CA 95814-4603
Telephone:  (916) 321-4444
Facsimile:  (916) 441-7597
dstouder@boutinjones.com
rswanson@boutinjones.com

**DUNLAP CODDING PC**
Douglas J. Sorocco (OK. Bar 17347,
 Ill. ARDC 2381747);
*pro hac vice* forthcoming
Evan W. Talley (OK Bar 22923)
*pro hac vice* forthcoming
609 West Sheridan Avenue
Oklahoma City, OK 73102
Telephone: (405) 607-8600
Facsimile: (405) 607-8686
dsorocco@dunlapcodding.com
etalley@dunlapcodding.com

*Attorneys for Plaintiff*
*Guardian Alliance Technologies, Inc.*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| GUARDIAN ALLIANCE TECHNOLOGIES, INC., a California corporation;<br><br>             Plaintiff,<br><br>vs.<br><br>MILLER MENDEL, INC., a Washington corporation; and TYLER MILLER, an individual;<br><br>             Defendants. | **Case No.:**<br><br>**COMPLAINT**<br><br><br><br><br><br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, GUARDIAN ALLIANCE TECHNOLOGIES, INC. ("Guardian"), for its claims

and relief against Defendants MILLER MENDEL, INC. ("MMI") and Tyler Miller ("Miller")

(collectively "Defendants") alleges:

/ / /

/ / /

1

COMPLAINT                                      APPX00474                                      1260427.3

## NATURE AND OVERVIEW OF THE ACTION

1.      Since entering the market for public safety background management software in 2011, Defendants have used their ill-gotten patent portfolio in an attempt to obtain a monopoly in the market and exclude others from meaningfully competing. By procuring contracts and stifling competition based on their fraudulently-obtained patent portfolio, Defendants have experienced millions of dollars in ill-gotten gains, and public safety agencies interested in the goods and services sold by Defendants have been subjected to increased costs and expenses, all to the detriment of competition in the marketplace.

2.      In 2018, when Guardian entered the market, and when the second of Defendants' fraudulently-obtained patents was issued, Defendants set a course of repeatedly suing Guardian's public safety agency customers for patent infringement and threatening suits against any agency who chose to use or continues using the Guardian software. Defendants have sued four Guardian public safety agency customers in venues across the United States and threatened scores of Guardian's other current and prospective customers. Even after the United States District Court for the Eastern District of Texas invalidated Defendants' asserted patent claims, Defendants continue to threaten the marketplace to intimidate Guardian's current and prospective customers into terminating or not entering into contracts with Guardian to use its software.

3.      This action, therefore, seeks to hold Defendants liable under federal antitrust and patent laws, as well as under the laws of the State of California, for unlawfully attempting to monopolize the national market for public safety background management software through the assertion and threatened assertion of their fraudulently-obtained patent portfolio, and other sham litigation tactics. Further, Defendants have committed acts of unfair competition, including trade libel, that have harmed Guardian's commercial reputation and ability to compete in the public safety background management software market.

## THE PARTIES

4.      Plaintiff Guardian is a California corporation with its principal place of business at 11 S. San Joaquin St., Ste. 804, Stockton, California 95202.

/ / /

2

5.      On information and belief, Defendant MMI is a Washington corporation with its principal place of business at 1425 Broadway, Ste. 430, Seattle, Washington 98122.

6.      On information and belief, Defendant Miller is a resident of the State of Washington.

## JURISDICTION AND VENUE

7.      This is an action for monetary damages and injunctive relief under: (a) Section 2 of the Sherman Act, (b) Section 4 of the Clayton Act, (c) the Patent Act, and (d) the laws of the State of California. These counts arise from the Defendants' unlawful and anti-competitive campaign to illegally monopolize the market for public safety background investigation software.

8.      This Court has subject matter jurisdiction over this action under at least 28 U.S.C. §§ 1331, 1338, 2201, and 2202, pursuant to Section 2 of the Sherman Act, 15 U.S.C. § 2; Section 4 of the Clayton Act, 15 U.S.C. § 15; and the Patent Act, Title 35 of the United States Code. Given this subject matter jurisdiction over these Federal Question claims, this Court further has supplemental jurisdiction over the California statutory and common law claims pursuant to 28 U.S.C. § 1367.

9.      Defendants are subject to this Court's personal jurisdiction because they have and continue to conduct substantial business within the State of California, including actions intertwined with Guardian's causes of action against Defendants. In particular, Defendants have used their fraudulently-obtained patents and threats of patent infringement to contract with and/or tortiously interfere with Guardian's contractual relationships with, *inter alia*, the California Department of Corrections, the San Joaquin (CA) County Sheriff's Office, the Kern County (CA) Sheriff's Office, the Placer County (CA) Sheriff's Office, and the Fresno (CA) Police Department.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in this District.

## INTRODUCTION

11.     Public safety background investigation management software consists of specialized software, often cloud-based and delivered as Software-as-a-Service (SAAS) to clients, designed to enable public safety organizations, such as local, state, and federal law enforcement

3

COMPLAINT                                    APPX00476                                    1260427.3

1    agencies, to complete pre-employment background investigations of job applicants much more

2    efficiently and accurately, thereby facilitating more efficient, high-quality hiring decisions.

3         12.    To monopolize or attempt to monopolize the market for background investigation

4    management software, Defendants unlawfully obtained, based on fraud on the United States Patent

5    and Trademark Office (USPTO), several patents on background investigation management

6    software (the "MMI Patent Portfolio"). Specifically, and as set forth below, Defendants obtained

7    the MMI Patent Portfolio by concealing material facts from the USPTO and, at the same time,

8    making affirmative false statements to the USPTO to persuade it to grant the patents in the MMI

9    Patent Portfolio.

10        13.    With the competitive benefits conferred by the MMI Patent Portfolio, Defendants

11   actively suppressed competition by (a) extensively advertising the existence of and aggressively

12   threatening enforcement of the MMI Patent Portfolio against competitors and their own existing

13   and potential customers and (b) actively enforcing the MMI Patent Portfolio against their own

14   prospective customers—i.e., bringing suit against law enforcement agencies that are or were

15   existing Guardian customers at the time of the lawsuits. Defendants' actions were made with full

16   knowledge that their enforcement activities and threatening statements were wholly predicated

17   upon the enforcement of the fraudulently-obtained MMI Patent Portfolio. Defendants knew,

18   therefore, that their actions were objectively baseless.

19        14.    Using the fraudulently-obtained MMI Patent Portfolio and by engaging in the

20   preceding anti-competitive activities, Defendants suppressed competition and attempted to obtain

21   a monopoly in the market for public safety background investigation software ("Public Safety

22   Background Investigation Software Market" or "the Market"). At a minimum, Defendants' misuse,

23   through enforcement, of the fraudulently-obtained MMI Patent Portfolio presented and continues

24   to present a dangerous probability that Defendants will succeed in obtaining an improper monopoly

25   in the Market.

26        15.    As the central plank of their anti-competitive activities, Defendants' enforcement

27   campaign currently includes the institution of four lawsuits against Guardian customers, dating

28   back to 2018. Additionally, since at least 2018, MMI has directly threatened enforcement of the

COMPLAINT                          APPX00477                          1260427.3

1   fraudulently-obtained MMI Patent Portfolio to many of Guardian's existing customers and the

2   Market as a whole—i.e., prospective Guardian customers.

3       16.    Through their campaign of enforcing the fraudulently-obtained MMI Patent

4   Portfolio, tortiously interfering in Guardian's contractual relationships, and knowingly spreading

5   false and defamatory statements about Guardian, Defendants have stifled competition within the

6   Market, thereby obtaining control of a significant portion of the Market through unfair, anti-

7   competitive, and monopolistic conduct.

8       17.    This lawsuit seeks to restore competition to the affected market and to compensate

9   Guardian for the injuries Defendants' unfair, anti-competitive, and monopolistic conduct has

10   caused.

11       18.    In particular, Guardian seeks compensation for its injuries resulting from

12   Defendants' pursuit of baseless enforcement of the fraudulently-obtained MMI Patent Portfolio and

13   for other economic and non-economic damages Guardian has suffered due to Defendants' anti-

14   competitive behavior.

15       A.    **The Public Safety Background Investigation Management Software Industry
        and the Relevant Market**

16

17       19.    Nearly 19,000 law enforcement agencies in the U.S. (at the local, state, and federal

18   levels) perform over 1.7 million pre-employment background investigations annually.

19       20.    Public safety organizations perform pre-employment background investigations by

20   trained, professional background investigators. They are not the same as, nor should they be

21   confused with, basic background checks that can be readily ordered online for employment or rental

22   purposes, for example.

23       21.    A complete public safety pre-employment background investigation consists of an

24   extensive array of applicant information as required by the Police Officer Standards and Training

25   (POST) or POST-equivalent authority in every jurisdiction in the United States.

26       22.    Over 98% of law enforcement agencies still collect, manage and store background

27   investigation information in hard copy.

28   / / /

5

COMPLAINT                          APPX00478                          1260427.3

23. Completed hard copy public-safety background investigations generally consist of 200–300 pages of paper documents. They include up to 17 different "tabs" or sections, each with a different focus or purpose within the comprehensive background investigation.

24. Collecting, collating, evaluating, and storing background information in hard copy results in numerous wasted resources, including the costs of maintaining storage space for paper records (typically held in 3–4" three-ring binders) that must be physically stored for years in most instances. Unlike electronic records, paper documents don't provide any ability to gain insight into who is seeking employment (either within the agency itself or cross-agency), and the paper documents cannot be readily shared within or outside the agency performing the background investigation.

25. As an example, the tabs in a public safety background investigation in California include: (a) a Background Narrative Report; (b) a Personal History Statement (20-plus pages, over 200 data points); (c) DOJ/FBI Fingerprint Returns and Firearms Clearance; (d) Driving Record Check; (e) Local Law Enforcement Agency Record Checks; (f) Credit Record Checks; (g) Education Verification; (h) Citizenship/Age Verification; (i) Military History Check; (j) Dissolution of Marriage Check; (k) Employment History Checks; (l) Relatives/Personal Reference Checks; (m) Neighborhood Checks; (n) Medical/Psychological Clearances; and (o) Other Documentation.

26. By using specialized public safety background investigation management software, agencies can complete pre-employment background investigations faster and more accurately—thereby facilitating more efficient, high-quality hiring decisions.

27. While the public safety background management software assists agencies in expediting the completion of public safety background investigations, the anatomy of such investigations must remain intact as prescribed by the POST or POST-equivalent authority. The public safety background management software streamlines the performance of a prescribed, well-understood process.

/ / /

/ / /

6

COMPLAINT

APPX00479

1260427.3

28.     MMI, and its competitors like Guardian, offer public safety background investigation management software to customers nationwide in the United States. As a result, the scope of the relevant geographic market for this Complaint is the entirety of the United States.

29.     Despite systems that existed before MMI entered the Market, MMI was able to capture a dominant position quickly and is currently the dominant Market participant, controlling at least 70% of the total dollars expended annually by public safety agencies for public safety background investigation management software.

30.     Until Guardian was formed and entered the Market in 2018, MMI's two main competitors in the Market were: (a) Essential Software Development, LLC, which has offered its Police Officer Background Investigation Tracking System ("POBITS") software since no later than 2010; and (b) Background Solutions, LLC, which has offered its Background Assistant software since no later than 2009.

31.     MMI obtained its dominant position in the Market through monopolistic activities, including: (a) extensively advertising the existence of and aggressively threatening enforcement of the MMI Patent Portfolio and (b) actively enforcing the MMI Patent Portfolio against MMI's own prospective customers–i.e., bringing suit against law enforcement agencies that are or were existing Guardian customers at the time of the lawsuits.

32.     Since Guardian entered the Market in 2018, MMI has increased its share of the Market as a result of its litigation activities as well as its increasing threats of litigation against public safety agencies who might use or consider using Guardian's software, including capturing business from prospective law enforcement agencies who were already committed to purchasing the Guardian system and, during the process of completing contracts or, in at least one instance, had entered into a contract with Guardian, walked away from or terminated their agreement with Guardian after being threatened by MMI.

**B.     Defendants' Fraudulently Obtained Patent Portfolio and Their Anti-Competitive Conduct in Enforcing Such Patents**

33.     Over the past decade, MMI fraudulently obtained two patents from the United States Patent & Trademark Office ("USPTO," the federal agency charged with examining and

7

issuing patents where warranted), United States Patent Nos. 9,070,098 ("the '098 Patent") and 10,043,188 ("the '188 Patent"). MMI is continuing its fraud while applying for two additional patents, i.e., United States Patent Application Nos. 16/024,622 ("the '622 Application") and 17/316,686 ("the '686 Application") (collectively, with the '098 and '188 Patents, "the MMI Patent Portfolio"). True and correct copies of the '098 and '188 Patents are attached hereto as Exhibits 1 and 2, respectively.

34.    As detailed below, Defendants deliberately and purposefully withheld material information (i.e., the fraud committed on the USPTO)—with such withheld material comprising: (a) its own offer to sell its invention more than a year before filing for its first patent application; and (b) information about third-party prior art systems of which Defendants were aware. Despite a duty to disclose this prior art information, Defendants purposefully and deliberately withheld this prior art information from the USPTO to keep this prior art information from the USPTO, as it was material to patentability, and the USPTO would have rejected Defendants' patent applications as unpatentable had the agency been aware of the existence of the prior art information. Moreover, Defendants made numerous false statements to the USPTO, the falsity of which was material to the patentability of their various patent applications. In light of these false statements, the USPTO found the Defendants' applications patentable and allowed them to issue. Pointedly, not only were Defendants' statements false, Defendants knew that the statements were false when they were made.

35.    Finally, Defendants' fraud on the USPTO is ongoing. To date, the Defendants have not disclosed the prior art information to the USPTO in its pending patent application, and the Defendants continue to make knowingly false statements in their attempts to persuade the USPTO to allow its pending applications to issue as patents.

36.    Defendants' false representations and omissions of material facts and prior art were intended by Defendants to induce and did induce reliance by the patent examiners (i.e., the individuals charged within the USPTO in determining whether to grant Defendants' patent claims) into allowing the patent applications to issue. But for Defendants' false representations and knowing omissions of material facts and prior art, the patents within the MMI Patent Portfolio would not have been issued.

1      37.      Defendants' false representations and knowing omissions of material facts and prior

2  art constitute inequitable conduct, otherwise known as "fraud on the USPTO," thereby rendering

3  each of the claims of the issued patents within the MMI Patent Portfolio invalid and unenforceable.

4      38.      After fraudulently obtaining the patents within the MMI Patent Portfolio from the

5  USPTO, Defendants advertised the existence of the MMI Patent Portfolio, threatened to enforce,

6  and, after that, actually enforced one of the fraudulently-obtained patents within the MMI Patent

7  Portfolio against users of Guardian's public agency background investigation management

8  software—i.e., Defendants are currently enforcing the fraudulently-obtained patents against

9  potential MMI customers that chose Guardian's software instead of MMI's. Notably, MMI did not

10 directly litigate its fraudulently-obtained patents within the MMI Patent Portfolio against

11 Guardian—choosing instead to sue its potential customers, i.e., public law enforcement agencies

12 generally unfamiliar with patent litigation and risk-averse due to public oversight. By doing so,

13 Defendants could obtain, maintain, or, at a minimum, pose a dangerous probability of obtaining a

14 monopoly in the Market through the enforcement (and threatened enforcement) of fraudulently-

15 obtained patent claims in the MMI Patent Portfolio.

16     39.      The MMI Patent Portfolio provides a critical competitive strength to Defendants,

17 albeit a strength obtained through fraud on the USPTO. The MMI Patent Portfolio allows

18 Defendants to erect artificial barriers to entry and pursue their expansion in the Market without

19 competition. For example, "sole-source" justification exists when a vendor offers services or goods

20 to a public safety agency purportedly covered by one or more patents. The vendor is considered the

21 "sole-source" of the goods or services. The fraudulently-obtained MMI Patent Portfolio allows

22 Defendants' services to be classified as sole-source, thereby allowing Defendants to circumvent a

23 public safety agency's request for proposal ("RFP") process. This circumvention is contrary to the

24 public policy favoring competitive bidding for goods and services. The barrier created by

25 Defendants' use of the fraudulently-obtained MMI Patent Portfolio to achieve sole-source status

26 prevents (and has prevented) Guardian, as well as other competitors, from competitively offering

27 its goods and services to the public safety agency through participation in an agency's RFP process.

28 Defendants' monopolistic actions have prevented Guardian, and other competitors from being

9

awarded the contract by winning a public safety agency RFP. Defendants used their fraudulently-obtained MMI Patent Portfolio to deceive the agencies into granting it sole-source status to the detriment of the agency, the tax-payers supporting the agency, other competitive public agency background investigation management software vendors, and Guardian.

40.    In furtherance of this scheme, Defendants initiated the Oklahoma, Oregon, Alaska, and Texas Actions. Defendants have threatened at least 100 of Guardian's existing and prospective customers with claims that they infringed claims of at least the '188 Patent.

41.    Defendants' objectively baseless lawsuits (i.e., those actions filed against Guardian's customers seeking enforcement of the MMI Patent Portfolio) have required Guardian to expend significant time and financial resources honoring its contractual patent infringement indemnification obligations to its customers that MMI has sued.

42.    Even after Guardian's customer—the City of Oklahoma City—articulated in December 2020 the precise reasons for Defendants' fraud on the USPTO (i.e., Miller, MMI, and their counsel's failure to disclose the prior art information), Defendants have continued in their anti-competitive scheme of attempted monopolization by suing additional Guardian customers in Oregon, Alaska, and Texas.

43.    Further, despite Guardian's customer—the City of Oklahoma City—making MMI, Miller, and their counsel explicitly aware of (a) MMI's own prior sale, and (b) prior art software systems, Defendants have continued their practice of committing fraud on the USPTO by failing to disclose this prior art information in the ongoing prosecution of the pending patent applications in the MMI Patent Portfolio. Such fraud is ongoing as of this filing despite the Defendants' ongoing duty to disclose this prior art information under 37 C.F.R. § 1.56. It should not be overlooked, Defendants' counsel, which has been made aware of this prior art information, has its own separate ethical obligation and duty under 37 C.F.R. § 1.56 to disclose this prior art information to the USPTO.

44.    MMI and Miller's threats of enforcement of the fraudulently-obtained MMI Patent Portfolio against Guardian's customers continued even after the Court in the Texas Action invalidated the asserted claims of the '188 Patent under 35 U.S.C. § 101—insisting to Guardian's

1  actual and prospective customers that **all claims** of the '188 Patent remained in full force and effect.

2  MMI and Miller's actions went so far as issuing a press release with the headline: "Miller Mendel's

3  eSOPH Patent Remains in Full Effect After Judge's Decision." This statement is misleading, and a

4  false, anti-competitive, and monopolistic misstatement meant to deceive the market into avoiding

5  contracting with Guardian.

6       45.    Defendants' persistent and costly assertion of the fraudulently-obtained patents

7  within the MMI Patent Portfolio against Guardian and its customers, in light of the circumstances

8  by which those patents were obtained and how they were enforced, is a crucial part of the pattern

9  of unfair, anti-competitive, and monopolistic conduct perpetrated by Defendants.

10      46.    Defendants should be held responsible for their misconduct in obtaining patents

11  fraudulently, for subjecting Guardian to the unnecessary expense of multiple, protracted patent

12  litigations, and for MMI's use of its patent portfolio to reap anti-competitive benefits in the

13  marketplace.

14      47.    Defendants' anti-competitive conduct has harmed competition in the public safety

15  background investigation software market by, among other things, affecting prices and reducing

16  competition, quality, innovation, and consumer choice.

17  **C.    Defendants' Actions Constituting Inequitable Conduct and Fraud on the United States Patent and Trademark Office**

18

19      48.    In early 2011, MMI purportedly developed and began marketing a public safety

20  background investigation management software under the trademark "eSOPH."

21      49.    On April 6, 2011, MMI filed a provisional patent application entitled "Background

22  Investigation Web Services," U.S. Patent Application No. 61/472,556.

23      50.    Throughout 2011, MMI marketed the eSOPH software to public agencies,

24  procuring its first contract with the King County (WA) Sheriff's Department in December 2011.

25      51.    On information and belief, based on publicly-available materials obtained through

26  the Oklahoma Action and open records requests, while Defendants were engaged in marketing their

27  product to the King County (WA) Sheriff's Department in 2011, Miller became aware  of and/or

28  obtained access to the public safety background investigation management software used by King

1  County before its use of eSOPH—i.e., King County used Background Solutions, LLC's software

2  marketed under the trademark "Background Assistant™."

3      52.    Through awareness of and/or access to the software, Miller became aware of the

4  various features and functionalities of the Background Assistant™ software, namely, Background

5  Assistant's™ ability to auto-generate a list of and correspondence to law enforcement agencies

6  based on the residential address of an applicant.

7      53.    On April 6, 2012, Miller filed a non-provisional U.S. Patent Application No.

8  13/441,648, which was intended to convert the '556 Provisional Application into a Non-Provisional

9  Utility Application for review by the USPTO. Following the filing of the '648 Application and

10  before issuance, Defendants and their counsel had a continuing duty under 37 C.F.R. § 1.56 to

11  disclose material, noncumulative prior art information of which they were aware to the USPTO for

12  consideration in allowing the patent application.

13      54.    The '648 Application was allowed by the USPTO on April 7, 2015. At all times

14  after the allowance of the '648 Application and before issuance, Defendants and their counsel had

15  a continuing duty under 37 C.F.R. § 1.56 to disclose material, noncumulative prior art information

16  of which they were aware to the USPTO for consideration in issuing the patent application.

17      55.    On June 30, 2015, the '648 Application was issued as the '098 Patent. Despite their

18  duty under 37 C.F.R. § 1.56, at no time following the filing of the '648 Application did Defendants

19  or their counsel disclose the existence and/or functionalities of the Background Assistant™ prior

20  art software to the USPTO for consideration as to the appropriateness of issuing the '098 Patent.

21      56.    On May 26, 2015, Miller filed a continuation, non-provisional U.S. Patent

22  Application. No. 14/721,707, claiming priority to the '098 Patent. Following the filing of the '707

23  Application and prior to issuance, Defendants and their counsel had a continuing duty under 37

24  C.F.R. § 1.56 to disclose material, noncumulative prior art information they were aware of to the

25  USPTO for consideration in allowing the patent application.

26      57.    The '707 Application was allowed by the USPTO on June 22, 2018. At all times

27  after the allowance of the '707 Application and before issuance, Defendants and their counsel had

28  / / /

COMPLAINT              APPX00485                    1260427.3

1    a continuing duty under 37 C.F.R. § 1.56 to disclose material, noncumulative prior art information

2    of which they were aware to the USPTO for consideration in issuing the patent application.

3        58.    On August 7, 2018, the '707 Application was issued as the '188 Patent. Despite

4    their duty under 37 C.F.R. § 1.56, at no time following the filing of the '707 Application did

5    Defendants or their counsel disclose the existence and/or functionalities of the Background

6    Assistant™ prior art software to the USPTO for consideration as to the appropriateness of issuing

7    the '188 Patent.

8        59.    The '098 and '188 Patents are unenforceable because inventor Miller, assignee

9    MMI, and their patent attorneys, Philip Hunt of Rylander & Associates, PC, failed to disclose all

10    noncumulative material prior art of which they were aware to the U.S. Patent and Trademark Office

11    during prosecution of the '098 and '188 Patents.

12        60.    Specifically, ***at no time*** during the prosecution of the '098 and '188 Patents did

13    Miller or his counsel file an information disclosure statement with the USPTO (despite their

14    continuing duty of disclosure under 37 C.F.R. § 1.56 to do so), let alone particularly disclose the

15    existence and capabilities of the Background Assistant™ prior art software.

16        61.    Miller, MMI, and Mr. Hunt violated their continuing duty of disclosure under 37

17    C.F.R. § 1.56 when they failed to disclose the existence and capabilities of the Background

18    Assistant™ prior art software during the prosecution of the '098 and '188 Patents.

19        62.    On information and belief, and indeed, before August 7, 2018 (when the '188 Patent

20    was issued) and perhaps even before the '648 Application was filed on April 6, 2012), Miller was

21    aware of the Background Assistant™ prior art software and its functions and capabilities.

22        63.    The Background Assistant™ prior art software, which was publicly available

23    before the earliest possible priority date of the '188 Patent and of which Miller and Hunt were aware

24    during prosecution of the '188 Patent, discloses automatically generating a list of law enforcement

25    agencies within a certain radius based on residential address information in the application. This

26    capability or functionality of the Background Assistant™ prior art software was publicly disclosed

27    in presentations as follows:

28    / / /

13

COMPLAINT                        APPX00486                        1260427.3



64.    On December 9, 2014, during the prosecution of the '098 Patent, Messrs. Miller and Hunt further amended claims 1, 5, and 9 of the pending '649 Application (which was issued as the '098 Patent) to include the limitation "generating a suggested reference list of one or more law enforcement agencies and/or courts within a pre-defined radius around the applicant residential address; and presenting the suggested reference list to the investigator." December 9, 2014 Amendment and Response to Office Action in '098 Prosecution, a true and correct copy of which is attached hereto as Exhibit 3.

65.    Messrs. Miller and Hunt argued in favor of allowing the claims in the '648 Application, stating that "Parikh teaches e-dossiers that may have candidate referral information, but Parikh is silent on how information is obtained and entered into the e-dossier." *Id.*

66.    Messrs. Miller and Hunt made these representations to the USPTO despite Miller's knowledge of the existence and capabilities of the Background Assistant™ prior art software at least as early as August 9, 2012. Further, Messrs. Miller and Hunt made these representations to the

USPTO despite Miller's knowledge that the Background Assistant™ prior art software had been used by the King County (WA) Sheriff's Department for several years. *See* August 9, 2012, email thread between Miller and Detective Robert Burrows of the King County (WA) Sheriff's Office Background Investigation Unit, a true and correct copy of which is attached hereto as Exhibit 4.

67.    Additionally, Miller was aware no later than February 28, 2014, of the existence of and features of the Background Assistant™ prior art software, specifically that the Background Assistant™ prior art software compiled a list of law enforcement agencies and auto-generated correspondence letters in the background investigation process based on the residential address of the applicant. Miller's awareness of these features of the Background Assistant™ came no later than approximately nine months before Miller amended the independent claims of the '098 Patent to include the element of "generating a suggested reference list of one or more law enforcement agencies and/or courts within a pre-defined radius around the applicant residential address; and presenting the suggested reference list to the investigator." *See* February 28, 2014, email thread between Miller; Alexandra Ehlert, Human Resources Associate for the King County (WA) Sheriff's Office; and Mark Sawa of the Travis County (TX) Sheriff's Department, a true and correct copy of which is attached hereto as Exhibit 5.

68.    Similarly, during the prosecution of the '707 Application (that was issued as the '188 Patent), Miller and his patent attorney Philip Hunt amended claims 1, 5, and 9 to add the limitation, "generating a suggested reference list of one or more law enforcement agencies based on the applicant's residential address," despite being aware for more than 3.5 years that the Background Assistant™ prior art software compiled a list of law enforcement agencies and auto-generated correspondence letters in the background investigation process based on the residential address of the applicant. *See* October 23, 2017 Amendment and Response to Office Action, a true and correct copy of which is attached hereto as Exhibit 6.

69.    Miller and Mr. Hunt argued in the October 23, 2017, Amendment and Response to Office Action that the limitation they added—

> [I]s a slightly broader version of a limitation in claims 1, 5 and 9 of the parent application, now issued as US9070098. Claims 1, 5 and 9 of the instant application after this amendment are now very

15

APPX00488

> similar to claims 1, 5 and 9 of the '098 patent. The same reasoning the Applicant advanced in the prosecution of the '098 patent applies here as well. Parikh teaches e-dossiers that may have candidate referral information, but Parikh is silent on how information is obtained and entered into the e-dossier. The other art of record does not supply this deficiency of Parikh. For at least these reasons, the Applicant believes these claims are patentable.

*Id.*

70.    On December 26, 2017, the USPTO issued an office action, during the prosecution of the '707 Application, rejecting Claims 1–3, 5–7, 9, 13–14, and 16 of the '188 Patent under pre-AIA 35 U.S.C. § 103(a), in part because:

> Duffy teaches generating a suggested reference list of one of more law enforcement agencies based on an applicant residential address (¶0105; note that Duffy is not directed to law agencies. However, this is (*sic*) would be obvious to use generating a list to one of ordinary skill in the art with the above references that deals with law enforcement).

*See* December 26, 2017 Office Action, a true and correct copy of which is attached hereto as Exhibit 7.

71.    In response to the USPTO's December 26, 2017, rejection of the claims of the '707 Application under pre-AIA 35 U.S.C. § 103(a), Miller and Mr. Hunt argued:

> Regarding rejection of claim 1 as obvious, OA pages 16-17 states "Duffy teaches generating a suggested reference list of one of more law enforcement agencies based on an applicant residential address." Examiner acknowledges that Duffy is "not directed at law enforcement agencies. Applicant points out that Duffy is not only not directed at employment background checks for law enforcement agencies. It is also not directed at any type of background investigations for any type of employer. It is directed at product recalls, a completely unrelated field and one that is not reasonably pertinent to the field of background investigations.

*See* March 7, 2018 Applicant Initiated Interview Summary, a true and correct copy of which is attached hereto as Exhibit 8.

72.    On June 22, 2018, in response to the remarks made by Miller and Mr. Hunt, the USPTO issued a Notice of Allowance for the '707 Application, stating as the reason for allowance that the—

/ / /

COMPLAINT                     APPX00489                              1260427.3

Prior art does not teach " ... investigator ... associating the reference electronic response with the new application entry and ... generating a suggested reference list of one more law enforcement agencies based on an applicant residential address" of Claim 1. Note that Claims 5, 9 and 16 are substantially similar to Claim 1, thus the same rationale applies with respect to prior art and allowance.

The closest prior art are Parikh et al. US 2012/0089528A1, LaPasta et al. US 2005/0033633A1, Ritzel US 6904407 B2 and Duffy et al. US 2009/0319331 A 1.

However, prior art still fail (*sic*) to teach " ... investigator ... associating the reference electronic response with the new application entry and ... generating a suggested reference list of one more law enforcement agencies based on an applicant residential address" of Claim 1. Note that Claims 5, 9 and 16 are substantially similar to Claim 1, thus the same rationale applies with respect to prior art and allowance.

In addition, Applicant's arguments filed 4/26/2018 have been considered and found persuasive.

*See* June 22, 2018 Notice of Allowance, a true and correct copy of which is attached hereto as Exhibit 9.

73.    The Background Assistant™ prior art software is therefore material to the patentability of the '098 and '188 Patents, particularly as to the limitation of "generating a suggested reference list of one or more law enforcement agencies based on the applicant residential address." The patent examiner would not have allowed the claims of the '098 and '188 Patents to issue in their present form had Miller and/or Mr. Hunt disclosed the Background Assistant™ prior art software to the USPTO, as they were required to do under 37 C.F.R. § 1.56. In particular, the USPTO would not have issued the claims of the '098 and '188 Patent in their present form if the Background Assistant™ prior art software had been disclosed, as it provides the teaching that the examiner believed was absent from the prior art known to and relied upon by the examiner. Despite knowing differently, Messrs. Miller and Hunt affirmatively stated that the prior art did not contain any reference to a step of "generating a suggested reference list of one or more law enforcement agencies based on the applicant residential address." The Background Assistant™ prior art software clearly and unambiguously disclosed the step of "generating a suggested reference list of one or more law enforcement agencies based on the applicant residential address."

17

74.    Thus, "but for" Messrs. Miller and Hunt violating their duty of candor and good faith in dealing with the USPTO by failing to disclose the existence and capabilities of the Background Assistant™ prior art software, the '098 and '188 Patents would not have been allowed by the examiner and issued by the USPTO.

75.    Based on Miller's prior awareness of the Background Assistant™ prior art software, and particularly his familiarity with its capabilities and features, on information and belief, the failure of inventor Miller and his patent attorney Philip Hunt, to disclose the Background Assistant™ prior art software to the USPTO was done with intent to deceive the examiner into allowing the '098 and '188 Patents eventually issued by the USPTO.

76.    The Background Assistant™ prior art software that Miller and his patent attorneys withheld from the USPTO during the prosecution of the '098 and '188 Patents was material because every claim required the step of "generating a suggested reference list of one or more law enforcement agencies based on the applicant residential address." None of these claims would have been allowed or eventually issued had the examiner and/or the USPTO been aware of the Background Assistant™ prior art software.

77.    Through his agents and patent attorneys, Miller made the deliberate decision not to disclose the Background Assistant™ prior art software to the examiner and the USPTO because such disclosure would have rendered all of the claims of the '098 and '188 Patents unpatentable. I.e., the examiner would not have allowed any of the claims of the '098 and '188 Patents if they had been aware of the Background Assistant™ prior art software.

78.    In light of the preceding, the decision of Miller and his prosecution counsel to withhold evidence of Background Assistant™ prior art software during Miller's prosecution of the '098 and '188 Patents constitutes a failure of Miller and his counsel's duty of candor under 37 C.F.R. § 1.56. As such, Miller, MMI as assignee, and their patent counsel committed fraud on the USPTO, rendering the claims of the '098 and '188 Patents unenforceable.

/ / /

/ / /

/ / /

COMPLAINT                                    APPX00491                                    1260427.3

**D.**  **The Patent-Ineligible Subject Matter of the MMI Patent Portfolio Under 35 U.S.C. § 101**

79.  The '098 and '188 Patents, entitled "Background Investigation Management Service," were issued on June 30, 2015, and August 7, 2018, respectively.

80.  The specifications of the '098 and '188 Patents are identical, explaining that their "subject matter relates to a system to facilitate the process of performing background applications on a plurality of applicants."

81.  In the "Background Information" section of the '098 and '188 Patents, the specification notes that:

> In many areas, but particularly in the area of law-enforcement pre-employment background investigations, investigators report they spend, on average, 40 hours per applicant investigation. During this process, the applicant typically completes *a paper packet* comprised of questions pertaining to the applicant's life history, including information on criminal activity, financial history, drug history, listing relatives and personal references, employment history, and many other in-depth personal questions … The investigator typically uses resources available to him or her to confirm the information the applicant provided in the various documents, to include, contacting past employers, supervisors, neighbors, relatives, references, landlords, etc., which makes up the bulk of the investigator's 40 hours per applicant of spent time.
>
> What has eluded the industry is an *automated* system to help a background investigator *more efficiently and effectively* conduct a background investigation.

(Emphasis added).

82.  Describing the embodiment represented in FIG. 1 of the '098 and '188 Patents, the specification states that:

> … software system **100** allows an organization **102** the ability to create and customize electronic documents **104** to be sent to applicants to complete via the software system **100**, and returned to the software system **100** in similar fashion. The software system 100 includes a document creation component **114** and a document management component **116**. The system **100** *automates the majority of the tasks of a common pre-employment background investigation* so that fewer hardcopy documents are necessary, thus creating more efficient management of individual background investigations.

(Emphasis added)

19

APPX00492



Fig. 1

83.     Representative claim 1 of the '098 Patent and representative claim 1 of the '188

Patent state:

Claim 1 of the '098 Patent:

> 1.     A method for a computing device with a processor and a system memory to assist an investigator in conducting a background investigation of an applicant for a position within a first organization, comprising the steps of:
>
> receiving program data identifying the applicant, the position, the first organization, and the investigator;
>
> storing a new applicant entry in the system memory, the new applicant entry associated with the program data identifying the applicant, the position, the first organization, and the investigator;
>
> transmitting an applicant hyperlink to an applicant email address associated with the applicant, the applicant hyperlink for viewing an applicant set of electronic documents;
>
> receiving an applicant electronic response with program data regarding a first reference, wherein the first reference is a first

20

person likely to have information regarding the applicant, the program data including a first reference email address associated with the first reference;

determining a reference class of the first reference based on the program data regarding the first reference;

selecting a first reference set of electronic documents based on the reference class of the first reference; transmitting a first reference hyperlink to the first reference email address, the first reference hyperlink for viewing the first reference set of electronic documents associated with the position;

receiving a first reference electronic response to the first reference set of electronic documents from the first reference;

storing the first reference electronic response in the system memory, associating the first reference electronic response with the new applicant entry; and

obtaining an applicant residential address from the applicant electronic response;

generating a suggested reference list of one or more law enforcement agencies and/or courts within a pre-defined radius around the applicant residential address; and

presenting the suggested reference list to the investigator.

Claim 1 of the '188 Patent:

1.    A method for a computing device with a processor and a system memory to assist an investigator in conducting a background investigation of an applicant for a position within a first organization, comprising the steps of:

receiving a first set of program data comprising information identifying the applicant, the position, the first organization, and the investigator;

storing a new applicant entry in the system memory, the new applicant entry associated with the first set of program data;

transmitting an applicant hyperlink to an applicant email address associated with the applicant, the applicant hyperlink for viewing an applicant set of electronic documents;

receiving an applicant electronic response with a reference set of program data, wherein the reference set of program data comprises information regarding a reference source, wherein the reference source is a person, the program data including a reference email address associated with the reference source;

COMPLAINT                    APPX00494                    1260427.3

determining a reference class of the reference source based on the reference set of program data;

selecting a reference set of electronic documents based on the reference class of the reference source;

transmitting a reference hyperlink to the reference email address, the reference hyperlink for viewing the reference set of electronic documents;

receiving a reference electronic response to the reference set of electronic documents from the reference source;

storing the reference electronic response in the system memory, associating the reference electronic response with the new applicant entry; and

generating a suggested reference list of one or more law enforcement agencies based on an applicant residential address.

84.    During the prosecution of the '098 and '188 Patents, the examiner rejected the proposed claims of both patents as comprising unpatentable subject matter under 35 U.S.C. § 101. [*See,* e.g., 3/10/2014 USPTO communication to Miller during prosecution of the '098 Patent and Proposed Agenda from 3/7/2018 Interview Summary during prosecution of the '188 Patent, true and correct copies of which are attached hereto as Exhibits 10 and 11, respectively].

85.    In the prosecution of the '098 Patent, after Miller amended the claims rejected under § 101 to include the phrase "non-transitory computer readable medium," the examiner withdrew the § 101 rejection.

86.    In the prosecution of the '188 Patent, after noting that the patent examiner found that the proposed claims fall under the abstract concept of "Fundamental Economic Practices," Miller's patent lawyer responded to the § 101 rejection by stating that the proposed claims were "significantly more" than an abstract concept. [4/26/2018 Communication, Prosecution History of the '188 Patent, pp. 10–12 attached hereto as Exhibit 12]

87.    Miller's patent attorney further argued that the patent examiner had wrongly found the claims to be an abstract concept because the examiner had failed to expressly support the necessary underlying factual determinations to reach such a conclusion, as required by Patent Office guidelines then in effect for a § 101 rejection, which required: "(1) a citation to an express statement by applicant; (2) a court decision finding similar claim language ineligible; (3) a publication that

22

COMPLAINT                                    APPX00495                                    1260427.3

demonstrates the well-understood, routine, conventional nature of the additional element(s); or (4) a "statement that the examiner is taking official notice of the well-understood, routine, conventional nature of the additional element(s)." [*Id.* at p. 11].

88.    In particular, Miller's patent lawyer asserted that to the best of Miller's knowledge, the examiner had not and "will not be able to supply one of the four items above for specifically one element of claim 1: 'generating a suggested reference list of one or more law enforcement agencies based on an applicant residential address.'" [*Id.*]

89.    In response to Miller's argument, the patent examiner tacitly withdrew the § 101 statutory subject matter rejection and allowed the claims. [6/22/2018 Notice of Allowability, Prosecution History of the '188 Patent, pp. 1-4, a true and correct copy of which is attached hereto as Exhibit 13].

90.    Contrary to Miller's arguments throughout the prosecution of the MMI Patent Portfolio, the claims of the '098 and '188 Patents, as well as the pending claims in the '622 Application and the '686 Application, are all directed to non-statutory subject matter under 35 U.S.C. § 101.

91.    Concerning the '188 Patent, Judge Gilstrap in the U.S. District Court for the Eastern District of Texas recently held the asserted claims invalid under 35 U.S.C. § 101, stating:

> [T]he Court finds that the '188 Patent and its claims do not purport to solve any technical problem associated with prior art products or methods. Instead, the '188 Patent provides a "system for managing the process of performing pre-employment background investigations" to "save organizations time and other costly resources." ('188 Patent at 3:67–4:40.) Put another way, the "subject matter turns much of a common pre-employment background investigation electronic, so that fewer hardcopy documents are necessary, thus creating more efficient management of individual background investigations." *(Id.* at Abstract.) The Court finds such to be an abstract idea directed toward automation of basic information gathering and organization.
>
> ***
>
> The Court is not persuaded by Miller Mendel's argument that the concept of "generating a suggested reference list of one or more law enforcement agencies based on an applicant residential address" is an "additional element" that renders the claims of the '188 Patent non-abstract … Although the '188 Patent mentions, inter alia, computers, servers, mobile phones, and personal headset devices,

the claims and specification lack any disclosure or limitation that indicates a technical improvement of any such components.

\*\*\*

Miller Mendel's focus on novelty and non-obviousness is misplaced. As noted earlier, Miller Mendel once again conflates the analysis of whether the '188 Patent is directed to eligible subject matter under § 101 with whether it meets §§ 102 and 103's novelty requirements.

\*\*\*

Miller Mendel's purported improvement over the prior art is "the alleged efficiency of the method through computerization," which is not enough to confer patent eligibility … The computer and internet technologies described in the '188 Patent are generic, and requiring the use of generic computer technology does not create an inventive concept.

\*\*\*

The '188 Patent claims the well-known process of performing a background check. While the patent inarguably "turns much of a common pre-employment background investigation electronic," such is not enough to make the abstract idea patent eligible. At the end of the day, it remains a "common pre-employment background investigation," which is not eligible for patent protection.

*See* Judge Gilstrap's April 14, 2014 Order in the Texas Action, at pp. 12–13 and 17–20, a true and correct copy of which is attached hereto as Exhibit 14.

92.    After MMI requested Judge Gilstrap to reconsider his Order, on June 9, 2022, Judge Gilstrap confirmed his prior Order finding the asserted claims of the '188 Patent invalid under 35 U.S.C. § 101, stating:

Importantly, Miller Mendel failed to cite or discuss in this Motion the standard for reconsideration or perform any analysis of the 12(c) Order under the factors relevant to a Rule 59(e) motion … Instead, Miller Mendel repackages its previously presented arguments in an effort to show that the 12(c) Order was not based in fact. Miller Mendel certainly has not presented any new evidence or intervening change in case law that casts doubt on the Court's decision to grant the 12(c) Motion, nor has Miller Mendel identified any error or injustice in the 12(c) Order.

\*\*\*

As the Court stated in the 12(c) Order, the '188 Patent itself describes a "system for managing the process of performing pre-employment background investigations" to "save organizations time and other costly resources." (Dkt. No. 41 at 12 (citing '188 Patent at 3:67–4:40).) The '188 Patent explicitly states that the "subject matter turns much of a common pre-employment background

1    investigation electronic, so that fewer hardcopy documents are
2    necessary, thus creating more efficient management of individual
     background investigations." ('188 Patent at Abstract.)

3    \*\*\*

4    The Court did not rely on evidence outside of the '188 Patent to find
     that it was directed to an abstract idea because the language intrinsic
5    to the '188 Patent itself demands such a conclusion. As the Federal
     Circuit has recently held, "the automation of [a] conventional human
6    process to make it more efficient is itself an abstract idea."

7    \*\*\*

8    Miller Mendel's Motion further compels the conclusion that the
     claimed process can be done with pen, paper, and the human mind,
9    and even explicitly outlines how a background investigator would
     have performed such a process based on the language in the '188
10   Patent. (*See, e.g.*, Dkt. No. 47 at 11 (stating that the process can be
     performed by "purchasing maps for every city and state in the
11   country and forcing a human background investigator to spend tens
     if not hundreds of hours poring over such maps with a magnifying
12   glass in the forlorn hope of accurately

13   locating all the relevant law enforcement agencies.").) Indeed, the
     details presented by Miller Mendel regarding how a background
14   investigator would practice the claims without the aid of even a
     generic computer prove the Court's conclusion from the 12(c) Order
15   and demonstrate that, while a "pen and paper version of the claimed
     method would not be particularly efficient, [] it could be completed."
16

17   *See* Judge Gilstrap's June 9, 2022 Order on MMI's Motion for Reconsideration, at. pp. 9–11, a true

18   and correct copy of which is attached hereto as Exhibit 15.

19          93.    Concerning the '686 Application, on June 22, 2022, the USPTO rejected all

20   pending claims of that application under, *inter alia*, 35 U.S.C. § 101, citing Judge Gilstrap's Order

21   invalidating claims 1, 5, and 15 of the '188 Patent. It must be noted that there is no record of

22   Defendants bringing Judge Gilstrap's Order to the examiner's attention (despite the ethical

23   obligation to do so under 37 C.F.R. § 1.56). Instead, the examiner became aware of Judge Gilstrap's

24   Order on their own. A true and correct copy of the USPTO's June 22, 2022 Office Action is attached

25   hereto as Exhibit 16.

26          94.    Concerning the '622 Application, on July 14, 2022, the Patent Trial and Appeal

27   Board finally rejected all claims of that application under, *inter alia*, 35 U.S.C. § 101. A true and

28   / / /

25

1    correct copy of the Patent Trial and Appeal Board's July 14, 2022 Decision on Appeal is attached

2    hereto as Exhibit 17.

3        E.    **Defendants' Patent Infringement Suits and Other Unlawful Attempts to Enforce the MMI Patent Portfolio Against Guardian Customers**

4

5        95.    Defendants first accused Guardian of patent infringement in October 2017,

6    asserting that Guardian's public safety background investigation management software (the

7    "Guardian Platform") infringed the '098 Patent. A true and correct copy of the Defendants' October

8    10, 2017, letter to Guardian is attached hereto as Exhibit 18.

9        96.    As a result of the Defendants' threats, Guardian retained intellectual property

10    counsel to render an opinion as to the validity of the '098 Patent. A true and correct copy of that

11    opinion and its appendices are attached collectively hereto as Exhibit 19.

12        97.    On March 23, 2018, Guardian's counsel sent Defendants' counsel a response

13    communication, stating, amongst other things, that:

14        With respect to the 098 patent, patent law subject matter decisions
        after the U. S. Supreme Court ruling in Alice Corp. Pty. Ltd. v. CLS
15        Bank International, 134 S. Ct. 2347, at 2354 (2014) as to the
        patentability of business methods and certain software based
16        products invoke a more rigorous standard than was applied to the
        098 patent by the U. S. Patent Office during its examination. In fact,
17        those standards are currently part of the Patent Office's Manual of
        Patent Examining Procedures ("MPEP") 2106. Under the Alice
18        ruling, a full slate of U. S. District Court and Federal Circuit cases
        following Alice, and/or MPEP 2106, the validity of all claims of the
19        098 patent are suspect under 35 U.S.C.§101. Please consider this as
        Guardian's response to the Rylander letter.
20

21    A true and correct copy of the March 23, 2018, letter to the Defendants' counsel is attached hereto

22    as Exhibit 20. As such, as early as March 23, 2018, Defendants and their counsel were expressly

23    aware of and were on notice that the claims of the '098 Patent were susceptible to challenge as

24    being directed to non-statutory subject matter under 35 U.S.C. § 101.

25        98.    Defendant's counsel responded in writing on March 30, 2018, a true and correct

26    copy of which is attached hereto as Exhibit 21    .

27        99.    Approximately six months later, on October 9, 2018, Defendants sued the City of

28    Oklahoma City, Case No. 5:18-cv-00990-JD, in the United States District Court for the Western

26

COMPLAINT                                    APPX00499                                    1260427.3

District of Oklahoma (the "Oklahoma Action"), for patent infringement based on the City of Oklahoma City's use of the Guardian Platform. Guardian was contractually obligated to defend and indemnify the City of Oklahoma City against MMI's patent infringement claims and has funded the entirety of the defense in the Oklahoma Action, which remains pending.

100.    Approximately one year into the Oklahoma Action, Defendants attempted to sue Guardian for patent infringement in the Western District of Oklahoma. Still, the Oklahoma Court disallowed the claim as Guardian is neither incorporated in Oklahoma nor does it maintain a regular and established place of business there, as required by 28 U.S.C. § 1400(b) following the Supreme Court's decision in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 581 U.S. ____, 137 S.Ct. 1514, 197 L.Ed.2d 816 (2017). As such, the Oklahoma Court was not the proper venue to bring suit against Guardian for patent infringement.

101.    On February 1, 2021, MMI sued Washington County, Oregon, and Washington County (OR) Sheriff's Office, Case No. 3:21-cv-00168-SB, in the United States District Court for the District of Oregon (the "Oregon Action"), for patent infringement based on the Sheriff's Office's use of the Guardian Platform. As in the Oklahoma Action, Guardian was contractually obligated to defend and indemnify Washington County, Oregon, against MMI's claims of patent infringement and has funded the entirety of the defense in the Oregon Action, which remains pending. On April 2, 2021, the Oregon Court, upon a contested motion by Guardian, through its indemnitees Washington County and the Sheriff's Office, stayed the proceedings in the Oregon Action pending the outcome in the Oklahoma Action.

102.    On May 28, 2021, Defendants sued the Alaska State Troopers and James E. Cockrell, Commissioner of the State of Alaska Department of Public Safety, Case No. 3:21-cv-00129-HRH, in the United States District Court for the District of Alaska (the "Alaska Action"), for patent infringement based on the Alaska State Troopers' use of the Guardian Platform. As in the Oklahoma and Oregon Action, Guardian was contractually obligated to defend and indemnify the Alaska State Troopers against MMI's patent infringement claims and has funded the entirety of the defense in the Alaska Action, which remains pending. On August 19, 2021, the Alaska Court, upon

/ / /

1   a contested motion by Guardian, through its indemnitee, the Alaska State Troopers, stayed the

2   proceedings in the Alaska Action pending the outcome in the Oklahoma Action.

3          103.    On December 2, 2021, MMI sued the City of Anna, Texas, and the Anna (TX)

4   Police Department, Case No. 2:21-cv-00445-JRG, in the United States District Court for the Eastern

5   District of Texas (the "Texas Action"), for patent infringement based on the Anna Police

6   Department's use of the Guardian Platform. As in the Oklahoma, Oregon, and Alaska Actions,

7   Guardian was contractually obligated to defend and indemnify the City of Anna, Texas, against

8   MMI's patent infringement claims and has funded the entirety of the defense in the Texas Action.

9          104.    In place of seeking to stay the Texas Action, Guardian, through its indemnitee City

10  of Anna, Texas, shortly after answering the complaint, moved for judgment on the pleadings that

11  the '188 Patent was invalid under 35 U.S.C. § 101. The district court granted the motion, denied

12  MMI's motion for reconsideration, and clarified that its order invalidating the claims under 35

13  U.S.C. § 101 "pertained only to claims 1, 5, and 15" of the '188 Patent because "[t]he Court did not

14  analyze any other claim because the Court did not understand any other claim was asserted."

15         105.    In addition to the four lawsuits, MMI and/or Miller have filed against Guardian

16  customers, Defendants have threatened scores of Guardian's actual and prospective customers with

17  litigation, warning them that they will be sued for their actual or potential use of the Guardian

18  Platform. Miller and/or MMI's threats have resulted in millions of dollars of lost revenue to

19  Guardian.

20         106.    Since Defendants sued The City of Oklahoma City, Oklahoma, in October 2018

21  for alleged patent infringement based on its use of the Guardian Platform, Guardian is aware of

22  over ninety (90) agencies that Defendants have sued or threatened to sue for patent infringement

23  for their use or potential use of the Guardian platform.

24         107.    Guardian is also aware of seventeen (17) agencies that ceased using the Guardian

25  Platform, decided not to use the Guardian Platform, and/or elected to use the Miller Mendel eSOPH

26  public safety background investigation management software because of Defendants' threats of

27  protracted and expensive patent infringement litigation. The known agencies fitting this description

28  include:

- Anoka, Minnesota;

- Bothell, Washington Police Department;

- Bozeman, Montana Police Department;

- Broken Arrow, Oklahoma Police Department;

- Buckeye, Arizona;

- CA Dept of Corrections;

- Fort Worth, Texas Police Department;

- Fresno, California Police Department;

- Gilbert, Arizona Police Department;

- Hennepin County, Minnesota Sheriff's Office;

- Kern County, California Sheriff's Office;

- Maricopa County, Arizona Sheriff's Office;

- Minnesota State Highway Patrol;

- New Orleans, Louisiana Police Department;

- Orange County, California District Attorney's Office;

- Salem, Oregon Police Department; and

- University of Missouri Police Department.

108.    As a direct result of Defendants' threats, Guardian conservatively estimates it has lost more than seven figures in recurring annual revenues due to MMI's threats to sue users or potential users of the Guardian Platform.

109.    Despite the significant growth of Guardian's customer base from its first contact with Defendants' counsel, Guardian has been unable to publicize its growth publicly or adequately acknowledge the existence of its customers because of Guardian's fear of Defendants' potential interference with Guardian's contractual relationships. Defendants' threats and interfering actions continue to stifle Guardian's ability to grow its base of customers using the Guardian Platform. The Defendants' actual and prospective threats to and interference with Guardian's customers have artificially stifled Guardian's growth, thereby chilling competition in the Market.

/ / /

110.    In a February 24, 2020 communication to Guardian, a true and correct copy of which is attached hereto as Exhibit 22, the City of Gilbert, Arizona advised it was "notified in writing by Mr. Tyler Miller with Miller Mendel, Inc. about a pending patent infringement case in Federal Court in Federal Court against Guardian Alliance Technologies," and that "Gilbert does not want to be involved in this litigation." The City of Gilbert subsequently suspended its use of the Guardian Platform.

111.    In a March 27, 2020 communication to Guardian, a true and correct of which is attached hereto as Exhibit 23, the Story County, Iowa Sheriff's Office forwarded a message from Defendants, in which Miller threatens, "[s]hould the County fail to cease using [Guardian's] infringing service/product, further legal correspondence will have to be forthcoming."

112.    In an August 16, 2021 communication, a true and correct copy of which is attached hereto as Exhibit 24, the City of Fresno, California Police Department notified Guardian that it was "terminating its contract with [Guardian] due to the pending litigation involving [Guardian], Miller Mendel, Inc., and law enforcement agencies utilizing [Guardian] software."

113.    In an October 13, 2021 communication, a true and correct copy of which is attached hereto as Exhibit 25, the City of Fort Worth, Texas advised Guardian that, because of Defendant MMI's threat that "it intended to sue the City [of Fort Worth] if [it] did not immediately halt all use of the [Guardian] software," the City of Fort Worth "is officially suspending its right to purchase goods or services through the Contract [with Guardian] immediately, pending resolution of the patent litigation in Oklahoma Federal Court."

114.    In a January 24, 2022 communication to the Cedar Rapids, Iowa Police Department, which was subsequently forwarded to Guardian, a true and correct copy of which is attached hereto as Exhibit 26, Defendants warned they "will continue to file claims against those who use the [Guardian] software."

115.    It's not just that Defendants continue to threaten users of the Guardian Platform aggressively; instead, Defendants have repeatedly made false and misleading statements about the MMI Patent Portfolio as well as the course and outcome of Defendants' lawsuits against users of the Guardian Platform. Defendants' false and misleading statements have significantly affected

actual and potential users of the Guardian Platform—an inherently risk-averse type of Market participant.

116.    In a March 26, 2020 communication to Guardian customer the State of Alaska, a true and correct copy of which is attached hereto as Exhibit 27, Defendants intentionally misstated the result, scope, and effect of a decision by the Patent Trial and Appeal Board ("PTAB") in a collateral *inter partes* review ("IPR") proceeding. Defendants misstated that the PTAB's decision "illustrates Guardian Alliance Technologies' Infringement and failed attempt to cover his [sic]patent infringement/theft." As Guardian's counsel promptly pointed out to counsel-of-record for Defendants, this statement is false as the Patent Trial and Appeal Board ***does not have*** jurisdiction to determine liability for infringement of a patent.

117.    Despite Guardian's requests to Defendants' counsel to cure these false statements in the marketplace, Defendants ramped up their unfair and anti-competitive actions in the Market. For example, Defendants began publishing and circulating a so-called "memo" in the Market about Guardian and the Guardian Platform. This "memo" contained a "large number of literal falsehoods, egregious misrepresentations and inaccuracies, and selective withholding of material information," as Guardian's counsel once again pointed out to Defendants' counsel. A true and correct copy of the "memo," as contained in a July 25, 2021 email from Miller to the City of Buckeye, Arizona and subsequently provided to Guardian's counsel, is attached hereto as Exhibit 28.

118.    Again, Defendants did not heed Guardian's demands to cease their unfair and anti-competitive behavior; instead, amplifying their efforts by subsequently making the "memo" available to the general public through an October 1, 2021 "open letter" on Defendants' website at https://www.millermendel.com/news/serious-public-concerns-miller-mendels-president-ceos-public-letter-regarding-guardian-background-software/, a true and correct copy of which is attached hereto as Exhibit 29. As of the date of the commencement of this suit, the "memo" and "open letter" are still available at that location.

119.    In the "open letter," a true and correct copy of which is attached hereto as Exhibit 30, Defendants explain their deliberate decision to target Guardian's vulnerable public safety customers instead of filing suit directly against Guardian:

31

1

2

3

4

> MMI has been asked why it has filed lawsuits against agencies using the Guardian software. The answer is this: the actual use of the Guardian software by the agency is the damaging aspect to MMI. If Guardian made the software but no agency "bought" the software to use, monetary damage would be little. The agency paying Guardian to use the infringing software is where the damage begins and continues.

5

> \*\*\*

6

7

8

9

> Regardless of whether Guardian indemnifies your agency and employees for your use of the Guardian software, **your agency and employees will have to navigate** the complicated process of defending yourselves in a patent infringement lawsuit, which includes producing labor-intensive discovery and (potentially) appearing for depositions.

10   (Emphasis added.) In addition to its misleading, at best, statements of law and fact in this "open

11   letter," Defendants took the liberty of outlining exactly how demanding and taxing the use of the

12   Guardian Platform would be for any public safety agency. The contours of Defendants' unfair,

13   anti-competitive, and monopolistic scheme are quite apparent from this "open letter."

14        120.     Even after Judge Gilstrap, Chief Judge of the Eastern District of Texas invalidated

15   Claims 1, 5, and 15 of the '188 Patent (i.e., the claims that Defendants have accused Guardian's

16   customers of infringing in the Oklahoma, Oregon, Alaska, and Texas Actions), Defendants'

17   attempts to intimidate actual and potential users of the Guardian Platform remain brazen. Guardian

18   continues to threaten the Market, issuing threats of patent infringement and claiming that

19   Defendants' patent remains in "full force and effect." This facially false and misleading, at best,

20   statement was included in a press release dated May 3, 2022, a true and correct copy of which is

21   attached hereto as Exhibit 31 and still available on Defendants' website as of the commencement of

22   this     suit     (https://www.millermendel.com/news/miller-mendels-esoph-patent-remains-in-full-

23   effect-after-judges-decision/).   The statements made in this press release have also been

24   communicated directly to at least some number of users of the Guardian Platform. For example, a

25   true and correct copy of Defendants' May 17, 2022 communication to Guardian customer Siskiyou

26   County (CA) Sheriff's Department attaching the "memo" and "open letter," subsequently provided

27   to Guardian's counsel is attached hereto as Exhibit 32.

28   ///

COMPLAINT                         APPX00505                                          1260427.3

121.    Even on the eve of the commencement of this suit, Defendants continue to directly contact users of the Guardian Platform, once again alerting them that Defendants have sued users of the Guardian Platform for patent infringement, asserting that ***all claims*** of the MMI Patent Portfolio are in full force and effect despite the Eastern District of Texas's invalidation, and repeating the egregious allegations contained in the "memo."

122.    These are a few examples of Defendants' unfair, anti-competitive conduct as part of its overt attempts to stifle competition and monopolize the Market.

123.    Defendants' attempted enforcement of the fraudulently-obtained MMI Patent Portfolio against current and prospective users of the Guardian Platform, Defendants' spreading of false and misleading statements in the marketplace about certain aspects of the Guardian Platform, and Guardian's business practices (i.e., the allegations found in the "memo"), alone or in combination with Defendants' other unfair, anti-competitive, and monopolistic conduct, has significantly harmed Guardian and injured the Market.

124.    Defendants' unfair, anti-competitive, and monopolistic conduct has forced Guardian to expend significant amounts of time, money, and human resources to defend and indemnify its customers that Defendants have sued—including the time and expense incurred by Guardian to explain the falsity of Defendants' statements and actions, and to mitigate the risk of Defendants' potential to bring suit against current and prospective users of the Guardian Platform.

125.    Defendants' unfair, anti-competitive, and monopolistic conduct has stifled Guardian's commercial growth and, therefore, competition in the Market due to Guardian's and current and prospective users of the Guardian Platform's fears of having to defend against baseless patent infringement lawsuits. As exemplified above, public safety agencies have ceased use of or refrained from using the Guardian Platform altogether amid Defendants' threats.

126.    Guardian and the Market have been harmed by Defendants' procurement of "sole-source" qualification (erroneously awarded based on the fraudulently-obtained MMI Patent Portfolio), thereby allowing Defendants to avoid open and competitive RFP processes for the sale of its public safety background investigation management software, eSOPH. Defendants' sole-source qualification has prevented Guardian, and other competitors of public safety background

1  investigation management software, from bidding in RFP processes, thereby decreasing

2  competition in the Market and maintaining monopoly-level pricing, harming the Market

3  participants as a whole.

4      127.    With this suit, Guardian seeks redress and compensation for itself, and on behalf of

5  the Market, for Defendants' unfair, anti-competitive, and monopolistic conduct. Grant of the relief

6  sought herein by Guardian will return competition to the Market by reversing the chilling effect

7  that Defendants' unfair, anti-competitive, monopolistic conduct has had on the Market.

8                         **FIRST CLAIM FOR RELIEF**

9              **Declaration of Unenforceability of the '098 Patent for**

10                  **Defendants' Inequitable Conduct**

11      128.    Guardian incorporates and realleges paragraphs 1–127 herein by reference.

12      129.    Specifically, Guardian incorporates by reference the allegations set forth in

13  paragraphs 33–78 above.

14      130.    An immediate, real, and justiciable controversy exists between Guardian and

15  Defendants regarding the enforceability of the '098 Patent.

16      131.    Guardian seeks a judgment declaring that the claims of the '098 Patent are

17  unenforceable under the doctrine of inequitable conduct.

18                        **SECOND CLAIM FOR RELIEF**

19              **Declaration of Unenforceability of the '188 Patent for**

20                  **Defendants' Inequitable Conduct**

21      132.    Guardian incorporates and realleges paragraphs 1–131 herein by reference.

22      133.    Specifically, Guardian incorporates by reference the allegations set forth in

23  paragraphs 33–78 above.

24      134.    An immediate, real, and justiciable controversy exists between Guardian and

25  Defendants regarding the enforceability of the '188 Patent.

26      135.    Guardian seeks a judgment declaring that the claims of the '188 Patent are

27  unenforceable under the doctrine of inequitable conduct.

28  / / /

COMPLAINT                    APPX00507                    1260427.3

1

**THIRD CLAIM FOR RELIEF**

2

**Declaratory Judgment of Invalidity of the '098 Patent**

3

**Under 35 U.S.C. §§ 101, 102, 103, and 112**

4      136.    Guardian incorporates and realleges paragraphs 1–135 herein by reference.

5      137.    Specifically, Guardian incorporates by reference the allegations set forth in

6  paragraphs 33–94 above.

7      138.    All claims of the '098 Patent are invalid under *at least* 35 U.S.C. §§ 101, 102, 103,

8  and 112.

9      139.    An immediate, real, and justiciable controversy exists between Guardian and

10  Defendants regarding the validity of the '098 Patent.

11      140.    Guardian seeks a judgment declaring that the claims of the '098 Patent are invalid.

12

**FOURTH CLAIM FOR RELIEF**

13

**Declaratory Judgment of Invalidity of the '188 Patent**

14

**Under 35 U.S.C. §§ 101, 102, 103, and 112**

15      141.    Guardian incorporates and realleges paragraphs 1–140 herein by reference.

16      142.    Specifically, Guardian incorporates by reference the allegations set forth in

17  paragraphs 33–94 above.

18      143.    All claims of the '098 Patent are invalid under *at least* 35 U.S.C. §§ 101, 102, 103,

19  and 112.

20      144.    An immediate, real, and justiciable controversy exists between Guardian and

21  Defendants regarding the validity of the '188 Patent.

22      145.    Guardian seeks a judgment declaring that the claims of the '098 Patent are invalid.

23

**FIFTH CLAIM FOR RELIEF**

24

***Walker Process:* Attempted Monopolization in**

25

**Violation of § 2 of the Sherman Act, 15 U.S.C. § 2**

26      146.    Guardian incorporates and realleges paragraphs 1–145 herein by reference.

27  / / /

28  / / /

35

APPX00508    1260427.3

147.    Defendants have attempted to monopolize the Background Investigation Management Software Management Market, a nationwide market in which Defendants are actively engaged in interstate commerce.

148.    Defendants have attempted to monopolize the Market with the specific intent to do so through their fraudulent misrepresentations and omissions to the USPTO in connection with the prosecution of the MMI Patent Portfolio, creating a dangerous probability that Defendants will obtain a monopoly in the Market in violation of Section 2 of the Sherman Act (15 U.S.C. § 2).

149.    The MMI Patent Portfolio that Defendants asserted and threatened to assert against Guardian and its customers was invalid and unenforceable due to inequitable conduct, as a result of egregious affirmative misconduct before the USPTO and/or intentional withholding of information that was but-for material to patentability, and/or unclean hands based on egregious misconduct before the USPTO in the prosecution of the MMI Patent Portfolio.

150.    Defendants knew that the '098 and '188 Patents asserted against Guardian and its customers were invalid and unenforceable at the time of those assertions and attempted assertions, as described in paragraphs 33 to 94, above.

151.    As a direct and proximate result of Defendants' unlawful conduct, competition in the Market has been severely harmed through price control, less innovation, lower quality, and fewer options for customers.

152.    As a direct and proximate result of Defendants' unlawful conduct, Guardian has been harmed in an amount to be established at trial. Guardian's damages include the attorneys' fees and costs it has been forced to incur in defending against Defendants' baseless claims for infringement against Guardian and its customers, as well as the anti-competitive harm it has suffered as a result of Defendants' unlawful attempt to acquire and maintain a monopoly in the Market, including loss of past and future profits and loss of past and future customers and customer goodwill.

153.    Defendants' unlawful conduct will continue unless enjoined, resulting in irreparable injury to Guardian for which it has no adequate remedy at law.

/ / /

## SIXTH CLAIM FOR RELIEF

### *Handgards:* **Attempted Monopolization in Violation of § 2**

### **of the Sherman Act, 15 U.S.C. § 2**

154.    Guardian incorporates and realleges paragraphs 1–153 herein by reference.

155.    Defendants have attempted to monopolize the Public Safety Background Investigation Software Management Market, a nationwide market in which Defendants are actively engaged in interstate commerce.

156.    Defendants have attempted to monopolize the Market with the specific intent to do so through sham legal actions asserting infringement of MMI Patent Portfolio against Guardian and its customers, creating a dangerous probability that Defendants will obtain a monopoly in the Market, in violation of Section 2 of the Sherman Act (15 U.S.C. § 2).

157.    As a direct and proximate result of Defendants' unlawful conduct, competition in the Market has been severely harmed through price control, less innovation, lower quality, and fewer options for customers.

158.    As a direct and proximate result of Defendants' unlawful conduct, Guardian has been harmed in an amount to be established at trial. Guardian's damages include the attorneys' fees and costs it has been forced to incur in defending against Defendants' baseless claims for infringement against Guardian and its customers, as well as the anti-competitive harm it has suffered as a result of Defendants' unlawful attempt to acquire and maintain a monopoly in the Market, including loss of past and future profits and loss of past and future customers and customer goodwill.

159.    Defendants' unlawful conduct will continue unless enjoined, resulting in irreparable injury to Guardian for which it has no adequate remedy at law.

## SEVENTH CLAIM FOR RELIEF

### **California Unfair Competition**

### **CAL BUS. & PROF. CODE § 17200**

160.    Guardian incorporates and realleges paragraphs 1–159 herein by reference.

/ / /

161. Defendants' unfair or fraudulent business actions and unfair, deceptive, untrue, or misleading advertising is prohibited by Chapter 1 of Part 3 of Division 7 of the California Business and Professions Code.

162. Defendants have engaged in unfair competition and should, therefore, be enjoined by this court, preventing Defendants from the use or employment by any person of any practice which constitutes unfair competition, as is necessary to restore Guardian's interests.

163. Defendants have realized revenue and profits by virtue of their wrongful acts that they otherwise would not have obtained and to which they are not entitled. Guardian is entitled to Civil Penalties as indicated in Cal. Bus. & Prof. Code § 17206.

164. Defendants' conduct injured Guardian's commercial interest in its sales and profits and its business in an amount of damages to be determined at trial.

165. Defendants' conduct has caused and, unless and until such acts are restrained and enjoined by this court, will continue to cause irreparable injury to Guardian.

166. As a result of Defendants' actions, Guardian has suffered and will continue to suffer damages in an amount to be proven at trial.

**EIGHTH CLAIM FOR RELIEF**

**California False Advertising**

**CAL BUS. & PROF. CODE § 17500**

167. Guardian incorporates and realleges paragraphs 1–166 herein by reference.

168. Defendants disseminated false, misleading, and/or disparaging statements knowing that the statements were false or in reckless disregard for the truth of the matter, with the intention selling their own services.

169. Defendants have made false, misleading, and/or disparaging statements nationwide, including in California, and those statements were further disseminated to the relevant purchasing public in the Market, including in California.

170. Defendants' false, misleading, and/or disparaging statements have misled, or will likely mislead, actual or potential purchasers of Guardian's services, damaged Guardian's reputation in the Market, lessened the goodwill in the Market associated with Guardian's services,

1    and wrongfully diverted sales of services to Defendants. As a result, Guardian has suffered

2    pecuniary losses as a result of Defendants' false, misleading, and disparaging statements.

3       171.   Defendants' conduct has caused and, unless and until such acts are restrained and

4    enjoined by this court, will continue to cause irreparable injury to Guardian.

5       172.   As a result of Defendants' actions, Guardian has suffered and will continue to suffer

6    damages in an amount to be proven at trial.

7                          **NINTH CLAIM FOR RELIEF**

8                          **Tortious Interference with Contract**

9       173.   Guardian incorporates and realleges paragraphs 1–172 herein by reference.

10      174.   Defendants knew when soliciting, attempting to enforce, and/or threatening to

11   enforce its fraudulently-obtained patent portfolio against Guardian's actual customers that

12   Defendants had procured those patents through fraud committed on the USPTO.

13      175.   Such solicitation, attempted and/or threatened enforcement resulted in current

14   Guardian customers electing to no longer use the Guardian Platform.

15      176.   Those actions and those described above constitute intentional interference with

16   Guardian's contractual and business relationships.

17      177.   Guardian has been damaged by such interference and is entitled to an award of

18   compensatory and punitive damages in an amount to be determined at trial but in excess of $75,000.

19      178.    Guardian is entitled to judgment in its favor and against Defendants in an amount

20   in excess of $75,000, plus its costs, including reasonable attorneys' fees, plus prejudgment and post-

21   judgment interest as provided by law.

22                          **TENTH CLAIM FOR RELIEF**

23                  **Tortious Interference with Prospective Business Advantage**

24      179.   Guardian incorporates and realleges paragraphs 1–178 herein by reference.

25      180.   Defendants knew when soliciting, attempting to enforce, and/or threatening to

26   enforce its fraudulently-obtained patent portfolio against Guardian's prospective customers that

27   Defendants had procured those patents through fraud committed on the USPTO.

28   / / /

COMPLAINT                    APPX00512                    1260427.3

181.    Such solicitation, attempted and/or threatened enforcement resulted in prospective Guardian customers electing to not use the Guardian Platform and, instead, use Defendants' eSOPH software.

182.    Those actions and those described above constitute intentional interference with Guardian's prospective business relationships.

183.    Guardian has been damaged by such interference and is entitled to an award of compensatory and punitive damages in an amount to be determined at trial but in excess of $75,000.

184.    Guardian is entitled to judgment in its favor and against Defendants in an amount in excess of $75,000, plus its costs, including reasonable attorneys' fees, plus prejudgment and post-judgment interest as provided by law.

**ELEVENTH CLAIM FOR RELIEF**

**Trade Libel**

185.    Guardian incorporates and realleges paragraphs 1–184 herein by reference.

186.    Defendants' communications to Guardian's current and prospective customers regarding the status of the various litigations and proceedings between Guardian, its customers, and Defendants, and Defendants' "memo" and "open letter" published by Defendants on their website and disseminated to multiple Guardian current and prospective customers, contain false statements that are injurious to Guardian and its business of providing public safety background investigation management software to public safety agencies.

187.    Specifically, Defendants have falsely represented to numerous Guardian customers that the USPTO issued a decision that "illustrates Guardian Alliance Technologies' Infringement and failed attempt to cover his (*sic*) patent infringement/theft." That statement is literally false, as the USPTO never issued any decision finding that Guardian infringed any of the Defendants' patents and, in fact, does not even have the authority or jurisdiction to do so.

188.    Moreover, the "memo" and "open" letter contain literal falsehoods regarding the status of Defendants' various litigations and proceedings against Guardian and its customers, as well as literal falsehoods regarding the integrity of applicant data collected and stored in the Guardian Platform.

COMPLAINT                    APPX00513                    1260427.3

189.    Defendants have always been aware of its accused statements' false, malicious, and injurious nature. Even after Guardian and its counsel made Defendants aware of the literal falsity of its statements, Defendants refused to retract the statements and, in fact, ramped up their dissemination of the same. Defendants are, therefore, without excuse or justification for their acts and statements. They have made such statements and engaged in such acts with disinterested malevolence and hatred, all for inflicting harm upon Guardian.

190.    As a direct result of Defendants' false statements, multiple Guardian customers have elected to discontinue their use of the Guardian Platform. This includes but is not limited to the Fresno (CA) Police Department, the City of Fort Worth (TX), and the City of Buckeye (AZ), resulting in actual damages to Guardian in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Guardian prays for judgment and relief as follows:

A.    A declaratory judgment that the '098 Patent is unenforceable for Defendants' inequitable conduct;

B.    A declaratory judgment that the '188 Patent is unenforceable for Defendants' inequitable conduct;

C.    A declaratory judgment that the '098 Patent is invalid;

D.    A declaratory judgment that the '188 Patent is invalid;

E.    A judgment in favor of Guardian declaring that Defendants have attempted to monopolize the Public Safety Background Investigation Management Software Market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2;

F.    A permanent injunction against Defendants, their respective officers, agents, servants, directors, and employees, and all persons in active concert or participation with each, from monopolizing and attempting to monopolize the relevant markets under Section 16 of the Clayton Act, 15 U.S.C. § 26;

G.    A permanent injunction against Defendants from enforcing or attempting to enforce any claims of any patent or patent application in the MMI Patent Portfolio or any claims

/ / /

COMPLAINT                    APPX00514                    1260427.3

1  of any patent or patent application that claims priority to any patent or patent application in the

2  MMI Patent Portfolio;

3        H.      A permanent injunction against Defendants from using any false or misleading

4  statements which can or are likely to influence customers' purchasing decisions of any of

5  Defendants' services or products;

6        I.      A judgment and order requiring Defendants to account to Guardian for all sales

7  and profits from the sale of any of Defendants' services or products as a result of any false or

8  misleading statements, or for any sum in addition to that amount the Court and/or jury awards;

9        J.      An award to Guardian of actual and compensatory damages, including but not

10  limited to lost profits and attorneys' fees and costs, trebled by law, plus interest;

11        K.      A judgment and order requiring Defendants to disgorge its profits and other ill-

12  gotten gains resulting from their wrongful conduct;

13        L.      A judgment and order for Guardian to be awarded punitive and/or enhanced

14  damages because of Defendants' wanton and deliberate illegal acts committed with oppression,

15  fraud, and malice;

16        M.      A judgment finding that this is an exceptional case and awarding attorneys' fees

17  pursuant to 35 U.S.C. § 285;

18        N.      A judgment and order allowing Guardian to recover all taxable costs of this

19  actions, including reasonable attorneys' fees and both pre-and post-judgment interest; and

20        O.      Any and all other relief, at law or equity, to which Guardian may show itself to be

21  entitled.

22  **DEMAND FOR JURY TRIAL**

23        Under Rule 38 of the Federal Rules of Civil Procedure, Guardian requests a trial by jury of

24  any issues so triable by right.

25  / / /

26  / / /

27  / / /

28  / / /

COMPLAINT          APPX00515          1260427.3

Dated:  August 5, 2022                    BOUTIN JONES INC.
                                          Attorneys at Law


                                          By:     /s/ Robert D. Swanson
                                                  Robert D. Swanson
                                                  Daniel S. Stouder

                                                  *and*

                                                  DUNLAP CODDING PC
                                                  Douglas J. Sorocco
                                                  Evan W. Talley

                                          Attorneys for Plaintiff
                                          Guardian Alliance Technologies, Inc.

43

COMPLAINT                    APPX00516                          1260427.3

**BOUTIN JONES INC.**
Robert D. Swanson (CA Bar No. 162816)
Daniel S. Stouder (CA Bar No. 226753)
555 Capitol Mall, Suite 1500
Sacramento, CA 95814-4603
T: (916) 321-4444/F: (916) 441-7597
Email: rswanson@boutinjones.com
         dstouder@boutinjones.com

**RYAN WHALEY PLLC**
Evan W. Talley (*Pro Hac Vice*)
400 North Walnut Avenue
Oklahoma City, OK 73104
T: (405) 239-6040
Email: etalley@ryanwhaley.com

**DUNLAP CODDING PC**
Douglas J. Sorocco (*Pro Hac Vice*)
609 West Sheridan Avenue
Oklahoma City, OK 73102
T: (405) 607-8600/F: (405) 607-8686
Email: dsorocco@dunlapcodding.com

*Attorneys for Plaintiff*
*Guardian Alliance Technologies, Inc.*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| GUARDIAN ALLIANCE TECHNOLOGIES, INC., a California corporation;<br><br>     Plaintiff,<br><br>vs.<br><br>MILLER MENDEL, INC., a Washington corporation; and TYLER MILLER, an individual;<br><br>     Defendants. | **Case No. 2:22-CV-01390-WBS-AC**<br><br>**PLAINTIFF GUARDIAN ALLIANCE TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(c); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: November 24, 2025<br>Time: 1:30 p.m.<br>Judge: Hon. William B. Shubb<br>    Courtroom 5, 14th Floor<br>    2500 Tulare St.<br>    Fresno, CA 93721<br><br>Complaint filed: August 5, 2022 |

1
2

**TO THE COURT, CLERK OF COURT, AND DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

3     **PLEASE TAKE NOTICE THAT** November 24, 2025, at 1:30 p.m., or as soon thereafter

4
as the matter may be heard before the Honorable William B. Shubb, United States District Court

5
for the Eastern District of California, located in Courtroom 5, 14th Floor at 501 I Street, Suite 4-

6
7
200, Sacramento California 95814. Plaintiff Guardian Alliance Technologies, Inc ("GAT") will and

8
hereby does move the Court for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and 35

9
U.S.C. § 101, as to its third and fourth causes of action for invalidity of claims 2–4 and 6–14 of

10
U.S. Patent No. 10,043,188 and all of the claims, 1–14, of its parent patent, U.S. Patent No.

11
9,070,098 (collectively, the "Remaining Claims"). *See* Dkt. No. 51, *First Amended Complaint*, pp.

12
42–43.

13
GAT bases its Motion upon this Notice of Motion, the Memorandum of Points and

14
15
Authorities, the record and pleadings included herewith, and such other and further documentary,

16
demonstrative, or oral evidence as may be requested or permitted by the Court.

17

18
DATED: August 21, 2025

19                                                              s/ Evan W. Talley
20                                                              **RYAN WHALEY PLLC**
                                                                Evan W. Talley (*Pro Hac Vice*)
21                                                              400 North Walnut Avenue
                                                                Oklahoma City, OK 73104
22                                                              T: (405) 239-6040
                                                                Email: etalley@ryanwhaley.com
23

24

25

26

27

28

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS
PURSUANT TO FED. R. CIV. P. 12(c)

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................ 1

II. STATEMENT OF THE ISSUES TO BE DECIDED ................................... 2

III. PROCEDURAL HISTORY ......................................................................... 3

IV. FACTUAL BACKGROUND ...................................................................... 3

   A. DISCLOSURES OF THE '098 AND '188 PATENTS .............................. 3

   B. THE REMAINING CLAIMS ................................................................... 5

V. ARGUMENT AND AUTHORITIES ........................................................... 7

   A.  THE STANDARD FOR RULE 12(c) MOTIONS FOR JUDGMENT ON

      THE PLEADINGS TO INVALIDATE UNDER 35 U.S.C. § 101 ........................... 7

   B. THE REMAINING CLAIMS ARE INVALID UNDER 35 U.S.C. § 101 .................. 9

      (1) Alice Step One: Like the Invalidated Claims, the Remaining Claims

      are directed to the abstract idea of conducting background checks .................. 9

      (2) Alice Step Two: Like the Invalidated Claims, the Remaining Claims

      do not contain an inventive concept ................................................... 13

CONCLUSION ................................................................................................ 16

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS
PURSUANT TO FED. R. CIV. P. 12(c)

1

2

## <u>TABLE OF AUTHORITIES</u>

Cases                                                                                                    Page(s)

3

4

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) .......................................................................2, 9, 13, 15

5

6

*Apple, Inc. v. Ameranth, Inc.*,
    842 F.3d 1229 (Fed. Cir. 2016) ....................................................................... 15

7

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
    687 F.3d 1266 (Fed. Cir. 2012) ....................................................................... 15

8

9

*Bascom Research, LLC v. LinkedIn, Inc.*,
    2015 WL 149480 (N.D. Cal. Jan. 5, 2015) ...................................................... 15

10

11

*BuySAFE, Inc. v. Google Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014) ................................................................... 8, 11

12

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
    859 F.3d 1352 (Fed Cir. 2017) .......................................................................... 5

13

14

*Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
    958 F.3d 1178 (Fed. Cir. 2020) ....................................................................... 10

15

16

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014) ...................................................................... 5, 8

17

18

*Diamond v. Diehr*,
    450 U.S. 175 (1981) ........................................................................................... 9

19

*Dworkin v. Hustler Mag., Inc.*,
    867 F.2d 1188 (9th Cir. 1989) ........................................................................... 7

20

21

*Elec. Power Group, LLC v. Alstom S.A.*,
    830 F. 3d 1350 (Fed. Cir. 2016) ...................................................................... 12

22

23

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,
    896 F.2d 1542 (9th Cir. 1989) ........................................................................... 7

24

25

*In re Killian*,
    45 F.4th 1373 (Fed. Cir. 2022) ........................................................................ 10

26

*Kaavo Inc. v. Amazon.com Inc.*,
    323 F. Supp. 3d 630 (D. Del. 2018) ................................................................. 11

27

28

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS
PURSUANT TO FED. R. CIV. P. 12(c)

566 U.S. 66, 132 S. Ct. 1289 (2012)................................................................9, 13

*Miller Mendel, Inc. v. City of Anna, Texas*,
107 F.4th 1345 (Fed. Cir.)............................................................................Passim

*Miller Mendel, Inc. v. City of Anna, Texas*,
598 F. Supp. 3d 486 (E.D. Tex. 2022).........................................................Passim

*Miller Mendel, Inc. v. City of Anna, Texas*,
2022 WL 2700334 (E.D. Tex. June 9, 2022)....................................................... 1

*Morgan v. Cnty. of Yolo*,
436 F. Supp. 2d 1152 (E.D. Cal. 2006) ............................................................. 7

*MyMail, Ltd. v. OoVoo*, LLC,
613 F. Supp. 3d 1142 (N.D. Cal. 2020)............................................................. 8

*OIP Techs., Inc. v. Amazon.com, Inc.*,
788 F.3d 1359 (Fed. Cir. 2015) ............................................................9, 13, 15

*PerformancePartners, LLC v. FlashParking, Inc*.,
697 F. Supp. 3d 678 (W.D. Tex. 2023) ............................................................. 11

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
855 F.3d 1322 (Fed. Cir. 2017) ......................................................................... 8

*Samsung Elecs. Co. v. Blaze Mobile, Inc.*,
673 F. Supp. 3d 1066 (N.D. Cal. 2023)..........................................................7, 8

*SAP Am., Inc. v. InvestPic*, LLC,
898 F.3d 1161 (Fed. Cir. 2018) ..............................................................5, 8, 14

*SkillSurvey, Inc. v. Checkster LLC*,
178 F. Supp. 3d 247 (E.D. Pa. 2016).....................................................12, 15, 16

*Trinity Info Media, LLC v. Covalent, Inc.*,
72 F.4th (Fed. Cir. 2023)........................................................................5, 10, 14

*Two-Way Media Ltd. v. Comcast Cable Comms, LLC*,
874 F.3d 1329 (Fed. Cir. 2017) ....................................................................... 13

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed.Cir.2014)............................................................................. 8

**Statutes**

35 U.S.C. § 101................................................................................................Passim

APPX00521

**Rules**

FED. R. CIV. P. 5 .................................................................................................................... 17

FED. R. CIV. P. 12(c) .....................................................................................................Passim

FED. R. CIV. P. 12(b) ................................................................................................................ 7

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS
PURSUANT TO FED. R. CIV. P. 12(c)

Plaintiff Guardian Alliance Technologies, Inc. ("GAT"), respectfully moves this Court for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and 35 U.S.C. § 101 as to its third and fourth causes of action for invalidity of claims 2–4 and 6–14 of U.S. Patent No. 10,043,188 and all of the claims, 1–14, of its parent patent, U.S. Patent No. 9,070,098 (collectively, the "Remaining Claims"). *See* Dkt. No. 51, *First Amended Complaint*, pp. 42–43.[1]

## I.    INTRODUCTION

On February 15, 2022, GAT filed a motion for judgment on the pleadings as to the invalidity of the '188 Patent in the United States District Court for the Eastern District of Texas ("Texas Action"). Granting that motion, the court in the Texas Action invalidated independent claims 1, 5, and 15 of the '188 Patent ('Invalidated Claims'). *See Miller Mendel, Inc. v. City of Anna, Texas*, 598 F. Supp. 3d 486 (E.D. Tex. 2022) ("Texas Invalidity Order"). However, in an order denying reconsideration, the Texas court clarified that claims 2–4 and 6–14 were not asserted by Defendant Miller Mendel, Inc. ("MMI"), and therefore, were outside its jurisdiction. *Miller Mendel, Inc. v. City of Anna, Texas*, No. 2:21-CV-00445-JRG, 2022 WL 2700334, at *1 (E.D. Tex. June 9, 2022), *aff'd*, 107 F.4th 1345 (Fed. Cir. 2024) ("Reconsideration Order").[2]

---

[1] U.S. Patent Nos. 10,043,188 ("the '188 Patent") and 9,070,098 ("the '098 Patent") are attached hereto as Exhibits 1 and 2.

[2] The Texas court's order and its subsequent denial of reconsideration are attached hereto as Exhibits 3 and 4, respectively.

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS
PURSUANT TO FED. R. CIV. P. 12(c)

1

2       The Federal Circuit—in a published opinion—affirmed the invalidation of those

3   claims on July 18, 2024, a copy of which is attached hereto as Exhibit 5. *See Miller Mendel,*

4   *Inc. v. City of Anna, Texas*, 107 F.4th 1345, 1348 (Fed. Cir.), *cert. denied*, 145 S. Ct. 593,

5   220 L. Ed. 2d 231 (2024) ("Federal Circuit Opinion"). MMI filed a petition for writ of

6   certiorari to the Supreme Court of the United States, which was denied on November 25,

7   2024. *See Miller Mendel, Inc. v. City of Anna, Texas*, 145 S. Ct. 593, 220 L. Ed. 2d 231

8   (2024). With this Court having jurisdiction over the issue of the invalidity of the Remaining

9   Claims, GAT requests that this Court finish the job started by the court in the Texas Action

10  and hold the Remaining Claims to be invalid under 35 U.S.C. § 101.

11

12      Like the Invalidated Claims, the Remaining Claims fail the two-step patentability

13  analysis provided by the Supreme in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l,* 134 S. Ct.

14  2347 (2014). First, the Remaining Claims are "directed to an abstract idea under *Alice* Step

15  One—the abstract idea of performing a background check." *Texas Invalidity Order,* 598

16  F. Supp. 3d at 496. Second, the Remaining Claims fail Step Two because "none of the

17  limitations add inventiveness to the abstract idea." *Texas Invalidity Order,* 598 F. Supp. 3d

18  at 498. Indeed, the "lack of inventive concept is further confirmed by other parts of the

19  specification, which describe no more than already available computers performing already

20  available basic functions." *Federal Circuit Opinion,* 107 F.4th at 1354. Thus, the

21  Remaining Claims are invalid under 35 U.S.C. § 101.

22

23

24  **II.     STATEMENT OF THE ISSUES TO BE DECIDED**

25

26      1.  Whether the Remaining Claims are invalid under 35 U.S.C. § 101 for

27          lack of patent-eligible subject matter.

28

2

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS
PURSUANT TO FED. R. CIV. P. 12(c)

**III.    PROCEDURAL HISTORY**

Through recent briefing on MMI's motion to dismiss (Dkt. 40), special anti-SLAPP motion to strike (Dkt. 41), and motion to transfer (Dkt. 54), the Parties have provided a thorough procedural history, not only of this proceeding, but also of the related proceedings in several other courts. *See* Dkt. 48, pp. 2–4 (describing the background and procedural history). Thus, to supplement the procedural history described above, GAT incorporates the procedural history as described in the First Amended Complaint (Dkt. 51, pp. 3–41) to the extent it has not already been ascertained by this Court.

**IV.    FACTUAL BACKGROUND**

**A. DISCLOSURES OF THE '098 AND '188 PATENTS**

The '098 Patent and the '188 Patent ("Patents-in-Suit") are both entitled "Background Investigation Management Service." The '098 Patent was issued on June 30, 2015. Ex. 2, *'098 Patent*, p. 1. Its child patent, the '188 Patent, was issued on August 7, 2018. Ex. 1, *'188 Patent*, p. 1. Defendant Tyler J. Miller is listed as the sole inventor of both of the Patents-in-Suit. *Id.*

Notably, the specifications of the Patents-in-Suit are **identical**. *Compare* Exs. 1–2. The specifications explain that the "subject matter relates to a system to facilitate the process of performing background applications on a plurality of applicants." Ex. 1, *'188 Patent*, at col. 1, lines 14-16; Ex. 2, *'098 Patent*, at col. 1, lines 14-16. In the "Background Information" of the Patents-in-Suit, the specifications note that:

> In many areas, but particularly in the area of law-enforcement pre-employment background investigations, investigators report they spend, on average, 40 hours per applicant investigation. During this process, the applicant typically completes ***a paper packet*** comprised of questions

3

> pertaining to the applicant's life history, including information on criminal activity, financial history, drug history, listing relatives and personal references, employment history, and many other in-depth personal questions … The investigator typically uses resources available to him or her to confirm the information the applicant provided in the various documents, to include, contacting past employers, supervisors, neighbors, relatives, references, landlords, etc., which makes up the bulk of the investigator's 40 hours per applicant of spent time.
>
> What has eluded the industry is an ***automated*** system to help a background investigator more efficiently and effectively conduct a background investigation.

Ex. 1 at col. 1, lines 20-40 (emphasis added); Ex. 2 at col. 1, lines 20-40. Describing the

embodiment represented in FIG. 1 of the Patents-in-Suit, the specifications state that:

> software system **100** allows an organization **102** the ability to create and customize electronic documents **104** to be sent to applicants to complete via the software system **100**, and returned to the software system **100** in similar fashion. The software system 100 includes a document creation component **114** and a document management component **116**. The system **100** ***automates the majority of the tasks of a common pre-employment background investigation*** so that fewer hardcopy documents are necessary, thus creating more efficient management of individual background investigations.

Ex. 1 at col. 4, lines 5-16 (emphasis added); Ex. 2 at col. 4, lines 1-11. Crucially, the Federal

Circuit stated the following about the specification regarding *Alice* Step One:

> **The patent specification confirms that the asserted claims are directed to an abstract idea.** The '188 patent states that the problem addressed by the invention is "to help a background investigator more efficiently and effectively conduct a background investigation." '188 patent col. 1 ll. 38–40. It refers to the subject matter of the invention as "a web based software system for managing the process of performing pre-employment background investigations." *Id.* col. 3 l. 67 to col. 4 l. 2; *see also id.* Abstract. The specification characterizes the steps performed by the system as "automat[ing] the majority of the tasks of a common pre-employment background investigation so that fewer hardcopy documents are necessary, thus creating more efficient management of individual background investigations." *Id.* col. 4. ll. 12–16. **In short, the problem facing the inventor was the abstract idea of performing background investigations**

**more efficiently and effectively, not an improvement to computer technology.**

*Federal Circuit Opinion,* 107 F.4th at 1352. (emphasis added). When analyzing under *Alice* Step Two, the Federal Circuit went on to say:

> **The lack of inventive concept is further confirmed by other parts of the specification**, which describe no more than "already available computers" performing "already available basic functions." *SAP Am., Inc. v. InvestPic*, LLC, 898 F.3d 1161, 1169–70 (Fed. Cir. 2018); *see, e.g., Trinity*, 72 F.4th at 1367 (analyzing patent specification under *Alice/Mayo* step two). The '188 patent's use of generic computer components, such as a "computing device," "processors," "system memory," and "computer storage media," confirms that these components do not provide an inventive concept.

*Federal Circuit Opinion,* 107 F.4th at 1354. (emphasis added).

## B.    THE REMAINING CLAIMS

There are twenty-six (26) Remaining Claims between the Patents-in-Suit:

- '098 Patent: Claims 1–14; and

- '188 Patent: Claims 2–4 and 6–14.

For the convenience of the Court, attached as Exhibits 6–11 are side-by-side comparisons of the Remaining Claims having the same or similar claim elements.[3] Like the court in the Texas Action chose to do, this Court may determine one or more claims to be representative of others.[4] *See Texas Invalidity Order,* 598 F. Supp. 3d at 489, n. 2.

---

[3] The Invalidated Claims were also added where applicable to show their similarity with the Remaining Claims.

[4] When claims are substantially similar and implicate the same issue under 35 U.S.C. § 101, analyzing a representative claim is proper. *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed Cir. 2017); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

Specifically, the court in the Texas Action, upon agreement of the parties, determined Invalidated Claim 1 to be representative of claims 5 and 15 of the '188 patent. It is similarly representative of claim 9 of the '188 Patent and independent claims 1, 5, and 9 of the '098 Patent. *See* Exhibit 6.

Likewise, the dependent claims of the Patents-in-Suit uniformly add the same basic limitations[5]—none of which are directed to anything other than fundamental steps of background checks, i.e., the gathering and organizing of information:

| Claims | Limitations |
|---|---|
| • '098 Patent: Claims 2, 6, and 10<br>• '188 Patent: Claims 2, 6, and 10 | Searching for a previous applicant entry from a different organization and sending that data. |
| • '098 Patent: Claims 3, 7, and 11<br>• '188 Patent: Claims 3, 7, and 11 | Presenting an option to modify the applicant documents before sending hyperlink. |
| • '098 Patent: Claims 4, 8, and 12<br>• '188 Patent: Claims 4, 8, and 12 | Defines questionnaires where next questions depend on prior responses. |
| • '098 Patent: Claim 13<br>• '188 Patent: Claim 13 | Creating multiple questionnaires classified by reference types. |
| • '098 Patent: Claim 14<br>• '188 Patent: Claim 14 | Allowing investigators to edit questionnaires. |

Regardless of whether the Court elects to employ the representative claim method or evaluate each of the Remaining Claims individually, "[t]he [Patents-in-Suit] claim[] the

---

[5] Additionally, the Court may determine one claim to be representative from each of the groups of: (1) claims 2, 6, and 10 [*see* Ex. 7]; (2) claims 3, 7 and 11 [*see* Ex. 8]; (3) claims 4, 8, and 12 [*see* Ex. 9]; (4) claims 13 [*see* Ex. 10]; and (5) claims 14 [*see* Ex. 11] of the Patents-in-Suit.

well-known process of performing a background check." *Texas Invalidity Order,* 598 F. Supp. 3d at 499. "While the patent[s] inarguably 'turns much of a common pre-employment background investigation electronic,' such is not enough to make the abstract idea patent eligible. At the end of the day, it remains a 'common pre-employment background investigation,' which is not eligible for patent protection." *Id.*

## V. ARGUMENT AND AUTHORITIES

### A. THE STANDARD FOR RULE 12(c) MOTIONS FOR JUDGMENT ON THE PLEADINGS TO INVALIDATE UNDER 35 U.S.C. § 101

After the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) challenges the legal sufficiency of the opposing party's pleadings and operates like a motion to dismiss under Rule 12(b)(6)." *Samsung Elecs. Co. v. Blaze Mobile, Inc.*, 673 F. Supp. 3d 1066, 1071–72 (N.D. Cal. 2023) (citing *Morgan v. Cnty. of Yolo*, 436 F. Supp. 2d 1152, 1154–55 (E.D. Cal. 2006)). "[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog," because the motions are 'functionally identical.'" *Samsung*, 673 F. Supp. 3d at 1072 (quoting *Dworkin v. Hustler Mag*., Inc., 867 F.2d 1188, 1192 (9th Cir. 1989). The Court will "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Id.* Judgment on the pleadings is appropriate if, assuming the truth of all material facts pled in the complaint, the moving party is entitled to judgment as a matter of law. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). In a patent case, the Federal Circuit reviews procedural

1   aspects of motions for judgment on the pleadings using regional circuit law. *RecogniCorp,*

2   *LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1325–26 (Fed. Cir. 2017).

3       In patent cases, judgment on the pleadings under Rule 12(c) is appropriate when the

4   claims-in-suit are directed to non-patentable subject matter. *See, e.g., BuySAFE, Inc. v.*

5   *Google Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (affirming grant of judgment on the

6   pleadings under Fed. R. Civ. P. 12(c) on § 101 grounds); *Federal Circuit Opinion,* 107

7   F.4th at 1350–51. A court may decide the issue of § 101 validity on a Rule 12(c) motion

8   even if there are factual disputes, so long as it construes all allegations in favor of the non-

9   moving party. *Samsung*, 673 F. Supp. 3d 1072 (granting 12(c) motion on declaratory

10  judgment claim for invalidity; finding patent claims invalid under § 101); *see also SAP*

11  *Am., Inc. v. InvestPic*, LLC, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *MyMail, Ltd. v. OoVoo*,

12  LLC, 613 F. Supp. 3d 1142, 1149 (N.D. Cal. 2020) ("Accordingly, a district court may

13  resolve the issue of patent eligibility under § 101 by way of a motion for judgment on the

14  pleadings.") (citing *buySAFE, Inc. v. Google, Inc*., 765 F.3d at 1352).

15      The benefits of early resolution on a motion for judgment on the pleadings are

16  certain:

> Addressing 35 U.S.C. § 101 at the outset not only conserves scarce judicial
> resources and spares litigants the staggering costs associated with discovery
> and protracted claim construction litigation, it also works to stem the tide of
> vexatious suits brought by the owners of vague and overbroad business
> method patents. Accordingly, where, as here, asserted claims are plainly
> directed to a patent ineligible abstract idea, we have repeatedly sanctioned a
> district court's decision to dispose of them on the pleadings. *See, e.g., Content
> Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1349
> (Fed.Cir.2014); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 717
> (Fed.Cir.2014); *buySAFE, Inc. v. Google, Inc*., 765 F.3d 1350, 1352
> (Fed.Cir.2014).

*OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1364–65 (Fed. Cir. 2015) (Mayer, J., concurring).  These benefits are particularly present here, where the subject matter of the Remaining Claims has already been determined to be patent ineligible.

### B.     THE REMAINING CLAIMS ARE INVALID UNDER 35 U.S.C. § 101

35 U.S.C. § 101 provides that a patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has "long held that this provision contains an important implicit exception[:] 'Laws of nature, natural phenomena, and abstract ideas' are not patentable." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70, 132 S. Ct. 1289, 1293 (2012) (quoting *Diamond v. Diehr*, 450 U.S. 175 (1981)).

To decide whether patent claims fall within the abstract-idea exception, a court must first "determine whether the claims at issue are directed to one of those patent-ineligible concepts," such as an abstract idea. *Alice*, 134 S.Ct. at 2355. If they are, the court must next "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id*. (quoting *Mayo*, 566 U.S. at 79, 78).

### (1)     *Alice* Step One: Like the Invalidated Claims, the Remaining Claims are directed to the abstract idea of conducting background checks.

"For software-based inventions, *Alice/Mayo* step one 'often turns on whether the claims focus on the specific asserted improvement in computer capabilities or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS
PURSUANT TO FED. R. CIV. P. 12(c)

tool.'" *Federal Circuit Opinion,* 107 F.4th at 1352 (citing *In re Killian*, 45 F.4th 1373, 1382 (Fed. Cir. 2022) (cleaned up)).

Here, as described in the Background section of the Patents-in-Suit, *supra,* the purported advance over prior art systems is "an automated system to help a background investigator more efficiently and effectively conduct a background investigation." Ex. 1, *'188 Patent*, col. 1, lines 39–40; Ex. 2, *'098 Patent*, col. 1, lines 38–39. Regarding the '188 Patent's claims, the Federal Circuit pointed out that "[t]he specification characterizes the steps performed by the system as 'automat[ing] the majority of the tasks of a common pre-employment background investigation so that fewer hardcopy documents are necessary, thus creating more efficient management of individual background investigations.'" *Federal Circuit Opinion,* 107 F.4th at 1352–53 (quoting Ex. 1, col. 4. ll. 12–16).

Like the Invalidated Claims, the Remaining Claims are directed to automating background checks. *See* Ex. 1–2. The Remaining Claims "recite[] several steps that the computer system performs to assist the investigator with conducting a background investigation. Therefore, they are still directed to receiving, storing, transmitting, determining, selecting, and generating information, which place them in the 'familiar class of claims directed to a patent-ineligible concept.'" *Federal Circuit Opinion,* 107 F.4th at 1352 (quoting *Trinity Info Media, LLC v. Covalent, Inc*., 72 F.4th 1355, 1362 (Fed. Cir. 2023) (cleaned up) (finding "collecting information, analyzing it, and displaying certain results" abstract)); *see also Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1182 (Fed. Cir. 2020) (finding "gathering, storing, and transmitting information" abstract).

The limitations of the dependent claims do not introduce any meaningful or substantive features that transform the underlying abstract idea into a patent-eligible invention. *See*, *infra*, Section IV(B). Specifically, Claims 2, 6, and 10 of the Patents-in-Suit add the limitation of checking to see if the applicant has previously applied to another organization. *See* Ex. 7. Claims 3, 7, and 11 of the Patents-in-Suit add the limitation of giving the investigator the option to modify one or more documents before transmitting them to the applicant. *See* Ex. 8. Claims 4, 8, and 12 of the Patents-in-Suit add the limitation of asking the applicant questions based on prior responses. *See* Ex. 9. Claims 13 and 14 of the Patents-in-Suit add tailored questionnaires that the investigator may edit as part of the abstract background investigation process. *See* Exs. 10–11.

These claims "add no meaningful limitations beyond th[e] abstract idea" of background checking. *Kaavo Inc. v. Amazon.com Inc.*, 323 F. Supp. 3d 630, 641 (D. Del. 2018) (invalidating dependent claims as well); *see also buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("The dependent claims' narrowing to particular types of such relationships, themselves familiar, does not change the analysis. This kind of narrowing … does not make the idea non-abstract for section 101 purposes."); and *PerformancePartners, LLC v. FlashParking, Inc.*, 697 F. Supp. 3d 678, 683 (W.D. Tex. 2023) ("[Dependent claim] would also be invalid because it simply layers another feature" to the abstract idea). At the end of the day, each limitation of the Remaining Claims is still "directed toward automation of basic information gathering and organization." *Texas Invalidity Order,* 598 F. Supp. 3d at 494.

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS
PURSUANT TO FED. R. CIV. P. 12(c)

Notably, the court in the Texas Action found that "[t]he claims of the '188 Patent are structurally similar to those declared patent-ineligible in *SkillSurvey, Inc. v. Checkster LLC*, 178 F. Supp. 3d 247, 256 (E.D. Pa. 2016), *aff'd*, 683 F. Appx 930 (Fed. Cir. 2017)." Specifically, the court in the Texas Action stated:

> The court in *SkillSurvey* found that the patent was "trying to achieve" the "abstract idea of reference checking job applicants" and that the "heart" of the patent was the "abstract idea of anonymously surveying prior employers within the context of job applications." (*Id.* at 255) (citations omitted). The court determined that the claims of the *SkillSurvey* patent, "alone and in combination, could all be completed by the human mind. A pen and paper version of the claimed method would not be particularly efficient, but it could be completed." (*Id.* at 256.) For the same reason as the claims at issue in *SkillSurvey*, the Court finds that the claims of the '188 Patent are directed to an abstract idea.

*Texas Invalidity Order,* 598 F. Supp. 3d at 495. *SkillSurvey* is still on all fours here: while the use of "paper packets" for background investigations was not particularly efficient (e.g., taking up to 40 hours per applicant), the background checks claimed by the Patents-in-Suit could be completed by the human mind, hand, and/or mere conversation. "[The Federal Circuit has] treated analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category." *Elec. Power*, 830 F. 3d at 1354. A method of conducting a background investigation—including questions based on answers to previous questions or questionnaires tailored for each position or person—are still fundamental parts of background checking. Performing these steps through the use of a general purpose computer does not transform such an abstract process into patent eligible subject matter under 35 U.S.C. § 101.

All of the Remaining Claims fail Step One of the *Alice* analysis because they are directed to the abstract idea of background checking.

### (2) *Alice* Step Two: Like the Invalidated Claims, the Remaining Claims do not contain an inventive concept.

The Remaining Claims fail *Alice* Step Two because they do not contain an inventive concept. To determine whether an inventive concept is present, courts must look for "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'" *Alice*, 134 S.Ct. at 2357 (quoting *Mayo*, 132 S.Ct. at 1294). In other words, do the claims "contain additional elements that 'transform the nature of the claim into a patent-eligible application.'" *Federal Circuit Opinion*, 107 F.4th at 1353 (quoting *Alice*, 573 U.S. at 217). As in *Alice*, "[t]he relevant question is whether the claims here do more than simply instruct the practitioner to implement the abstract idea […] on a generic computer."

Analyzing Representative Claim 1 of the '188 Patent under *Alice* Step Two, the Federal Circuit found no inventive concept, but mere use of a generic computer to implement the abstract idea of background checks:

> Here, when viewing the limitations of representative claim 1 individually or as an ordered combination, the limitations "merely recite well-understood, routine, conventional activities, either by requiring conventional computer activities or routine data-gathering steps." *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) (cleaned up).
>
> Claim 1 recites well-understood, routine, and conventional computer components. Claim 1 recites a method performed by a "computing device with a processor and a system memory." '188 patent col. 15 l. 52–53. None of the limitations recited in the claim "requires anything other than conventional computer and network components operating according to their ordinary function." *Two-Way Media*, 874 F.3d at 1339; '188 patent col. 15 l. 52 to col. 16 l. 19. Nor is the ordered combination of these steps inventive.

For example, the patent specification explains that "it should be appreciated that these steps may be performed *in any random order* and the process 800 *is not defined by this particular illustrative order*." '188 patent col. 14 ll. 21–24 (emphases added). Considered individually or as an ordered combination, the claim limitations fail to transform the claimed abstract idea into a patent-eligible application.

The lack of inventive concept is further confirmed by other parts of the specification, which describe no more than "already available computers" performing "already available basic functions." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1169–70 (Fed. Cir. 2018); *see, e.g., Trinity*, 72 F.4th at 1367 (analyzing patent specification under *Alice/Mayo* step two). **The '188 patent's use of generic computer components, such as a "computing device," "processors," "system memory," and "computer storage media," confirms that these components do not provide an inventive concept**. '188 patent col. 12 ll. 46–50, col. 13 ll. 40–41; *see Trinity*, 72 F.4th at 1367. For example, the specification teaches one embodiment with "a very basic configuration 701, [where] computing device 700 typically includes one or more processors 710 and system memory 720." '188 patent col. 12 ll. 46–48. The specification further states that "the system memory 720 can be of any type" and that "[a]ny such computer storage media can be part of device 700." Id. col. 12. ll. 64–65, col. 13 ll. 40–41 (emphases added).

*Federal Circuit Opinion*, 107 F.4th at 1353–54 (emphasis added). The Remaining Claims fail *Alice* Step Two for the exact same reasons. None adds anything beyond the abstract idea of background checks or requires anything other than conventional computer components, as stated in the specifications. *See* Ex. 1, *'188 Patent*, col. 15, lines 52–53; Ex. 2, *'098 Patent*, col. 15, lines 54–55. The addition of claim terms such as "computer-implemented" and "using a computer" is not enough to confer patent eligibility:

[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention. Stating an abstract idea "while adding the words 'apply it'" is not enough for patent eligibility. . .. Stating an abstract idea while adding the words "apply it with a computer" simply combines those two steps, with the same deficient result. Thus, if a patent's recitation of a computer amounts to a mere instruction to "implemen[t]" an abstract idea "on . . . a computer," that addition cannot impart patent eligibility.

*Alice*, 134 S. Ct. at 2358 (citations omitted); s*ee also Bascom Research, LLC v. LinkedIn, Inc.*, Case No. 12-CV-06293-SI, 2015 WL 149480, at *3, *9-10 (N.D. Cal. Jan. 5, 2015) (holding that while the patentee overcame § 101 rejections "by adding the words 'computer-implemented' into the claims" during the process of obtaining the patent, the "generic computer implementation" language from *Alice* dictated that the patent was invalid as being directed to ineligible subject matter under Section 101).

All of the elements of the Remaining Claims, which, according to the specifications, are undertaken to help a background investigator more efficiently and effectively conduct a background investigation, are "manual tasks" that "cannot be rendered patent-eligible merely by performing them with a computer." *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1244 (Fed. Cir. 2016); *see also OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) ("[R]elying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible."). The mere recitation of using a computer to perform the steps of a background investigation does not "salvage an otherwise patent-ineligible process." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012). In addition to the independent Remaining Claims, the limitations of the dependent claims are more of the same—using computers to collect and organize information, i.e., perform a background check. *See*, *infra*, Section IV(B).

Ultimately, as the courts in *SkillSurvey* and the Texas Action held, and the Federal Circuit affirmed, patents claiming the collection and organization of information related to job applications and background checks are directed to an abstract idea. *See Texas*

*Invalidity Order,* 598 F. Supp. 3d at 498; *SkillSurvey*, 178 F. Supp. at 255-57. Therefore, they are invalid absent a transforming additional element. *Id*. Conducting job applicant reference checks is a mental process that is merely a time-honored, longstanding commercial practice and method of organizing human activity. Doing so with a computer is not patentably inventive. *Federal Circuit Opinion,* 107 F.4th at 1353–54. Thus, the Remaining Claims fail *Alice* Steps One and Two and are invalid.

## CONCLUSION

For any or all of the above reasons, the Court should grant GAT's Motion for Judgment on the Pleadings and hold the Remaining Claims invalid under 35 U.S.C. § 101.

Dated:  August 21, 2025                    BOUTIN JONES INC.
                                           Attorneys at Law

                                           Robert D. Swanson
                                           Daniel S. Stouder

                                           and

                                           DUNLAP CODDING PC
                                           Attorneys at Law
                                           Douglas J. Sorocco

                                           and

                                           RYAN WHALEY PLLC
                                           Attorneys at Law

                                           by: */s/ Evan Talley*
                                           Evan W. Talley

                                           Attorneys for Plaintiff
                                           Guardian Alliance Technologies, Inc.

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS
PURSUANT TO FED. R. CIV. P. 12(c)